IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

-vs-

PETER GERACE, JR.,

Defendant.

_____

## MEMORANDUM REGARDING THE APPOINTMENT OF
## LEARNED COUNSEL & AUTHORIZATION OF CAPITAL RESOURCES

Docket No. 23-CR-99-LJV-JJM-2

Respectfully submitted on January 19, 2024, by:

Mark A. Foti, Esq.
The Foti Law Firm, P.C.
16 West Main Street, Suite 100
Rochester, New York 14614
Phone: (585) 461-1999
Fax: (585) 491-6512
E-mail: mark@fotilaw.com

Eric M. Soehnlein, Esq.
Soehnlein Law, PLLC
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
Phone: (716) 771-9092
E-mail: eric@soehnleinlaw.com

Mark A. Foti, an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, submits the following memorandum in response to discussion at the arraignment held on January 10, 2024, regarding the appointment of learned counsel and authorization capital resources necessary to develop and prepare a defense against capital crimes pursuant to 18 U.S.C. § 3005, 18 U.S.C. § 3006A(e) and the Judicial Conferences' Guide to Judicial Policy, Guidelines for Administering the CJA and Related Statutes, Volume 7, Chap. 6., CJA Guideline, § 620.10.10(a)(appointment of counsel in capital cases) and Vol. 7A, Appx. 2A, page 27, Chap. 3, CJA Guideline § 310.10.10[1] and other authorities.

The Table of Contents is as follows:

I.  Introduction ................................................................................................................ 2

II.  Background ............................................................................................................... 2

III. Discussion ................................................................................................................. 5

    Counts Two & Three Charge Violations of Statutes that are Capital Crimes ..... 6

    Appointment of Learned Counsel in the Western District of New York ............. 9

    Information Provided by Federal Death Penalty Resource Counsel Project .... 12

IV.  Conclusion .............................................................................................................. 22

---

[1]  Under 18 U.S.C. §3006A(h), the Judicial Conference of the United States is authorized to issue rules and regulations governing the operation of district plans created to furnish representational services (including counsel and investigative, expert, and other services necessary for adequate representation). Volume 7A of the *Guide* is a compendium of Judicial Conference policy adopted pursuant to that authority.

## I.  Introduction

Peter Gerace, Jr., along with other co-defendants are charged with counts of conspiracy that statutorily constitute capital crimes. Dkt. # 24. Indeed, the Second Superseding Indictment in case no. 23-CR-99 presents allegations of fact that the Government could use as grounds to seek the death penalty.

At the arraignment for Mr. Gerace and others on January 10, 2024, the Court raised questions related to whether the Government could rule out the possibility of pursuing a sentence of death. The Government declined to do so.[2]

During the course of the arraignment, discussion turned to the appointment of learned counsel and capital resources, and the parties presented brief arguments regarding whether appointment would be appropriate at this juncture.

This submission addresses support for the position that the defendants are entitled to learned counsel and capital resources and the immediate appointment of such is consistent with the manner in which cases in this posture have historically been treated in this District and nationally.

## II.  Background

Peter Gerace, Jr., along with John Thomas Ermin, Michael Roncone, Frank Knight, Howard Hinkle, Jr., Simon Gogolack, Cortnie Barber, Bernard Byrd III, and Scott Barnes

---

[2] I have ordered an expedited transcript from the proceeding; I anticipate that I will receive a copy next week. At this time, I am referencing my recollection of what transpired, consistent with discussions with others who were present. I will supplement this with citations to the transcript upon receipt, if necessary.

are named in a multi-count Second Superseding Indictment (hereafter "the indictment"). Dkt. # 24.

The indictment charges Mr. Gerace with three violations of federal law including:

- Count 1: Obstruction of Justice Conspiracy pursuant to 18 U.S.C. § 371;

- Count 2: Witness Tampering Conspiracy pursuant to 18 U.S.C. § 1512(k);

- Count 3: Witness Retaliation Conspiracy pursuant to 18 U.S.C. § 1513(f).

Six defendants, including Mr. Gerace, are charged in the first count, an offense that appears to carry a maximum of five years incarceration.

Counts Two and Three both charge the same four defendants, including: (1) Mr. Gerace; (2) co-defendant Ermin; (3) co-defendant Hinkle; and (4) co-defendant Gogolack.

Counts Two and Three focus on allegations of conspiracies related to Crystal Quinn, an individual who the Government had intended to call as a witness against Mr. Gerace in the trial scheduled for case numbers 19-cr-227 and 23-cr-37. Crystal Quinn died in August 2023 from a reported drug overdose.

As discussed further, *infra*, the alleged conspiracies under Counts Two and Three appear to statutorily constitute death eligible offenses because the object of the alleged conspiracy was to kill Crystal Quinn.

In Count Two, the indictment alleges that the defendants "did knowingly and willfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to commit" offenses, including specifically "to kill Crystal Quinn, a witness, with the intent to prevent the attendance and testimony of Crystal Quinn in Case

Nos. 19-CR-227 and 23-CR-37… and with the intent to prevent communication by Crystal

Quinn to a law enforcement officer of the United States relating to the commission and

possible commission of a Federal offense, in violation of Title 18, United States Code,

Sections 1512(a)(1) and 1512(j)." Dkt. # 24 at 31-32.

In Count Three, the indictment alleges that the defendants "did knowingly and

willfully combine, conspire, and agree together and with others, known and unknown to

the Grand Jury, to commit" offenses, including specifically "to kill Crystal Quinn, a

witness, with the intent to retaliate against Crystal Quinn for her attendance at an official

proceeding, namely, a Federal grand jury proceeding in Case Number 23-CR-37 in the

United States District Court for the Western District of New York, in violation of Title 18,

United States Code, Section 1513(a)(1)(A);" Dkt. # 24 at 33.

As result of the aforementioned charges, and since the above indictment presents

allegations that could support various charges eligible for the death penalty, the

defendants are entitled to the appointment of qualified Learned Counsel pursuant to 18

U.S.C. §3005, 18 U.S.C. §3006A(e) and the Judicial Conferences' Guide to Judicial Policy,

Guidelines for Administering the CJA and Related Statutes, Volume 7, Chap. 6., CJA

Guideline, § 620.10.10(a)(appointment of counsel in capital cases) and Vol. 7A, Appx. 2A,

page 27.

Consistent with those rights, at the arraignment for Mr. Gerace on January 10,

2024, this Court inquired as whether the Government could confirm that it would not

engage in an effort to pursue the death penalty in this case. The Government refused to

rule out that possibility. That refusal, in itself, is an answer to the Court's inquiry which necessitates the immediate appointment of Learned Counsel and capital resources to the defendants.

Even though the Government did not rule out a death-penalty prosecution, it advanced arguments that the defendants would not be entitled to learned counsel or other capital resources because the indictment is not currently charged in a manner which would permit special findings for imposition of the death penalty.

The Court provided the parties with an opportunity to file, in writing, briefing related to the issue of whether the defendants are entitled to learned counsel at this juncture despite the Government's position the current indictment has not been charged in a manner which would allow for the imposition of death.

The deadline for the filings was set for January 24, 2024. This memorandum is submitted five days early in hopes that the issue can be resolved as soon as possible.

### III. Discussion

Support for the immediate appointment of learned counsel in the case's current posture is provided by three points: (1) Count Two and Count Three are capital crimes within the commonly understood definition and the Department of Justice's own Justice Manual; (2) even if the defendants had not already been charged with capital crimes, this District has a history of appointing learned counsel and capital resources in circumstances based on allegations demonstrating a mere potential for a capital prosecution; and (3) information provided by the Federal Death Penalty Resource

Counsel Project demonstrates there is an abundance of authority from other districts, throughout the county, demonstrating the need for appointment of learned counsel at the earliest possible stage of proceedings, even prior to the charging of a capital offense.

<u>Counts Two and Three Charge Violations of Statutes that are Capital Crimes</u>

Mr. Gerace and at least three of his co-defendants are already charged with death-eligible offenses which support the appointment of learned counsel and capital resources.

Plainly stated, a capital crime or death-eligible offense is a criminal statute that is punishable by the death penalty.[3]

Count Two charges a conspiracy under 18 U.S.C. § 1512(k), which as discussed in the Background, *supra*, includes an alleged conspiracy "to kill Crystal Quinn, a witness… in violation of Title 18, United States Code, Sections 1512(a)(1) and 1512(j)." Dkt. # 24 at 31-33.

18 U.S.C. § 1512(k) indicates that "[w]hoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Review of 18 U.S.C. § 1512(a)(1) directs that it shall be punished as provided in § 1512(a)(3) which further states that "in the case of a killing," as alleged in this indictment, the punishment for the offense is provided in 18 U.S.C. § 1111 and § 1112. *See* 18 U.S.C. § 1512(a)(3)(A).

---

[3] Cornell Law School and the Legal Information Institute sponsor and host a free legal dictionary and encyclopedia which defines "capital offense" as stated and further indicates "a capital office is classified as such if the permissible punishment prescribed by the legislature for the offense is the death penalty." *See* Capital Offense, available at https://www.law.cornell.edu/wex/capital_offense.

18 U.S.C. § 1111 is the Federal Murder statute and contemplates circumstances where punishment includes death. *See* 18 U.S.C. § 1111(a)&(b).

Likewise, Count Three charges a conspiracy under 18 U.S.C. § 1513(f), which again indicates that "[w]hoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." Dkt. # 24 at 34.

The object of the conspiracy, as alleged in the indictment, includes the killing of Crystal Quinn in violation of 18 U.S.C. § 1513(a)(1)(A)&(B). Dkt. # 24 at 33-34.

Again, review of the cited subsections of 18 U.S.C. § 1513 ultimately directs to the Federal Murder statute.

Thus, both Counts Two and Three charge statutes that constitute death-eligible offenses, even if the *manner* in which they are currently charged do not permit death as a potential sentence.

The Court's inquiry at the arraignment on January 10, 2024, was wholly appropriate, and until Government forecloses the possibility that it will ever seek the death penalty in this case, the Court should provide the defendants with learned counsel and other resources afforded to defendants charged with capital crimes.

Consistent with that approach, the Department of Justice's own Justice Manual contains a chapter regarding "Capital Crimes," which provides as follows:

> This Chapter sets forth the policies and procedures for all Federal cases in which a defendant is charged, **or could be charged**, with an offense subject to the death penalty. The provisions in this Chapter apply **regardless of whether the**

> **United States Attorney or Assistant Attorney General intends to charge the offense subject to the death penalty** or to request authorization to seek the death penalty for such an offense.
>
> *Justice Manual*, Title 9: Criminal, 9-10.010 - Federal Prosecutions in Which the Death Penalty May be Sought[4] (emphasis added)

As clearly stated, the provisions of the Capital Crimes chapter of the Justice Manual apply regardless of whether the Government intends to charge the offense subject to the death penalty. The inclusion of the language "or could be charged" is dispositive. *Id*.

Until the Government indicates that there is no longer a possibility that the defendant(s) could be charged with an offense subject to the death penalty, the Government is expected to operate pursuant to policies and procedures specific to capital crimes.

Unless the Government forecloses any possibility that it will investigate or consider seeking the death penalty, this Court should find that the defendants need the assistance of learned counsel and other capital resources at this juncture. The decision to do so is appropriate, and it is also consistent with the history of learned counsel appointments within this district.

---

[4] Available at https://www.justice.gov/jm/jm-9-10000-capital-crimes#9-10.010.

Appointment of Learned Counsel in the Western District of New York

Since the Government has not unequivocally committed to not pursuing capital prosecution, appointment of learned counsel and capital resources would be both consistent with the directives of the WDNY Revised Plan for Furnishing Representation pursuant to the Criminal Justice Act 18 U.S.C. § 3006A ("hereafter "WDNY CJA Plan")[5] and the history of learned counsel appointments in the Western District of New York.

In regard to the WDNY CJA Plan, Section XV addresses the "Appointment of Counsel and Case Management in CJA Capital Cases." *See* WDNY CJA Plan at 23.

The provisions of the WDNY CJA Plan specifically include matters "in which the death penalty **may be** or is being sought by the prosecution" WDNY CJA plan, XV(B) (emphasis added).

Furthermore, the WDNY CJA Plan directs that the appointment "must" occur "at the **earliest possible opportunity**." *Id*. at XV(B)(3)(emphasis added).

An order appointing learned counsel and capital resources is consistent with the above sections of the WDNY CJA plan which supports allowing the defendant to obtain the services and resources necessary for the investigation and representation of a *potentially* capital case.

Historically, the Judiciary in the Western District of New York has appointed learned counsel and other capital resources prior to the formal filing of capital charges.

---

[5] Available at https://www.nywd.uscourts.gov/sites/nywd/files/CJA%20Plan%202021-10-31%20Signed%20with%20Circuit%20Approval.pdf.

The following constitutes three local examples consistent with local jurisprudence on this issue.

_United States v. Johnny Rounds et al_, 10-cr-00239-WMS-HBS

In _United States v. Johnny Rounds et al_, Mr. Rounds was initially charged together with his codefendants in an August 2010 indictment charging a continuing criminal enterprise to possess and distribute narcotics and marijuana. The indictment did not contain death-eligible charges.

However, based on the government's investigation and its refusal based on that investigation to commit to not pursuing capital prosecution, capital counsel and resources were appointed on the initial, non-capital indictment to the defendants.

It was not until June 2012 that a superseding indictment was returned which included special findings permitting the capital prosecution of Mr. Rounds, but did not seek the death penalty against his co-defendants.

In a subsequent filing by the Government, it indicated (in regard to Mr. Rounds' codefendants) that "counsel for each of the defendants and the Court was notified of the government's intention not to seek the death penalty, and that a notice of intention to seek the death penalty would not be filed in this matter. **As a result of the government's decision not to seek the death penalty, this prosecution is no longer a capital one.**" Case no. 10-cr-00239-WMS-HBS, Dkt. # 208 (emphasis added).

Thus, the Government's position in _Rounds_ was that, even though the defendants had not yet been charged with special findings, it was a capital prosecution up until the

point when the Government confirmed that it had decided not to seek the death penalty against those defendants.

The Government ultimately elected not to pursue capital prosecution against Mr. Rounds either, and Mr. Rounds pleaded guilty to a reduced offense, but not before going through the full capital consideration process.

_United States v. Green et al_, 12-cr-00083-WMS-HBS

In _United States v. Ernest Green et al_, the defendants were charged in an indictment charging kidnapping, robbery and murder in furtherance of a Hobbs Act conspiracy, but that did not include special findings.

The government acknowledged the possibility that this could become a death penalty case, so the Magistrate Judge appointed learned counsel to the defendants and authorized associated services.

Specifically, in a Minute Entry proceedings held before Hon. Hugh B. Scott on March 9, 2012, all counsel would be appointed learned counsel because the "death penalty is possible" even though it was the indictment did not charge special findings at that time.

It was not until two and half years later that the government finally committed to the position that it would not pursue capital punishment, and the case subsequently proceeded to a non-capital jury trial. During that two-and-a-half-year period, the defendants needed the assistance of learned counsel to prepare mitigation and investigation to defend against the potential of a capital prosecution.

_United States v. Carlos Javier Figueroa et al_, 18-cr-06094-FPG-MJP

Finally, in _United States v. Carlos Javier Figueroa et al_, the defendants in a conspiracy to distribute narcotics. In that case, the government's revealed during detention hearing proffers that its investigation suggested that defendant Jonathan Cruz-Carmona was involved in a murder in furtherance of the charged drug conspiracy.

Although that incident was not referred to in the criminal complaint or included in the original charges, the magistrate judge, _sua sponte_, appointed capital counsel and issued an order providing pre-capital resources after being advised of these circumstances.

The defendant was thereafter named in an indictment that did not include special findings and, before a superseding indictment was filed, the government affirmatively declined to pursue capital prosecution.

The aforementioned cases are local examples of jurisprudence that favors the imposition of protections in potentially capital cases, a position that is consistent with a national tendency to ensure that defendants receive the appropriate protections when allegations exist that could serve as the basis for a capital prosecution.

Information Provided by the Federal Death Penalty Resource Counsel Project

Because the current indictment alleges Mr. Gerace was involved in conspiracies that include an alleged homicide, I sought the advice of the Office of Defender Services and the Federal Death Penalty Resource Counsel Project to address the issue of whether

this Court has authority to appoint learned counsel before death eligible charges are actually filed.

I have been advised that not only does this court have such authority, as set forth by the Judicial Conference, but consistent with the practices within the Western District of New York, discussed *supra*, courts as across the country frequently exercise their discretion to authorize learned counsel appointments as early as possible in the appropriate cases. The above indictment represents an appropriate case for the appointments of learned counsel *at this juncture*.

The Federal Death Penalty Resource Counsel Project (FDPRC) is a program of the Defender Services Office of the Administrative Office of the United States Courts. The FDPRC is designed to assist the federal courts, federal defenders, and appointed counsel in connection with matters related to the defense function in federal capital prosecutions. Since early 1992, the FDPRC has monitored all federal death penalty trial-level cases and has collected information for use by both lawyers and judges involved in federal capital cases.

The FDPRC responds to inquiries from the federal courts regarding all aspects of the defense function in federal capital prosecutions.   The primary role of the FDPRC is to support and assist court-appointed defense counsel in federal capital cases.  To do this, the Project assigns an FDPRC attorney to work with the defense team in every potential federal death penalty case.  The FDPRC lawyer, known as Resource Counsel, provides on-site and telephone consultation, assistance with identifying and utilizing learned

counsel, where necessary, and expert and investigative assistance, legal research, pleadings development, assistance with efforts to persuade the government not to seek the death penalty, and, ultimately, if necessary, trial preparation and litigation.

As stated above, the official responsibilities as federal resource counsel include the monitoring of all federal capital prosecutions throughout the United States in order to assist in the delivery of adequate defense services to indigent capital defendants in such cases.  This effort includes the collection of data on the initiation and prosecution of federal capital cases.[6]

The FDPRC maintains a data base and a list of federal death penalty prosecutions and information about these cases.   This is accomplished by internet news searches, by reviewing dockets and by downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, and by telephonic or in-person interviews with defense counsel, Federal Defenders or consultation with chambers.   This information is regularly updated and is checked for accuracy by

---

[6] The work of the Federal Death Penalty Resource Counsel Project is described in a report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, Federal Death Penalty Cases: Recommendations Concerning The Cost and Quality of Defense Representation (May, 1998), at 28-30. https://www.uscourts.gov/sites/default/files/original_spencer_report.pdf   Subcommittee report urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases . . . *Id*. at 50.

The 2010 update to the Report states: "Many judges and defense counsel spoke with appreciation and admiration about the work of Resource Counsel. Judges emphasized their assistance in recruiting and recommending counsel for appointments and their availability to consult on matters relating to the defense, including case budgeting. Defense counsel found their knowledge, national perspective, and case specific assistance invaluable." https://www.uscourts.gov/sites/default/files/fdpc2010.pdf

consulting with defense counsel. FDPRC's information regarding federal capital prosecutions is regularly relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

I have been advised by FDPRC Resource Counsel that there is considerable precedent for appointment of "learned counsel," pursuant to 18 U.S.C. §3005, in a potential federal death penalty cases, before a complaint or an indictment is filed.[7]

This has occurred, for example, in potential capital prosecutions where the defendant is already in custody in state or federal jurisdiction and is being investigated for a federal capital crime or where a decision has not officially been made to bring a federal capital charge, but a federal capital indictment is possible.

I have been provided with the following cases involving Bureau of Prisons homicide investigations, where counsel was appointed, pre-complaint or pre-indictment: *United States v. Anthony Battle* (NDGA No. 1:95-CR-0528 (JODE-RHD); *United States v. David Paul Hammer* (M.D. PA No. 4. 96-CR-00239-JHS); *United States v. Michael O. Driscoll* (MDPA No. 4:01-CR-00277-MM); *United States v. Marek Kowalski and Peter Georgacarakos* (MDPA No. 4:02-CR-00034-JFM); *United States v. Carlos David Caro* (WDVA No. 1: 06-CR-001-JPJ); *United States v. Tommy Meeks* (MDPA No. 4: 07-CR-00196 -JEJ); *United States v. Joseph Cabrera, Sablan and James Leon Guerrero* (EDCA No. 1:08-CR-00259-OWW); *United States v. John Javilo McCullah* (MDFL 2009); *United States v. Michael Thompson, Scott Patrick,*

---

[7] In connection with the preparation of this application, I have consulted with Anthony Ricco who has served as a Resource Counsel with the Federal Death Penalty Resource Counsel Project since 2007.

*Thomas Malloy, Darrell Johnson, Ronald Dick and Joseph Casey* (MDFL 2009); *United States v. Andy Sisson* (D. CO 2009); *United States v. Darryl Milburne and Dwuane Gravely* (E.D. KY No. 7:09-CR-00013-GFVT); *United States v. Carlos Gomez* , (MDPA 2010); *United States v. Dominic Stewart and James Duckett* (D CO No. 1:10-CR-00129-REB); *United States v. Silvestre Rivera and Richard Santiago* (DCO No. 1:10-CR-00164-LTB); *United States v. Jose Jovel Aguilar,* (MDPA 2010); *United States v. Wesley Paul Coonce, Jr. and Charles Michael Hall* (W.D. MO No. 6:10-CR-03029-GAF); *United States v. Ulysses Jones* (W.D. MO No. 6:10-CR-03090-DGK); *United States v. Edgar Nelson Pitts* (CDCA 2011); *United States v. Antoine Giles* (NDWV No. 1:11-CR-051-IMK-JSK); *United States v. Allen Hurley* (M.D. PA No. 3:11-CR-360-RDM); *United States v. Gary Watland* (D. CO No. 1:11-CR-038-JLK); *United States v. Willie Edgar Bush* (W.D. VA No. 2:11-CR-00015-JPJ); *United States v. Frederick Ashley* (C.D. CA 2012); *United States v. Samuel Stone* (EDCA No, 1:12-CR-072-AWI-DLB); *United States v. Phillip William Astor* (CDCA No. 2:12-CR-103-VAP); *United States v. Patrick Andrews and Kevin Bellinger* (ND WV No. 1:12-CR-010-JSK); *United States v. Shaun Steven Folts* (SDIL No. 4:12-CR-40015-JPG); *United States v. Thomas Trayvon* (MDPA 2013); *United States v. Dana Mattingly* (DAZ No. 2013); *United States v. Boyd Higgenbotham* (MDFL No. 5:13-CR-004-ACC); *United States v. John Travis Millner* (EDKY No. 7:13-CR-015-ART); *United States v. Ronald Dick* (SDIN 2013); *United States v. Daniel Ray Casto* (CDCA 2014); *United States v. Milton Huff and Samuel Mertz* (CDCA 2014); *United States v. Andrew Rogers* (SD IN 2014); *United States v. David Paul Hammer and Morgan Wayne Siler* (DAZ 2015); *United States v. Joshua Wayne Trotter and Gary Stanley* (EDLA 2016); *United States v. Richard A. Smith* (SDIN

2016); *United States v. Ricky Allen Fackrel and Erik Lee Rekonen* (EDTX 2016); *United States v. Joshua Mebane* (SDIN 2016); *United States v. Andrew Rogers* (SDIN No. 2:16-CR-018-WTL-CMM); *United States v. Steven McCoy* (EDTX No. 1:18-CR-046-MAC-KFG); *United States v. Samuel Silva* (WDVA 2018); *United States v. Eleke Davis* (DCO 2018); *United States v. Lawrence Taylor* (NDIN 2019); *United States v. Adam Wright* (EDMI No. 2:19-CR-20498-PDB-MKM); *United States v. David Lee Bishop* (MDFL 2019), *United States v. Rodney Hamrick* (SDIN 2020); *United States v. Ishmael Petty,* (DCO 2020) and *United States v. Gerald Rubalcaba* (EDKY 2023).

The following cases involve circumstances where counsel was appointed, pre-complaint or pre-indictment in cases that do not involve Bureau of Prisons homicide investigations: *United States v. Jason Powell* (ND IN 1998); *United States v. Christopher Andre Vialva* (WDTX CR No. 6:99-CR-070-ADA); *United States v. Eric Rudolph* (NDAL No. 2:00-CR-422-CLS-TMP); *United States v. Aaron Pike* (WDNY No. 1: 01-CR-129-RJA-NKS); *United States v. Johnny Davis* (EDLA No. 2:01-CR-282-SSV) (Judge Sarah Vance) [two learned counsel appointed at the capital rate]; *United States v. Kevin Fleming* (DNV No. 2:03-CR-350-LRH-PAL); *United States v. Fernando Delatorre* (NDIL No. 1:03-CR-90) (Judge Ruben Castillo) [two counsel appointed]; *United States v. Victor Wright* (EDNY) No. 1:04-CR-966-ERKVVP); *United States v. Gilbert Saldana* (CDCA No. 2:04-CR-415-PA); *United States v. Lanny Benjamin Bodkins, Antoine Plunkett and Darel Keith Taylor* (WDVA No. 4:04-CR-70083-GEC); *United States v. Joseph Duncan* (DID No. 2:07-CR-23-EJL) [federal defender appointed]; *United States v. Jimmie Odessa Smith* (SDTX 2008); *United States v.*

*Frankie Roche* (DMA No. 3:08-CR-30014-MAP); *United States v. Raymond Foster* (EDLA 2009); *United States v. Johnny Rounds* (WDNY No. 1:10-CR-239-WMS); *United States v. Jared Loughner* (DAZ No. 4:11-CR-187-LAB); *United States v. Ahmed Muse Salad* (EDVA No. 2:11-CR-034-RBS-DEM); *United States v. Michael Keith Spell* (DMT 2012); *United States v. Hector Natal*  (DCT No. 3:12-CR-164-JBA); *United States v. David Joseph Pedersen* (DOR No. 3:12-CR-431-HA); *United States v. Shamerria Smith* (DNJ No. 1:13-CR-470-JHR); *United States v. Dzhokhar Tsarnaev* (D MA No. 1:13-CR-10200-GAO); *United States v. Jose Caldera* (MDPA No. 4:14-CR-278-MWB); *United States v. James Cureton* (EDNY No. 1:16-CR-023-CBA); *United States v. James Matthew Bradley, Jr.* (WD TX No. 5:17-CR-649-DAE); *United States v. Angel Vega* (SDNY 2018); *United States v. Uriel Badillo* (EDWA No. 2:19-CR-00154-TOR); *United States v. John W. Black, III, Norman Bradford, April Braner, Jeffrey C. Smith, David Sanford, Jr. and Monroe Merrell* (NDWV 2020); *United States v. Jose Domingo Ordonez ]Zometa*  (D. MD 2020), *United States v. Patrick Crusius* (W.D. TX No. 3:20-CR-380-DCG) and *United States v. Derick Brown* (NDAL No.2:20-CR-243-LSC-SGC).

In addition to the foregoing, learned counsel has been appointed although no federal charges were ever filed in the following cases: *United States v. Jo El Butler* (SDNY-not charged); *United States v. Dan Jones* (W.D. TN-not charged); *United States v. Thomas Johnson* (EDLA-not charged); *United States v. Michael White* (D KS-not charged); *United States v. Kellie Bryan Schneider* (CDCA - not charged).

The value of immediate appointment of Learned Counsel cannot be understated. Just one of many examples is demonstrated in the case of United States v. Robert A. Butler

in the Northern District of New York, where following a state arson-murder case with four victims, the Government filed a Criminal Complaint charging Malicious Destruction of Rental Property by Means of Fire and an Explosive, Resulting in Death and Personal Injury. *United States v. Butler*, Case no. 13-mj-00277 (NDNY), Dkt. # 1 (Criminal Complaint). Local Learned Counsel, William T. Easton, Esq. was appointed, and the capital investigation revealed innocence, which ultimately resulted in dismissal of the complaint, *before* an indictment. *Id.*, Dkt. # 17 (Order for Dismissal without Prejudice[8]).

From the Commentary to Recommendation 1(b) of the Spencer Report:

> The governing statute calls for capitally qualified counsel to be appointed "promptly," 18 U.S.C. §3005. Recommendation 1(b) endorses appointment of specially qualified counsel "at the outset" of a case, which in some cases may mean prior to the formal filing of a charging document. **Courts should not wait to see whether the government will seek capital prosecution before appointing appropriately qualified counsel and granting them the resources necessary for a preliminary investigation. The goals of efficiency and quality of representation are achieved by early appointment of learned counsel in cases where capital indictment may be sought.** Virtually all aspects of the defense of a federal death penalty case, beginning with decisions made at the earliest stages of the litigation, are affected by the complexities of the penalty phase.
>
> *See*, Guide to Judiciary Policy, Vol. 7A, Appx. 2A, pg. 93 (emphasis added)[9]

---

[8] The Government moved for dismissal but limited the basis for the request to broad references to circumstances that "necessitate further investigation."

[9] Available at https://www.uscourts.gov/sites/default/files/vol07a-ch06-appx6a.pdf

Integral to the authorization process is the early presentations to the local United States Attorney's Office and Justice Department officials of the factors which would militate against a death sentence. *See* the Justice Manuel 9-10.000.

Indeed, the Justice Manual addresses the policy and procedure surrounding the pre-indictment posture of death-eligible offense. *See* the Justice Manuel 9-10.060 - Mandatory Pre-indictment Review ("[a]bsent extenuating circumstances, prior to seeking an indictment charging a capital-eligible offense, the United States Attorney or Assistant Attorney General shall submit the case for review pursuant to the provisions of this Chapter").

Thus, the early appointment of learned counsel is also necessitated by the formal authorization process adopted by the Department of Justice to guide the Attorney General's decision-making regarding whether to indictment of a death-eligible offense. A mitigation investigation may be necessary at the commencement of the representation.

Consistent with that point, I have been further advised by Resource Counsel that delay in appointment of learned counsel risks missing the important opportunity to avoid the high cost of a capital prosecution. Since an early decision not to seek death is the least costly way to resolve a potential capital charge, a prompt preliminary mitigation investigation leading to effective advocacy with the local U.S. Attorney and with the

Justice Department is critical both to a defendant's interests and to sound fiscal management of public funds.[10]

The Judicial Conference has adopted detailed recommendations on the appointment and compensation of counsel in federal death penalty cases in 1998 (JCUS-SEP 98, pg. 22).   In September 2010, the Defender Services Committee endorsed the Revised Commentary to the Judicial Conference's 1998 recommendations.  See, *CJA Guidelines*, Vol. 7A, Appx. 6A (recommendations and commentary concerning the cost and quality of defense representation). Updated *Spencer Report*, September 2010. https://www.uscourts.gov/sites/default/files/fdpc2010.pdf

> (a) "Appointment of qualified capital trial counsel must occur no later than when a defendant is charged with a federal criminal offense, **where the penalty of death is possible**."
>
> (b) "To protect the rights of an individual who, **although uncharged**, is the subject of an investigation in a federal death-eligible case, the court may appoint capitally qualified counsel upon request, consistent with Sections C.1, 2, and 3 of these provisions."
>
> *See*, Guide to Judiciary Policy, Vol. 7A, Appx. 2A, pg. 27 (emphasis added)[11]

As a result of the allegations of the culpability of Mr. Gerace and codefendants as set forth under counts two and three of the indictment relating to the death of Crystal

---

[10] I am advised that historically, the local prosecutor's recommendation nearly always prevails with the Attorney General, and so the opportunity to persuade the U.S. Attorney not to request capital authorization is extremely important; the earlier experienced learned counsel is involved the greater the likelihood of preventive intervention by the defense.

[11] Available at https://www.uscourts.gov/sites/default/files/vol07a-ch02-appx2a.pdf

Quinn, and the protocols of the Judicial Conference in relation to propriety and fairness of the administration of the death penalty in the early stages of case "*although uncharged'* and/or "*where the death penalty is possible,*" it would be appropriate for this Court to authorize the appointment of learned counsel unless the Government will immediately provide Notice that it does not intend to seek to elevate the death penalty.

## IV.  Conclusion

In response to the Court's inquiry at the arraignment on January 10, 2024, it is clear that the appointment of learned counsel and capital resources is appropriate and should occur as soon as possible.

The defendants are statutorily charged with capital crimes, and the Government has laid out allegations that could be the basis to pursue the death penalty.

After reviewing the charges and allegations in the indictment, it is clear that if the Government cannot rule out an intention to consider pursing the death penalty, the appointment of learned counsel and the authorization of further capital resources are appropriate and necessary at this time.

Dated: January 19, 2024

/s/ Mark A. Foti
Mark A. Foti, Esq.