**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
UNITED STATES OF AMERICA,        )
                                 ) Case No. 1:23-CR-00099
                                 )            (LJV)(JJM)
              Plaintiff,         )
                                 )
vs.                              ) January 10th, 2024
                                 )
PETER GERACE, JR., (2)           )
JOHN THOMAS ERMIN, (3)           )
HOWARD HINKLE, JR., (6)          )
SCOTT BARNES, (9)                )
                                 )
              Defendants.        )
```

**TRANSCRIPT OF ARRAIGNMENT**
**BEFORE THE HONORABLE JEREMIAH J. MCCARTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>APPEARANCES:</u>

```
For the Plaintiff:    TRINI E. ROSS
                      UNITED STATES ATTORNEY
                      BY:  CASEY CHALBECK, ESQ.
                           NICHOLAS COOPER, ESQ.
                           JOSEPH TRIPI, ESQ.
                      ASSISTANT UNITED STATES ATTORNEYS
                      138 Delaware Avenue
                      Buffalo, NY 14202

For the Defendant:    MARK A FOTI, ESQ.
Peter Gerace, Jr.     16 W. Main Street, Ste. 100
                      Rochester, NY 14614

                      SOEHNLEIN LAW
                      BY:  ERIC MICHAEL SOEHNLEIN, ESQ.
                      350 Main Street, Ste. 2100
                      Buffalo, NY 14202

For the Defendant:    MUSCATO, DIMILLO & VONA, LLP
John Thomas Ermin     BY:  GEORGE V. C. MUSCATO, ESQ.
                      107 East Avenue
                      Lockport, NY 14094
```

```
 1   APPEARANCES CONTINUED:

 2   For the Defendant:     FRANK M. BOGULSKI, ATTORNEY AT LAW
     Howard Hinkle, Jr.     135 Delaware Avenue, Suite 2
 3                          Buffalo, NY 14202

 4   For the Defendant:     DAVID B. COTTER, ESQ.
     Scott Barnes           380 Cleveland Drive
 5                          Buffalo, NY 14215

 6   Audio Recorder:        ERIC GLYNN

 7   Transcriber:           MEGAN E. PELKA, RPR
                            Robert H. Jackson US Courthouse
 8                          2 Niagara Square
                            Buffalo, NY 14202
 9                          (716) 229-0880

10          Proceedings recorded with electronic sound recording,
     transcript prepared with computer-aided transcription.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       THE CLERK:  On the record in criminal proceeding

2   23-CR-99, United States of America v. Gerace, et al., for

3   arraignment.  Present in the courtroom are Assistant US

4   Attorneys Casey Chalbeck, Nicholas Cooper, and Joseph Tripi.

5   Also present in the courtroom are Defendant Gerace with

6   attorneys Mark Foti and Eric Soehnlein.

7       THE COURT:  Where is Mr. Gerace?

8       MR. FOTI:  Mr. Gerace is next to me, Judge.

9       THE COURT:  Okay.  Good morning, sir.

10      DEFENDANT GERACE:  Good morning.

11      THE CLERK:  Defendant John Ermin with attorney George

12  Muscato.

13      THE COURT:  Mr. Ermin?  Good morning, sir.

14      THE CLERK:  Defendant Howard Hinkle with attorney

15  Frank Bogulski.

16      THE COURT:  Where is mister -- good morning, sir.

17      THE CLERK:  And Defendant Barnes with attorney David

18  Cotter.

19      THE COURT:  Good morning.

20      THE CLERK:  The Honorable Jeremiah J. McCarthy

21  presiding.

22      THE COURT:  Thank you.  Gentlemen, each of you are

23  named in a second superseding indictment dated January 5th,

24  2024.  Mr. Gerace, have you received a copy of that document?

25      DEFENDANT GERACE:  Yes, Your Honor.

1          THE COURT:  Thank you.  Mr. Ermin, have you received

2    a copy?

3          DEFENDANT ERMIN:  Yes.

4          THE COURT:  Mr. Hinkle, have you received a copy?

5          DEFENDANT HINKLE:  Yes.

6          THE COURT:  And Mr. Barnes, have you received a copy?

7          DEFENDANT BARNES:  Yes.

8          THE COURT:  Thank you.  Ms. Chalbeck, would you

9    briefly summarize the charges and the potential penalties as

10   they relate to these defendants?

11         MS. CHALBECK:  Yes, Your Honor.

12     Count 1 charges Defendants Gerace, Ermin, and Hinkle with

13   a violation of 18 United States Code, Section 371.  This is a

14   conspiracy to obstruct justice charge.  There is a five-year

15   maximum penalty.

16     Count 2 charges Defendants Gerace, Ermin and Hinkle with a

17   violation of 18 USC 1512(k).  This a witness tampering

18   conspiracy charge.

19     Count 3, there is a --

20         THE COURT:  What's the --

21         MS. CHALBECK:  The government's position is there is

22   a statutory maximum of life as charged because the obstruction

23   relates to the conduct in the case which was obstructed

24   carries a life penalty, and because of the status.

25         THE COURT:  All right.  As I recount, too, it would

1  be, at least potentially, death-penalty eligible.  Can the

2  government commit that you're not seeking the death penalty?

3           MS. CHALBECK:  The government --

4           MR. TRIPI:  Hang on.  No, Your Honor.  We cannot

5  commit at this time.  That will have to go through a

6  departmental process but, as charged, in order for an

7  indictment to be death-penalty eligible, you have to allege

8  certain statutory death penalty factors that are not alleged

9  in this indictment.  So, therefore, that is why Ms. Chalbeck

10 has stated, as charged, the maximum is life at this time.

11          THE COURT:  Well, the reason I ask is that, as you

12 know, if there's a possibility of the death penalty, we're

13 going to need to get learned counsel.

14          MR. TRIPI:  At this point, on this indictment, that's

15 not possible.

16          THE COURT:  All right.  Okay.  Thank you.

17          MR. TRIPI:  You're welcome.

18          MS. CHALBECK:  Count 3 charges an offense under 18

19 United States Code, Section 1513(f).  This a witness

20 retaliation conspiracy.  The government's position on the

21 maximum penalty is the same as it is with respect to Count 2,

22 that is, that the statutory maximum is life, as charged, and

23 also because the obstruction penalty relates to the conduct in

24 the case which was obstructed, and it involves a death.  That

25 count charges --

1          THE COURT:  The maximum on that is?  I'm sorry.

2          MS. CHALBECK:  The maximum penalty is life, Your

3  Honor.

4          THE COURT:  Okay.

5          MS. CHALBECK:  That count is Defendants Gerace,

6  Ermin, and Hinkle.

7          THE COURT:  Now, on the charges you've mentioned thus

8  far, are there mandatory minimums on any of them?

9          MS. CHALBECK:  No, Your Honor.

10          THE COURT:  Okay.

11          MS. CHALBECK:  Defendant Gerace is only charged with

12  Counts 1 through 3.

13      I'll now turn to the charge exclusive to Defendant Ermin.

14  Mr. Ermin is charged in Count 24 of the second superseding

15  indictment with a violation of 18 United States Code, Section

16  922(g)(3).  That's an unlawful user in possession of a firearm

17  and ammunition.  That offense carries a 15-year maximum

18  penalty.  Mr. Hinkle was charged with Count 1 through 3.  I've

19  gone over those.

20      He is further charged in Counts 19 through 22.  Count 19

21  charges Mr. Hinkle with an offense under 21, United States

22  Code, Section 841(a)(1) and 841(b)(1)(B)(vii), that's a charge

23  with manufacturing and possession with intent to distribute

24  100 or more marijuana plants.  That offense has a statutory

25  mandatory minimum penalty of five years, and a statutory

1   maximum of 40 years.

2        Mr. Hinkle is further charged in Count 20 with an offense

3   under 21 United States Code, Section 856(a)(1).  That's a

4   maintaining a drug-involved premises offense.  There is a

5   maximum penalty of 20 years imprisonment there.

6        He is further charged in Count 21.  That's an offense

7   under 18 United States Code, Section 924(c)(1)(A)(i), for

8   possession of a firearm in furtherance of drug trafficking.

9   There is a statutory mandatory minimum penalty of five years

10  of imprisonment on that offense and, by operation of the

11  statute, that mandatory minimum runs consecutive to any

12  offense -- any sentence that Mr. Hinkle receives for any other

13  offense.

14       Finally, he is charged in Count 22 with a violation of 18

15  United States Code, Section 922(g)(1), for being a felon in

16  possession of a firearm and ammunition.  That offense carries

17  a 15-year maximum penalty.

18            THE COURT:  Thank you.

19            MS. CHALBECK:  Mr. Barnes is charged in Counts 27 and

20  28.  Count 27 charges him with a violation of 18, United

21  States Code, Section 922(g)(1), for being a felon in

22  possession of a firearm.  That offense carries a 15-year

23  maximum penalty.

24       He is further charged in Count 28 for violating 18, United

25  States Code, Section 922(g).  That's possession of a stolen

 1   firearm.  That offense carries a 10-year maximum penalty.

 2          THE COURT:  Thank you.  Gentlemen, each of you are

 3   legally presumed innocent of these charges at the present

 4   time.  Each of you have the right to remain silent.  You

 5   cannot be compelled to testify against yourselves, but

 6   anything that you do say may be used against you.  Each of you

 7   are entitled to be represented by an attorney at all stages of

 8   this proceeding and, if you cannot afford an attorney, one

 9   will be appointed for you.

10      Mr. Foti, are you fully retained to represent Mr. Gerace?

11          MR. FOTI:  Judge, I am not at this point.  I --

12   actually, to clarify that, I am fully retained in regard to

13   another pending matter --

14          THE COURT:  Right.

15          MR. FOTI:  -- before Judge Vilardo that was

16   previously scheduled for trial.  I'm fully retained along with

17   co-lead counsel Eric Soehnlein.  We did not account for this

18   particular set of charges.  And, obviously, we expect that

19   there is a pretty significant scope in terms of what is

20   alleged and what the discovery will be here.

21      So, I understand that there's no provisional

22   representation in federal court.  However, given the fact

23   that, I currently am retained on the other matter, I would ask

24   to appear at this time for purposes of initial proceedings

25   with the expectation and the intention of becoming fully

1   retained on this matter as well.  There is just going to be

2   some logistical issues that we'll need to work through, and

3   that's going to take some time, because resources have already

4   been expended in the other case, as well as other legal issues

5   that are pending in the other case.

6          THE COURT:  Okay.  All right.  Mr. Gerace, do you

7   have any objection to Mr. Foti representing you provisionally

8   today without a guarantee that he will be fully retained but

9   with the likelihood that he will be?

10          DEFENDANT GERACE:  No, Your Honor.

11          THE COURT:  You don't have an objection?

12          DEFENDANT GERACE:  No objection.

13          THE COURT:  Okay.  Thank you.  Thank you.  Do you

14   waive the formal reading of the second superseding indictment?

15          MR. FOTI:  We do.  We enter a not-guilty plea as to

16   all three counts against Mr. Gerace.

17          THE COURT:  Okay.  Thank you.  And we'll come back,

18   in a moment, to other issues.

19       Mr. Ermin, where is Mr. Muscato?

20          MR. MUSCATO:  Right here, Your Honor.

21          THE COURT:  Oh, there you are.  Okay, Mr. Muscato.

22   You, I understand, were -- have been retained in another

23   matter.  What's your status as -- with respect to this case?

24          MR. MUSCATO:  I was retained in other matter;

25   however, I have not been fully retained with respect to this

1   indictment.  I can't, in all due candor, say that I will be

2   retained, but, with Mr. Ermin's permission, and the Court's

3   permission, I am willing to appear with him this morning for

4   purposes of this arraignment only.

5              THE COURT:  Okay.  And, Mr. Muscato, are you

6   agreeable to that?

7              MR. MUSCATO:  Mr. Ermin?

8              THE COURT:  I'm sorry.  Mr. Ermin?

9              DEFENDANT ERMIN:  Yes.

10             THE COURT:  Okay.  And then, at some point, you'll

11  advise whether or not you're going to be fully retained and,

12  if not, we'll have to address what the next step will be.

13             MR. MUSCATO:  Of course.  Absolutely.

14             THE COURT:  Okay.  Do you waive the formal reading of

15  the second superseding indictment?

16             MR. MUSCATO:  We'd waive a reading, enter a plea of

17  not guilty.

18             THE COURT:  Okay.  Thank you.

19        Mr. Bogulski, where are you, sir?  There you are.

20             MR. BOGULSKI:  Good morning, Your Honor.

21             THE COURT:  Good morning.  You are -- have been --

22             MR. BOGULSKI:  I was assigned.

23             THE COURT:  -- appointed --

24             MR. BOGULSKI:  Yes.

25             THE COURT:  -- in another matter?

```
 1              MR. BOGULSKI:  That's correct, Judge.

 2              THE COURT:  Would you be willing to accept an

 3    appointment in this case?

 4              MR. BOGULSKI:  Yes, Your Honor.

 5              THE COURT:  Okay.  Mr. Hinkle, do you agree to have

 6    Mr. Bogulski appointed to represent you in connection with

 7    this matter?

 8              DEFENDANT HINKLE:  Yes.

 9              THE COURT:  All right.  Do you waive the formal

10    reading of the second superseding indictment?

11              MR. BOGULSKI:  Yes, we do, Judge.  We waive the

12    formal reading and enter a not-guilty plea at this time.

13              THE COURT:  Thank you.

14         And, Mr. Cotter, you were appointed to represent

15    Mr. Barnes in another matter.

16              MR. COTTER:  That is correct, Judge.  I'd acknowledge

17    receipt, waive the reading, enter a plea of not guilty.

18              THE COURT:  All right.  You'll accept an appointment

19    in this case?

20              MR. COTTER:  That's correct.

21              THE COURT:  Okay.  And you, Mr. Cotter -- excuse

22    me -- Mr. Barnes, you are agreeing to having Mr. Cotter

23    continue to represent you in this case?

24              DEFENDANT BARNES:  Yes, Your Honor.

25              THE COURT:  All right.  You waive the formal reading
```

1   of the second superseding indictment?

2          MR. COTTER:  I do.

3          THE COURT:  And enter a plea of not guilty, correct?

4          MR. COTTER:  Yes.

5          THE COURT:  Okay.  Thank you.

6      Now, in terms of detention or release, I understand that

7   at least a couple of these gentlemen are already detained.

8   What's the government's position and what's counsel's

9   position?

10          MS. CHALBECK:  Your Honor, I believe all of the

11   present defendants have been ordered detained pursuant to

12   separate orders of detention.

13          THE COURT:  Okay.  Is that correct, counsel?  You all

14   agree?

15          MR. FOTI:  Yes.

16          THE COURT:  All right.

17          MS. CHALBECK:  And --

18          MR. MUSCATO:  Yes, Your Honor.

19          THE COURT:  All right.  Okay, then.  I guess, what I

20   would say, is they'll all -- they will remain detained.  They

21   reserve their right to request reconsideration in the future

22   based on changed circumstances.

23          MS. CHALBECK:  Thank you, Judge.

24          THE COURT:  Okay.  Now, then, the remaining issue is

25   a scheduling order.  And, until the entire counsel situation

1  is clarified as to all defendants, I don't think it's

2  appropriate to talk about a scheduling order today.  What I

3  would propose is that, once everybody has been arraigned and

4  once counsel has been finalized for all of the defendants,

5  that we reconvene at that point to set a scheduling order.

6  Does that make sense?

7          MS. CHALBECK:  Yes, Your Honor.

8          THE COURT:  Counsel?

9          MR. FOTI:  Judge, my only thought on this is, if I

10  was fully retained, the request I imagine that I would be

11  making is that we consider bifurcating non-dispositive and

12  dispositive motions and that -- at least initiate scheduling

13  relate to disclosure of discovery.

14     I understand the point that we're not fully retained on

15  this matter yet, and disclosure is something the government is

16  probably going to want to hold off on until we have shored up

17  confirmation that these particular attorneys are representing

18  these particular defendants.  But, with that said, it's also

19  very difficult to determine what we need in terms of resources

20  for engagement and to be retained without having some idea of

21  what the scope of the evidence is.

22     So, I would ask that at least some preliminary disclosure

23  be provided, beyond the indictment, to give counsel an idea of

24  what's going to be involved here in terms of the defense of

25  this case, in terms of motion practice, in terms of the

1   timeframe associated with a trial.  Rule 12 notice could

2   probably accomplish that, but more complete Rule 16

3   disclosures would do a better job of being able to allow

4   counsel to provide a good faith representation to this Court

5   as to when we become fully retained.

6           THE COURT:  Counsel?

7           MS. CHALBECK:  Your Honor, keeping in mind that this

8   issue is not exactly ripe at this moment due precisely to the

9   counsel -- outstanding counsel issues that Mr. Foti himself

10  acknowledged, the government would be opposed to anything that

11  builds delay into this case.  The second superseding

12  indictment is very detailed.  We will, of course, follow our

13  discovery obligations, but any kind of process that is going

14  to engineer delay is something that we would oppose.

15          THE COURT:  Well, let me just -- that cuts both ways

16  because if Mr. Foti is not able to be retained and new

17  counsel, either appointed counsel or some other retained

18  counsel, has to appear, that's necessarily going to involve

19  delay as well.

20      So, I'm not going to order that disclosure take place

21  today, but I am going to direct the parties to talk with each

22  other and perhaps cooperatively give as much information as

23  you can so that he can make -- he and Mr. Soehnlein can decide

24  what their status is going to be.  Because, otherwise, we're

25  going to be -- I think we're going to be delayed for one

1  reason or another.  What I'm going to suggest, counsel, is

2  that, as I said earlier, we need to -- I arraigned a few of

3  the defendants yesterday; more today.  I believe there's going

4  to be another one later today.  So, let's get everybody

5  arraigned and then reconvene in a couple weeks to, hopefully,

6  finalize the counsel status, and talk about a scheduling

7  order.

8         MR. FOTI:  Judge, only one other thing, and I am fine

9  with that.

10     This other issue I think we can probably address further

11  in a couple weeks when we reconvene, but I don't necessarily

12  agree with, and I remain silent at, that point isn't intended

13  to suggest that I agree with the position of the government

14  that there's no possibility that capital resources should be

15  expended based on this particular indictment, and the way it's

16  charged.

17     I think the Court correctly noted that the possibility of

18  pursuit of a capital prosecution does support the appointment

19  of learned counsel and other capital resources.  And the

20  government is not willing to say that they don't intend to

21  pursue an indictment or charges that ultimately involve a

22  death-eligible component to it.  That seems to me, at least

23  initially, to satisfy the possibility that the Court has

24  referenced that it would require the appointment of learned

25  counsel, other capital resources in the defense of this matter

1    for Mr. Gerace as well as, I imagine, all of the co-

2    defendants.  I may be wrong about who would be entitled to

3    that, but I would like to take that up further in a couple

4    weeks when we reconvene.  I don't think that that is as simple

5    as it's not charged in that particular way at this time, so

6    it's a non-issue.  I think it is an issue, specifically given

7    the fact the government was non-committal when the Court

8    inquired as to what its intention is at this point.

9            THE COURT:  Okay.

10           MR. TRIPI:  Judge, I need to respond to that.  There

11   is simply nothing non-committal about the fact that the

12   statutory-required factors are not alleged.  Therefore, all

13   the defendants, if they wanted to today, could plead guilty.

14   We could not seek the death penalty.  There is no possibility

15   on this indictment of a death penalty; therefore, the right to

16   learned counsel, statutorily and under the case law, ceases to

17   exist.  It's non-existent.

18      Now, in any complex case, the Court has discretion to

19   appoint second counsel, but they do not have a right to

20   learned counsel at all whatsoever on this indictment.

21   Practically what would happen is if the counts that could have

22   theoretically carried a death penalty, if they wanted to plead

23   guilty, we would need to get departmental approval to sign off

24   on a plea, and that process doesn't involve the defense

25   whatsoever.  So, if Mr. Foti, on Mr. Gerace, says he wants to

1  plead guilty to this, I'll go get the authorizations that I

2  need, and he can move forward on this indictment.  So, there

3  is no possibility.

4          THE COURT:  Mr. Tripi, I think it's a pretty safe bet

5  that he's not going to do that today.

6          MR. TRIPI:  I understand, but I'm just highlighting

7  the point.

8          THE COURT:  I want to think about this a little bit,

9  and I think it's in everybody's interest to get clarity on

10  this issue before we get too far down the road because, if

11  it's a situation that calls for appointment of learned

12  counsel -- and I'm not saying it does or doesn't, I want to

13  think about it -- but if it does, and we get too far down the

14  road without that having occurred, talk about delays.  It's

15  going to be much more delay.

16      So, what I'm going to ask is that, before our next

17  proceeding, Mr. Tripi, you or your colleagues can address in

18  writing to me why you feel there's no entitlement to learned

19  counsel.  Mr. Foti and defense counsel, anybody -- subject at

20  least to Count 2 -- can address why you feel they should be

21  appointed, and we can sort that out at the next proceeding.

22  Okay?

23          MR. FOTI:  Sounds good, Judge.  Thank you.

24          THE COURT:  Now, since these defendants are all in

25  custody right now, might I suggest maybe we reconvene and, you

 1  tell me, but I'm thinking maybe three weeks or so so that we

 2  can sort out the counsel issue and, if appropriate, at that

 3  time, set a scheduling order.

 4          MS. CHALBECK:  Your Honor, could we propose two

 5  weeks?

 6          THE COURT:  Why?  I mean, what's the difference?

 7          MS. CHALBECK:  I think the government's position is

 8  that we would like this case to proceed as expeditiously, and

 9  as carefully, as possible, and two weeks would give the

10  government, I think, ample time to file this written response.

11  And it seems like Your Honor's suggestion of convening the

12  status conference is to, in part at least, hear the

13  government's response, and then maybe set a --

14          THE COURT:  Well, I'll hear the government's response

15  and counsel's response, both.  But, defense counsel, what

16  about two weeks versus three weeks?

17          MR. FOTI:  Judge, we can appear in two weeks, but the

18  reality is, we're not going to have resolved the issue of

19  retainer in that time.  So, I don't really see what the point

20  is in coming back at that time.  Three weeks will be a

21  challenge, but it certainly, gives us a little bit more time

22  to work through that.

23      The reality is, Judge, to become retained on the other

24  matter, it took, I am approximating out of my memory here, but

25  it took, I think, approximately a month to work through the

1    terms of an engagement.  And that was when there was still

2    more resources available to work out a retainer.

3         At this point, with resources expended on the other case,

4    I don't know how -- I get the government wants -- says they

5    want to move forward.  They're also objecting to beginning the

6    disclosure process.  To the extent they want to move forward,

7    coming back in two weeks isn't going to resolve the issue that

8    we have to resolve first.  So, I'd say three weeks would be

9    appropriate.

10        We will attempt to have an answer within that timeframe

11   given the fact that my client needs to have that answer

12   provided and needs this case to be able to move forward.  It's

13   going to be a challenge to do so within three weeks, but that

14   will be the goal if that's the date that's set.

15             THE COURT:  All right.  I'm going to set three weeks.

16   January 31st.  Currently have the day open so, counsel, you

17   tell me what works for everybody.

18             MR. FOTI:  I'm wide open.

19             THE COURT:  Might suggest 2 o'clock?

20             MS. CHALBECK:  That works, Judge.

21             MR. COTTER:  Okay.

22             MR. MUSCATO:  Two o'clock is good.  Okay.

23             THE COURT:  But, in advance of that, I would like the

24   submissions on the issue of whether learned counsel is or is

25   not necessary at this point.  I would like that to be

1   submitted by a week in advance, so, January 24th.

2       And, again, I'm not ordering any disclosure to take place

3   at this time, but I am directing counsel for the government

4   and Mr. Foti to talk to each other and try to ascertain, as

5   best as reasonably possible, which might be entailed -- what

6   might be involved in enabling him to make his determination.

7   Because, again, if he can't finalize it, we're going to be

8   delayed further, and I'd like to see that issue resolved.

9       One final matter, counsel, as in any new criminal case,

10  I'm going to read a brief statement and ask -- I will follow

11  it up with a written order.  I hereby direct the government to

12  comply with its obligations under *Brady v. Maryland* and its

13  progeny to disclose to the defendants all information, whether

14  admissible or not, that is favorable to the defendants,

15  material either to guilt or to punishment, and known to the

16  government.

17      The possible consequences of non-compliance may include

18  dismissal of individual charges or of the entire case, the

19  exclusion of evidence, and professional discipline, or court

20  sanctions on the attorneys responsible.  I will be entering a

21  written order confirming this directive, and I order the

22  government to review and comply with that order.

23      Ms. Chalbeck, can you confirm that the government

24  understands its obligations and will follow them?

25           MS. CHALBECK:  Yes, Your Honor.

1            THE COURT:  Okay.  One final matter is Speedy Trial

2    time.  Anybody want to be heard as to the Speedy Trial Act

3    calendar between today and January 31st?

4            MR. COOPER:  Yes, Judge.  The government is

5    requesting that the time between today's date and January

6    31st, 2024 be excluded from the Speedy Trial Act pursuant to

7    Title 18, United States Code, Section 3161(h)(7)(A), and

8    (h)(7)(B)(iv) in that it's in the interest of justice and the

9    best interest of the defendant that this continuance be

10   granted to allow the defendants to confer with their counsel.

11       Specifically, with respect to Defendant Gerace, he's

12   requested that this three-week period of time allow him to

13   discuss retaining Mr. Foti as his attorney in this matter.

14   Obviously, having an attorney representing him in the case and

15   resolving that situation inures to his benefit and outweighs

16   the interest of the public and the defendant in a speedier

17   trial.  Additionally, Judge, the government is going to use

18   that time to discuss with defense counsel what the Court has

19   requested that we discussed, which is, what disclosures, if

20   any, are necessary to ascertain the counsel situation.

21       In addition to that, Judge, this exclusion of time is

22   going to allow for briefing by both the government and the

23   defense by January 24th on the issue of whether learned

24   counsel is required.  That's also in the best interest of the

25   defendants and it outweighs the interest of the public and the

1    defendants in a speedier trial.

2           THE COURT:  Okay.  Thank you.  Defense counsel, do

3    you all agree to the exclusion?

4           MR. COTTER:  No objection.

5           MR. MUSCATO:  No objection.

6           MR. FOTI:  We don't.  No objection.

7           THE COURT:  Oh, okay.  All right.  Thank you.  I'll

8    adopt counsels' representations as my findings concerning an

9    exclusion of time between today and January 31st, 2024 from

10   the Speedy Trial Act calendar.

11      For the reasons stated by counsel, I find that the ends of

12   justice served by the granting of the continuance outweigh the

13   best interest of the public and the defendants in a speedy

14   trial.  Seventy days will remain on the calendar as of January

15   31st.  Anything further today, counsel?

16          MS. CHALBECK:  No, Your Honor.  Thank you.

17          MR. FOTI:  No.

18          THE COURT:  All right.  Thank you all.  The

19   defendants are remanded.

20   (Proceedings ended at 10:07 a.m.)

21

22

23

24

25

1            CERTIFICATE OF TRANSCRIBER

2

3        In accordance with 28, USC, 753(b), I certify that

4   this is a true and correct record of the proceedings held in

5   the United States District Court for the Western District of

6   New York before Honorable Magistrate Judge Jeremiah J.

7   McCarthy on January 10th, 2024.

8

9

10                          s/ Megan E. Pelka, RPR

11                          Megan E. Pelka, RPR

12                          Transcriber

13

14

15

16

17

18

19

20

21

22

23

24

25