IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

-vs-

PETER GERACE, JR.,

Defendant.

_____

**MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISCLOSURE OF THE DEFENDANT'S FINANCIAL AFFIDAVIT**

Docket No. 23-CR-99

Respectfully submitted on February 27, 2024, by:

| | |
|---|---|
| Mark A. Foti, Esq. | Eric M. Soehnlein, Esq. |
| The Foti Law Firm, P.C. | Soehnlein Law, PLLC |
| 16 West Main Street, Suite 100 | 2100 Main Place Tower |
| Rochester, New York 14614 | 350 Main Street |
| Phone: (585) 461-1999 | Buffalo, NY 14202 |
| Fax: (585) 491-6512 | Phone: (716) 771-9092 |
| E-mail: mark@fotilaw.com | E-mail: eric@soehnleinlaw.com |

Defendant Peter Gerace, Jr., by and through counsel, Mark A. Foti, Esq., provides the following memorandum in opposition to the Motion by the Government seeking disclosure of Mr. Gerace's financial affidavit in the above case. Dkt. # 71.

The Table of Contents is as follows:

Introduction ................................................................................................................................ 1

Background ................................................................................................................................ 2

Applicable Law and Analysis ................................................................................................ 4

    The Judicial Conference ................................................................................................... 5

    This District's Plan ........................................................................................................... 6

    The Law Does Not Favor Disclosure ............................................................................ 9

Government's Motion for Disclosure ................................................................................ 12

    Financial Affidavits are not "Judicial Documents" ................................................. 13

    There is No First Amendment Right of Access to the Financial Affidavits ........ 17

Conclusion ............................................................................................................................... 19

## Introduction

The US Attorney's Office's has relentlessly pursued Mr. Gerace with the backing of immeasurable resources. The Government has at least seven Assistant US Attorney's prosecuting the various charges it has brought against Mr. Gerace. It has paralegals and support staff assisting in these cases. It has the assistance of case agents and multiple law enforcement agencies. The Government can act with virtually no oversight by the Court

as to how it expends funds and resources in the prosecution of Mr. Gerace, and yet, it now seeks to supervise the Court's determination regarding eligibility for appointment of counsel.

To facilitate the appointment of counsel, the Court requested financial information from Mr. Gerace. The Court has appropriately permitted Mr. Gerace to provide that information *ex parte* for in camera review by this Court.

The Government now seeks the financial affidavit of Mr. Gerace. The laws, local CJA plan, and principles of fundamental fairness dictate that Mr. Gerace's application should remain *ex parte*, in camera and under seal.[1] For the reasons set forth below, the Government's motion should be denied.

## Background

Peter Gerace, Jr., along with John Thomas Ermin, Michael Roncone, Frank Knight, Howard Hinkle, Jr., Simon Gogolack, Cortnie Barnber, Bernard Byrd III, and Scott Barnes are named in a multi-count Second Superseding Indictment (hereafter "the indictment"). Dkt. # 24.

The indictment charges Mr. Gerace with three violations of federal law including: an obstruction of justice conspiracy (Count 1); a witness tampering conspiracy (Count 2); and a witness retaliation conspiracy (Count 3).

---

[1] In the event the Court determines Mr. Gerace is not eligible for assigned counsel, Mr. Gerace requests the opportunity to consider withdrawing the financial materials provided to the Court.

The charges in counts two and three focus on allegations of a conspiracy related to Crystal Quinn, an individual who the Government had intended to call as a witness against Mr. Gerace in the trial scheduled for case numbers 19-cr-227 and 23-cr-37. Crystal Quinn died in August 2023 from a reported drug overdose.[2]

At a status conference on February 23, 2024, even though the indictment had already been pending for over six weeks, the Government described discovery as being so voluminous that the Government could not complete disclosure in an additional 60 days, and it requested 90 days.

This amount of time for disclosure appears to exceed the time typically needed for Rule 16 Disclosure in most cases in this district, including most Mega Cases.

If the Government's representation that it would need 90 additional days for disclosure was made in good faith, then this case should be designated as a "Mega Case," which would still require appointment counsel and resources consistent with the size and complexity of this case. The defendants will undoubtedly need substantial resources to defend this matter.

Mr. Gerace has requested that counsel be appointed and that he be provided with authorization to obtain resources to appropriately defend this case.

---

[2] The allegations in these counts initially gave rise to discussions regarding the potential appointment of Learned Counsel and capital resources. However, on February 23, 2024, the Government filed Notice that it does not intend to seek the death penalty. Dkt. # 75.

Prior to making his request for counsel to be appointed, Mr. Gerace requested that his financial affidavit and associated material be submitted *ex parte* for in camera review.

This Court initially granted that request. Dkt. # 53 ("The court requests submission of financial disclosures. Defendant Gerace requests to submit such disclosure *ex parte*; the government objects. The court directs such disclosures to be made *ex parte*, but that the government may argue for the release of those records.")

The Government filed a motion for disclosure of the financial affidavits for Mr. Gerace and co-defendant John Thomas Ermin. Dkt. # 71.

## Applicable Law and Analysis

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." The Supreme Court has "construed this to mean that in federal courts counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Gideon v. Wainwright*, 372 U.S. 335, 339–40 (1963) (*citing Johnson v. Zerbst*, 304 U.S. 458 (1938)).

The Criminal Justice Act of 1964, Pub. L. No. 88–455, 78 Stat. 552 implements this right, codified at 18 U.S. Code § 3006A which addresses "Adequate representation of defendants."

4

Specifically, "[r]epresentation shall be provided for any financially eligible person" in a range of proceedings, including for anyone who, like Mr. Gerace, "is charged with a felony." 18 U.S.C. § 3006A(a)(1)(A).

The standard for representation is straightforward: "Unless the person waives representation by counsel, the United States magistrate judge or the court, if satisfied after appropriate inquiry that the person is financially unable to obtain counsel, shall appoint counsel to represent him. Such appointment may be made retroactive to include any representation furnished pursuant to the plan prior to appointment." 18 U.S. Code § 3006A(b).

The Judicial Conference

The statute contains an express delegation of rulemaking authority[3]: "The Judicial Conference of the United States may, from time to time, issue rules and regulations governing the operation of plans formulated under this section." 18 U.S.C. § 3006A(h). Pursuant to this statutory delegation, the Judicial Conference has promulgated

---

[3] "When Congress delegates to an agency the power to promulgate rules, 'the [agency] adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner.'" *United States v. Chestman*, 947 F.2d 551, 557 (2d Cir. 1991) (*quoting Batterton v. Francis*, 432 U.S. 416, 425 (1977)). That is, where "Congress delegates legally binding interpretive authority to an agency, 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.'" *Oceana, Inc. v. Pritzker*, 24 F. Supp. 3d 49, 69 (D.D.C. 2014) (*quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). *See also United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) ("[A]dministrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.").

5

guidelines for administering the Criminal Justice Act. *See* 7A Jud. Conf. of the U.S., Guide to Judiciary Policy. *See also id.* § 110.30(b) (*citing* § 3006A(h), explaining that Volume 7A of the Guide "is a compendium of Conference policy adopted under that authority").

The Judicial Conference's guidelines direct that "[f]inancial affidavits (such as Form CJA 23) seeking the appointment of counsel should not be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access. If the financial affidavit is docketed it should be filed under seal." 7A Jud. Conf. of the U.S., Guide to Judiciary Policy § 210.40.20(h).

More to the point, in direct contradiction to the Government's motion for disclosure, the Judicial Conference's guidelines provide that "[e]mployees of ... U.S. attorney offices should not ... seek to obtain information from a person requesting the appointment of counsel concerning the person's eligibility," 7A Jud. Conf. of the U.S., Guide to Judiciary Policy § 210.40.20(e).

<u>This District's Plan for Furnishing Representation Including Counsel, Investigative, Expert, and Other Services Necessary for Adequate Representation</u>

The statute requires the district to establish a plan for appointment of counsel and associated resources. 18 U.S. Code § 3006A(a)("Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section. Representation under each plan

6

shall include counsel and investigative, expert, and other services necessary for adequate representation.")

The plan for the Western District of New York is contained in the WDNY Revised Plan for Furnishing Representation pursuant to the Criminal Justice Act 18 U.S.C. § 3006A ("hereafter "WDNY CJA Plan").[4]

The WDNY CJA plan does not appear to directly address the issue of whether the Court is directed to accept the financial information *in camera* or allow it to be reviewed by the US Attorney's Office.

However, the WDNY CJA mandates that courts "comply" with Volume 7A of the Judicial Conference's guidelines, which includes the § 210.40.20(e) provision indicating that the US Attorney's Office should not "seek to obtain information from a person requesting the appointment of counsel concerning the person's eligibility."

Furthermore, the WDNY CJA separately reiterates that "[e]mployees of law enforcement agencies shall not participate in the completion of the financial affidavit *or seek to obtain information concerning financial eligibility*." WDNY CJA Plan, Section (B)(1)(a)(ii), at page 5 (emphasis added).

The WDNY CJA Plan also itemizes additional duties, specific to the US Attorney's Office, which includes limiting the use of any information obtained from a defendant in

---

[4] Available at https://www.nywd.uscourts.gov/sites/nywd/files/CJA%20Plan%202021-10-31%20Signed%20with%20Circuit%20Approval.pdf.

7

connection with his request for appointment of counsel. WDNY CJA Plan, Section (B)(1)(b)(iii), at page 5-6.

Although, the WDNY CJA Plan includes a section covering the duties of all law enforcement and then a subsequent section covering duties specific to the US Attorney's office, there is nothing to suggest that those two sections are mutually exclusive.

As stated on the Department of Justice website, "[w]ith Offices in Buffalo and Rochester, *the United States Attorney is the principal Federal Law Enforcement Officer* in the District." Western District of New York, Justice.gov, available at https://www.justice.gov/usao-wdny (last accessed Feb. 26, 2024)(emphasis added).

The Plan does not state that the US Attorney's Office should be excluded when it references law enforcement agencies, and such an interpretation would be illogical as the US Attorney's Office is categorically law enforcement.[5]

Accordingly, the WDNY CJA Plan directs that all law enforcement shall be prohibited from seeking to obtain information concerning financial eligibility; this would necessarily include employees of the US Attorney's Office.

---

[5] Consistent with that point, the WDNY CJA Plan specifies that is that upon the arrest of a defendant who has not retained counsel, it is the duty of "federal law enforcement officials [to] promptly notify, telephonically or electronically, the appropriate court personnel, who in turn will notify the Federal Public Defender of the arrest..." WDNY CJA Plan, Section (B)(1)(a)(i), at page 5 (emphasis added). Historically, upon information and belief, this duty of law enforcement is almost exclusively handled by the US Attorney's Office.

## The Law Does Not Favor Disclosure

The Government has no standing to be heard either concerning the Court's determination of the defendant's financial eligibility for appointed counsel or the Court's order concerning any financial contribution that the defendant is directed to make toward the cost of appointed counsel.

Conforming to that position and the WDNY CJA Plan, requests to submit financial affidavits *ex parte* have been granted in this District without deference to the Government's desire to review their contents.

For example, within the last two weeks, a defendant was permitted to submit a financial affidavit for *in camera* review as part of an application for appointed counsel in a case that is related to Mr. Gerace. *United States v. Rosenthal*, et al., 23-cr-102-LJV-HKS at Dkt. 27 (W.D.N.Y. 2024) ("TEXT ORDER granting [26] Motion to Seal Document as to Brian Rosenthal (1). For the reasons stated in the motion, defendant Brian Rosenthal shall be permitted to file his Financial Affidavit with the Court in camera and under seal").

The reason for this practice is plain -- there is no legitimate need or reason for the Government to have access to a defendant's financial affidavit or related information at this stage of the proceedings. Indeed, the Government's motion does not articulate any legitimate need for access to Mr. Gerace's financial information other than a broad suggestion that it is investigating Mr. Gerace.

9

In addition to this District's practices, there is additional existing authority for *ex parte*, sealed submissions of financial documentation related to appointment of counsel:

> The administration of the CJA is a judicial function for which the Judicial Conference of the United States has approved official guidelines. *In re Smith*, 586 F.3d 1169, 1172 (9th Cir. 2009). The prosecution is typically precluded from participating in the determination of a defendant's eligibility for CJA-appointed counsel. *See* The Guide, Vol. 7, Ch. 2, § 210.40.20(e) ("Employees of law enforcement agencies or U.S. attorney offices should not participate in the completion of the Form CJA 23 (Financial Affidavit) or seek to obtain information from a person requesting the appointment of counsel concerning the person's eligibility."); *id*. § 230.26.20(c) ("Case budgets should be submitted ex parte and filed and maintained under seal."); 18 U.S.C. § 3006A(e) (directing that CJA applications for services other than counsel should be filed ex parte, and proceedings on such applications should be heard ex parte); *see also United States v. Feldman*, 788 F.2d 625, 626 (9th Cir. 1986) (declining to call on government to brief a novel CJA reimbursement claim because "the [CJA] excludes the government from participation in the Act's compensation and reimbursement arrangements"); *United States v. Gonzales*, 150 F.3d 1246, 1257 (10th Cir. 1998) (the CJA process is non-adversarial and has "traditionally been closed to the prosecution").
>
> *United States v. Wells*, 879 F.3d 900, 913-14 (9th Cir. 2018).

What is more, the Judicial Conference of the United States (in its Guide to Judiciary Policy and its current Policy on Privacy and Public Access to Electronic Case Files) and the Advisory Committee on the Criminal Rules (in the Advisory Committee note to Rule 49.1 of the Federal Rules of Criminal Procedure) have gone further, stating that "financial affidavits filed in seeking representation pursuant to" the CJA and "*ex parte* requests for

authorization of investigative, expert or other services pursuant to" the CJA "shall not be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access." Fed. R. Crim. P. 49.1 note; 10 JUD. CONF. OF THE U.S, GUIDE TO JUDICIARY POLICY § 340; Jud. Conf. of the U.S., *Judicial Conference Policy on Privacy and Public Access to Electronic Case Files* (March 2008), https://www.uscourts.gov/rules-policies/judiciary-policies/privacy-policyelectronic-case-files.[6]

In the same vein, the Second Circuit has long recognized that the 18 U.S.C. § 3006, which mandates ex parte applications, does not provide for governmental involvement in defense applications for the authorization and appointment of services under the Criminal Justice Act (CJA) (*see United States v. Bloomer*, 150 F.3d 146, 148 (2nd Cir. 1998).

Other Circuits and district courts in this Circuit have also found that the intent of Congress that requests for authorizations and appointment under the CJA be done via *ex parte* applications is evident in the plain language of § 3006A(e) (*see United States v. Abreu*, 202 F.3d 386, 389 (1st Cir. 2000) (district court committed error by refusing to entertain application under 18 U.S.C. § 3006A[e][1] ex parte); *Lawson v. Dixon*, 3 F.3d 743, 751 (4th

---

[6] Although CJA materials are typically not to be shared with the public, that may change in specific circumstances; another subsection of the Act provides that "the amounts paid . . . for services in any case shall be made available to the public . . . upon the court's approval of the payment" which permits a court to delay or limit such disclosure if necessary to protect, among other things, "any person's 5th amendment right against self-incrimination," "the defendant's 6th amendment rights to effective assistance of counsel," "the defendant's attorney-client privilege" or "the work product privilege of the defendant's counsel." *Id*. § 3006A(d)(4).

Cir. 1993) (court decided "without hesitation" that *ex parte* proceedings are the only proper means of adjudicating appointment motions under the Criminal Justice Act).

The law favors the financial affidavit may be submitted *ex parte*, and the Government's motion fails to support a contrary conclusion.

### **Government's Motion for Disclosure**

Notwithstanding the provisions of the Judicial Conference and the WDNY CJA Plan, the government seeks disclosure of Mr. Gerace's financial affidavit, relying primarily on *United States v. Avenatti*, 550 F. Supp. 3d 36 (S.D.N.Y. 2021), which identified a First Amendment and common law right of access to CJA financial affidavits.

As a threshold issue, the Western District of New York is not obligated to follow the lead of the Southern District of New York regarding the manner in which counsel is appointed, particularly when 18 U.S.C. § 3006A delegates authority to each District to develop its own plan.

Specifically, while the SDNY CJA Plan[7] does include some similar language limiting the use financial information in the prosecution of the defendant, it does not include the broader limitations on law enforcement that exist in the WDNY CJA Plan, including the requirement that "[e]mployees of law enforcement agencies shall not … seek to obtain information concerning financial eligibility." Moreover, unlike the WDNY

---

[7] The United States District Court for the Southern District of New York, Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act (2019), available at https://www.nysd.uscourts.gov/sites/default/files/2023-06/CJA%20PLAN%20-%202023.pdf.

12

CJA Plan, the SDNY CJA Plan does not appear to compel compliance with Volume 7A of the Judicial Conference's guidelines.

The Government's reliance on *Avenatti* is misplaced, but even if this District was subject to the SDNY CJA Plan, the analysis in *Avenatti* would not appropriately apply here.

### Financial Affidavits are not "Judicial Documents"

Rather than start with the pertinent positive law, the Government argued for the application of the analysis used in *Avenatti* to determine financial affidavits are a "judicial document" subject to a presumption of public access.

The Court in *Avenatti* was mistaken; financial affidavits are administrative, not judicial, as they do not implicate the core Article III function of adjudicating issues bearing on a case's merits.

"[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I") Likewise, "[t]he fact that a document is relevant to the subject matter of a judicial proceeding, or that the proceeding was in some way stimulated by the document, does not make it public." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 168 n.15 (2d Cir. 2013). Rather, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process for it to be designated a judicial document." *Amodeo I*, 44 F.3d at 145.

13

Determining a defendant's eligibility for appointed counsel is an administrative, not judicial, function, because that task lies far afield from a judge's principal job—resolving the parties' substantive legal claims and deciding the merits of a case. *In re Boston Herald*, 321 F.3d 174, 189 (1st Cir. 2003)("[W]e do not think that CJA eligibility documents qualify" as "judicial records. ... Rather, they are administrative paperwork generated as part of a ministerial process ancillary to the trial."); *see also United States v. Gonzales*, 150 F.3d 1246, 1254–55 (10th Cir. 1998) (materials relating to CJA voucher/compensation process administrative, not judicial).

A court reviewing a defendant's financial affidavits does not do so "in order to dispose of any issue as to the elements of the criminal charges against him." *Boston Herald*, 321 F.3d at 189. Rather, "the CJA eligibility documents relate[] merely to the judge's role in the management of the trial." *Id*. Such papers "are not trial documents in any accepted sense of that term. They do not go to the guilt, innocence, or punishment of a defendant. They are not evidence of the crime. They are entirely ancillary to the trial. ... And ... the CJA documents are not directly related to the process of adjudication." *Gonzales*, 150 F.3d at 1255.

Many District Courts have made findings consistent with the First Circuit in *Boston Hearld* and the Tenth Circuit in *Gonzalez*. *See e.g.*, *United States v. Moore*, 2022 WL 1019215, at *2 (E.D. Ky. Apr. 5, 2022) (CJA financial affidavit was "at best, only quasi-judicial in nature and more akin to [an] administrative document[] than [a] judicial record[]

14

traditionally subject to public rights of access"); *United States v. McPartland*, 2021 WL 722496, at *4 (E.D.N.Y. Feb. 23, 2021) ("It is doubtful that ... CJA- related applications and submissions constitute judicial documents."); *United States v. McGee*, 2007 WL 2570240, at *8 (E.D. Wisc. Aug. 31, 2007) ("[T]he CJA Form 23 ... is not a judicial document, but rather, is an administrative document."); *United States v. Lexin*, 434 F. Supp. 2d 836, 849 (S.D. Cal. 2006) ("[T]he documents containing Defendants' personal financial information submitted to support their Requests for Appointment of Counsel, are not judicial documents. Rather, they are administrative documents not subject to disclosure to the public or press.").

The right to counsel is procedural, *see, e.g.*, *Edwards v. Vannoy*, 141 S. Ct. 1547, 1557 (2021). More to the point, whether Mr. Gerace meets § 3006A(b)'s eligibility standard does not concern his innocence or guilt, the admissibility of evidence, or any other matter touching on "the merits of the trial," *United States v. Wolfson*, 55 F.3d 58, 61 (2d Cir. 1995) Whether Mr. Gerace is "financially unable to obtain adequate representation" is collateral to the merits.

Furthermore, the Second Circuit has refused to classify documents as "judicial" even when were placed before judges and were consulted by those judges to resolve legal questions, including constitutional questions. For example, in *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125 (2d Cir. 2017), this Court deemed non-judicial a monitor's report regarding a corporate defendant's compliance with a deferred prosecution agreement,

15

even though the district court had relied on the report in deciding whether to approve the agreement and exclude time under Speedy Trial Act. *Id.* at 130–33, 142. And in *Wolfson*, this Court held that no right of access existed to the transcript of a witness's prior testimony and an AUSA's notes of interviews with the witness, even though the district court had reviewed these materials before denying the defendant's request to produce them pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), that is, in resolving a constitutional claim. 55 F.3d at 59, 61.

A conclusion that CJA financial affidavits are judicial documents would have dramatic and far-reaching consequences. If financial affidavits must be made public because a judge consults them when deciding whether to appoint counsel, then so must a host of other documents that are now filed under seal: Pretrial Services reports, reviewed to decide whether to release or detain an arrestee; juror questionnaires, reviewed to decide which venirepersons are qualified to sit; and Presentence Investigation Reports, reviewed for to decide what sentence to impose, to name just a few.

Mr. Gerace's financial affidavit and associated documentation does not qualify as judicial documents, and thus, the Governement's motion, relying on the analysis in *Avenatti* should be denied.

<u>There is No First Amendment Right of Access to the Financial Affidavits</u>

The Government argues a First Amendment right of access to financial affidavits, but it fails to properly apply the governing First Amendment tests in this Circuit. *E.g. In re New York Times Co.*, 577 F.3d 401, 409 (2d Cir. 2009).

The Government identifies no evidence of an historical tradition of access to documents submitted to a court to demonstrate eligibility for appointed counsel, or to proceedings at which counsel is appointed. The practice in the federal district courts confirms that confidentiality, not access, is the norm. Both the WDNY CJA Plan and the NDNY CJA Plan[8] mandate that courts "comply" with Volume 7A of the Judicial Conference's guidelines, including sealing provisions. The CJA Plan for the Eastern District of New York provides: "All statements of financial need shall be sealed other than for viewing by Pretrial Services, defense counsel and the Court." EDNY CJA Plan[9] at 11.

The Government also failed to argue why—contrary to the considered and longstanding policy of the Judicial Conference and the many federal district courts that follow its lead—disclosure, rather than confidentiality, improves the functioning of the CJA appointment process.

---

[8] United States District Court, Northern District of New York, General Order #1: Plan for the Composition, Administration and Management of the Panel of Private Attorneys and the Office of the Federal Public Defender Under the Criminal Justice Act (2022), available at https://www.nynd.uscourts.gov/sites/nynd/files/general-ordes/GO1_6.pdf.

[9] United States District Court for the Eastern District of New York, Revised Plan of the United States District Court for the Eastern District of New York Pursuant to the Criminal Justice Act of 1964 (18 U.S.C. § 3006A, As Amended), § IV(A) (2020), available at https://img.nyed.uscourts.gov/files/local_rules/cjaplan_2.pdf.

17

Furthermore, The Government fails to account for constitutional interests that favor *in camera* review of financial affidavits, including the right of indigent defendants to have the assistance of counsel without compromising their privacy. The Sixth Amendment and the Criminal Justice Act guarantee individuals charged with federal crimes a lawyer, even if they cannot afford to pay for one. That entitlement should not come at a cost to the individual's "constitutionally protected interest in the confidentiality of [his] personal financial information." *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 323 (2d Cir. 1999).

Even if a qualified First Amendment right of access to particular papers exists, that "does not mean that the papers must automatically be disclosed," for "[t]he First Amendment right of access to criminal proceedings is not absolute." *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) "[D]ocuments may be sealed if 'specific, on-the-record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id*.

Notably, in adjudicating *Avenatti*, the Court noted that the defendant's Fifth Amendment rights were the only countervailing interest cited by defendant against making the affidavit public, and that interest was protected with the understanding that the affidavit was to be conferred use immunity. *Id*.

Unlike *Avenatti*, the defendant's Fifth Amendment rights are not the only countervailing interest against disclosure. That is among at least three key constitutional

18

values that overcome any qualified right of access, including also financial privacy and the assistance of counsel.

In regard to the assistance of counsel, there are issues of attorney-client privilege at stake here. Because counsel is retained on the consolidated cases, docket nos. 19-cr-227 and 23-cr-37, Mr. Gerace's financial disclosure and related documents necessarily encompass details of the retainer in those cases, as well as memorialization of communications made between Mr. Gerace and counsel.

Thus, even if the Court were to concludes that First Amendment right of access is applicable to financial affidavits, in contravention of procedures promulgated by the Judicial Conference and the WDNY CJA Plan, this Court should still find that the preservation of privileged communications between attorney and client, among other considerations, constitute a "higher interest" that should support the *in camera* review of CJA financial materials in this particular instance.

Indeed, it is the exact type of information that is explicitly exempted from disclosure by the CJA Act.  See § 3006A(d)(4).

## **Conclusion**

For the reasons set forth above, Mr. Gerace respectfully requests that the financial information provided to the Court remain *ex parte*, in camera and under seal.

Dated: February 26, 2024

/s/ Mark A. Foti___
Mark A. Foti, Esq.

19