UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | **NOTICE OF MOTION** |
| vs. | |
| SCOTT J. BARNES, | Docket No. 1:23-CR-00099-LJV-JJM |
| Defendant. | |

---

| | |
|---|---|
| Motion By: | David B. Cotter, Esq., Attorney for Defendant Scott J. Barnes |
| Date, Time, & Place: | Before the Hon. Jeremiah J. McCarthy, U.S.M.J., 2 Niagara Square, Buffalo, New York 14202 at a date and time to be determined by the court |
| Supporting Papers: | Affirmation of David B. Cotter dated February 26, 2024 and Exhibits attached thereto |
| Relief Requested: | Release pending trial based on change of circumstances |
| Dated: | February 29, 2024<br>Buffalo, New York |

**COTTER & COTTER, P.C.**

_____
David B. Cotter, Esq.
*Attorney for Defendant Scott J. Barnes*
380 Cleveland Drive
Buffalo, NY 14215
Telephone: (716) 634-7920

TO: Joseph M. Tripi, Esq., AUSA
138 Delaware Avenue
Buffalo, NY 14202
(716) 843-5700

Nicholas Cooper, Esq., AUSA
138 Delaware Avenue
Buffalo, NY 14202
(716) 843-5700

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **AFFIRMATION** |
| vs. | Docket No. 1:23-CR-00099-LJV-JJM |
| SCOTT J. BARNES, | |
| Defendant. | |

STATE OF NEW YORK  }
COUNTY OF ERIE      } ss.:

    David B. Cotter, an attorney at law duly licensed to practice before the United States District Court for the Western District of New York and I affirm the following to be true under penalty of perjury.

1. I represent the Defendant, Scott J. Barnes in the above referenced matter and have since shortly after his arrest on December 7, 2023 and am fully familiar with the facts and circumstances of this case.

2. I make this Affirmation in support of Mr. Barnes' Motion for Release on Conditions pending trial in that there has been a change of circumstances since Judge Wolford's Decision and Order on January 3, 2024.

3. Mr. Barnes is charged with being a felon in possession of a firearm in violation of 18 USC §922(g)(1). He is exposed to a maximum period of incarceration of 15 years if found guilty and will have a presumptively reasonable guideline range of approximately 3 years.

4. When he was arrested, Mr. Barnes was charged by way of Criminal Complaint; an initial detention hearing was held on December 12, 2023 at which time the government's request for detention was denied and he was ordered released subject to conditions (electronic monitoring and a verifiable address, etc.). The government appealed and his release was stayed pending the appeal. The appeal

was argued before Judge Wolford on December 18, 2023 and then continued on December 27, 2023. Judge Wolford's Decision and Order upheld the government's appeal and was electronically filed on January 3, 2024.

5. Approximately three weeks before his arrest on December 7, 2023, Mr. Barnes underwent his second major back surgery. Initially, upon information and belief, he initially injured his back while riding a motorcycle in Florida in March 2023. Unaware of the extent of his injury, he returned to Buffalo by air and two or so days later lost feeling in his legs.

6. During the initial surgery in March 2023, a titanium rod was inserted in his spine. He obeyed his post-operative instructions, followed up with his medical providers and underwent physical therapy and eventually was able to return to work in either the late summer or early fall 2023.

7. Shortly after being able to return to work, Mr. Barnes fell and bent the titanium rod in his back which led to major revision spine surgery on November 14, 2023. Mr. Barnes was in the process of recovering from that subsequent surgery when he was arrested.

8. Unknown to the undersigned during the course of the detention hearing and the arguments on the government's appeal, Mr. Barnes started experiencing discoloration and loss of sensation on three toes of his left foot. My understanding is that the color change and numbness started to occur somewhere approximately two to three weeks after his incarceration.

9. In addition to the discoloration and loss of sensation in his toes, Mr. Barnes is experiencing pain while attempting to perform activities of daily living. He

reports that getting in or out of bed is difficult and causes pain at a level of 8-9 out of 10; in walking short distances, he has to stop to stabilize his balance; putting on socks and shoes, showering, standing, sitting and, laying down all result in the same 8-9 out of 10 level of pain.

10. He is receiving 15 mgs of oxycodone 2x p/d and 300 mg of gabapentin 2x p/d. He reports that the opiate "takes the edge off" but does not stop the pain.

11. Mr. Barnes is presently 55 years of age;

12. Mr. Barnes was supposed to have a post-surgical appointment with this surgeon on or around January 4th or 5th, 2024; after said post-surgical consultation, it was expected that Mr. Barnes would be referred to physical therapy. His March back surgery resulted in 26 physical therapy sessions over the course of several months before he was able to return to work.

13. Mr. Barnes has been in custody for approximately ten to eleven weeks at this point and his mobility is decreasing while his pain is increasing during his incarceration.

14. Attached hereto and made a part hereof ("A") is a February 22, 2024 letter from Joseph M. Kowalski, M.D., Mr. Barnes' spine surgeon.

15. Inasmuch as I cannot guarantee the legibility of a scanned copy of the letter Dr. Kowalski faxed me, I recite its contents herein:

> "To whom it may concern:
> I performed major lumbar spine surgery on Scott Barnes on November 14, 2023, at the Erie County Medical Center in Buffalo New York. This was an extensive surgery with implantation of hardware. Typical and recommended postoperative follow-up should be performed by a spine surgeon within 6 to 12 weeks, and regular intervals thereafter. This would include physical

examination of his surgical wound, neurologic exam and x-rays to evaluate healing. He will require pain medication for the same period of time. Physical therapy is required to ensure proper body mechanics to increase his strength, endurance and help with mobility. He should also have access to a firm mattress/bed. Failure to do so may compromise the healing process resulting in long-term pain and impair his recovery. A copy of this letter will be sent to Traci Nitzel, girlfriend to Scott Barnes. Authorization for release of health information/HIPAA is on file in our record along(sic) this to do so. Please contact me if you require further information."

16. Per Dr. Kowalski's letter, the crucial time for Mr. Barnes to receive medical attention and physical therapy is now, not when this case is over. As this court is aware, a multi-defendant federal criminal prosecution can take many months, if not years, to resolve.

17. Because Mr. Barnes has not yet received any post-surgical medical follow-up care or treatment, there are no medical records that your affiant can submit with this motion[1].

18. As set forth above, Mr. Barnes was arrested December 7, 2023, approximately eleven weeks ago. Because of the manner in which the government wrote the indictment, the entire case has been stalled for nearly three months over the issue of learned counsel for some co-defendants and an answer as to whether Main Justice will authorize or decline to authorize the death penalty for those four co-defendants charged in the two counts to which death may apply[2]. Those issues (death eligibility and learned counsel) do not affect Mr. Barnes.

---

[1] Upon information and belief, surgical records could be obtained, but the fact that he had two major back surgeries in 2023 is not really disputed.
[2] It was not until last Friday, February 23, 2024 that the government affirmatively stated that it would not seek the death penalty.

19. In fact, as Mr. Barnes' charges are the same in the indictment as they were in the complaint, his case is reasonably simple.

20. Upon information and belief, Mr. Barnes' prosecution will require, at most, three witnesses: the person who located the gun, someone to establish his prior felony and that the gun travelled in interstate commerce, and, a technician to validate scientific testing. That being the case, it appears his trial could last a day.

21. I have advised one of the prosecutors that depending on the results of scientific testing, defense decisions will have to be made.

22. In that regard, I was rather surprised to learn on February 23, 2023[3], that the government may choose to proceed without testing the gun for DNA and fingerprints.

23. If the government opts to proceed on circumstantial evidence regarding Mr. Barnes, the failure to test the weapon (or, more succinctly – to release test results), may implicate Brady.

24. Your affiant is aware that the defense can move to have the gun tested. However, having done that before, knows that that process requires motion practice and argument, and, will take several weeks, if not months. If the court grants the request, and the weapon is removed from evidence and sent to LabCorp[4], several more weeks will elapse.

---

[3] Your affiant is sympathetic to the fact that the prosecutor was non-committal as he expressed that he did not know if testing had been done or would be done; in addition, he just finished his second week of an eight or so week long trial.

[4] Upon recollection and belief, that company has an acceptable lab somewhere in Connecticut which will perform finger print and DNA testing for approximately $4,500.

25. Your affiant and Mr. Barnes fear that without proper post-surgical medical attention and physical therapy could result in life-long physical impairment and pain.

26. Attached hereto and made a part hereof as "B" is a letter from Mr. Barnes' union stating that so long as he maintains his union membership, work is available to him. It also sets forth the current wage package, and, contained a breakdown of where he worked between September 2021 and November 2023.

**Argument**

27. The United States Constitution places strict limits on the government's ability to imprison those who have been accused of crimes. A person charged with a crime in presumed innocent [See Stack v. Boyle 342 US1, 4, 72, S.Ct. 1, 3, (1951) ("unless [the] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning").

28. Punishment comes only after conviction by proof beyond a reasonable doubt. In Re Winship, 397 US 358 (1970).

29. Under our constitutional scheme, preventive detention has been and should remain the exceptional practice: "[I]t is well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance. Executive power to detain an individual is the hallmark of the totalitarian state. Under our constitution the prohibition against excessive bail, the due process clause of the Fifth Amendment, the presumption of innocence – indeed, the fundamental separation of powers among the legislative, the executive and the judicial branches of the government – all

militate against the abhorrent practice.  Our historical approach eschewing detention prior to the trial reflect these concerns…" U.S. v. Montalvo-Murillo, 495 US 711, 723-24 (1990) (Stevens, J. dissenting, joined by Brennan and Marshall, JJ.) (Footnotes omitted).

30. Mr. Barnes, due to the recency of his second major back surgery and lack of access to post-surgical follow-up care and physical therapy, does not live by the same calendar as his fellow inmates.  The continuation of detention for several additional months might be acceptable to the ordinary dangerous defendant, but for Mr. Barnes, it is a needless deprivation of the possibility of mobility and balance, and living pain free.  Thus, continued incarceration for him, without post-surgical medical care and physical therapy, puts him in conditions that, for him, are severely punitive.

WHEREFORE, your affiant respectfully requests this Court grant a new detention hearing based on the change of circumstances.

Dated: February 29, 2024
Buffalo, New York

David B. Cotter

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

vs.

SCOTT J. BARNES,

Defendant.

**CERTIFICATE OF SERVICE**

Docket No. 1:23-CR-00099-LJV-JJM

David B. Cotter, states that on February 29, 2024 a Notice of Motion and Affirmation were electronically filed with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

Assistant United States Attorney Joseph M. Tripi
Assistant United States Attorney Nicholas Cooper

David B. Cotter