# United States v. Simon Gogolack

# 23-CR-99-JLS-JJM

# Defendant's Exhibit A

```
UNITED STATES  DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------x          23-CR-99(LJV-JJM)
UNITED STATES OF AMERICA,

vs.
                                    Buffalo, New York
SIMON GOGOLACK,                     March 1, 2024
also known as Greek,
          Defendant.
-------------------------x
```

**DETENTION HEARING**

TRANSCRIPT OF PROCEEDING
BEFORE MAGISTRATE JUDGE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE


TRINI E. ROSS, ESQ.
United States Attorney
BY:  NICHOLAS COOPER, AUSA
BY:  CASEY L. CHALBECK, AUSA
BY:  JOSEPH M. TRIPI, AUS
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202

FOR DEFENDANT:        MARIANNE MARIANO, ESQ.
                      Federal Public Defender
                      BY:  JEFFREY T. BAGLEY, AFPD
                      300 Pearl Street
                      Suite 200
                      Buffalo, New York 14202


ALSO PRESENT:         ANDRE MCCRAY, U.S. PROBATION OFFICER




TRANSCRIBER:          Diane S. Martens
                      dimartens55@gmail.com


(Proceedings recorded by electronic audio recording,
 transcript produced by computer.)

2

U.S. v. Gogolack - 23-CR-99

1                           **P R O C E E D I N G S**

2                           *           *           *

3

4        (**WHEREUPON**, defendant present.)

5        **THE CLERK:**  On the record in criminal proceeding

6    23-CR-99, United States of America v. Simon Gogolack for a

7    detention hearing.

8        Present in the courtroom are Assistant U.S. Attorneys

9    Casey Chalbeck, Nicholas Cooper, Joseph Tripi.

10       Defendant Mr. Gogolack with assistant federal public

11   defender Jeffrey Bagley.

12       The Honorable Jeremiah J. McCarthy presiding.

13       **MAGISTRATE JUDGE MCCARTHY:**  Good afternoon, again,

14   everyone and apologies.  We were trying to get somebody from

15   pretrial and can't find anybody but we'll just go ahead.

16       (**WHEREUPON**, a discussion was held off the record.)

17       **MAGISTRATE JUDGE MCCARTHY:**  Before we begin, I think

18   this may be relevant to my consideration.

19       Mr. Bagley, Mr. Gogolack refused transport, I think, for

20   the last two occasions?  One, I guess, was a miscommunication

21   but do you know why.

22       **MR. BAGLEY:**  I do, Judge.

23       Yeah, so, so we actually had a video conference with

24   Mr. Gogolack.  I was surprised to learn -- as the Court may

25   know, I wasn't at the Friday appearance where Mr. Gogolack

U.S. v. Gogolack - 23-CR-99

1   didn't make an appearance -- but I learned obviously soon

2   thereafter that he wasn't there.

3         **MAGISTRATE JUDGE MCCARTHY:**  Mm-mm.

4      **MR. BAGLEY:**  He didn't refuse, Judge, the long and short

5   of it.  For whatever reason, the jail didn't come and get him

6   my understanding is.

7         So he's very eager to be here in court, Judge.  In fact,

8   he's six hours away so it's very difficult to meet with him.

9         **MAGISTRATE JUDGE MCCARTHY:**  Yeah, I understand.

10      **MR. BAGLEY:**  And we had topics that we were going to

11   discuss at our meeting.  So it's not a matter of him refusing

12   transport.

13         **MAGISTRATE JUDGE MCCARTHY:**  Okay.  Well, hopefully

14   whatever communications difficulties there are can be

15   straightened out.

16         Ready to proceed?

17      **MR. COOPER:**  Government's ready, Judge.

18      **MR. BAGLEY:**  Judge, yeah, I think we're ready.

19         I mean, I know that we're ready to proceed.  You know, I

20   don't know how the Court wants to handle the issue of the

21   February 15th order.

22         As the Court knows from my filing, we didn't receive any

23   discovery.  I don't know what the government plans to rely on

24   today.  I guess maybe the Court wants to hear what they have

25   to say first but.

U.S. v. Gogolack - 23-CR-99

1      **MAGISTRATE JUDGE MCCARTHY:**  Well, as I indicated in my

2  February 27th text order, I'm kind of keeping my own view

3  open right now.  I did order that the government produce

4  evidence that they're going to rely on.  They're saying it's

5  a proffer so it's not really evidence.

6      I think if they are going to be referring to evidence

7  and if you consider the, as I indicated, if you consider the

8  accuracy of that evidence to be in question, I may require it

9  to be produced and, if necessary, I'll continue the hearing.

10  But I'd like to just see how things unfold with the

11  government's proffer and then I'll hear from you and we'll

12  decide where we go, okay.

13      **MR. BAGLEY:**  Understood, Judge.

14      **MAGISTRATE JUDGE MCCARTHY:**  All right.

15      **MR. COOPER:**  Judge, here's what I would like to do.

16      First, I'm going to read to the Court some, some

17  correspondence.  The first correspondence is from

18  August 30th, 2023.  It was directed to Attorney Robert Baum,

19  who at the time was representing Mr. Gogolack.

20      It says:  "Dear Attorney Baum:  As Mr. Gogolack's case

21  is currently charged by criminal complaint and not yet

22  indicted, the government is not yet required by law to

23  provide Rule 16 discovery.

24      "However, in an effort to facilitate your review of the

25  government's proof and have a meaningful discussion with your

U.S. v. Gogolack - 23-CR-99

1   client about the case, the government is voluntarily

2   providing substantial discoverable material early.  Enclosed

3   are documents and electronic files as described in more

4   detail below.  If any of the materials appear to be missing,

5   please contact me.

6        "Voluntary early discovery.

7        Subject 1:  Search warrants, Gogolack's cell phone

8   search warrant, Gogolack ping search warrant, Gogolack

9   premises search warrant, Gogolack trailer/vehicle search

10  warrant.

11       Subject 2:  296 Scott Avenue search warrant photos,

12  photos from Gogolack premises search warrant.

13       Subject 3:  296 Scott Ave. search reports, eight FBI

14  reports and documents associated with the search of 296 Scott

15  Avenue.  Vehicle and trailer search warrant photos.

16       This is subject 4:  Photos from Gogolack vehicle and

17  trailer search.

18       Subject 5:  Vehicle and trailer search warrant reports.

19       6:  FBI reports and documents associated with the FBI

20  search of the Gogolack vehicle and trailer.

21       Subject 6:  911 call, underscore Wellsville underscore

22  Gogolack, audio of recording of Gogolack 911 call.  CAD

23  report from Gogolack 911 call.

24       Subject 7:  ATF nexus report.  ATF interstate nexus

25  report regarding one firearm and 30 rounds of ammunition

U.S. v. Gogolack - 23-CR-99

1     seized from Gogolack's residence.

2          Subject 8:  Depew Police Department video file player

3     and video files associated with Gogolack's arrest by Depew

4     Police Department and his subsequent recorded interview with

5     the FBI.  Depew Police Department arrest report.

6          Subject 9:  Gogolack interview 302, FBI 302 report

7     summarizing and documenting the interview of Gogolack at the

8     Depew Police Department.

9          Subject 10:  Gogolack phone call, 302, FBI 302 report

10    summarizing phone call with Simon Gogolack.

11         Subject 11:  Wellsville Police Department unattended

12    death report.  Wellsville Police Department report regarding

13    their response to the unattended death at Gogolack's

14    premises.

15         Subject 12:  Gogolack phone scoped material.  A partial

16    extraction of Simon Gogolack's cell phone.

17         Subject 13:  Depew body camera video, two videos of the

18    body camera of the Depew arresting officer.

19         That was August 30th of 2023.

20         **MAGISTRATE JUDGE MCCARTHY:**  And that was --

21         **MR. COOPER:**  The case was --

22         **MAGISTRATE JUDGE MCCARTHY:**  That --

23         **MR. COOPER:**  -- charged by --

24         **MAGISTRATE JUDGE MCCARTHY:**  That was to Mr. Bagley.

25         **MR. COOPER:**  It was to Mr. Baum and then provided to Mr.

U.S. v. Gogolack - 23-CR-99

1  Bagley when he took over.

2      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

3      **MR. COOPER:**  But the letter initially was addressed to

4  Mr. Baum.  They have all that.

5      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

6      **MR. COOPER:**  But that's just the start.

7      September 8th, 2023.  "Dear Attorney Bagley:  As

8  Mr. Gogolack's case is currently charged by criminal

9  complaint and not yet indicted, the government is not yet

10  required, by law, to provide Rule 16 discovery.

11      "However, in an effort to facilitate your review of the

12  government's proof and have meaningful discussions with your

13  client about the case, the government is voluntarily

14  providing substantial discoverable material early pursuant to

15  the parties' agreements to enter into a protective order

16  provided by email today."

17      I'll skip the head -- "Enclosed are documents and

18  electronic files as described in more detail below.  If any

19  of the materials appear to be missing, please contact me."

20      Voluntary early discovery.  It covers the search

21  warrants, the search warrant photos and all of the other

22  material that had been previously provided to Attorney Baum.

23  That was a letter to Attorney Bagley and that was sent on

24  September 8th, 2023.

25      October 19th, 2023, an email from myself to Mr. Bagley:

U.S. v. Gogolack - 23-CR-99

1    "Good afternoon, Mr. Bagley.  An encrypted flash Drive

2    is available for pick up at the United States Attorney's

3    Office, 138 Delaware Avenue, containing documents as they

4    relate to the above referenced matter.  The flash drive has

5    been encrypted and the password is below.  Attached are

6    instructions"...  Blah blah blah.

7         And in addition in that October 19th discovery

8    production, the government provided an even more detailed

9    index than the index in the letter that I wrote in September.

10        In addition to all the materials that had previously

11   been provided, this included Bates numbered discovery from --

12   starting at number 1, ending at number 1,865.  Non-Bates

13   numbered discovery included sorted phone conversations from

14   the defendant's cell phone that were labeled by name and in

15   individual folders.  And then an entire copy of the

16   defendant's Cellebrite extraction because previously there

17   had only been a partial copy.  It's my belief, as I sit here

18   today, that everything, or nearly everything, that was

19   referenced in the prior proffer has been turned over, with

20   the exception of, I can imagine possibly new reports that

21   came in after the fact related to labs.  And I believe that

22   even the labs Mr. Bagley references, he references because he

23   has them.

24        And, so, my expectation today is to proceed by proffer

25   with the facts that are contained in the incredibly detailed

U.S. v. Gogolack - 23-CR-99

1    second superseding indictment, discuss the charges, the

2    presumptions, discuss this Court's prior ruling that the

3    defendant didn't even overcome the presumption and

4    essentially leave this in the Court's hands.

5         I don't know that I need exhibits to explain to the

6    Court that the defendant is both an obvious danger to the

7    community and an obvious flight risk.

8         Here's what probation had to say in January:

9         "Assessment of nonappearance:  Prior bench warrant,

10   extensive substance abuse, conflicting information regarding

11   residence, mental health concerns, prior arrests for false

12   impersonation.

13        Nature and circumstances of the instant offense --

14   assessment of danger:  Prior violation of probation, prior

15   arrest while under supervision, prior arrests and convictions

16   for similar offenses.  Prior felony conviction.  Prior

17   violent felony arrest.  Extensive substance abuse.  Mental

18   health concerns.

19        Nature and circumstances of the instant offense.  Here

20   was their recommendation:

21        "It's the same as their recommendation was back in

22   September.  Based on the nature and circumstances of the

23   instant offense and the information outlined herein, the

24   pretrial services office finds there is no condition or

25   combination of conditions to reasonably assure the

U.S. v. Gogolack - 23-CR-99

1   defendant's appearance in court or the safety of the

2   community.  Therefore, it is respectfully recommended that

3   the defendant be detained pending the outcome of court

4   proceedings."

5       Here's where we stand.  The defendant's charged in

6   Counts 1 through 4 and Counts 6 through --

7       **MAGISTRATE JUDGE MCCARTHY:**  Well, well --

8       **MR. COOPER:**  -- through 18.

9       **MAGISTRATE JUDGE MCCARTHY:**  Well, let me just jump in

10  for a minute.  When I granted the motion to reopen the

11  hearing, it was for the reason that Mr. Bagley said he didn't

12  have -- that you were relying on information that he had not

13  been given.  You've just recited a voluminous amount of

14  information that he has been given.  I want to zero in on

15  what he hasn't been given and whether he's entitled to have

16  it.

17      Otherwise -- you know, normally I don't reconsider a

18  detention decision.  I said I might in this case if there's

19  evidence that wasn't provided to him at the last time and

20  that's, that's the type of evidence that I would want to

21  focus on.

22      Mr. Bagley, let me just hear from you briefly before we

23  proceed with a proffer.

24      **MR. BAGLEY:**  Yes, Judge.

25      The motion to reopen highlighted a couple aspects that I

U.S. v. Gogolack - 23-CR-99

1    thought needed --

2        **MAGISTRATE JUDGE MCCARTHY:**  Yeah, the blood reports or

3    the lack of blood --

4        **MR. BAGLEY:**  Right, right.

5        **MAGISTRATE JUDGE MCCARTHY:**  -- evidence, yeah.

6        **MR. BAGLEY:**  Right.  So that was something that the

7    government did not have at the time that we initially had our

8    detention hearing.  They did have it subsequently at other

9    folks' detention hearing and didn't turn it over but they

10   didn't have it at the time that Mr. Gogolack had his hearing.

11       We did obviously receive that at some point after his

12   hearing and now we're able to review it and point out some of

13   the issues that I think the Court would want to be aware of.

14   And, so, that is an example of the reason that, you know, the

15   Court often requires the government to disclose things that

16   they're relying on and I don't, again, as I said at the

17   beginning of this, I don't know what the government intends

18   to rely on today.

19       **MAGISTRATE JUDGE MCCARTHY:**  Well, I mean, that, you have

20   now.

21       **MR. BAGLEY:**  That I have now, correct.

22       **MAGISTRATE JUDGE MCCARTHY:**  I mean, one thing that

23   interests me is in your submission of recent -- it's docket

24   number 78, your memorandum in opposition to reopening the

25   hearing.

U.S. v. Gogolack - 23-CR-99

1      At Page 3, you cite an excerpt from Mr. Gogolack's

2  Facebook page.

3      Frankly, I didn't each realize you could access Facebook

4  from jail.  Is that what you're saying?

5      **MS. CHALBECK:**  Your Honor, that's -- that is an excerpt

6  from Mr. Gogolack's Facebook page and I believe that excerpt

7  is from January -- on or about January 5th.  I don't know how

8  Mr. Gogolack made that post but that -- my understanding, in

9  discussing this with the FBI is that that is Mr. Gogolack's

10 Facebook page.

11     **MAGISTRATE JUDGE MCCARTHY:**  Okay.

12     **MS. CHALBECK:**  And I think he --

13     **MAGISTRATE JUDGE MCCARTHY:**  Go ahead.

14     **MS. CHALBECK:**  I'm sorry, your Honor.

15     I believe that the document that you're referring to is

16 not the government's response in opposition to Mr. Gogolack's

17 motion to reopen the detention hearing, which is docket

18 number --

19     **MAGISTRATE JUDGE MCCARTHY:**  No, no, no.

20     **MS. CHALBECK:**  56 --

21     **MAGISTRATE JUDGE MCCARTHY:**  No.

22     **MS. CHALBECK:**  -- but the response.

23     **MAGISTRATE JUDGE MCCARTHY:**  By then I had already

24 reopened -- no, I meant it's your response to Gogolack's

25 affirmation so you're arguing in docket number 78 you're

U.S. v. Gogolack - 23-CR-99

1    arguing that you can proceed by proffer.

2        **MS. CHALBECK:**  That's correct, your Honor.

3        **MAGISTRATE JUDGE MCCARTHY:**  Right.

4        **MS. CHALBECK:**  And the reason why I included that

5    excerpt in response to Mr. Bagley's affirmation was to

6    provide some context as to why the government wished to

7    proceed by proffer and that turns on a concern that

8    Mr. Gogolack essentially openly through his public Facebook

9    posts, and privately, has expressed a desire and an intention

10   to weaponize the discovery process.

11       **MAGISTRATE JUDGE MCCARTHY:**  All right.  Well, yeah, I

12   just say, regardless of the context in which that came up,

13   that -- I was surprised that somebody could, you know, I

14   guess I'll hear from Mr. Bagley.

15       I was surprised that somebody could have a Facebook post

16   from, from an incarceration facility.  I mean --

17       **MR. BAGLEY:**  Well --

18       **MAGISTRATE JUDGE MCCARTHY:**  -- you learn something new

19   every day.

20       **MR. BAGLEY:**  Judge, yeah, I mean, that's part of the

21   issue here, right.  I mean, the government makes reference to

22   a number of things like this.  We don't have access to it.

23   We don't -- we have --

24       **MR. COOPER:**  It's Facebook.  You definitely have access.

25   It's public.

U.S. v. Gogolack - 23-CR-99

1    **MR. BAGLEY:**  We don't -- I didn't interrupt you --

2    **MAGISTRATE JUDGE MCCARTHY:**  Well, yeah.

3    **MR. BAGLEY:**  -- Mr. Cooper and I'd appreciate --

4    **MAGISTRATE JUDGE MCCARTHY:**  Well, yeah.  Okay.

5    **MR. BAGLEY:**  -- you do the same --

6    **MAGISTRATE JUDGE MCCARTHY:**  Okay.

7    **MR. BAGLEY:**  -- while you read --

8    **MAGISTRATE JUDGE MCCARTHY:**  All right.

9    **MR. BAGLEY:**  -- an entire letter.

10   **MAGISTRATE JUDGE MCCARTHY:**  Jeff.

11   Okay, one at a time.

12   Let him finish and I will come back to you then.

13   Go ahead.

14   **MR. BAGLEY:**  Judge, and again, what it comes down to

15   here is, you know, if you look at the photos, for example,

16   that they relied on in the initial detention hearing.  Once

17   we get a chance to review those photos, once we get a chance

18   to examine what it is that they're talking about, there's

19   issues that arise and there's things that the Court would

20   want to know about those photos.

21   Again, with this, all I have is a screenshot and a Word

22   document and a name Simon Gogolack above it.  For all we

23   know, this is somebody out there that's trying to play games

24   with, you know, Mr. Gogolack that has it out for

25   Mr. Gogolack.  We don't know who made this post.

U.S. v. Gogolack - 23-CR-99

1      **MAGISTRATE JUDGE MCCARTHY:**  Well, when you say "for all
2   we know", Mr. Gogolack knows whether that's his Facebook page
3   or not.  And I'm not asking him to testify but I mean, he
4   can't -- either it is or it isn't.
5      **MR. BAGLEY:**  Well --
6      **MAGISTRATE JUDGE MCCARTHY:**  He knows whether it is or
7   isn't.  And they go on to then on the same page, docket
8   number 78, Page 3, they cite in quotes -- whether it's true
9   or not, I don't know -- but they cite in quotes excerpts from
10  recorded jail cell calls.
11     Now, we all know that jail cell calls can be recorded
12  and there's no expectation of privacy.  So whether these
13  things were said or not, I guess Mr. Gogolack would know
14  whether they were said.  And maybe if you want that
15  transcript, that limited transcript of what they're relying
16  on here, that's a different question.
17     So, Mr. Cooper, back to you now.  What did you want to
18  say in that regard, anything else?
19     **MR. COOPER:**  Yeah, Judge.  What I want to say is we -- I
20  would submit that the Court can draw a pretty strong
21  inference that the Facebook post is authenticate, whether he
22  posted it himself from jail or gave his Facebook account
23  information to someone to post on his behalf, based on the
24  fact that his voice is on a recording from jail discussing
25  doing the exact same thing.  It's not rocket science.  It's

U.S. v. Gogolack - 23-CR-99

1  the defendant saying that he's going to out victims and sell

2  his discovery to the press.

3      So, it's, it's not hard to figure out what's going on.

4  It's him saying it, that that's what he's going to do.  And

5  then it's on his Facebook account.  It's publicly

6  accessible -- so I apologize for interrupting Mr. Bagley.  I

7  was rude and I shouldn't have done it.

8      But what I intended to say was that everybody has access

9  to it.  We didn't -- did not intend on re-litigating this

10  detention hearing.  When it came up, we learned of it pretty,

11  pretty close in time.  It's not necessarily something that

12  we're going to use as proof against him at trial but it

13  became relevant when we're discussing reopening the detention

14  hearing.  I don't know that it's Rule 16 discoverable that

15  he's talking about selling his discovery.

16      What I was going to say, Judge, was that if --

17      **MAGISTRATE JUDGE MCCARTHY:**  Well --

18      **MR. COOPER:**  -- we're doing this --

19      **MAGISTRATE JUDGE MCCARTHY:**  Well, I mean, if it's true,

20  if he said what you quote him as saying, that's certainly, in

21  my mind, relates to danger, for one thing.

22      **MR. COOPER:**  Well, Judge, I'm telling you that we didn't

23  misrep -- misrepresent anything from a jail call in quotes to

24  the Court.

25      **MAGISTRATE JUDGE MCCARTHY:**  So you have a tape of a jail

U.S. v. Gogolack - 23-CR-99

1  call, right?

2      **MR. COOPER:**  It's not a tape.

3      **MAGISTRATE JUDGE MCCARTHY:**  Or --

4      **MR. COOPER:**  But we have files in the computer that

5  are --

6      **MAGISTRATE JUDGE MCCARTHY:**  Right.

7      **MR. COOPER:**  -- like audio recordings --

8      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

9      **MR. COOPER:**  -- of calls.

10      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

11      **MR. COOPER:**  And in Miss Barber's detention hearing, I

12  reviewed quite a few of them with the Court where the

13  defendant --

14      **MAGISTRATE JUDGE MCCARTHY:**  Yeah, I know.

15      **MR. COOPER:**  -- talks --

16      **MAGISTRATE JUDGE MCCARTHY:**  I recall.

17      **MR. COOPER:**  -- in detail about his relationship.

18      **MAGISTRATE JUDGE MCCARTHY:**  Yeah.

19      **MR. COOPER:**  It's him, it's obviously him.  Talks about

20  how he should have fled, how he wishes he was in Canada.

21      I mean, this is not a close call for detention.  Not --

22  of all the cases that I've worked on, this is in a very small

23  subsection of obvious clearcut detention cases.  And so with

24  respect to the BlueStar® and Mr. Bagley's concern about the

25  blue star.

U.S. v. Gogolack - 23-CR-99

1        **MAGISTRATE JUDGE MCCARTHY:**  What's a BlueStar®?

2        **MR. COOPER:**  It's, it's the reagent that was used --

3        **MAGISTRATE JUDGE MCCARTHY:**  Oh.

4        **MR. COOPER:**  -- by the FBI to check for the presence of

5    blood in the basement of Mr. Gogolack's house.

6        You could delete that entirely from your brain and he

7    would still be detained every single day of the week.  You

8    didn't -- I submit to the Court I don't believe you made your

9    detention decision on that basis.

10       The defendant's history and characteristics cry out for

11   detention.  The nature and circumstances of the offenses

12   charged cry out for detention.  The defendant in his own

13   words talking about wishing he fled to Canada cry out for

14   detention.

15       **MAGISTRATE JUDGE MCCARTHY:**  Are, are --

16       **MR. COOPER:**  Just forget about the BlueStar® --

17       **MAGISTRATE JUDGE MCCARTHY:**  Are the --

18       **MR. COOPER:**  -- and detain him.

19       **MAGISTRATE JUDGE MCCARTHY:**  Are the jail cell calls,

20   that's something he will eventually get in discovery anyway,

21   correct?

22       **MR. COOPER:**  Correct.  And the Court gave us 90 days to

23   produce.

24       **MAGISTRATE JUDGE MCCARTHY:**  I understand.

25       **MR. COOPER:**  Because how voluminous this is, there's two

U.S. v. Gogolack - 23-CR-99

1   agents -- who are actually, I believe, present in the

2   courtroom here -- who have been working extensively to try to

3   identify pertinent calls to make it easier for the defense to

4   review when they're turned over, as opposed to dumping the

5   massive amount of calls that exist and so we're trying to do

6   this in an orderly fashion.  That's what we represent to the

7   court previously.

8        And I don't believe that moving to reopen a detention

9   hearing can then take that 90 day discovery order that you

10  gave and truncate it down to a week or two weeks.  It's not

11  practical.  I mean, if -- we're representing to you certain

12  things that were said in jail calls.

13       **MAGISTRATE JUDGE MCCARTHY:**  And --

14       **MR. COOPER:**  We're proceeding by proffer.

15       **MAGISTRATE JUDGE MCCARTHY:**  And you're telling me as an

16  officer of the court that you or someone.

17       **MR. COOPER:**  I've listened to them myself, Judge.

18       **MAGISTRATE JUDGE MCCARTHY:**  Okay.  So you heard that and

19  you heard those statements that are quoted, right?

20       **MR. COOPER:**  So, Judge, with respect to -- with respect

21  to the calls that I read during Barber's detention

22  proceeding, I listened to all of those calls myself.  I took

23  notes on what I, you know, heard to come to court and

24  proceed.  With respect to the call regarding selling

25  discovery, I believe it was an agent who brought that call to

U.S. v. Gogolack - 23-CR-99

1    our attention.  I did not listen to that call myself.

2        **MS. CHALBECK:**  And I did not listen to that call myself

3    either your Honor but I read that quotation, that exact

4    quotation in an agent's report.

5        **MAGISTRATE JUDGE MCCARTHY:**  Okay.

6        **MR. BAGLEY:**  Judge, if I could just --

7        **MAGISTRATE JUDGE MCCARTHY:**  Yeah, go ahead.

8        **MR. BAGLEY:**  -- jump in.

9        **MAGISTRATE JUDGE MCCARTHY:**  Yeah.

10       **MR. BAGLEY:**  So I'm not asking for the government to

11   produce all of the discovery -- and I think the Court knows

12   that -- in a week when they have 90 days to do that, Judge.

13   What I'm asking is pretty simple.  It's please provide the

14   discovery that relates to the detention hearing and they're

15   relying on jail calls.  There's -- it sounds like there's two

16   or three of them.  Give them to me.

17       I mean, it happens in this courtroom every day of the

18   week.  So it's common practice here.  The Court's already

19   ordered it.  In the hundreds of cases that this Court has

20   heard in the past, there's never been an issue and if there

21   has been, it's been resolved.  I'm not aware of the

22   government ever taking the Court's order to the Second

23   Circuit arguing that they don't have to turn over evidence

24   that they refer to in a detention hearing.

25       So, that's all I'm asking.  I'm not asking for every

U.S. v. Gogolack - 23-CR-99

1   piece of evidence.  I'm asking for the evidence that they're

2   relying on.  And I think there's a good faith basis for it

3   because when they do turn over evidence that they're relying

4   on, there's things that I am reviewing that I want to point

5   out to the Court that may affect its detention decision and

6   if I don't have that stuff, I can't review it and I can't

7   find the problems with it.

8       **MR. COOPER:**  Judge, we didn't play the jail call for

9   you.  We proffered what was in the call.

10      **MAGISTRATE JUDGE MCCARTHY:**  Yeah.

11      **MR. COOPER:**  The Second Circuit has said we can proceed

12  by proffer.  I am not using evidence and then not turning it

13  over.  I'm proffering about the evidence.  I'm going to

14  proffer -- my intention today, if we're running a full

15  detention hearing, is to proffer what's contained in the

16  indictment.  In order to give him the evidence underlying

17  what's contained in the indictment, it would be 90 -- it

18  would be what we're expected to do in 90 days.  And I

19  don't -- there's not like this cherrypicking of things.

20      If there's something specific that Mr. Bagley wants,

21  like the three calls that I think -- or five calls that I

22  referenced in the Barber detention proceeding, Mr. Bagley has

23  my email address, he can email me and say:  Hey, can you get

24  me these five jail calls, that would be helpful to me.

25      And I'm not going to avoid that.  I'm not going to get

U.S. v. Gogolack - 23-CR-99

1    in the way.  I've been -- I read the letters to the Court of

2    what we produced before the case was indicted in an attempt

3    to avoid this.  When Mr. Baum came in for the first time, I

4    gave him a disk -- the Court was here -- I gave him a disk

5    with everything on it.  I don't know that that would have

6    worked out for him but Mr. Bagley ended up taking over the

7    case.  Massive amounts of discoverable material were turned

8    over at that time.  So if it's a couple of calls --

9         **MAGISTRATE JUDGE MCCARTHY:**  That's right.

10        **MR. COOPER:**  -- that he's asking for --

11        **MAGISTRATE JUDGE MCCARTHY:**  I, I, I -- refresh my

12   recollection.  He -- prior counsel's the one who had

13   technical problems in --

14        **MR. COOPER:**  He was --

15        **MAGISTRATE JUDGE MCCARTHY:**  -- producing --

16        **MR. COOPER:**  Correct, Judge.  I think he was having some

17   health issues.  He was a little bit older.

18        **MAGISTRATE JUDGE MCCARTHY:**  Yeah, gotcha.

19        **MR. COOPER:**  But Mr. Bagley came on early on.  I

20   provided everything that had been provided to Baum to

21   Mr. Bagley, in addition to new material that came out as it

22   came out.  If it's three jail calls or five jail calls that

23   Mr. Bagley would like for me to turn over to him, I'll turn

24   those over to him.

25        But what I'm not going to do is try to get into his role

U.S. v. Gogolack - 23-CR-99

1  and figure out which pieces of my discovery he would like.

2  I'm working on getting the discovery ready to turn over

3  that...

4      **MAGISTRATE JUDGE MCCARTHY:**  Yeah.  All right, let's do

5  this.  You know, I detained him at the last hearing.  I don't

6  have in front of me, at least, a transcript of that hearing.

7  I don't think it's been transcribed or filed.  I think that

8  would be -- you're going to say something, Casey.

9      **MS. CHALBECK:**  Your Honor, the government has a

10  transcript.  I'm not sure if it's been docketed but we

11  requested one and the government can provide it.

12      **MAGISTRATE JUDGE MCCARTHY:**  Okay.  And Mr. Bagley

13  doesn't have it then, either, right?

14      **MR. BAGLEY:**  I do not, Judge.

15      **MAGISTRATE JUDGE MCCARTHY:**  Yeah.  So, go ahead and

16  docket that, all right.

17      **MS. CHALBECK:**  Yes, your Honor.

18      **MAGISTRATE JUDGE MCCARTHY:**  And that will -- refresh my

19  recollection because I --

20      **MR. COOPER:**  I don't know that we're allowed to docket

21  transcripts, Judge.  I think --

22      **MAGISTRATE JUDGE MCCARTHY:**  Well, it --

23      **MR. COOPER:**  The --

24      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

25      **MR. COOPER:**  We'll email the court reporter.

U.S. v. Gogolack - 23-CR-99

1      **MAGISTRATE JUDGE MCCARTHY:**  Has the court reporter been

2   paid for it?

3      **MR. COOPER:**  Yeah, okay.

4      **MAGISTRATE JUDGE MCCARTHY:**  She's been paid?

5      **MS. CHALBECK:**  Yes.

6      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

7      **MS. CHALBECK:**  I think.

8      **MAGISTRATE JUDGE MCCARTHY:**  Then we can -- one way or

9   the other we'll get that docketed.  You send it to us and

10  we'll get it docketed, okay.

11     **MR. COOPER:**  Great.

12     **MAGISTRATE JUDGE MCCARTHY:**  So I don't want to reinvent

13  that wheel.

14     But I will hear a proffer from you today.  I want

15  today's transcript docketed as well.

16     I will give Mr. Bagley an opportunity at the conclusion

17  of your proffer to outline what he wants and then I'll decide

18  whether he gets it --

19     **MR. COOPER:**  Okay.

20     **MAGISTRATE JUDGE MCCARTHY:**  -- or not, okay.

21     **MR. COOPER:**  Yeah.

22     **MR. BAGLEY:**  Fair enough, Judge.

23     **MAGISTRATE JUDGE MCCARTHY:**  And it may be that you'll

24  get that on an expedited schedule beyond the normal discovery

25  deadline.  You just said, for example, if there are

U.S. v. Gogolack - 23-CR-99

1  particular jail phone calls, you can get them to him.  So,

2  let's take it one step at a time, okay?

3      **MR. COOPER:**  Sure, Judge.

4      **MAGISTRATE JUDGE MCCARTHY:**  So, go ahead.

5      **MR. COOPER:**  I started.  I'll just pick up, I guess,

6  where I left off which is I'm going to ask the Court to

7  incorporate by reference everything that was said at the

8  first detention hearing.  That took quite some time.  I don't

9  want to say it all over again.  You sat here, you heard it

10  and you detained him.  I used --

11      **MAGISTRATE JUDGE MCCARTHY:**  And I'll tell you I don't

12  have total recall right now --

13      **MR. COOPER:**  Well --

14      **MAGISTRATE JUDGE MCCARTHY:**  -- other than I did detain

15  him.  It was a presumption case and I did, I did say, you

16  know, that he could apply for reconsideration based on

17  changed factors which I've allowed but I'm not going to --

18  just so we all know, I don't have total recall right now of

19  what was said, nor do you.

20      **MR. COOPER:**  Yeah.

21      **MAGISTRATE JUDGE MCCARTHY:**  But I'll consider that

22  proffer together with whatever you have to say today and then

23  Jeff can --

24      **MR. COOPER:**  Yep.

25      **MAGISTRATE JUDGE MCCARTHY:**  -- tell me what he thinks he

U.S. v. Gogolack - 23-CR-99

1   needs --

2       **MR. COOPER:**  Yep.

3       **MAGISTRATE JUDGE MCCARTHY:**  -- to continue on his end of

4   the detention hearing, okay?

5       **MR. COOPER:**  So, last time you found that the defendant

6   didn't overcome the presumption.

7       **MAGISTRATE JUDGE MCCARTHY:**  Right.  Right.

8       **MR. COOPER:**  Nothing's changed in that regard, I would

9   submit that to your Honor.

10      In fact, the case for detaining him as grown stronger.

11  The jail calls that I proffered with respect to Miss

12  Barber -- which I don't believe we proffered in that initial

13  Gogolack detention hearing -- are something that I would rely

14  on.  And I'll get these over.  The ones that --

15      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

16      **MR. COOPER:**  -- I'm relying on right now that I'm going

17  to read, I will pull those recordings and I'll get them

18  provided to Jeff.

19      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

20      **MR. COOPER:**  October 14th, 2023, at 4:50:45 p.m.  Simon

21  calls Cortnie Barber from another inmate's pin.  About two

22  minutes and 30 seconds into the call -- about two minutes and

23  45 seconds in, I'm sorry -- the defendant tells Cortnie

24  Barber I'm on a different line so don't talk about

25  anything -- oh, I'm on a different line so talk about

U.S. v. Gogolack - 23-CR-99

1  anything.

2      At about three minutes and ten seconds into the call,

3  Cortnie Barber says the only thing that would help us out is

4  if we both disappeared.  This defendant responds:  Well,

5  let's do it, dude.  Cortnie Barber says:  I'm dead serious.

6  And Simon Gogolack responds:  I'm serious, too.  Let's go,

7  dude, let's get the fuck out of here.  I have a better plan

8  for that than you might ever possibly imagine.  Barber

9  responds:  I'm hoping so.  The defendant says:  I'm farther

10 along with my plan than you might think.  That's why I'm so

11 pissed off that you didn't set the fucking visit up.

12     So that's the October 14th, 4:50 p.m. call talking about

13 risk of flight.  Here's the defendant in October saying I'm

14 dead serious about fleeing, "let's do it, dude", "I have a

15 better plan than you could possibly imagine".  Those were his

16 words.

17     October 25, 2023 at 12:23 p.m.  About 14 minutes and 30

18 seconds into the call, Gogolack and Barber discuss how,

19 quote, "methadone makes you cloudy".

20     About 15 minutes into the call, Barber states:  We don't

21 need to be held down by anything.  If we got to go, we got to

22 go.

23     This defendant states:  Exactly, dude.  That's why I'm

24 not in Canada because I was thinking, fuck, what am I going

25 to do if I'm sick as fuck.  I'm not going to be able to get

U.S. v. Gogolack - 23-CR-99

1  anywhere, otherwise, I would have went to Canada already and

2  we wouldn't even be dealing with this shit.

3      Barber states:  Yeah, I'm working on my special enhanced

4  ID.

5      And Gogolack states:  Yeah, we've got to talk in person,

6  do that.  Get it.  Get it.

7      Barber states:  I know, I fucking need cheddar -- in a

8  reference to money.

9      And Gogolack responds:  If you see one that looks like

10  me, fucking get it, too.

11      And Barber states:  I know.

12      And then the defendant asks her how much money she

13  needs.

14      Again, Judge, talking about risk of flight, here's the

15  defendant in his own words saying if he hadn't been stuck on

16  methadone, he would have fled to Canada before being

17  arrested.  That's consistent with the pretrial services

18  report telling you that he's a risk of flight so

19  significantly that you should remand him.

20      November 1st, 2023, 12:54 p.m. the defendant calls

21  Cortnie Barber from a different inmate's pin again.

22      Every time I say that, this Court should be thinking

23  about why he's calling from a different inmate's pin.  It's

24  because he's attempting to avoid law enforcement detection.

25      About four minutes into the call, the defendant

U.S. v. Gogolack - 23-CR-99

1  discusses the time period between his Depew traffic stop on

2  August 2nd and his arrest on August 23rd.

3      The defendant states:  If I had known the feds weren't

4  going to arrest me, that would have been so much funner.

5  Barber responds:  No, we should have taken the truck and gone

6  like I told you we should have.

7      And this defendant says:  I know, dude.

8      And Barber responds:  Out of New York State.

9      And the defendant responds:  You know my plan.  I think

10 my plan was the best and we just didn't do it.

11      Again, discussing their plans to flee.

12      November 6th, 2023 at 11:23 a.m. Gogolack calls Barber.

13 About four minutes and 30 seconds into the call Barber tells

14 Gogolack that until she sees him she isn't going to eat, she

15 isn't going to sleep and everyone was going to fucking die.

16 That was more Barber related.

17      November 27th, 2023, 12:28 p.m. at the onset of the

18 call, Barber discusses going to the airport, essentially

19 fleeing.  Gogolack told Barber to trust someone to get down

20 with the home team and keep doing what we do, get money and

21 live life.

22      At approximately 12 minutes and 15 seconds into the

23 call, Barber continues discussing leaving and told Gogolack

24 if someone wants her to go somewhere, she will if it helps

25 her family.

U.S. v. Gogolack - 23-CR-99

1    On December 6th, 2023, phone call at 6:47 p.m. in the

2 beginning of the call, Barber again tells Gogolack that she

3 thinks she's being followed.

4    At about 6 minutes and 33 seconds into the call,

5 Gogolack tells Barber that if he needed her to disappear, he

6 would tell her.

7    So the jail calls, Judge, obvious plans to flee.  Open.

8 They discuss from a different inmate's pin where they don't

9 think the government can listen, how they had planned to flee

10 before he was arrested.  Were the Court to release this

11 defendant and set the strictest possible conditions, an ankle

12 monitor, this man is going to cut it off and flee.  The Court

13 should not do that.

14    Let's talk about the second superseding indictment.  So

15 at the time you detained the defendant previously, my

16 recollection is that he was charged by criminal complaint

17 with a limited number of offenses.  There was a 924(c)

18 offense charged.  Perhaps maintaining a drug involved

19 premises in the complaint but the complaint did not contain

20 nearly the amount of --

21    **MAGISTRATE JUDGE McCARTHY:**  Well --

22    **MR. COOPER:**  -- charges --

23    **MAGISTRATE JUDGE McCARTHY:**  Well, let me just -- I'm

24 looking at the docket.  Actually he was indicted on -- the

25 complaint was August 17th.  The first indictment was on

U.S. v. Gogolack - 23-CR-99

1   September 13th and I believe that was the day of the

2   detention hearing, as well.

3       **MR. COOPER:**  Got it.

4       So indicted in the first indictment.  We're now on the

5   second superseding indictment.

6       **MAGISTRATE JUDGE MCCARTHY:**  Right.

7       **MR. COOPER:**  So two iterations later.

8       As the defendant stands today, he's charged in an

9   obstruction conspiracy in Count 1 relating to the death of a

10  witness.

11      He's charged in Count 2 with a witness tampering

12  conspiracy related to the death of a federal witness.

13      He's charged in Count 3 with a witness retaliation

14  conspiracy related to the death of a federal witness.

15      He's charged in Count 4 with distribution of fentanyl

16  resulting in death, the person that he distributed fentanyl

17  to, resulting in her death was that same federal witness,

18  that count, Count 4 carries a mandatory minimum penalty of 20

19  years in prison.  The maximum penalty is life.

20      When considering whether the defendant has an incentive

21  to flee, this Court should consider Count 4 in the second

22  superseding indictment.  If convicted, the defendant is

23  facing a minimum of 20 years on that one count.  Count 6,

24  narcotics conspiracy.

25      Count 7, maintaining a drug involved premises.

U.S. v. Gogolack - 23-CR-99

1    Count 8 the defendant is indicted for a 924(c) offense

2    under title 18.  Based on that offense, the defendant is

3    facing a 5-year mandatory minimum term of imprisonment,

4    required by operation of law, to run consecutive to any other

5    penalty imposed in the case.

6        So just by being convicted of Count 4 and Count 8, the

7    defendant would be facing a mandatory minimum term of

8    incarceration of 25 years.  The maximum penalty would be

9    life.

10       Count 9, the defendant's charged with a 922(g).

11       Count 10, a 922(g).

12       Counts 11 and 12 are kidnapping counts for which the

13   maximum penalty allowed by law is life.

14       Counts 13 through 18 are various tampering with witness

15   counts, not related to the death of the federal witness but

16   with relation to the victims in the kidnapping offenses in

17   Counts 11 and 12.

18       That indictment, Judge, a Grand Jury determined that

19   there was probable cause to believe that the defendant

20   committed each of those crimes charged.  Those various counts

21   contained in the second superseding indictment carry a

22   presumption that the defendant should be detained because

23   he's a danger to the community.  I think that the facts that

24   were proffered by the government in the first detention

25   hearing, including the PowerPoint, underscore the danger that

U.S. v. Gogolack - 23-CR-99

1    the defendant poses to the community.  Photographs from the

2    defendant's phone showing drugs and firearms mixed together

3    sitting on a passenger seat of a vehicle underscore the

4    weight of the evidence related to the 924(c) offense, the

5    narcotics conspiracy.  The defendant's text messages

6    establish the strength of Count 4, the distribution of

7    fentanyl resulting in death -- the defendant's own words in

8    his post-arrest statements underscore the significance of the

9    government's proof with respect to the distribution of

10   fentanyl resulting in death.

11        To be clear, the defendant does not make like an

12   outright open admission to distributing fentanyl resulting in

13   that witness's death.  What you'll see when you observe the

14   chronology of defendant's statements is numerous different

15   accounts of the days leading up to Crystal Quinn's death, the

16   witness' death.  Judge, I don't think that there's much more

17   factually that the Court needs outside of what was contained

18   in the government's proffer in the past.

19        To address for a moment the BlueStar®, the reagent

20   that's used to discover the presence of blood in the

21   basement, the BlueStar® reagent lit up showing the presence

22   of blood.  It's my recollection as I sit here, that that's

23   what the government proffered to the Court at the previous

24   detention hearing, that it lit up indicating the presence of

25   blood.

U.S. v. Gogolack - 23-CR-99

1        When we got additional reports related to that, we

2   turned them over to the defense.  None of those reports

3   indicate that the defendant did not kidnap the victims

4   related to the kidnapping counts.  Those reports don't

5   conflict with the accounts by the victims.  I think what

6   Mr. Bagley brought to the Court's attention -- and he can

7   correct me if I'm wrong, I'm sure he will -- is that the

8   victim's blood was not linked to whatever the reagent lit up

9   as a result of it.  That doesn't indicate that it wasn't

10  blood and it doesn't indicate that it wasn't the victim's

11  blood.  There's just --

12       **MAGISTRATE JUDGE MCCARTHY:**  I, I --

13       **MR. COOPER:**  -- not a report yet --

14       **MAGISTRATE JUDGE MCCARTHY:**  I think --

15       **MR. COOPER:**  -- saying that.

16       **MAGISTRATE JUDGE MCCARTHY:**  If I recall what

17  Mr. Bagley's submission said is that it was inconclusive as

18  to whether it was blood, anybody's blood or not.

19       **MR. COOPER:**  I think Ms. Chalbeck can speak to that in

20  more detail.

21       **MS. CHALBECK:**  Yes, your Honor, that that was, I

22  believe, Mr. Bagley's representation and that is in the

23  report.

24       I noted, however, in the government's response, that the

25  test that the FBI forensic's laboratory uses, it's called a

U.S. v. Gogolack - 23-CR-99

1   pheno -- I'm going to mispronounce this I'm sorry, a

2   phenolphthalein test and it's highly sensitive to blood.  And

3   all of the -- I spoke later with an FBI forensics, like a lab

4   technician or scientist who actually conducts these kind of

5   tests in the lab, and she told me that the FBI doesn't even

6   use confirmatory testing any more for blood outside of this

7   phenolphthalein test because typically to have a confirmation

8   of blood, you need a larger volume of blood than what you can

9   typically access in a crime scene.  So you could, for

10   instance, if you had like a pool of blood but if you're

11   swabbing a wall and you just obtain traces of blood, you

12   would not be able to then obtain a confirmatory test because

13   it requires a greater quantity of blood than the initial

14   phenolphthalein test requires.

15      And that phenolphthalein test -- this is on Page 16,

16   footnote 2 of the government's response, that's docket 56 --

17   is highly sensitive to blood.  It's not specific to human

18   blood.  If Mr. Gogolack were slaughtering chickens in his

19   basement -- there's no evidence that he was, we didn't find

20   any feathers -- but if he were, then the phenolphthalein test

21   would pick up that blood.  But it would also pick up human

22   blood.  The FBI is not going to state in its report that

23   that's a confirmatory test because it isn't but it's so

24   highly sensitive to blood that they don't even use

25   confirmatory tests as a matter of course now.  And that's

U.S. v. Gogolack - 23-CR-99

1    something that the government explains in its brief.

2        **MAGISTRATE JUDGE MCCARTHY:**  Okay.

3        **MR. COOPER:**  And so where I would leave off on the

4    blood, Judge, is if you eliminate that completely from the

5    government's proffer as to why the defendant should be

6    detained, he should still be detained.  It wasn't like this

7    was some close call case and that's what pushed the Court

8    over the edge when you detained him originally.  Certainly

9    since then, now that he's indicted for three separate

10   conspiracy offenses related to the death of a federal

11   witness, for a distribution of fentanyl resulting in death,

12   this case is not a close call for detention from the

13   government's perspective, Judge.

14       **MAGISTRATE JUDGE MCCARTHY:**  Okay.  Thank you.

15       Here's my suggestion, Mr. Bagley, you can react to it.

16   I'll hear from you today if you want but I think it would

17   make more sense to get the transcript of this proceeding

18   prepared.  It shouldn't take long.  Jeff, you can then

19   indicate which items of evidence that you do not yet have you

20   feel you need.  I'll decide whether you get them and you can

21   either make a written proffer once I make that decision or we

22   can come back and you can make an oral proffer.

23       I'll just say for everybody's benefit, I did detain him

24   originally.  I don't think my decision is based on any

25   particular aspect of the proffer.  But to cite one example

U.S. v. Gogolack - 23-CR-99

1  which was not before me the last time, these jailhouse calls

2  about taking off, if they, in fact, were said -- and I have

3  no reason to doubt counsel right now; but you'll get those

4  Jeff -- that's highly relevant to me, particularly given now

5  the more enhanced charges that Mr. Gogolack faces.

6      So if you want to proffer today, you're welcome to.  I

7  just think it might make more sense to proceed in that

8  orderly fashion.

9      But what do you want to do?

10     **MR. BAGLEY:**  Yes, Judge.

11     I don't have a problem with that suggestion.  I'm happy

12  to submit in writing the things that we'll be requesting and

13  then, I guess, based, maybe based on that -- so, as I

14  understand it, I'll submit something making requests.  The

15  Court will rule on that at a date after that.  I can either

16  submit something with respect to a proffer for Mr. Gogolack's

17  release --

18     **MAGISTRATE JUDGE MCCARTHY:**  Yeah.

19     **MR. BAGLEY:**  -- or we can come back here and do it

20  again.

21     **MAGISTRATE JUDGE MCCARTHY:**  Right, we'll decide that.

22  And if you submit something, the government will have an

23  opportunity to respond.

24     But I don't know that it is formally part of today's

25  proffer but it is before me and we've discussed it earlier.

U.S. v. Gogolack - 23-CR-99

1   I also -- the jail call about in which he allegedly says he's

2   going to sell the names of his victims, I'm going to sell the

3   names in discovery, I think that should be produced to him,

4   as well --

5       **MR. COOPER:**  Judge --

6       **MAGISTRATE JUDGE MCCARTHY:**  -- because --

7       **MR. COOPER:**  -- I think what we'll do is we'll put

8   together a folder with a disk that contains the calls I read

9   from today --

10      **MAGISTRATE JUDGE MCCARTHY:**  Yeah.

11      **MR. COOPER:**  -- and then the call that the agent

12  referenced in a report that Ms. Chalbeck included in our

13  brief.  We'll give that to Jeff, and we'll give it to the

14  Court as well, and I've referenced some specific times for

15  the calls so when you have the transcript, you won't have to

16  listen -- I mean, a lot of them are 30 minute calls.

17      **MAGISTRATE JUDGE MCCARTHY:**  Yeah.

18      **MR. COOPER:**  And listening to them is quite awful.  So

19  maybe you can skip to the points --

20      **MAGISTRATE JUDGE MCCARTHY:**  Yeah.

21      **MR. COOPER:**  -- that are relevant --

22      **MAGISTRATE JUDGE MCCARTHY:**  You know --

23      **MR. COOPER:**  -- and listen for yourself --

24      **MAGISTRATE JUDGE MCCARTHY:**  Okay.

25      **MR. COOPER:**  -- to the defendant's voice.

U.S. v. Gogolack - 23-CR-99

1      **MAGISTRATE JUDGE MCCARTHY:**  Just for everybody's

2   benefit, I'm keeping an open mind but I think -- and I'm not

3   going to prejudge anything other than I have already decided

4   once.  So I think everybody should know -- and, Mr. Bagley,

5   you should know -- that in my mind as I sit here today, you

6   face a real uphill battle but I'll consider what you have to

7   say.  Okay?

8      **MR. COOPER:**  Judge, I just ask if we're going to come

9   back, is there any chance we could come back between the time

10  it takes Mr. Bagley to file something and the government to

11  produce it would it be possible to come back in early April

12  because we're in the middle of a two-month long trial right

13  now and it's quite taxing to --

14     **MAGISTRATE JUDGE MCCARTHY:**  Yeah, yeah, we'll, we'll do

15  that.  I'm not going to give you a date right now because I

16  don't know how quickly things are going to go.

17     **MR. COOPER:**  I appreciate that.  Thank you.

18     **MAGISTRATE JUDGE MCCARTHY:**  Is that trial going to be

19  over you think by --

20     **MR. COOPER:**  I think by the first or second week in

21  April we should be concluded.

22     **MAGISTRATE JUDGE MCCARTHY:**  Okay.  All right.

23     **MR. COOPER:**  Yeah, hopefully.

24     **MAGISTRATE JUDGE MCCARTHY:**  Yeah, we'll talk about a

25  date down --

U.S. v. Gogolack - 23-CR-99

1     **MR. COOPER:**  Thank you.

2     **MAGISTRATE JUDGE MCCARTHY:**  -- the road.  In fairness to

3  Mr. Gogolack, he's entitled to a determination.

4     **MR. BAGLEY:**  Yeah, Judge, I was going to say, I don't

5  mind, you know, like trying to accommodate.  I know the

6  rigors of trial can be, can be substantial, Judge.  I think

7  putting it off for a month and a half is a little bit much,

8  Judge, but I'm happy --

9     **MAGISTRATE JUDGE MCCARTHY:**  We'll see.

10    **MR. BAGLEY:**  -- to --

11    **MAGISTRATE JUDGE MCCARTHY:**  We'll see where we go

12 because, as I said, you know, you can -- when you get the

13 information that I say you can have, then you can make your

14 submission or we can come back but we'll work that through.

15 I'm also out of town for about ten days in the middle of

16 March.  So, we'll work something out.  I'll try to make it as

17 soon as reasonably possible, consistent with everybody's

18 interests and schedules, okay.

19    **MR. COOPER:**  Yeah, if it has to be sooner, Judge, we

20 would just ask for a Friday because literally all the

21 attorneys on that case are --

22    **MAGISTRATE JUDGE MCCARTHY:**  Right.

23    **MR. COOPER:**  -- also on this case.

24    **MAGISTRATE JUDGE MCCARTHY:**  Right.

25    Thank you, all.

U.S. v. Gogolack - 23-CR-99

1    Jeff, in the meanwhile, I understand what you say about

2  Mr. Gogolack wanting to be here, I appreciate that.  I don't

3  know what these communication problems were but they should

4  be straightened out, you know, it's not on you, but I don't

5  know why he wasn't brought in on the previous occasions.

6    **MR. BAGLEY:**  Yes, Judge.  You know, we've had some

7  issues with Ohio in the past but I plan to try to address

8  that maybe with the Marshals.

9    **MAGISTRATE JUDGE MCCARTHY:**  Okay.  All right.

10    **MR. BAGLEY:**  Thank you.

11    **MAGISTRATE JUDGE MCCARTHY:**  Thank you, all.

12    Have a good weekend.

13    (**WHEREUPON,** proceedings adjourned.)

14

15

16

17

18

19

20

21

22

23

24

25

U.S. v. Gogolack - 23-CR-99

1

2                    *            *            *

3               CERTIFICATE OF TRANSCRIBER

4

5          In accordance with 28, U.S.C., 753(b), I

6    certify that this is a true and correct record of proceedings

7    from the official audio recording of the

8    proceedings held in the United States District Court

9    for the Western District of New York before the

10   Honorable Jeremiah J. McCarthy on March 1, 2024.

11

12

13   S/ Diane S. Martens

14   Diane S. Martens
     Transcriber
15

16

17

18

19

20

21

22

23

24

25