IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

-v-                                                              Case No.: 23-CR-99

PETER GERACE, JR.,

      Defendant.
_____


### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR A HEARING AND THE IMPOSITION SANCTIONS DUE TO THE GOVERNMENT'S DISREGARD OF THIS COURT'S DISCOVERY ORDER


Dated: June 10, 2024



s/ Mark A. Foti, Esq.
Mark A. Foti, Esq.
The Foti Law Firm, P.C.
16 W Main Street, Suite 100
Rochester, NY 14614
(585) 461-1999

Defendant Peter Gerace, Jr., by and through counsel, Mark A. Foti, Esq., provides the following memorandum in support of a Motion for the imposition of sanctions against the government for its clear disregard of this Court's order regarding the disclosure of discovery, including but not limited to vacating the exclusion of time issued on February 23, 2024; preclusion of evidence disclosed after the discovery deadline; and any other sanction or relief deemed appropriate by this Court.

The Table of Contents is as follows:

I.      Background ............................................................................................................... 3

   A.     Relevant Procedural History Preceding the Second Superseding Indictment ............................................................................................................... 3

   B.     Court Appearances Prior to the February 23, 2024, Status Conference ... 5

   C.     The February 23, 2024, Status Conference ...................................................... 6

   D.     Discovery Disclosure leading up to the June 3, 2024, Status Conference 11

   E.     The June 3, 2024, Status Conference ............................................................... 17

   F.     Discussions Regarding the Protective Order and the Government's Motion for Reconsideration ...................................................................................... 20

      The Proposed Protective Order ........................................................................... 20

      New Motion for Exclusion of Time ..................................................................... 21

II.    Applicable Law ...................................................................... 21

   A.    Discovery Violations.................................................... 21

   B.    The Court's Supervisory Role ..................................... 23

III.    Discussion ........................................................................... 24

   A.    The Government Was Provided an Extraordinary Amount of Time for Discovery Disclosure ............................................... 24

   B.    The Government's Blatantly Disregarded this Court's Order ............... 26

   C.    A Hearing Should be Held to Address the Underlying Facts Relevant to the Government's Disregard of this Court's Discovery Order .......................... 28

   D.    Potential Sanctions.......................................................... 31

IV.    Conclusion .......................................................................... 32

### I.    BACKGROUND[1]

A. Relevant Procedural History Preceding the Second Superseding Indictment

Defendant Simon Gogolack was charged by Complaint on August 17, 2023, and initially appeared on August 23, 2023. Magistrate Judge Case Number ("Magistrate no.") 23-mj-01115-JJM, Dkt. # 1, 4. Mr. Gogolack was detained on the government's motion. Magistrate no. 23-mj-01115-JJM, Dkt. # 4.

---

[1] This Background section is similar to the Background section included in the Response to the government's motion for an exclusion of time, filed separately.

Mr. Gogolack was indicted less than one month later on September 13, 2023. Dkt. # 12. An arraignment and detention hearing were held on September 14, 2023. Dkt. # 15.

This Court issued a Scheduling Order on September 15, 2023, that ordered "All voluntary discovery shall be completed by October 16, 2023." Dkt. # 17 at 1.

Five days later, on September 20, 2023, a superseding indictment was filed against Gogolack. Dkt. # 18. An arraignment on the superseding indictment was held on September 25, 2023. Dkt. # 20.

This Court issued a Scheduling Order on the Superseding Indictment. Dkt. # 21. The discovery deadline remained the same. Dkt. # 21 at 1 ("All voluntary discovery shall be completed by October 16, 2023.")

Other defendants were charged, individually by separate complaints, including: Howard Hinkle (Magistrate no. 23-mj-05219-MJR)[2]; Michael Roncone (Magistrate no. 23-mj-00168-HKS); Scott Barnes (Magistrate no. 23-mj-00166-HKS); and John Ermin (Magistrate no. 23-mj-00167-HKS).

On December 13, 2024, Mr. Gogolack requested an extension of time to file pretrial motions. Dkt. # 22. The Court granted the request and issued an Amended Scheduling Order on the Superseding Indictment. Dkt. # 23. The scheduling order did not provide a

---

[2] Howard Hinkle was also charged with Dillon Anderson who has since had his charges dismissed. *See* Magistrate no. 23-mj-05219-MJR, Dkt. # 20

new deadline for discovery because the government never requested an extension of time to disclose discovery. *Id*.

     B.     <u>Court Appearances Prior to the February 23, 2024, Status Conference</u>

On January 5, 2024, a Second Superseding Indictment was filed against Mr. Gogolack, which included Mr. Gerace and all of the defendants listed supra. Dkt. # 24.

At the arraignment for Mr. Gerace on January 10, 2024, counsel appeared provisionally, and although not yet retained or appointed on this case, counsel made a request for initial discovery disclosure. Dkt. # 46 at 13-14 ("So, I would ask that at least some preliminary disclosure be provided, beyond the indictment, to give counsel an idea of what's going to be involved here in terms of the defense of this case, in terms of motion practice, in terms of the timeframe associated with a trial.")

The government opposed any disclosure claiming that because counsel was not yet confirmed and that disclosure would somehow "build[] delay into this case." Dkt. # 46 at 14.

The government made no comment about how long the discovery process would take, or that hard drives would have to be provided by the defendants, or that it would be seeking a protective order at some point.

A status conference was set for January 31, 2024.

At the status conference on January 31, 2024, counsel for Mr. Gogolack made a detailed request regarding the need for a discovery deadline:

Mr. Gogolack has been on the complaint since August. We don't have basic discovery in the case.

I know the Government has made several representations at various detention hearings about discovery that they have, but we're in a position where we're unable to evaluate any of that because we don't have it, Judge.

So I'd ask that you set a discovery deadline before you set any other scheduling order and we can come back at a status conference at some point in the future and set motions deadlines, but I would ask for a discovery deadline first.

Dkt. 66 at 30.

Even though by January 31, 2024, 26 days had already passed since the filing of the indictment, and 167 days had passed since Mr. Gogolack was initially charged, the government opposed setting a discovery deadline unless the Court was also going to set a deadline for motions, even though there was no explanation for why those two deadlines would need to be set at the same time.[3] Dkt. 66 at 30-31.

A status conference was set for February 23, 2024.

C.  The February 23, 2024, Status Conference

On February 23, 2024, 49 days after the filing of the second superseding indictment, this Court held a status conference. The government had still not provided a single page or a single byte of discovery to Mr. Gerace.

_____

[3] Obviously, it was not feasible to schedule deadline for motions yet as counsel had no idea what the scope of the case was and there were still counsel issues to work out. However, nothing was preventing the government from preparing or providing discovery.

At the status conference, this Court proposed that a discovery deadline be set. Feb. 23, 2024 Transcript at 3. This Court proposed a generous 60-day deadline.[4] Feb. 23, 2024 Transcript at 6.

In response to this Court's suggestion, the government asked for 90 days. It provided two reasons for its request.

> The first reason is this case involves a significant amount of discoverable material. It's a significant undertaking. *There's an agent from the FBI who has been essentially exclusively assigned to that task,* but the resources that that requires are significant. And so as opposed to setting a shorter deadline and rushing things for lack of a better word, I'd ask that we set 90 days and allow a thorough review and production of discovery.
>
> The other reason is as the Court indicated, it would be helpful to have a final determination regarding this death penalty issue before we all come back and before motion practice begins, and I think kicking this out 90 days versus 60 days errs on the side of caution with respect to that determination.
>
> Feb. 23, 2024 Transcript at 6-7 (emphasis added).

As this Court knows, the Notice that the government would not pursue the death penalty was filed later that day (Dkt. # 75) so it ended up having no bearing on the need for 90 days as opposed to the 60 days that this Court proposed.

In regard to the volume of discovery, to the extent that there was "an agent from the FBI who has been essentially exclusively assigned to that," 60 days should have been

---

[4] A 60-day deadline would have resulted in a deadline set 109 days after the filing of the second superseding indictment.

more than sufficient, but nonetheless the government asked for 90. The government

referred to it as "an additional 30-day cushion." Feb. 23, 2024 Transcript at 7-9.

The defense indicated that it had no way of knowing what the volume of discovery

was, so it could not really argue in opposition to the lengthy timeframe requested by the

government.

> I think we're all in a position where we somewhat have to
> defer to the Government in terms of how long it will take
> them to produce discovery… I would note… I've had a
> number of mega cases where discovery could be produced in
> 30 to 60 days… obviously almost all of the defendants are in
> custody. I have concerns about the length of that type of
> adjournment, but um, given the fact that the Government is
> the only entity at this point that can describe the volume of
> discovery and they're saying they need 90 days, um, I don't
> know that there's much I can do to rebut that.

> Feb. 23, 2024 Transcript at 8-9.

Despite the fact that counsel did not, at that time, question the government's

representation that 90 days would be necessary, nor did counsel oppose the request based

on the fact that it had no indication as to what the actual volume of discovery is, the

government nonetheless felt compelled to respond.

> [I]t's perplexing to hear that counsel has concerns regarding
> speedy trial when we've had I think three separate status
> conferences where counsel hasn't wanted to set a scheduling
> order in place. To come today and say, hey, that's too long to
> ask for is contrary to the arguments that have been raised that
> the arraignment, the status conference after the arraignment.
> It's inconsistent with arguments previously raised that the
> Court shouldn't set a scheduling order. So I don't understand.

Feb. 23, 2024 Transcript 9-10

Counsel replied:

> Judge, just -- I don't want to have it turned into a back and forth, but I do want to correct the record. At the arraignment, I asked for discovery. I said I think we should put a scheduling order in place. I indicated that I would be a proponent of split -- bifurcating non dispositive and dispositive motions. I specifically said to the Court if we start getting discovery, it can inform us on the size of the case. So that was an application I made.

> I believe the Government's response was they thought that would build in delay in some manner. So I just want that to be clear, and obviously, this is an investigation that took place over several months. There is a period of time that precedes the charges where the discovery could be prepared in anticipation of an indictment. Again, I'm not opposing the 90 days. The Government is in the position to say that the volume is that high. My point is merely that defendants are in custody. That's a consideration, and it informs on other considerations the Court has.

Feb. 23, 2024 Transcript 10-11.

Counsel for Mr. Ermin also added "whatever time the Government needs to get us the complete discovery obviously would help us, but the implication that somehow we are here today as a result of delays from defendants is I think inappropriate." Feb. 23, 2024 Transcript at 11.

Ultimately, this Court agreed to grant the extensive 90-day deadline, but it specifically indicated that to the extent possible, the discovery should "be produced sooner than that date" and it should be produced "[o]n a rolling basis so that people can

hit the ground running in terms of what they think they need to do." Feb. 23, 2024

Transcript at 12.

This direction by the Court followed an earlier colloquy, where the Court asked if

it was possible to do "rolling production during the 90 day period" and the government

responded: "I certainly think so, Judge. I think that *there's material that is probably close to*

*ready to go out at this point* because we've obviously been working on it since the return of

the indictment." Feb. 23, 2024 Transcript at 10 (emphasis added).

The deadline for discovery was set for May 23, 2024, and a status conference was

set for June 3, 2024. Transcript at 12-13.

The Government moved for an exclusion of time, which recognized that the Court

expected that the defendants would be able to review discovery in advance of the June

status conference.

> So the Government would request that the time between
> today's date and June 3, 2024, be excluded from the speedy
> trial act pursuant to Title 18 United States Code Section
> 3161(h)(7)(a) and (h)(7)(b)(4) in that the interest of justice in
> the exclusion of such time outweigh the defendant's interest
> in a speedier trial specifically because with this time between
> today and June 3 the Government will prepare and produce
> an itemized list of discovery to counsels for all of the evidence.
> Additionally, it will provide time between May 23 and June 3
> for counsel for all of the defendants to review such discovery
> and report back to the Court at that status conference about
> how much time they need to file motions.
>
> Feb. 23, 2024 Transcript at 16-17.

Based on the understanding that discovery would be provided on a rolling basis to the extent possible and completed on or before May 23, 2024, the Court issued an exclusion of time.

These issues were summarized on the Minute Entry entered on the public docket:

> The government requests 90 days to produce discovery. After some discussion, the court sets a 90-day deadline and sets a follow-up status conference for 6/3/2024 at 2:00 PM to discuss motion schedules. The court directs the government to provide discovery on a rolling basis, to extent possible. STA time excluded as to all defendants through the June 3rd status conference for the reasons stated by the government.
>
> Dkt. # 73.

At no point during the conference did the government state that it intended to seek a protective order or that the defendants would need to provide hard drives at any point in order to receive discovery.

D.   Discovery Disclosure leading up to the June 3, 2024, Status Conference

At the time of the February 23, 2024, status conference, 49 days had already passed following the filing of the superseding indictment. Starting February 23, 2024, the government was to provide rolling discovery over the following 90 days, with a deadline that it be completed by May 23, 2024.

Over the next 90 days, the following chart documents the government's daily compliance with that directive:

| Date | Any Rolling Discovery Produced? | Request for a hard drive? | Proposed Protective Order? |
|---|---|---|---|
| 2/23/2024 | No | No | No |
| 2/24/2024 | No | No | No |
| 2/25/2024 | No | No | No |
| 2/26/2024 | No | No | No |
| 2/27/2024 | No | No | No |
| 2/28/2024 | No | No | No |
| 2/29/2024 | No | No | No |
| 3/1/2024 | No | No | No |
| 3/2/2024 | No | No | No |
| 3/3/2024 | No | No | No |
| 3/4/2024 | No | No | No |
| 3/5/2024 | No | No | No |
| 3/6/2024 | No | No | No |
| 3/7/2024 | No | No | No |
| 3/8/2024 | No | No | No |
| 3/9/2024 | No | No | No |
| 3/10/2024 | No | No | No |
| 3/11/2024 | No | No | No |
| 3/12/2024 | No | No | No |
| 3/13/2024 | No | No | No |
| 3/14/2024 | No | No | No |
| 3/15/2024 | No | No | No |
| 3/16/2024 | No | No | No |
| 3/17/2024 | No | No | No |
| 3/18/2024 | No | No | No |
| 3/19/2024 | No | No | No |

| | | | |
|---|---|---|---|
| 3/20/2024 | No | No | No |
| 3/21/2024 | No | No | No |
| 3/22/2024 | No | No | No |
| 3/23/2024 | No | No | No |
| 3/24/2024 | No | No | No |
| 3/25/2024 | No | No | No |
| 3/26/2024 | No | No | No |
| 3/27/2024 | No | No | No |
| 3/28/2024 | No | No | No |
| 3/29/2024 | No | No | No |
| 3/30/2024 | No | No | No |
| 3/31/2024 | No | No | No |
| 4/1/2024 | No | No | No |
| 4/2/2024 | No | No | No |
| 4/3/2024 | No | No | No |
| 4/4/2024 | No | No | No |
| 4/5/2024 | No | No | No |
| 4/6/2024 | No | No | No |
| 4/7/2024 | No | No | No |
| 4/8/2024 | No | No | No |
| 4/9/2024 | No | No | No |
| 4/10/2024 | No | No | No |
| 4/11/2024 | No | No | No |
| 4/12/2024 | No | No | No |
| 4/13/2024 | No | No | No |
| 4/14/2024 | No | No | No |
| 4/15/2024 | No | No | No |

| | | | |
|---|---|---|---|
| 4/16/2024 | No | No | No |
| 4/17/2024 | No | No | No |
| 4/18/2024 | No | No | No |
| 4/19/2024 | No | No | No |
| 4/20/2024 | No | No | No |
| 4/21/2024 | No | No | No |
| 4/22/2024 | No | No | No |
| 4/23/2024 | No | No | No |
| 4/24/2024 | No | No | No |
| 4/25/2024 | No | No | No |
| 4/26/2024 | No | No | No |
| 4/27/2024 | No | No | No |
| 4/28/2024 | No | No | No |
| 4/29/2024 | No | No | No |
| 4/30/2024 | No | No | No |
| 5/1/2024 | No | No | No |
| 5/2/2024 | No | No | No |
| 5/3/2024 | No | No | No |
| 5/4/2024 | No | No | No |
| 5/5/2024 | No | No | No |
| 5/6/2024 | No | No | No |
| 5/7/2024 | No | No | No |
| 5/8/2024 | No | No | No |
| 5/9/2024 | No | No | No |
| 5/10/2024 | No | No | No |
| 5/11/2024 | No | No | No |
| 5/12/2024 | No | No | No |

| 5/13/2024 | No | No | No |
|-----------|-----|------------|-----|
| 5/14/2024 | No | No | No |
| 5/15/2024 | No | No | No |
| 5/16/2024 | No | No | No |
| 5/17/2024 | No | No | No |
| 5/18/2024 | No | No | No |
| 5/19/2024 | No | No | No |
| 5/20/2024 | No | Yes[5] | No |
| 5/21/2024 | No | | No |
| 5/22/2024 | No | | No |
| 5/23/2024 | No | | No |

At no point did the government move for an extension of the discovery deadline.

For the first time, on May 20, 2024[6], the government advised defense counsel it would need a hard drive from each of the defendants in order to provide discovery. The government indicated the copying of discovery "upload may take 2-3 days to complete."

The government stated it needed a hard drive containing space for up to 3 terabytes of data. That is substantial enough that it would require most or all attorneys to

---

[5] Although the government requested the hard drive prior to the expiration of discovery, it was requested so late that most defendants would not be able to purchase and deliver the drive prior to the expiration of the deadline, and even if they did it would not matter because (1) it would take multiple days to copy the data onto the drive; and (2) the government had no intention of disclosing the material until a protective order was in place, and it would not first broach the subject of a protective order until nearly a week after the deadline passed.

[6] May 20, 2024, was 136 days after the second superseding indictment was filed.

purchase a new drive and have it delivered to the government before the copying could even start.

Over the next week and a half, most of the attorneys obtained hard drives and had the drives sent or delivered to the government. None of the defense attorneys received a hard drive back regardless of how quickly each attorney was able to purchase the drive and deliver it to the government.

Instead, on May 29, 2024, for the first time, the government sent an email stating that it would withhold discovery until a "protective order is authorized by the Court."[7]

The government's email attached a 5-page proposed protective order. Even though the government tried to quickly elicit consent from defense counsel for its proposed protective order, the document included several provisions that the government could not have possibly believed all defense counsel would consent to.[8]

Over the next two days, communication between the defense attorneys resulted in most of defense counsel deciding to meet to collectively to review the protective order. Because the government had waited until only a few business days before the June 3, 2024, status conference, the attorneys could not realistically meet before that date.

---

[7] The government should have received an out-of-office reply from my email address on that date, because I was out of the district for argument at the Second Circuit.

[8] Earlier today, the government advised defense counsel that it intended to file a motion for a protective order. The defense will address the government's proposed provisions in response to that motion. The provisions proposed by the government are a substantial deviation from restrictions that would be supported by good cause.

On June 3, 2024, the attorneys met before the scheduled status conference to review the proposed protective order in an effort to establish a collective position regarding whether they would consent to a protective order and if so, which provisions would be agreeable. The attorneys came to a consensus on which provisions were agreeable and which provisions were inappropriate and/or redundant.

Immediately following that meeting, the parties convened in court for the status conference.

E.   The June 3, 2024, Status Conference

At the status conference on June 3, 2024, the government seemed to suggest that the delay regarding the disclosure of discovery was somehow the responsibility of the defense. The government stated that most of defense counsel had not immediately responded to the government's email requesting consent to its proposed protective order. The government initially omitted the fact that the email had been sent only five days earlier, 145 days after the indictment was filed.[9]

After the Court established a timeline, including that the government did not request a protective order until over a week after the discovery deadline had already expired, it inquired about the reason for the delay.

---

[9] The government also omitted any substantive acknowledgement of the court's direction to provide rolling discovery.

The government did not offer much in terms of an explanation for the delay, but it seemingly admitted that part of the reason discovery had not been prepared was because the trial team was engaged in another trial in *US v Bongiovanni et al*.[10]

The defense indicated that by the following evening, it expected it could provide a proposed protective order with input and/or edits from most or all of the attorneys. The defense requested a deadline be set for the government to file a motion for a protective order if the parties could not reach an agreement. The defense also noted that the government had not requested any extension of the discovery deadline, and that discovery should have been disclosed over a week before the government even mentioned a protective order.

The government indicated it would release the discovery if a temporary protective order was issued indicating that the discovery could be viewed by "attorney's eyes only."

The Court set a scheduling requiring any motions for a protective order be filed by June 10, 2024. That date would also serve as a deadline for defendants to file motions related to relief based on the government's failure to abide this Court's ordered discovery deadline.

---

[10] Notably, the government had already been engaged in that trial during the February 23, 2024, status conference, so the government was fully aware of the time commitments associated with the trial when it requested 90 days, including the 30-day cushion.

The government then moved for an exclusion of time pursuant to 18 U.S.C. Sections 3161(h)(7)(A) and (h)(7)(B)(iv). Because the government failed to produce discovery as directed by this Court and because that delay had prevented the parties from reviewing discovery in advance of the court date so a scheduling order could be set, the Court denied the request for an exclusion of time in the interest of justice.

A Text Order was issued that day summarizing the appearance and confirming that time would not be excluded from the Speedy Trial Act calendar.

| 06/03/2024 | 122 | TEXT ORDER as to Simon Gogolack, Peter Gerace, Jr, John Thomas Ermin, Michael Roncone, Frank Knight, Howard Hinkle, Jr., Cortnie Barber, Bernard Byrd, III, Scott Barnes: In accordance with today's conference, the government's production of discovery shall be deemed attorney's eyes only pending further order of the court and without prejudice to defendants' right to argue against that designation. The parties shall continue to confer in an effort to reach agreement on a proposed protective order. By June 10, 2024, the parties shall either file a proposed stipulated protective order or motion(s) for the entry of a protective order. By that deadline defendants may also file motions directed to consequences of the government's failure to abide by my February 23, 2024 Text Order 74 requiring the government to produce discovery to them by no later than May 23, 2024. Responses to these motions (if any) shall be filed by June 14, 2024, after which time the motion(s) will be taken under advisement. A further conference is scheduled for June 27, 2024 at 2:00 p.m. For the reasons set forth by defendants' counsel on the record, I deny the government's request to enter a further exclusion of time from the Speedy Trial Act calendar pursuant to 18 U.S.C. Sections 3161(h)(7)(A) and (h)(7)(B)(iv). As of today, time if no longer excluded from the Speedy Trial Act calendar. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 6/3/24. (MDY) (Entered: 06/03/2024) |

F.   <u>Discussions Regarding the Protective Order and the Government's Motion for
Reconsideration</u>

*The Proposed Protective Order*

The evening following the status conference, counsel for Gerace sent an email to the government with an attachment containing a proposed protective order. The proposed protective order was drafted with input and/or edits from the majority of attorneys. Counsel for at least six of the defendants had weighed in that they would stipulate to this protective order if it was acceptable to the government.

That proposed protective order was sent to the government on the evening of June 4, 2024. The following morning, the government sent a reply email indicating that they would "take a look and get back to" the defense.

Despite the claim that the government had wanted to work towards an agreement on the protective order, the government never made any further effort to discuss a compromise.

Earlier today, six days after the defense had provided a proposed protective order, the government followed up with an email indicating that it is going to file a motion for a protective order. The clear implication of the email was that because defense counsel had not agreed to a large enough percentage of the government's proposed protective order, it would file a motion instead of engaging in further discussion.

The Government opted to file that motion *ex parte* to avoid having its argument tested by the adversarial process. Dkt. # 129.

That motion is now pending.

*New Motion for Exclusion of Time*

On June 5, 2024, the government filed a motion for an exclusion of time, essentially moving to exclude almost the same period of time that it had moved to exclude at the June 3, 2024, status conference but was denied.

The mere filing of the motion was an attempt to accomplish the government's goal of having the time excluded, because the government will likely content that the pendency of the motion itself stopped the Speedy Trial clock and thus, by making the motion, the government has attempted to circumvent the consequence of the Court's decision not to exclude time, at least temporarily.

The defense will respond to that motion separately and will request a hearing to resolve the underlying facts of that motion and to determine what sanctions may be appropriate based on the government's attempt to circumvent this Court's decision to deny an exclusion of time in the interest of justice by filing a motion requesting that same relief a second time, two days after it was denied.

## II.   APPLICABLE LAW

### A.   Discovery Violations

Federal Rule of Criminal Procedure 16(d)(2) gives the trial court substantial discretion to impose sanctions for failure to comply with discovery orders. See, e.g., United States v. Gee, 695 F.2d 1165, 1168 (9th Cir. 1983) (emphasizing that sanctions for

failure to comply with a discovery rule are reviewed under the abuse of discretion standard). If a party fails to comply with Rule 16, the court may: (1) order the violating party to permit the discovery or inspection; specify its time place, and manner; and prescribe other just terms and conditions; (2) grant a continuance; (3) prohibit the violating party from introducing the undisclosed evidence; or (4) enter any other order that is just under the circumstances. *See* FED. R. CRIM. P. 16(d)(2)(A)-(D).

Preclusion of evidence is an appropriate sanction for the failure to comply with discovery rules. *See e.g. United States v. Davis*, 244 F.3d 666, 672 (8th Cir. 2001) (determining exclusion proper as a sanction for prosecution's failure to comply with the court's discovery deadline for disclosure of DNA testing results).

Indeed, the Second Circuit has noted that "[a] district court has broad discretion in fashioning a remedy for the government's violation of its obligations under Rule 16(a), including ordering the exclusion of evidence." *US v. Salameh*, 152 F. 3d 88, 130 (2d Cir. 1998); *See also United States v. Thai*, 29 F.3d 785, 804 (2d Cir.1994).

Refusal to provide discovery, or even deliberate attempts to impede discovery by instructing witnesses not to reduce facts to writing, may result in a valid contempt citation. *In re Serra*, 484 F.2d 947, 948 (9th Cir. 1973) (upholding contempt citation where

defense counsel[11] told psychiatrist not to prepare report of psychiatric interview to prevent reciprocal discovery of report).

The broad authority granted to this Court under Rule 16 provides authority for this Court to fashion an appropriate sanction for the Government's disregard of this Court's Order regarding disclosure of rolling discovery to be completed by February 23, 2024. That authority is compounded by the authority provided to this Court in its Supervisory Role.

B.      The Court's Supervisory Role

This Court maintains supervisory authority to formulate rules and impose sanctions when necessary to appropriately oversee the administration of justice, including the protection of rights afforded to the accused and the fairness of the adversarial process.

The supervisory power of the judiciary is based on the overarching principle that "judges exercise substantial discretion over what happens inside the courtroom." *United States v. Simpson*, 927 F.2d 1088, 1090-91 (9th Cir. 1991). The exercise of a court's supervisory power is intended "to prevent parties from reaping benefit or incurring harm

---

[11] Even a criminal defendant, who is afforded Sixth Amendment protections may be subject to sanctions including preclusion for discovery violations. *See United States v. Young*, 248 F.3d 260, 266-67 (4th Cir. 2001); *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999).

from violations of substantive or procedural rules governing matters apart from the trial itself." *United States v. Williams*, 504 U.S. at 46.

Even if the government conduct had not triggered authority for a sanction under Rule 16, a federal court, in the exercise of its supervisory authority "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *Bank of Nova Scotia v. United States*, 487 US 250, 254 (1988)(*quoting United States v. Hasting*, 461 U. S. 499, 505 (1983); *see also United States v. Williams*, 504 U.S. 36, 45 (1992).

In its supervisory role, courts are permitted to consider relief, including dismissal of an indictment in an exercise of its supervisory powers if the misconduct is sufficiently egregious. *See e.g. Simpson*, 927 F.2d at 1090.

## III.   DISCUSSION

A. The Government Was Provided an Extraordinary Amount of Time for Discovery Disclosure

When counsel for Mr. Gerace first addressed the topic of discovery disclosure at his arraignment, the government opposed efforts towards disclosure, claiming without explanation, that disclosure at that stage would somehow cause delay.

When counsel for Mr. Gogolack requested a deadline for discovery at a status conference in January, the government opposed setting a deadline, arguing that a discovery deadline should not be set unless a motion deadline would be set, something that was not possible at that time.

At the status conference on February 23, 2024, forty-nine (49) days had already passed since the filing of the second superseding indictment. The Court indicated that it was going to set a deadline for the government to provide discovery.

This Court had appropriately estimated that sixty (60) days should be enough to complete the disclosure of discovery. When added to the time that had already passed since the filing of the indictment, that would have amounted to one-hundred nine (109) days, an unusually long amount of time for the government to produce discovery.

The Government insisted that it needed 90 additional days despite the fact that the defendants remained in custody and would clearly be prejudiced by any delay. The 30-day "cushion" would result in a discovery deadline of May 23, 2024.

That deadline was set one-hundred thirty-nine (139) days after the indictment was filed. That is an exceedingly lengthy amount of time for the government to produce discovery, especially when defendants are in custody.

This Court was clearly concerned about the length of delay the government was requesting, but it attempted to balance its concerns with a directive that discovery be provided on a rolling basis.

When asked on February 23, 2024, whether rolling discovery would be possible, the government indicated that it believed that there was "material that is probably close to ready to go out at this point because we've obviously been working on it since the return of the indictment." Feb. 23, 2024 Transcript at 10.

Given the length of time that was afforded to the government as a deadline to conclude discovery disclosure and given that discovery was directed to be provided on a rolling basis in the months that preceded the deadline, the government's failure to comply with this Court's Order is egregious and demonstrates negligence or worse.

B.     <u>The Government's Blatantly Disregarded this Court's Order</u>

The government's clearly demonstrated a complete disregard for the Court's Order in multiple respects: (1) the government did not provide rolling discovery at any point during the extensive 90 days afforded to the government to complete discovery production; (2) the government did not request an extension of time to provide discovery after the court-ordered deadline; and (3) the government continued to withhold discovery after the discovery deadline had expired while it raised the issue of a protective order for the very first time.

The government has offered not legitimate explanation for the delay, other than its admission that the trial team in this case was focusing its attention on a trial in *Bongiovanni et al*, a jury trial that was held of an out-of-custody defendant that resulted in a hung jury on the majority of the counts.

Setting aside that the government was already engaged in that trial in February when it claimed that 90 days was sufficient and that it had discovery that was already "close to ready to go out," the excuse is unavailing for multiple other reasons.

The US Attorney's Office had multiple other AUSAs enter appearances on this case, presumably to assist in managing the case while the trial team was engaged in trial. Those AUSAs were not engaged in the Bongiovanni trial, and there has been no explanation for why they could not oversee the disclosure of rolling discovery.

Furthermore, this indictment was filed over a month before the Bongiovanni trial commenced, and the discovery deadline was over a month after the trial concluded, so the trial team's decision to focus on the Bongiovanni trial does not explain the failure to address discovery in this case for any period of time that it was not engaged in trial.

The DOJ Policy Manual notes that "[p]roviding broad and early discovery often promotes the truth-seeking mission of the Department" and "provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error." DOJ Justice Manual, 9-5.002- Criminal Discovery. Indeed the manual directs that prosecutors must comply with "local rules, applicable case law, and any final court order regarding discovery." *Id*. There is no exception for engagement in another trial.

Finally, in addition to the additional AUSAs who had appeared in this case, there were a team of other individuals involved in the discovery process apparently including a dedicated FBI agent, a Litigation Specialist, and other US Attorney staff.

This team of individuals should have been capable of ensuring that rolling discovery was provided for, and that the discovery deadline was met. The failure to do

so is consistent with a lack of supervision by the US Attorney's Office and a disregard for this Court's discovery Order.

As a result of the government's delay and disregard for this Court's Order, the parties were unable to review the discovery prior to the June 3, 2024, status conference, and the parties are only now engaging in litigation over a protective order that could have been resolved at any time following the filing of the Second Superseding Indictment.

C. <u>A Hearing Should be Held to Address the Underlying Facts Relevant to the Government's Disregard of this Court's Discovery Order</u>

The government disregarded both the rolling discovery requirement and the discovery deadline.

Up to this point, the government has not provided any explanation for is noncompliance with this Court's Order, other than its reference to the Bongiovanni trial, which as discussed above, is not a legitimate excuse to deprive the defendants of discovery or to violate this Court's Order.

At this point, a hearing should be ordered to address the facts surrounding the government's violation of this Court's Order. Specifically, it is requested that the Court order a hearing addressing the following issues to determine appropriate sanctions:

- Why the government failed to produce any rolling discovery following the Court's Directive on February 23, 2024;

- Why the government waited until three days before the discovery deadline to request the defense provide a hard drive;

- Why the government failed to produce discovery prior to the May 23, 2024 deadline;

- Why the government waited until May 29, 2024, to present a protective order to defense counsel; and

- Any other issue that this Court deems appropriate.

In regard to the hard drive, the government filed a submission last week claiming that on May 16, 2024, the week before the discovery deadline when the government apparently learned "that the necessary hard drive storage capacity for the disclosure of the discovery production in this case would be 3 Terabytes." Dkt. # 123-1 at 5-6.[12]

There is no reason why it should have taken that long to determine that a 3 terabyte hard drive would be necessary. The hard drive has discovery divided into two folders, bate-stamped discovery and digital evidence items. The bate stamped discovery only amounts to approximately 30.5 gigabytes of material. The larger sized digital material is contained in a folder of "digital evidence items."

Review of the "digital evidence items" folder appears to establish most of the digital items were recovered in 2023, well before the indictment was returned. There was a substantial amount of time to review the digital size of those items even before the indictment, or at least before the February 23, 2024, status conference. Determining the

---

[12] The government advised the defendants of the need for the hard drive for the first time four days later on May 20, 2024.

side of a digital file is not a complicated or time-consuming take. In Windows Explorer, a user can simply right click the properties for a folder to identify the size of its contents.

There is no reasonable explanation for why a dedicated FBI agent, a litigation technology specialist, and other staff could not estimate the size of a hard drive that would have been needed to cover all discovery, and furthermore, there is no reason why many of these items contained in the "digital evidence items" folder could not have been provided immediately following the February 23, 2024, conference if not before.

And even if it would have taken some time following the February 23, 2024, conference to produce these items, the request for a protective order was not tied to a determination of file sizes, and there has been no explanation as to why the government waited until after the discovery deadline to propose a protective order.

If the government intended to withhold discovery until a protective order was in place, then it should have addressed the issue shortly after the February 23, 2024, status conference or earlier.

It is clear that the government had no intention of following the Court's directive to provide rolling discovery, because if it had, it would have certainly addressed the request for a protective order in a timely manner and not have filed a motion for one on June 10, 2024, 108 days after the status conference was held and 157 days after the indictment was filed.

The government's failure to comply with this Court's discovery order is a basis for sanctions, especially under the circumstances here, and it is respectfully requested that this Court should order a hearing to resolve the government's motion and determine which sanctions are appropriate.

D. Potential Sanctions

While a hearing would provide for a more complete record regarding the extent to which the government disregarded this Court's discovery order, there a multiple potential sanctions that this Court could consider based on the undisputed facts here.

First, on February 23, 2024, this Court issued a speedy trial exclusion from February 23, 2024, to June 3, 2024, with the expectation that the government comply with this Court's Order to provide rolling discovery and conclude discovery disclosure by May 23, 2024, in advance of the June 3, 2024 status conference. Because the government did not utilize that time as directed, and because the defendants were not provided with any rolling discovery during at any point in time until after the expiration of the discovery deadline, it would be appropriate for this Court to vacate the Order issuing a Speedy Trial exclusion from February 23, 2024, to June 3, 2024.

Second, since discovery was supposed to be provided on a rolling basis and concluded by May 23, 2024, an Order of preclusion would be an appropriate remedy for any discovery disclosed after the deadline.

After a hearing, the Court would have a more complete record to fashion appropriate relief which may include the aforementioned sanctions or may include more or less severe sanctions based on the facts that are elicited during the course of a hearing. The hearing would also be an appropriate means of resolving fact issues related to the government's pending motion for an exclusion of time and it is requested that the Court order the hearing and schedule it at the earliest available date.

## IV.    CONCLUSION

For all of the reasons set forth above, Mr. Gerace respectfully requests that a hearing be ordered to address the factual issues pertaining to the government's disregard of this Court's discovery order; and that appropriate sanctions be imposed.

Dated: June 10, 2024

/s/ Mark A. Foti
Mark A. Foti, Esq.
