IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

-v-                                                                          Case No.: 23-CR-99

PETER GERACE, JR.,

      Defendant.
_____

## <u>MEMORANDUM REGARDING THE GOVERNMENT'S ATTEMPT TO SUBMIT ITS MOTION FOR A PROTECTIVE ORDER [DKT. 129] *EX PARTE*</u>

Defendant Peter Gerace, Jr., by and through counsel, Mark A. Foti, Esq., provides the following memorandum in opposition to the government's attempt to submit *an ex parte* affidavit in support of a motion for a protective order.

I.    Introduction ............................................................................................. 2

II.    Background ............................................................................................... 4

III.    Discussion ............................................................................................... 8

    A.    Authorization Is Required Before a Motion May be Submitted *Ex parte* 10

    B.    The Circumstances Do Not Establish Good Cause ................................. 11

    C.    History Shows That *Ex parte* Submissions by the US Attorney's Office Should Be Tested by the Adversarial Process ....................................................... 13

IV.    Conclusion .............................................................................................. 16

## I. INTRODUCTION

On June 10, 2024, over five months after the second superseding indictment was filed, the government, for the first time, made a motion for a protective order and without first seeking permission to do so, elected to file the support for the motion in an *ex parte* affidavit.

In order to file the affidavit in support of its motion *ex parte*, the government was required to request permission based on a showing of good cause. The government did not do so prior to filing its submission, and the circumstances here do not establish good cause for *ex parte* submissions.

Prior to the filing of the government's motion, there were discussions with defense counsel, in which defense counsel agreed to a protective order, but indicated that it should only pertain to items identified as requiring privacy[1] or protection and it should not include some of the superfluous and inappropriate provisions that the government had initially proposed.

The disagreement between the parties that led to the filing of the government's motion is therefore limited to (1) whether the protective order should govern all

---

[1] Even though the government indicated in its May 29, 2024, email that "[t]he discovery includes cell phone extractions and other information that we believe should be protected and should not be distributed unnecessarily to third parties," it has not limited its requested protective order to cell phone extractions. The government has requested a blanket protective order applicable to any and all items that it discloses to the defense regardless of whether a privacy interest exists in a particular item of discovery.

discovery regardless of whether an item actually requires protection; and (2) what provisions are appropriate or effective to accomplish the protective order's agreed-upon objectives[2].

These two issues are not within the realm of circumstances in which Rule 16 and the local rules contemplate *ex parte* submissions.

Although there is authority under Rule 16 to allow the Court discretion to consider *ex parte* submissions, it must first determine whether an *ex parte* proceeding is appropriate, bearing in mind that *ex parte* proceedings are disfavored and not to be encouraged.

The local rules of this District establish that for an *ex parte* submission to be appropriate, the party seeking to file must first request permission to do so, and it must establish good cause.

Good cause for *ex parte* submissions does not exist based on the circumstances of this case. This dispute over which provisions to include in the protective order should be resolved by the adversarial process.

The government has demonstrated in at least one other instance of its prosecution of Mr. Gerace that its *ex parte* submissions are prone to omitting legal and factual

---

[2] Comparison of the government's proposed protective order (Dkt. # 129-1) and the defense's proposed protective order (Exhibit A) demonstrates that the dispute over provisions of the protective order does not pertain to who can review the discovery as both versions permit the defendants to review the majority of discovery. The protective order will generally serve to limit disclosure to third parties and/or the public.

considerations that are essential to the Court's analysis. In the case of this motion, that has already been demonstrated by the need for this Court to issue a Text Order directing the government to supplement its submission with authority for the *ex parte* Affidavit. Dkt. # 134.

Although the Text Order was directed to the government, the defense provides this memorandum to address why the government should not be permitted to file *ex parte* and the government's *ex parte* affidavit should be rejected or disclosed to the defense.

## II. BACKGROUND

The Second Superseding Indictment was filed on January 5, 2024.

At the status conference on February 23, 2024, this Court indicated that a discovery deadline would be set. Feb. 23, 2024 Transcript at 3.

The government had not yet provided a single page or a single byte of discovery to Mr. Gerace.

This Court proposed a generous 60-day deadline. Feb. 23, 2024 Transcript at 6.

In response to this Court's suggestion, the government asked for 90 days and referred to its request as a "an additional 30-day cushion." Feb. 23, 2024 Transcript at 7-9.

Before this Court decided whether to grant the government's request, it asked the government if it was possible to do "rolling production during the 90 day period" and the government responded: "I certainly think so, Judge. I think that *there's material that is*

*probably close to ready to go out at this point* because we've obviously been working on it since the return of the indictment." Feb. 23, 2024 Transcript at 10 (emphasis added).

This Court agreed to grant the extensive 90-day deadline, but it specifically indicated that to the extent possible, the discovery should "be produced sooner than that date" and it should be produced "[o]n a rolling basis so that people can hit the ground running in terms of what they think they need to do." Feb. 23, 2024 Transcript at 12.

The government was ordered to complete discovery disclosure by May 23, 2024.

Over the following 90 days, no discovery was provided, and the government never reached out to defense counsel regarding a potential protective order.

On May 29, 2024, after the deadline to complete discovery disclosure had passed, the government sent an email to the defendants' attorneys stating that it intended to withhold discovery until a "protective order is authorized by the Court." The email is attached as Exhibit B.

The government's email attached a 5-page proposed protective order.[3] Even though the government tried to quickly elicit consent from defense counsel for its proposed protective order, the document included several provisions that the government could not have possibly believed all defense counsel would consent to.[4]

---

[3] The protective order that the government proposed appears to be the same as the exhibit filed at 129-1.

[4] The defense will address the government's proposed provisions in a separate submission. The provisions proposed by the government are a substantial deviation from restrictions that would be supported by good cause.

Over the next two days, communication between the defense attorneys resulted in most of defense counsel deciding to meet to collectively to review the protective order. Because the government had waited until only a few business days before a status conference that had been scheduled for June 3, 2024, the attorneys could not realistically meet before that date.

On June 3, 2024, the attorneys met before the status conference to review the proposed protective order in an effort to establish a collective position regarding whether they would consent to a protective order and if so, which provisions would be agreeable. The attorneys came to a consensus on which provisions were agreeable and which provisions were inappropriate and/or redundant.

At the status conference, the defense indicated that by the following evening, it expected it could provide a proposed protective order with input and/or edits from most or all of the attorneys. The defense requested a deadline be set for the government to file a motion for a protective order if the parties could not reach an agreement.

On June 4, 2024, counsel for Gerace sent an email to the government with an attachment containing a proposed protective order. The email is attached as Exhibit C. The proposed protective order is attached as Exhibit A.

The proposed protective order (Exhibit A), was drafted with input and/or edits from the majority of attorneys. Counsel for at least six of the defendants had weighed in that they would stipulate to this protective order if it was acceptable to the government.

The morning of June 5, 2024, the government sent a reply email indicating that they would "take a look and get back to" the defense.

Despite the claim that the government had wanted to work towards an agreement on the protective order, the government never made any further effort to discuss a compromise.

On June 10, 2024, six days after the defense had provided a proposed protective order, the government sent an email indicating that it is going to file a motion for a protective order. The government's email is attached as Exhibit D.

The clear implication of the email was that because defense counsel had not agreed to a large enough percentage of the government's proposed protective order, it would file a motion instead of engaging in further discussion.

Without first seeking permission to do so, the Government opted to file its motion *ex parte* to avoid having its argument tested by the adversarial process. Dkt. # 129. The Notice page, filed publicly, briefly refers to Rule 16(d)(1) and *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995) as the grounds to permit the filing *ex parte*. [5]

---

[5] The government cites *Amodeo* for "recognizing as interests warranting closure and sealing government's need to protect integrity of ongoing investigations, including witness safety, and to prevent interference and obstruction." Dkt. # 129. *Amodeo* is not a Rule16/discovery/protective order case. It addressed a sealed investigative report filed with the court prepared and filed by an appointed Court Officer to investigate union-related corruption and take appropriate remedial action. *Amodeo*, 44 F.3d at 142. To the extent that *Amodeo* discusses law enforcement interests in regard to sealing, it certainly does not establish that any specific submission can be filed *ex parte* as a matter of right. Rather, a judicial document is subject to a "balancing test required to determine whether access should be allowed or denied." *U.S. v. Amodeo*, 44 F.3d at 147.

In response to the government's decision to file the motion, *ex parte*, without first seeking permission to do so, this Court issued a Text Trder, yesterday.

| 06/12/2024 | 134 | TEXT ORDER as to Simon Gogolack, Peter Gerace, Jr, John Thomas Ermin, Michael Roncone, Frank Knight, Howard Hinkle, Jr., Cortnie Barber, Bernard Byrd, III, Scott Barnes: By June 13, 2024 the government shall supplement its motion for a protective order [129] with authority for its submission of an *ex parte* Affidavit in support of the motion. Defendants' deadline to respond to the motion [129], as supplemented, is extended from June 14, 2024 (see June 3, 2024 Text Order [122]) to June 19, 2024. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 6/12/24. (MDY) |
|---|---|---|

Because the government has engaged in *ex parte* litigation, the defense is unaware of whether the government has filed any supplemental submission and whether it will do so publicly, however the defense provides this submission mindful that today, June 13, 2024, is the deadline provided to the government for its supplemental submission related to this issue.

### III. DISCUSSION

It is respectfully requested that this Court reject the government's attempt to file its motion *ex parte* and allow the defense to review the government's motion so that the content of a protective order can appropriately be the product of the adversarial process, ensuring that the defendants' rights to properly prepare a defense are not improperly hindered.

While it is true that Rule 16(d)(1) indicates that regarding the potential for a protective order, the Court "may permit a party to show good cause by a written statement that the court will inspect *ex parte*," the operative word is "may."

Nearly 50 years ago, the statute permitted a party to submit its request for a protective order or a modification *ex parte* as a matter of procedure.

In 1975, the language of the statute was modified to allow *ex parte* submissions, within the discretion of the Court where appropriate.

> The Committee changed subdivision (d)(1), which deals with protective orders. Proposed (d)(1) required the court to conduct an *ex parte* proceeding whenever a party so requested. The Committee changed the mandatory language to permissive language. A Court may, not must, conduct an *ex parte* proceeding if a party so requests. Thus, if a party requests a protective or modifying order and asks to make its showing *ex parte*, the court has two separate determinations to make. First, it must determine whether an *ex parte* proceeding is appropriate, bearing in mind that *ex parte* proceedings are disfavored and not to be encouraged. [An *ex parte* proceeding would seem to be appropriate if any adversary proceeding would defeat the purpose of the protective or modifying order. For example, the identity of a witness would be disclosed and the purpose of the protective order is to conceal that witness' identity.] Second, it must determine whether a protective or modifying order shall issue.
>
> Fed. R. Crim. P. R 16, Notes of Committee on the Judiciary, House Report No. 94–247; 1975 Amendment.

The government's attempt to file its motion *ex parte* should be rejected because (a) it was required to first seek permission to file *ex parte*; (b) there is no good cause to support

an *ex parte* submission; and (c) the government has demonstrated through previous attempts to seek relief *ex parte* that its submissions should be subject to the adversarial process in order to arrive at an appropriate resolution.

A.  <u>Authorization Is Required Before a Motion May be Submitted *Ex parte*</u>

The Committee Notes clearly demonstrate an expectation that a party would "ask[] to make its showing *ex parte*" and not attempt to file a submission *ex parte* without first requesting to do so. *Id*.

This Court has appropriately issued the Text Order requesting authority for its submission of an *ex parte* Affidavit in support of the motion.

Presumably, no authority existed for the submission of an *ex parte* affidavit, because the authorization to do so would have had to come from this Court, as required by the local rules governing motion practice in the Western District of New York.

> *Ex parte* Applications, Generally. *Good cause shall be shown* for the making of any application *ex parte*. *The papers in support of such application shall state attempts made to resolve the dispute through a motion on notice and/or state why notice of the application for relief may not be given.*

Loc. R. Crim. P. 12(i)(emphasis added)

The government was first required to seek authorization to file *ex parte*, upon a showing of good cause. It appears that the government never attempted to do so. It simply filed the *ex parte* motion and expected this Court to accept it without due consideration to whether an *ex parte* submission is appropriate in these circumstances.

Therefore, as a threshold issue, the government's motion should either be rejected or released because it was filed without first obtaining proper authorization to do so *ex parte*.

B.     <u>The Circumstances Do Not Establish Good Cause</u>

As stated in the Notes of Committee on the Judiciary, cited *supra*, "if a party requests a protective or modifying order… and asks to make its showing *ex parte*, the court… must determine whether an *ex parte* proceeding is appropriate, *bearing in mind that ex parte proceedings are disfavored and not to be encouraged*." (emphasis added)

Thus, the government cites Rule 16 as its basis for filing *ex parte*, but it fails to recognize that the discretionary language of Rule 16 is not intended to encourage *ex parte* submissions, and in fact, they are "disfavored."

In this case, the circumstances certainly do not lend to a determination that an *ex parte* submission is appropriate or that good cause exists, as would be required by Loc. R. Crim. P. 12(i).

The parties have already discussed a protective order both on and off the record, and the defense has indicated that it would agree to a protective order but finds disagreement with a number of superfluous and inappropriate provisions within the government's proposed protective order.

Without explaining its position, the government responded to a defense proposed protective order by stating that "in the government's view, your version significantly and

materially reduced the scope and effectiveness of most of the provisions which you did not strike from the proposed order."

An argument over the scope and effectiveness of the provisions in the proposed protective order is one that is ripe for adversarial argument and not one that should be resolved through *ex parte* submissions.

The issue is substantially different than the example provided within the Notes of Committee on the Judiciary of when an *ex parte* submission would seem appropriate, i.e. when "the purpose of the protective order is to conceal a witness' identity" and an adversary proceeding would reveal the identity of that witness.

Even if the government in this case voluntarily scattered seemingly confidential information throughout its *ex parte* motion, that would merely constitute a strategic decision and certainly not support good cause to file *ex parte*, because the purpose of the protective order is not to conceal the existence of information, its merely to limit disclosure of information to the public and/or third parties.

Under the circumstances here, there is no basis for good cause to have the government's motion filed *ex parte*, and the government's submission should either be rejected or released to defense counsel so that the defendants can prepare an substantive response.

C. <u>History Shows That *Ex Parte* Submissions by the US Attorney's Office Should Be Tested by the Adversarial Process</u>

Although the vintage of this indictment is just over six months, this trial team has been prosecuting Mr. Gerace for years, and in case number 19-cr-227, the government has a problematic record in regard to *ex parte* submissions.

For example, on November 21, 2023, the government filed an *ex parte* motion to disqualify Attorney Eric Soehnlein from Mr. Gerace's defense team in cases 19-CR-227 and 23-CR-37. Case no. 19-CR-227, Dkt.# 666.

The Gerace defense team responded by immediately filing a motion to unseal the motion to disqualify. Case no. 19-CR-227, Dkt.# 670.

At the next court appearance on November 28, 2023, the government argued: (1) the analysis of a per se conflict was "purely a matter of law" that required no judicial factfinding (Case no. 19-CR-227, Dkt.# 679 at 3); and (2) that "grand jury secrecy" required that the allegations against Mr. Soehnlein be kept *ex parte* and not be shared with Mr. Gerace or his counsel. *Id*.

Both assertions made by the government were wrong as a matter of law. *U.S. v. Fulton*, 5 F.3d 605 (2d Cir. 1993) and the other cases the government relied upon require judicial fact-finding like any other conflict inquiry.

Furthermore, it became clear that much of the motion referenced grand jury proceedings merely as background information, and the factual substance of the motion

could have been disclosed, particularly when the motion so aggressively threatened to encroach on Mr. Gerace's Sixth Amendment protections.

At an appearance on December 1, 2023, "[t]he Court proposed that the Government withdraw its' Motion to Disqualify and submit a new motion that includes only the facts that are relevant to disqualification." Case no. 19-CR-227, Dkt.# 686.

On December 12, 2023 – three weeks after the government's initial motion -- the government filed a Revised and Superseding Motion to Disqualify Attorney Soehnlein. Case no. 19-CR-227, Dkt.# 691. Unlike the original *ex parte* submission, this motion was provided to the defense.

Review of the motion revealed that the government had not only presented arguments to the Court that were wholly wrong on the law and on the facts in several respects, but the government had failed to address or even reference 18 U.S.C. 1515(c), the safe harbor provision to the Obstruction of Justice statutes designed to protect defense attorneys for bona fide legal work done on behalf of their clients.

The defense filed its response in February 2024, and because the government's motion was tested by the adversarial process, the defense was able to highlight misrepresentations and omissions of fact and law in the government's moving papers, including the government's failure to even mention the safe harbor provision.

The Court held oral argument on March 15, 2024. Case no. 19-CR-227, Dkt.# 824.

After opening remarks by the government, the Court moved into its questions and noted the government had omitted citation to the safe harbor provision. The Court questioned whether that was done intentionally to circumvent inclusion of safe harbor into the Court's analysis.

The government initially argued that they did not believe the safe harbor applied, but when pressed on the issue, one of the prosecutors from this trial team admitted that they had just "missed the Safe Harbor Provision." Apparently, nobody on the government's trial team, the signatories to the motion, were aware of it. Case no. 19-CR-227, Dkt.# 825 at 6.

On April 25, 2024, after due deliberation, this Court denied the government's motion for disqualification. Case no. 19-CR-227, Dkt.# 889.

The Decision and Order was thorough and clear. It fully reviewed the government's allegations, but appropriately considered them within the context of the safe harbor provision and Mr. Gerace's Sixth Amendment protections.

In regard to the safe harbor provisions, the Court recognized that any mention of the safe harbor provision was "conspicuously absent from the government's 70-page opening brief." Case no. 19-CR-227, Dkt.# 889 at 26. The Court also noted that it "has serious concerns about the fact that in a brief accusing a well-respected member of the bar of a crime, no supervisor at the United States Attorney's Office noticed the omission of a legal provision that could absolve him." Case no. 19-CR-227, Dkt.# 889 at 26, FN 16.

The safe harbor provisions were critical to the disposition of a motion that had enormous implications for Mr. Gerace's Sixth Amendment right to choice of counsel, and the government had attempted to have this motion decided on an *ex parte* submission that failed to even reference it. It is impossible to overstate how important it was to have the government's motion tested by the adversarial process.

The example cited above should demonstrate the dangers of permitting the government to seek relief *ex parte* without responsive submissions by the defense. Similar to the government's motion to disqualify, this issue is appropriate for review after being litigated through the adversarial process.

## IV. CONCLUSION

For all of the reasons set forth above, Mr. Gerace respectfully requests that the government's *ex parte* affidavit in support of its motion for a protective order be rejected in its entirety or disclosed to the defense, so that a proper responsive submission can be drafted by the defendants.

If the government is permitted to file *ex parte*, then the defense also seeks to submit is submission *ex parte* as Rule 16(d) is available to either side (Fed. R. Crim. P. R 16, Notes of Advisory Committee on Rules—1993 Amendment) and there is no reasonable circumstance that the government would be permitted to submit *ex parte*, but the defense would not be afforded the same authorization.

Dated: June 13, 2024

s/ Mark A. Foti
Mark A. Foti, Esq.