IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

     v.                                                                                                                                             23-CR-99-LJV

SIMON GOGOLACK, et al.,

             Defendants.
_____

### MEMORANDUM OF LAW REGARDING THE GOVERNMENT'S AUTHORITY TO FILE AN *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, of counsel, hereby submits the following memorandum of law regarding the government's authority to file an *ex parte* application for a protective order.

#### INTRODUCTION

On June 10, 2024, the government filed a motion for a protective order governing the defendants' use of the material provided in voluntary discovery. *See* Doc. No. 129. In its publicly filed motion, the government noted that it was filing its affidavit in support of the protective order *ex parte* and under seal, consistent with the text of Rule 16(d)(1) and with Second Circuit precedent such as *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). *Id.* On June 12, 2024, the Court instructed the government to "supplement its motion for a protective order

[129] with authority for its submission of an *ex parte* Affidavit in support of the motion." *See* Doc. No 134. This memorandum of law ensues.[1]

## I. AUTHORITY TO MOVE *EX PARTE*

Rule 16(d)(1) allows the Court to order that otherwise appropriate discovery "be denied, restricted, or deferred, or [to] make such other order as appropriate." This provision authorizes the Court to limit or otherwise regulate discovery. *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991). "Courts have repeatedly recognized that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might 'adversely affect law enforcement interests.'" *United States v. Smith*, 985 F. Supp. 2d 506, 531 (S.D.N.Y. 2013) (collecting cases).

**Rule 16(d)(1) also expressly authorizes the court to permit the government to "show good cause [for a protective order] by written statement that the court will inspect *ex parte*."** FED. R. CRIM. P. 16(d)(1) (emphasis added). The rule affords *ex parte* consideration because protective orders are designed to protect the identities of cooperators and witnesses, as well as

---

[1] Defendant Peter Gerace, Jr. filed a memorandum of law regarding the government's *ex parte* application for a protective order with the Court, arguing that the government violated a local rule requiring parties to file a motion seeking permission to file an *ex parte* application. *See* ECF No. 136. Putting aside that Gerace has repeatedly failed to follow in Case Nos. 19-CR-227 and 23-CR-37 the rules he now seeks to enforce, and bracketing from consideration that litigating whether the government could file an *ex parte* application would delay Gerace's ability to review discovery with his counsel, it is—as defense counsel almost certainly knows—common practice in this district that the government files applications for protective orders *ex parte* without first moving for leave under the local rules. *See, e.g.*, Mot. to Withdraw, Case Nos. 1:19-CR-227, 23-CR-337, ECF No. 541, (dated June 26, 2023) ("Simultaneously with the filing of this application, I am submitting an *ex parte* declaration and memorandum of law to the Court in order to provide additional information," without first moving for leave to file said *ex parte* declaration); Email from Mark Foti, Esq., Case Nos. 19-CR-227, 23-CR-37, (dated Mar. 22, 2024) (***objecting*** in an email to the District Court to "the [g]overnment's suggested approach that the defense be directed to file a motion requesting relief"—to wit, that the defense be directed to file a motion explaining why 700+ pages of *ex parte* communications from Gerace to the District Court should not be shared with the government).

Indeed, this practice encourages efficiency and affords defendants more timely access to discovery, and thus is not commonly subject to the scorched earth litigation tactics that Gerace appears ready to embrace here.

2

protect sensitive ongoing investigations. Sharing the factual background as to why a protective order is necessary—for instance, the identities of cooperators or ongoing sensitive investigations—would frustrate the important need that protective orders fulfill and enable indicted defendants to tamper/retaliate against witnesses/cooperators and obstruct investigations. Indeed, per the Advisory Committee notes to Rule 16, this is precisely why applications for protective orders may be filed *ex parte*:

> An ex parte proceeding would seem to be appropriate if any adversary proceeding would defeat the purpose of the protective or modifying order. For example, the identity of a witness would be disclosed and the purpose of the protective order is to conceal that witness' identity.

FED. R. CRIM. P. 16 advisory committee notes to 1974 amendment.

Thus, in *Smith*, the court considered an *ex parte* and sealed letter from the government describing ongoing investigations in support to its request for a protective order, and determined:

> [t]he Government has provided specific details of ongoing investigations that are related to the discovery materials provided, or that will be provided, in this case, (*Id.*) Suffice it to say, the Court will not discuss the details of this letter in this Opinion. But, the Court finds that the letter adequately establishes both that there are ongoing investigations into criminal conduct related to the discovery materials in this Case, and that public disclosure of some of these materials plausibly could undermine these investigations. In particular, disclosure of the materials could: (i) reveal the targets of the investigations and the suspected criminal conduct being investigated; (ii) disclose the type of evidence being collected, or that could be collected, against these individuals; and (iii) officially confirm who some of the cooperating witnesses in these investigations are. This information, should it become publicly available, could alert the targets of the investigation and could lead to efforts by them to frustrate the ongoing investigations.

*Smith*, 985 F. Supp. 2d at 531–32. In *Smith*, the Court continued:

> [d]efendants, who have not been made privy to the Government's *ex parte* submission, and who do not quarrel with the legal supposition that protective orders may be appropriate in certain cases, contest the Government's need for a protective order (especially one as broad as that sought here) on three grounds: that (i) the public has a right to know which public officials are under investigation; (ii) media reports already have revealed the Government's cooperating witness; and (iii) the Government jeopardized its own investigation during its "loud" press conference, (*See* Aug. 28 Misir Ltr. 3–4 (explaining that press reports which came out within a day of Defendants' arrest about the Government's cooperating witness have already alerted other targets of the ongoing investigation); Aug. 30 Varghese Ltr. 1, 4 (discussing the public's interest in knowing about how "the government investigates and prosecutes" public officials and the press conference announcing the arrests in this case).) None of these objections, however, sufficiently undercuts the Government's good-cause claim.

*Id*. at 532; *see also United States v. Yousef*, 327 F.3d 56, 167 (2d Cir. 2003) (acknowledging that protective orders may be authorized upon *ex parte* application and stating, "e*x parte* protective orders and their supporting documents are to be preserved in the records of the court to be made available to the appellate court in the event of an appeal." (internal punctuation omitted)).

In *United States v. Loera*, a District Court in the Eastern District of New York noted that "*ex parte* communications have been **routinely permitted** where 'there are ongoing investigations into criminal conduct related to the discovery materials' and 'public disclosure of some of these materials plausibly could undermine these investigations." 2017 WL 2821546 at *2 (S.D.N.Y. June 29, 2017) (emphasis added) citing *Smith* at 531.  As the court in *Leora* noted, "*ex parte* communications in this context are **particularly appropriate** where disclosure could '(i) reveal the targets of the investigations and the suspected criminal conduct being investigated;

(ii) disclose the type of evidence being collected, or that could be collected, against these individuals; and (iii) officially confirm who some of the cooperating witnesses in these investigations are." *Id.* (emphasis added) (citing *Smith*, 985 F. Supp. 2d at 532.) Ultimately, the court in *Leora* held that it was "**abundantly clear** the government's use of *ex parte* submissions to the Court has been **appropriate in all respects**. Each instance of an *ex parte* submission to the Court contained information relating to cooperating witnesses, confidential sources, ongoing investigations, or law enforcement techniques that courts, including this Court, have recognized as requiring protection to maintain the integrity of ongoing investigations and the judicial process." *Id.* (emphasis added).

Albeit in a different context, the Second Circuit has recognized the appropriateness of proceeding *ex parte* in a related case involving defendant Gerace. In particular, the Second Circuit addressed whether the District Court acted appropriately when it considered the government's *ex parte* request for an injunction of a state civil lawsuit. Regarding the injunction, the Second Circuit stated, "the potential interests of the government are considerable, whereas the potential prejudice faced by Gerace is *de minimis*. **Indeed, this is exactly the type of case—where a criminal enterprise thrives off of gathering and using confidential law enforcement intelligence—that merits the relief granted by the district court**. *United States v. Gerace*, No. 21-2419, 2023 WL 3243477, at *2 (2d Cir. May 4, 2023) (emphasis added). Regarding the *ex parte* procedure, "the district court complied with the governing Federal Rule of Criminal Procedure." *Id.* at *3. Specifically, the District Court had determined that *ex parte* relief was proper in part because the government's application contained information about ongoing grand

5

jury investigation. *United States v. Gerace*, No. 19CR227JLSMJR, 2021 WL 4134886, at *4 (W.D.N.Y. Sept. 10, 2021), *aff'd,* No. 21-2419, 2023 WL 3243477 (2d Cir. May 4, 2023).

## II.   ANALYSIS

In its *ex parte* submission to the Court, the government provided facts and information in support of the requested protective order.  Some of the facts and information provided by the government related to cooperating witnesses, and other facts and information provided by the government related to sensitive ongoing investigations.  In a case such as this one, charging numerous defendants with conspiring together to obstruct justice and tamper with a witness, and involving numerous defendants that are members of wide-spread criminal organizations, the government believes submitting additional context and facts to the court, *ex parte* is entirely appropriate in supporting its position as to why a particular protective order is necessary.

## III.   CONCLUSION

The government has moved the Court to impose a protective order governing the use and dissemination of material provided in voluntary discovery.  In support of its motion, the government provided the Court with sensitive facts and information relating to cooperating witnesses and ongoing investigations which the Court is permitted to consider *ex parte*.  For obvious reasons, exposing such information to the defendants or the public would jeopardize the safety of the cooperating witnesses and the integrity of the ongoing investigations.  Such consideration of sensitive information, proffered *ex parte* in support of a protective order, is

expressly contemplated by Rule 16(d)(1) of the Federal Rules of Criminal Procedure entitled "Regulating Discovery – Protective and Modifying Orders".

DATED: Buffalo, New York, June 13, 2024.

                                              TRINI E. ROSS
                                              United States Attorney

BY:    s/ NICHOLAS T. COOPER
        Assistant United States Attorneys
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        (716) 843-5830