IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

              v.                                   23-CR-99-LJV

PETER GERACE, JR., et al.,

                       Defendants.

_____

## GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SANCTIONS AND/OR FOR A HEARING

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Joseph M. Tripi, Assistant United States Attorney, files this consolidated response in opposition to defendants' motions for sanctions and/or for a hearing.  *See* ECF Nos. 131, 132, 135, 137, 140.

## I.  INTRODUCTION

This case involves some of the most serious crimes prosecuted in federal court, including a conspiracy to tamper with, retaliate against, and murder a federal witness who was scheduled to testify at an upcoming trial.  The government voluntarily agreed to produce discovery in compliance Rule 16 without demand, and has not refused to provide voluntary discovery to the defense.

In fact, the government has endeavored to produce discovery in an organized and searchable format that is beyond the strictures of Rule 16.  In doing so, the government's intention is to streamline the litigation, limit discovery disputes, and move this case expeditiously towards a trial.

1

On February 23, 2024, the parties appeared for a status conference and discussed the production of voluntary discovery. Although not explicitly stated on the record that day, by that point, as detailed *infra*, defendants Gerace, Gogolack, Hinkle, Roncone, Ermin, and Barnes had previously been provided voluminous relevant discoverable materials by virtue of charges in related cases that were later subsumed by or incorporated into the instant indictment. Those discoverable materials were consolidated, reorganized, and reproduced as part of the discovery production in this case.

The Court set May 23, 2024, as the deadline for the government to produce voluntary discovery. Although the prosecutors with the knowledge of the case and the vast amount of materials that would need to be produced were engaged in a complex trial in *United States v. Bongiovanni*, Case No. 19-CR-227, the prosecutors worked diligently with others to meet the Court's deadline. As detailed *infra*, the government is, and has been willing to work collaboratively with defense counsel to produce voluntary discovery and to ensure effective assistance of counsel.

The discovery project in this case was extremely large. Between February 23, 2024, until May 23, 2024, FBI agents, Homeland Security Investigations (HSI) agents, and U.S. Attorney's Office personnel worked together to consolidate and organize discoverable materials from *six different federal cases*. During this timeframe—but unforeseen during the February 23, 2024, status conference—the government realized it was impractical to provide organized rolling discovery in a piecemeal fashion beyond the substantial discoverable materials previously produced to defendants Gerace, Ermin, Gogolack, Roncone, Hinkle, and Barnes in the context of their separate but related criminal cases, as detailed *infra*. On the other hand, while Rule 16.1 puts the onus on both parties to confer about discovery, the

2

government neither received any specific requests for discovery that it did not address, nor refused any defense requests to review materials at the U.S. Attorney's Office while the discovery project was being processed.[1]

On May 20, 2023, three days before discovery was due, the government advised defense counsel that a 3 terabyte hard drive would be required to handle the volume of material the government was intent upon voluntarily producing. As the government was awaiting receipt of hard drives from most of the defendants, it also engaged the defense about the need for a protective order.

As detailed *infra*, the government's delay in addressing the need for a protective order was due to an oversight—plain and simple—by prosecutors who had just conducted a lengthy and complex trial that they prepared for while simultaneously investigating a complex conspiracy that orchestrated the murder of a key witness, who was supposed to testify at that trial the prosecutors were conducting (while simultaneously working to compile, organize, and provide voluntary discovery by the Court's deadline). *See United States v. Joseph Bongiovanni*, Case No. 19-CR-227.

While on the surface it may appear as though the government could have just substituted prosecutors to work on the discovery project—that is not realistic. Prosecutors,

---

[1] *See* ECF No. 83, Minute Entry 03/01/2024 ("Detention Hearing as to Simon Gogolack held on 3/1/2024. The parties appear. The court addresses defendant's previous refusals to transport. Defendant denies refusals and cites communication issues with NEOCC. The government addresses discovery provided to defendant and proceeding by proffer. The government addresses defendant's detention status by proffer. Defendant requests materials cited by the government; the government agrees to produce certain materials. The court directs that those materials be provided, and that the transcripts of the detention proceedings be filed. Defendant to make further submissions.").

like defense attorneys, are not fungible and interchangeable. The prosecutors with the knowledge of the case, the number of search warrants conducted, and an understanding of the vast scope of discoverable materials spread across *six different federal* cases were, unfortunately, the ones who investigated this case and were also engaged in the *Bongiovanni* trial. Substituting prosecutors would have delayed the government's ability to harness information and direct agents appropriately, not enhanced it. The discovery the government did produce should obviate the need for defense discovery motions in this case. Of course, if the defense are dissatisfied with the broad disclosures they have been provided, they may file a motion pursuant to Rule 16(a)(1)(E) where it will be their burden to demonstrate both that the items sought are in possession, custody, or control of the government and that the items are material to the defense. *United States v. Gotchis*, 876 F.3d 40 (1st Cir. 2017). If the defense takes an objectively fair view of the discovery that has been produced, discovery related motions should be limited or non-existent in this case.

In sum, the government has not refused to produce any discoverable material, and as of June 4, 2024, as detailed *infra*, the government made voluntary discovery that exceeds the strictures of Rule 16 available to all defendants who provided hard drives. In the end, the government provided voluntary discovery—that is without specific demands from the defendants—twelve days after it was due. If the Court is of a mind to sanction the government, running twelve days of speedy trial time is more than sufficient.

## II.    <u>RELEVANT BACKGROUND</u>

As set forth above, the discovery in this case encompassed six different federal cases that were later subsumed by or incorporated into the instant indictment.  The volume of the discovery production is consistent with the seriousness of the case and the fact that over twenty-five federal search and seizure warrants have been authorized and executed during the course of this case.

The materials seized pursuant to various authorizes searches ranged from physical items seized during premises searches (including firearms, weapons, drugs, ledgers, court filings, and lists), information and data from the Google cloud, and data from various electronic devices.  The discovery includes extensive video footage from DVRs (including video of Crystal Quinn in Wellsville, New York days before her death), videotaped interviews of several defendants, and virtually every other type of evidence available in a criminal prosecution (such as autopsy reports, chemical testing reports, etc.).

The discovery includes information that is not technically discoverable at this time, such as Rule 16(a)(2) materials and 3500 materials.  Rule 16(a)(2) provides:

> **Information Not Subject to Disclosure.** Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

*See* Fed. R. Crim. P. 16(a)(2).

As set forth below, the concerns that animated the Court's comments on February 23, 2024, and again on June 3, 2024, should at least be tempered by the reality that most of the defendants had substantial and relevant discoverable materials applicable to this case long before the grand jury returned the Second Superseding Indictment on January 5, 2024.  *See* ECF No. 24.

**A.**       **United States v. Simon Gogolack, Case No. 23-CR-99**

Defendant Gogolack was charged by criminal complaint and two predecessor indictments.  The government provided substantial voluntarily discovery to Gogolack at earlier stages of his prosecution, and that discovery has been duplicated, reproduced, organized, and made available as of June 4, 2024.

By way of background, on August 2, 2023, this Court signed a search warrant authorizing the seizure and search of Gogolack's phone, and on August 5,2023, this Court authorized a search warrant for Gogolack's Wellsville residence.  During the execution of the warrant on August 8, 2023, the FBI found drugs and firearms, including several marijuana plants.

On August 17,2023, Gogolack was charged by Criminal Complaint with several drug and firearm related offenses.  *See* ECF No. 1.  At the time, none of those charges had any relation to the death of Ms. Quinn.  Nor were they related to the parties or conduct charged in the *Bongiovanni/Gerace* case, Case Nos. 19-CR-227 and 23-CR-37.  The government provided discovery to Gogolack's former attorney, Robert Bolm, who then later provided it

to Gogolack's current attorney.[2]

On September 13, 2023, a grand jury sitting in the Western District of New York returned a five count indictment against Gogolack charging the drug and firearm offenses alleged in the predecessor Criminal Complaint. *See* ECF No. 12.

On September 14, 2023, the Court detained Gogolack following a detention hearing. During the hearing, the government presented a PowerPoint that contained relevant discoverable materials, which were provided and made available to the defense.

On September 20,2023, a grand jury returned a Superseding Indictment, which added eight counts of witness tampering and kidnapping of individuals unrelated to Ms. Quinn. *See* ECF No. 18.

On January 5, 2024, a grand jury returned a Second Superseding Indictment which added counts pertaining to the conspiracy to tamper with, retaliate against, and murder Ms. Quinn, and added codefendants Gerace, Ermin, Roncone, Hinkle, Knight, Barnes, Barber, Byrd. By that point, as detailed herein, the only defendants who were not already charged in a related federal cases, and who had not already been provided discoverable materials relevant to this case vis-à-vis other pending federal cases, were defendants Knight, Byrd, and Barber.

---

[2] *See* ECF No. 9, Minute Entry 08/30/2023 ("The parties' attorneys acknowledge receipt of the pretrial services report. AUSA Cooper describes records produced to defendant's attorney just prior to the hearing. Defendant's attorney requests an adjournment.").

In sum, the government produced voluntary discovery to Gogolack in August, September, October,[3] and December of 2023, and that discovery was compiled, organized, made searchable, and reproduced, as part of the larger June 4, 2024, discovery production. By December 2023, Gogolack had over 2000 pages of documentary discovery and non-bates numbered discovery consisting of his cell phone extraction and at least 24 relevant text messages threads. Thus, when the government walked into Court on February 23, 2024, it could have, but did not say, it would not produce any more discovery voluntarily—that is—without a formal motion or demand from the defendant. Instead, the government was intent upon compiling, organizing, and providing even more discovery—beyond what Rule 16 requires—and that is what the government did on June 4, 2024.

**B**.   <u>**United States v. Howard Hinkle, Case No. 23-mj-05219-MJR**</u>

Howard Hinkle was charged by Criminal Complaint on October 24, 2023, with maintaining a drug-involved premises, possession with intent to distribute 100 or more marijuana plants, felon in possession of a firearm, and possession of firearms in furtherance of drug trafficking after agents executed a search warrant at his residence in Wellsville and recovered approximately 19 firearms—some strategically located around the premises—and over 100 marijuana plants. *See* 23-mj-5219, ECF No. 1.

The government moved for detention and on October 26, 2023, and provided an extensive detention proffer—including some circumstances related to Ms. Quinn's death in

---

[3] On October 19, 2023, the government provided Gogolack with a copy of his entire cellphone extraction and provided numerous reports or recordings of statements of the defendant, including statements that he made to the FBI during a video recorded interview, and statements that he made to local law enforcement. That production alone, in addition to the cell phone data, contained 1865 pages of Bates numbered discoverable materials.

Wellsville—and provided numerous photos from the search, which also consisted of Rule 16 discoverable materials. *See* ECF Nos. 6, 10; *see also* Fed R. Crim. P. 16(a)(1)(E). Magistrate Judge Roemer ordered Hinkle released, but the government obtained a stay and appealed to the District Court. *Id.*

On November 3, 2023, the District Judge Sinatra conducted a de novo detention hearing, revoked the release order, and ordered Hinkle detained. *See* ECF No. 12. During argument, the government proffered more information (*e.g.,* "Simon Gogolack told the FBI that Mr. Hinkle told Ms. Quinn at a card game that there was money on her head. In other words, a bounty on her life."), and provided more exhibits—Rule 16 discoverable materials— to Hinkle. *See* Transcript (Oral Argument), Nov. 3, 2023 at 18:19-21. In addition to photos from the search warrant, the government provided specific text messages that it obtained via a search of Hinkle's cell phone.

The conduct alleged in the initial criminal complaint against Hinkle constitutes the conduct underlying Counts 19 through 22 of the Second Superseding Indictment. In other words, Hinkle has had relevant discoverable materials pertaining to several of the counts against him since October 2023. Those materials and more, were compiled, organized, and reproduced to Hinkle on June 4, 2024.

**C**.   **United States v. John Ermin, Case No. 23-mj-167**

On December 7, 2023, John Ermin was charged by criminal complaint after agents conducted search warrants at Ermin's residence in Lancaster and the Outlaws Motorcycle Clubhouse (OMC) in Buffalo, New York. *See* 23-mj-00167-HKS, ECF No. 1.

The government moved for detention and on December 12, 2023, United States Magistrate Judge Roemer ordered Ermin released, but stayed the release order. *See* Minute Entry, 12/12/2023. During the detention hearing, the government provided the defendant with dozens of exhibits—Rule 16 discoverable materials. *See* ECF No. 2 (detention hearing transcript).

On December 19 and 27, 2023, the parties appeared for a *de novo* detention hearing before Hon. Elizabeth A. Wolford, Chief Judge, United States District Court Western District of New York. The government marked and provided approximately 145 marked exhibits (not pages) consisting of substantial discoverable materials that were later compiled, organized, and reproduced as part of the larger production provided to Ermin on June 4, 2024. *See* ECF Nos. 4, 5 (detention hearing transcripts).

The discoverable information produced included: (i) law enforcement and court documents seized from Ermin's house; (ii) information regarding the OMC's position as to "snitches" seized from Ermin's house; (iii) information about or relevant to Pharaohs Gentlemen's Club seized from Ermin's house; (iv) photos and information pertaining to numerous firearms seized from Ermin's house; (v) information about Outlaws MC patches and former OMC National President Taco Bowman seized from Ermin's house; (vi) photos of Ermin and Barnes and other OMC members at Gerace's house at a Labor Day party; (vii) paperwork related to a prior assault Ermin was involved in; (viii) OMC National club information and letters; (ix) information pertaining to weapons at the OMC clubhouse; (x) information pertaining to drugs at the OMC clubhouse; (xi) FBI source reporting documents found inside the OMC clubhouse; (xii) information pertaining to Pharaohs located inside the OMC clubhouse; (xiii) information related to how the OMC treats women located inside the

OMC clubhouse; (xiv) OMC association evidence with other clubs and individuals; (xv) information pertaining to Nazi symbolism located inside the OMC chapter clubhouse; (xvi) information pertaining to treatment of "snitches" found inside the OMC clubhouse; (xvii) information pertaining to weapons inside the OMC clubhouse and Barnes's prior conviction; (xviii) information pertaining to drug evidence seized from Ermin's residence; (xix) information pertaining to OMC vests sized from Ermin's residence; (xx) video from the Hilton Garden Inn of a National OMC meeting; (xxi) video of OMC members, including Barnes, confronting a Kingsmen member at a bar; and (xxii) video of Barnes, an OMC enforcer, assaulting someone at a bar in a different state and relevant police reports.  *See* 23-mj-00167-HKS, ECF No. 3 at 3 (n. 3) (Decision and Order of Chef Judge Wolford: "The information set forth herein is a summary of the factual background compiled from the record before the Court, *including the almost 7 hours of argument before the undersigned on December 19 and 27, 2023, the numerous exhibits offered by the government*, the transcript of the detention hearing held before Magistrate Judge Schroeder on December 12, 2023, the information set forth in the Pretrial Services Report prepared by the USPO, and the criminal complaint filed against Defendant in Case No. 23-mj-167." (emphasis added)); *see also* ECF Nos. 3 and 4 (transcripts of detention proceedings before Chief Judge Wolford).

Thus, as of the February 23, 2024, status conference, although it was not specifically mentioned at that time by either party, the Court should be aware that Ermin already had received a considerable amount of Rule 16 discoverable material.  The discoverable material Ermin had in his possession as of February 23, 2024, was relevant to Counts 1 through 3, and was the bulk of the discovery underlying Count 24 of the Second Superseding Indictment. That material was a portion of the discovery that was later compiled, organized, made

11

searchable, and reproduced as part of the larger June 4, 2024, discovery production.

### D.   United States v. Scott Barnes, 23-mj-166

Defendant Barnes was located inside the OMC clubhouse and charged by complaint with felon in possession of a firearm on December 7, 2023.  The government moved for detention, and the defendant's detention-related litigation proceeded on a similar track as Ermin, *supra*.  As it did with Ermin, the government proffered and provided Barnes with myriad exhibits—Rule 16 discoverable material—during the course of several lengthy detention hearings.  *See* 23-mj-166, Minute Entry 12/12/2023; *see also* ECF Nos. 5, 7-9.

On January 3, 2024, Chief Judge Wolford issued a Decision and Order and stated:

> In connection with this matter, the Court has considered the almost 7 hours of argument before the undersigned on December 18 and 27, 2023, *the numerous exhibits offered by the government*, the transcript of the detention hearing held before Magistrate Judge Schroeder on December 12, 2023, the information set forth in the Pretrial Services Report prepared by the USPO, and the criminal complaint filed against Defendant in Case No. 23-mj-166.

*See* ECF No. 7 (Decision and Order) at 2-3 (n.3) (emphasis added).[4]

Thus, like Ermin, as of the February 23, 2024, status conference, although it was not specifically mentioned at that time by either party, the Court should be aware that Barnes already had received a considerable amount of Rule 16 discoverable material.  The discoverable material Barnes had in his possession as of February 23, 2024, was relevant to Counts 1 through 3, and was the bulk of the discovery underlying Counts 27 and 28 of the Second Superseding Indictment.  That material was a portion of the discovery that was later

---

[4] Barnes received substantially the same exhibits, which also comprise Rule 16 discoverable material, as Ermin.  Barnes also received information related to the stole firearm and his prior certified criminal conviction record.

compiled, organized, made searchable, and reproduced as part of the larger June 4, 2024, discovery production.

### E.    United States v. Michael Roncone, 23-mj-168

Defendant Roncone was located inside his residence during a search warrant wherein 29 firearms, cocaine, and marijuana were seized.  Roncone was charged by complaint with being an unlawful user of controlled substances in possession of a firearm on December 7, 2023.  *See* 23-mj-168, ECF No. 2.  The government moved for detention, Magistrate Judge Schroeder ordered Roncone release, the government appealed, and Chief Judge Wolford ordered Roncone released after lengthy detention hearings.  See Minute Entry 12/18/2023; see also ECF Nos. 6-9.

During the process, the government provided Roncone with dozens of exhibits—Rule 16 discoverable material—that were proffered during his detention hearings.  *See* ECF No. 6, Tr. 12/18/2023 (Detention Hearing) at 10 (itemizing exhibits consisting of evidence seized from Roncone's residence, the Rare Breed Motorcycle Club (RBMC) clubhouse in Buffalo, and the RBMC clubhouse in Wellsville).  The evidence included firearms, ammunition, drug evidence, and RBMC meeting minutes during the timeframes relevant to Gerace's prosecution.  *Id.* at 30-36; *see also* Tr. 12/21/2023 at 4 (counsel for Roncone confirming he was provided *a binder of exhibits* by the government).  Roncone was ultimately released on conditions.  *See* ECF No. 9.

Thus, like Ermin and Barnes, as of the February 23, 2024, status conference, although it was not specifically mentioned at that time by either party, the Court should be aware that Roncone already had received a considerable amount of Rule 16 discoverable material.  The

discoverable material Roncone had in his possession as of February 23, 2024, was relevant to Counts 1 through 3, and was the bulk of the discovery underlying Count 25 of the Second Superseding Indictment.   That material was a portion of the discovery that was later compiled, organized, made searchable, and reproduced as part of the larger June 4, 2024, discovery production.

**F.**   **United States v. Peter Gerace Jr., Case Nos. 19-CR-227 and 23-CR-37**

As the Court is aware, defendant Gerace has several federal cases pending in United States District Court for the Western District of New York, and the charges in this case stem from a wide-ranging and complex conspiracy to tamper with, retaliate against, and murder Ms. Quinn because she was a federal witness scheduled to testify against Gerace in Case Nos. 19-cr-227 and 23-cr-37.

By virtue of the litigation in those cases, as of February 24, 2024, Gerace already had a vast amount of discovery underlying his charges in this case.   For example, most of the Introduction of the Second Superseding Indictment references events that occurred in Gerace's other cases, namely 19-cr-227 and 23-cr-37, and consist of public filings, public events, and disclosures Gerace already had by virtue of those cases.   Moreover, Gerace already had all of Ms. Quinn's statements and grand jury testimony, her criminal complaint (which is publicly available), her cooperation agreement, FBI 302s documenting her proffer interviews with the FBI, and other materials highly relevant to this case.   Furthermore, Gerace already had information related to numerous overt acts, including *at least* overt act paragraphs

14

17, 18, 20-26, 74, 76-81.[5]    Additionally, relevant text messages, although they have been reproduced in the discovery provided on June 4, 2024, are embedded *directly* into the Second Superseding Indictment.    Also, as of the February 24, 2024, Gerace also had certain relevant cell phone extractions (for Gerace and Ermin), Facebook accounts (for Gerace and Crystal Quinn), evidence seized from his residence, evidence seized from his business, and volumes of other discoverable materials.    Indeed, by virtue of the substantial overlap, and considering that Ms. Quinn's murder arose out the context of Gerace's other pending cases, Gerace had significant discoverable materials relevant to this case long before he was ever charged.

### G.    The February 23, 2024, Status Conference

As set forth above, this case involves six different related federal prosecutions and investigations that were either subsumed by this Second Superseding Indictment, or that have significant overlap.    As a result, the details set forth in Section II(A)-(F) *supra*, are merely intended to inform the Court that, as of February 23, 2024, most of the defendants were in possession of relevant discoverable materials as they entered the courtroom that day. Undoubtedly, there was more discoverable material that needed to be compiled, processed, and provided due to the ongoing and complex investigation, and the fact that each defendant needed to gain access to discoverable information that others possessed.    Nevertheless, given the context and tenor of the instant motions for sanctions, it is relevant for this Court to know that most of the defendants, including those who have filed or joined in the instant motions for sanctions, were not without a decent amount of relevant discoverable material when they

---

[5] Many of the overt acts consist of motions Gerace filed, hearings he participated in (and has transcripts of), and decisions that were rendered in Case No. 19-cr-227/23-cr-37.

entered the courtroom on February 24, 2024.[6]

As this Court knows, at the time of the status conference, counsel status remained unsettled for certain defendants[7] and the prosecutors were in the midst of a lengthy and complex public corruption trial in *United States v. Bongiovanni*.  In hindsight, the government could have elaborated further about the procedural history of the relevant cases now before the Court to assuage the Court's concerns that it wanted to move the case forward in some fashion "so that everybody can get at least some initial discovery."  *See* February 23, 2023, Tr. (Status Conference) at 3:20-21.  In actuality, although it went unstated, defendants Gerace, Gogolack, Ermin, Barnes, Roncone, and Hinkle possessed, to varying degrees, a considerable amount of discoverable material by virtue of their charges and detention hearings when charged by criminal complaint or in the predecessor version of this Second Superseding Indictment.[8]  However, as only Gogolack's underlying case had been handled by this Court,[9] the Court did not know, and was not advised, of such relevant information.

During the status conference, when this Court suggested that 60 days would be sufficient for discovery, prosecutors immediately identified that 60 days would be insufficient

---

[6] Only Cortnie Barber, Frank Knight, and Bernard Byrd did not have some relevant discoverable materials as of February 23, 2024, and only Byrd has joined in the instant motions for sanctions despite the fact that he has still not provided a hard drive to the government in the 25 days since the government advised him on was required.  Certainly, as of the June 3, 2024, status conference, neither Byrd nor Knight had provided the government with a 3 TB hard drive, nor had they responded to a government email regarding discovery.

[7] Gerace and Ermin's attorneys appeared provisionally.

[8] Defendants Barber, Byrd, and Knight were not in possession of any discoverable materials applicable to this prosecution as of February 23, 2024.

[9] Magistrate Judge Roemer and Magistrate Judge Schroeder, respectively, handled the above-described cases related to Gerace, Ermin, Barnes, Roncone, and Hinkle.

to compile the relevant discovery, add the materials that had not previously been provided due to ongoing investigation, and generate a comprehensive, organized, and searchable discovery production in this case.  Prosecutors asked for 90 days and explained that the discovery project in this case was significant.  *Id.* at 6:13-25.  When the Court asked the government to make discovery available on a rolling basis "to the extent you can," *see id.* at 12:4, the government agreed.  However, the government acknowledges that it did not inform the Court that defendants Gogolack, Hinkle, Ermin, Barnes, and Gerace already had been provided substantial Rule 16 materials in the context of their separate prosecutions that overlapped with the allegations set forth in the Second Superseding Indictment.

The prosecutors exited the status conference that day with the intention of providing rolling discovery to the extent it was practicable.  However, when they walked out of court that day, they also returned to the intensity of a complex trial involving a corrupt DEA agent who was bribed to protected organized crime members and associates.  As other agents and support staff diligently worked to compile the discovery, the prosecutors provided guidance to ensure that the discovery project was a comprehensive as it could be to avoid piecemeal, disorganized, or non-Bates numbered discovery.[10]  Notably, with the exception of counsel for Gogolack, *see* ECF No. 83, at no time from February 23, 2024, onward did counsel for any defendant make a specific informal request for discovery that was refused by the government, and any such requests would have been tended to by the government notwithstanding the fact

---

[10] A discovery production this large must be Bates numbered.  Providing discovery that is non-Bates numbered on a rolling basis leads to disorganization and lends itself to later disagreements about what was produced and when.  As a result, in complex cases, it is often inadvisable to provide non-Bates numbered discovery just to get it out the door more quickly on a "rolling" basis.

the assigned prosecutors were engaged in trial.

Once the assigned agents and USAO staff assisting the prosecutors began compiling and organizing the project, by the time the project was far enough along—it was too close to the discovery deadline to provide piecemeal disclosures on a rolling basis in absence of a request for specific information.[11]   In other words, beyond the materials the government had previously produced to Gerace, Gogolack, Hinkle, Ermin, Barnes, and Roncone, the government's efforts to obtain, compile, organize, itemize, and make the discovery searchable rendered providing discovery on an intermittent or rolling basis impracticable.

H.    **The Discovery Production**

By May 20, 2024, the government's discovery production was complete and was ready to be turned over.  However, the prosecutors learned days earlier that a 3 terabyte hard drive was required, and prosecutors requested hard drives from defense counsel to load the discoverable material.  *See* ECF No. 123-1 at ¶12.  While the government was waiting receipt of all of the hard drives, it occurred to the prosecutors that they had overlooked the need for a protective order.  The information contained in the voluntary discovery production is of the sort that could be used to potentially identify witnesses or private third-parties, and contains sensitive law enforcement materials, including FBI 302s and Homeland Security Investigations (HSI) reports of investigation that are technically not discoverable at this

---

[11] For example, if a defendant contacted the government and requested a copy of their videotaped interview before the entire discovery production was complete, a specific request like that could have and would have been honored.  With the exception of certain materials that were requested by counsel for Gogolack, *see* ECF No. 83, the government did not receive any specific disclosure requests.

juncture pursuant to Rule 16(a)(2) or Title 18, United States Code, Section 3500. Unquestionably, in the context of this case, where individuals are charged with conspiring to murder a witness, a protective order is required.

On May 29, 2024, the prosecutors emailed counsel for the defendants a proposed protective order in an effort to see if an agreement could be reached. Only three attorneys responded to the government's email before the June 3, 2024, appearance in this case.[12] The government acknowledges that it should have raised the issue of a protective order sooner. On the other hand, the government made efforts to remedy its oversight with respect to the protective order by agreeing to load discovery to the hard drives it had received up until June 3, 2024, under a temporary "Attorneys Eyes Only" agreement. As of June 4, 2024, the discovery that the government agreed to voluntarily produce was either provided to counsel for the defendants, or ready for pickup. *See* ECF No. 123-1 at ¶¶ 26-31. In the end, the government provided voluntary discovery—that is without specific demands from the defendants—twelve days after it was due.

On June 5, 2024, the government moved to exclude speedy trial time because, as of June 4, 2024, all counsel who provided the government with the requisite hard drive were provided voluntary discovery.

### III.   LAW AND ARGUMENT

This is not a situation where the government made a conscious decision to ignore deadlines or orders. The government took its discovery deadline seriously—assigning an FBI agent and support staff to martial a massive discovery production while the prosecutors—the

---

[12] The third attorney emailed prosecutors the morning of the June 3, 2024, status conference.

ones who knew and had investigated the case—were engaged in trial. Unfortunately prosecutors are human and even diligent and hard working prosecutors sometimes miscalculate the time it will take to process and complete a large discovery project in a complex prosecution, or fail to make a more fulsome record in court of the discoverable materials that they have previously produced to defendants in various related cases, and sometimes they just make an honest mistake.

Here, despite diligent efforts overall, perhaps prosecutors fell short by not addressing the need for a protective order earlier in the process, or by not notifying the defense the day they knew 3 terabyte hard drives were required.[13] Fortunately, the law inherently recognizes that humans are fallible, including prosecutors, and that is why it allows courts the flexibility to fashion remedies appropriately tailored to the situation—and here, running twelve days of speedy trial time against the government is more than a sufficient remedy.

### 1.    *Applicable Law.*

Rule 16(a) of the Federal Rules of Criminal Procedure makes a variety of categories of evidence available to the defendant upon request. Rule 16(c) contemplates the discovery of additional evidence before or during trial, and requires prompt disclosure if evidence is subject to discovery or inspection and has been requested or is the subject of a court order to produce. Rule 16(d)(2) specifically provides that when regulating discovery, if a party fails to comply with Rule 16, the court may, among other things, grant a continuance or exclude evidence. Courts should impose the least severe sanction that will accomplish compliance

---

[13] On Thursday, May 16, 2024, was the date prosecutors were advised of the size of the production. On Monday, May 20, 2023, prosecutors advise the defendants that a 3 terabyte hard drive was required.

with Rule 16.  Here, to the extent the Court believes any sanction is warranted, the twelve days of speedy trial time that elapsed from the day discovery was due on May 23, 2024, until the day it was provided or made available on June 4, 2024, is sufficient to ensure the government understands the import of this Court's order.

In particular, Rule 16(d)(2) provides that if a party fails to comply with discovery requirements, the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances.

In evaluating "a particular remedy, if any, for a Rule 16 violation, the factors considered are 'the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances.' " *United States v. Morgan*, 493 F. Supp. 3d 171, 214 (W.D.N.Y. 2020) (citing *United States v. Lee*, 834 F.3d 145, 159 (2d Cir. 2016), (quoting *United States v. Pineros*, 532 F.2d 868, 871 (2d Cir. 1976) (finding that district court did not abuse discretion in admitting the defendant's oral statement that was not previously disclosed)); *see also United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. 1982).  To prove substantial prejudice under this framework, a defendant "must demonstrate that the untimely disclosure of the [evidence] adversely affected some aspect of his trial strategy." *Morgan,* 493 F. Supp. 3d at 214 (citations omitted) (alteration in original).

In issuing a sanction, "the court should impose the least severe sanction that will accomplish the desired result-prompt and full compliance with the court's discovery orders."

*Sarcinelli,* 667 F.2d at 7; *see also United States v. Dennison*, 891 F.2d 255, 259 (10th Cir. 1989) (citing *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988); *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1312 (5th Cir. 1985).

"The fact that the government's statements regarding its discovery material proved to be inaccurate does not provide a basis for rescinding exclusions under the Speedy Trial Act." *United States v. Jain*, No. 19-CR-59 (PKC), 2020 WL 6047812, at *11 (S.D.N.Y. Oct. 13, 2020).  Indeed, "[c]ourts in this district have concluded that excluding time under the Speedy Trial Act requires 'bad faith' conduct or an 'unjustifiable' lack of diligent preparation." *Id.* (citing *United States v. Esquilin*, 205 F.3d 1325, 2000 WL 232162, at *2 (2d Cir. Feb. 18, 2000) (unpublished decision) (considering an exclusion due to the filing of a pretrial motion and finding that "[g]overnment failure to comply with discovery rules can prevent exclusion of time from speedy trial calculations if that failure is chronic or in bad faith"); *United States v. Reichberg*, 2018 U.S. Dist. LEXIS 211783, 2018 WL 6599465, at *7 (S.D.N.Y. Dec. 14, 2018) ("Conduct on the part of the 'attorney for the Government' demonstrates a lack of diligent preparation within the meaning of Subsection (h)(7)(C) if that conduct is 'unjustifiable.'"); *United States v. Vasquez*, 1989 U.S. Dist. LEXIS 8156, 1989 WL 82422, at *5 (S.D.N.Y. July 17, 1989) (same)).

### 2.    *Argument*

Here, the defendants have not made formal motions for Rule 16 discovery. Nevertheless, the government agreed to provide discovery voluntarily, and it did so by providing discoverable materials it views as exceeding the requirements of Rule 16.  For the reasons described above, and not as a result of any tactics or strategy, the government produced expansive discovery within 12 days of the voluntary discovery deadline.

Regardless of whether the parties could have worked more collaboratively, the government has acknowledged that it engaged with the defense to obtain the required hard drives three days before the deadline, and that it briefly withheld its discovery production when it realized that a protective order was not in place.[14]  When the government became cognizant of the fact that a protective order was not in place, it acted expeditiously to remedy its oversight.

Simply put, the government has not withheld discoverable materials, and has not failed to produce discoverable materials in response to a specific demand.  Rather, the government has endeavored to voluntarily produce substantial discovery, without formal motion practice, in an effort to facilitate effective assistance of counsel and expedite this litigation.  Pursuant to Rule 16 and controlling caselaw, the appropriate remedy should be, at most, a non-exclusion of speedy trial time from May 23, 2024, until June 4, 2024.

The defendants' citation to *United States v. Graham*, 2022 WL 2873876 (W.D.N.Y. May 2, 2022) is unavailing.  In *Graham,* there was miscommunication between prosecutors after a case was transferred between them—one prosecutor had charged Graham on a complaint and another prosecutor had commenced a much more serious sex trafficking investigation into Graham.  Because the sex trafficking investigation (and later prosecution, conviction, and sentence) was far more serious than the criminal complaint, and because the prosecutor handling the sex trafficking investigation was unaware that no discovery was ever provided to Graham on the charged complaint case, 97 days elapsed wherein no discovery

---

[14] In this vein, there were protective orders in Gerace's separate cases, but there was not a protective order that was clearly in place governing all defendants and discoverable materials relevant to the Second Superseding Indictment in this case.  *See* Case Nos. 19-CR-227 and 23-CR-37.

was produced to Graham, or plea negotiations were pursued, on the complaint. Because the government neither produced discovery, nor engaged in plea discussions on the case charged by complaint, the court retroactively vacated a speedy trial exclusion and dismissed the counts of the indictment that were previously charged by complaint, without prejudice, as untimely. *Id.* at *4-6.[15] Here, the government produced discoverable materials to most defendants at different times in related cases—including cases that were charged by complaint and were later completely subsumed by this Second Superseding Indictment. The government compiled, organized, Bates numbered, and made searchable comprehensive discovery that was provided within 12 days of the deadline.

If this Court determines a sanction is warranted, the "least severe sanction that will accomplish the desired result-prompt and full compliance with the court's discovery orders," *see Sarcinelli,* 667 F.2d at 7, is declining to exclude the 12 days of speedy trial time that elapsed from May 23, 2024, until June 4, 2024, when discovery was produced and made available. The government submits that there was no "bad faith" by the prosecutors in this case—only a recognition that they did not have a protective order adequately in place before producing discovery in a case that alleges the murder of a government witness.

The "reasons why the disclosure was not made," involved the fact that prosecutors were handling expansive discovery while engaged in a complex trial, and they realized a

---

[15] The government filed a superseding indictment, and the District Court adopted the Report and Recommendation without opining as to whether the issue was moot in light of the superseding indictment. Following Judge Roemer's R&R, Graham was arraigned on a superseding indictment. Docket Item 70. This Court held a status conference with the parties on July 20, 2022. *United States v. Graham*, No. 21-CR-195-LJV-MJR, 2022 WL 2872652, at *1 (n.1) (W.D.N.Y. July 21, 2022).

protective order was not adequately in place to help ensure the safety of witnesses in a case involving the murder of a witness. *Morgan*, 493 F. Supp. 3d at 214. The "extent of the prejudice" is nonexistent in this case. *Id.* The defendant's do not articulate any prejudice from having the received the discovery on June 4, as opposed to May 23, 2024. Moreover, the Court rectified any slight prejudice, with agreement of the parties, by permitting the government to provide the discovery for "Attorneys Eyes Only."

Regarding the efforts to reach an agreement upon a protective order, after failing to respond to the government's initial emails seeking input, following the June 3, 2024, status conference, counsel for defendant Gerace submitted a proposed protective order to the government on June 4, 2024. The government took time to carefully review the defendant's proposal, analyzed each paragraph and provision in the defendants' proposal against the dangers inherent in the case, and concluded that the parties were simply too far apart to make additional edits or counter-proposals. Thus, in the interests of time and moving the issue forward—the government filed its motion for a protective order. However, before doing so, the government advised counsel for the defendants via email on June 10, 2024, at 10:01 a.m.:

> I printed your proposed version of the protective order and I compared it line-by-line with the government's proposed order.
>
> I would first note that Mr. Dell had previously indicated that he was fine with the government's order as drafted, and Mr. Hutchison and Mr. Muscato appeared to have limited feedback, which led me to believe that ultimately the parties would be able to reach an agreement on consent.
>
> Unfortunately, upon reviewing your proposed edits, I do not believe that to be the case. **Your feedback included the removal of 7 of the 17 paragraphs proposed by the government, accounting for the removal of (sic) 41% of the government's proposed provisions. Additionally, in the government's view, your version significantly and materially reduced the scope and effectiveness of most of the provisions which you did not strike from the proposed order altogether.**

> Some of your edits, including Footnote 3 (addressing the use of video-conferencing software) and Footnote 4 (defining identifying information) are acceptable to the government (although we would seek to broaden the definition listed in footnote 4).  Given the distance between the parties on the issue of the protective order, I plan to file a motion with Judge McCarthy today.

(Emphasis added).  Given the disparity between the parties, the most prudent thing for the government to do was to file a motion for a protective order.  Notably, no defendant expressed a desire to continue negotiating in response to the government's email.

Finally, the defendants' request for an evidentiary hearing should be denied.  The facts are well-established and not complex—the government produced voluntary discovery 12 days after the deadline.  "[A]n evidentiary hearing . . . ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992); *see also United States v. Durand*, 767 F. App'x 83, 87 (2d Cir. 2019) (same).  A defendant may not rely on "bald assertions," and "[w]ithout specification of the factual basis . . . the district court is not required to have a hearing." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998); *see also United States v. Fugate*, No. 121CR127LJVMJR, 2022 WL 18359077, at *1 (W.D.N.Y. July 13, 2022), *report & recommendation adopted*, No. 21-CR-127-LJV-MJR, 2023 WL 279815 (W.D.N.Y. Jan. 18, 2023) (denying evidentiary hearing where there are no contested issues of fact).

"General and conclusory factual allegations which are based upon mere suspicion or conjecture, however, will not suffice to necessitate a hearing." *Gentile v. Cty. of Suffolk*, 926 F.2d 142, 148 (2d Cir.1991); *see also United States v. Cobb*, 544 F. Supp. 3d 310, 339 (W.D.N.Y. 2021) (denying evidentiary hearing).  Moreover, if facts urged in support of a hearing would

not entitle the moving party to relief as a matter of law, no evidentiary hearing is required. *See Gentile*, 926 F.2d at 148. Courts in this district retain broad discretion regarding whether to grant an evidentiary hearing. *See United States v. Bazemore*, No. 20 CR. 573 (ER), 2021 WL 1719233, at *3 (S.D.N.Y. Apr. 30, 2021).

Because the defendant fails to establish a material issue of fact, the Court should deny the defendant's request for an evidentiary hearing.

## IV.    <u>CONCLUSION</u>

The defendants' motion for sanctions and for a hearing should be denied.

DATED:    Buffalo, New York, June 14, 2024.

TRINI E. ROSS
United States Attorney

BY:    s/JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716/843-5839
Joseph.Tripi@usdoj.gov