IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

-vs-

PETER GERACE, JR.,

Defendant.

_____

## MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE TIME FROM THE SPEEDY TRIAL ACT

Docket No. 23-CR-99

Respectfully submitted on June 20, 2024, by:

Mark A. Foti, Esq.
The Foti Law Firm, P.C.
16 West Main Street, Suite 100
Rochester, New York 14614
Phone: (585) 461-1999
Fax: (585) 491-6512
E-mail: mark@fotilaw.com

Defendant Peter Gerace, Jr., by and through counsel, Mark A. Foti, Esq., provides the following memorandum in response to the motion by the government seeking an Order to exclude time from the Speedy Trial Act from and including June 5, 2024, through and including June 27, 2024, pursuant to Tile 18, United States Code, §§ 3161(h)(7)(A) and 3161(h)(7)(B)(iv), even though it had previously moved for an exclusion of those dates and was denied.

The Table of Contents is as follows:

I.      Introduction ............................................................................................. 4

II.     Background ............................................................................................. 6

   A.      Relevant Procedural History Preceding the Indictment ............................ 6

   B.      Court Appearances Prior to the February 23, 2024 .................................... 8

   C.      The February 23, 2024, Status Conference .................................................. 10

   D.      Discovery Disclosure leading up to the June 3, 2024 ............................... 15

   E.      The June 3, 2024, Status Conference ............................................................ 17

   F.      The Government's Motion for Reconsideration of This Court's Decision to Deny an Exclusion of Time in the Interest of Justice ........................................ 20

III.    Applicable Law ..................................................................................... 22

   A.      Exclusion of Time from the Speedy Trial Act in the Interest of Justice .. 22

   B.      Motions for Reconsideration ........................................................................ 23

C.      The Law of the Case Doctrine ........................................................ 26

IV.      Discussion ............................................................................................ 27

A.      The Government's Motion Does Not Cite the Standard or Establish a Basis for Reconsideration ........................................................................ 28

B.      The Government's Motion Fails to Address the Reason that its Original Motion for Exclusion of Time was Denied ............................................. 29

C.      A Hearing Should be Held to Address the Underlying Facts Relevant to the Government's Motion and the Government's Decision to File its Motion . 34

D.      After a Hearing, this Court Should Consider Sanctions .......................... 36

V.   Conclusion ............................................................................................... 36

# I.     INTRODUCTION

On June 5, 2024, the government filed a motion that continues the government's recent practice of filing submissions, often criticizing defense counsel and/or the Court when it loses a motion, and then within that submission, requesting reconsideration despite the drain on court resources, the burden it puts on the defendants and the delay that it creates.

In this particular instance, at the status conference on June 3, 2024, the government made a motion to exclude time that would accrue under the statutory speedy trial act pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(iv) from June 4, 2024, to June 27, 2024. For reasons addressed on the record, including issues related to the government's failure to timely fulfill its discovery obligations, the government's motion for an exclusion of time was denied.

Two days later, the government filed a motion asking for an exclusion of time from June 5, 2024, to June 27, 2024, essentially making the same motion that was already denied. The government's motion is itself a means to circumvent this Court's decision to deny the prior request, because the pendency of the motion attempts to stop the clock pursuant to 18 U.S.C. § 3161(h)(1)(D).

By bringing this motion after the Court had already denied the request for an exclusion of time, the government seeks relief that amounts to a request for

reconsideration without identifying any legitimate grounds to support the position that reconsideration would be appropriate.

Moreover, on its merits, the government's motions failed to account for what is clearly the central reasons that an exclusion of time was not appropriate in the first instance, including: (1) the government's failure to provide rolling discovery at any point during the extensive 90 days afforded to the government to complete discovery production; (2) the government's failure to request an extension of time to provide discovery after the discovery deadline; and (3) the government's decision to continue to withhold discovery after the deadline had already expired while it raised the issue of a protective order for the very first time.

The government's new motion for an exclusion of time contains a supporting affidavit which appears to somehow blame defense counsel for the government's failure to produce discovery in the timeframe ordered by this Court. Based on the factual issues raised by the government in its affidavit, the most appropriate manner in resolving the government's motion would be for a fact-finding hearing, to be held as soon as possible, addressing the following:

- Why the government failed to produce any rolling discovery following the Court's Directive on February 23, 2024;

- Why the government waited until three days before the discovery deadline to request the defense provide a hard drive;

- Why the government failed to produce discovery prior to the May 23, 2024 deadline;

- Why the government waited until May 29, 2024, to present a protective order to defense counsel; and

- Any other issue the Court deems appropriate.

The answer to these questions would appropriately address whether an exclusion of time should be granted and would develop a factual record that would help determine what type of sanction may be appropriate for the government's decision to bring this motion as a mechanism to stop the speedy trial clock after this Court had already determined that an exclusion was not appropriate[1].

This Response addresses the factual background supporting a determination that a hearing should be ordered to address the factual circumstances that the government has put at issue, and after the hearing, the defense anticipates that the record will support denying the government's motion and support the imposition of sanctions.

## II.   BACKGROUND[2]

A. Relevant Procedural History Preceding the Second Superseding Indictment

Defendant Simon Gogolack was charged by Complaint on August 17, 2023, and initially appeared on August 23, 2023. Magistrate Judge Case Number ("Magistrate no.")

---

[1] The defense has moved for sanctions related to the government's disregard of this Court's Discovery Order. Dkt. # 132. The filing of this motion to exclude time should also be reviewed by this Court for appropriate sanctions, because the motion was clearly brought to attempt to utilize 18 U.S.C. § 3161(h)(1)(F) to circumvent the consequence of this Court's decision to deny the original motion for an exclusion of time.

[2] This Section is the similar to the Background section included in the motion for discovery violation sanctions, however it incorporates additional facts, including details of the government's Response to the motion for sanctions.

23-mj-01115-JJM, Dkt. # 1, 4. Mr. Gogolack was detained on the government's motion. Magistrate no. 23-mj-01115-JJM, Dkt. # 4.

Mr. Gogolack was indicted less than one month later on September 13, 2023. Dkt. # 12. An arraignment and detention hearing were held on September 14, 2023. Dkt. # 15.

This Court issued a Scheduling Order on September 15, 2023, that ordered "All voluntary discovery shall be completed by October 16, 2023." Dkt. # 17 at 1.

Five days later, on September 20, 2023, a superseding indictment was filed against Gogolack. Dkt. # 18. An arraignment on the superseding indictment was held on September 25, 2023. Dkt. # 20.

This Court issued a Scheduling Order on the Superseding Indictment. Dkt. # 21. The discovery deadline remained the same. Dkt. # 21 at 1 ("All voluntary discovery shall be completed by October 16, 2023.")

Other defendants were charged, individually by separate complaints, including: Howard Hinkle (Magistrate no. 23-mj-05219-MJR)[3]; Michael Roncone (Magistrate no. 23-mj-00168-HKS); Scott Barnes (Magistrate no. 23-mj-00166-HKS); and John Ermin (Magistrate no. 23-mj-00167-HKS).

On December 13, 2024, Mr. Gogolack requested an extension of time to file pretrial motions. Dkt. # 22. The Court granted the request and issued an Amended Scheduling

---

[3] Howard Hinkle was also charged with Dillon Anderson who has since had his charges dismissed. *See* Magistrate no. 23-mj-05219-MJR, Dkt. # 20

Order on the Superseding Indictment. Dkt. # 23. The scheduling order did not provide a new deadline for discovery because the government never requested an extension of time to disclose discovery. *Id*.

B. <u>Court Appearances Prior to the February 23, 2024, Status Conference</u>

On January 5, 2024, a Second Superseding Indictment was filed against Mr. Gogolack, which included Mr. Gerace and all of the defendants listed supra. Dkt. # 24.

At the arraignment for Mr. Gerace on January 10, 2024, counsel appeared provisionally, and although not yet retained or appointed on this case, counsel made a request for initial discovery disclosure. Dkt. # 46 at 13-14 ("So, I would ask that at least some preliminary disclosure be provided, beyond the indictment, to give counsel an idea of what's going to be involved here in terms of the defense of this case, in terms of motion practice, in terms of the timeframe associated with a trial.")

The government opposed any disclosure claiming that because counsel was not yet confirmed and that disclosure would somehow "build[] delay into this case." Dkt. # 46 at 14.

The government made no comment about how long the discovery process would take, or that hard drives would have to be provided by the defendants, or that it would be seeking a protective order at some point.

A status conference was set for January 31, 2024.

At the status conference on January 31, 2024, counsel for Mr. Gogolack made a detailed request regarding the need for a discovery deadline:

> Mr. Gogolack has been on the complaint since August. We don't have basic discovery in the case.
>
> I know the Government has made several representations at various detention hearings about discovery that they have, but we're in a position where we're unable to evaluate any of that because we don't have it, Judge.
>
> So I'd ask that you set a discovery deadline before you set any other scheduling order and we can come back at a status conference at some point in the future and set motions deadlines, but I would ask for a discovery deadline first.
>
> Dkt. 66 at 30.

Even though 26 days had already passed since the filing of the indictment, and 167 days had passed since Mr. Gogolack was initially charged, the government opposed setting a discovery deadline unless the Court was also going to set a deadline for motions, even though there was no explanation for why those two deadlines would need to be set at the same time.[4] Dkt. 66 at 30-31.

A status conference was set for February 23, 2024.

---

[4] Obviously, it was not feasible to schedule deadline for motions yet as counsel had no idea what the scope of the case was and there were still counsel issues to work out. However, nothing was preventing the government from preparing or providing discovery.

C. <u>The February 23, 2024, Status Conference</u>

On February 23, 2024, 49 days after the filing of the second superseding indictment, this Court held a status conference. The government had still not provided a single page or a single byte of discovery to Mr. Gerace.

At the status conference, this Court proposed that a discovery deadline be set. Feb. 23, 2024 Transcript at 3. This Court proposed a generous 60-day deadline.[5] Feb. 23, 2024 Transcript at 6.

In response to this Court's suggestion, the government asked for 90 days. It provided two reasons for its request.

> The first reason is this case involves a significant amount of discoverable material. It's a significant undertaking. *There's an agent from the FBI who has been essentially exclusively assigned to that task,* but the resources that that requires are significant. And so as opposed to setting a shorter deadline and rushing things for lack of a better word, I'd ask that we set 90 days and allow a thorough review and production of discovery.
>
> The other reason is as the Court indicated, it would be helpful to have a final determination regarding this death penalty issue before we all come back and before motion practice begins, and I think kicking this out 90 days versus 60 days errs on the side of caution with respect to that determination.
>
> Feb. 23, 2024 Transcript at 6-7 (emphasis added).

---

[5] A 60-day deadline would have resulted in a deadline set 109 days after the filing of the second superseding indictment.

As this Court knows, the Notice that the government would not pursue the death penalty was filed later that day (Dkt. # 75) so it ended up having no bearing on the need for 90 days as opposed to the 60 days that this Court proposed.

In regard to the volume of discovery, to the extent that there was "an agent from the FBI who has been essentially exclusively assigned to that," 60 days should have been more than sufficient, but nonetheless the government asked for 90. The government referred to it as "an additional 30-day cushion." Feb. 23, 2024 Transcript at 7-9.

The defense indicated that it had no way of knowing what the volume of discovery was, so it could not really argue in opposition to the lengthy timeframe requested by the government.

> I think we're all in a position where we somewhat have to defer to the Government in terms of how long it will take them to produce discovery, but I would note… I've had a number of mega cases where discovery could be produced in 30 to 60 days… obviously almost all of the defendants are in custody. I have concerns about the length of that type of adjournment, but um, given the fact that the Government is the only entity at this point that can describe the volume of discovery and they're saying they need 90 days, um, I don't know that there's much I can do to rebut that.

> Feb. 23, 2024 Transcript at 8-9.

Despite the fact that counsel did not, at that time, question the government's representation that 90 days would be necessary, nor did counsel oppose the request based

on the fact that it had no indication as to what the actual volume of discovery is, the

government nonetheless felt compelled to respond.

> [I]t's perplexing to hear that counsel has concerns regarding speedy trial when we've had I think three separate status conferences where counsel hasn't wanted to set a scheduling order in place. To come today and say, hey, that's too long to ask for is contrary to the arguments that have been raised that the arraignment, the status conference after the arraignment. It's inconsistent with arguments previously raised that the Court shouldn't set a scheduling order. So I don't understand.

> Feb. 23, 2024 Transcript 9-10

Counsel replied:

> Judge, just -- I don't want to have it turned into a back and forth, but I do want to correct the record. At the arraignment, I asked for discovery. I said I think we should put a scheduling order in place. I indicated that I would be a proponent of split -- bifurcating non dispositive and dispositive motions. I specifically said to the Court if we start getting discovery, it can inform us on the size of the case. So that was an application I made.

> I believe the Government's response was they thought that would build in delay in some manner. So I just want that to be clear, and obviously, this is an investigation that took place over several months. There is a period of time that precedes the charges where the discovery could be prepared in anticipation of an indictment. Again, I'm not opposing the 90 days. The Government is in the position to say that the volume is that high. My point is merely that defendants are in custody. That's a consideration, and it informs on other considerations the Court has.

> Feb. 23, 2024 Transcript 10-11.

Counsel for Ermin also added "whatever time the Government needs to get us the complete discovery obviously would help us, but the implication that somehow we are here today as a result of delays from defendants is I think inappropriate." Feb. 23, 2024 Transcript at 11.

Ultimately, this Court agreed to grant the extensive 90-day deadline, but it specifically indicated that to the extent possible, the discovery should "be produced sooner than that date" and it should be produced "[o]n a rolling basis so that people can hit the ground running in terms of what they think they need to do." Feb. 23, 2024 Transcript at 12.

This direction by the Court followed an earlier colloquy, where the Court asked if it was possible to do "rolling production during the 90 day period" and the government responded: "I certainly think so, Judge. I think that *there's material that is probably close to ready to go out at this point* because we've obviously been working on it since the return of the indictment." Feb. 23, 2024 Transcript at 10 (emphasis added).

The deadline for discovery was set for May 23, 2024, and a status conference was set for June 3, 2024. Transcript at 12-13.

The Government moved for an exclusion of time, which recognized that the Court expected that the defendants would be able to review discovery in advance of the June status conference.

> So the Government would request that the time between today's date and June 3, 2024, be excluded from the speedy

trial act pursuant to Title 18 United States Code Section 3161(h)(7)(a) and (h)(7)(b)(4) in that the interest of justice in the exclusion of such time outweigh the defendant's interest in a speedier trial specifically because with this time between today and June 3 the Government will prepare and produce an itemized list of discovery to counsels for all of the evidence. Additionally, it will provide time between May 23 and June 3 for counsel for all of the defendants to review such discovery and report back to the Court at that status conference about how much time they need to file motions.

Feb. 23, 2024 Transcript at 16-17.

Based on the understanding that discovery would be provided on a rolling basis to the extent possible and completed on or before May 23, 2024, the Court issued an exclusion of time.

These issues were summarized on the Minute Entry entered on the public docket:

The government requests 90 days to produce discovery. After some discussion, the court sets a 90-day deadline and sets a follow-up status conference for 6/3/2024 at 2:00 PM to discuss motion schedules. The court directs the government to provide discovery on a rolling basis, to extent possible. STA time excluded as to all defendants through the June 3rd status conference for the reasons stated by the government.

Dkt. # 73.

At no point during the conference did the government state that it intended to seek a protective order or that the defendants would need to provide hard drives at any point in order to receive discovery.

D.  Discovery Disclosure leading up to the June 3, 2024, Status Conference

At the time of the February 23, 2024, status conference, 49 days had already passed following the filing of the superseding indictment. Starting February 23, 2024, the government was to provide rolling discovery over the following 90 days, with a deadline that it be completed by May 23, 2024.

Over the next 90 days, the government did not produce any rolling discovery. It did not indicate that it would require a protective order for discovery disclosure. At no point did the government move for an extension of the discovery deadline.

On May 20, 2024, 136 days after the second superseding indictment was filed, the government advised defense counsel for the first time that it would need a hard drive from each of the defendants in order to provide discovery. The government indicated the copying of discovery "upload may take 2-3 days to complete."[6]

The government stated it needed a hard drive containing space for up to 3 terabytes of data. That is substantial enough that it would require most or all attorneys to purchase a new drive and have it delivered to the government before the copying could even start.

---

[6] Although the government requested the hard drive prior to the expiration of discovery, it was requested so late that most defendants would not be able to purchase and deliver the drive prior to the expiration of the deadline, and even if they did it would not matter because (1) it would take multiple days to copy the data onto the drive; and (2) the government decided not to disclose any material until a protective order was in place, and it would not broach the subject of a protective order until nearly a week after the deadline to conclude discovery disclosure had already passed.

Over the next week and a half, most of the attorneys obtained hard drives and had the drives sent or delivered to the government. None of the defense attorneys received a hard drive back regardless of how quickly each attorney was able to purchase the drive and deliver it to the government.

Instead, on May 29, 2024, for the first time, the government sent an email stating that it would withhold discovery until a "protective order is authorized by the Court."[7]

The government's email attached a 5-page proposed protective order. Even though the government tried to quickly elicit consent from defense counsel for its proposed protective order, the document included several provisions that the government could not have possibly believed all defense counsel would consent to.[8]

Over the next two days, communication between the defense attorneys resulted in most of defense counsel deciding to meet to collectively to review the protective order. Because the government had waited until only a few business days before the June 3, 2024, status conference to propose a protective order, the attorneys could not realistically meet before that date.

On June 3, 2024, the attorneys met before the scheduled status conference to review the proposed protective order in an effort to establish a collective position regarding

---

[7] An out-of-office reply was sent from my email address on that date, because I was out of the district for argument at the Second Circuit.

[8] Detailed discussion of the government's proposed conditions is included in the Response to the government's motion for a protective order, also filed today.

whether they would consent to a protective order and if so, which provisions would be agreeable. The attorneys came to a consensus on which provisions were agreeable and which provisions were inappropriate and/or redundant.

Immediately following that meeting, the parties convened in court for the status conference.

E.   The June 3, 2024, Status Conference

At the status conference on June 3, 2024, the government seemed to suggest that the delay regarding the disclosure of discovery was somehow the responsibility of the defense. The government stated that most of defense counsel had not immediately responded to the government's email requesting consent to its proposed protective order. The government initially omitted the fact that the email had been sent only five days earlier, 145 days after the indictment was filed.[9]

After the Court established a timeline, including that the government did not request a protective order until over a week after the discovery deadline had already expired, it inquired about the reason for the delay.

---

[9] The government also omitted any substantive acknowledgement of the court's direction to provide rolling discovery.

The government did not offer much in terms of an explanation for the delay, but it seemingly admitted that part of the reason discovery had not been prepared was because the trial team was engaged in another trial in *US v Bongiovanni et al*.[10]

The defense indicated that by the following evening, it expected it could provide a proposed protective order with input and/or edits from most or all of the attorneys. The defense requested a deadline be set for the government to file a motion for a protective order if the parties could not reach an agreement. The defense also noted that the government had not requested any extension of the discovery deadline, and that discovery should have been disclosed over a week before the government even mentioned a protective order.

The government indicated it would release the discovery if a temporary protective order was issued indicating that the discovery could be viewed by "attorney's eyes only." Although the multiple attorneys requested the ability to generally discuss material with their respective clients, it was ultimately agreed that the discovery would be disclosed pursuant to a temporary "attorney's eyes only" restriction.

The Court set a scheduling requiring any motions for a protective order be filed by June 10, 2024. That date would also serve as a deadline for defendants to file motions

---

[10] Notably, the government had already been engaged in that trial during the February 23, 2024, status conference, so the government was fully aware of the time commitments associated with the trial when it requested 90 days, including the 30-day cushion.

related to relief based on the government's failure to abide this Court's ordered discovery deadline.

The government then moved for an exclusion of time pursuant to 18 U.S.C. Sections 3161(h)(7)(A) and (h)(7)(B)(iv).

Because the government failed to produce discovery as directed by this Court and because that delay had prevented the parties from reviewing discovery in advance of the court date so a scheduling order could be set, the Court denied the request for an exclusion of time in the interest of justice.

A Text Order was issued that day summarizing the appearance and confirming that time would not be excluded from the Speedy Trial Act calendar.

| 06/03/2024 | 122 | TEXT ORDER as to Simon Gogolack, Peter Gerace, Jr, John Thomas Ermin, Michael Roncone, Frank Knight, Howard Hinkle, Jr., Cortnie Barber, Bernard Byrd, III, Scott Barnes: In accordance with today's conference, the government's production of discovery shall be deemed attorney's eyes only pending further order of the court and without prejudice to defendants' right to argue against that designation. The parties shall continue to confer in an effort to reach agreement on a proposed protective order. By June 10, 2024, the parties shall either file a proposed stipulated protective order or motion(s) for the entry of a protective order. By that deadline defendants may also file motions directed to consequences of the government's failure to abide by my February 23, 2024 Text Order 74 requiring the government to produce discovery to them by no later than May 23, 2024. Responses to these motions (if any) shall be filed by June 14, 2024, after which time the motion(s) will be taken under advisement. A further conference is scheduled for June 27, 2024 at 2:00 p.m. For the reasons set forth by defendants' counsel on the record, I deny the government's request to enter a further exclusion of time from the Speedy Trial Act calendar pursuant to 18 U.S.C. Sections 3161(h)(7)(A) and (h)(7)(B)(iv). As of today, |

| | | time if no longer excluded from the Speedy Trial Act calendar. SO ORDERED. Issued by Hon. Jeremiah J. McCarthy on 6/3/24. (MDY) (Entered: 06/03/2024) |
| --- | --- | --- |

The following evening, counsel for Gerace sent an email to the government with an attachment containing a proposed protective order. The proposed protective order was drafted with input and/or edits from the majority of attorneys. Counsel for at least six of the defendants had weighed in that they would stipulate to this protective order if it was acceptable to the government.

That proposed protective order was sent to the government on the evening of June 4, 2024. The following morning the government sent a reply email indicating that they "take a look and get back to" the defense.[11]

F. <u>The Government's Motion for Reconsideration of This Court's Decision to Deny an Exclusion of Time in the Interest of Justice</u>

On June 5, 2024, the day after the defense sent a proposed protective order, the government filed a motion for an exclusion of time from June 5, 2024, to June 27, 2024.

---

[11] The government did not respond with any further attempts to discuss the provisions of the proposed protective order. Instead, six days after the defense had presented its proposal, the government sent an email to defense counsel indicating that it is going to just file a motion for a protective order. The six days are notable for no reason other than that the government has chosen to make arguments to this Court insinuating that the defense failure to response to the government's May 29 email in the five days preceding the already-scheduled status conference was somehow strategic. Dkt. # 123-1 at 13 ("Unfortunately, whether strategically or otherwise, counsel for numerous defendants in this case ignored the government's attempts to reach an agreement regarding a protective order on consent until after appearing for the June 3, 2024 status conference").

The government did not label the motion as a motion for reconsideration but given the Court had already denied an exclusion of time almost identical to the exclusion requested in the government's new motion, it is clearly a motion for reconsideration as to those dates.

This follows a trend developing within the last several months that the government will file motions seeking relief for reconsideration when it loses a motion. It did so in this case, when the Court denied the government's motion for disclosure of Gerace and Ermin's financial affidavits. *See* Dkt. # 86, 90 (government claimed it was entitled to file a Reply despite never requesting the opportunity to file one prior to the Court's Decision). It did so in *Bogiovanni et al*, when the District Court denied the government's motion to disqualify Eric Soehnlein. *See* Case no. 19-cr-00227-LJV-MJR, Dkt. # 919 (after the District Court issued a detailed and lengthy Decision and Order denying the government's motion to disqualify Mr. Soehnlein, the government filed a Motion and Memorandum to Resolve Actual and Potential Conflicts of Interest arguing that the District Court should not accept any *Curcio* waiver and should disqualify Mr. Soehnlein).

In this instance though, the mere filing of the motion is an attempt to achieve the government's goal. The government will likely contend that the pendency of the motion itself stopped the Speedy Trial clock and thus, by making the motion, the government

has attempted to circumvent the consequence of this Court's decision not to exclude time, at least temporarily, regardless of whether its motion had any merit.

The motion should be denied, but not without first holding a hearing, to resolve issues of fact surrounding the government's failure to produce rolling discovery at any time during the 90 days following the February 23, 2024, status conference, the government's failure to provide discovery by the May 23, 2024, deadline, and the government's failure to propose a protective order until after expiration of the discovery deadline despite its intention to withhold discovery until one had been issued.

### III.   APPLICABLE LAW

The Government's motion for an exclusion of time does not cite the legal standard associated with exclusions of time or motions for reconsideration, nor does it address why the Law of the Case Doctrine would not apply in this instance. *See* Dkt. # 123-1.

The applicable standards for each of these principles are discussed below.

A. Exclusion of Time from the Speedy Trial Act in the Interest of Justice

The government moved for an exclusion of time pursuant to 18 U.S.C. § 3161(h)(7)(A) and 3161(h)(7)(B)(iv). See Dkt. # 123.

The exclusion contemplated by 18 U.S.C. § 3161(h)(7), also known as the "end interest of justice" provision, provides the broadest category of excludable time. The statute allows for exclusion of "[a]ny period of delay resulting from a continuance granted

by any judge... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A)

Although this provision is extremely broad, there are both substantive and procedural limitations.

An ends-of-justice continuance cannot be granted due to "lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(7)(C).

Furthermore, the court must make findings on-the-record and must consider certain factors in making those findings. *See Zedner v. US*, 547 US 489, 507-509 (2006); 18 U.S.C. § 3161(h)(7)(A), (B).

Given the mandatory and categorical nature of the requirements of § 3161(h), the Supreme Court has held that a court's failure to make findings on the record to support an ends-of-justice continuance is not subject to harmless error analysis. *Zedner*, 547 U.S. at 508.

B.  <u>Motions for Reconsideration</u>

Motions for reconsideration are generally permitted in criminal cases. Courts will commonly apply the civil standard of review in determining whether there is a sufficient basis for the motion. While motions for reconsideration are within the discretion of the court, they must also be weighed alongside the law of the case doctrine.

There is no statutory authority for a party to make a motion for reconsideration in a criminal case. However, the Supreme Court has "recognized the appropriateness of petitions for rehearing by the United States in criminal cases" *United States v. Healy*, 376 U.S. 75, 78 (1964); *see also United States v. Dieter*, 429 U.S. 6 (1976)

Although, "some motions for reconsideration are so totally lacking in merit… there is no certain way of deciding in advance which motions for reconsideration have the requisite degree of merit, and which do not." *United States v. Ibarra*, 502 U.S. 1, 6–7 (1991).

Absent any "criminal procedure provision for a reconsideration motion, courts in this Circuit have applied the applicable civil standard to such motions in criminal cases." *United States v. Larson*, 07-CR-304S, 3 (W.D.N.Y. Nov. 23, 2013)

"[T]he standard for reconsideration is 'strict' and reconsideration '*will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters*, in other words, that might reasonably be expected to alter the conclusion reached by the court,'" *United States v. Briggs*, 10-CR-184S, 4 (W.D.N.Y. Nov. 7, 2012)(*quoting United States v. Amanuel*, No. 05-CR-6075, 2006 WL 266560, at *1 (W.D.N.Y. Jan. 31, 2006))(emphasis added).

There are three major grounds identified to justify a motion for reconsideration: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways v. Nat.*

*Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)(*quoting* 18 C. Wright, A. Miller E. Cooper,

Federal Practice Procedure § 4478 at 790).

"A motion for reconsideration may not be used to advance new facts, issues or

arguments not previously presented to the Court, *nor may [they] it be used as vehicle[s] for*

*relitigating issues already decided by the Court.*" *United States v. Smith*, 105 F. Supp. 3d 255,

258 (W.D.N.Y. 2015)(internal quotations and citations omitted)(emphasis added).

The "limitation on motions for reconsideration is to ensure finality and to 'prevent

the practice of a losing party examining a decision and then plugging the gaps of the lost

motion with additional matters.'" *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp.

2d 390, 392 (S.D.N.Y. 2000) (*quoting Carolco Pictures, Inc. v. Siroto*, 700 F. Supp. 169, 170

(S.D.N.Y. 1988)).

It has been "recognize[d] 'that reconsideration of a previous order is an

extraordinary remedy to be employed sparingly in the interests of finality and

conservation of scarce judicial resources.'" *In re Health Management Systems, Inc. Sec. Lit.*,

113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)(*quoting Wendy's Int'l, Inc. v. Nu-Cape Construction,*

*Inc.*, 169 F.R.D. 680, 685 (M.D.Fla. 1996)).

Thus, a motion for reconsideration "should be granted only in extraordinary

circumstances." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)(*citing Liljeberg v. Health Serv.*

*Acquisition Corp.*, 486 U.S. 847, 863 (1988)).

Furthermore, when a party brings a motion for reconsideration, it "must do so within the strictures of the law of the case doctrine." *Virgin Atlantic Airways v. Nat. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

## C. The Law of the Case Doctrine

The law of the case doctrine indicates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U. S. 605, 618 (1983).

A "clear conviction of error on a point of law that is certain to recur… will prevail over 'the law of the case' whereas 'mere doubt' will not." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964).

"The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F. 3d 95, 99 (2d Cir. 2009)(*quoting United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002))

Thus, as previously noted, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked… a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

"[T]he law of the case doctrine forecloses reconsideration of issues that were decided — or that could have been decided — during prior proceedings." *US v. Williams*, 475 F. 3d 468, 471 (2d Cir. 2007).[12]

## IV.   DISCUSSION

Despite the Law of the Case Doctrine and the strict limitations on motions for reconsideration, the government made its motion seeking relief already denied by this Court without pointing to any controlling decisions or data that the Court overlooked in rendering its decision. The motion merely seeks to relitigate an issue already decided.

If anything, the government's new motion demonstrates why this Court was correct to deny the government's original motion for an exclusion of time, because when filing an affidavit in support of this new motion, the government utterly failed to explain why it did not provide any rolling discovery at any point during the 90-day period, why it did not provide full discovery before this Court's discovery deadline, or why it waited until over a week after the discovery deadline had expired to even broach the subject of a possible protective order.

A hearing should be held to address the factual deficiencies of the government's sworn affidavit, and after the conclusion of the evidence presented at that hearing, the

---

[12] The Second Circuit has recently deferred to the Law of the Case Doctrine on multiple occasions to foreclose reconsiderations of decisions it had previously decided. *See e.g. Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 146-47 (2d Cir 2020); *see also Doe v. East Lyme Bd. of Educ.*, 962 F. 3d 649, 662-63 (2d Cir 2020)

Court should not only deny the government's motion, but consider sanctions against the government for bringing this motion as a means of circumventing this Court's decision to deny the exclusion of time.

A. <u>The Government's Motion Does Not Cite the Standard or Establish a Basis for Reconsideration</u>

Of the three grounds that justify a motion for reconsideration, none of them are applicable here.

There is clearly no intervening change of controlling law between the denial of the first motion for an exclusion of time and the filing of the motion requesting an exclusion only two days later.

There is no "new evidence" available. Although the government points to the fact that it made the hard drives available the day following the status conference, it was known to the Court and the defendants that the release of the hard drives was imminent due to a temporary "Attorney's Eyes Only" protective order. The Court denied the motion for an exclusion of time fully aware of that fact, and the release of the hard drives the day after the status conference did not rectify the delay that was caused by the late disclosure; thus, it had no impact on the decision to deny an exclusion of time.

Finally, there is no clear error or manifest injustice. The government was given an extensive period of time to produce rolling discovery and it failed to produce any

discovery during that period of time, which has caused delay in this matter and prejudice to Mr. Gerace and other in-custody defendants.

When this Court appropriately denied the government's motion for an exclusion of time, it did not invite the government to file a new motion after the hard drives were provided, and there is no reasonable interpretation of that status conference that suggested such a motion would be appropriate.

Nonetheless, the government filed this motion, which engages in the prohibited practice a losing party attempting to plug the gaps of a lost motion with additional matters, and it appears that there is no real basis to justify the motion, but the government likely saw no downside as it expected the motion itself to stop the speedy trial clock regardless of the likelihood that it will be denied.

B.  The Government's Motion Fails to Address the Reason that its Original Motion for Exclusion of Time was Denied

In addition to completely avoiding any discussion of the reconsideration standard or the law of the case doctrine, the government's affidavit utterly fails to address the reasons that the exclusion of time was denied in the first instance.

On February 23, 2024, the Court issued an exclusion of time, believing that the government would engage in rolling discovery over the course of the next 90 days, and it would complete disclosure by May 23, 2024. The Court believed that at the June 3, 2024,

status conference, the parties would be able to project how much time would be needed for drafting pretrial motions.

Because the government failed to comply with its court-ordered discovery obligations, none of those objectives could be accomplished before the June 3, 2024, status conference.

Near the end of the government's affidavit, it misconstrues and oversimplifies the reason that its motion for an exclusion of time was denied. The government indicates that "the Court's basis for denying an exclusion of time between June 3, 2024, and June 27, 2024, was that the discoverable material in the case had not yet been provided consistent with the Court's February 23, 2024, order that discovery be produced by May 23, 2024." Dkt. # 123-1 at 12.

While that may be true, it was the impact of the delayed disclosure that was relevant to the analysis of whether an exclusion of time should be granted.

The issue clearly was that the government's delay and disregard for this Court's Order resulted in a continuance, because the parties would not only need to still receive discovery, but also would need additional time to review the discovery.

Furthermore, the parties are now engaged in litigation over a protective order that could have been resolved at any time following the filing of the Second Superseding Indictment. If the government intended to withhold discovery until a protective order

was in place, then it should have addressed the issue shortly after the February 23, 2024, status conference at the latest.

In the government's affidavit in support of its new motion for an exclusion of time briefly admits "that it could have sought to address the issue of a protective order sooner," but it provides no explanation for why it did not do so, and instead references that "it still did so before it had received hard drives capable of receiving the discovery from 3 of the 9 defendants." Dkt. # 121-1 at 7.

There is absolutely no reason that the government had to wait until hard drives were provided to broach the subject of the protective order. It should have been done months earlier, especially when considering this Court ordered rolling discovery disclosure to start following the status conference on February 23, 2024.[13]

In a recent unsworn memorandum in opposition to sanctions for its violation of this Court's discovery order, the government was more candid, acknowledging that "the government's delay in addressing the need for a protective order was due to an oversight—plain and simple." Dkt. # 142 at 3.

While the candor in the more recent submission is respectable, it is still unclear how the government could have simply forgotten about its interest in a protective order

---

[13] The government credits itself with emailing defense counsel to see if it would consent to the protective order in order to avoid "unnecessary" or "needless litigation, but had the government sent that email in January or February, the litigation could have been resolved months before the court-ordered discovery deadline.

if it had been attempting to follow the Court's directive to provide rolling discovery. The "oversight" was not a matter of days or weeks. The motion for a protective order was filed on June 10, 2024, 108 days after the February 23, 2024, status conference was held and *157 days* after the indictment was filed.

The affidavit in support of the new motion for an exclusion of time demonstrates exactly how much attention the government actually gave to the Court's rolling discovery requirement. Rather than substantively address it, the affidavit minimized the significance of the Court's directive for rolling discovery by referencing it only once, in a footnote. Dkt. # 123-1 at 5.

In the more recent, unsworn memorandum in opposition to sanctions for its violation of the Court's discovery order, the government addresses the decision not to provide rolling discovery with multiple explanations:

- "the government realized it was impractical to provide organized rolling discovery in a piecemeal fashion" (Dkt. # 142 at 2); or

- "The prosecutors exited the status conference that day with the intention of providing rolling discovery to the extent it was practicable [but] they also returned to the intensity of a complex trial" (Dkt. # 142 at 17); or

- "by the time the project was far enough along—it was too close to the discovery deadline to provide piecemeal disclosures on a rolling basis" (Dkt. # 142 at 18).

Despite the government's recent attempts to mitigate its disregard of this Court's discovery order and its proposal for a minimal sanction ("exclude the 12 days of speedy trial time that elapsed from May 23, 2024, until June 4, 2024, when discovery was produced and made available" Dkt. # 142 at 24), it has failed to detail why an FBI agent exclusively dedicated to discovery management, and a Litigation specialist, among other US Attorney support staff were unable to oversee efforts to timely produce discovery in the manner directed by this Court.

A hearing would provide clarity on this issue, which the government opposes.

Furthermore, the government's proposed sanction does not account for its efforts to file a new motion for an exclusion of time without substantively addressing any of the reasons for the Court's denial of the exclusion of time two days earlier, in a clear attempt to stop the clock through the pendency of the motion, with no regard to applicable law or pertinent factual issues that would have supported the motion.

The filing of the government's motion will theoretically accomplish the government's objective irrespective of the Court's decision on the motion, unless there is some factual review of the circumstances surrounding the both the discovery violation and the decision to bring this motion which puts those facts at issue.

Thus, the Court should order a hearing to resolve the government's motion in conjunction with a hearing on the defendant's motion for sanctions and subsequently determine which sanctions are appropriate.

C.  <u>A Hearing Should be Held to Address the Underlying Facts Relevant to the Government's Motion and the Government's Decision to File its Motion</u>

Just as the government failed to substantively acknowledge the rolling discovery requirement in is affidavit in support of this motion, the government also failed to detail any explanation for why it could not comply with the discovery deadline.

In its affidavit, the government starts its factual review on the evening of May 16, 2024, the week before the discovery deadline when the government alleges that it learned "that the necessary hard drive storage capacity for the disclosure of the discovery production in this case would be 3 Terabytes." Dkt. # 123-1 at 5-6. The government advised the defendants of the need for the hard drive four days later.

The government avoided addressing what had actually occurred prior to May 16, 2024, in the affidavit other than to generalize that it involved "nearly three-months of working with a dedicated FBI agent, support staff, and a Litigation Technology Specialist with the USAO-WDNY to collect, organize, bates-stamp, process, and review discoverable material." Dkt. # 123-1 at 5-6.

Given the more recent acknowledgements that the government overlooked the need for a protective order and was preoccupied by the "intensity of a complex trial," the affidavit's representation that there was nearly three months of work appears dubious and would be appropriately subject to fact-finding hearing even though the government opposes. Dkt. # 142 at 26-27.

Moreover, the government's claim that it worked for nearly three months to produce discovery appears to acknowledge that there were no efforts to prepare discovery prior to the February 23, 2024, status conference despite the fact that the second superseding indictment was filed over a months before that and a substantial amount of the discovery had been collected prior to the indictment, in some instances by several months.

The government also does not identify what efforts were made during the three-month period of time. Indeed, at a minimum, a dedicated FBI agent should have been able to estimate the size of the material for a hard drive based on a simple review of the larger digital items. There is no explanation for why it would have taken so long for a team of individuals to make a determination as to what size of hard drive may be necessary.

Thus, at this point, a hearing should be ordered to resolve the government's motion to exclude time by addressing the factual gaps in the content of the government's affidavit. Specifically, it is requested that the Court order a hearing addressing the following issues in order to appropriately resolve the government's motion:

- Why the government failed to produce any rolling discovery following the Court's Directive on February 23, 2024;

- Why the government waited until three days before the discovery deadline to request the defense provide a hard drive;

- Why the government failed to produce discovery prior to the May 23, 2024 deadline;

- Why the government waited until May 29, 2024, to present a protective order to defense counsel; and

- Any other issue that this Court deems appropriate.

D. <u>After a Hearing, this Court Should Consider Sanctions</u>

Because the filing of the government's motion was clearly intended to circumvent the decision to deny an exclusion of time in the interest of justice, the Court should conduct factual review of the circumstances that warranted denial of the government's motion in the first instance.

After a hearing, if the facts leave the Court with a record that supports the government was negligent in its handling of discovery disclosure and merely filed this motion as a means to avoid consequence for its mishandling of disclosure, then the Court should refuse to permit the pendency of this motion to have stopped the Speedy Trial clock, and furthermore, it should consider whether additional sanctions are appropriate.

## V.   CONCLUSION

For all of the reasons set forth above, Mr. Gerace respectfully requests that a hearing be ordered to address the factual issues pertaining to the delay in discovery disclosure and related issues; and that the government's Motion for an Exclusion of Time be denied and sanctions be imposed.

Dated: June 20, 2024

/s/ Mark A. Foti____
Mark A. Foti, Esq.