IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

-vs-

PETER GERACE, JR.,

Defendant.

_____

## MEMORANDUM IN OPPOSITION TO THE PROTECTIVE ORDER PROPOSED IN THE GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

Docket No. 23-CR-99

Respectfully submitted on June 26, 2024, by:

Mark A. Foti, Esq.
The Foti Law Firm, P.C.
16 West Main Street, Suite 100
Rochester, New York 14614
Phone: (585) 461-1999
Fax: (585) 491-6512
E-mail: mark@fotilaw.com

Defendant Peter Gerace, Jr., by and through counsel, Mark A. Foti, Esq., provides the following memorandum in response to the government motion for a protective order. The memorandum presents opposition to the government's proposed protective order (Exhibit A) and presents reasons that the defendant's proposed protective order (Exhibit B) is far more appropriate.

The Table of Contents is as follows:

1.   Introduction ...................................................................................................... 3

2.   The Government's Proposed Protective Order Seeks to Shield Information from the Public and to Secure Improper Strategic Advantages over the Defense ........... 5

3.   The Government Seeks to Position Itself as the Sole Gatekeeper as to What Information Is Available to the Public ......................................................... 6

4.   The Government Proposed a Protective Order That Attempts to Accomplish Strategic Objectives Rather Than Provide Protection for Specific Material .......... 11

        The Government Seeks Authority to Enforce Its Interpretation of NY Ethical Rules .......................................................................................... 11

        The Government Seeks a Protective Order to Improperly Gain Knowledge of Defense Strategy and Defense Engagement of Investigators and/or Experts ........................................................................................... 13

        The Inclusion of Paragraph 17 Is Wholly Inappropriate and Is Clearly an Attempt to Get Impermissible Access to Protected Defense Strategy and Attorney Work Product .................................................................... 14

5.   The Government Request for a Protective Order Should be Denied in Favor of the Defense's Proposed Protective Order ....................................................... 16

1.   **INTRODUCTION**

Under the terms of Rule 16(d), good cause provides the basis to enter a protective order restricting discovery. Fed. R. Crim. P. 16(d)(1); *see United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008). "[T]he burden is upon the party seeking non-disclosure or a protective order to show good cause." *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981).

The government has brought a motion for a blanket protective order. Dkt. # 129. That motion was initially submitted based upon an *ex parte* affidavit, but this Court has directed the government to "either publicly file a redacted version of the Affidavit, with the defendants' reserving their right to challenge the propriety of those redactions, or withdraw the *ex parte* Affidavit in lieu of a publicly filed submission" by June 28, 2024. Dkt. # 152.[1]

Despite its claims to the contrary, the government is not proposing or advocating for a protective order that is primarily intended to protect witnesses. The government is seeking an order that attempts to improperly secure a strategic advantage over the defense.

---

[1] The government submitted the affidavit *ex parte* under the guise that the government needed to present "factual background" to explain the need for a protective order. Except, the week before the government submitted its motion, the defense had already agreed to the issuance of a protective order and only disputed the blanket inclusion of items that do not invoke a privacy interest and specific provisions that were inappropriate or superfluous. In other words, the dispute relates to the appropriateness of the proposed protective order's content, not whether one should be imposed.

This submission discusses why, in this case, "factual background" and purported concerns for witness safety are merely a smokescreen for the true objectives of the government's proposed protective order to: (1) limit dissemination of information to the public and/or third parties; (2) broaden and expand options for the government to attack defense counsel; and (3) provide the government with insight into defense strategy that the government is not legally entitled to.

In regard to the determination as to which provisions are appropriate for a protective order, the defense discusses the government's proposed protective order and the reasons that the defense made redactions and amendments in its proposed protective order. Both proposals are attached as exhibits.

Exhibit A is a copy of the government's proposed protective order (original filed at Docket Entry 129-1) with numbering in the left margin, next to each provision in order to identify examples of superfluous and inappropriate paragraphs.

Exhibit B is a copy of the defense's proposed protective order.

The proposed protective order presented by the defense (Exhibit B) would accomplish any appropriate objective of the protective order without providing the government with improper strategic advantages, as discussed infra.

2.    **THE GOVERNMENT'S PROPOSED PROTECTIVE ORDER SEEKS TO SHIELD INFORMATION FROM THE PUBLIC AND TO SECURE IMPROPER STRATEGIC ADVANTAGES OVER THE DEFENSE**

The government publicly acknowledged that its *ex parte* affidavit contained what the government described as "factual background." Dkt. 138 at 3. Despite the likelihood that the government's *ex parte* submission attempted to saddle the defendants with inflammatory allegations and dubious claims that a protective order is necessary to protect witnesses.

But if the government was truly concerned that disclosure implicated witness safety, it would have prioritized efforts to obtain a protective order after the filing of an indictment and not waited until 157 days later to make the motion.

The government recently downplayed this delay as an "oversight" (Dkt. # 142 at 3), which, if true, would reveal that the need for a protective order was apparently so insignificant that it was easily overlooked by the government for over *five months*, until well after the deadline to finish discovery disclosure had already passed.

Even now, the government does not propose limiting the access of discovery to the defendants. The government's proposed protective order instead seeks to limit information from being provided to the public, akin to a gag order, in addition to other improper strategic objectives.

Specifically, the government proposes a protective order that seeks to accomplish three strategic objectives: (1) limit dissemination of information to the public and/or

"third parties"; (2) broaden and expand options for the government to attack defense counsel; and (3) provide insight into defense strategy that the government is not legally entitled to.[2]

The defense discusses these objectives in turn.

### 3. THE GOVERNMENT SEEKS TO POSITION ITSELF AS THE SOLE GATEKEEPER AS TO WHAT INFORMATION IS AVAILABLE TO THE PUBLIC

After the witness Crystal Quinn died, the government faced a number of bad headlines. Specifically, the mother of Ms. Quinn placed the blame for her daughter's death on the government in the Buffalo News and in affidavits provided to former counsel, Steven Cohen.

> "In my heart, I cannot believe she would commit suicide, but I know that is a possibility," said Sharon Quinn, who works as a clerk with the Depew Police. "Crystal was under tremendous pressure, extreme pressure from the FBI to testify. *They told her they would put her in prison if she didn't testify against Peter*. She was so scared that when somebody would knock on our front door, she would run out our back door and hide somewhere."

> Dan Herbeck, *Witness who died was under 'extreme pressure' to testify against strip club owner, her mom says*, Aug. 20, 2023, The Buffalo News (available at https://tinyurl.com/BN082023) (emphasis added).

---

[2] As discussed infra, the defense proposed amendments to the government's proposed protective order which would have clarified, but generally agreed to, the restrictions on public disclosure, while eliminating those provisions that are clearly intended to obtain an improper strategic advantage (Exhibit B). After the defense proposed the amendments, the government ceased any further discussion of the protective order and filed its motion six days later.

In the Second Superseding Indictment, the government advances allegations that the mother of Ms. Quinn had her affidavits altered by "Gerace Attorney 1," (Dkt. # 24 at 25-26), but the government has conveniently and selectively ignored that the mother of Ms. Quinn spoke to The Buffalo News about her opinions as well.

The government was clearly concerned about public perception of the witness death. Within weeks of the article featuring quotes from Ms. Quinn's mother accusing the government of "extreme pressure," and coercion with threats of prison, the government moved for unprecedented relief of intradistrict transfer. Case no 19-vr-227, Dkt. # 619.

The Buffalo News, which often tempers its criticism of the US Attorney's Office, provided a public editorial, which addressed, among other things, attempts by the government to cast blame on defense counsel for information that has been disseminated in this case.

> More than that, though, we thank [the government] for the stories, the vast majority of which were based on government court filings.
>
> "This is no ordinary case," they wrote. "Rather, the overwhelming media coverage – exacerbated by defense attorneys' and anonymous sources' statements to the media – the attendant threats and intimidation of government witnesses often following those news stories, concerns for the privacy rights and dignity of victims, and the challenges caused by selecting a jury in the Buffalo area, all overwhelmingly compel the conclusion that this is a once-in-a-generation circumstance. The integrity of the judicial process and the prompt administration of justice support a transfer of this case to Rochester."

"... exacerbated by defense attorneys' and anonymous sources' statements to the media ...?" The statement is true ... in a way, if you squint at it. That is to say, if by "exacerbated" the prosecutors mean that defense lawyers and anonymous sources made up a smidgen of that coverage, compared to the deluge of information mined from the government's public filings, well ... maybe they have a point.

Here's how the lawyer for one of the defendants more accurately put it:

"The fact is the government continues to make bombastic accusations in its public court filings, which the U.S. attorney and her subordinates know will be read by the public," said Robert C. Singer, who represents Joseph Bongiovanni. "Do federal prosecutors honestly believe that the media will not – or should not – report on these filings?"

We'll answer for the prosecutors: Of course they don't. What they're asking is for the judge to protect the trial – assuming the trial needs protection – from the predictable consequence of their own actions.

Editorial Board, *Thanks for the compliment, feds – and the stories*, Sept. 12, 2023, The Buffalo News (available at https://tinyurl.com/BN091223).

The District Court denied the government's motion for intradistrict transfer. Case no 19-cr-227, Dkt. # 663.

But while the government's discomfort with news headlines did not result in intradistrict transfer as it had hoped, the investigation in this case (*Gogolack et al*) provided the government with a mechanism to present a public rebuttal to allegations that the government was responsible for the witness's death.

Consistent with the points made in The Buffalo News editorial, the government repeatedly used open court appearances and public filings to disseminate curated allegations, starting in September 2023. *See e.g.,* Dan Herbeck, *Prosecutors say Wellsville man tampered with government witnesses*, Sept. 14, 2023, The Buffalo News (available at https://tinyurl.com/BN091423); see also Patrick Lakamp, *Pharaoh's witness overdosed on enough fentanyl to kill hundreds*, Nov. 3, 2023, The Buffalo News (available at https://tinyurl.com/BN110323).

The information provided to the courts and the public could not be tested by the adversarial process, as the defendants had not been provided discovery and could not rebut or clarify the record. This includes the 58-page Second Superseding Indictment, which contains demonstratively misleading information. The government waited 152 days after the filing of that indictment to make discovery available to the defendants, leaving several months for the indictment's allegations to permeate the public perception of this case before the defense could even start to review the majority of discovery.

Now the government presents claims that a protective order should be issued preventing the dissemination of any and all discovery to the public or any third party.

This concern seems problematic given that the government has a history of pushing allegations into the media, and then attempts to cast blame on the defense for public coverage of this case. It is also concerning that the government has made comments about the purported evidence in this case and wants a protective order to

prevent any context given to those allegations the government has advanced in the public forum.

In many respects, the government is seeking what is tantamount to a gag order, a motion that the government already made in another prosecution of Mr. Gerace. Case No. 19-cr-227, Dkt. # 543. That motion was denied. Case No. 19-cr-227, Dkt. # 652.

However, despite those concerns, the defense is generally not opposed to a protective order that prevents the dissemination of discovery and/or information to the public to the extent that it relates to items that there is an actual privacy interest in protecting, and so long as it does not hinder the defense's ability to interview witnesses and prepare a defense.

In regard to items that actually require a privacy interest, the government has turned over 3 terabytes of material and 30,000 pages of bate-stamped material, but when it proposed a protective order in its May 29, 2024, email, the government merely stated that "the discovery includes cell phone extractions and other information that we believe should be protected and should not be distributed unnecessarily to third parties."

If the government is actually concerned about the dissemination of specific items that require protection, as opposed to a blanket restriction on any and all discovery, tantamount to a gag order, then the government could provide a list of specific items that should be governed by a protective order, and the defense would likely agree as long as

the list is reasonable.[3] When the defense proposed this effort to the government, the government chose to file its motion for a protective order instead of attempting to identify any material that actually requires protection.

If a protective order is issued, it should only govern material that requires protection, and any attempt by the government for a blanket protective order should be rejected by this Court.

**4.    THE GOVERNMENT PROPOSED A PROTECTIVE ORDER THAT ATTEMPTS TO ACCOMPLISH STRATEGIC OBJECTIVES RATHER THAN PROVIDE PROTECTION FOR SPECIFIC MATERIAL**

In addition to an attempt to advocate for a blanket protective order, the government seeks to improperly accomplish multiple strategic objectives that are totally inappropriate, including attempts to broaden and expand options for the government to attack defense counsel and gain insight into defense strategy that the government is not legally entitled to.

The Government Seeks Authority to Enforce Its Interpretation of NY Ethical Rules

In regard to attempts to broaden and expand options for the government to attack defense counsel, the government's proposed protective order attempts to broaden the government's ability to prosecute defendants and defense counsel for conduct which is

---

[3] For example, the defense has already indicated to the government that it would agree to cell phones, which are the only items the government referenced in its email to defense proposing a protective order.

prohibited by state ethical rules and would be subject to sanctions elsewhere if legitimately violated.

For example, the government proposes two paragraphs prohibiting a defendant, counsel, or agent from contacting a witness or "suspected witness" represented by counsel, or a co-defendant represented by counsel. (Exhibit A, ¶13 & ¶14).

Obviously, there are rules preventing direct communication by counsel and his agents with individuals who are knowingly represented by counsel without consent, but violations of those rules are subject to their own set of consequences.[4]

Clearly, if any defense counsel were to violate restrictions related to who they can communicate with, there may be consequences for such conduct, but it is not appropriately subject to a prosecution under the provisions of this protective order with input from the government's trial team.

That is even more clear, regarding two proposed paragraphs that actually incorporate identified rules contained within the New York Rules of Professional Conduct (Exhibit A, ¶15 & ¶16).

---

[4] Consent to communicate with co-defendants or witnesses may, in some instances, be provided by attorneys in certain limited circumstances, including within specific terms of a Joint Defense Agreement if one is executed.

The NY ethical rules speak for themselves. Obviously, all counsel maintain an obligation to follow all applicable ethical rules, but if anyone fails to do so, the violation of NY ethical rules have their own penalties and are prosecuted by an appropriate agency.

If the government feels there is a violation of a rule, they can refer the alleged conduct to the grievance committee and allow the appropriate agency to review and determine the outcome of the alleged conduct.

There is no reason to have those rules incorporated into this protective order and allow the government to provide its own interpretation of those state rules and prosecute accordingly. This US Attorney's Office has demonstrated a practice of attacking defense counsel and alleging violations of ethical rules where none exist. That should provide additional reason to deny the government's inappropriate request to include these rules within a Court-issued protective order.

<u>The Government Seeks a Protective Order to Improperly Gain Knowledge of Defense Strategy and Defense Engagement of Investigators and/or Experts</u>

Upon information and belief, even before the June 3, 2024, conference, one of the co-defendants raised an objection to the government's proposed provision that a member of a motorcycle club may serve as a defendant or counsel's agent (Exhibit A, ¶3). In discussing this provision, one of the co-defendant's counsel highlighted that the provision itself seeks to inappropriately govern defense counsel's ability to make

decisions over how to prepare its defense regardless of the substance of the proposed condition.

If the provision was actually intended to prevent members of the Outlaws from reviewing discovery, then the proposed provision could have been drafted accordingly.[5] However, as written, the proposed provision merely attempts to control decisions unrelated to discovery disclosure.

While this provision was not one that I originally identified as concerning, upon consideration, I agree that the paragraph is inappropriate for reasons described by counsel for co-defendants. This provision has the makings of a trap. The government does not even propose language suggesting "*known* members or associates." The government has never provided defense counsel with a list of all known members or associates of each of the motorcycle clubs, and the provision should be removed.

<u>The Inclusion of Paragraph 17 Is Wholly Inappropriate and Is Clearly an Attempt to Get Impermissible Access to Protected Defense Strategy and Attorney Work Product</u>

At the very end of the proposed protective order, the government attempted to sneak in a provision that would require "that counsel for the defendants shall ensure compliance with this Order by each member of the defense team and provide a

---

[5] That is not to say that such a provision would not present its own set of issues. The government has built a narrative that weaves in members and events associated with the identified motorcycle clubs. As such, members of those clubs may necessarily be witnesses who can provide relevant factual information. The attorneys should be permitted to conduct interviews of fact-witnesses that may include questions developed based on discovery review.

certification to the U.S. Attorney's Office listing the name of each person on the defense team who has been permitted to review the materials." (Exhibit A, ¶17).

This is utterly improper.

When first responders, including law enforcement, responded to 911 call reporting Ms. Quinn's death, police reported "no signs of foul play." Dan Herbeck, *Witness who died was under 'extreme pressure' to testify against strip club owner, her mom says*, Aug. 20, 2023, The Buffalo News (available at https://tinyurl.com/BN082023).

The government made public arguments anchoring its claim that this case involves a homicide to the purported results of the toxicology report. Patrick Lakamp, *Pharaoh's witness overdosed on enough fentanyl to kill hundreds*, Nov. 3, 2023, the Buffalo News (available at https://tinyurl.com/BN110323).

Defense counsel may find it necessary to engage expert witnesses to review discovery and provide an expert opinion related to the toxicology report(s).

There are also a substantial number of cellular extractions and call records, and defense counsel may find it necessary to engage digital forensic experts to review discovery and provide expert insight.

The Government is not entitled to know who the defense has engaged or what strategy it is considering.

If this provision were granted, the defense would be unable to prepare a defense without giving the government insight into defense strategy and defense investigative steps that the government is not entitled to.

Paragraph 17 is totally inappropriate, and it must not be included in any protective order of this Court.

5.   THE GOVERNMENT REQUEST FOR A PROTECTIVE ORDER SHOULD BE DENIED IN FAVOR OF THE DEFENSE'S PROPOSED PROTECTIVE ORDER

For all of the reasons set forth above, the government has presented a blanket protective order that includes provisions that are both superfluous and inappropriate.

It is respectfully requested that the government's motion for a protective order be denied, the current restriction limiting discovery to "Attorney's Eye's Only" be vacated, and the defense's proposed protective order be instituted upon agreement to an Addendum identifying items that actually require protection.

Dated: June 26, 2024

/s/ Mark A. Foti
Mark A. Foti, Esq.