UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

vs.

SCOTT J. BARNES,

Defendant.

**AFFIRMATION**

Docket No. 1:23-CR-00099-LJV-JJM

---

STATE OF NEW YORK    }
COUNTY OF ERIE   } ss.:

David B. Cotter, an attorney at law duly licensed to practice before the United States District Court for the Western District of New York and I affirm the following to be true under penalty of perjury.

1. I represent Scott Barnes in the captioned matter and have since shortly after his December 7, 2023 arrest; as such, I am fully familiar with the facts and circumstances of his case.

2. Scott Barnes is charged with being a felon in possession of a stolen gun in violation of 18 USC 922(g)(1) and 922(j). He is indicted with eight other individuals each of whom are charged with conspiracy counts, either to obstruct justice, tamper with witnesses, witness retaliation, or narcotics distribution – Scott Barnes is not charged with any of those counts, nor are any of the other co-defendants charged with his gun counts.

3. Mr. Barnes faces a maximum period of imprisonment of 10 years; his guideline calculation is in the neighborhood of 30 months, and, as of the submission of this affidavit, he has already been incarcerated for nearly one-third of that time. By the time the present litigation over the potential of sanctions and/or the protective order is

completed and we get to motion stage, your affiant anticipates September will have ended (unless of course, some party appeals).

4. Mr. Barnes is not charged with any conspiracy; in fact, his is a "stand-alone" case, simple in its allegations and the prosecution of which could be concluded with a 1-2 day trial. Upon information and belief, none of the government's proof, as it relates to Mr. Barnes, applies to any of his co-defendants; the converse is true in that none of the evidence of the various charged conspiracies applies to Barnes.

5. Scott Barnes has been in custody for eight months. We are just now, seven months after the return of the indictment, dealing with discovery delay issues. The reasons for that delay, and his inclusion in this case, are the sole responsibility of the government.

6. The fact that Mr. Barnes has been in desperate need of proper medical care throughout his incarceration, and the fact that the government was fully aware of the nature and circumstances of his medical situation WHEN he was indicted yields the conclusion that including him in this indictment, seeking detention and then delaying the release of discovery, is cruel and inhumane.

7. Inasmuch as I am familiar with my client's case, I am not as familiar with the cases of his co-defendants. In the course of this representation, though, I have become aware of factual allegations regarding the government's conduct in this case, known to and to be made by my colleagues in their motions (to which I cannot personally attest) - to the extent that the factual allegations regarding the government's conduct, are applicable to Mr. Barnes, I ask the Court to incorporate those facts into consideration of this affidavit.

8. I make this affirmation in response to the Court's invitation to propose an appropriate sanction to punish the government's misconduct in this case.

9. As a matter of background, I remind the Court that Mr. Barnes was involved in a motorcycle accident in March 2023; he learned a couple of days later, when he lost feelings in his legs and feet, that he had broken his back in that accident. In mid-late March, 2023, Mr. Barnes had spinal surgery and a titanium rod was inserted. After that surgery, he rehabilitated and by late summer/early fall was able (or, nearly able) to return to work as a union electrician. However, he fell and bent the rod in his back, and, had to have a subsequent surgery to remove and replace the bent rod. Upon recollection and belief, that second surgery was on or about November 14, 2023. He was arrested December 7, 2023, three and a half weeks post-surgery.

10. He was originally charged, as a lone defendant, by a criminal complaint filed the same day as his arrest. His only charge in that complaint is 18 USC 922(g)(1); the stolen gun charge was added in the indictment.

11. The government moved for detention on or about December 12, 2023; Magistrate Schroeder initially Ordered release on conditions and the government appealed. During that extensive appeal argument, through argument and observing Barnes in the courtroom, the government became aware of Mr. Barnes' recent surgical history and physical difficulty – pain, sitting, standing, walking – the list could run on, but, the simple activities of daily living were and remain arduous.

12. The complaint against Barnes reveals that the location where he was arrested was under surveillance from at least November 6, 2023 – 30 days before his arrest. Between the beginning of the surveillance and his arrest, the government, apparently, learned of no other criminal conduct by Barnes. Between the date of the arrest and the return of the

indictment on January 5, 2024, the government apparently learned of no other additional criminal conduct by him.

13. The charging decision, made by the government, to include Barnes in the indictment – when he has no connection to any of the conspiracies alleged therein, can only have been motivated by punitive bad faith and does not nearly comport with the highest standards of fairness.

14. Clearly, given the years long investigation into co-Defendant Gerace, the fact that the location where Barnes was arrested had been under surveillance for more than a month, and, the government had been hotly investigating the death of Crystal Quinn for roughly five months after her death, by the time the government presented this case to the Grand Jury, it certainly knew Scott Barnes had nothing to do with any conspiracy, yet, he was included in this complex case.

15. At the arraignment on the indictment, several co-defendants were potentially subjected to the death penalty and entitled to learned counsel. Resolution of that issue delayed imposition of a discovery schedule until late February 2024, nearly two months after his arrest.

16. Although the government indicated that it would, and the Court stated that it wanted discovery produced "on a rolling basis," none was produced until early June, 2024, past the 90-day period granted by the Court[1].

17. Significantly – and, either not yet discovered in the voluminous 36,000 or so pages of discovery produced / hours and hours of drone surveillance / and numerous audio

---

[1] The government has alleged that significant discovery was produced to your affiant during the detention hearing process and appeal – that was a bunch of pictures of the clubhouse (to allege dangerousness and of other Outlaw chapters around the world to infer risk of flight– very little (other than bad photocopies of an alleged prior felony conviction) had to do with my client's charges.

recordings of jail calls – is the fact that although the government has alleged Barnes was in possession of a weapon, they have produced no scientific evidence (DNA or fingerprint analysis) related to the charges. That fact astounds me and amplifies the bad faith of charging him with the others in this case. The easy conclusion is the government has no intention of bringing him to a speedy trial, but to have him languish detained.

18. Barnes' incarceration has been particularly difficult. In addition to the pain attendant to major spinal surgery, he has not had any meaningful physical therapy[2]. He has not always had a mattrass and has had to sleep on a floor and a metal shelf; he did not have any post-surgery follow up appointment until April 18, 2024 – five months post-surgery. He was originally housed in Livingston County, but moved to Niagara County on March 3, 2024 for (ostensibly) better medical care; at the time of transition, he caught covid and was put in a medical Special Housing Unit for 40 days where he was confined to the cell for 23 hours and 45 minutes per day. In addition, at or around the time of transfer between facilities, he contracted MRSA, a potentially fatal staph bacteria – that was not addressed until the third week of April 2024. He has lost sensation in one of his feet and three of the toes are discolored and are now dark purple. More recently, he has developed a lump on his thyroid (incidentally, Scott's father died from thyroid cancer at the age of 50; Scott is currently 55 years old). My understanding is that a sonogram of his throat was conducted at NCHC, but no biopsy performed – notwithstanding that, Mr. Barnes was informed that the lump was benign. Your affiant saw Mr. Barnes on August 7, 2024 before filing this motion – there is a visible bulge on the left side of his throat.

---

[2] Upon information and belief, he had one or two physical therapy sessions while at NCHC, but, Barnes was told he was in too much pain for therapy to continue. No further sessions have been had.

19. In short, the circumstances of his incarceration have been and continue to be particularly painful and brutal.

20. This court has supervisory authority over the criminal prosecutions before it; that power ought to be exercised here and an appropriate remedy imposed.

21. When this case was originally indicted, the government coyly exposed several defendants to the death penalty, then tried to walk back that decision by telling the court that the way the indictment was actually written, they could not, in fact, seek the death penalty.

22. Notwithstanding the government's representations, the affected defendants wanted learned counsel appointed. Until the government affirmatively stated that it was not seeking death, that process consumed roughly six weeks of time.

23. After the death penalty issue was disposed, we got to the discovery schedule; at the end (or, within days before) of that 90- day period, was when the government then proposed an unnecessarily stringent protective order, several months after this Court ordered production without limitation. Defense protests issued. This court found bad faith and gross negligence in the prosecution of the case

24. It is now August, eight months after Barnes was arrested and the case is stalled through no fault[3] of his.

25. The various sanctions available to the court appear to be a) dismissal of the indictment, with or without prejudice; b) admonition of counsel; c) referral of counsel to admitting jurisdictions for disciplinary reasons; or d) exclusion of evidence due to late production. Your affiant suggests release from custody may also be available. In addition, the court

---

[3] Your affiant is aware that some of the STA time is excluded because of motion made on behalf of Barnes, but, at the time the motions were made, your affiant was uncertain whether Barnes would ever walk out of custody.

has the power to order a hearing so that the degree of the government's misconduct can be developed through a more complete record.

26. Given that Barnes' exposure, if found guilty, is to roughly 30 months imprisonment and the fact that he has brutally endured nearly one third of that time already, it makes no practical sense to allow this prosecution against him to continue.

27. In Barnes' case, this court should exercise its supervisory powers and recommend that the charges pending be dismissed with prejudice. In the alternative, the court should exclude any evidence the government seeks to introduce relating to possession of a weapon, or that the weapon was stolen. Notwithstanding either suggestion, above, this court should recommend Barnes' immediate release from custody, given that he has already been detained for eight months.

28. Your affiant also requests that Barnes join in the sanction relief requested by co-defendants.

Dated: August 7, 2024
Buffalo, New York

David B. Cotter