UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                               Plaintiff

v.                                             FILE NO.: 23-CR-99-LJV-JJM

HOWARD HINKLE,

                               Defendant
_____

**DEFENDANT HOWARD HINKLE'S PROPOSED APPROPRIATE SANCTIONS FOR GOVERNMENT'S VIOLATION OF COURT'S VOLUNTARY DISCOVERY ORDER BY MAY 23, 2024**

Dated:  August 7, 2024
         Hamburg, New York

                                      Respectfully submitted,

                                      *s/ Daniel J. Henry, Jr.*
                                      Daniel J. Henry, Jr., Esq.
                                      Frank Bogulski, Esq.
                                      Attorneys for *Howard Hinkle*
                                      16 Main Street
                                      Hamburg, New York 14075
                                      (716) 648-0510
                                      dhenry@villariniandhenry.com

To:     Hon. Magistrate Judge Jeremiah J. McCarthy
        United States District Court
        Western District Court
        2 Niagara Square
        Buffalo, New York 14202

        Nicholas T. Cooper, Esq
        Joseph M. Tripi, Esq.
        Casey L. Chalbeck, Esq.
        United States Attorney's Office
        Federal Centre
        138 Delaware Avenue
        Buffalo, New York 14202

# I.  ARGUMENT

We will not recite the background of the case in that the Court has outlined the relevant factors under "FINDINGS" in its Decision and Order dated July 29, 2024.  Dkt. #173.

## A.  GOVERNMENT'S HISTORY OF FAILING TO ABIDE BY ITS DISCLOSURE OBLIGATIONS

The Court on February 23, 2024, set a scheduling order in place directing the government to provide all voluntary discovery to the defense by May 23, 2024.  They failed to comply with that directive, claiming the absence of a protective order.  It was not until 6-days beyond the May 23, 2024, disclosure deadline, did the government on its own directive advised defense counsel that it was withholding the discovery until a "protective order is authorized by the Court".  (Foti Memorandum Dkt. # 136 at 5).  This was in direct violation of the Court's order to provide all voluntary discovery on or before May 23, 2024.

This is not the first time the government has failed to abide by its disclosure obligations – hence depriving defendants of their due process.

In *United States v. Parks,* 19-cr-87, Judge Vilardo cited a number of cases that "call into question the government's discovery practices in this District".  Dkt. # 972 at 3.  Judge Vilardo cited *United States v. Tyshawn Brown,* 19-CR-222-EAW and *United States v. Coleman,* 19-CR-221-RJA - stating "And there can be little doubt that both cases do exactly that: they demonstrate a fundamental misconception by prosecutors in the USAO-WDNY about what their discovery obligations are."

In addition, there is *United States v. Padua,* 20-CR-191-LJV and *United States v. Morgan,* 18-CR-108-EAW where the court found that the government violated its discovery

obligations.  Both cases "call into question the government's discovery practices in this District…" DKT. #972 at 5.

In *Padua*, like here, the government made late disclosure to the defense.  The government had the ability to access for more than a year Mr. Padua's own cell phone but neglected to do so and did not turn it over to the defense until just before the trial was scheduled to begin.  The same occurred here.  The Grand Jury returned a Second Superseding Indictment on January 5, 2024.  (Dkt. #24).  The initial Criminal Complaint filed against Mr. Hinkle was on October 4, 2023.  (Dkt. #1).  The government had all of its relevant evidence available to obtain a criminal complaint and subsequently obtain a Second Superseding Indictment but had more than enough time to marshal its discovery material to have it available to turn over to the defense on May 23, 2024.  In addition, the government specifically represented to the Court in its moving papers (Dkt. #123-1 at 5, paragraph 12) that they have a specific FBI agent and Litigation Technology Specialist with USAO-WDNY, together with support staff assigned to organizing/collecting, processing the discoverable material.  Hence, demonstrating that they had more than enough individuals to prepare and have the material available by May 23, 2024.  Like in *Padua*, the government delayed and was late in disclosing the materials to the defense.  The court in *Padua* precluded the government from using the materials – i.e. cell phone evidence – at trial.

In *Morgan,* the court found "that the government's mishandling of discovery, was self-evident and could not be reasonably disputed."  *Morgan* at 180.  The disclosure violations resulted in the dismissal of the indictment.

The *Brown, Coleman, Parks, Padua and Morgan* cases show a history on the part of the government for failing to comply with its disclosure obligations.  In the case at bar, there is a more egregious discovery obligation of failing to follow and comply with a direct court order.

4

## B. GOVERNMENT'S BAD FAITH AND GROSS NEGLIGENCE

In the case at bar, the Court has found the willful violation of its order constituting bad faith.  In addition, the Court has found that the government's oversight of a need for a protective order for almost three months was "not mere negligent, but grossly negligent".

What is troubling and raises this violation to the level of bad faith is the government's representation to the Court during the February 23, 2024, and July 22, 2024, Court appearances. The government, on February 23, 2024, when asked if it was "possible of doing rolling production during the 90-day period", responded "I certainly think so, Judge.  I think that there's material that is probably close to ready to go out at this point because we've obviously been working on it since the return of the indictment…. (Dkt. #173 at 3).  However, it came to be learned at the July 22, 2024, status conference that was not the case.  It was not until May 20, 2024, that the discovery material was made available to the government attorneys to distribute. Hence, the "rolling production" of discovery was never an option to the government during its February 23, 2024, representation to the Court. (**Exhibit A** at p.24).

It is the misrepresentation to the Court and the direct violation of the Court's order to produce discovery on or before May 23, 2024, that raises this conduct to bad faith and gross negligence.

## C.  RECOMMENDED SANCTIONS

As the Court stated in its Decision and Order (Dkt. #173 at 6) "Trial courts have broad discretion in ruling on procedural violations and fashioning appropriate remedies in both civil and criminal matters."  *United States v. Sachakov,* 812 F. Supp. 2d 198, 206 (E.D.N.Y. 2011).

In *Metropolitan Opera Association, Inc. v. Local 10 Hotel Employees,* 212 F.R.D. 178, 219-220 (S.D.N.Y. 2003) the court cited *Residential Funding Corporation v. DeGeorge Financial Corporation,* 306 F. 3d 9 (2d Cir. 2002) – The Court of Appeals recently reviewed some of the procedures set forth in Rule 37 for sanctioning discovery misconduct and emphasized that a court has "broad discretion in fashioning an appropriate sanction. *Id.* at 107. Courts have also noted Rule 37 sanctions may be applied both to penalize conduct that warrants sanctions and "to deter those who might be tempted to such conduct in the absence of such a deterrent".

The Court in *Metropolitan Opera Association, Inc.* went on to say that there are no specific requirements for the imposition of sanctions under Rule 37, rather the decision is left to the sound discretion of the trial court.  Courts, over time, have identified relevant considerations to assist in deciding whether discovery abuse warrants the entry of judgement, including "(a) willfulness or bad faith of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party.

### (1) Willfulness or bad faith

As demonstrated above and by the findings of this Court, the government's noncompliance with the Court's discovery order, its misrepresentations to the Court of its ability

to meet the Court's discovery order including "rolling production and its oversight concerning the protective order raises its conduct to bad faith and willfulness – gross negligence.

## (2) History of Noncompliance

The government's questionable discovery practice and failure to comply with its disclosure obligations in *Brown, Coleman, Parks, Padua and Morgan* shows a pattern/history of noncompliance by the government regarding its discovery obligations.  Judge Vilardo pointed this out in his Decision and Order in *Parks*.  Dkt. #972.

## (3) Effectiveness of Lesser Sanctions

Stern and stiff sanctions are necessary to impress upon the government that the Court's orders are not to be taken "lightly".  An appropriate sanction is necessary to deter such conduct in the future and make clear severe consequences will follow if violated.

## (4) Warning of Possible Sanctions

The government was on notice, based on what it faced in *Brown, Coleman, Parks, Padua and Morgan,* of what could happen if it fails to comply with its discovery obligations and the Courts' discovery orders.  It knew that failure to comply with the Court's May 23, 2024, disclosure deadline could result in Rule 16 sanctions at the discretion of the Court.

## (5) Client's Complicity

The responsibility and obligation of preparing and making available to the defense on or before the Court ordered discovery date falls on the government- i.e. the client in this case.  The

government failed to do this even though it represented to the Court on February 23, 2024, its capability to do rolling production since "… there's material that is probably close to ready to go out at this point because we've obviously been working on it since the return of the indictment." However, it was not until April 26, 2024, when the discovery materials were actually dropped off at the U.S. Attorney's Office in a hard drive which now had to be bate stamped. (**Exhibit A** at 22 and 23).  It took almost another month, according to the government's representation on July 22, 2024, that the materials were now available to be produced on May 20, 2024.  (**Exhibit A** at 24). This points out two things – (1) Rolling Production was not an option for government despite its misrepresentation to the Court, and (2) the government receiving the discovery hard drive on April 26, 2024 allowed them to know the size of the hard drive the defense would need to copy the materials – however, it was not until May 20, 2024, only three days shy of the May 23, 2024, discovery deadline, that the government advised the defense that a 3 terabyte hard drive would be required to handle the volume of materials.  This further supports the bad faith and gross negligent findings by the Court in its Decision and Order (Dkt. #173).


(6) Prejudice to the Defendants

JUSTICE DELAYED IS JUSTICE DENIED

In the case against Howard Hinkle, the tipping point has arrived wherein legal redress is available and appropriate.  This Court has expressed through its decision that the delays in timely sharing of discovery were deliberate and have impeded the progress of the judicial process.  To date, justice has been delayed and denied; however, this Court recognizes that relief is available through sanctions on the government and remedy is necessary to maintain the integrity of and faith in the judicial system. William E. Gladstone stated "Justice delayed is justice denied" to

remind everyone that delaying the judicial process is equally as detrimental as denying one

justice.  The purpose of timeliness for distribution of discovery is to ensure fair and equitable

outcomes.  As such, the delays by the government resulting in failure to meet timely discovery

deadlines had denied Mr. Hinkle justice to date.

The most appropriate remedy in this case would be to either dismiss the charges in their

entirety with prejudice or, at a minimum, preclude the government from presenting any evidence

that they failed to disclose by May 23, 2024.

PREJUDICE AGAINST HOWARD HINKLE

Various forms of prejudice may exist in court cases, and it is imperative that attorneys

and the Court ensure that prejudice does not exist when proceeding with a trial to maintain equity

and fairness when imparting justice.  According to Rule 16, the court, by order or local rule,

must set a time for the government to make its disclosures.  The time must be sufficient to

provide a fair opportunity for the defendant to review the government's evidence.  The recent

decision by this Court supports that prejudice exists against Howard Hinkle and as a result the

case should be dismissed in its entirety or evidence should be precluded from this case.

Mr. Hinkle was originally charged with possession of a firearm in furtherance of

distribution of marijuana.  In this district it is not traditionally customary for the government to

charge an individual with 924 (c) for a relatively small amount of marijuana.  Most cases where

924(c) is charged involve methamphetamine or cocaine.  At the inception of the marijuana case,

but before the witness tampering charges, the government alleged that Howard Hinkle should be

detained because of allegations that he was involved in witness tampering.  To support their

position for detention, the government used information collected from Crystal Quinn's cellular

phone which was not provided to Mr. Hinkle which precluded him from having the opportunity

9

to defend himself from the inception of this case.  Upon further examination of the timeline of

events in this case, it appears the government had been investigating this matter for a long time.

According to the order from Magistrate McCarthy, wherein he ordered the government to

provide discovery, even if on a rolling basis, the government failed to meet this order and as such

Howard Hinkle was prejudiced.

      Now that the requested delayed discovery has been provided, it appears that the messages

and phone records contained on the phone of Crystal Quinn that are potentially exculpatory

against Howard Hinkle.  According to the Wellsville Police Department's theory of the case, Ms.

Quinn died as the result of a drug overdose.  It is unclear as to the source of the drugs that

Crystal Quinn consumed leading to her untimely death and the delays by the government have

prevented Mr. Hinkle from investigating and defending himself as he agrees with the Wellsville

Police that Ms. Quinn died of a drug overdose.

      There are two forms of prejudice experienced by Howard Hinkle. First, Mr. Hinkle has

been ordered detained and remains incarcerated in Mayville at the Chautauqua County jail.

Howard has a very close family that includes his common law wife of over twenty-five (25)

years and a son.  He also has family members and friends in the Wellsville area.  As a result, he

has been denied the ability to freely associate with them while these discovery issues are

pending.  Mr. Hinkle lives in a rural area and takes care of animals and a garden in order to

provide supplemental food for his family.  He manages his home and property including

chopping wood to heat his home and supplement his income.  While he has been incarcerated,

Mr. Hinkle has been unable to support his family and has been deprived of their affection.  This

is objectively prejudicial.  Second, with respect to his ability to properly defend his case, the

government had the benefit of reviewing voluminous discovery and has been working on its

investigation for a long period of time, including prior to the decision to charge Mr. Hinkle.  At the inception of the marijuana case, the government clearly had access to Ms. Quinn's phone, but failed to turn over the entire contents of the phone including communications with other individuals and additional evidence that had the potential to exculpate Mr. Hinkle from this case. At a minimum this discovery creates a dispute in fact as to the allegations against him and he has been prejudiced by the delays.  It is clearly more productive to conduct an investigation earlier than later.  In this instance, Mr. Hinkle's ability to investigate the veracity of the claims against him has been impeded by the government's failure to provide timely discovery.

The delay in discovery and use of exculpatory evidence against Howard Hinkle clearly supports the prejudice against him and the charges should be dismissed with prejudice, or at a minimum the government should be precluded from using any evidence provided in the late discovery.

In *Agiwal v. Mid Island Mortgage,* 555 F. 3d 298, 302-303 (2d Cir 2009) the court recited the factors listed above that may be useful in evaluating a district court's exercise of discretion to dismiss an action under Rule 37.  The Court, however, went further and stated, "we note that dismissal pursuant to Rule 37 is appropriate 'not merely to penalize those whose conduct may be deemed to warrant such sanction, but to deter those who might be tempted to such conduct in the absence of such a sanction'".  *See National Hockey League v. Metro Hockey Club, Inc.* 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976).

The same applies to the government in this case.  The sanction imposed by this Court must have the strength and impact to deter the government from violating court discovery orders and disclosure obligations as committed in this case as well as in *Brown, Coleman, Parks, Padua and Morgan.*  It must impose deterrence to end the past history of disclosure problems.  *See*

*Williams v. Kane,* 107 F.R.D. 632, 634 (E.D.N.Y. 1985) – Dismissal with prejudice, pursuant to Fed. R. Civ. P. 37 requires a finding that the party whose suit is dismissed is in some sense at fault.  "Fault" need not be limited to "bad faith" and "willfulness" but may also include gross negligence.  *Cine Forty-Second Street Theatre Corp. v. Allied Artist Pictures Corp.* 602 F. 2d 1062, 1067 (2d Cir. 1979).  In the case at bar, this Court not only found bad faith on the part of the government, but also gross negligence.  (Dkt. 173 at 4, 5).  Although the above cited cases involve civil cases and Fed. R. Civil p. 37, the same principles apply here in the criminal arena. *See* Dkt. #173 at 6 – "trial courts have broad discretion in ruling on procedural violations and fashioning appropriate remedies in both civil and criminal matters.  *Sachakov, supra. at 206.*

The appropriate sanction in this case is dismissal with prejudice.  As stated above, the bad faith and gross negligence on the part of the government in failing to handle its discovery obligations, together with its past history of similar violations warrant this severe sanction.  In addition, it will serve as a deterrence factor for any temptation to violate or ignore the discovery requirements and direct court orders. However, in the alternative, if the Court deems dismissal with prejudice inappropriate, we ask that the Court, pursuant to Rule 16, preclude the government from introducing any and all evidence that should have been produced on May 23, 2024, pursuant to the Court's Order. This would also include any evidence associated with the materials/evidence that was to be disclosed on or before the May 23, 2024, deadline.

**CONCLUSION**

For the reasons set forth above, Defendant Hinkle respectfully asks the Court to impose the sanction of Dismissal of the Indictment with prejudice, or in the alternative, preclusion of introducing at trial all evidence/materials that were to be disclosed on or before the May 23, 2024, deadline, for the government's violation of the Court's Discovery Order.

In addition, Defendant Hinkle joins in the responses that have been filed by the other co-defendants' counsels which are applicable to him.

s/ *Daniel J. Henry, Jr.*
Daniel J; Henry, Jr., Esq.

s/ *Frank Bogulski, Esq.*
Frank Bogulski, Esq.