EXHIBIT   A

12:14:46

1              UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF NEW YORK

3
**CORRECTED TITLE PAGE***
4    - - - - - - - - - - - - - X
     UNITED STATES OF AMERICA    )     23CR99
5                                )
     vs.
6                                    Buffalo, New York
     SIMON GOGOLACK, PETER
7    GERACE, JR.,JOHN THOMAS ERMIN,
     MICHAEL RONCONE, FRANK KNIGHT,
8    HOWARD HINKLE, JR., CORTNIE
     BARBER, BERNARD BYRD, III,
9    SCOTT BARNES,              )    July 22, 2024
              Defendant.            2:00 p.m.
10   - - - - - - - - - - - - - X
     **MOTION ARGUMENT**
11   **Transcribed from an Electronic Recording Device**

12              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
13              UNITED STATES MAGISTRATE JUDGE

14   **FOR PLAINTIFF:**   **NICHOLAS COOPER, ESQ.**
                     **CASEY L. CHALBECK, ESQ.**
15                   **JOSEPH M. TRIPI, ESQ.**
                     Assistant United States Attorneys
16                   138 Delaware Avenue
                     Buffalo, New York 14202
17

18   **FOR DEFENDANT:**   **JEFFREY T. BAGLEY, ESQ.**
                     **JOHN JOSEPH MORRISSEY, ESQ.**
19                   Assistant Federal Public Defenders
                     300 Pearl Street, Suite 200
20                   Buffalo, New York, 14202
                     **(For Defendant S. Gogolack)**
21
                     **MARK A. FOTI, ESQ.**
22                   16 W. Main Street, Suite 100
                     Rochester, New York 14614
23                   **(For Defendant P. Gerace, Jr.)**

24   **COURT REPORTER:  Karen J. Clark, Official Court Reporter**
                     **Karenclark1013@AOL.com**
25                   **100 State Street**
                     **Rochester, New York 14614**

```
 1   FOR DEFENDANT:    GEORGE V.C. MUSCATO, ESQ.
                       Muscato, DiMillo & Vona, LLP
 2                     107 East Avenue
                       Lockport, New York 14094
 3                     (For Defendant J. Ermin)

 4                     PAUL G. DELL, ESQ.
                       Law Office of Paul G. Dell
 5                     70 Niagara Street
                       Buffalo, New York 14202
 6                     (For M. Roncone)

 7                     CLAIR A. MONTROY, III
                       97 Lake Street
 8                     Hamburg, New York 14075
                       (For F. Knight)
 9

10                     FRANK M. BOGULSKI, ESQ.
                       135 Delaware Avenue, Suite 2
11                     Buffalo, New York 14202
                            -and-
12                     DANIEL J. HENRY, JR., ESQ.
                       Villarini & Henry, LLP
13                     16 Main Street
                       Hamburg, New York 14075
14                     (For H. Hinkle, Jr.)

15
                       BRIAN JAMES HUTCHISON, ESQ.
16                     14 W. Main Street
                       Lockport, New York 14094
17                     (For Cortnie Barber)

18                     MICHAEL J. STACHOWSKI, ESQ.
                       2025 Clinton Street
19                     Buffalo, New York 14206
                       (For B. Byrd, III)
20

21                     DAVID B. COTTER, ESQ.
                       380 Cleveland Drive
22                     Buffalo, New York 14215
                       (For Scott Barnes)
23

24

25
```

```
 1                      USA V. GOGOLACK, ET AL

 2                    P R O C E E D I N G
               *                *                *
 3

 4

 5              THE CLERK:  On the record in criminal

 6   proceeding 23CR99, United States of America versus

 7   Gogolack, et al for oral argument.  Present in the

 8   courtroom are Assistant United States Attorneys Nicholas

 9   Cooper, Casey Chalbeck and Joseph Tripi.

10          Defendant Simon Gogolack with Assistant Federal

11   Public Defenders Jeffrey Bagley and John Morrisey;

12   attorney Mark Foti for defendant Peter Gerace; defendant

13   John Ermin with attorney George Muscato; defendant

14   Michael Roncone with attorney Paul Dell; attorney Clair

15   Montroy for Frank Knight; defendant Howard Hinkle, Jr.,

16   with attorney Frank Bogulski and Daniel Henry; attorney

17   Brian Hutchinson for defendant Cortnie Barber; defendant

18   Bernard Byrd with attorney Michael Stachowski; and

19   defendant Scott Barnes with attorney David Cotter.

20          The Honorable Jeremiah J. McCarthy presiding.

21              MAGISTRATE JUDGE MCCARTHY:  Good afternoon,

22   everyone.

23              MR. COOPER:  Good afternoon, Judge.

24              THE COURT:  We have a number of motions

25   before me.  I'll list them in chronological order.
```

1                    USA V. GOGOLACK, ET AL

2    First, 123 is the government's motion to exclude Speedy

3    Trial Act time; 129 is the government's motion for

4    protective order; 131 is Defendant Gogolack's motion for

5    sanctions and a hearing; 156 -- or, I think, 132 is also

6    a sanctions motion; and 156 is the government's amended

7    motion for protective order.  I've reviewed all of the

8    papers and I would like to talk, first, about the

9    defendant's motions for a hearing and sanctions.  And

10   I'll hear from whomever wishes to be heard.  And you can

11   stay at counsel table or you can come to the podium,

12   whatever you prefer.

13             MR. BAGLEY:  Judge, Jeff Bagley.  Judge,

14   I'll go first for Mr. Gogolack.  Jeff Bagley for Simon

15   Gogolack.  Judge, we are asking, as the Court is aware,

16   just to set the table a little bit, and I know the Court

17   is, I'm sure, prepared for the argument today, but

18   discovery was due on a certain date and it wasn't

19   produced on that date, Judge.  And at that status

20   conference, soon thereafter, the Court permitted the

21   parties to file motions that would outline the sanctions

22   that may or may not be appropriate.  So, Judge, what

23   we're requesting, as the Court is aware, is a hearing in

24   order to determine what sanctions are appropriate,

25   Judge.  I think, at that hearing -- we lay out in our

```
 1                    USA V. GOGOLACK, ET AL
 2   paperwork the types of things that we believe would
 3   be -- would come out at that hearing.  And based on
 4   that, Judge, we could then be in a better position to
 5   seek the appropriate sanctions.
 6             So, Judge, I'm happy to answer any questions
 7   you have on that, but, essentially, that is, I think,
 8   the best course of action.  We're not in a position
 9   right now to be able to -- to be able to seek specific
10   sanctions.  Rule 16 gives the Court pretty wide
11   discretion in terms of the types of sanctions that may
12   be appropriate.  And, Judge, I think if you look at the
13   Morgan case, there is precedent for, first, having a
14   hearing, and then determining what sanctions are
15   appropriate.
16             MAGISTRATE JUDGE MCCARTHY:  Do you think you
17   would find at a hearing some evidence of willfulness or
18   deliberateness?
19             MR. BAGLEY:  Judge, I guess that is what we
20   would explore, was it just negligence, was it a mistake,
21   was there good faith involved or not.  Those are the
22   types --
23             MAGISTRATE JUDGE MCCARTHY:  Well, based on
24   the government's response, I think it's pretty clear
25   that, at a minimum, it was a mistake.
```

1                 USA V. GOGOLACK, ET AL

2           MR. FOTI:  Right, Judge.  Obviously there

3     was some, there obviously must have been some mistake

4     that occurred because they had 90 days to produce

5     discovery and it wasn't produced in that time.  Now

6     whether or not there was more than that, there is no way

7     for us to know that without a hearing.

8           MAGISTRATE JUDGE MCCARTHY:  Anybody else

9     wish to be heard?

10          MR. FOTI:  Sorry, Judge.  There are only so

11    many mikes.

12          MAGISTRATE JUDGE MCCARTHY:  That's fine.

13          MR. FOTI:  Judge, I agree with the comments

14    that were just made.  Probably the most appropriate way

15    of resolving this and finding its way to a disposition

16    is to hold a hearing.  I think the government has at

17    least provided us enough information that it's easy to

18    identify how we could proceed with a hearing and how the

19    parameters of the hearing could be controlled in a way

20    that it's not going to require extensive judicial

21    resources to do so.  They identified in the prior

22    appearances, starting in February, I think one of the

23    prosecutors referred to an FBI agent that almost

24    exclusively is responsible for putting together the

25    discovery in this case.  That identifies an agent who

```
 1                    USA V. GOGOLACK, ET AL
 2    specifically could explain what was done, how it was
 3    done, why they were not able to meet this deadline.  I
 4    know the government, in their response to the motion for
 5    sanctions, there was a lot more candor provided than
 6    some of the prior kinds related to realities of being on
 7    trial and not ultimately being able to divide the time
 8    up among the prosecutors, but I don't know that that
 9    explanation is sufficient for purposes of not meeting
10    the requirements of this Court's order.  And I think
11    that is identified by the fact that there were other
12    prosecutors on the case and the explanation they really
13    don't know the case as well as us, so they had to wait
14    until we were off trial isn't really a realistic
15    solution to how you deal with discovery where you have
16    multiple defendants in custody.  I think what we need to
17    see is what the FBI agent has to say.  And the one thing
18    I'll say in terms of whether we'll find that it is
19    willful or not, I don't know that it will be determined
20    that this is more than negligence in that there will be
21    indicia of willfulness, but what I think the Court
22    should review and would be part of the hearing is that
23    there is evidence of when material was compiled and when
24    it was turned over to the trial team.  Some of that is
25    documented in an index file that was provided to the
```

```
 1                   USA V. GOGOLACK, ET AL
 2    defense as part of the discovery and there are dates
 3    contained in one of the columns of that file.  And the
 4    dates of when some of this discovery was turned over
 5    seems to match up with the conclusion of the Bongiovanni
 6    trial.  I think that is pretty significant if the
 7    process of discovery disclosure was essentially on hold
 8    until that trial was over.
 9              MAGISTRATE JUDGE MCCARTHY:  And what date
10    did the Bongiovanni trial end?
11              MR. COOPER:  Mid to late April, Judge.  I
12    don't know the date off the top of my head.  It would
13    have been the second or third week in April.
14              MAGISTRATE JUDGE MCCARTHY:  Okay.
15              MR. FOTI:  There is at least some indicia
16    from the index that there were efforts to compile the
17    material, but it wasn't turned over for purposes of
18    actually advancing it to defense counsel until around
19    the conclusion of that trial, which was pretty far
20    beyond when the deadline had initially been set back in
21    February.  I think a hearing is appropriate or the
22    government can call who they want to provide testimony
23    to explain what occurred.  But I think they made it
24    pretty clear, we probably can do this with one specific
25    witness because there is an FBI agent who had this job
```

USA V. GOGOLACK, ET AL

1

2    that was identified back in February, there was somebody

3    exclusively responsible for this, and he or she has been

4    referenced in submissions since then.  I don't think

5    it's a lot to say, let's just clear up what exactly

6    happened here so the sanction is based on, sort of,

7    facts as opposed to conclusory comments that are

8    peppered throughout the submissions at this point.

9                MAGISTRATE JUDGE MCCARTHY:  Okay.  Anybody

10   else wish to be heard on the defense side?

11               MR. COOPER:  Judge --

12               MAGISTRATE JUDGE MCCARTHY:  Did you switch

13   teams now?  I thought you --

14               MR. COOPER:  No, Judge.

15               MAGISTRATE JUDGE MCCARTHY:  Right now I'm

16   asking on the defense side and then I'll hear from you

17   or anyone else that wishes to be heard, Mr. Cooper, or

18   whoever wishes to be heard.

19               I know you said you don't think a hearing is

20   necessary, and why is that.

21               MR. TRIPI:  If I might just start and then

22   I'll turn it over to Mr. Cooper.  I think, obviously, I

23   prepared the filing responding to the motion for

24   sanctions.  You have that in front of you.  But I would

25   like to just step it back for a second to the

                    USA V. GOGOLACK, ET AL

30,000-foot view of things, and I would like to explain

it as dispassionately and factually as possible here.

All of this litigation that you're about to hear

argument about stems from our seeking of a protective

order.  We've acknowledged in our filing that we

probably should have gotten that process started sooner.

Okay?  I'll fall on the sword for that.  All right.  But

whether there is a basis for a hearing is a totally

other question.  And I think you should answer that in

the negative.  I think I've clearly laid out what we

were doing and when we were doing it.  But stepping back

again to that 30,000-foot view, all of this stems from

the question of whether or not a protective order, and

the protective order in the form that we've sought, is

appropriate.

            Judge, I've been a prosecutor for 20-plus

years, almost 17 of it I've been appearing in front of

your Honor.  I've handled some very serious RICO murder

cases, complex conspiracies that involved witness

tampering and all types of issues like that.

            However, this case stems from the case that

stands apart from all of the cases that I've had, either

before this Court or others in this courthouse, in terms

of 19CR227 and 23CR37.  The issues that were inherent in

USA V. GOGOLACK, ET AL

those cases with efforts to tamper with witnesses, to
obstruct justice or otherwise improperly influence
government witnesses and potential government witnesses,
and all of that culminated in this indictment charging
the orchestrated death of a federal witness.  Those
cases included efforts to thwart witness participation
even before Mr. Gerace was charged in 19CR227.  They
involved him suing two witnesses in state court.  The
government going and getting an injunction of a state
lawsuit, that appeal going up to the Second Circuit, and
the Second Circuit using language during oral argument
that was critical of Gerace's efforts while affirming
the injunction that was issued by Judge Sinatra.  And
then it flowed, once the case was charged, we learned
about Facebook threats to witnesses, witnesses who or a
witness in particular who was assaulted, and then we
learned about an attorney for Mr. Gerace reaching out
through an unwitting attorney trying to essentially
convince a witness not to cooperate with the government.
A witness who was knowingly represented by other
counsel.  It then led from there to threats by symbolism
of placing rats on driveways and vehicles at the
locations of not one but two potential witnesses or
their families' houses.  It continued with comments in

```
1              USA V. GOGOLACK, ET AL
2   the news denigrating potential witnesses and even
3   government counsel.  And it ended with the death of a
4   witness.  And all of this was happening as the trial
5   prosecutors here that you see were gearing up for a
6   trial, engaged in a trial, while we were simultaneously
7   investigating the very serious death of a witness,
8   something that courts -- obstruction of justice efforts,
9   the Courts in the Second Circuit and the Second Circuit
10  itself in LaFontaine have said are the biggest threat to
11  the integrity of court proceedings.  So having the
12  command of the facts of all of those matters, we
13  thoroughly investigated and in rapid succession charged
14  six of these defendants and we produced discovery
15  material in each of those individual's six cases.
16              Now, admittedly, there were three defendants
17  who got nothing.  But several of these defendants all
18  went through lengthy detention hearings akin to closer
19  to mini trials.  Several of them happened several times.
20  You had several hearings regarding Gogolack, and you
21  have a good handle on everything that he got.  But you
22  also were not privy to all of the disclosures made in
23  all of those other cases.  And we appeared here, and we
24  didn't articulate that clearly to your Honor, again,
25  while in the midst of separately and in itself a complex
```

```
 1                USA V. GOGOLACK, ET AL

 2   and highly contested trial involving Gerace's

 3   co-defendant that was severed.

 4          So that is the background, that is the

 5   context, that is what I would say at a hearing.  I am an

 6   officer of the court; that is what happened, Judge.

 7          And I don't disagree with the Court's

 8   comment that we could have raised a protective order

 9   more quickly.  But when the light bulb went on, it was

10   after we got the discovery produced.  That was a massive

11   undertaking by a number of people and we assigned people

12   to work on it while we were in trial in terms of FBI

13   agents and support personnel and other attorneys simply

14   couldn't get up to speed.  And then those attorneys went

15   out on paternity leave, okay?  So we assigned two others

16   on the docket, they both left the office for a period of

17   time.  There are rules about when you are allowed to

18   have that type of leave in the federal government.  And

19   so that is what we were dealing with.  I didn't include

20   that part in my filing, but I'm proffering that to you

21   now.  And so it fell back to the trial team.  And it

22   didn't make sense to try and get even more attorneys up

23   to speed because by the time we were able to get

24   together and marshall together, and it had been worked

25   on and it was in good shape, and through the course of
```

USA V. GOGOLACK, ET AL

1                    

2 all of that litigation, the need to seek out a

3 protective order fell off of our radar.  It shouldn't

4 have.  It should not have.  It did.  We're human.  But

5 we remedied it as quickly as we could.  We got the

6 discovery in their hands, you know.  They all have the

7 discovery now.  You've ran some speedy trial time.

8 We've asked you to run less, but you've run some speedy

9 trial time and in terms of the foul here, that is

10 appropriate.  We would like you to run less time and

11 calculate that time a little differently as we've put in

12 our papers, but we're ready to move forward with this

13 case.  And these hearings won't result in anything

14 different than what I've just proffered to your Honor.

15         And so that is my sort of opening statement

16 to you.  If Mr. Cooper has something he would like to

17 amplify, I'd like to turn it over to him now.

18         MAGISTRATE JUDGE MCCARTHY:  Okay.

19         MR. COOPER:  Judge, I do have a couple of

20 things to amplify.  I guess, first, the Court asked a

21 question of counsel for Defendant Gogolack.  I didn't

22 get a quote written down, but it was something like, do

23 you have any reason to believe this was willful and in

24 bad faith.  That was in sum and substance your question.

25 And, of course, there was not a definitive answer as to

```
 1                    USA V. GOGOLACK, ET AL
 2   whether that exists or not because it doesn't exist and
 3   counsel doesn't have it.  It wasn't in his papers, it
 4   wasn't in Defendant Gerace's papers.
 5               In 1998, the Second Circuit issued a
 6   decision, and this is in our brief, our docket number
 7   142, the case is United States v. Mathurin,
 8   M-a-t-h-u-r-i-n, it's 148 F. 3rd 68 at 69.  And that
 9   case held:  "A defendant may not rely on bald assertions
10   without specification of the factual basis.  The
11   district court is not required to have a hearing."
12   There has been no specification of a factual basis.
13   There has been no allegation that something occurred
14   that supports a bad-faith argument.  What they are
15   asking for is a fishing expedition and a side show to
16   turn this case away from what it is, which is an
17   indictment of nine defendants on varying, but incredibly
18   serious, charges.  That is what the defense is asking
19   for, a hearing that they can direct everyone's attention
20   to away from the indictment and the charges that stem
21   from it.
22               In reality, as Mr. Tripi said, what happened
23   here is we asked them about a protective order later
24   than we should and it caused them to get the discovery
25   12 days later than your Honor ordered.  By June 4th, the
```

1                USA V. GOGOLACK, ET AL

2    discovery was made available to all defendants.  The two

3    defendants that still had not provided a three terabyte

4    hard drive by that date were told in an e-mail on June

5    4th that they could come view it at our office.  Of

6    course, neither of them did.  But it was made available

7    to everybody on June 4th.

8              So what happened was 12 days after this

9    Court ordered this material to be provided, they all had

10   it.  In response, what the government asked for in

11   docket No. 142 was the Court run the 12 days.  That is a

12   fair response to what happened.  They got it 12 days

13   later than you ordered.  You run 12 days of speedy trial

14   time.  The efforts to turn this mole hill into a

15   mountain is just that, it's an attempt to deflect from

16   the serious charges and what this case is about and turn

17   it into a side show.  There has been no basis for a

18   hearing alleged, nothing sworn to in an affidavit that

19   could support that there is even a reason to believe

20   there was bad faith or anything other than a mistake,

21   which is what the government explained in its filing at

22   docket 142.

23              MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank

24   you.

25              MR. BAGLEY:  Judge, if I can respond briefly

1                     USA V. GOGOLACK, ET AL

2    to some of that.  Judge, I would submit to the Court

3    that the litigation, up to this point, we've

4    demonstrated to this Court that it's not good enough to

5    simply take the government at its word, that you have to

6    take the government's word to put their feet to the fire

7    a little bit in order to get the full truth.  For

8    example, Judge, the Facebook post that was referenced in

9    the protective order litigation.  Things are omitted

10   from the Facebook post.  Previous posts that are

11   relevant to the Court's consideration were not included

12   by the government.  And it's up to the defense, in order

13   to test what has been presented to you and given to you

14   as fact in order to get the full picture.  So a hearing,

15   Judge, in this case is another example in which we need

16   to be able to test what the government is saying to you

17   in order to present the full picture.

18           And the second point, Judge, that I would

19   like to make is that the government, to sit here and

20   listen to the government today would suggest that they

21   were working diligently, they were on trial and it was

22   just a misunderstanding that they didn't get to this

23   stuff later on.  But, you know, from the litigation in

24   the Gogolack detention hearings that we were asking for

25   particular discovery from the get go, and that we

                    USA V. GOGOLACK, ET AL

needed, we wanted discovery with respect to the

detention hearing in order to rebut some of the

accusations made against Mr. Gogolack in respect to his

detention, Judge.  And we didn't get that discovery.

And not only did we not get it, Judge, but, again, this

has all been litigated in front of you, so the Court is

aware of it, the government went above and beyond in

order not to give it to us.  They actually limited what

they said at the detention hearing so they didn't have

to give us discovery.  So I think that is another

example, Judge, of where this isn't just a

misunderstanding or some, you know, we weren't thinking

about what we had to produce at a certain time, they

were taking affirmative steps to not produce it.  And I

think, Judge, maybe that is another example as to why a

hearing in this case is going to elucidate some more of

those facts.

            MR. COOPER:  Judge, I would like to respond

to that specifically and maybe we can turn to Mr. Foti.

            MAGISTRATE JUDGE MCCARTHY:  Okay.

            MR. COOPER:  Mr. Gogolack, through his

attorney, was produced voluntary discovery in the month

of August 2023, September of 2023, October of 2023 and

December 2023.  All before this second superseding

```
 1                    USA V. GOGOLACK, ET AL
 2   indictment was ever even returned.  Significant,
 3   substantial amounts of discoverable material, which Mr.
 4   Bagley would not mention to your Honor when complaining
 5   that discovery was withheld from him.  He got an entire
 6   cell phone extraction, dozens of cell phone
 7   communications that were separated from the huge cell
 8   phone extraction to show they were relevant to the
 9   investigation, over 2000 pages of Bates numbered
10   discovery by December of 2023.  So the litigation or the
11   back and forth that occurred later while the government
12   was engaged in a nine-week trial about wanting
13   additional discovery to run a detention hearing, that
14   it's our position shouldn't have been reopened in the
15   first place, wasn't something the government was going
16   to do at that time.  Instead, we relied on a limited use
17   of information which required less of us at that time
18   and got the same result, which is the defendant remained
19   in custody.  But the idea that Defendant Gogolack, in
20   particular, didn't have discovery and is waiting to see
21   some shred of paper in this case is belied by the
22   record.  August, September, October and December of 2023
23   substantial discovery productions were made to him.
24               MR. STACHOWSKI:  Judge, may I interrupt for
25   a second?  Mr. Byrd has an appointment at Roswell at 3
```

```
1                    USA V. GOGOLACK, ET AL
2     o'clock and he would like to leave, so I waive his --
3                MAGISTRATE JUDGE MCCARTHY:  You can waive
4     his appearance.
5                MR. STACHOWSKI:  It's okay, you can go to
6     Roswell.  You can go now.  Sorry.
7                MAGISTRATE JUDGE MCCARTHY:  That's all
8     right.
9                Mr. Foti.
10               MR. FOTI:  Judge, just to clarify, I ask for
11    sanctions on behalf of Mr. Gerace.  We didn't ask for
12    sanctions against any of these prosecutors individually
13    or against this trial team individually.  We asked for
14    sanctions against the U.S. Attorney's Office.  And I
15    believe Mr. Tripi's comments suggest that there were
16    other prosecutors who were involved who left and there
17    were not accommodations made by the office to pick up
18    the slack.  So maybe the problem here is negligence
19    because everything was put on this trial team when they
20    were not in a position to get us discovery in the
21    extended time frame that was provided.  But whatever the
22    reason is, we have most of the defendants in custody, we
23    have no discovery by the 60 days the Court originally
24    suggested, we didn't have it by the 90 days that the
25    government asked for.
```

USA V. GOGOLACK, ET AL

And I want to clarify one thing that I said
earlier, because I just pulled it up.  I just made a
reference to the information in the index and we let
that indicate when the discovery process seemed to
begin.  I said it seemed that the dates, if you look at
the file path on the index for the majority of files or
at least some of the files, it suggested that the
efforts to produce discovery didn't really start until
the Bongiovanni trial concluded.  There was no response
from the prosecutors to that particular comment that I
made, so I pulled up the index so I could give a better
clarification of what it appears the evidence suggests,
which is the index appears to have 12993 items.  So,
obviously, that is a lot.  12195, so that is the vast,
vast majority of those files, have a file path
indicating FBI discovery received and the date that is
associated with it is April 26th when the Bongiovanni
trial ended.  So almost all of the discovery, the
process of preparing this discovery, started at the end
of the Bongiovanni trial.  That is not acceptable,
because we have multiple defendants sitting in custody
while this trial team is engaged in trial.  They are,
perhaps, understandably, not able to deal with this, but
nobody picks up the slack.  That is a problem,

                    USA V. GOGOLACK, ET AL

particularly because in February, we were told there was

an FBI agent, an almost exclusively, assigned to this

task.  So we're asking for something very reasonable.

We're saying one witness.  I'm not asking for the

prosecutors to get on the stand and testify.  I'm saying

there is a federal agent who was apparently identified

by this trial team as being responsible for this.  Let's

just hear from him.  Because everything points to a

conclusion that they just sat on this process until

after the Bongiovanni trial is over.  And if that is not

case, it could be established in a hearing.  But if it

is the case, as everything seems to suggest, then much

more extensive sanctions than what has been proposed by

the government is appropriate.  So I think a hearing is

the best way to get to the bottom of it the only way we

really can.  Otherwise, I think the Court has to err on

what's in front of it and far more extensive sanctions

than what the government is asking for would be

appropriate.

            MR. COOPER:  Judge, I can respond to that

right away.  I mean this with no disrespect.  It's not

everything points to April 26th being when the discovery

project started.  Quite the contrary.  If you recognize

that the evidence is not sitting at the U.S. Attorney's

USA V. GOGOLACK, ET AL

Office, evidence is collected by federal agencies like
the Federal Bureau of Investigation, Homeland Security
investigations.  The date that Mr. Foti is referencing
is when material that had been getting combined and put
together and selected and organized for months by the
FBI and HSI was dropped off in a hard drive to the U.S.
Attorney's Office to begin the process of Bates
numbering.  So it's just a wholly illegitimate premise
that this began when the Bongiovanni trial ended.  It's
not true, completely not true.

          The FBI and HSI worked for months before
that to gather the material, organize the material,
collect it in one location.  And what we were attempting
to avoid there was a piecemeal production where things
can fall through the cracks or things are delivered
multiple times, so we asked them to gather information
in one collection and provide it to us so that Nick
Carter, the IT specialist at the U.S. Attorney's Office,
can get started with the processing and Bates numbering
of the information, which, itself, takes a significant
period of time and a lot of work.  It would have been
impossible with this amount of information for the
agencies and the U.S. Attorney's Office to start in late
April and have gotten it done by June.  And that is not

                    USA V. GOGOLACK, ET AL

what happened.  We started when we had the status

conference, if not before then.  And when the material

was produced in one large clip to the U.S. Attorney's

Office, that material was processed, Bates numbered,

reviewed by AUSAs, document by document, page by page,

and then ultimately provided.  The 12 days here, it's

not about whether people were working on the discovery

production, it's about a slip up on my part about a

protective order and then not being ready to turn it

over without a protective order.  Go ahead.

          MR. TRIPI:  That is the one point I wanted

to make.  We were in a position to turn it over on May

20th.  Despite everything that we just talked about, we

were in a position to turn it over, which was three days

before your deadline, and we realized we didn't have the

appropriate protective order in place.  And we realized

four days before that how large the hard drives would

have needed to be, so we made those two overtures.  One

meaning the hard drives.  I know some of the defense

lawyers said it took us time to get hard drives.  Some

got us before May 23rd, some got us that day and some

got us after that day.  And in that window of time, we

tried to remedy the protective order issue and tried to

get consent and we were ultimately unsuccessful.  But,

USA V. GOGOLACK, ET AL

the not seeking the protective order doesn't fall
anywhere else in the office, it falls on us.  It falls
on the three people in front of you right here.  So you
don't need to drag in U.S. Attorneys and criminal chiefs
or anybody else.  There is no basis for a hearing.
We're right here.  You can ask us whatever questions you
want about that.  But I'm telling you that, despite the
challenges we talked about, we made a mistake.  We
didn't begin the protective order process earlier.  We
were in position, though, to provide it and we worked
hard with our partners at the FBI and HSI to get it
ready consistent with your order.  And the one thing
that we needed to just rip it out the door by May 23rd,
we realized we hadn't buttoned that up, and, you know,
we apologize for that.

MAGISTRATE JUDGE MCCARTHY:  All right.
Anybody else?  Okay.

MR. BOGULSKI:  Judge, briefly.  If I may,
judge.  Frank Bogulski representing Howard Hinkle, who
is present, in custody.  One of the things that I've
been hearing here, Judge, is we haven't been (inaudible)
in this litigation.  On behalf of Mr. Hinkle, Mr. Henry
and I, I'm actually sitting in the back.

My father is not a lawyer, but he used to

USA V. GOGOLACK, ET AL

tell me, in America, you get a hearing for anything, even a parking ticket, which is true.  And I'm hearing both sides, not exactly involved in this litigation, and I can actually see both sides' positions, but that makes the argument stronger for a hearing because one side, the government, is saying there is no need for a hearing; the other side, the defense, is saying we want a hearing to explore this matter.  I think the prudent thing to do, because the more I listen, the more questions I have, because we haven't been exactly involved, I would like to hear from those witnesses or witness, whether it's IT or the person from the FBI that was involved in this, and find out, you know, what happened.  And I have no idea, as I sit here, what they are going to say, but why not have a hearing on it? We've done so much litigation on this at this point, I think that is just my opinion and I join in the application for a hearing.

          MR. COOPER:  Judge, the standard for having a hearing is not why not have a hearing.  There has been no articulable fact based on a person with personal knowledge that something occurred that was bad faith or anything other than a mistake.  The prosecutors that have personal knowledge of how this whole thing played

USA V. GOGOLACK, ET AL

out detailed for you in 27 pages on docket 142 what happened. There is nothing to contest that other than baseless speculation from counsel about a date in an index, which I now explained, and, hopefully, everybody understands. But why not have a hearing is not the standard for holding a hearing.

MAGISTRATE JUDGE MCCARTHY: Okay. Thank you. Mr. Tripi, Mr. Cooper, Ms. Chalbeck, I've known all of you, Mr. Tripi for many, many years; Mr. Cooper for a few years less; and Ms. Chalbeck, most recently. But in all of my dealings with you and continuing to today, I have no reason to doubt your good faith and I appreciate your candor, both in your submission and in what you've said today, but I'm looking also from the standpoint of the defendants, many of whom have been sitting in custody for a considerable period of time. I don't find anything particularly blameworthy in the three of you, what you've done and what you haven't done. I think it's understandable. But I think the responsibility falls on your office to adequately staff every case that they are involved in because the government makes the decision as to when to lodge charges against defendants. I don't find, based on what I've heard thus far, I don't find that there is any

```
 1                    USA V. GOGOLACK, ET AL
 2   indication of bad faith that would warrant a hearing.
 3   However, I do conclude, for many reasons, that the
 4   government's conduct has been unjustifiable and it
 5   warrants revisiting the Speedy Trial Act exclusion which
 6   I imposed on February 23rd.
 7              I'm going to write on this in some detail so
 8   you'll all have the benefit of my thinking.  But what I
 9   am going to recommend to District Judge Vilardo is that
10   Speedy Trial Act time, that the previous exclusion be
11   rescinded.  What that means is that since the time from
12   February 23rd until we reconvened on June 3rd was more
13   than 90 days, I presume the one or more of the
14   defendants will seek dismissal of the indictment.  I'd
15   like to approach this in the most efficient way
16   possible.  I could, and I initially thought of just
17   writing my decision on the Speedy Trial Act time and
18   then leave it to everybody to take the next step, but it
19   seems to me, I can't imagine that there wouldn't be, if
20   Speedy Trial Act time during that time frame is not
21   excluded, I can't imagine that there wouldn't be a
22   motion to dismiss the indictment.  So what I'm going to
23   suggest is when I issue my decision, we can then follow
24   it with a motion for dismissal.  You can address whether
25   the dismissal should be with or without prejudice at
```

```
                        USA V. GOGOLACK, ET AL
 1
 2   this time.  My leaning is that the dismissal would be
 3   without prejudice, but none of those motions have been
 4   made yet, so I just wanted to review for you what my
 5   thinking is.  And, again, Mr. Tripi, you made the
 6   written submission, you've made a very candid oral
 7   presentation, as have you, Mr. Cooper, and I appreciate
 8   that.  But it's undisputed that the failure to earlier
 9   seek a protective order was a mistake that shouldn't
10   have happened.
11           And if I'm looking at the briefing on the
12   protective order, it appears to me that we're not at
13   all, the parties are not at all close to resolving that
14   anyway.  But that, to me, is a non-issue unless and
15   until we decide whether the indictment of the second
16   superseding or the superseding indictment is going to
17   survive.  And my current thinking is that it will not,
18   but that, I guess, is a question for another day.  So I
19   will get a decision out on the Speedy Trial Act
20   exclusion as quickly as possible.  That is a sanction
21   and I think it's fully warranted and we'll see what the
22   next step will be.
23           Anybody have any comment or suggestion?  All
24   right.  Then you can act once my decision comes out.
25           MR. COOPER:  Thank you.
```

1              USA V. GOGOLACK, ET AL

2                    MR. TRIPI:  Judge, for whatever's it's

3      worth, and I heard everything you just said, the motions

4      are still pending and so time would exclude.

5                    MAGISTRATE JUDGE MCCARTHY:  If there is

6      anything to exclude.

7                    MR. TRIPI:  If there is anything to exclude,

8      I just wanted to make that record.

9                    MR. HENRY:  Your Honor, on that issue, I did

10     talk --

11                   MAGISTRATE JUDGE MCCARTHY:  I would hold off

12     on that until we see.

13                   MR. FOTI:  Judge, real quick, I contacted

14     Chambers earlier today along with U.S. Marshals.  I

15     think, for the record, it's important that Mr. Gerace

16     waived his appearance due to illness due to the last two

17     days.  With everything going on, it's easy to forget

18     about some of the housekeeping matters, but before we

19     break, I wanted to say we make that waiver.

20                   MR. BAGLEY:  Judge, I'm sorry, I have to

21     pile on as well.  I understand where the Court is going,

22     I guess, part of, we're concerned, slightly, that in

23     order to make the motion, Judge, we may have to engage

24     experts in discovery, whatever it is, to fully make that

25     motion, Judge.  And the protective order, right now, as

USA V. GOGOLACK, ET AL

1    it stands, is "attorneys' eyes only."  So I read that, I

2    guess, out of an abundance of caution, to not be able to

3    share any discovery with members, folks we may hire,

4    experts, things of that nature, Judge.

5                    MAGISTRATE JUDGE MCCARTHY:  Let's take one

6    step at a time.  First thing that is coming out, and I

7    hope, I have a trial tomorrow, but I hope much sooner

8    rather than later is my decision to exclude Speedy Act

9    time.  I presume that will be followed by motions to

10   dismiss the indictment, either with or without

11   prejudice.  We can cross that bridge when we get to it.

12   But it seems to me it makes more sense for everything to

13   go up to Judge Vilardo as a single package, including

14   the exclusion of Speedy Trial Act time and whatever

15   flows from that dismissal of the indictment rather than,

16   I could just say, okay, here is my decision on Speedy

17   Trial Act time, take that up to Judge Vilardo and he

18   decides what he is going to do.  If he adopts it, then

19   there is a motion to dismiss the indictment.  It just

20   seems to me that is not a particularly efficient way to

21   proceed.

22                    MR. BAGLEY:  I understand, Judge.  And we'll

23   wait for your decision.  Maybe my concern will be

24   addressed in your decision.  We'll cross that bridge

1

2    when we come to it.

3              MAGISTRATE JUDGE MCCARTHY:  Don't get your

4    hopes up.  We'll take one step at a time.

5              Defendants are remanded.

6              MR. BAGLEY:  Thank you, Judge.

7

8                    *          *          *

9

10                   CERTIFICATE OF REPORTER

11

12     I certify that the foregoing is a correct transcript

13   of the record to the best of my ability of proceedings

14   transcribed from the audio in the above-entitled matter.

15

16   S/ Karen J. Clark,  RPR

17   Official Court Reporter

18

19

20

21

22

23

24

25