IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          v.                                   23-CR-99-LJV-JJM

SIMON GOGOLACK, et al.,

               Defendants.

## GOVERNMENT'S MOTION FOR RECONSIDERATION OF THE COURT'S DECISION AND ORDER DATED JULY 29, 2024, AND THE GOVERNMENT'S RESPONSE TO THE DEFENDANTS' REQUESTS FOR SANCTIONS

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Tiffany H. Lee and Caitlin M. Higgins, Assistant United States Attorneys, of counsel, hereby files a motion for reconsideration of the Court's Decision and Order Dated July 29, 2024 (*see* Docket No. 173) and response to the defendants' requests for sanctions.

## PROCEDURAL BACKGROUND

On September 13, 2023, the grand jury returned a five-count indictment against defendant Gogolack. *See* Docket No. 12. On January 5, 2024, the grand jury returned a second superseding indictment, adding all additional defendants. *See* Docket No. 24. This Court arraigned the defendants on January 9, 2024 (*see* Docket No. 29 [defendants Roncone, Knight, and Barber]), January 10, 2024 (*see* Docket No. 31 [defendants Gerace, Ermin, Hinkle, and Barnes]), and January 24, 2024 (*see* Docket No. 45 [defendant Gogolack]).

On February 23, 2024, the Court set a scheduling order, which directed the government to produce voluntary discovery to the defendants on or before May 23, 2024, and set a further status conference for June 3, 2024. *See* Docket No. 73. The Court excluded the

time from February 23, 2024, until June 3, 2024, pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(iv). *See* Docket No. 74.

Between February 23, 2024, and June 3, 2024, the parties engaged in litigation regarding various issues including detention (*see* Docket Nos. 81, 83, 85, 87, 92, 95, 98, 101, 103, 108, 112, 113, 114, 117, 119), appointment of counsel (*see* Docket Nos. 84, 94), and discovery for the detention hearings (*see* Docket Nos. 96, 100, 102, 106, 116).

On June 3, 2024, the Court held a status conference as scheduled. During the status conference, the government stated that voluntary discovery production was underway pending agreement to a protective order. *See* Docket No. 120. The defendants objected to the lateness of production and to certain terms of the government's proposed protective order. *See id.* The Court set a briefing schedule for the protective order. *See id.* In the interim, the Court deemed the government's production for attorney's eyes only pending further order of the Court and directed the parties to continue to confer in an effort to reach a protective order. *See* Docket No. 122. Likewise, the Court ordered that:

> By [June 10, 2024], the defendants may also file motions directed to consequences of the government's failure to abide by [its] February 23, 2024 Text Order 74 requiring the government to produce discovery to them by no later than May 23, 2024. Responses to these motions (if any) shall be filed by June 14, 2024, after which time the motion(s) will be taken under advisement. A further conference is scheduled for June 27, 2024 at 2:00 p.m. For the reasons set forth by defendants' counsel on the record, I deny the government's request to enter a further exclusion of time from the Speedy Trial Act calendar pursuant to 18 U.S.C. Sections 3161(h)(7)(A) and (h)(7)(B)(iv). As of today, time is no longer excluded from the Speedy Trial Act calendar.

*Id.*

On June 10, 2024, the government filed an *ex parte* motion for a protective order. *See* Docket No. 129. On the same day, various defendants filed motions for a hearing and

sanctions. *See* Docket Nos. 131, 132, 135, 137, 140. On June 14, 2024, the government filed

a response to the defendants' motions for a hearing and sanctions. *See* Docket No. 142.

Between June 10, 2024, the parties also litigated the issue of the protective order. *See* Docket

Nos. 134, 136, 138, 146, 149, 151–53, 156, 158, 160-64, 166, and 167.

On July 22, 2024, the Court held oral argument on the various pending motions. *See*

Docket No. 168. During the appearance, the Court reserved on its decision with respect to

the defendants' motions for a hearing and sanctions. The Court stated that "based on what [it

had] heard thus far, [it did not] find there is any indication of bad faith that would warrant a

hearing. . .," but stated that "for many reasons . . . the government's conduct has been

unjustifiable and it warrants revisiting the Speedy Trial Act exclusion which [the Court had]

imposed on February 23rd." *See* Docket No. 169 at 27-28. In addition, the Court stated that

with respect to any dismissal, "[its] leaning is that the dismissal would be without prejudice,

but none of those motions have been made yet." *Id.* at 29. The Court stated that it would "get

a decision out on the Speedy Trial Act exclusion as quickly as possible. That [rescinding of

its prior speedy trial exclusion of time] is a sanction and [it thought it was] fully warranted

and we'll see what the next step will be." *Id.* at 28-29.

On July 29, 2024, the Court issued a Decision and Order. *See* Docket No. 173. In the

Decision and Order, the Court held that "the issues which defendants would seek to explore

at a hearing . . . are sufficiently answered by the government's submission to enable [the

Court] to conclude that the sanction which the government proposes [running 12 days of the

Speedy Trial clock] is clearly an inadequate response to its misconduct in this case, and that

a more significant sanction is warranted." *Id.* at 2. The Court further stated that although it

initially had "found 'no indication of bad faith' . . . upon further review of the government's

submission [from June 14, 2024], [it] now realize[d] that [it] spoke too soon." *Id.* Moreover, the Court held that the sanction it had previously contemplated, namely vacating the ends of justice exclusion from February 23, 2024, to June 3, 2024, "would have little impact, since STA time was also automatically excluded under 18 U.S.C. § 3161(h)(1)(D) due to the pendency of various unresolved motions." *Id.*

Finally, the Court held that "[t]he government's willful violation of my order constitutes bad faith." *Id.* at 5 (citing *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 345 (2d Cir. 1986)). The Court invited the defendants to submit additional briefing by August 7, 2024, addressing the appropriate sanction or sanctions to be imposed, and allowed the government to respond by August 14, 2024. *See id.* at 6. On August 7, 2024, defendants Ermin (Docket No. 181), Barnes (Docket Nos. 182 and 183), Knight (Docket No. 184), Barber (Docket No. 185), Hinkle (Docket No. 186), Gogolack (Docket No. 187), and Gerace (Docket No. 189) filed their respective submissions on sanctions.

For the reasons set forth below, the government requests reconsideration of the Court's finding that the government acted in bad faith and asserts that the defendants' requests for sanctions are inappropriate.

## ARGUMENT

### I.   THE COURT SHOULD RECONSIDER ITS FINDING AS TO BAD FAITH.

#### A. Reconsideration of the Court's Bad Faith Finding is Appropriate in this Case.

"Although the Federal Rules of Criminal Procedure do not specifically recognize motions for reconsideration, such motions have traditionally been allowed within the Second Circuit." *United States v. Lucas*, 383 F. Supp. 3d 105, 110 (W.D.N.Y. 2019) (internal quotation marks omitted). District courts "have applied the applicable civil standard to such motions in criminal cases." *Id.* (internal quotation marks omitted). The government recognizes that "the

standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re Lettieri*, No. 23-MC-32-LJV, 2024 WL 1076271, at *1 (W.D.N.Y. Mar. 12, 2024).

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.* (quoting *Kharshiladze v. Philips*, 2021 WL 1525869, at *1 (W.D.N.Y. Apr. 19, 2021)); *see also Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "To these ends, a request for reconsideration under Local Rule 6.3 ("Rule 6.3") must point to controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *United States v. Agostini*, No. 00-cr-237, 2015 WL 8528451 at *2 (S.D.N.Y. Dec. 9, 2015); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Relying on the current state of the controlling law involving the definition of what constitutes "bad faith," the government respectfully requests that the Court reconsider its July 29, 2024, Decision & Order finding that the government engaged in bad faith by failing to produce discovery on or before May 23, 2024. *See* Docket No. 173.

**B. The Governing Law on What Constitutes Bad Faith.**

The Second Circuit has not defined "bad faith" in the context of Rule 16 of the Federal Rule of Criminal Procedure ("Fed. R. Crim. P.") discovery violations. The Supreme Court has held that when a term is undefined in a statute, consistent with the canons of

interpretation courts must "give the term its ordinary meaning." *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). In the context of the Hyde Amendment, the Second Circuit defined an act as being "'in bad faith' if it is intentionally deceptive or dishonest." *United States v. Bove*, 888 F.3d 606, 608 (2d Cir. 2018) (applying the ordinary meaning[1]). "The Oxford English Dictionary refers to 'faithlessness' and 'treachery' in defining the term." *Id.* at n.9. (citing *Oxford English Dictionary* (2d ed. 1989)). "'[B]ad faith' 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ...it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (quoting *Black's Law Dictionary* 139 (6th ed. 1990) and applying that definition in interpreting the Hyde Amendment).

In the realm of civil litigation, the Second Circuit has required a finding of bad faith to justify attorneys' fees as a sanction or when the court sanctions an attorney for conduct that is integrally related to the attorney's role as an advocate for his or her client, under the "inherent powers" of the court. *United States v. Seltzer*, 227 F.3d 36, 40 (2d Cir. 2000). In common law, under what is known as the "American Rule," parties to civil litigation "normally pay their own attorneys' fees regardless of the lawsuit's outcome." *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985). An exception lies, however, with respect to the award of attorneys' fees as a sanction under the district court's "inherent authority" in cases when a losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Kerin v. U.S. Postal Service*, 218 F.3d 185, 190 (2d Cir. 2000) (quoting

---

[1] The Court in *Bove* referred to the 2014 edition of Black's Law Dictionary which defined "bad faith" as "[d]ishonesty of belief, purpose, or motive." 888 F.3d at 608 n.9. (quoting *Black's Law Dictionary* (10th ed. 2014)).

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975) (internal quotation marks omitted)). The federal court's power to award bad faith fees arises from "a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (internal quotation marks and brackets omitted)).

For application of this exception, the Second Circuit interprets "the bad faith standard restrictively," and cabins the definition of claims brought in "bad faith" as those "motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). The Second Circuit requires "a high degree of specificity in the factual findings of lower courts" regarding bad faith. *Id.* (quoting *Dow Chemical*, 782 F.2d at 344) (internal citations, quotation marks, and brackets omitted)). Without "a proper finding of improper purpose," a district court's factual finding of bad faith for purposes of applying the exception will not stand. *Sierra Club*, 776 F.2d at 391. "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *See also Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011) (holding that a court may only impose 28 U.S.C. § 1927 sanctions "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose") (internal quotation marks omitted). Thus, "in this Circuit, the bad faith standard is not easily satisfied and sanctions are warranted only in extreme cases." *McCune v. Rugged Ent., LLC*, No, 08–CV–2677 (KAM), 2010 WL 1189390, at *4 (E.D.N.Y. Mar. 29, 2010).

Other courts have noted in similar contexts that bad faith requires more than a finding of gross negligence or reckless disregard. S*ee*, *e.g.*, *United States v. Dvorin*, 817 F.3d 438, 445, 453–54 (5th Cir. 2016) (affirming district court's denial of additional sanctions for the prosecution's *Brady* and *Napue* violations where the district court found that the prosecutor "did not act in 'bad faith,'" but "exhibited a reckless disregard for her duties and conducted the proceedings in an irresponsible manner"); *United States v. Amaya*, 750 F.3d 721, 727-28 (8th Cir. 2014) (affirming denial of request for dismissal of indictment based on discovery violation where the court found that the government did not act in bad faith, that any prejudice was remedied, and that no further sanction was necessary to ensure future compliance).

### C.  Applying the Precedent Above, the Government Did Not Act in Bad Faith.

The government's failure to produce the voluntary discovery to the defense by this Court's May 23, 2024, deadline did not constitute bad faith. The plain meaning of "bad faith" requires more than what the Court's decision implies. While the government committed a procedural error by failing to produce the discovery to defendants as of the May 23, 2024 deadline, there is no evidence to show that the failure to meet the deadline was undertaken with deceit. *See Bove*, 888 F.3d at 608. Nor is there evidence that the government committed the error with any motive to delay the proceedings, to gain tactical advantage, or with any other improper purpose. *See Eisemann*, 204 F.3d at 396. Finally, the record does not include specific facts to support this Court's finding that the government's delayed production beyond the deadline was the result of bad faith.

Rather, the record shows that the government's violation of the discovery deadline was negligent and caused by two oversights: (1) the government failed to seek a protective

order prior to the discovery deadline of May 23, 2024; and (2) the government failed to inform the Court in advance of the expiration of the May 23, 2024 deadline that a protective order was necessary before it could produce discovery. Neither mistake, however, was made with ill intent or to gain any tactical advantage or to deceive the court and/or defendants. Under this rubric, the government's conduct leading to its failure to produce the voluntary discovery by the May 23, 2024, deadline was due to overlooking the need for the protective order, but it does not meet the standard for bad faith contemplated by the Second Circuit and other courts in either criminal or civil contexts.

Applying the plain meaning of "bad faith," nothing in the record shows that the government acted with dishonesty of belief, purpose, or motive when it missed the Court's deadline or failed to report to the Court that it would miss the deadline in advance of the discovery deadline date. Indeed, the record shows that the government notified defense counsel that the discovery was ready and that, in order for the government to produce the discovery, defense counsel would need to provide the government with hard drives large enough to accommodate the terabytes of information the government was going to produce. And then, when the government realized after the deadline had passed that the necessary protective orders were not in place, it engaged defense counsel in good faith to attempt to negotiate the same. The government had no dishonest purpose or motive in delaying the production of the discovery that was ready to be produced.

Here, the Court's finding of "bad faith" was not based on the plain meaning of "bad faith," or on the interpretation of that term by other courts in similar contexts. Rather, this Court relied on *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, a case that is both procedurally and legally distinguishable. *Dow Chemical* involved the award of attorneys' fees

under the bad faith exception of the "American Rule," in which the Second Circuit noted that a party asserting bad faith must show (1) actions taken entirely without color and taken for harassment or delay or for other an improper purpose, and (2) a "high degree of specificity in the factual findings of the lower courts" in order to merit the imposition of attorneys' fees. 782 F.2d at 344 (internal quotation and alteration omitted). There the Second Circuit stated that courts can look to "the conduct of the party in instigating or maintaining the litigation, for an assessment of whether there has been substantive bad faith" to include "procedural bad faith as exhibited by, for example, its use of oppressive tactics or its willful violations of court orders." *Id.* at 345.

Critically, however, the Court overlooks a crucial part of *Dow Chemical*, in that for a party to make a claim of bad faith in the first instance, it must show meritless actions and that the conduct was taken for harassment, delay or for other improper purpose." *Id.* No such showing exists here. This Court further did not engage with the Second Circuit's determination in *Dow Chemical* that the district court had failed to make adequate findings to support bad faith standard for purposes of imposing sanction. The Second Circuit stated that it could not believe, "to the extent that the court thought that a party's litigation conduct alone warranted an award of fees, that it had in mind only" the two incidents in the record. *Id.* at 345. "We doubt, for example, that the fact that a defendant defaulted against one plaintiff in May 1980 would be thought to justify an award against it for the fees incurred by plaintiffs in pursuing other defendants for the next four years." *Id.* Thus, the Second Circuit's observation demonstrates that even intentional failures to comply with a court order, standing alone, would not rise to the level of bad faith required to award attorneys' fees. *See also Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977) (remanding

10

"for more specific findings" as to whether attorneys' actions were "undertaken in bad faith, without justification or for an improper purpose, such as harassment or delay").

Here, the Court concluded that because it had unequivocally ordered production of voluntary discovery by May 23, 2024, and the government failed to meet that deadline, it follows that the conduct was deliberative and, thus, in bad faith. Indeed, the Court determined that the government "made a conscious decision to ignore deadlines or orders." Docket No. 173, at 5. Under the precedent involving civil sanctions above, however, a conscious decision alone is not enough to support bad faith. Moreover, nothing in the record supports a conclusion that the government's conduct reflected a conscious decision to ignore the Court's ordered discovery deadline (it had notified defense counsel three days before the deadline that the discovery was ready) much less that its conduct in delaying affirmative production until a protective order was in place was undertaken to deceive or disadvantage the Court and/or the defendants.

To the extent that defendants point to the fact that the discovery was not produced on a rolling basis as an example of the government not abiding by the Court's order, while the government indicated it was "open" to the idea of producing discovery on a rolling basis in terms of what was available, it did not affirmatively commit to doing so. *See* February 23, 2024, Status Conference Tr. at 10. This Court followed with a request to the government to produce "sooner than that date *as best you can*," setting a production completion date of May 23, 2024, *id.* at 12 (emphasis added), but the Court did not expressly mandate that discovery be provided on a rolling basis in its text order. Docket No. 74. As the government explained in its response to the defendants' motions for sanctions, it had initially thought it could provide the discovery on a rolling basis but it proved to be impracticable. *See* Docket No. 142,

11

at 17-18. And while the government did consciously decide to withhold the production of discovery it had told defense counsel was ready until a protective order was in place, there is no evidence to suggest that the government made this conscious decision in bad faith and/or with improper purpose to disobey the Court's order.

The government's delay in producing discovery amounted to negligence two-fold: (1) a failure to notice that there was no protective order in place prior to the passing of the discovery cutoff date put in place by the Court; and (2) a failure to notify the Court that the discovery was ready to be produced but required a protective order in advance of any production. Contrary to the Court's conclusion that there was a calculated decision to disobey the Court's order, the government's conduct evinces that it had every intention to comply with the Court's order. This is demonstrated by the fact that on May 20, 2024, the government reached out to defense counsel asking them to provide hard drives to receive the discovery. *See* July 22, 2024, Oral Argument Tr. at 24. It is the oversight (whether excusable or not) regarding the protective order and failing to engage the Court prior or by May 23, 2024, as to the need for the protective order, that frustrated those efforts.

The Second Circuit's decision in *United States v. Pizarro*, No. 19-2391, 2023 WL 3332539 (2d Cir. May 10, 2023) (Summary Order),[2] is instructive. In *Pizarro*, "[t]he government explained that it initially withheld information while law enforcement investigated and did not have an adequate system for ensuring that the withheld material was timely disclosed when the investigation was complete." *Id.* at *1. In declining to dismiss the

---

[2] "[D]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases," *United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) (quoting Order dated June 26, 2007, adopting 2d Cir. Local R. 32.1); *see also United States v. Montague*, 67 F.4th 520, 535 n.4 (2d Cir. 2023).

indictment, the Second Circuit agreed that the government's belated disclosure was the result of negligence, not any bad faith on the part of the government. *Id.*

Similarly, in *United States v. Wynder*, No. 20-CR-470 (PKC), 2022 WL 3572881, at *1 (S.D.N.Y. Aug. 19, 2022), the district court found that the prosecutors' conduct was not in bad faith because "[t]he government did not gain any advantage from its errors and omissions." There, the court stated that the case involved:

> [A] series of government failures that resulted in the non-production of hundreds of thousands of highly relevant documents that had been in the government's possession or control in some instances for more than a year. The series of failures was compounded by untrue representations made to the Court that induced it initially to deny a defense application for a continuance of the trial date.

*Id.* at *1. In making the bad faith determination, the court necessarily looked at the purpose of the conduct. The court concluded that:

> Evidentiary preclusion, Rule 16(2)(c), or an adverse inference charge, as suggested by defendants, may be appropriate for actions taken in bad faith, but does not fit these circumstances that amount to serious and repeated neglect. The Court cannot see any benefit to the government derived from this unseemly mess. There is no claim that prosecutors were trying to hide the ball and were caught only when the defendants unexpectedly decided to proceed to trial.

*Id.* at *5. Importantly, the court observed that "[p]rosecutors, like judges and defense counsel, make mistakes. It is inherent to the human condition." *Id.* at *1. *See also United States v. Morgan*, 493 F.Supp.3d 171, 180 (W.D.N.Y. 2020) (even where the government failed to meet court deadlines, "it is clear that the government's mistakes, while negligent, do not constitute willful misconduct undertaken in bad faith.")[3]; *United States v. Eldridge*, No. 09–CR–329–A,

---

[3] The defendants subsequently filed motions for reconsideration asking the court to dismiss the indictment with prejudice based on alleged misrepresentations made by the government

2014 W L 4829146, at *6 (W.D.N.Y. Sept. 29, 2014) (in the context of the destruction of evidence "[n]egligence is not enough to establish bad faith," pursuant to *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333 (1988)).

The Court's finding of bad faith relies on an expansive definition that is inconsistent with existing case law. In essence, and in contravention of the precedent articulated above, the Court is focused on what it perceives to be the "deliberate" nature of the government's conduct and appears to promulgate the following strict-liability standard for court-imposed deadlines: (1) where a party is aware of a deadline in a court order; and (2) fails to comply with that deadline, regardless of the motive and/or circumstances necessitating the violation, that party has acted deliberately with deceit and, thus, in bad faith. The case law, however, even as it pertains to civil cases, does not support such a strict-liability standard. *See, e.g.*, *Magee v. Walt Disney Co.*, 2020 WL 6047428, at *3 (SDNY Oct. 13., 2020) ("A late filing, without showing of improper purpose, does not come close to the high bar for Rule 11 sanctions."). Moreover, if technical violations of courts' deadlines or other orders constitute bad faith, then litigation will devolve into a needless game of "gotcha" with every late motion, late response, and failure to comply, generating a motion for the imposition of some sort of sanction. *Id.* at * 2 ("Litigation in federal court is not a 'gotcha' game.").

---

as to discovery in the case. *See United States v. Robert Morgan*, 18-CR-108, WDNY, Docket Nos. 505, 506, 507, 509. Based on these allegations, the court determined that there was a sufficient basis to justify an evidentiary hearing. *Id.* Docket No. 548, 549. However, because the case resolved with the defendants pleading guilty and withdrawing their motions for reconsideration, and because the court found that it had "every expectation that the [government] w[ould] take the necessary steps to investigate the allegations and ensure that any necessary remedial actions are taken to address those issues," the court ultimately declined to hold the hearing. *Id.* Docket No. 625.

Accordingly, the government respectfully requests that the Court to reconsider its bad faith finding in its July 29, 2024, Decision & Order. Specifically, the government asks that the Court consider not just the government's failure to abide by the Court's discovery deadline, but also the underlying intent or purpose of the government's failure. *See* Docket Nos. 142 and July 22, 2024, Oral Argument Tr. at 24-25. As set forth above, reconsideration is appropriate where, as here, the government has pointed to controlling decisions that the Court overlooked, that is "matters… that might reasonably be expected to alter the conclusion reached by the court." *In re Lettieri*, 2024 WL 1076271, at *1.

## II.   DEFENDANTS ARE NOT ENTITLED TO THEIR REQUESTED SANCTIONS.

### A.  Governing Law on The Imposition of Sanctions.

Under Rule 16(d)(2) of the Federal Rules of Criminal Procedure, if a party fails to comply with Rule 16, the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances. *See* Fed. R. Crim. Pro. 16(d)(2).

"The goal of discovery in criminal trials is to ensure a fair and thorough determination of defendant's guilt or innocence." *United States v. Nwoke*, No. 18-20686, 2022 WL 3044817, at *3 (E.D. Mich. Aug. 2, 2022). "One of the objectives of Rule 16 is to eliminate the idea that a criminal trial is a sporting contest in which the game of cat and mouse is acceptable." *United States v. Howell*, 231 F.3d 615, 626 (9th Cir. 2000). Thus, Rule 16 is meant to provide adequate and timely discovery to the defense while preserving the truth-seeking function of

the trial; it is not meant to be punitive in nature.[4] *See, e.g.*, *United States v. Camargo-Vergara*, 57 F.3d 993, 999 (11th Cir. 1995) ("Inadvertence does not render a discovery violation harmless; rather, the purpose of Rule 16 is to protect a defendant's right to a fair trial rather than to punish the government's non-compliance."); *United States v. Rodriguez,* 799 F.2d 649, 654 (11th Cir. 1986) (stating that "[t]he purpose of the rule is not to punish the Government, as to which intentional conduct would be relevant, but to protect the defendant's right to a fair trial"); *United States v. DeLeo*, 422 F.2d 487, 499 (1st Cir. 1970) (noting that "the prosecutor's duty of disclosure is imposed to assure fairness to the accused rather than to punish the prosecutor or the public" and holding that "the absence of conceivable prejudice to the accused completely disposes of his objection").

A district court has broad discretion in imposing sanctions for failing to comply with a discovery order. *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016). "Whether or not sanctions for nondisclosure should be imposed depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other." *United States v. Miranda*, 526 F.2d 1319, 1324 (2d Cir. 1975).

The Second Circuit uses several factors to evaluate whether a district court appropriately exercised its discretion when determining sanctions/remedial action for Rule 16 violations including "the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and

---

[4] Federal Rule of Civil Procedure 37, however, is punitive. *See Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 763-64 (1980). (Sanctions for failure to comply with discovery orders must "be applied diligently both to penalize those whose conduct may be deemed to warrant such sanctions and to deter those who might be tempted to such conduct in absence of such deterrent.") (internal quotations omitted).

any other relevant circumstances." *Lee*, 834 F.3d at 159; *see also United States v. Hastings*, 126 F.3d 310, 317 (4th Cir. 1997) (also considering "whether any less severe sanction will remedy the prejudice and the wrongdoing of the government."); *United States v. Wicker*, 848 F.2d 1059, 1061-62 (10th Cir. 1988) (stressing "the feasibility of curing the prejudice with a continuance"); *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1312 (11th Cir. 1984) (same). These factors act as a "guide" for the district court's consideration of sanctions; "they are not intended to dictate the bounds of the court's discretion." *Wicker*, 848 F.2d at 1061.

When considering an exercise of its supervisory powers, a district court has various options: it may limit the witnesses or testimony offered by the government; it may sanction the attorneys; the court may dismiss the case without prejudice; and "the most drastic remedy is dismissal with prejudice, because this prevents the government from retrying the defendants at all." *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). The dismissal of an indictment is justified "to eliminate prejudice to a defendant; or, pursuant to [a court's] supervisory power, to prevent prosecutorial impairment of the grand jury's independent role." *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir. 1983); *see also United States v. Cabrera*, No 22-cr-10, 2024 WL 967542, at *2 (S.D.N.Y. Mar. 5, 2024) (quoting *Hogan*, 712 F.3d at 761); *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010) (holding that a district court may dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct" (quoting *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995))).

17

Nevertheless, a district court's discretion in exercising its supervisory powers is not boundless. *See Bank of Novia Scotia v. United States*, 487 U.S. 250, 255 (1988) ("[A] district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant."). Under its supervisory powers, a district court may dismiss an indictment with prejudice for prosecutorial misconduct only if there is "(1) flagrant misbehavior and (2) substantial prejudice." *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993); *see also United States v. Walters*, 910 F.3d 11, 23 (2d Cir. 2018) ("[D]eterrence is an inappropriate basis for reversal where means more narrowly tailored to deter objectional prosecutorial conduct are available."); *United States v. Gonzalez*, 529 F.3d 94, 98 (2d Cir. 2008) ("[S]upervisory powers are not to be used to circumvent the harmless error rule."). "Dismissal of an indictment with prejudice necessarily implicates separation-of-powers principles. ... Such dismissal exercised under the guise of 'supervisory power' is impermissible absent 'a clear basis in fact and law for doing so.'" *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992).

The district court must "approach [the remedy of dismissal with prejudice] with some caution and with a view toward balancing the interests involved." *United States v. Hasting*, 461 U.S. 499, 506-07 (1983) (internal quotations omitted). The Second Circuit has repeatedly emphasized that the exercise of the court's supervisory authority to dismiss an indictment is a "drastic remedy" that should be utilized with caution and only in extreme cases. *See Walters*, 910 F.3d at 25 (quoting *United States v. Brown*, 602 F.2d 1073, 1076 (2d Cir. 1979)); *United States v. Halloran*, 821 F.3d 321, 342 n.14 (2d Cir. 2016) ("Dismissal of the indictment is an extreme sanction and a drastic remedy, appropriate only when it is otherwise impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the

prosecutor, or when there is a widespread or continuous pattern of prosecutorial misconduct." (cleaned up)).

Dismissal is only appropriate if "no lesser remedial action is available[.]" *Bundy*, 968 F.3d at 1031 (internal quotation omitted); *see also Hastings*, 126 F.3d at 317 (holding that dismissal of the indictment was too severe a sanction where the government violated a discovery order; "it must use the least severe sanction which will adequately punish the government and secure future compliance"); *United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999) ("The court should impose the least severe sanction that will accomplish prompt and full compliance with" the violated discovery requirement). A district court "does not have the power to dismiss an indictment that is legally sufficient simply because it deems dismissal to be in the interests of justice." *United States v. Artuso*, 618 F.2d 192, 196 (2d Cir. 1980).

### B. The Defendants Are Not Entitled to Dismissal of the Indictment With Prejudice.

The extraordinary sanction of dismissal of the indictment with prejudice under the circumstances here, where the belated production of discovery occurred 12 days over this Court's deadline, is inappropriate and outside of the Court's considerable discretion in the absence of demonstrated prejudice. *See United States v. Morrison*, 449 U.S. 361, 365-66 (1981) (in a case involving an alleged constitutional violation, remedies "should be tailored to the injury suffered" and "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate"); s*ee also United Sates v. Broward*, 594 F.2d 345, 251 (2d Cir. 1979) (dismissal is "so drastic" that "especially where serious criminal conduct is involved, it must be reserved for the truly extreme cases").

Here, where the delay in the production of discovery was for a 12-day period, encompassing the date the discovery was to be produced to defense counsel and the next status appearance before the court and, where there is no bad faith, *see supra*, or even a demonstrable showing of prejudice, dismissal is far too extreme of a remedy/sanction for what was concededly negligent behavior on the part of the government. There is no colorable argument defendants can make that they lack sufficient time to engage with the discovery because of the government's error. Dismissal of the indictment goes against the principle that courts should "impose the least severe sanction that will accomplish prompt and full compliance with" the violated discovery requirement. *See Gonzales*, 164 F.3d at 1292. It also overlooks that the discovery framework of Federal Rule of Criminal Procedure 16, unlike Federal Rule of Civil Procedure 37, is not meant to be punitive.[5] *See, e.g.*, *Camargo-Vergara*, 57 F.3d at 999 (11th Cir. 1995). Dismissal would also undercut the interest of victims in seeing defendants brought to justice and the public's interest in the prompt administration of justice. *Hasting*, 461 U.S. at 506-07 ("[T]he interests preserved by the doctrine of harmless error cannot be so lightly and casually ignored in order to chastise what the court viewed as prosecutorial overreaching.").

The defendants fall far short of showing that the government engaged in anything resembling the type of flagrant misconduct that might irreversibly prejudice a defendant and justify the extreme remedy/sanction of dismissing an indictment. "To meet the 'very heavy' burden of establishing a due process violation to dismiss an indictment for outrageous

---

[5] One defendant relies on the standard for the imposition of sanctions under Federal Rule of Civil Procedure 37 (*see* Hinkle Submission, Docket No. 186, at 6); that standard is inapplicable and stands in contrast to the purposes of Rule 16 discovery. *See Camargo-Vergara*, 57 F.3d at 999; *see also Lee*, 834 F.3d at 159.

governmental misconduct, a defendant must show that the Government's conduct was 'so outrageous that common notions of fairness and decency would be offended were judicial process invoked to obtain a conviction.'" *Walters*, 910 F.3d at 27 (quoting *United States v. Al Kassar*, 660 F.3d 108, 121 (2d Cir. 2011)).

The record here, showing the government's withholding of discovery for 12 days past the Court-ordered deadline, is devoid of "bad faith" let alone the kind of "egregious" conduct warranting the dismissal of an indictment. *See United States v. Espinal*, 96 F. Supp. 3d 53, 71 (S.D.N.Y. 2015) (concluding that "the extraordinary remedy of dismissal of the indictment [was] not warranted" because the court did not "believe the government acted flagrantly, willfully, or in bad faith"); *United States v. Reyes*, No. 88-CR-1006, 1989 WL 99806, at *4 (S.D.N.Y. Aug. 18, 1989) ("The dismissal of an indictment is an extreme sanction that may only be used when there has been egregious and deliberate governmental misconduct," "and where the pattern of misconduct is widespread or continuous.") (internal quotation omitted). The government's conduct here was negligent, and any error in terms of the delay in the production of the materials can be cured with other remedies than dismissal.

The government's actions (or inaction) here cannot be squared with the notion that this is that "rare" case involving conduct so outrageous that it requires this Court to dismiss the indictment as the only remedy to cure the error committed. Indeed, courts have held that prosecutorial errors far worse than those here nevertheless fell short of requiring dismissal of the indictment. *See United States v. Dominguez*, 641 F. App'x 738, 740 (9th Cir. 2016) (unpublished decision) (affirming denial of a motion to dismiss the indictment where the Government was "sloppy, inexcusably tardy, and almost grossly negligent," and had committed numerous *Brady*, *Giglio*, Jencks Act, and Rule 16 violations that were cured by a

continuance); *United States v. Williams*, 547 F.3d 1187, 1201-02 (9th Cir. 2008) (finding no "flagrant prosecutorial misconduct" where government played audiotape during rebuttal argument that had not been produced to the defendant and was found to be exculpatory, and ordering a new trial rather than dismissing the indictment); *see also United States v. Berkovich*, 168 F.3d 64, 68-69 (2d Cir. 1999) (noting that courts have "almost never found" that government misconduct is so outrageous that it violates due process).

Moreover, the government's error here shares none of the outrageous characteristics in the rare cases where due process violations have been found. *See, e.g.*, *United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir. 1991) (agent deliberately seduced target to induce her into committing crimes); *United States v. Sabri*, 973 F. Supp. 134, 147 (W.D.N.Y. 1996) (dismissal of one count of the indictment where the government used the defendant's immigration attorney to make recordings that formed the basis of that count).

In *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008), the Ninth Circuit upheld the dismissal of the indictment after *Brady/Giglio* violations[6] were revealed midtrial. In that case, the government produced hundreds of pages of new material during the trial, including rap sheets, plea agreements, and several cooperation agreements of important government witnesses who had already testified and it became apparent that the government had "not even inquired as to those witnesses' criminal records until after the trial had begun" despite representing that it had produced such information in advance of trial. *See* 524 F.3d at 1079.

---

[6] Unlike for violations of Federal Rule of Criminal Procedure 16, where courts look to the intent behind a failure to disclose in determining appropriate sanctions, *see Lee*, 834 F.3d at 159, *Brady/Giglio* violations do not require a finding regarding good/bad faith. *Brady* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Similarly, in *United States v. Bundy*, the Ninth Circuit again upheld the dismissal of the indictment where the discovery of *Brady* material withheld by the government from the defendant took place as the trial was underway. 958 F.3d at 1031. In the present case, the government's 12 days of withholding discovery stands in stark contrast to the misconduct in both *Chapman* and *Bundy*.

Defendants cite several cases in this District to persuade this Court that a "pattern" of misconduct exists as to the government's discovery practices. The defendants, however, neither address the underlying facts of each case, nor do they even attempt to illustrate the applicability of those cases to the case at bar. Each case cited is distinguishable from the circumstances presented here, and from one another, dispelling any notion of a "pattern."

In *United States v. Padua*, 20-CR-101-LJV, the court dismissed the indictment with prejudice based on the improper rebuttal summation by the prosecutor that resulted in mistrial. *United States v. Padua*, Case No. 20-CR-191-LJV; 2021 WL 5860653 at *5-6 (W.D.N.Y. Dec. 9, 2021). In *United States v. Tyshawn Brown*, Case No. 19-CR-222, there was no finding that the government had violated its *Brady/Giglio* or discovery obligations; rather the government decided to dismiss the case so as not to jeopardize its investigation against former DEA agent Joseph Bongiovanni with the disclosure of materials. *See United States v. Tyshawn Brown*, No. 19-CR-222, 2020 WL 202853 (W.D.N.Y. Apr. 28, 2020; *but see*, 19-CR-222, Docket No. 46 (district court determining that the magistrate court erred in stating that the lynchpin for disclosure of *Giglio* material was based on whether Bongiovanni would testify or not). Similarly in *United States v. Thaddeus Coleman*, no finding had been made that the government had violated its *Brady/Giglio* or discovery obligations. *United States v. Thaddeus Coleman*, No. 19-CR-221-RJA, 2022 WL 1025034 (W.D.N.Y. Apr. 6, 2022). And in *United*

*States v. Lavon Parks*, the government's late disclosure of *Brady* material on the eve of trial led to a continuance for the defendants and the preclusion of certain evidence to the government's detriment. *United States v. Lavon Parks, et al.*, Docket Nos. 19-CR-87-LJV, 20-CR-69-LJV, Docket No. 966, at 31. *Parks* did not result in a sanction of dismissal of the indictment for the late disclosure, *id.*, at 30, and the government ultimately prevailed with the conviction of the defendants after trial.

Finally, *Morgan* was a white-collar fraud investigation involving voluminous electronic discovery seized from computers and servers in which items of evidence had not been carefully reviewed, and the processing and production of discovery yielded months-long delays, 493 F.Supp.3d. at 208, in contrast to the 12-days of delay here. Indeed, it is because of *Morga*n that efforts were made here to ensure careful review, organization, processing, and indexing of the discovery, and why turning over the discovery on a rolling basis and/or absent a protective order was not feasible. Docket No. 142, at 17-18. Accordingly, none of the cases cited provides any support for the notion that the government's negligence here is comparable or falls within a discernable pattern "so systemic and pervasive" that it calls into question the "fundamental fairness" of the prosecution. *Bank of Nova Scotia*, 487 U.S. at 259.

Much as the defendants fail to demonstrate misconduct warranting dismissal of the indictment, they equally falter to demonstrate any prejudice. Many defendants have conflated the constitutional speedy trial definition of prejudice into their claim for sanctions against the government because of the 12-day delay in receiving the voluntary discovery. Some defendants have raised prejudice relying on the fact of their continued detention or their conditions of release. *See, e.g.*, Docket Nos. 184 and 185. The Tenth Circuit's decision in

24

*United States v. Jumaev*, 20 F.4th 518 (10th Cir. 2021) is instructive as to how prejudice is to be defined in a determination on appropriate sanctions to be imposed.

In *Jumaev*, as a result of discovery delays, the belated filing of a superseding indictment, and a last-minute disclosure of potential impeachment material, the defendant, who was not tried until over six years after his initial arrest, argued on appeal that the sanctions imposed by the district court were too lenient. *See id.* at 546-47. The Tenth Circuit stated that for the defendant to show the district court abused its discretion by declining to impose more severe sanctions, he had to demonstrate "(1) prejudice to his defense (2) that the district court's sanctions did not cure." *Id.* at 547-48.

The defendant attempted to rely on Sixth Amendment speedy trial precedent to show that the delay he suffered constituted prejudice for purposes of showing his entitlement to more severe sanctions as a result of the government's discovery violations. The Tenth Circuit rejected that argument stating, "'prejudice' means different things in different legal contexts." *Jumaev*, 20 F.4th 548. Delay was thus relevant to assessing prejudice "only to the extent that delay impaired the ability to mount his defense." *Id.* To that end, the defendant was unable to show he suffered prejudice due to delay. *Id.* at 548-49. And with regard to the prejudice that the defendant did suffer – *i.e.*, needing more time to prepare for trial – this was taken care of by the remedies the district court crafted. *Id.* at 549. Defendants here are similarly unable to show prejudice to their ability to mount their defense based on losing 12 days to review discovery.

Put simply, any sanction this Court imposes must be narrowly tailored to the error here. The salient question is what sanction will remedy the fact that the government failed to produce discovery on May 23, 2024, and defendants had to wait 12 days before their attorneys

25

had access to it? The answer is that the defendants should be provided with more time to review the discovery and/or for filing of their motions. A dismissal of the indictment far exceeds the error required to be remediated. As it stands, defense counsel has access to the discovery and, once the issue concerning the protective order is resolved, defendants will also have access.

### C. Defendants Are Not Entitled to Speedy Trial Act Dismissal/Sanctions.

Under the Speedy Trial Act, if a defendant is not brought to trial within the time limit required by 18 U.S.C. § 3161(c) as extended by section 3161(h), the information or indictment "shall be dismissed." 18 U.S.C. § 3162(a)(2). The statute provides factors the court shall consider in determining whether to dismiss an indictment with or without prejudice "among others" to include "seriousness of the offense," "facts and circumstance which led to the dismissal," and "impact of a reprosecution" on the administration of [the Speedy Trial Act] and the administration of justice." *Id.*

Some defendants have tried to utilize the mandatory sanction framework of the Speedy Trial Act as a vehicle for this Court to rescind its prior speedy trial exclusion of time and to dismiss the indictment with prejudice to sanction the government's conduct here. The government, however, is unaware of any legal support for the notion that a trial court may co-opt the Speedy Trial Act for this purpose. Rather the Speedy Trial Act stands as "a sentry designed to guard a particular set of gates; it cannot be transformed into a knight errant, riding across the landscape to do battle with evils essentially unrelated to the speedy trial paradigm." *United States v. Hastings*, 847 F.2d 920, 927 (1st Cir. 1988); *see also*, *United States v. Phillips*, 775 F.2d 1454, 1456 n.2 (11th Cir. 1985) (where government's discovery delinquencies were not causally connected to speedy trial violations, they cannot be counted against prosecution in

Speedy Trial Act balancing); *United States v. Kramer*, 827 F.2d 1174, 1178 (8th Cir. 1987) (approving *Phillips* causal connection rationale). "The absence of any causative link between the government's truly blameworthy behavior and the speedy trial infraction is, we think, supremely important." *Hastings*, 847 F.2d at 927. "To take punitive action addressed to misconduct causally unrelated to any actual speedy trial infraction would be tantamount to sanctioning dismissal of cases for prosecutorial misconduct. That is a rocky road to travel where, as here, no harm has befallen defendant in consequence of the improper acts." *Id*.

Here the defendants fail to identify any connection between the delay in withholding discovery and the Speedy Trial Act because none exists. This Court has recognized the same in its Decision and Order by noting that the mandatory exclusions the Act provides for motion practice would appear to be applicable, regardless of whether the Court denied or rescinded its prior interests of justice exclusion. *See* Docket No. 173, at 2. In the absence of a factually supported finding of bad faith or pattern of neglect, an "isolated unwitting violation" of the Speedy Trial Act cannot support a decision to dismiss with prejudice. *United States v. Hernandez*, 863 F.2d 239, 244 (2d Cir. 1988).

To the extent that defendants rely on cases like *Morgan*, 493 F. Supp. 3d 171, and *United States v. Graham*, No. 1:21-cr-195, 2022 WL 2873876 (W.D.N.Y. May 2, 2022), for the drastic remedy of recission of this Court's prior interests of justice exclusion of time under 18 U.S.C. § 3161, those cases are distinguishable. In *Morgan*, the court had excluded time from May 29, 2019, through January 31, 2020. *See* 493 F. Supp. 3d at 205. Because Chief Judge Wolford found that Magistrate Judge Schroeder had intended to condition the exclusion on the government producing voluntary discovery by July 31, 2019, she found that as a result of the government's failure to meet that deadline, the Speedy Trial Act clock began to run on

August 1, 2019, resulting in the delay of 106 days and necessitating dismissal of the indictment. *Id.* at 206-07. Here, the discovery was ready to be produced but for the absence of an agreed-upon protective order. However, even were this Court to apply the steps Chief Judge Wolford took in *Morgan* to this case, the earliest the Speedy Trial Act clock would run would be on May 24, 2024. Nevertheless, in light of the defendants' motions for sanctions filed on June 10, 2024, which triggered an exclusion under 18 U.S.C. § 3161(h)(1)(D), there is only a delay of 17 days with regard to the Speedy Trial Act.

The circumstances here are also distinguishable from those in *Graham*. In contrast to *Graham*, where no engagement had been made with the defendant in terms of discovery or plea discussions, the discovery for this case — requiring 3-terabyte hard drives — was ready prior to the May 23, 2024, deadline. *Compare with Graham*, 2022 WL 2873876, at * 4. Here, it was the lack of a protective order that prevented the government from timely producing the discovery.

Furthermore, even were this Court to apply the Speedy Trial Act's framework in terms of evaluating whether any dismissal should be with or without prejudice, the application of the § 3162 factors militate in favor of the government for dismissal *without* prejudice. The offenses charged in the indictment are serious. *See, e.g.*, *United States v. Kiszewski*, 877 F.2d 210, 214 (2d Cir. 1989) (upholding determination of the district court to dismiss without prejudice in false statement case). There is no bad faith, *see supra*, and the circumstances here leading to the delay, when factored with the impact of re-prosecution on the administration of the Speedy Trial Act and the administration of justice, simply do not warrant a dismissal with prejudice, or any dismissal. *Cf. Graham*, 2022 WL 2873876, at *5-9. Finally, in terms of prejudice to the defendants, the defendants are unable to show that the 12-day delay has

negatively impacted their ability to defend themselves in this case or prepare for trial. *See id.* at \*9. Accordingly, even under the Speedy Trial Act's framework, dismissal with prejudice is inappropriate.

### D. Defendants Are Not Entitled to Preclusion of Evidence.

The Second Circuit reviews a district court's discretion when imposing sanctions by evaluating "the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *Lee*, 834 F.3d at 159. Absent bad faith on the part of the government, the preclusion of evidence is rarely an appropriate sanction for discovery delay. *See United States v. Marshall*, 132 F.3d 63, 69-70 (D.C. Cir. 1998). "Substantial prejudice" to the defendant is a relevant consideration in determining whether belatedly disclosed evidence ought to be excluded. *See United States v. Sanchez*, 912 F.2d 18, 21 (2d Cir. 1990).

Some defendants have requested preclusion of the evidence produced. Application of the legal standard does not support preclusion where all the factors articulated by the Second Circuit in *Lee* weigh in the government's favor. 834 F.3d at 159. As for the "reasons why disclosure was not made," *id.*, as the government explained, it could not disseminate the material until a protective order was in place. There is no evidence that the decision to withhold was made in bad faith as to warrant an extreme sanction. What is more, the defendants' attorneys now have access to the discovery.

The "extent of the prejudice, if any" *Lee*, 834 F.3d at 159, also counters against a sanction of evidence preclusion. The defendants fail to identify in what way the 12-day delay in access to the discovery materials "affected some aspect of [their] trial strategy." *Id.* at 158 (internal quotation omitted). In other words, defendants cannot show any meaningful

prejudice based on the timing of the disclosure. *See Sanchez*, 912 F.2d at 23 (no prejudice where the defendant "knew the existence of" the late-disclosed evidence "from the outset of the trial."); *cf. United States v. Thomas,* 239 F.3d 163, 165-66, 168 (2d Cir. 2001) (finding substantial prejudice where defendant's statement was disclosed after his direct examination because it would have affected his decision to testify).

Additionally, the defendants fail to address how a continuance, for example, fails to adequately address any prejudice resulting from the 12-day delay. *Lee*, 834 F.3d at 159. Although a continuance is the appropriate, tailored remedy for the violation, none of the defendants requests it. *See United States v. Pineros*, 532 F.2d 868, 871-72 (2d Cir. 1976) (no prejudice where defendant failed to ask for recess or continuance upon receiving new documents); *see also United States v. Monsanto Lopez*, 798 F. App'x 688, 689-91 (2d Cir. 2020) (Summary Order) (government had represented it had produced all Rule 16 discovery but 11 months later it produced more, only a month before trial, and the Second Circuit affirmed district court's granting of a continuance as a remedy to cure the violation where the violation did not cause the defendant substantial prejudice).

Finally, in terms of other relevant circumstances that weigh against preclusion of the evidence, the fact of the matter is that the indictment is still in a pre-trial posture and no motion schedule or trial date has been set. Accordingly, preclusion of the evidence is an inappropriate remedy under the circumstances here.

### E.  Disqualification of the Trial Team is Not an Appropriate Sanction/Remedy.

One defendant has recommended disqualification of the trial team, relying on *United States v. Omni Intern. Corp*., 634 F. Supp. 1414 (D. Md. 1986). *See* Gogolack Motion, Docket No. 187, at 15. In that case, the district court determined that the government committed

longstanding misconduct to including misstatements to the court, involvement in the creation and alteration of documents, where "untrue testimony and a lack of candor" "permeated the entire ten-month hearing." 634 F. Supp. at 1428. The district court found that the misconduct was "as extreme as any found in the reported decisions reviewed by this Court." *Id.* Nevertheless, the court dismissed the indictment without prejudice, and determined that "the Special Agent, Revenue Agent, and the AUSA involved must not participate further in the prosecution of the case." *Id.* at 1440.

The conduct here before this Court is lightyears away from that which occurred in *Omni. Intern. Corp.* If anything, *Omni Intern. Corp.* serves as a good example of precisely the kind of conduct that does merit more severe sanctions. And even then, the district court did not impose the sanction of dismissal of the indictment with prejudice, determining that the grand jury "was completely untainted by and ignorant of the matters of significance to the Court" and that while defendants had certain rights violated by the government's actions, "they have no concomitant right to bar forever investigation into their alleged criminal conduct." *Id.* at 1440.

Especially in this case where there was no bad faith, no deceit, no improper motive, and no prejudice to the defendants in terms of their rights to a fair trial, any disqualification of the trial team is not tailored to the error in the oversight regarding the entry of protective orders and withholding of the discovery production beyond this Court's deadline. Accordingly, this sanction is inappropriate.

## F.  Defendants Are Not Entitled to a Hearing and/or Further Discovery.

Notwithstanding the Court's bad faith finding, the record does not suggest such flagrant or egregious conduct that warrants further discovery and/or a hearing. *See United*

*States v. Mangano*, No. 16-cr-540, 2022 WL 59697 at * 23 (E.D.N.Y. Jan. 6, 2022); *see also United States v. Ventura*, 96 F.4th 496, 502 (2d Cir. 2024) (factual findings can be affirmed without the benefit of an evidentiary hearing "where the relevant facts can be ascertained from the record"). A defendant must make a "substantial preliminary showing of bad faith" before an evidentiary hearing or even limited discovery to support a due process motion may occur. *United States v. Alexandre*, No. 22-cr-326, 2023 WL 416405 at *10 (S.D.N.Y. Jan. 26, 2023) (internal quotation omitted). This Court should deny any request for an evidentiary hearing as the defendants have failed to show any record evidence suggesting an improper purpose underlying the government's error. *See United States v. Astrup*, 189 F. App'x 11, 13-14 (2d Cir. 2006) (Summary Order).

## G. Defendants Are Not Entitled to Release.

Just as the Speedy Trial Act should not be used in the realm of crafting sanctions and remedies for discovery issues, neither should the Bail Reform Act. To the extent that defendants seek their immediate release, they can apply to reopen their detention hearings "before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Notwithstanding the sanction issues raised, at this juncture, defendants fail to demonstrate new information that have a material bearing on the issues whether there are conditions of release that will reasonably assure the appearance of the detained defendants as required and the safety of any other person or community to merit reopening their detention hearings.

**H. Any Issue Regarding the Protective Order Are Premature Until This Court Resolves the Issue of Sanctions.**

Although the Court directed defendants to address the discrete issue of sanctions, many have used this briefing opportunity to challenge the propriety of the protective order. As this Court has recognized, issues attendant to the protective order are not ripe until the Court resolves the instant motions. *See* Docket No. 179.

**I.   Other Sanctions.**

Finally, to the extent that defendants raise the specter of other sanctions to include referrals to bar jurisdictions, again, the government respectfully submits that while it erred, it did not do so with bad faith or improper purpose and there is nothing in the record to show that the government conducted itself here to deceive the court or the defendants. *See, e.g.*, *United States v. Shayne*, No. S405-CR-1067, 2007 WL 1075035, at *21 (S.D.N.Y Apr. 5, 2007) (finding of insufficient evidence of misconduct by AUSA and holding it was inappropriate for defense attorney to summarily refer the AUSA to disciplinary committee based on speculative claims).

<u>**CONCLUSION**</u>

The government acknowledges its error in failing to abide by the discovery deadline and reiterates that the error was not intended to cause any extra work for the Court and/or the parties. The government understands the Court's consternation; it regrets that it did not prepare for the protective order earlier and missed the Court's deadline for producing discovery. Nevertheless, the government's actions under the circumstances do not rise to the level of bad faith required for the sanctions sought by the defendants. Moreover, the appropriate remedy for the government's error is to provide the defendants with additional time to review the discovery and file their motions. That said, the government acknowledges

that it has represented that the least severe sanction would be for the elapse of the 12 days from when discovery was due until the court appearance on June 3, 2024, to be counted against it under the Speedy Trial Act as the appropriate sanction (*see* Docket No. 142, at 24).

If this Court decides to impose any of the sanctions proposed by the defendants, the government respectfully requests a stay of that Decision and Order to allow for the government to object and/or appeal before the district court.

For all the reasons stated above, the government respectfully requests that the Court reconsider its July 29, 2024 Decision & Order as it pertains to the bad faith finding, and deny the defendants' motions for sanctions as incommensurate with the violation.[7]

DATED:  Buffalo, New York, March 1, 2024.


TRINI E. ROSS
United States Attorney

BY:   s/ TIFFANY H. LEE
      s/ CAITLIN M. HIGGINS
      Assistant United States Attorneys
      United States Attorney's Office
      Western District of New York
      138 Delaware Avenue
      Buffalo, New York 14202
      (716) 843-5818
      Caitlin.Higgins@usdoj.gov

---

[7] If the government did not address each of the defendant's requests for proposed sanctions, the government objects to the extent the sanction is not in the form of a continuance which, under the law, is the most appropriate sanction to remedy the violation.