UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | 23-CR-99-LJV-JJM |
| v. | |
| SIMON GOGOLACK, | **RESPONSE TO MOTION FOR RECONSIDERATON** |
| Defendant. | |

_____

## Introduction

After this Court ruled that the government engaged in bad faith by refusing to adhere to court-ordered deadlines, it invited briefing on appropriate sanctions. It did not invite further briefing on the issue it had already decided – that the government had engaged in bad faith. Nevertheless, and in keeping with the government's *modus operndi*, the government again attempts to relitigate a settled and unfavorable outcome.

For the following reasons, and those in the defense's principal brief, this Court should not change its decision. Further, this Court should not be persuaded by the government's revisionist history and minimization of its bad faith conduct. Rather, it should consider – as case law dictates – the larger context and pattern of government misconduct. It should then dismiss the case with prejudice to deter both that pattern and the "calculated decision" to violate the discovery order. Dkt. 173 at 5.

## Argument

**A. The Government has not met the strict standard for reconsideration.**

The government fails to meet the demanding standard for reconsideration. "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed

sparingly." *Ortega v. Mutt*, 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *In re Lettieri*, 2024 WL 1076271, at *1 (W.D.N.Y. Mar. 12, 2024).

The government effectively concedes that none of these exist. It does not argue that this bad faith finding would lead to a manifest injustice or that the Court made a clear error. The government does not point to any new facts or law. In fact, it bases its request on the "current state" of the law. Dkt. 191 at 5. Here again, the defense and the court must expend valuable resources addressing another meritless motion for reconsideration.

Moreover, a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (internal quotation and citation omitted).

The government already had the opportunity to explain its conduct. *See* Dkt. 122 (setting deadline to respond to defense motions for sanctions). It took that opportunity, filing a 27-page response to the defendants' sanctions request. *See* Dkt. 142. The Court considered the government's briefing, quoting its response throughout its Order. *See generally* Dkt. 173. But now, after receiving an adverse ruling, the government attempts to pick apart the Court's ruling, devoting pages to bad faith standards in civil cases in attempt to "plug gaps." *See Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007).

This is impermissible, and thus this Court should deny the motion for reconsideration.

### B. Dismissal with prejudice remains the appropriate remedy.

The government's argument against dismissal and for reconsideration relies on a procession of qualified denials and post-hoc factual revisions:

- The court's discovery order was not actually an order, but a deadline to provide voluntary discovery.

- If it was an order, the order did not expressly require rolling discovery.

- If it did require rolling discovery, the government did not commit to it.

- If the order did expressly require rolling discovery and the government committed to it, the government did not consciously disregard the order.

- If the government did consciously disregard the order, there was no ill-motive or bad faith behind it.

- If there was ill-motive or bad faith, then it was only a 12-day delay.

Each assertion is either untrue or minimizes government misconduct.

First, the Court's discovery order was an order. *See* Dkt. 74 ("TEXT ORDER").

Despite the government's claims, the discovery was not "voluntary." *See* Gov. Mot. for Reconsid., Dkt. No. 191 at 1 ("On February 23, 2024, the Court set a scheduling order, which directed the government to produce *voluntary* discovery to the defendants on or before May 23, 2024.") (emphasis added). The phrase "voluntary discovery" is a colloquialism adopted in this District, and, at least in the criminal context, in this District alone, to refer to discovery provided before indictment and before Rule 16 technically applies. But there was nothing voluntary about it because Mr. Gogolack had been indicted. The defense demanded discovery on numerous

3

occasions,[1] Rule 16 mandates it, and, most importantly, the Court ordered it. *See* Dkt. 74 (ordering that "As discussed during today's proceeding, the government *shall provide discovery* . . . .") (emphasis added).

The government claims that the Court "did not expressly mandate that discovery be provided on a rolling basis in its text order." Dkt. 191 at 11. But the Court "*direct[ed]* the government to provide discovery on a rolling basis, to extent possible." Dkt. 73 (emphasis added). The Court believed that possible because the government all but told the Court it had materials ready to go out based on its diligence:

> The Court: Is there a possibility of doing rolling production during the 90 day period?"
>
> [The government]: I certainly think so, Judge. I think that there's material that is probably close to ready to out go at this point because we've obviously been working on it since the return of the indictment."

Tr. Feb. 23, 2024 at 10.

This exchange only occurred because the Court had initially proposed 60 days, and the government wanted an additional 30. The Court allowed those 30 days with the concession that it be provided on a rolling basis.

---

[1] At the September 14, 2023 arraignment for Mr. Gogolack, counsel for the government also referred to discovery as "voluntary." Counsel for Mr. Gogolack then made a formal demand under Rule 16:

> MR. BAGLEY: Judge, just briefly on that matter because I know Mr. Cooper takes a very literal view of the discovery obligations that he has, Judge. So there is an indictment now. I do make a formal demand for discovery, and we are entitled to it now with that demand, Judge, so it's not technically voluntary anymore, Judge.

Tr. Sept. 14, 2023 at 52. *See also* Fed. R. Crim. P. 16 (government "must disclose" various items "upon a defendant's request.").

Next, the government – for the first time after having submitted a full brief and offering oral argument on the issue – claims that "it did not affirmatively commit to" providing discovery on a rolling basis. Dkt. 191 at 11.

This is not true, as the government's own earlier pleadings demonstrate: "When the Court asked the government to make discovery available on a rolling basis 'to the extent you can,' the government agreed." Dkt. 147 at 17 (internal citation omitted). While inconvenient now, the government also consented to this Order at the February 23, 2024 status:

> The Court: I'm just looking at going forward and what is the most efficient way to do so. I'll give you the 90 days. Okay? But I do want—to the extent that you can, I want the discovery to be produced sooner than that date as best you can.
>
> [The government]: Understood, Judge.
>
> The Court: On a rolling basis so that people can hit the ground running in terms of what they think they need to do.

Tr. Feb. 23, 2024 at 12.

Next, the government attempts to maintain that, even if there were an order, it did not consciously disregard it. Notably, the government claims: "nothing in the record supports a conclusion that the government's conduct reflected a conscious decision to ignore the Court's ordered discovery deadline . . ." Dkt. 191 at 11.

But just one page later, the government acknowledges that it was a conscious decision: "And while the government *did consciously decide* to withhold the production of discovery it had told defense counsel was ready until a protective order was in place. . ." *Id*. at 12. The government seems to be struggling to justify its unjustifiable conduct.

Next, the government argues that, even if it did disregard the order, it had no improper motive nor did it seek to gain a tactical advantage in doing so. Dkt. 191 at 11-12. But that

5

argument comprises nothing more than wishful bromides; with one hand the government held discovery out of reach, and with the other, it proposed a protective order that would have required defense counsel to violate its ethical duties and tell the government with whom we had shared discovery. For the government to release discovery, defendants had to agree to an attorneys'-eyes-only protective order. To this day, Mr. Gogolack has no access to his discovery as it relates to the most significant charges. He cannot pour through the hundred of thousands of pages of discovery and assist in his defense, as the Constitution requires.

    The government ignores this and instead asks this Court to take it on faith that it had no ill-will and meant to gain no advantage. But the government glosses over that: (1) it allowed the Court to set a 90-day discovery deadline without mentioning a protective order; (2) it allowed the entire 90-day discovery period to lapse without mention a protective order; (3) Six days after the discovery deadline, it told defendants that it will "release" discovery when a protective order is authorized and ask defendants to consent to a proposed protective order (Dkt 123-1 at ¶ 17); (4) it included within that proposed protective order provisions that would limit who the defense could retain as an investigator/paralegal/agent and require the defense to tell the government who they share discovery with (Dkt. 129-1 at 3, 6); (5) it then filed a pleading blaming defense counsel for the outstanding protective order (Dkt. 123-1 at ¶¶ 18-22); (6) it rejected a defense proposed protective order sent six days before the deadline to file a motion for a protective order (Dkt. 142 at 25-26); (7) it responded on the deadline via email that it intended to file a motion for a protective order (Dkt. 129); and (8) it filed a subsequent pleading complaining that defendants' did not try to negotiate further after receiving the email (Dkt. 142 at 26).

    This is nothing new to this Court, which understood the connection between the government's decision to violate its discovery order and the protective order:

> "The government now asks me to retroactively restrict the defendants' use or dissemination of the discovery which it had been ordered to produce without restriction by May 23, 2024. However, since the government made a calculated decision to disobey my order, and to defer its request for a protective order until after the deadline for production had expired, that request is problematic.

Dkt. 173 at 5 (internal citation omitted, emphasis original).

The facts continue to support a bad faith finding. The government previously told the Court that, amid a complex trial, it could not ask other attorneys to step in and help with the discovery process. Dkt. 142 at 3-4.

But when faced with sanctions for their bad faith decision to violate the Court's order, the government enlisted two new attorneys and filed a 34-page brief before the court's deadline. With the immense resources of the United States Department of Justice, this was a matter of priority, not ability.

Delayed discovery also allowed the government to selectively present narratives that best accomplished their immediate needs without defendants being able to push back in the moment. For instance, the government argued at co-defendant John Ermin's detention hearing that Simon Gogolack was offering "hit man" services and lured Crystal Quinn to Wellsville to have her killed. Dkt. 4; Tr. Dec. 19. 2023 at 44 (docketed 1/4/24). But the government never made that argument at Mr. Gogolack's detention hearings before this Court, perhaps because a defense attorney who had reviewed Mr. Gogolack's texts – which were among the limited discovery that Mr. Gogolack had received but Mr. Ermin did not – could cast doubt on that bold claim.

***

The government strips all context from this Court's decision in its attempt to argue that its conduct warrants no meaningful sanction. It contends that its conduct resulted in only a 12-

7

day violation. Dkt. 191 at 28, 29, 30, 34. But to call this a mere 12-day delay is to call *Moby Dick* a book about a fishing trip – it requires ignoring everything else.

The government has a documented history of failing to meet its discovery obligations. For those failures, it has received sanctions short of full dismissal. Despite those sanctions, the government has now *decided* to not meet their discovery obligation.

The government argues that those cases are different. It violated its obligations in other ways and received different sanctions. Dkt. 191 at 23-24. Put another way, in those cases the government did not act in bad faith and the case did not get dismissed. After receiving those lesser sanctions, the government now acted in bad faith. The government itself recognizes that dismissal may be appropriate "to deter future illegal conduct." Dkt. 191 at 17 (quoting *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995)). And that is precisely the reason dismissal with prejudice is necessary here.

Prejudice exists and continues to exist. It is inherent in Mr. Gogolack's detention. In the context of Speedy Trial dismissal, excessive pretrial detention establishes prejudice. As the *Barker* Court noted that "[m]ost jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time." *Barker v. Wingo*, 407 U.S. 532–33 (1972). Mr. Gogolack has now waited over one full year in custody without the ability to meaningfully challenge the government's narrative.

Further, while defense counsel has received discovery, a protective order currently prevents Mr. Gogolack from reviewing in discovery and fully assisting in his defense. Likewise, that protective order prevents defense counsel from using discovery to investigate the case – an inherently time sensitive activity. Counsel cannot show discovery to witnesses, nor can defense counsel meaningfully engage with expert witnesses without being able to share discovery.

**Conclusion**

The government has not pointed to any new laws or facts that warrant that Court reconsidering its correct conclusion that the government acted in bad faith when it ignored the Court's discovery deadline. Instead, the government has continued its efforts to resist this Court's orders and re-write the facts surrounding discovery. Considered in the full context of this case and its larger pattern of past conduct, dismissal with prejudice is the appropriate remedy.

**DATED**:	Buffalo, New York, August 20, 2024

Respectfully submitted,

**/s/ Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
jeffrey_bagley@fd.org
Counsel for Defendant Simon Gogolack

**/s/ John Morrissey**
John Morrisey
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
john_morrissey@fd.org
Counsel for Defendant Simon Gogolack

**TO:**	Caitlin Higgins, *et al*.
	Assistant United States Attorneys