UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                        Plaintiff

v.                                    FILE NO.: 23-CR-99-LJV-JJM

HOWARD HINKLE,

                        Defendant
_____

**RESPONSE TO GOVERNMENT'S MOTION FOR RECONSIDERATION OF THE COURT'S DECISION AND ORDER DATED JULY 29, 2024, AND GOVERNMENT'S RESPONSE TO THE DEFENDANT'S REQUEST FOR SANCTIONS**

Dated:  August 21, 2024
        Hamburg, New York

                                  Respectfully submitted,

                                    _s/ Daniel J. Henry, Jr._
                                    Daniel J. Henry, Jr., Esq.
                                    Frank Bogulski, Esq.
                                    Attorneys for _Howard Hinkle_
                                    16 Main Street
                                    Hamburg, New York 14075
                                    (716) 648-0510
                                    dhenry@villariniandhenry.com

To:   Hon. Magistrate Judge Jeremiah J. McCarthy
      United States District Court
      Western District Court
      2 Niagara Square
      Buffalo, New York 14202

      Nicholas T. Cooper, Esq.
      Joseph M. Tripi, Esq.
      Casey L. Chalbeck, Esq.
      United States Attorney's Office
      Federal Centre
      138 Delaware Avenue
      Buffalo, New York 14202

The Defendant, Howard Hinkle, by and through his attorneys, Daniel J. Henry, Jr., Esq., and Frank M. Bogulski, Esq., hereby submits this Reply to the Government's Motion for Reconsideration of the Court's Decision and Order dated July 29, 2024, and the Government's Response to the Request for Sanctions.

## ARGUMENT

The standard set by the Second Circuit for granting a motion for reconsideration is strict "and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the Court overlooked – matters in other words, that might reasonably be expected to alter the conclusion reached by the Court. *Shrader v. CSX Transp. Inc.,* 70 F. 3d 255, 256-257 (2d Cir. 1995), *In re Lettieri,* No. 23-MC-32-LJV, 2024 WL 1076271, at 1* (W.D.N.Y., Mar. 12, 2024). Justifying reconsideration are intervening change of controlling law, the availability of new evidence, or the need to correct a *clear error or prevent a manifest injustice.* (Emphasis added). *Id. at *1.*

In the case at bar, there are no intervening changes of law or availability of new evidence. Nor is there a clear error in the Court's decision or the need to prevent a manifest injustice. In fact, to reverse its decision and let the Government off the hook for its blatant disregard for the Court's discovery order and historical pattern of failing to abide by its disclosure obligations would be a manifest injustice to the defendants.

The Government, in its attempt to seek reconsideration, claiming "no bad faith" dances around, if not misses entirely, the Court's point for finding bad faith and gross negligence. The Government tries to cover its bad faith by simply claiming their actions were caused by two

oversights (1) failure to seek a protective order prior to the May 23, 2024, discovery deadline, and (2) failure to inform the Court in advance of the expiration of the May 23, 2024, deadline that a protective order was necessary before it could produce the discovery. (Dkt. #191 at 8 and 9).

What the government misses entirely in its motion, and what the Court clearly saw in reaching its findings of bad faith is the government's misrepresentation to the Court when asked on February 23, 2024, of producing discovery to the defense and allowing for rolling discovery. The government said, "I think that there is material that is probably close to ready *to go out at this point* because we've obviously been working on it since the return of the indictment…." (Emphasis added) (Dkt. #173 at 3).  The government made this clear misrepresentation to the Court knowing it had received no discovery, discovery discs, discovery bate stamped for release, etc. from the agents or those in charge of marshalling the discovery material.  It was not until April 26, 2024 – more than a month later – that the government received a hard drive containing the discovery material.  In addition, it took almost another month – to May 20, 2024, for the materials to be ready and available for disclosure to the defense.  Further, even with the materials ready and available for disclosure to the defense – three days short of the deadline date – the government deliberately withheld the materials from the defense by claiming the need for a protective order and 3 terabyte hard drives from each defendant.  The government had known on April 26, 2024, the size of the hard drive defense counsel would need to copy the materials. (Dkt. 186 at 5, 7-8).  It is this conduct and deliberate disregard of complying with the Court's discovery order that the Court rightfully found bad faith.  The government's attempt to hide this by merely claiming they failed to recognize there was no protective order, and they failed to notify the Court that discovery was ready, but a protective order was needed before the materials

will be released, does not eliminate or remove their conduct from that of bad faith found by the Court.

At no time prior to the May 23, 2024, discovery deadline, did the government contact the defense and ask for consent to request an extension of the May 23, 2024, deadline. Nor did the government bring a motion to the Court requesting an extension of time. The government, on its own, as they did in *United States v. Parks* 19-cr-87, *United States v. Padua,* 20-cr-191, *United States v. Morgan,* 18-cr-108*, United States v. Tyshawn Brown,* 19-cr-222, and *United States v. Coleman,* 19-cr-221, disregarded their discovery obligations and/or the Courts discovery order and handled discovery on their own terms.

The government, in its motion – Dkt. #191 at 24 – references the *Morgan* case stating "Indeed, it is because of *Morgan* that efforts were made here to ensure careful review, organization, processing, and indexing of the discovery, and why turning over the discovery on a rolling basis and/or absent a protective order was not feasible." It is a statement like this by the government that supports the finding of bad faith by the Court. This shows the government knew on February 23, 2024, it was not prepared to turn over any discovery, let alone do rolling discovery. However, it misrepresented to the Court that it could in order to get the extended 90-day time period to provide the defense with the discovery material. This misrepresentation is further supported by the fact that the discovery hard drive was not turned over to the government until April 26, 2024, and discovery materials were only complete and ready for distribution on May 20, 2024.

Mr. Hinkle, as set out in Dkt. #186 at 8-10, has been prejudiced by the government's conduct. Specifically, in the ability to defend himself. The government has had the benefit of reviewing, investigating and analyzing voluminous discovery materials over an extended lengthy

period of time.  They have worked on and conducted their investigation for a long time.

Included in their evidence was Crystal Quinn's cell phone information and communications that

had the potential to exculpate Mr. Hinkle.  The delay in providing this information, and with the

passage of time, prejudiced Mr. Hinkle in investigating this evidence, locating and securing other

witnesses (who now with the delay may no longer be available) or, at the very least, create a

dispute in facts as to the allegations.

      For example, during Mr. Hinkle's detention hearing on October 24, 2024, the government

made claims that the "FBI further learned from another defendant – not in this case, in a different

case – witness/defendant said that Mr. Hinkle told Ms. Quinn that there was a bounty on her

life." (Dkt #10 at 5).  Mr. Hinkle did not have this interview video of the witness/defendant at the

time of the detention hearing.  When Mr. Hinkle's attorneys received the discovery materials on

June 3, 2024, and subsequently reviewed the video interview of this witness/defendant, the full

context of the interview showed the witness/defendant never heard Mr. Hinkle make such a

statement, but instead it was claimed by Ms. Quinn to the witness/defendant.  Further, the

witness/defendant goes on to say that Ms. Quinn was high on drugs when she made this claim,

and that Mr. Hinkle would never be involved in anything at all nefarious and doesn't believe Mr.

Hinkle would have said this.  The government only represented a portion of the interview to the

Court, withholding the exculpatory portion in order to have Mr. Hinkle detained.  If the

government is seeking credit for the portion of the witness/defendant's claim of Mr. Hinkle

telling Ms. Quinn there was a bounty on her life, they should also credit as truthful the

witness/defendant's statement that Mr. Hinkle would never involve himself in anything at all

nefarious and doesn't believe Mr. Hinkle even said that.

The government also made reference during the detention proceedings involving Mr. Hinkle that they viewed a body camera video at the time of the search of Mr. Hinkle's residence and subsequent arrest.  In viewing the video, they claim Mr. Hinkle made suspicious gestures and movements and behavior – alluding to the fact he may be attempting to retrieve a weapon. (Dkt. #10 at 6).  In reviewing the Discovery Index provided to the defense on June 3, 2024, there is no mention of this body camera video involving Mr. Hinkle.  This creates two problems.  First, the defense never had this video to review in its entirety to address at the detention hearing. Does the entire video have clips that may be favorable/exculpatory to Mr. Hinkle?  Second, the government is claiming they wanted to have all discovery material available to turn it over to the defense all at once.  If that is the case, the fact that we still do not have this body camera video discredits the government's claim of holding off discovery and rolling discovery to "ensure careful review, organization, processing, and indexing of the discovery…".  This demonstrates there are still discovery materials that have not been turned over despite the Court's order and the government's representation that everything was turned over, although beyond the Court's deadline.  This continues to demonstrate the government's history of failing to comply with their discovery obligations.  *See Parks, Padua, Morgan, Brown and Coleman, supra.*

Furthermore, it also precluded Mr. Hinkle from obtaining evidence, that if investigated, would provide a change in circumstances that the Court could consider to find conditions or a combination of conditions that would allow for Mr. Hinkle's release from jail.  Instead, Mr. Hinkle has been continuously incarcerated for over 9 months during the pendency of this case.

**SANCTIONS**

The government contends the sanctions should simply be a continuance to allow the defense to review the discovery and the removal of 12 days from exclusion of the speedy trial time.  That is not sufficient nor appropriate under the circumstances involving the government's discovery violations.  The government itself stated "Put simply, any sanction this Court imposes must be narrowly tailored to the error here."  The error here is deliberate misrepresentation to the Court of providing discovery material to the defense, a deliberate violation of ignoring the Court's discovery order deadline for providing discovery, seeking a protective order at the last moment of the discovery deadline, and conditioning the release of discovery on the issuance of the protective order.  The Court found this to be bad faith.  This, together with the government's history of failure to comply with their discovery obligations warrants sanctions of dismissal of the indictment with prejudice, or, in the alternative, to preclude the introduction of all evidence that was to be turned over to the defense on or before May 23, 2024, pursuant to Rule 16 – "…enter any other order that is just under the circumstance."

**CONCLUSION**

For the reason set forth above, the Defendant, Howard Hinkle asks the Court to deny the government's motion to reconsider its Decision and Order of July 24, 2024 (Dkt. #173) and impose the sanctions of dismissal with prejudice, or in the alternative, preclusion of all evidence

that was to be turned over on or before May 23, 2024.  Mr. Hinkle further joins in any replies

filed by his co-defendants that are applicable to his case.


_s/ Daniel J. Henry, Jr._
Daniel J; Henry, Jr., Esq.

s/Frank Bogulski, Esq.
Frank Bogulski, Esq.

9