IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

-v-                                                  Case No.: 23-CR-99

PETER GERACE, JR.,

                        Defendant.

_____


## <u>MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR RECONSIDERATION OF THE COURT'S DECISION AND ORDER DATED JULY 29, 2024</u>




Dated: August 22, 2024



                                        <u>s/ Mark A. Foti, Esq.</u>
                                        Mark A. Foti, Esq.
                                        The Foti Law Firm, P.C.
                                        16 W Main Street, Suite 100
                                        Rochester, NY 14614
                                        (585) 461-1999

Defendant Peter Gerace, Jr., by and through counsel, Mark A. Foti, Esq., provides the following memorandum in response to the government's Motion for Reconsideration of the Court's Decision and Order Dated July 29, 2024 (hereafter "Reconsideration Motion"). Dkt. # 191.

## TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................................... 3

II. BACKGROUND ......................................................................................................... 5

III. DISCUSSION ........................................................................................................... 8

    A. THE GOVERNMENT DID NOT PRESENT GROUNDS FOR RECONSIDERATION ................... 8

        1. *The Law of the Case Doctrine and the Legal Standard for Reconsideration* ...................... 8

        2. *The Government Seeks Solely to Relitigate an Issue Already Decided* ............................ 11

    B. THE GOVERNMENT'S CHARACTERIZATION OF THE DISCOVERY VIOLATION IS NOT ACCURATE ..................................................................................................... 14

        1. *The Government's Attempts to Minimize the Violation Omits Essential Facts* ........... 14

        2. *The Omitted Facts Constitute Evidence of Deceit and a Motive to Delay* ...................... 20

        3. *Despite the Government's Argument to the Contrary, This Court's Decision and Order Did Not Promulgate a Strict-liability Standard for Court-imposed Deadlines* ................... 22

    C. THE GOVERNMENT'S RECONSIDERATION MOTION FAILS TO ADDRESS OTHER GOVERNMENT MISCONDUCT WITHIN THIS RECORD, INCLUDING JUDGE SHOPPING ........ 23

    D. THE GOVERNMENT SOUGHT TO STRATEGICALLY BENEFIT FROM DELAYED DISCLOSURE AND MR. GERACE WAS CLEARLY PREJUDICED IN MULTIPLE RESPECTS .............................. 25

IV. CONCLUSION ......................................................................................................... 28

# I. INTRODUCTION

This record clearly demonstrates misconduct supporting this Court's determination that "[t]he government's willful violation of my order constitutes bad faith." Dkt. # 173 at 5.

Prior to the Decision and Order which contained this Court's conclusion, quoted above, the government had multiple opportunities to explain its willful violation of this Court's Discovery Order. It had two court appearances (June 3, 2024, and July 22, 2024). It submitted a sworn affidavit attached to a motion for an exclusion of time from the speedy trial act, submitted two days after the June 3, 2024, conference (Dkt. # 123-1). It had a response to the defendants' motions for sanctions. Dkt. # 142.

The explanation that the government has seemingly settled on does nothing to detail what efforts were actually made to produce rolling discovery following the February 23, 2024, status conference, for which there were seemingly none. Instead, it attempts to claim that discovery could not be produced without a protective order and the government simply forgot to request a protective order until over three months after the Court had ordered rolling discovery to begin on February 23, 2024, and the government did not think to raise the issue until nearly a week after the deadline to conclude rolling discovery had already passed.

The government's explanation is illogical as a general premise, but more problematic is what it clearly implies: if the government only first thought about a

protective order when it was prepared to turn over discovery (after the deadline had already passed), then it never had any real intention to engage in rolling discovery and the government made false representations to this Court on February 23, 2024, and at other junctures.

The government has opposed all efforts to take a closer look into what efforts were actually made to disclose discovery in this case in a manner consistent with this Court's Order.

This Court has not indicated that it finds the government's explanation to be believable or acceptable. It merely noted that as a baseline, "the government's *alleged* oversight… for almost three months was not merely negligent, but *grossly* negligent." Dkt. #173 at 4 (emphasis added).

The government, in many ways, appears to benefit from the Court's willingness to make its finding of bad faith on the facts as currently presented, instead of forcing the government to provide evidence associated with the actual efforts to produce discovery or requiring testimony to explain its inconsistent statements to this Court.

Nonetheless, the government has moved for reconsideration of this Court's findings. In making its motion, the government failed to adhere to the strict limitations on reconsideration motions and attempted to relitigate issues already decided by the Court. In furtherance of that effort, the government seeks to considerably minimize the scope of its misconduct.

For the reasons discussed herein, the government's motion for reconsideration should be denied, and the proposed sanction of dismissal with prejudice should be granted. Or alternatively, the Court should consider issuing a decision to dismiss the indictment and hold a hearing to determine whether it should be with or without prejudice.

## II. BACKGROUND

A detailed background has been presented in multiple other submissions on behalf of Mr. Gerace, including: the Motion for Sanctions (Dkt. # 132-1 at 3); the Response to the Motion to Exclude Time (Dkt. # 148 at 6), and the Memorandum Recommending a Sanction of Dismissal (Dkt. # 188 at 5).[1]

In the Reconsideration Motion, the government provides its own review of the procedural background of this case, but conspicuously absent from its review is multiple noteworthy events, including the government's Motion to Exclude Time (Dkt. # 123), in which is sought to circumvent this Court's decision not to issue a Speedy Trial Act exclusion at the June 3, 3024, status conference. *See* Dkt. # 191 at 2 (discussing June 3, 2024, status conference, and then jumping to motions filed on June 10, 2024, skipping the government's motion to exclude time, filed June 5, 2024).[2]

---

[1] The defendant adopts and incorporates the factual background detailed in each of these submissions.

[2] The Reconsideration Motion also omits any reference to court appearances in January 2024 when multiple defendants requested initial disclosure, including a discovery deadlines, which the government opposed.

The Motion to Exclude Time was the first submission where the government addressed the Court after it was revealed that it had blown off the Court's discovery order.

Rather than acknowledge its violation of this Court's Order, the government seemed to blamed defense counsel for not getting hard drives fast enough[3] and not immediately agreeing to its proposed protective order, which it emailed to the defendants almost a week after the deadline to conclude discovery had already passed.

The defense responded to the motion for an exclusion of time, noting:

> The government did not label the motion as a motion for reconsideration but given the Court had already denied an exclusion of time almost identical to the exclusion requested in the government's new motion, it is clearly a motion for reconsideration as to those dates.
>
> *This follows a trend developing within the last several months that the government will file motions seeking relief for reconsideration when it loses a motion.* It did so in this case, when the Court denied the government's motion for disclosure of Gerace and Ermin's financial affidavits. *See* Dkt. # 86, 90 (government claimed it was entitled to file a Reply despite never requesting the opportunity to file one prior to the Court's Decision). It did so in Bogiovanni et al, when the District Court denied the government's motion to disqualify Eric Soehnlein. *See* Case no. 19-cr-00227-LJV-MJR, Dkt. # 919 (after the District Court

---

[3] It was not until May 20, 2024, only three days before the deadline to complete discovery disclosure, that the government advised defense counsel it would require a 3-terabyte hard drive from each of the defendants in order to provide discovery. The government indicated the copying of discovery "upload may take 2-3 days to complete." Most defendants provided hard drives over the next week and a half. None of the defense attorneys received a hard drive back regardless of how quickly each attorney was able to purchase the drive and deliver it to the government. Instead, on May 29, 2024, for the first time, the government sent an email stating that it would withhold discovery until a "protective order is authorized by the Court."

issued a detailed and lengthy Decision and Order denying the government's motion to disqualify Mr. Soehnlein, the government filed a Motion and Memorandum to Resolve Actual and Potential Conflicts of Interest arguing that the District Court should not accept any Curcio waiver and should disqualify Mr. Soehnlein).

In this instance though, the mere filing of the motion is an attempt to accomplish the government's goal. The government will likely contend that the pendency of the motion itself stopped the Speedy Trial clock and thus, by making the motion, the government has attempted to circumvent the consequence of this Court's decision not to exclude time, at least temporarily.

Dkt. # 148 at 21-22.

The defense further noted that in addition to the motion for sanctions already pending, that the Court should also "consider sanctions against the government for bringing this motion as a means of circumventing this Court's decision to deny the exclusion of time." *Id*. at 28.

In the current Reconsideration Motion, the government omitted any reference to its own Motion to Exclude Time, filed on June 5, 2024. The omission is particularly notable, because (1) the Motion to Exclude Time was the first written submission following the violation of this Court's Order, and the government addressed the issue by primarily pointing the finger at defense counsel; (2) the Motion to Exclude Time was clearly intended to manipulate the speedy trial calendar and circumvent this Court's decision not to issue an interest of justice exclusion on June 3, 3024; (3) the defense cited the affidavit in support of the Motion to Exclude Time as containing sworn statements

that were materially inconsistent with other representations by the government; and (4) the defense asked for the Motion to Exclude Time it to be considered in conjunction with sanctions.

Though the government's Motion to Exclude Time may now be moot, the defense still asks that it be considered in conjunction with the determination of an appropriate sanction, and as such, it should be included in any review of the factual background relevant to this motion.

## III. DISCUSSION

### A. THE GOVERNMENT DID NOT PRESENT GROUNDS FOR RECONSIDERATION

#### 1. The Law of the Case Doctrine and the Legal Standard for Reconsideration

There is no statutory authority for a party to make a motion for reconsideration in a criminal case, but petitions for rehearing are generally permissible. *United States v. Healy*, 376 U.S. 75, 78 (1964); *see also United States v. Dieter*, 429 U.S. 6 (1976)

When a party brings a motion for reconsideration, it "must do so within the strictures of the law of the case doctrine." *Virgin Atlantic Airways v. Nat. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

"[T]he law of the case doctrine forecloses reconsideration of issues that were decided — or that could have been decided — during prior proceedings." *US v. Williams*, 475 F. 3d 468, 471 (2d Cir. 2007).

The law of the case doctrine indicates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U. S. 605, 618 (1983).

Only a "clear conviction of error on a point of law that is certain to recur… will prevail over 'the law of the case' whereas 'mere doubt' will not." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964).

"The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F. 3d 95, 99 (2d Cir. 2009)(*quoting United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002))

Thus, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked… a *motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided*." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)(emphasis added).

A motion for reconsideration "should be granted only in extraordinary circumstances." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)(*citing Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 (1988)).

Absent any "criminal procedure provision for a reconsideration motion, courts in this Circuit have applied the applicable civil standard to such motions in criminal cases."

United States v. Larson, 07-CR-304S, 3 (W.D.N.Y. Nov. 23, 2013). "[T]he standard for reconsideration is *'strict.'"* *United States v. Briggs*, 10-CR-184S, 4 (W.D.N.Y. Nov. 7, 2012)(*quoting United States v. Amanuel*, No. 05-CR-6075, 2006 WL 266560, at *1 (W.D.N.Y. Jan. 31, 2006))(emphasis added).

There are three major grounds identified to justify a motion for reconsideration: (1) "an *intervening* change of controlling law"; (2) "the availability of *new* evidence"; or (3) "the need to correct a *clear error* or prevent manifest injustice." *Virgin Atlantic Airways v. Nat. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)(*quoting* 18 C. Wright, A. Miller E. Cooper, Federal Practice Procedure § 4478 at 790)(emphasizes added).

"A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may [they] it be used as vehicle[s] for relitigating issues already decided by the Court." *United States v. Smith*, 105 F. Supp. 3d 255, 258 (W.D.N.Y. 2015)(internal quotations and citations omitted).

The "limitation on motions for reconsideration is to *ensure finality and to 'prevent the practice of a losing party examining a decision and then plugging the gaps* of the lost motion with additional matters.'" *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (*quoting Carolco Pictures, Inc. v. Siroto*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))(emphasis added).

Thus, it has been "recognize[d] 'that reconsideration of a previous order is an extraordinary remedy *to be employed sparingly* in the interests of finality and conservation

of scarce judicial resources.'" *In re Health Management Systems, Inc. Sec. Lit.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)(*quoting Wendy's Int'l, Inc. v. Nu-Cape Construction, Inc.*, 169 F.R.D. 680, 685 (M.D.Fla. 1996))(emphasis added).

### 2. The Government Seeks Solely to Relitigate an Issue Already Decided

Like previous motions for reconsideration brought by the government, none of the three grounds justifying reconsideration are applicable here. There is clearly no intervening change of controlling law between this Court's Decision and Order and the filing of the Reconsideration Motion. There is no "new evidence" offered.[4] There is no clear error or manifest injustice.

Not having a path for reconsideration on any of those grounds, the government cites the language of *In re Lettieri*, No. 23-MC-32-LJV, 2024 WL 1076271, at *1 (W.D.N.Y. Mar. 12, 2024)[5] and argues that "reconsideration is appropriate where, as here, the government has pointed to controlling decisions that the Court overlooked." Dkt. # 191

---

[4] No affidavits are attached to the motion, and the submission is prepared by two AUSAs, Tiffany H. Lee and Caitlin M. Higgins who were not involved in the violation of this Court's Order or any surrounding misconduct. Ms. Higgins was added to the trial team after the violation of the order. Ms. Lee is a well-respected supervisor, widely known for her ethics, and she entered an appearance in conjunction with the Reconsideration Motion.

[5] The District Court in *Lettieri* specifically stated: "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id*. (quoting *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). *Id*. at 2-3. The District Court denied the motion for reconsideration finding the petitioner had not "demonstrated any of the circumstances under which reconsideration might be warranted."

at 15. That attempts to improperly broaden the standard under which reconsideration is available.

Even if the government's broadened standard were applicable, the argument for reconsideration would still fail, because the Court did not make a decision in contravention of controlling authority. The Court found bad faith and did not find it necessary to specifically define it, presumably because, as the government argues, the term is applied by the courts consistent with its ordinary and plain meaning. Dkt. # 191 at 6.

There is nothing in this Court's decision to suggest that it applied any other definition other than its plain meaning.

While the government's Reconsideration Motion presents the argument that the Court overlooked controlling law, that is window dressing for the actual argument which is premised on the government's objection to how the Court applied the definition of bad faith to the facts here. Specifically, the government argues that "the plain meaning of bad faith requires more than the Court's decision implies." Dkt. # 191 at 8. That argument does not support that this Court overlooked controlling authority. It merely attempts to challenge this Court's analysis of the law and facts, even though "a motion for reconsideration is not a device 'intended to give an unhappy litigant one additional chance to sway the judge.'" *See In re Lettieri*, No. 23-MC-32-LJV, 2024 WL 1076271, at *3

(citing *Nossek v. Bd. of Educ. of Duanesburg Cent. Sch. Dist.*, 1994 WL 688298, *1 (N.D.N.Y. Nov. 10, 1994)).

Thus, as a threshold issue, the government is engaging in the prohibited practice a losing party attempting to plug the gaps of a lost motion with additional argument, and the Reconsideration Motion is defective in that it fails to provide an appropriate basis for the Court to issue the "extraordinary relief" of reconsideration.

That notwithstanding, the government's motion would also fail on the merits as it fails to fully or accurately address the circumstances that constitute bad faith. The government avoided addressing most of the facts relevant to the determination of "bad faith" and attempted to minimize the violation of the government's order as merely 12 days of delay in disclosure. As discussed below, the record does not support such a basic view of the violation.

Furthermore, at this point, the record is fraught with evidence, both direct, and circumstantial, demonstrating misconduct in further support for the Court's decision, and even if the Court spared the government from identifying each misrepresentation and example of misconduct, much of it is in the record before this Court, whether the government avoids acknowledging it or not.

## B. THE GOVERNMENT'S CHARACTERIZATION OF THE DISCOVERY VIOLATION IS NOT ACCURATE

While the government claims it "understands the Court's consternation," (Dkt. # 191 at 33), it does virtually nothing to actually address the Court's concerns.

After previously dismissing discovery concerns as a "side show" [7/22/24 Transcript at 16], the government doubles down, repeatedly downplaying the nature of the violation, mischaracterizing it as merely a 12-day delay of discovery disclosure. Dkt. # 191 at 19, 20, 21, 23, 24, 25, 28, 29, 30, 34. That position has already been rejected as it would require the Court to ignore almost all of the facts surrounding the violation.

### 1. The Government's Attempts to Minimize the Violation Omits Essential Facts

The representation that the delayed production of discovery in this case should be viewed as merely 12-days of delay, ignores essential considerations, including, but not limited to those discussed below.

*i. The discovery order to commence rolling discovery was not issued until 49 days after the indictment was filed.*

Following the indictment, the government opposed multiple prior requests for disclosure in January 2024. Notably, the government's trial team was not on trial at any point in January 2024. Thus, although the government would later indicate that the *Bongiovanni* trial contributed to the discovery violation, there is no evidence that the government attempted to prepare the discovery prior to the *Bongiovanni* trial, and the

government opposed efforts by defense counsel to start the disclosure process at that time.

On February 23, 2024, this Court had to give the government an order to produce discovery. At that point 49 days since the indictment had already passed with no discovery production at all.

*ii. The government requested and was given an extraordinarily long period of time to produce discovery.*

The government requested an extraordinarily prolonged period of time to produce discovery, advocating for 90 days, 30 days longer than the Court had proposed giving them, claiming the extra "cushion" would provide.

The government claimed there were two reasons for such an extraordinarily long period of time to produce discovery. One was that "it would be helpful to have a final determination regarding this death penalty issue before we all come back and before motion practice begins, and *I think kicking this out 90 days versus 60 days errs on the side of caution with respect to that determination*. Notice that the government would not seek the death penalty was filed later that day. Dkt. # 75

The sole remaining reason for the "significant amount of discoverable material." [2/23/24 Transcript at 7]. Having reviewed the discovery, it is indeed significant, but it does not appear to be more substantial than what is commonly produced in most mega cases, and in many of those cases discovery is produced on a much shorter time limit.

The government never once referenced the *Bongiovanni* trial as a basis for the extended discovery, likely knowing it was not a legitimate basis for such an extensive period of time to produce discovery. However, the government's subsequent actions, demonstrate that it was motivated to delay proceedings until after the trial was over, because when the government put it, the prosecutors "walked out of court that day… [and] returned to the intensity of a complex trial involving a corrupt DEA agent who was bribed to protected organized crime members and associates."[6] Dkt. # 142 at 17.

*iii. The government represented that it was in a position to produce rolling discovery in order to get the court to issue the extended production time and then immediately disregarded that requirement*

This Court clearly had concerns about such a lengthy period for disclosure, and before deciding whether to give such an extensive period of time for disclosure, the Court asked, "Is there a possibility of doing rolling production during the 90-day period?" [2/23/24 Transcript at 10].

Knowing that the Court was still weighing whether to grant 90 days, the government stated "I certainly think so, Judge. I think that there's material that is probably close to ready to go out at this point because we've obviously been working on it since the return of the indictment." *Id*.

---

[6] As an aside, the government made this assertion on June 14, 2024, even though the evidence it had presented of bribery was so wholly insufficient that the count was dismissed on a Rule 29 motion.

Only after that representation did the Court indicate to the government "I'll give you the 90 days. Okay? But I do want -- to the extent that you can, I want the discovery to be produced sooner than that date as best you can.  On a rolling basis so that people can hit the ground running in terms of what they think they need to do." [2/23/24 Transcript at 12].

The government indicated it "understood," but the record demonstrates that they made no efforts after that date to engage in rolling discovery. They never requested a protective order, and they did not even take possession of the material from the FBI until over two months later, after the *Bongiovanni* trial had concluded.

The Reconsideration Motion indicates that "while the government indicated it was 'open' to the idea of producing discovery on a rolling basis in terms of what was available, it did not affirmatively commit to doing so." Dkt. # 191 at 11.

Of course, this Court weighed the government's openness to providing rolling discovery in its determination of whether to provide such an extraordinarily long period of time to produce discovery, and when the Court indicated that it wanted the discovery "to be produced sooner than that date as best you can," it was not giving the government permission to blow off efforts to produce discovery until after the conclusion of the *Bongiovanni* trial or to withhold the "material that [wa]s probably close to ready to go out at th[at] point."

The government has never provided any details of the efforts associated with compiling and organizing the discovery, and the claims that it was "impracticable" to provide rolling discovery are illogical and unsupported by any facts other than the trial team chose to exclusively focus on the *Bongiovanni* trial as the defendants in this case lingered in custody.

*iv. The government never indicated it required a protective order during the period of time it was supposed to be producing rolling discovery*

The government never once indicated that a protective order was necessary, even when they were claiming to this Court that they have discovery ready to go out to comply with the rolling discovery requirement. Thus, on February 23, 2024, the Court ordered disclosure to be made without the limits of a protective order, but because over three months later, the government would refuse to provide discovery without a protective order, a temporary "Attorneys' Eyes Only" protective order was put in place.

The temporary Attorney's Eyes Only protective order is still pending, so the defendants have still not been able to review any discovery in this case, as would have been permitted by the February 23 Order, even though we are not over 230 days past the filing of the indictment.

*v. The government did not actually provide all discovery by June 10, as it has claimed*

The government's comments repeatedly suggested to this Court that although they chose not to provide rolling discovery, they ultimately provided the full discovery in this case.

The government said as much directly to this Court at the last appearance. "We got the discovery in their hands, you know. *They all have the discovery now*." [7/22/24 Transcript at 14] (emphasis added).

Except the government did not make full discovery available on June 4, 2024. It provided additional discovery later in the month. And the discovery is clearly missing material, which the defendants now have to work to identify.

For example, just this week, nearly a month after the government told this Court that the defendants "all have the discovery now," counsel for co-defendant Hinkle identified that the government had still not provide body worn camera footage, despite the fact that the government referred to that footage at Mr. Hinkle's detention hearing, where it characterized the content as "important."

Today, in response to that submission, the government provided body worn camera footage, <u>over 300 days</u> after the government first mentioned having reviewed it in the first detention hearing for Mr. Hinkle.

The Reconsideration Motion's repeated representation that "the belated production of discovery occurred 12 days over this Court's deadline" fails to

acknowledge that further discovery continued to be disclosed, including later that month, and that discovery is still missing.[7]

Each of these circumstances, individually, cut against the government's characterization of the misconduct as merely 12 days of delay. Collectively, even without a fact-finding hearing, there is no doubt that the government's violation constitutes bad faith as the Court correctly determined.

## 2. The Omitted Facts Constitute Evidence of Deceit and a Motive to Delay

The government characterizes the violation of this Court's Order as a "procedural error" and claims "there is no evidence to show that the failure to meet the deadline was undertaken with deceit.  Nor is there evidence that the government committed the error with any motive to delay the proceedings, to gain tactical advantage, or with any other improper purpose." Dkt. # 191.

However, the government avoided addressing any of the circumstances discussed above. The record provides substantial evidence where the government claimed there is none, including clear evidence of a motive to delay the proceedings.

---

[7] Moreover, in addition to missing discovery, it appears the government made decisions to withhold search warrant applications and other material which is commonly the subject of discovery disputes and motion practice, further making its comment that the late discovery disclosure would "limit discovery disputes and move this case expeditiously towards trial" (Dkt. # 142 at 1) ring hallow.

The government made no substantive efforts towards discovery prior to the February 23 status conference when the Court pressed the issue. At two prior appearances, *before the Bongiovanni trial had commenced*, defendants asked for discovery and the government opposed those efforts without valid reason to do. The clear inference is that the government was motivated to delay disclosure, which would necessarily delay the proceedings.

When finally pressed on a deadline, the government asked for 90 days, longer than proposed by the Court, and longer than should have been necessary to complete disclosure. Despite how much time had passed since the indictment, the government claimed the extraordinarily lengthy period of time was necessary because of the volume of discovery. The government never indicated that the request was to accommodate the trial team's trial scheduled, likely knowing that would be an improper reason to request such a substantial delay, but the record now demonstrates that the government "returned to the intensity of a complex trial" and put off further efforts towards disclosure until the trial was complete, two months later.

Furthermore, the evidence demonstrates deceit, particularly as it relates to a willingness to engage in rolling discovery, and the inconsistent representations to this court regarding disclosure documented in the defendant's Memorandum recommending a sanction of dismissal with prejudice, which the government has made no attempt to address. Dkt. # 188, 189-1 at 41-44.

<u>3. Despite the Government's Argument to the Contrary, this Court's Decision and Order
Did Not Promulgate a Strict-liability Standard for Court-imposed Deadlines</u>

The government presents the following strawman argument:

> In essence, and in contravention of the precedent articulated
> above, the Court is focused on what it perceives to be the
> "deliberate" nature of the government's conduct and appears
> to promulgate the following strict-liability standard for court-
> imposed deadlines: (1) where a party is aware of a deadline
> in a court order; and (2) fails to comply with that deadline,
> regardless of the motive and/or circumstances necessitating
> the violation, that party has acted deliberately with deceit
> and, thus, in bad faith. The case law, however, even as it
> pertains to civil cases, does not support such a strict-liability
> standard.

Dkt. # 191 at 14.

The government goes on to equate its violation of the court order with a late filing

in a civil case from the Southern District of New York and argues that "if technical

violations of courts' deadlines or other orders constitute bad faith, then litigation will

devolve into a needless game of "gotcha" with every late motion, late response, and

failure to comply, generating a motion for the imposition of some sort of sanction." *Id*.[8]

Of course, a deadline for a written submission, particularly in a civil case, is

different from a discovery order in a criminal case, which has substantial implications for

a defendant's Sixth Amendment right to a speedy trial.

---

[8] Ironically, although it is largely irrelevant to the current litigation, the only party in this case who has
attempted to play "gotcha" with late submissions is the government when it previously attempted to secure
the extraordinary relief of reconsideration on the denial of an earlier motion by arguing that the defendant's
Response was filed one day late. See Dkt. # 86 at 4-5. The submission was "one day" late, because it was
filed 24 minutes after midnight. Dkt. # 87.

That is particularly true in a case such as this, where the government had aggressively advocated for detention of almost all defendants, and those individuals remain detained as the government perpetuates further delay.

It is also true in a case such as this where the extended discovery deadline was never intended for a bulk discovery dump. It was intended to provide a date to conclude the process of rolling discovery, which there is no evidence that the government ever attempted to provide.

The government's attempts to reduce this court's finding of bad faith to a decision instituting a strict-liability standard is belied by the record. The Court made its findings on the facts and circumstances surrounding the willful violation of this Court's Order, which includes the government's motive to delay disclosure in order to accommodate the trial team's trial schedule and procure other strategic benefit and the government's misrepresentations and inconsistent statements made to this court, on the record.

### C. THE GOVERNMENT'S RECONSIDERATION MOTION FAILS TO ADDRESS OTHER GOVERNMENT MISCONDUCT WITHIN THIS RECORD, INCLUDING JUDGE SHOPPING

With a decision of bad faith already pending, the government claims no evidence to support that decision exists, but the almost every portion of this case seems to present evidence of further government misconduct. The defendant's memorandum for sanctions incorporated evidence from August 2023 that was withheld until after the

discovery deadline, which raises additional concerns regarding the government's related case filings in this case, which had already implicated the appearance of judge shopping.

The defense has presented this evidence to the Court, noting that "[t]his alone supports a dismissal with prejudice, or a dismissal with a hearing to determine where it should be with or without prejudice." Dkt. # 188, 189-1.

The government did not acknowledge what clearly is further evidence of judge shopping in its Reconsideration Motion.

The government also fails to address the demonstratively false information contained in the indictment, which has been addressed by the defense multiple times, including the response regarding the protective order (Dkt. # 164) and the more recent memorandum regarding sanctions (Dkt. # 188, 189-1).

In the more recent submission, the defense notes that the government has "retreated [from] discussing the allegations, having nothing to offer to rebut the discussion that they are clearly false, and the government's inclusion of those allegations in both the indictment and its subsequent submissions to this Court are extraordinarily problematic. It seeks further inquiry of this Court, and further consideration in support of a decision to dismiss this indictment, with prejudice." Dkt. # 188, 189-1 at 48-49.

Finally, the government offers nothing to reconcile the inconsistent statements and comments of the trial team related to discovery, which were referenced above, and

discussed in further detail in the memorandum regarding sanctions. Dkt. # 188, 189-1 at 41-44.

The government seeks reconsideration of the Court's determination of bad faith while avoiding the existing evidence that the government's misconduct is actually far more extensive than addressed by the Court at this point. The Reconsideration Motion should be denied, and the foregoing examples of misconduct should be included in the Courts determination regarding an appropriate sanction, which should include dismissal.

### D. THE GOVERNMENT SOUGHT TO STRATEGICALLY BENEFIT FROM DELAYED DISCLOSURE AND MR. GERACE WAS CLEARLY PREJUDICED IN MULTIPLE RESPECTS

The government claims there is "no evidence that the government committed the error with any motive to delay the proceedings, to gain tactical advantage, or with any other improper purpose," (Dkt. # 191 at 8), and generally alleged the "defendants cannot show any meaningful prejudice based on the timing of the disclosure." Dkt. # 191 at 29-30.

Neither of these statements are accurate. It is clear the government sought to delay disclosure as long as possible so that material would not have to be provided until after it had concluded the Bongiovanni trial, which in itself is an improper purpose.

But the tactical advantages sought against Mr. Gerace are much more extensive than that.

Mr. Gerace was scheduled to have his trial commence in early January 2024 in *Bongiovanni et al*. Knowing that it would delay his trial, the government filed a motion to disqualify one of Mr. Gerace's two attorneys, and then this indictment was filed less than a week before the trial would have been scheduled to commence.

Because of further efforts to disqualify Mr. Gerace's attorney and the government's trial schedule, Mr. Gerace has continued to wait for trial in that case, which is now finally scheduled to commence at the end of October.

The government benefited from the delayed disclosure in this case, because the later the disclosure, the more it would encroach on the period of time when Mr. Gerace would be preparing for trial in case no. 19-cr-227. The later the disclosure, the more time would need to be split between reviewing the 30,000 pages of bate stamped material to determine what is relevant in this case[9] and preparing for trial in case no. 19-cr-227. The later the disclosure, the more likely Mr. Gerace would have to draft pretrial motions in this case during the course of trial in case no. 19-cr-227, while not having the number of attorneys available to assist him that are employed by the government in the prosecutions against him.

This motive is further demonstrated by the government's sudden rush to have a trial against Mr. Gerace in case no. 23-cr-60, including "an abridged briefing schedule"

---

[9] The government specifically opposed a request for specific Rule 12 Notice, stating "it was not required to do counsel's work for them with respect to what motions should be filed." [2/23/24 Transcript at 9].

and an "immediate trial date," despite the fact that there are still counsel issues that need to be resolved before pretrial motions can even be filed with the Magistrate. Case no. 23-cr-60, Dkt. # 35 (filed August 12, 2024).

More importantly, the government pursued this whole case with the expectation that it would provide them a strategic benefit in case no 19-cr-227, because the government has noted that the allegation of "Gerace's involvement in Ms. Quinn's demise would potentially impact whether this Court would admit Ms. Quinn's prior grand jury testimony at trial." Case No. 19-cr-227, Dkt. # 999 at 64.

The more time that disclosure could be delayed in this case, the less likely that Mr. Gerace can mount a defense to the government's attempts to improperly used grand jury testimony of Ms. Quinn in case no. 19-cr-227.

Every defendant has demonstrated prejudice by the government's actions in this case. The allegations, including some that are demonstratively false, made by the government in detention hearings and the indictment have permeated the public perception of this case for several months without any means to rebut them. The defendants' time in custody has been extended. And the defendants, themselves, remain unable to review any discovery and assist their attorneys in their own defense.

However, the prejudice against Mr. Gerace is particularly unique to this case. The longer the delay before disclosure of discovery, the greater the strategic benefit to the government, particularly as it pertains to Mr. Gerace. While the government may ignore

this point, along with the inordinate amount of misconduct in this case, the Court is certainly capable of recognizing it and determining an appropriate sanction based on this record and the circumstances surrounding it.

## IV. CONCLUSION

Thus, for all of the reasons set forth above, Mr. Gerace respectfully requests that the government's Reconsideration Motion be denied, and consistent with the recommended sanction, it is requested that the indictment be dismissed, with prejudice, or a decision to dismiss be issued pending a hearing to determine whether dismissal should be with or without prejudice.

Dated: August 22, 2024

/s/ Mark A. Foti
Mark A. Foti, Esq.