UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

PETER GERACE JR., *et al.*,

                      Defendants.
_____

**DECISION AND ORDER**

Case No. 1:23-cr-99(LJV)(JJM)

        Familiarity with the relevant procedural history is presumed. My July 29, 2024 Decision and Order [173],[1] incorporated by reference herein, discussed at length the government's conduct which I consider to be sanctionable, and invited defendants and the government to suggest an appropriate sanction for that conduct. Defendants have done so [181-189], and the government has responded [191]. The government's response includes a motion for reconsideration of my finding that it acted in bad faith (id., Point I), to which several defendants have replied [193-196, 198]. Oral argument was held this morning.

**DISCUSSION**

**A.    Government's Motion for Reconsideration**

        The government recognizes that "the standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that

---

[1]    Bracketed references are to the CM/ECF docket entries, and page references are to CM/ECF pagination.

might reasonably be expected to alter the conclusion reached by the court". [191] at 4-5. That standard has not been met here.

In concluding that the government had acted in bad faith, I stated that "although I had unequivocally ordered production of voluntary discovery by May 23, 2024, the government deliberately decided not to comply with that order. '[W]hat happened here is that we asked them about a protective order later than we should and it caused them to get the discovery 12 days later than your Honor ordered.' [171] at 15. The government's willful violation of my order constitutes bad faith." [173] at 5, *citing* Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 345 (2d Cir. 1986) ("procedural bad faith [is] exhibited by . . . willful violations of court orders").

In moving for reconsideration, the government suggests that I "overlook[ed] a crucial part of Dow Chemical, in that for a party to make a claim of bad faith in the first instance, it must show meritless actions and that the conduct was taken for harassment, delay or for other improper purpose." [191] at 10. *See* Dow Chemical, 782 F.2d at 344 (bad faith requires "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes"). I overlooked nothing.

1. **The Government's Violation of My Order was "Entirely Without Color"**

The government argues that "it was the lack of a protective order that prevented [it] from timely producing the discovery". [191] at 28. However, my order to produce voluntary discovery by May 23, 2024 ([74], [124] at 12) did not condition the obligation to produce on a protective order being in place, since none had been requested. "[A] court is presumed not to intend to grant relief which was not demanded". United States v. Spallone, 399 F.3d 415, 424

(2d Cir. 2005); Stafford v. Ford Motor Co., 790 F.2d 702, 706 (8th Cir. 1986) ("courts cannot be expected to consider matters that the parties have not expressly called to their attention").

Therefore, far from being *prevented* from complying with my order to produce, the government simply *chose* not to do so, absent a protective order which it had not requested and I had not ordered. *See* [191] at 12 ("the government did consciously decide to withhold the production of discovery . . . until a protective order was in place"). That decision does not furnish a colorable basis violating my order. "[A] party to an action is not permitted to maintain a studied ignorance of the terms of a decree in order to postpone compliance . . . . [S]elf-induced inability to comply . . . [is] not a defense." Perfect Fit Industries, Inc. v. Acme Quilting Co., 646 F.2d 800, 808 (2d Cir. 1981).

"[L]itigants [may] not anoint themselves with the power to adjudge the validity of orders to which they are subject", Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 504 (8th Cir. 2000), for "[i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent". Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911). *See also* United States v. United Mine Workers of America, 330 U.S. 258, 290 (1947) ("defendants filed no motion to vacate the order. Rather, they ignored it . . . . This Court has used unequivocal language in condemning such conduct").

**2.     The Government's Violation of my Order was Undertaken for an Improper Purpose**

The government's argument that it did not act "with any motive to delay the proceedings [or] to gain tactical advantage" ([191] at 8) is wrong on both counts. As previously noted, it "did consciously decide to withhold the production of discovery . . . until a protective

order was in place" ([191] at 12) - and it did so in order to obtain a tactical advantage, by limiting defendants' access to and use of the information in a manner which I had not ordered.

The government further argues that "there is no evidence to show that the failure to meet the deadline was undertaken with deceit". [191] at 8, *citing* United States v. Bove, 888 F.3d 606, 608 (2d Cir. 2018). While Bove does state that "[a]n act is 'in bad faith' if it is intentionally deceptive or dishonest", it does not suggest that bad faith *requires* deceit in every case. For example, it notes that "[t]he Oxford English Dictionary refers to 'faithlessness' and 'treachery' in defining the term" (id.), and the government certainly was not faithful to its promise (which I then ordered) to produce voluntary discovery by May 23, 2024. Indeed, if deceit were the sole lynchpin of bad faith, then the government's conduct would be completely unrestrained, provided it was not deceptive in the process. That obviously cannot be the law.

"Bad faith is not a concept that lends itself to precise definition." In re Syndicom Corp., 268 B.R. 26, 49 (Bk. S.D.N.Y. 2001). Although "[a] complete catalogue of types of bad faith is impossible" (Black's Law Dictionary (12th ed. 2024)", one type is the "willful rendering of imperfect performance". Id. All the more so here, where the government intentionally rendered not just imperfect, but *no* performance of its obligations by the deadline which I had set. For these reasons, the government's motion for reconsideration is denied.

B.     What Is an Appropriate Sanction?

The government recognizes that this court "has broad discretion in imposing sanctions for failing to comply with a discovery order". [191] at 16. However, that discretion is not unlimited. The court "must use the least severe sanction which will adequately punish the government and . . . . accomplish prompt and full compliance with the violated discovery

requirement." Id. at 19, 20. "The salient question is what sanction will remedy the fact that the government failed to produce discovery on May 23, 2024." Id. at 25.

Recognizing that there can be no perfect answer to this question, I have attempted as best I can to appropriately balance the interests of defendants, the government, third parties, and the public. Several defendants have argued for dismissal of the Second Superseding Indictment [24] with prejudice - and while I can certainly understand that request in view of the government's misconduct to date, I believe that such a sanction would be excessively harsh at this stage of the case. Dismissal without prejudice, while perhaps a closer question, would likely result merely in reprosecution and further delay, which serves nobody's interest.

Accordingly, I have devised a three-pronged sanction, which I announced from the bench this morning:

### 1. The Government is Precluded from Seeking a Protective Order.

The appropriate time for the government to have requested this relief was February 23, 2024, when I ordered production of voluntary discovery by May 23, 2024. Had it done so at that time, the issue would long ago have been addressed and resolved. As I previously concluded, its failure to seek this relief until the production deadline had expired "was not merely negligent, but grossly negligent" (July 29, 2024 Decision and Order [173] at 4); and as discussed herein, its deliberate decision to ignore the production deadline in favor of a non-existent protective order evidenced bad faith.

As of May 23, 2024, defendants had the right to unrestricted access to and use of the voluntary discovery which the government had promised. Were this solely a dispute between defendants and the government, I would not hesitate to enforce that right, which the government

improperly sought to restrict. However, I must also consider the privacy and other interests of third parties, who bear no responsibility for the government's misconduct.

Defendants have submitted proposals for a protective order relating to the voluntary discovery already produced, which appear to adequately address those concerns. They assured me this morning that they can submit a joint proposal for my consideration by August 29, 2024. By its misconduct, the government has forfeited its right to comment on the defendants' proposal, without prejudice to its ability to suggest modifications as to discovery produced at a later stage of the case.

### 2. Three Months' Delay Shall be Charged to the Government for Purposes of the Sixth Amendment.

Independent of the Speedy Trial Act, the Sixth Amendment guarantees defendants the right to "a speedy and public trial". The government's misconduct in this case has led to at least three months' delay, for which it is solely responsible. Had it timely engaged in the "rolling production" of voluntary discovery, as it assured me it could on February 28, 2024 ([124] at 10), things would have moved much more quickly. When it learned that it apparently could not do so, it should have promptly notified me, so that appropriate adjustments to the production timetable could have been made.

In addition, its baseless conduct relating to the need for a protective order has led to further delay. In total, the delay from February 28, 2024 to today is exactly six months. Charging the government with half of that time seems entirely equitable.

### 3. The Current Trial Team Should Be Disqualified.

I impose this sanction with great reluctance, due to my regard for AUSAs Joseph Tripi, Nicholas Cooper, and Casey Chalbeck, whom I know be hardworking and dedicated attorneys. Nevertheless, I cannot turn a blind eye to their conduct in this case, as "there is a strong public interest in the manner in which criminal cases are conducted, including the handling of any allegations of prosecutorial misconduct during the discovery phase of the case". Gannett Media Corp. v. United States, 2022 WL 17818626, *3 (2d Cir. 2022) (Summary Order).

"The judicial system cannot tolerate litigants who flagrantly refuse to comply with the orders of the court." National Lawyers Guild v. Attorney General 94 F.R.D. 600, 615 (S.D.N.Y. 1982). "[T]he effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government. The public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders." Id.

While disqualification might not be appropriate where "the prosecutors did not deliberately violate any disclosure obligations", United States v. LaRouche Campaign, 695 F. Supp. 1290, 1316 (D. Mass. 1988), in this case they did. Not only that, but they told me that they did not. See government's Consolidated Response [142] at 19 ("[t]his is not a situation where the government made a conscious decision to ignore deadlines or orders"). "The Court expects all attorneys who appear before it to conduct themselves with the utmost candor, but that expectation is particularly keen when it comes to attorneys representing the United States of America." Hassoun v. Searls, 524 F. Supp. 3d 101, 110 (W.D.N.Y. 2021).

As evidenced by their conduct in failing to earlier request a protective order or promptly produce rolling discovery (or earlier advise the court that they could not), I believe that these attorneys are stretched too thin with other commitments, and I therefore have little confidence in their ability to devote the necessary time and effort to this case going forward. Recognizing that disqualification is rarely ordered, I nevertheless believe that it is warranted in this case. See United States v. Davis, 2019 WL 5865935. *11 (W.D. Va. 2019); United States v. Omni International Corp., 634 F. Supp. 1414, 1440 (D. Md. 1986).

## CONCLUSION

Just over a year ago, District Judge Lawrence J. Vilardo stated that "there is a problem with the way the [U.S. Attorney's Office] understands and handles its discovery obligations in this District - a problem that . . . [it] still has not addressed, let alone fixed." July 23, 2023 Decision and Order in United States v. Parks, 19-cr-87 [972] at 8. Although he took the government "at its word when it says that . . . it is acutely aware of its obligations and takes them seriously", he "remain[ed] troubled about how the [government] views its obligations". Id. at 12. Optimistically, he suggested that "[p]erhaps that concern is unwarranted . . . . Time will tell." Id. Unfortunately, what time has told is that - in this case, at least - little has changed. This Decision and Order provides yet another wake-up call.

As I stated from the bench this morning, in order to give the government an opportunity to obtain a further stay from Judge Vilardo, I will stay the effective date of this Decision and Order (other than the August 29, 2024 deadline for defendants to submits a protective order for my consideration) to and including September 6, 2024.

**SO ORDERED.**

Dated: August 23, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
