IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

    v.                                                                     **23-CR-99-LJV**

SIMON GOGOLACK, et al,

            Defendants.

_____

## INTRODUCTION

After receiving the Court's discovery order and accompanying deadline the government made a bad faith and conscious decision to ignore that order. It sought a strategic advantage in doing so. In response, Magistrate Judge McCarthy correctly imposed sanctions, including limiting the government's input on the protective order, charging constitutional speedy trial time, and disqualifying the trial team. Dkt. 200 at 5-9.

But even after those sanctions, the government remains free to prosecute Mr. Gogolack and to use all the evidence that it withheld from Mr. Gogolack (and evidence it continues to withhold). Meanwhile, Mr. Gogolack remains in-custody, unable to review the discovery or have his counsel meaningfully use it in his defense.

This Court has previously expressed concern—both through written decisions and sanctions—that the government misunderstands its discovery obligations. *See United States v. Parks,* Case No. 19-cr-87, Dkt. 972 at 3. Among those concerns, that the government views disclosure deadlines as "aspirational." *Id*. at 6. This case show that those problems have worsened. The government's misconduct requires more severe sanctions—dismissal with prejudice or preclusion of evidence—beyond the sanctions previously imposed.

Enough.

# BACKGROUND

**Past is Prelude**

In 2023 in *United States v. Parks*, this Court wrote about its ongoing concerns about the government's discovery's practices. The Court noted that a string of cases "demonstrate[s] a fundamental misconception by prosecutors in the USAO-WDNY about what their discovery obligations are." Case No. 19-cr-87, Dkt. 972, at 3 (Parks Order II). "[T]he governments seems to approach its discovery obligations by finding ways *not to* disclose evidence and excuses for not disclosing it sooner or at all. *Id*. at 11 (italics in original). "[T]he Court noted that the government's attitude seemed to be that disclosure deadlines were 'aspirational.'" *Id*. at 6 (footnote omitted).

At that time, "the USAO-WDNY still ha[d] not addressed, let alone fixed" these problems. *Id*. at 8. In a prior order, the Court had said that "[d]ismissal is not the appropriate sanction here. But it may be next time." Dkt. No 966, at 30 (*Parks* Order I). Ultimately, "time will tell" whether the Court was right to be concerned. *Parks* Order II, at 12.

**Simon's Case Begins**

The Court would not have to wait long. In August of 2023, the government charged Simon Gogolack via complaint, and he was indicted about a month later. Dkts. 1, 12. These charging documents did not allege that Mr. Gogolack killed Crystal Quinn as part of a conspiracy to obstruct justice at the behest of Peter Gerace.

At the September 14, 2023 arraignment, defense counsel demanded discovery and noted that disclosure was no longer voluntary:

> MR. BAGLEY: Judge, just briefly on that matter because I know
> Mr. Cooper takes a very literal view of the discovery obligations
> that he has, Judge. So there is an indictment now. I do make a

> formal demand for discovery, and we are entitled to it now with
> that demand, Judge, so it's not technically voluntary anymore,
> Judge. Tr. Sept. 14, 2023 at 52.

The Court also detained Mr. Gogolack that day. Dkt. At 15. The Court issued a scheduling order setting the discovery deadline as October 16, 2023. Dkt. 17. A week after the first indictment, the government filed a superseding indictment. Dkt. 18. The discovery deadline remained the same. Dkt. 21. This indictment did not allege a conspiracy to obstruct justice. *See* Dkt. 18.

Upon defense motion, that scheduling order was adjourned but the new scheduling order did not include an adjourned discovery deadline. Dkt. 23. On January 5, 2024, the government filed the second superseding indictment, which first alleged the conspiracy to obstruct justice. Dkt. 24. At this point, Mr. Gogolack had not received any discovery beyond that disclosed prior to the detention hearing.

**February 23, 2024 Status**

On February 23, 2024, the Court held a status to determine if this case would be a capital case and to set a discovery deadline. Tr. Feb. 23, 2024 at 2-3. Later that day, the government filed a notice that it would not be seeking the death penalty. Dkt. 75. As to discovery, the government requested a 90-day deadline. Tr. Feb. 23, 2023 at 6-7. They argued that such a deadline would "enabl[e] the Government to get this right and do discovery appropriate and make sure that no stone is left unturned" and would "almost invariably will save time on the back end." *Id*. at 7.

To secure that deadline, the government also made rolling discovery seem feasible and even likely. The Court—which had originally suggested a 60-day deadline—had asked about rolling production. *Id*. at 6, 10. The government responded "I certainly think so, Judge. I think that there's material that is probably close to ready to out go at this point because we've

3

obviously been working on it since the return of the indictment." *Id*. at 10. While the Court granted the government 90 days, it required rolling discovery to the extent possible:

> The Court: I'm just looking at going forward and what is the most efficient way to do so. I'll give you the 90 days. Okay? But I do want—to the extent that you can, I want the discovery to be produced sooner than that date as best you can.
>
> [The government]: Understood, Judge.
>
> The Court: On a rolling basis so that people can hit the ground running in terms of what they think they need to do. *Id*. at 12; *see also* Dkts. 73, 74.

**No Discovery**

During the 90-day period, the government provided no rolling discovery. Nor did the government mention any protective orders. In fact, the government actively rejected Mr. Gogolack's requests to see discovery in that time period. The Court had granted Mr. Gogolack's motion to re-open the detention hearing and ordered the government to produce evidence that it intended to rely upon. Dkt. 54. The government produced nothing, leading the Court to openly question whether the government complied with its order. Dkts. 77, 80. Following argument, the Court ordered the government to produce some jail calls and granted leave for the defense to request specific discovery. Dkt. 85.

Mr. Gogolack filed that motion and requested seven categories of discovery, citing where the government had previously relied on those documents. *See generally* Dkt. 96. Among those documents, Mr. Gogolack requested Crystal Quinn's autopsy reports and noted that the government had possessed those reports since September 2023. *Id*. at 3-4.

The government refused to produce any discovery beyond the jail calls that the Court had already turned over. It argued that the Court's February 23, 2024 order granted them 90 days to

turn over discovery and, rather than turn over any additional discovery ("and to preserve the orderly production of discovery"), the government decided to limit their arguments to already discovered material. Dkt. 100 at 3-5.

Three days before the government's 90-day period ended, the government emailed defense counsel asking for a three-terabyte hard drive. Dkt. 123-1 at ¶ 13. Mr. Gogolack provided one two days later. *Id*. at ¶ 14.

The May 23, 2023 deadline came and went without the government providing any discovery, moving to adjourn the deadline, contacting defense counsel, or contacting the Court.

Six days later, the government reached out to defense counsel. If defense counsel wanted the government to comply with the discovery order, we would have to agree to a protective order: "Once the protective order is authorized by the Court, we will release the discoverable material. *Id*. at ¶ 15.

The government proposed a protective order and attempted to quickly secure consent. *Id*. Among the terms, the proposed protective order would limit who could serve as an investigator/paralegal/legal assistant/agent for defense counsel and would require defense counsel to let the government know with whom they share discovery. Dkt. 129-1 at 2-6.

Defense counsel did not agree to that protective order and the government produced no discovery in advance of the June 3, 2024 status conference.

**June 3, 2024 Status conference**

At the June 3, 2024 status, "[t]he government advised the Court that it intended to provide the discoverable material as soon as the terms of a protective order were agreed upon." Dkt. 123-1 at ¶ 24. Only after the Court pressed did the government admit that it first proposed

the protective order on May 29 and that it should have been sent out sooner. Tr. June 3, 2024 at 8-10.

The government offered to provide the discovery under a temporary attorneys'-eyes-only protective order, which defense counsel agreed to. *Id*. at 16-22. At the status' conclusion, the government moved to exclude time under the Speedy Trial Act between this status and the subsequent June 27, 2024 status, arguing it would allow defense counsel time to review discovery and negotiate a protective order. *Id*. at 22-23. Defendants objected, and the Court denied the government request, and it set a deadline to move for a protective order and/or file motions about the government's failure to abide by the discovery deadline. Dkt. 122.

**Motion to Exclude Time**

Two days later, the government filed a motion asking to exclude time from the filing of that motion until the June 27, 2024. Dkt. 123. In that motion, it noted it had now provided discovery and then repeated the same arguments that the Court had previously rejected. *See* Dkt. 123-2. The government also cast blame on defendants for the lack of a protective order. Dkt. 123-1 at ¶¶ 12-22. The government threatened that, if any defendants continued to object to the speedy trial exclusion, it would set the case for trial in an effort to "scrupulously honor[]" the defendants speedy trial rights. *Id*. at ¶ 34. At that point, the attorneys for Mr. Gogolack had had access to the discovery (under a strict attorney-eyes-only protective order) for approximately 8 hours. To this day, the defendants themselves still do not have access.

**Defense Response**

Mr. Gogolack objected to the government's speedy trial motion and moved for sanctions. Dkts. 130, 131. As to sanctions, Mr. Gogolack argued that the government affirmatively decided

6

not to comply with the very deadline that they had requested—the government had admitted it had prepared discovery but chose not to provide it until they had a protective order in place. Dkt. 131 at 3-5. Mr. Gogolack requested a hearing on the matter. *Id*. at 5. Other defendants filed similar requests or joined other filed requests.

The government responded by arguing "[t]his is not a situation where the government made a conscious decision to ignore deadlines or order." Dkt. 142 at 19. The government repeatedly characterized the discovery as "voluntary" and suggested a sanction of 12 days from the Speedy Trial time period. *Id*. at 1, 4.

When giving the "reasons why the disclosure was not made," the government argued that "prosecutors were handling expansive discovery while engaged in a complex trial, and they realized a protective order was not adequately in place to help ensure the safety of witnesses in a case involving the murder of a witness" *Id*. at 24-25. The government said its failure to raise a protective order was an "oversight." *Id*. at 3.

Despite its representation at the February 23, 2024 conference, the government subsequently learned rolling discovery was not practicable (*id*. at 17), but did not tell anyone. Last, the government denied any bad faith, "only a recognition that they did not have a protective order adequately in place before producing discovery in a case that alleges the murder of a government witness." *Id*. at 25.


**Protective Order**

At the same time, the parties were litigating a protective order. The day after the June 3, 2024 status, defendants proposed a joint protective order. Dkt. 142 at 25. The government did not engage in further negotiations, only emailing on the deadline to move for a protective order that it would be doing so. *Id*. at 25.

It filed an *ex-parte* affidavit requesting that the Court issue the same protective order it had initially proposed—including the limitations on whom defense counsel could employ and the requirement that defense counsel tell the government whom they share discovery with. Dkt. 129, 129-1 Defense counsel requested access to the affidavit and proposed an alternative protective order. Dkt. 146. The Court required the government to file a redacted affidavit in support of its protective order request, and the government did so. Dkts. 152.

That litigation remains pending, and the attorneys'-eyes-only protective order continues to apply.

**First Bad Faith Finding**

Following the sanctions motions and responses, Judge McCarthy found that the government acted in bad faith when disobeying the Court's discovery order. Dkt. 173 at 5. Specifically, despite the government telling the court "'[t]his is not a situation where the government made a conscious decision to ignore deadlines or orders,' that is *exactly* what it did." *Id*. (internal citation omitted). "The government's willful violation of [that] order constitutes bad faith." *Id*. Judge McCarthy invited further briefing on the appropriate sanctions and set a briefing schedule. *Id*. At 6.

**Parties' Responses**

Mr. Gogolack requested that Judge McCarthy dismiss the case with prejudice. Dkt. 187 at 1. He argued that the government's bad faith decision should be viewed in the context of the government's previous discovery issues, as well as the government's usurpation of the Court's

role governing the proceedings and defense counsel's role to advocate on behalf of their client. If the Court did not dismiss the case with prejudice, Mr. Gogolack requested preclusion of evidence together with disqualification of the trial team and rescinding speedy trial exclusions. *Id*. at 15.

The government responded by asking that the Court reconsider its bad-faith finding and argued that a continuance would be the appropriate remedy. Dkt. 191 at 4-15, 30.

**Magistrate Judge's Finding**

Ultimately, Judge McCarthy rejected the government's reconsideration request. The Court reiterated its finding that the government chose not to follow his discovery deadline. Dkt. 200 at 3. Judge McCarthy further noted that the government withheld that discovery to try to gain a tactical advantage through a protective order that would limit Mr. Gogolack's access to and use of discovery. *Id*. at 3-4.

Judge McCarthy imposed three sanctions: 1) the government was precluded from seeking a protective order; 2) three months of constitutional speedy trial time was charged to the government; and 3) disqualifying the current trial team. *Id*. at 5-8.

In concluding, Judge McCarthy noted that just over a year ago, this Court (in *Parks*) had raised concerns about the government's ongoing understanding and handling of its discovery obligations. *Id*. at 8. He concluded, at least in this case, "little had changed." *Id*.

**ARGUMENT**

Judge McCarthy correctly concluded that the government acted in bad faith and that sanctions were required, but his sanctions fell short of the government's misconduct.

The government made a bad-faith decision to ignore a discovery order; it did so to secure a tactical advantage. That conduct shows that the issues this Court critiqued in *Parks* have only grown. Sanctions that eliminate or make it more difficult for the government to prosecute Mr. Gogolack are necessary to stop the escalation of the government's misconduct.

This Court should dismiss the indictment with prejudice or order preclusion of the discovery—discovery that still cannot be viewed by Mr. Gogolack. In the interests of efficiency and preservation of judicial resources, Mr. Gogolack also joins any argument raised by co-defendants' counsel.

**A.     This Court has the authority to impose the requested sanctions.**

First, this Court's supervisory power provides authority to dismiss this case with prejudice. "The [Court's] supervisory power has frequently been used by federal courts as a means of sanctioning and deterring prosecutorial misconduct." *United States v. Marshank*, 777 F. Supp. 1507, 1529 (N.D. Cal. 1991). An important function of this power "is to guarantee that federal prosecutors act with due regard for the integrity of the administration of justice." *Id.*, (quoting *United States v. Basurto*, 497 F.2d 781, 793 (9th Cir.1974) (Hufstedler, J., concurring))).

Courts exercise that power to 1) deter future illegal conduct; 2) preserve judicial integrity by ensuring convictions rest upon appropriate considerations; and 3) remedy violations of statutory and constitutional rights. *United States v. Hasting*, 461 U.S. 499, 505 (1983). *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010). That supervisory power allows courts to preserve their integrity and prevent them from being accomplices in willful disobedience of the law. *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020).

Naturally, that can include prosecutorial misconduct. Dismissing an indictment due to prosecutorial misconduct is justified to eliminate prejudice to a defendant in criminal proceedings or to help translate the assurance of the United States Attorneys into consistent performance by their assistants. *United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978). Dismissal can be used "to deter a pattern of demonstrated and longstanding widespread or continuous official misconduct." *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979). Generally, dismissal requires that the prosecution had engaged in egregious and deliberate misconduct or had acted flagrantly, willfully, and in bad faith. *United States v. Mangano*, No. 16-CR-540 (JMA), 2022 WL 59697, at *3 (E.D.N.Y. Jan. 6, 2022). Judge McCarthy correctly found that the government engaged in such conduct.

Alternatively, Rule 16 provides this Court with the authority to, among other things, preclude evidence and impose "any [] order that is just." *See* Fed. R. Crim. P. 16(d)(2)(C). Indeed, "[i]f a party fails to comply with this rule, the court may:

> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>
> (B) grant a continuance;
>
> (C) prohibit that party from introducing the undisclosed evidence; or
>
> (D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d)(2)(A)-(C).

Given the government's bad faith, its long pattern of discovery violations in this District, and the prejudice that Mr. Gogolack an others continue to suffer, preclusion is an appropriate remedy.

11

B.  **The pattern of discovery misconduct and misrepresentation warrant the severe sanctions requested.**

"In determining if government actions are sufficiently egregious to warrant dismissal as a means of deterring future misconduct, courts often have been guided by two considerations. First, courts have looked to whether there is a pattern of similar government misconduct, on the theory that such widespread misconduct increases the threat to judicial integrity." *Marshank*, 777 F. Supp. at 1530 n. 17 (citing *United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir.1985), cert. denied, 474 U.S. 837 (1985); *United States v. Rosenfield*, 780 F.2d 10, 11 (3d Cir.1985), cert. denied, 478 U.S. 1004 (1986). "Second, courts have looked to whether there is any alternative remedy which the court may effectively use as a means of deterrence." *Id*. (citing, *inter alia*, *Bank of Nova Scotia v. United States,* 487 U.S. 250, 255 (1988)).

Severe sanctions are required because this case is part of a long pattern of the government misconduct.

In *Morgan*, in 2022, the government evaded a full hearing on the merits of its discovery misconduct by offering misdemeanor plea agreements and by advising the Court that it would conduct an internal-only investigation into its practices. There, the Court had already ordered a hearing "because there was credible evidence in the record supporting the defense position that, in fact, there were intentional misrepresentations by the government to the Court." 18-CR-108, Dkt. 625 at 7. Judge Wolford further found, "There is no question that inaccurate statements were made by the government as part of these proceedings—to both Judge Schroeder and the undersigned. There is also no question that omissions were made by the government when it discussed the status of the discovery in this case during appearances before the undersigned and Judge Schroeder." *Id*.

But as part of the defendants' plea agreements, the defendants withdrew their motion for a hearing and Judge Wolford found that "it would not be a prudent exercise of its discretion to investigate on its own the allegations that were to be the subject of the evidentiary hearing in this case." *Id*., at 8. Thus, the government evaded judicial oversight into its "intentional misrepresentations."

In *Parks*, in 2023, this Court further outlined the government's concerning discovery practices, and we see them repeated in this case. Sanctions, including limited preclusion, were obviously ineffective in deterring future discovery misconduct.

At the highest level, the Court expressed concern that the government "still has not addressed, let alone fixed" its discovery problems. Here, the Court confronts another instance where the government mishandles discovery and makes misrepresentations about it.

In fact, the problems have worsened. While this Court in *Parks* highlighted several discovery violations, it wrote generally about concerns with the government's understanding of its discovery obligations and its discovery practices. *Parks* Order II, at 3. Here, the government did not misunderstand an obligation or follow a general practice that fell short of Fed. R. Crim. P. 16. Rather, it made a "calculated decision" to disobey a court order. Dkt. 173 at 5. While this Court previously wrote that it "will take the USAO at its word" about taking discovery obligations seriously, actions—especially conscious decisions—speak louder than words.

Specific concerns that this Court cited still exist. Most obvious, "the Court noted that the government's attitude seemed to be that disclosure deadlines were 'aspirational.'" *Parks* Order II, at 6. Here, the government let the deadline pass by without providing the discovery, contacting counsel, or moving to adjourn discovery. Six days after the deadline, the government emailed defense counsel outlining the conditions under which they would belatedly comply with

13

the deadline. Dkt. 123-1. The deadline was not merely viewed as "aspirational," it was fully optional.

Further, "the government seem[ed] to approach its discovery obligations by finding ways *not* to disclose evidence and excuses for not disclosing it sooner or at all." *Parks* Order II, at 11 (emphasis original). Here, the government used a protective order as an excuse not to provide discovery. Mr. Gogolack's case was first charged in August of 2023. The discovery deadline was May 23, 2024. At no point in those nine months did the government mention a protective order. When the government said it had rolling discovery close to ready, it did not mention a protective order or reach out to defense counsel about one after that status. *See generally* Tr. Feb. 23, 2024. Only six days after the discovery deadline had passed did the government bring it up.

A similar attitude existed with respect to rolling discovery. As part of an effort to secure the 90-day discovery deadline, the government agreed to provide rolling discovery to the extent practicable and suggested to the Court that some was just about ready to go out. Tr. Feb. 23, 2024 at 12. When explaining their failure to produce any rolling discovery, it did not point to unforeseen circumstances. The government attributed that to the first *Bongiovanni* trial—circumstances know to them when they agreed to prove rolling discovery. Dkt. 142 at 17.

Likewise, when Mr. Gogolack sought to enforce the Court's discovery order for his re-opened detention hearing, the government cited Judge McCarthy's February 23, 2024 discovery order as a reason no further discovery should be given for his detention hearing. Dkt. 100 at 3-5. Setting aside the fact that the government would eventually ignore that discovery order, the government was now citing discovery orders as a reason not to provide discovery.

Like in *Parks*, the government has resisted efforts to sanction its misconduct. The Court should remember: 1) the government got the deadline that it requested; and 2) the government

essentially confessed to intentionally violating the Court's order. In Dkt. 123-1 at ¶ 15, it screenshotted an email it sent defense counsel six days after the deadline saying it would "release the discoverable material" once a protective order was authorized. Later, it wrote "[t]he government advised the Court that it intended to provide the discoverable material as soon as the terms of a protective order were agreed upon." *Id*. at ¶ 24.

Despite this, the government has tried to minimize. First, it attempted to re-write the history of the discovery violation. It repeatedly denied that they had consciously decided to violate the Court's order. Dkts. 142 at 19, Dkt. 191 at 11. It characterized discovery Mr. Gogolack has demanded as "voluntary." Dkts. 142 at 1; 191 at 1. It denied that it sought any strategic advantage in withholding discovery. Dkt. 191 at 8.

These untrue assertions contributed to the need for sanctions. Judge McCarthy noted that not only did prosecutors deliberately violate disclosure obligation, "but they told me that they did not" and quoted a case discussing the importance of candor to the Court. Dkt. 200 at 7.

Second, the government repeatedly sought reconsideration of decisions imposing sanctions. For instance, when Judge McCarthy denied the government's oral request to exclude speedy trial time between the June 5, 2024 and June 27, 2024 status conferences, the government filed a motion several days later making the same request and repeating largely identical arguments. Dkt. 123. Just by filing the motion, the government likely excluded the speedy trial time, neutering the Court's sanction.

The government sought reconsideration of Judge McCarthy's bad faith finding and, when doing so, advanced inaccurate facts. They claimed, among other things, that the Court did not order rolling discovery and that the government did not actually agree to provide rolling discovery. It continued to claim that it did not conscious decide to violate the Court's order.

15

Thus, not only has there been a pattern of misconduct in this District, but the government actions in this case demonstrate that previous efforts at deterrence have been ineffective.

### C. Prejudice continues to exist and will continue to exist even with Judge McCarthy's sanctions.

Mr. Gogolack remains in-custody. The temporary protective order remains in effect. Mr. Gogolack cannot see the discovery, and defense counsel cannot share the discovery with any expert or witness. The case is in limbo, and it is guaranteed to be in limbo for longer without any actual benefit to Mr. Gogolack.

He will have to wait in-custody during this appeal—which was caused by the government's bad faith decision to violate a discovery order. He will have to wait in-custody for the protective order to be litigated so that he can see the discovery. He will have to wait—as time passes and memories fade—before he reviews the discovery and can assist with investigation. Should the Court affirm the sanction, he will have to wait in-custody while a new prosecution team gets up to speed.

## CONCLUSION

In July of last year, this Court wrote that "Dismissal is not the appropriate sanction here. But it may be the next time." *Parks* Order I, at 30.

This is the next time.

**DATED**:    Buffalo, New York, September 20, 2024

Respectfully submitted,

**/s/ Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
jeffrey_bagley@fd.org

**/s/ John Morrissey**
John Morrissey
Assistant Federal Public Defender
john_morrissey@fd.org

Counsel for Defendant Simon Gogolack
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)

**TO:**   Caitlin M. Higgins, *et al*
        Assistant United States Attorneys