UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

PETER GERACE JR., *et al.*,

              Defendants.

**ORDER**

Case No. 1:23-cr-99(LJV)(JJM)

        Familiarity with the relevant procedural history is presumed. On August 26, 2024 the government sought [201][1] a stay of my August 23, 2024 Decision and Order imposing sanctions on the government [200]. That same day, District Judge Lawrence J. Vilardo granted the stay "until this Court resolves the government's appeal" [202]. In seeking the stay, the government did not address *any* of the factors governing its issuance, arguing merely that my Decision and Order "involves serious issues that warrant close inspection and analysis". [201] at 5.

        On September 24, 2024, Judge Vilardo partially lifted the stay, directing that "the defendants shall submit their proposed protective order to Judge McCarthy for consideration by 9/27/2024 . . . . without prejudice to the government's seeking a further stay upon Judge McCarthy's entry of a protective order" [233].[2]  I granted defendants' request for an extension of their submission deadline to September 30, 2024 [237], and they filed their proposed Protective Order on that date [238].

---

[1]    Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]    Judge Vilardo's stay of the other sanctions which I imposed "remains in place". [233].

With a few modifications, I have entered that that Order today [254]. It will become effective on October 15, 2024, to give the government an opportunity to seek a stay from Judge Vilardo. However, if the government does so, it should address the following factors.

**DISCUSSION**

Judge Vilardo has recognized that "[t]he party seeking [a] stay bears the burden of demonstrating that it is entitled to one". Consumer Financial Protection Bureau v. Manseth, 2024 WL 805628, *3 (W.D.N.Y. 2024). "Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal . . . . [H]owever, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987); United States v. Grote, 961 F.3d 105, 122 (2d Cir. 2020). "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other." In re World Trade Center Disaster Site Litigation, 503 F.3d 167, 170 (2d Cir. 2007).

**1. Is the Government Likely to Succeed on the Merits?**

The government recognizes that the court "has broad discretion in criminal cases to impose sanctions for failing to comply with a discovery order", Government's Appeal [230] at 27, and that the court "reviews a Magistrate Judge's Decision and Order on non-dispositive motions under the 'contrary to law' or 'clearly erroneous' standard . . . . The clearly erroneous

standard is highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes". Id. at 9.

The government challenges my reliance upon Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 345 (2d Cir. 1986) as a basis for my conclusion that "[t]he government's willful violation of my order [for production of voluntary discovery by May 23, 2024] constitutes bad faith." [200] at 2. While the government argues that "[a]llowing the Magistrate Court's bad faith finding to stand contravenes Second Circuit precedent as to the definition of bad faith in the context of criminal cases" (government's Appeal [230] at 22), it admits that "the Second Circuit has yet to explicitly define 'bad faith' in the context of Rule 16". Id. at 13. How, then, can my reliance upon Dow Chemical's definition of bad faith be considered clearly erroneous or contrary to law?

The government notes that the Second Circuit "has clearly differentiated between negligence and bad faith, finding that the former does not constitute bad faith". Government's Appeal [230] at 13. However, as I stated at oral argument, "it wasn't just negligence. Maybe the failure to request the protective order earlier was negligent. In fact, I found it was grossly negligent. But . . . my decision on bad faith was that they intentionally violated the production order". [207] at 14-15. "[I]ntentional and negligent conduct are mutually exclusive." Lebron v. Thibodeau, 2023 WL 3057159, *7 (D. Conn. 2023).

While admitting that it "knew the date of the deadline and knew that, absent the protective order, it was not providing the discovery by that date" (government's Response [241] at 9, n. 2) and that it "consciously decide[d] to withhold the production of discovery . . . until a protective order was in place" ([191] at 12), the government argues that it did not "*willfully*, and *with bad intent*, decide not to provide the discovery by the May 23, 2024 deadline".

-3-

Government's Response [241] at 9, n. 2 (emphasis in original). However, a "willful" act is "voluntary and intentional, but not necessarily malicious", Black's Law Dictionary (12th ed. 2024), and "[b]ad faith . . . may not mean evil intent". Philips Electronics North America Corp. v. BC Technical, 773 F. Supp. 2d 1149, 1203 (D. Utah 2011).

Although the government suggests that "[t]here was nothing strategic about (nor anything to be gained from) [its] decision to withhold the discovery" (government's Response [241] at 9), I found that "it did so in order to obtain a tactical advantage, by limiting defendants' access to and use of the information in a manner which I had not ordered". Decision and Order [200] at 4. As the government finally admits, "[t]here is no excuse for missing the court-imposed discovery deadline". Government's Response [241] at 9, n. 2.

Notwithstanding its deliberate violation of my production order, the government points to Fed. R. Crim. P. ("Rule") 16(d)(1), which states that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief'". Government's Appeal [230] at 18. However, "determinations on whether good cause is present . . . are exercises of discretion", Zapata v. City of New York, 502 F.3d 192, 197 (2d Cir. 2007), and "it is not mandatory that the District Court undertake a specific type of inquiry when looking for 'good cause'." Harmon v. Bogart, 788 F. App'x 808, 809, n. 1 (2d Cir. 2019).

In the context of protective orders, "[g]ood cause is a rather amorphous concept, not amenable to precise definition", and "is a highly discretionary standard". Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 479 (S.D.N.Y. 1982) (involving Fed. R. Civ. P. 26(c)). "Initially, the moving party must show that a clearly defined and very serious injury will result if a protective order is not issued." Id. "Once such a showing has been made, the court should consider other factors", such as "whether the order will prevent the threatened harm, whether

there are less restrictive means of preventing the threatened harm, the interests of the party opposing the motion, and the interests of the public". Id.[3]

The government suggests that although Rule 16(d)(1) "does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his or her identity is revealed." Government's Appeal [230] at 41-42. If that were true in this case, then it is inconceivable that three experienced AUSAs would *all* have overlooked the need for a protective order for three months after I ordered production of the voluntary discovery. Their "failure to act sooner . . . suggests that there is, in fact, no irreparable injury". Tough Traveler, Ltd. v. Outbound Products, 60 F.3d 964, 968 (2d Cir. 1995).

In any event, their three-month delay in seeking a protective order "was not merely negligent, but grossly negligent" (July 29, 2024 Decision and Order [173] at 4), and an "attorney's gross negligence does not establish good cause". United States v. $8,260.88 in U.S. Currency, 52 F.3d 328, *1 (7th Cir. 1995); Kyle v. Amtrak, 2022 WL 1471250, *2, n. 2 (S.D.N.Y. 2022) ("[c]ounsel's lack of diligence is not good cause").

Moreover, this was *not* mere negligence - it was a deliberate decision to violate my production order - and "free, calculated, deliberate choices are not to be relieved from". Ackermann v. United States, 340 U.S. 193, 198 (1950). The government suggests that I should "use the least severe sanction which will adequately punish the government and . . . accomplish prompt and full compliance with the violated discovery requirement". Government's Response [241] at 3-4. "Prompt and full compliance" with my discovery order [74] would entail *no*

---

[3]   The latter two factors are identical to those governing the issuance of a stay.

limitation on defendants' access to and use of that discovery, since none had been requested by the government prior to issuance of that order.

As I stated in imposing sanctions, "[a]s of May 23, 2024, defendants had the right to unrestricted access to and use of the voluntary discovery which the government had promised. Were this solely a dispute between defendants and the government, I would not hesitate to enforce that right, which the government improperly sought to restrict. However, I must also consider the privacy and other interests of third parties, who bear no responsibility for the government's misconduct. Defendants have submitted proposals for a protective order relating to the voluntary discovery already produced, which appear to adequately address those concerns." August 23, 2024 Decision and Order [200] at 5-6. The Protective Order which I have issued today does so.

Finally, the government suggestion that defendants' "twelve-day delay in receiving discovery . . . at this early stage in the case, is insufficient to create prejudice". Government's Appeal [230] at 30. However, the discovery produced was for "attorney's eyes only" [122], meaning that defendants remain at a disadvantage in reviewing the materials with their attorneys. In any event, the government admits that the extent of prejudice to defendants is merely a "guide for the district court's consideration of sanctions", and is "not intended to dictate the bounds of the court's discretion". Government's Appeal [230] at 28; government's Response [241] at 6.


**2. Will the Government be Irreparably Injured Absent a Stay?**

Any harm which the government may suffer from the absence of a protective order which it might prefer is due to its failure to seek that relief for three months after I had

-6-

ordered production of voluntary discovery. An "unexplained delay of about three months undercuts a showing of immediate and irreparable injury". BakeMark USA LLC v. Negron, 2024 WL 3385641, *5 (S.D.N.Y. 2024); Tough Traveler, *supra*. *See also* Expedia, Inc. v. United Airlines, Inc., 2019 WL 1499269, *6 (S.D.N.Y. 2019) ("self-inflicted harms are not considered irreparable"); Brabson v. The Friendship House of Western New York, Inc., 2000 WL 1335745, *2 (W.D.N.Y. 2000) ("while defendant has indicated that it . . . will suffer irreparable harm should a stay not be granted, the procedural history of this case shows that any such harm suffered is self-inflicted").

3. **Will Issuance of the Stay Substantially Injure Defendants' Interests?**

Rule 2 provides that parties should not be subject to "unjustifiable . . . delay". If a protective order was necessary, the government should have sought it no later than February of this year. As it currently stands, defendants themselves cannot have access to the discovery which the government has produced, as it is limited to "attorney's eyes only", and are severely hampered in their ability to progress this case.

4. **Where Does the Public Interest Lie?**

The government acknowledges "the public's interest in the prompt administration of justice". Government's Response [241] at 7. *See also* Zedner v. United States, 547 U.S. 489, 501 (2006) ("the Sixth Amendment recognizes a societal interest in prompt dispositions" of criminal cases). Therefore, in my view the Protective Order which I have issued should take

effect sooner rather than later, so that this case may proceed.

Dated: October 9, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge