IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

      v.                                                    23-CR-99-LJV-JJM

SIMON GOGOLACK, et al.,

                 Defendants.

---

## GOVERNMENT'S REPLY IN SUPPORT OF APPEAL OF AUGUST 23, 2024 DECISION AND ORDER BY MAGISTRATE JUDGE JEREMIAH J. McCARTHY

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, and Tiffany H. Lee and Caitlin M. Higgins, Assistant United States Attorneys, of counsel, hereby files its reply to the responses filed by defendants Gerace, Gogolack, Erwin, Hinkle and Barber regarding the government's appeal of Magistrate Judge Jeremiah J. McCarthy's August 23, 2024 Decision and Order. *See* Docket No. 243 (Gogolack); Docket No. 245 (Erwin); Docket No. 247 (Hinkle); Docket No. 248 (Barber); Docket No. 249 (Gerace).

## PROCEDURAL BACKGROUND

In replying to the defendants' responses in opposition to the government's appeal of the Magistrate Court's August 23, 2024 Decision and Order, the government incorporates by reference the entirety of the contents of its appeal filed on September 20, 2024, to include the statements pertaining to the factual and procedural background. *See* Docket No. 230. The government further incorporates by reference the entirety of the contents of its response to defendants Gerace's and Gogolack's appeal/objections to the August 23, 2024 Decision and

Order, filed on October 4, 2024, to include the procedural background described therein. Docket No. 241.

## ARGUMENT

I. **THE MAGISTRATE COURT CLEARLY ERRED BY EXCEEDING ITS DISCRETION WHEN IT IMPOSED THE SANCTIONS OF DISQUALIFICATION OF THE GOVERNMENT'S TRIAL TEAM, PRECLUSION OF THE GOVERNMENT'S PARTICIPATION IN THE LITIGATION PERTAINING TO THE PROTECTIVE ORDER, AND CHARGING THE GOVERNMENT WITH THREE MONTHS' CONSTITUTIONAL SPEEDY TRIAL DELAY.**

A. The Standard of Review

A district court reviews a magistrate judge's decision and order on non-dispositive motions under the "contrary to law" or "clearly erroneous" standard. *See* 28 U.S.C. § 636(b)(1)(A), (C); Fed. R. Crim. P. 59(a). An order is "contrary to law if it fails to apply or misapplies relevant statutes, case law or rules of procedure." *United States v. Turnquist*, No. 21-CR-15 (JLS) (JJM), 2022 WL 1913593, at *2 (W.D.N.Y. June 3, 2022) (internal quotations omitted). Moreover, "[a] finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Martinez*, 110 F.4th 160, 174 (2d Cir. 2024) (internal quotation marks omitted).

B. Governing Law Regarding Sanctions

If a party fails to comply with Rule 16 of the Federal Rules of Criminal Procedure, "the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance;

2

(C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). A court has broad discretion in fashioning an appropriate remedy when the government violates Rule 16. *See United States v. Walker*, 974 F.3d 193, 204 (2d Cir. 2020). "Whether or not sanctions for nondisclosure should be imposed depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other." *United States v. Miranda*, 526 F.2d 1319, 1324 (2d Cir. 1975). To prove substantial prejudice, "the defendant must demonstrate that the untimely disclosure of the [evidence] adversely affected some aspect of his trial strategy." *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016).

The Second Circuit uses several factors to evaluate whether a court appropriately exercised its discretion when determining sanctions/remedial action for Rule 16 violations. These factors include "the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *Id*. at 159; s*ee also United States v. Hastings*, 126 F.3d 310, 317 (4th Cir. 1997) ("In determining a suitable and effective sanction, a court must weigh the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government."); *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988); *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1312 (11th Cir. 1985). These factors act as a "guide" for the district court's consideration of sanctions; "they are not intended to dictate the bounds of the court's discretion." *Wicker*, 848 F.2d at 1061; *but see United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999) ("The court

3

should impose the least severe sanction that will accomplish prompt and full compliance with" the violated discovery requirement); *United States v. Garrett*, 238 F.3d 293 (5th Cir. 2000) (if a court decides a sanction is appropriate, it should "impose the least severe sanction that will accomplish the desired result – prompt and full compliance with the court's discovery orders").

    **C. Based on the Legal Framework Set Forth Above, the Magistrate Court Clearly Erred when it Imposed the Sanctions of Disqualification of the Government's Trial Team, Preclusion of the Government from Litigating the Protective Order, and Charging the Government Three Months' Time Under the Constitutional Speedy Trial Clock.**

Defendants persist in arguing that: (1) the Magistrate Court's bad faith finding was correct due to the government's "conscious" withholding of discovery beyond the discovery deadline for tactical advantage; and (2) they have suffered prejudice due to the length of time they have been in custody and the time that they have been without access to the discovery.

Despite defendants' claims to the contrary, (*see e.g.*, Docket No. 243, p. 9 (Gogolack), ("[The government] seeks to cabin the Court's authority to impose sanctions to Rule 16, and largely glosses over other sources of the Court's sanction authority."), the government has recognized, and continues to recognize, the wide discretion which courts possess in the consideration of sanctions under both Rule 16 *and* under its inherent supervisory authorities. *See, e.g.*, Docket No. 230, pp.27-28; Docket No. 241, pp. 3-6.  But even a court's discretion under the exercise of its supervisory powers is not boundless. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988); *United States v. Hastings*, 461 U.S. 499, 506 (1983) (goals implicated by supervisory powers are not significant in the context of a case where the errors alleged are harmless).  Moreover, it is the defendants who continue to fail to make a showing

of any prejudice, let alone substantial prejudice, to merit the significant sanctions which have been imposed by the Magistrate Court here. Nor have defendants been able to articulate how the facts or the caselaw support the Magistrate Court's findings.

The defendants, as did the Magistrate Court, rely heavily on the fact of the government's "conscious" decision to withhold the discovery after the discovery deadline of May 23, 2024 had arrived and passed. The government was conscious of the May 23, 2024 discovery deadline. The discovery was ready to be produced by that date. However, the government realized, too close to the due date, that no protective order was in place, and consciously decided that it could not disclose its evidence absent such an order, especially in a case like this case, with its allegations of witness intimidation, tampering, and murder.

It is this "conscious" decision by the government on which the Magistrate Court bases its bad faith finding—the government's failure to comply with the May 23, 2024 deadline by which the discovery was to be produced (unrestricted) to the defendants. But that is not bad faith. *See United States v. Bove*, 888 F.3d 606, 609 (2d Cir. 2018) (for the government's conduct to be in bad faith under the Hyde Amendment, the prosecution must have been brought "with an element of intentional deceit or dishonesty (in bad faith)"; *see also*, *United States v. Schneider*, 395 F.3d 78, 86 n.3 (2d Cir. 2005) ("Bad faith" according to Black's Law Dictionary 1565 (6th ed. 1990), the edition at time of Hyde Amendment's passage, was defined as "not simply bad judgment or negligence, but rather [implying] the conscious doing of a wrong because of dishonest purpose or moral obliquity."). There was no dishonest purpose, intentional deceit, or moral obliquity underlining the government's decision to withhold the discovery. Nor was there any strategic or tactical advantage to be gained in the government's decision to withhold the discovery until a protective order could be decided upon. The overriding intention and

motivation behind the decision to withhold the discovery until a protective order could be agreed upon was the need to protect third parties.  Moreover, the government's error/mistake/misstep was not so much the act of withholding the discovery itself but rather the failure to advise the Magistrate Court and/or the parties as to the need for additional time because of the absence of the protective order.  Nevertheless, the government did not act in bad faith here.

As for the Magistrate Court's implication that the government had been less than candid in its statements when it represented that its withholding of discovery was not the result of a "conscious" decision to disobey the court-ordered deadline, a distinction should be made between acts performed while one is "aware" and acts which are done "willfully" or "intentionally."  The government had meant to convey to the Magistrate Court that it had not acted willfully to disobey the discovery deadline order.  Indeed, the Magistrate Court initially appeared to understand the government's statements in this regard (*see* Docket No. 169, at 27-28 (the Magistrate Court has "no reason to doubt [the prosecutors'] good faith and [it] appreciates their candor, both in [their] submission and in what [they] said today…"). The necessity to withhold the discovery in the absence of a protective order became of such paramount importance to the government that the government neglected to consider or comprehend the significance that, in so doing, it would be acting in direct contravention of the Magistrate Court's order setting the May 23, 2024 discovery deadline.  The failure to comply with the discovery deadline without first advising the Magistrate Court and the parties of its reasons for needing to do so was clearly a mistake.  *See United States v. Wynder*, 2022 WL 3572881, *1 (S.D.N.Y. 2022) ("Prosecutors, like judges and defense counsel, make mistakes. It is inherent to the human condition.").  But it was not bad faith.

As for the cases the government has cited as other examples of government misconduct, it is true that none are directly analogous to the circumstances presented here. *See* Docket No. 243, at 9 (Gogolack). However, that is the point. The government has cited those other cases in an effort to demonstrate that, even in more egregious circumstances where the government has engaged in misconduct, the sanctions imposed by other courts are nowhere near the severity of what the Magistrate Court imposed in this case, where, as here, there is an absence of bad faith and where the defendants have made no showing of substantial prejudice.

With regard to prejudice, the defendants continue to conflate constitutional speedy trial prejudice with prejudice in the context of a Rule 16 discovery violation. They are two different concepts. *See United States v. Jumaev*, 20 F.4th 518, 548 (10th Cir. 2021). The prejudice that the Sixth Amendment right to a speedy trial is designed to protect against is "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). By contrast, the prejudice that Rule 16 is designed to protect against is prejudice to the defendant's right to a fair trial. Thus, the ultimate inquiry is how the untimely disclosure "adversely affected" some aspect of the defendants' trial strategy. *See United States v. Vinas*, 910 F.3d 52, 60 (2d Cir. 2018); *see also Jumaev*, 20 F.4th at 548 ("Delay, therefore, is relevant to assessing prejudice under *Wicker* only to the extent that delay impaired the defendant's ability to mount his defense."). In this regard, the defendants fail to make a showing as to how their trial strategy or ability to mount a defense was adversely affected by the delayed disclosure of the discovery at this juncture when no trial date or motion schedule has been set.

Courts should "impose the least severe sanction that will accomplish prompt and full compliance with" the violated discovery requirement. *Gonzales*, 164 F.3d at 1292; *see also Hastings*, 461 U.S. at 506 (deterrence is an inappropriate basis for reversal under a court's inherent supervisor powers where error is harmless and "means more narrowly tailored to deter objectionable prosecutorial conduct are available"). That is not what the Magistrate Court did here. Instead, the Magistrate Court decided to impose the drastic sanctions of disqualification of the government's trial team; preclusion of the government's participation in litigating the terms of the protective order; and charging three months' constitutional speedy trial time against the government when no constitutional speedy trial claim has yet to be asserted by the defendants. These sanctions are not supported by the record, one which demonstrates that the government's failure to turn over discovery as required by the Magistrate Court's discovery order was not motivated by bad faith, but rather, by a desire to implement a protective order to protect witness safety and prevent unwarranted disclosure of the government's evidence. In the end, the government's disclosure of discovery was delayed by a period of twelve days.

## **CONCLUSION**

For the reasons set forth above, the Court should reverse the Magistrate Court's finding, as set forth in its July 29, 2024 and August 23, 2024 Decisions and Orders, that the government acted in bad faith in failing to produce discovery by the May 23, 2024 deadline imposed by the Court in order to put a protective order in place; reverse and vacate the Magistrate Court's order disqualifying the assigned AUSAs, precluding the government from negotiating the terms of the protective order, and charging of constitutional speed trial time,

and remand to the Magistrate Court for a sanction commensurate with both the government's conduct and any prejudice to the defendants.

DATED: Buffalo, New York, October 15, 2024

> TRINI E. ROSS
> United States Attorney
>
> BY: s/ CAITLIN M. HIGGINS
> s/ TIFFANY H. LEE
> Assistant United States Attorneys
> Western District of New York
> 138 Delaware Avenue
> Buffalo, New York 14202