UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | 23-CR-99-LJV-JJM |
| v. | |
| SIMON GOGOLACK, | REPLY TO GOVERNENT'S RESPONSE TO MAGISTRATE JUDGE APPEAL |
| Defendant. | |

_____

Mr. Gogolack was prejudiced by the government's bad-faith decision to withhold discovery and then use that withheld discovery as a negotiating chip in an attempt to secure a protective order that would have limited his constitutional right to present a defense and to counsel. He has had to sit in jail, unable to view discovery, while his attorneys remain unable to utilize that discovery for investigation and must litigate the consequences of the government's misconduct.

Judge McCarthy recently recognized some of the prejudice that flowed from the government's decision. In his order discussing the protective order, he rejected the government's argument that no prejudice existed, finding "the discovery produced was for 'attorney's eyes only' [122], meaning that defendants remain at a disadvantage in reviewing the materials with their attorneys." Dkt. 256 at 6.

Because the government cannot see that, it proposes ineffectual sanctions. Notably, it now suggests a continuance is the appropriate remedy.  Previously, before Judge McCarthy found that it acted in bad faith, however, it had proposed a 12-day running of the speedy trial calendar. Dkt. 142 at 21. This suggests that the government still fails to understand the full gravity of its actions, and it demonstrates why a more severe sanction is necessary.

The government's proposed sanction also fails to account for its conduct across other cases. The government acted in bad faith in this case after receiving sanctions short of dismissal (and more severe than a continuance). The Court must account for the persistent and escalating misconduct.

The government's remaining arguments are equally unpersuasive. For instance, the government claims that it "demonstrated its intention to comply [with the 5/23/24 discovery deadline] when it first advised the parties that the discovery was ready to be produced, three days in advance of the deadline." Dkt. 241 at 9. But then it did not comply with the order. Given that the government has confessed to being able to comply, its own actions show its true intentions.

Next, the government explains that it knew about the discovery deadline and that it knew that it would not provide discovery by the date, but somehow did not make a "conscious decision" to violate that deadline. *Id*. at 9 n.2. That would require finding new definitions for the words "conscious" and "decision," and that is what the government has done. Conscious decision now means "willfully, and with bad intent." *Id*.  Only by changing those basic definitions can the government claim it was straightforward about its conduct.

Finally, the government criticizes defense counsel for not prioritizing the litigation over the protective order's terms, and instead focusing on litigating sanctions. Dkt. 241 at 12. It notes, "[h]ere, defense counsel could have pressed the Magistrate Court to decide the issue of the protective order in order to ensure that their clients had access to discovery." *Id*.

But defense counsel did prioritize the protective order. At the end of the July 22, 2024 status, where the Court first said that it was considering rescinding the speedy trial exclusion, defense counsel argued that the attorney's-eyes-only protective order limited their ability to

engages with experts and potentially litigate the issue. Tr. July 22, 2024 at 30-31. The Magistrate Court responded "Let's take one step at a time." *Id*. at 31.

Defense counsel continued to litigate the protective order at the same time as the sanctions. Defense counsel attempted to negotiate a protective order with the government before any sanctions but the government terminated negotiations. After the government filed a motion for a protective order based on an ex-parte affidavit, defense counsel filed a response before the deadline requesting access to that affidavit, proposing their own protective order, and explaining the differences between the two protective orders while still litigating sanctions. Dkts. 129, 134, 146.

Notably, defense counsel had to litigate the protective order and sanction issue simultaneously because the government delayed seeking a protective order until it missed the discovery deadline. Neither issue was ripe until then. This was not a strategic choice. It was a requirement brought about by the government's actions and the sequential nature of time.

Last, the government—not defense counsel—wanted to put the protective order on hold. While defense counsel tried to litigate the issues simultaneously, the government moved for an abeyance on the protective-order litigation, claiming that the sanctions issues were potentially dispositive. Dkt. 176.

***

The government's words and actions continue to diverge. It claims to understand "[t]here is no excuse for missing the court-imposed discovery deadline." But it has spent the last five months explaining that, actually, there is an excuse: attempting to secure a protective order. By dismissing this case with prejudice, for the reasons originally stated and in this reply, the Court can send a strong message—one that lesser sanctions have failed to deliver.

**DATED**:        Buffalo, New York, October 15, 2024

>                    Respectfully submitted,
>
>                    **/s/ Jeffrey T. Bagley**
>                    Jeffrey T. Bagley
>
>                    **/s/ John J. Morrissey**
>                    John J. Morrissey
>
>                    Assistant Federal Public Defenders
>                    Federal Public Defender's Office
>                    300 Pearl Street, Suite 200
>                    Buffalo, New York 14202
>                    (716) 551-3341, (716) 551-3346 (Fax)
>                    jeffrey_bagley@fd.org
>                    Counsel for Defendant Simon Gogolack

**TO:**   Caitlin Higgins, *et al*.
      Assistant United States Attorneys