UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

SIMON GOGOLACK, et al.,

Defendants.

23-CR-99-LJV-JJM
DECISION & ORDER

---

Before the Court are cross-appeals from a decision and order in which United States Magistrate Judge Jeremiah J. McCarthy found that the government had acted in bad faith by failing to comply with a discovery deadline and ordered sanctions, including disqualifying three prosecutors assigned to the case.[1]  Docket Item 200.  After careful review and extensive thought, this Court vacates Judge McCarthy's finding that the government acted in bad faith and modifies the sanctions as explained below.

## BACKGROUND

On September 13, 2023, a grand jury in the Western District of New York indicted Simon Gogolack for conspiring to possess with intent to distribute and conspiring to distribute fentanyl, cocaine, methamphetamine, marijuana, and Alprazolam (Xanax); maintaining drug-involved premises; possessing firearms in furtherance of drug trafficking; possessing a firearm and ammunition after having been

---

[1] Judge McCarthy initially found bad faith and ordered briefing on the appropriate sanction.  Docket Item 173.  The government moved for reconsideration of the bad faith finding, which Judge McCarthy denied in the same decision and order in which he ordered sanctions.  Docket Item 200.

convicted of a felony; and possessing a firearm and ammunition when he was using controlled substances.  Docket Item 12.  The case was assigned to United States District Judge John L. Sinatra, Jr., who referred it to Judge McCarthy for pretrial proceedings.  Docket Item 14.  A week later, the grand jury issued a superseding indictment adding charges of kidnapping and tampering with a witness.  Docket Item 18.

On January 5, 2024, the grand jury issued a second superseding indictment adding Peter Gerace, Jr.; John Thomas Ermin; Michael Roncone; Frank Knight; Howard Hinkle, Jr.; Cortnie Barber; Bernard Byrd III; and Scott Barnes as defendants.[2]  Docket Item 24.  The second superseding indictment included, among other things, charges of conspiracy to obstruct justice, conspiracy to tamper with a witness, conspiracy to retaliate against a witness, and distribution of fentanyl resulting in death.  *Id.*  Several days later, the case was reassigned to this Court.  Docket Item 26.

On February 23, 2024, Judge McCarthy held a status conference with all counsel.  *See* Docket Items 74 and 124.  At the conference, Judge McCarthy said that he wanted to set a deadline for the government to produce discovery, and he suggested 60 days.  Docket Item 124 at 6.  When the government requested an additional 30 days due to the amount of discovery that it had to produce, *id.* at 6-7, Judge McCarthy asked the government whether there was "a possibility of doing rolling production during the 90[-]day period," *id.* at 10.  The government said that it "certainly th[ought] so" and that it "would be open to . . . providing on a rolling basis what's available."  *Id.*

---

[2] Barnes has since been severed from the other defendants.  *See* Docket Item 272.  His case is scheduled for trial in January 2025.  *See* Docket Item 286.

Judge McCarthy granted the government's request for 90 days but told the government that he wanted "the discovery to be produced sooner than that date as best you can."  *Id.* at 12.  In fact, he directed the government to produce discovery "[o]n a rolling basis so that people can hit the ground running in terms of what they think they need to do."  *Id*.  Judge McCarthy thus ordered that "the production should occur on or before May 23" and said that he then would "give the parties a brief period of time to review what [they had] received" before they returned for another status conference on June 3.  *Id.* at 12-13.

On May 16, 2024—a week before the deadline of May 23, 2024—the government's Litigation Technology Specialist informed the prosecutors "that the necessary hard drive storage capacity for the disclosure of the discovery production in this case would be [three t]erabytes."  Docket Item 123-1 at ¶ 12.  "The following Monday, May 20, 2024, [the government] emailed counsel for each defendant in this case with an attached letter informing them of the need for a [three-terabyte] hard drive to be provided to the government in order for a copy of the discoverable material to be produced to each defendant."  *Id.* at ¶ 13.  The government also "informed counsel for each defendant that the upload process itself would likely take between two and three days to complete due to the size of the production."  *Id.*  By the May 23 deadline, the government had received hard drives from only three of the nine defendants.  *Id.* at ¶ 14.  It received three more by May 29, 2024.  *Id.*

Later on May 29, with six hard drives in hand, the government emailed defense counsel with a proposed protective order.  *Id.* at ¶ 15.  The proposed protective order, among other things, prohibited "member[s] or associate[s] of" various motorcycle clubs

3

from "serv[ing] as a defendant['s] or counsel's agent" and required defense counsel to "provide a certification to the U.S. Attorney's Office listing the name of each person on the defense team who has been permitted to review the materials."  Docket Item 129-1 at 3, 6.  The email stated as follows:

> The government has drafted the attached protective order regarding the discovery that will be provided in this case.  The order would not prevent you from reviewing discovery with your clients, or with paralegals/investigators involved in the case.  The discovery includes cell phone extractions and other information that we believe should be protected and should not be distributed unnecessarily to third parties.
>
> I am hoping that this protective order can be instituted on consent without the need for litigation.  Does everyone agree with the terms of the proposed protective order?  If so, I will submit it to Judge McCarthy on consent.  Once the protective order is authorized by the Court, we will release the discoverable material.
>
> If we [cannot] reach an agreement on this protective order, the government will file a motion with Judge McCarthy as soon as practicable to keep this process moving forward.  In order to keep this case moving forward expeditiously, kindly reply to this email as quickly as possible.  If you take issue with a particular provision of the proposed protective order, please reply-all to this email and perhaps we can work through any concerns short of additional time-consuming litigation.

Docket Item 123-1 at ¶ 15.  The email also noted that the government had received hard drives from six defendants but not from the other three.  *Id.*

On May 30, 2024, counsel for Roncone responded that he had no objections.  *Id.* at ¶ 18.  The government emailed again on May 31 asking for responses.  *Id.* at ¶ 19.  Counsel for Barnes responded that "the intent is to have a discussion when all are together [at the status conference] on Monday."  *Id.* at ¶ 20.

The following Monday, June 3, the parties appeared before Judge McCarthy for their scheduled status conference.  *Id.* at ¶ 24.  Defense counsel for Gerace, on behalf of all the defendants, "objected to the fact that they had not yet received the

discoverable material." *Id.*  Judge McCarthy ordered that the government's production of discovery be deemed "attorney's eyes only" temporarily and that the parties continue to confer in an attempt to reach agreement on a protective order.  *See* Docket Item 122. Judge McCarthy further ordered that by June 10, 2024, the parties either file a proposed stipulated protective order or motions for the entry of a protective order.  *See id.*  Judge McCarthy also gave the defendants until June 10 to "file motions directed to consequences of the government's failure to abide by [his] February 23, 2024 Text Order 74 requiring the government to produce discovery to [the defendants] by no later than May 23, 2024."  *See id.*  He set a deadline of June 14 for responses to those submissions and scheduled a status conference for June 27.  *See id.*  The government moved to exclude Speedy Trial Act time until the June 27 conference, and Judge McCarthy denied that request.  *Id.*

Two days later, the government filed a motion to exclude Speedy Trial Act time (thus stopping the Speedy Trial Act clock).  Docket Item 123; *see* 18 U.S.C. § 3161(h)(1)(D) (automatically excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion").  The defendants responded to that motion, Docket Items 126, 127, 130, 143, 148, and the parties filed briefs addressing the appropriate sanctions, Docket Items 131, 132, 142.

Judge McCarthy held oral argument on July 22, 2024.[3]  *See* Docket Item 171. The defendants asked for a hearing to "explore" whether the government's failure to

---

[3] The June 27 appearance was postponed to July 22.  *See* Docket Items 152 and 159.

5

produce discovery on time was "just negligence" or bad faith. *See id.* at 4-6. Counsel for Gerace clarified that Gerace was not seeking "sanctions against any of these prosecutors individually or against this trial team individually"; rather he was "ask[ing] for sanctions against the U.S. Attorney's Office." *Id.* at 20.

Judge McCarthy said that he "ha[d] no reason to doubt [the prosecutors'] good faith . . . but [that he was] looking also from the standpoint of the defendants, many of whom have been sitting in custody for a considerable period of time." *Id.* at 27. Thus, Judge McCarthy said, "based on what [he had] heard thus far, [he did not] find that there [wa]s any indication of bad faith that would warrant a hearing." *Id.* at 27-28. He did, however, "conclude, for many reasons, that the government's conduct ha[d] been unjustifiable and . . . warrant[ed] revisiting the Speedy Trial Act exclusion [that he had] imposed on February 23[]." *Id.* at 28. Judge McCarthy then said that he would issue a written decision. *Id.*

A week later, Judge McCarthy issued a decision and order. Docket Item 173. He noted that "[d]uring oral argument a week ago, [he had] stated that although 'the government's conduct ha[d] been unjustifiable[,]' he] found no 'indication of bad faith.'" *Id.* at 2 (quoting Docket Item 171 at 27-28). But "upon further review of the government's submission," he said, he "now realize[d] that [he had] spoke[n] too soon." *Id.* More specifically, Judge McCarthy determined that "the government's delay in seeking a protective order was *not* merely an 'oversight.'" *Id.* at 5. Rather, "although [Judge McCarthy] had unequivocally ordered production of voluntary discovery by May 23, 2024, the government deliberately decided not to comply with that order." *Id.* And Judge McCarthy concluded that "[t]he government's willful violation of [his] order

constitute[d] bad faith." *Id.* (citing *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 345 (2d Cir. 1986)).

Judge McCarthy also noted that "the sanction [that he] had intended to recommend, namely vacating [his] 'ends of justice' exclusion of time from the Speedy Trial Act . . . calendar (18 U.S.C. § 3161(h)(7)(A))[,] would have little impact[] since [Speedy Trial Act] time was also automatically excluded under 18 U.S.C. § 3161(h)(1)(D) due to the pendency of various unresolved motions." Docket Item 173 at 2. He therefore ordered briefing from the defendants to "propose an appropriate sanction (or sanctions)." *Id.* at 6. The defendants submitted that briefing, Docket Items 181, 183, 184, 185, 186, 187, and 189; the government responded and moved for reconsideration of Judge McCarthy's bad faith finding, Docket 191; and the defendants replied, Docket Items 193, 194, 195, 196, and 198.

After hearing argument, *see* Docket Item 199, Judge McCarthy issued a second decision and order—this one denying the government's motion for reconsideration and imposing sanctions. Docket Item 200. More specifically, Judge McCarthy concluded that missing the discovery deadline was "entirely without color" because "the government simply *chose* not to [produce discovery by the deadline], absent a protective order [that] it had not requested and [Judge McCarthy] had not ordered." Docket Item 200 at 2-3; *see Dow Chem.*, 782 F.2d at 344. The government's noncompliance also was taken "for an [i]mproper [p]urpose," Judge McCarthy determined, because the government disobeyed the discovery order "in order to obtain a tactical advantage, by limiting defendants' access to and use of the information in a

7

manner which [Judge McCarthy] had not ordered." Docket Item 200 at 3-4; *see Dow Chem.*, 782 F.2d at 344.

Judge McCarthy then ordered a "three-pronged sanction": (1) he precluded the government from "comment[ing] on the defendants' propos[ed]" protective order; (2) he charged three months' delay to the government for the purposes of any Sixth Amendment speedy trial analysis; and (3) he disqualified the three government prosecutors from the case. *Id.* at 5-8. The government appealed Judge McCarthy's decision and order, and this Court stayed Judge McCarthy's order pending appeal to this Court.[4] *See* Docket Items 201, 202, and 230. Gogolack and Gerace also appealed, arguing that the sanctions did not go far enough and that the indictment should be dismissed. *See* Docket Items 228 and 231.

This Court heard oral argument and reserved decision. *See* Docket Item 273. The Court also ordered both the government and the defendants to submit proposed protective orders. *See id.* After reviewing the submissions, this Court entered a protective order on November 7, 2024. *See* Docket Items 288 and 293. In the meantime, the government filed a supplemental letter brief, Docket Item 277, to which Ermin, Gogolack, and Gerace responded, Docket Items 285, 289, and 290.

For the reasons that follow, this Court vacates Judge McCarthy's finding that the government acted in bad faith and modifies the sanctions as explained below.

---

[4] This Court subsequently modified its stay only with respect to the protective order. Docket Item 233. More specifically, the Court ordered the defendants to submit their proposed protective order to Judge McCarthy for consideration by September 27, 2024. *Id.* Judge McCarthy entered a protective order on October 9, 2024, Docket Item, 254, but the government then moved for a stay of that order, Docket Item 259, and this Court granted that motion, Docket Item 261.

**DISCUSSION**

"[A] district court may only 'modify or set aside any part of [a magistrate judge's non-dispositive] order that is clearly erroneous or is contrary to law.'" *United States v. Aventura Techs., Inc.*, 607 F. Supp. 3d 278, 282 (E.D.N.Y. 2022) (quoting 28 U.S.C. § 636(b)(1)(A)); *see Meyer Corp. U.S. v. Alfay Designs, Inc.*, 2017 WL 5515938, at *2 (E.D.N.Y. Mar. 6, 2017) (applying clear error standard to magistrate judge's "decision to impose sanctions based solely on the dishonest and bad faith conduct"). "This standard is highly deferential and only permits reversal where the magistrate [judge] abused his discretion." *Aventura Techs.*, 607 F. Supp. at 282 (quoting *Mental Disability L. Clinic v. Hogan*, 739 F. Supp. 2d 201, 203 (E.D.N.Y. 2010)).

I. **BAD FAITH FINDING**

As Judge McCarthy observed, "[b]ad faith is not a concept that lends itself to precise definition." Docket Item 200 at 4 (quoting *In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001)). In the civil context, the Second Circuit has found that for a court to find bad faith, there must "clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes." *Dow Chem.*, 782 F.2d at 344 (alteration in original) (citation and internal quotation marks omitted). In the criminal context, the Second Circuit likewise has stated that "[a]n act is 'in bad faith' if it is intentionally deceptive or dishonest"; the court noted that "[t]he *Oxford English Dictionary* refers to 'faithlessness' and 'treachery'

9

in defining the term." *United States v. Bove*, 888 F.3d 606, 608 (2d Cir. 2018).  With those guideposts in mind,[5] this Court turns to Judge McCarthy's findings.[6]

As explained above, Judge McCarthy first found that under the *Dow Chemical* framework, the government's actions were "entirely without color" because the government made a deliberate choice to disobey his discovery deadline without seeking leave of court.  Docket Item 200 at 2-3 (quoting *Dow Chem.*, 782 F.2d at 344).  This Court agrees that the government's decision was indeed intentional and deliberate.

After extensive thought, however, this Court respectfully disagrees—even under a clear error standard—that the government's actions were taken in bad faith.  Although the government deliberately decided not to produce the documents by the deadline, it did so because an order protecting the identity of witnesses and other sensitive information was not in place.  And while the government can be faulted for not ensuring that such an order was entered before the deadline, that does not turn inattention and negligence into bad faith.

Indeed, as this Court asked at oral argument, upon realizing that there was no protective order in place when the deadline came and went, what was the government to do?  *See* Docket Item 270 at 13.  In a case involving allegations that a witness was murdered, producing sensitive discovery without a protective order in place was not a

---

[5] Both *Dow Chemical* and *Bove* were in the context of an award of attorney's fees, which is not the posture of this case.  Nonetheless, this Court finds the framework in those cases instructive.

[6] The defendants urge this Court to go beyond reviewing the findings that Judge McCarthy made in his two decisions on sanctions and to review the entire history of this case.  This Court thinks that is beyond the scope of this appeal and confines its review to Judge McCarthy's findings on bad faith and sanctions.

feasible option. So the reason the government deliberately and intentionally chose not to abide by Judge McCarthy's order was to protect witnesses and others in this case. And this Court respectfully disagrees with Judge McCarthy that such a reason is improper.

That is not to say that the government cannot be faulted. It can. The failure to seek a protective order before the discovery deadline was—without question—a significant oversight. Upon realizing its error, the government should have gone to Judge McCarthy immediately. It should have approached defense counsel with contrition, not a sense of entitlement.[7] And it should have accepted full responsibility for its actions, rather than shifting blame.[8] Especially in a case with defendants in custody, the government simply must do better. But none of that crosses the threshold of bad faith.

What is more, during much of the discovery period, the prosecutors handling this case were involved in a complex and protracted trial before this Court. *See United States v. Joseph Bongiovanni*, 19-cr-227. When that case ended in a mistrial in mid-

---

[7] Indeed, this Court is quite troubled by the cavalier attitude with which the government appears to have approached what it now admits was a massive oversight. As one defendant observes, "the apologetic stance that [the] government now takes—post sanctions—was not present in the immediate aftermath of its failures. . . . It expressed none of its current humility in the time before Judge McCarthy imposed the sanctions." Docket Item 289 at 3. For example, nearly a week after the discovery deadline when it occurred to the government that it had forgotten to obtain a protective order, the government emailed defense counsel an extremely restrictive protective order without apology—or even an acknowledgment of the delay it was causing. *See* Docket Item 123-1 at 7.

[8] For example, the government faulted some defendants for not promptly providing hard drives. *See* Docket Item 123-1 at 7-9 & n.3. But those defendants who had provided their hard drives could have received their discovery before the others, so that explanation rings hollow.

11

April, they immediately had to begin preparing to retry the case and briefing post-trial motions—all while preparing for another lengthy trial that would follow *Bongiovanni*. *See United States v. Peter Gerace, Jr.*, 19-cr-227.  Although that caseload does not excuse their missing the deadline—especially in a large office where others could have pinch hit—it does color this Court's consideration of whether those prosecutors acted in bad faith.

For all those reasons, this Court vacates Judge McCarthy's finding of bad faith. But that does not mean that sanctions are not appropriate.  On the contrary, the government's negligence in overlooking the protective order until well after the eleventh hour in a case in which it was abundantly clear that one was needed, coupled with the government's sense of entitlement, indeed warrants some sanction.  This Court turns now to the question of what sanction is appropriate.

## II.     SANCTIONS

### A.     Protective Order

The first sanction Judge McCarthy imposed was to preclude the government from seeking a protective order.  *See* Docket Item 200 at 5-6.  Judge McCarthy recognized, however, that "the privacy and other interests of third parties, who bear no responsibility for the government's misconduct," required a protective order of some sort.  *Id.* at 6.  So he solicited a joint proposal for a protective order from the defendants but found that "[b]y its misconduct, the government has forfeited its right to comment on the defendants' proposal, without prejudice to its ability to suggest modifications as to discovery produced at a later stage of the case."  *Id.*

This Court finds that sanction to be inappropriate under the circumstances. As Judge McCarthy recognized, there are interests in this case beyond the government's and the defendants', and this Court has an obligation to protect those interests. Precluding the government's input toward fashioning a protective order undercuts that obligation at the expense of innocent witnesses and third parties.

At oral argument, this Court therefore solicited protective order proposals from both the defense and the government. *See* Docket Item 273. After carefully reviewing those proposals, this Court found that the defendants' proposal was not sufficient to protect potential witnesses. The Court therefore issued a protective order that incorporated some, but not all, of the government's requested provisions. *See* Docket Item 288. That order is now in place. Docket Item 293. This Court therefore vacates the sanction preventing the government from commenting on the protective order.

### B.     Disqualification of Counsel

Perhaps the most significant sanction Judge McCarthy ordered was to disqualify the three prosecutors assigned to this case and responsible for the discovery oversights. Judge McCarthy acknowledged that all three are "hardworking and dedicated attorneys"—a conclusion with which this Court wholeheartedly agrees—but found that their willful violation of the discovery order warranted disqualification. Docket Item 200 at 7. Moreover, in light of the prosecutors' "failing to earlier request a protective order or promptly produce rolling discovery (or earlier advise the court that they could not)," Judge McCarthy found "that these attorneys are stretched too thin with other commitments," giving him "little confidence in their ability to devote the necessary time and effort to this case going forward." *Id.* at 8.

This Court vacates that sanction for the same reasons that it overturned the finding of bad faith. Without question, the government—and more specifically, one or more of these three prosecutors—made the deliberate decision not to produce discovery without a protective order. But as explained above, that decision was justified, even if the timing and manner in which the government approached the issues should have been far different.

Moreover, although this Court agrees with Judge McCarthy that these attorneys are stretched quite thin having been on trial before this Court for nearly half of this year, the Court shares the government's concern about the separation of powers if this Court were to mandate how the United States Attorney's office staffs its cases. *See* Docket Item 230 at 33. To be sure, the staffing appears to be insufficient, and that is something that must change. But whether the better course is to add attorneys—either to this case or to the other cases assigned to these three prosecutors—or to take these attorneys off this case or other cases is not this Court's call; rather, absent prosecutorial misconduct or an ethics violation, it is a decision that should and will be left to the executive branch. *See United States v. Stewart*, 294 F. Supp. 2d 490, 494 (S.D.N.Y. 2003) ("Disqualification . . . is reserved for situations of prior representation, conflicts of interest, prosecutorial misconduct, and other unethical attorney behavior."). And what is more, removing these attorneys and assigning new attorneys completely unfamiliar with the case might well be counterproductive to the defendants' interests by causing further delays.

In sum, because this Court finds no bad faith, the government attorneys on this case are not disqualified.

### C. Constitutional Speedy Trial Time

Finally, Judge McCarthy held that three months' delay for the purposes of the Sixth Amendment speedy trial right should be charged to the government. Docket Item 200 at 6. At oral argument, this Court suggested that perhaps five months should be charged to the government because of the additional delay caused by the appeal of Judge McCarthy's order. *See* Docket Item 270 at 53.

Following oral argument, the government wrote a letter to the Court stating that "given the unusual circumstances of this case, it would agree to waive its challenge to the appropriateness of [this Court's charging five months' constitutional speedy trial time], for this case alone." Docket Item 277 at 1. The government added that "[i]n waiving its current challenge to this type of sanction for this case, [it] is endeavoring to acknowledge the concerns raised by the Magistrate Court, and this Court's observations during oral argument that twelve days of Speedy Trial Act time may be impossible to impose because certain motions were pending that would exclude Speedy Trial Act time by operation of law." *Id.*

Gogolack counters that "[t]he government's proposal takes a natural consequence of its action and calls it a sanction." Docket Item 289 at 1; *see id.* ("Whether it is this [C]ourt or an appellate court, or both, whichever body decides this future hypothetical motion, should one be filed, will have to decide whether certain periods of delay were neutral, or attributable to one side or the other. That is an analysis that will invariably consider the government's actions in withholding discovery, violating a court order, and insisting on an untenable protective order. So considered, there is little room to doubt that this hypothetical court deciding this hypothetical motion

15

will decide that the time should be attributable to the government."). This Court disagrees for a few reasons.

First, despite overturning Judge McCarthy's finding that the government acted in bad faith, this Court is charging the government with the time it took to litigate its appeal. One could argue that faced with the bad faith finding, disqualification, and inability to weigh in on the protective order, the government had little choice but to appeal. And that is probably correct. So a court later looking at this in hindsight might well find that the appeal period was not the government's fault. This Court finds, however, that the entire period is chargeable to the government as a sanction. Put another way, although this Court is reversing Judge McCarthy, it can see why Judge McCarthy did what he did. And the consequence of that—which was a direct result of the government's actions—was a five-month period of delay.

Second, deciding this issue now makes it the law of the case. The government will not be able to argue in this Court that this time should not weigh against it. That should encourage the government to learn from its mistakes and move this case along without delay on its part. This time will be counted against it, full stop.

Finally, although the defendants correctly note that the government's tune has changed dramatically since the sanctions order was issued, its willingness not to oppose this sanction suggests that it now understands the seriousness of its errors. That, too, cuts in favor of the sanction imposed.

For all those reasons, this Court finds that charging five months' time to the government for the purposes of the defendants' Sixth Amendment speedy trial

calculation is an appropriate sanction.[9]  It may not be perfect, but in light of all the circumstances, this Court finds it is the best solution available at this time.[10]

## **CONCLUSION**

This is the second time this year that this Court has been tasked with determining whether lawyers connected to this and a related case should be disqualified for actions allegedly taken in bad faith.  *See United States v. Gerace*, --- F.Supp.3d ---, 2024 WL 1793022 (W.D.N.Y. Apr. 25, 2024).  Both times, seeking the opponent's disqualification boiled down to failing to appreciate the perspective of the other side.  As this Court wrote in *Gerace*, defense "[l]awyers should not have to worry that their objectively legitimate strategic decisions will lead to a criminal investigation whenever the government perceives a nefarious motive."  *Id.* at ---, *21.  But by the same token, prosecutors should not have to worry that an honest mistake, even if significant, will be used to brand them as treacherous.

It is easy for lawyers zealously representing their clients to develop tunnel vision—especially in a case like this where the stakes are enormous for both sides.  But it is critical not to let that view lead both sides to assume the worst of each other.  That

---

[9] In light of this Court's finding that the government's actions do not constitute bad faith, it finds that dismissing the indictment—as the defendants request—is not warranted.

[10] This decision and order is without prejudice to the defendants' arguing that the government should be precluded from using certain evidence as a sanction.  This Court is not in a position to evaluate such an argument at this time without the specifics of what evidence the defense seeks to preclude and why the late production warrants that sanction.

the government threw the first punch in this fight may well explain the defense's counterpunch here. But that does not entitle them to win this round.

With all that in mind, and for the reasons described above, this Court vacates Judge McCarthy's decision and order, Docket Item 200, and charges five months' time to the government for the purposes of a Sixth Amendment speedy trial analysis as a sanction.

SO ORDERED.

Dated: November 21, 2024
       Buffalo, New York

          */s/ Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE