IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                                      23-CR-99-LJV

SIMON GOGOLACK, et al.,

                        Defendants.

---

**GOVERNMENT'S RESPONSE TO ATTORNEY CLAIR MONTROY'S MOTION TO WITHDRAW AS COUNSEL AND DEFENDANT FRANK KNIGHT'S MOTION TO MODIFY CONDITIONS OF PRE-TRIAL RELEASE**

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Casey L. Chalbeck, Assistant United States Attorney, of counsel, hereby offers its response to (1) Attorney Clair Montroy's motion to withdraw and (2) defendant Frank Knight's motion to modify conditions pre-trial release.

    **I.**    **The government defers to the Court as to Attorney Montroy's Motion to Withdraw as Counsel.**

The government defers to the Court as to the resolution of Attorney Montroy's motion to withdraw as counsel. *See* Mot. to Withdraw, ECF No. 362, (dated Mar. 4, 2025). However, the government notes (1) the following binding and non-binding authorities applicable to the Court's consideration of Attorney Montroy's motion, (2) offers some analysis regarding the legal framework's application to Attorney Montroy's motion, and (3) suggests that, if the Court grants the motion, it impose a transitional period between outgoing and incoming counsel.

    **A.**    **Legal Framework**

Local Rule of Criminal Procedure 44(b) governs motions to withdraw as counsel:

> During counsel's initial appearance on behalf of a criminal defendant, the Court may inquire whether counsel has been "fully retained" for the duration of the criminal proceedings. The "fully retained" inquiry serves to remind counsel that once he or she appears as the attorney of record, the Court will expect counsel to continue to represent that defendant throughout the duration of the trial court proceedings. Partial representation of a criminal defendant is not permitted in this Court, and an attorney who has appeared as the attorney of record may withdraw only for good cause shown. Nonpayment of legal fees, without more, may not be sufficient to demonstrate good cause. Therefore, counsel should make adequate financial arrangements with a client before accepting representation. Nothing in this Rule shall prohibit an attorney from seeking a mid-case appointment under the CJA where the interests of justice so dictate.

W.D.N.Y. Loc. R. Crim. P. 44(b).

Moreover, in making the "good cause" assessment, the Court should note that "[n]onpayment of legal fees, without more, may not be sufficient to demonstrate good cause." W.D.N.Y. Loc. R. Crim. P. 44(b); *see United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006) ("Non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation."). Indeed, where clients are unable to pay for continuing legal services, Rule 44(b) permits attorneys to "seek[] a mid-case appointment under the CJA." W.D.N.Y. Loc. R. Crim. P. 44(b).

Furthermore, when confronted with motions to withdraw, the Second Circuit has evaluated the propriety of the request against the rules of professional conduct. Specifically, the court has stated that "'[f]ull availability of legal counsel requires . . . that lawyers who undertake representation complete the work involved." *United States v. Vilar*, 731 F.3d 255, 257 (2d Cir. 2013) (quoting "Lawyer's Code of Professional Responsibility, adopted by New York State Bar Association, EC 2–31."). Professional conduct rules contemplate the completion of the representation because, in relevant part, motions to withdraw may cause

disruptions to the case.  *Accord Farmer v. Hyde Your Eyes Optical, Inc.*, 60 F. Supp. 3d 441, 446 (S.D.N.Y. 2014) ("A court determining whether to grant a motion to withdraw as counsel may also consider whether the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel." (internal quotations omitted)).  In that vein, courts in this district have cautioned that motions to withdraw are looked upon with disfavor, as the "delays necessary to allow substituted counsel an adequate opportunity to familiarize themselves with their client, investigate the facts of the case, explore possible defenses to the charges and generally 'get up to speed' on the proceedings can frustrate efforts to achieve the prompt and efficient administration of justice in criminal cases."  *United States v. Herbawi*, 913 F. Supp. 170, 171 (W.D.N.Y. 1996).

Lastly, courts look to the timeliness of a motion to withdraw.  *See United States v. Jafari*, 24 F. Supp. 3d 291, 293 (W.D.N.Y. 2014) (Wolford, J.) (identifying the "timeliness of the motion" to withdraw as a factor to consider in evaluating whether to grant or deny the motion).

    **B.**    **Application**

The rule requires the Court to make the factual finding that one or both of Attorney Montroy's stated reasons for seeking withdrawal—that is, (i) his ongoing health issues and (ii) Mr. Knight's inability to pay for certain legal services—satisfies the good cause standard.  *See* W.D.N.Y. Local R. Crim. P. 44(b) ("[A]n attorney who has appeared as the attorney of record may withdraw only for good cause shown."); *see also* Mot. to Withdraw at 1 (identifying the bases for withdrawal).

The government defers to the Court as to whether Attorney Montroy's health issues satisfy Rule 44(b)'s good cause standard.[1]  Notwithstanding that deference, it is the government's position that the Court cannot—and should not—under the Rule consider Mr. Knight's inability to afford expert legal services.  The Rule contemplates the allocation of CJA funds for legal services, including expert witnesses, for financially eligible defendants, even if such defendants initially retained counsel.  *See* W.D.N.Y. Local R. Crim. P. 44(b); *Parker*, 439 F.3d at 104.

That said, should the Court be inclined to find good cause for Attorney Montroy's withdrawal, additional fact-finding is necessary to establish (i) the timeliness of Attorney Montroy's request and (ii) the feasibility of the transitional period the government proposes. Timeliness considerations impact both aspects of Attorney Montroy's motion.  Specifically, the Court should inquire—and a record should be made—as to whether and when Attorney Montroy's health issues first began interfering with his ability to represent Mr. Knight. Similarly, with respect to Attorney Montroy's second basis for withdrawal—i.e., the necessity for an expert to review GPS data—the Court should be advised that the government informed Attorney Montroy of the GPS location data as early as January 16, 2024, during and after Mr. Knight's detention hearing, and supplied the raw data as part of its June 2024 discovery production.  *See generally* Minute Entry, ECF No. 39, (dated Jan. 16, 2024).  Thus, Attorney Montroy has been on notice of evidence that, in his estimation, will require expert analysis and now justifies his exit for approximately fourteen months and has been in possession of such raw data for approximately eight months.  The government sees no reason why, provided Mr. Knight qualifies for appointment of CJA counsel, CJA funds could not be used

---

[1] Counsel for the government wishes Attorney Montroy a full and speedy recovery.

to retain such an expert. And to the extent the Court considers Mr. Knight's inability to afford an expert as a basis meriting Attorney Montroy's withdrawal, which it should not, the Court should require Attorney Montroy to explain on the record why he failed to raise this concern with the Court sooner. *See Jafari*, 24 F. Supp. 3d at 293 ("Despite the fact that [attorney] has represented Defendant for well over a year, he filed a motion to withdraw less than one month before the start of trial, citing a communication deficiency between himself and Defendant which, according to his motion papers, has been an ongoing problem rather than a recent occurrence. Accordingly, the Court finds that [attorney's] motion is untimely and on the eve of trial." (internal citations omitted)); *see id.* at 294 (holding a hearing where attorney made statements on the record prior to adjudicating the motion).

The Court should solicit Mr. Knight's position on the record as to Attorney Montroy's motion to withdraw. Attorney Montroy's motion is devoid of any reference related to Mr. Knight's support for, or objection to, his motion. To ensure that Mr. Knight's right to counsel is not infringed upon, additional factual exploration and findings are necessary.

Finally, should the Court grant Attorney Montroy's motion—and to mitigate any additional disruption to this case—the government respectfully requests that the Court (1) appoint Mr. Knight, assuming he financially qualifies, an attorney pursuant to the Criminal Justice Act and (2) impose a transitional period between the appointment of new counsel and Attorney Montroy's complete withdrawal from the case. A transitional period will enable Attorney Montroy to facilitate and expedite new counsel's familiarization with Mr. Knight, "investigat[ion] [of] the facts of the case, explor[ation] [of] possible defenses to the charges" and generally enable him or her to "get up to speed" on the proceedings. *Herbawi*, 913 F. Supp. at 171. This will, in turn, not only minimize any disruption to Mr. Knight's defense,

but also will mitigate the disruption Attorney Montroy's departure may generate vis-à-vis the other defendants.  *See id.*

Accordingly, though the government ultimately defers to the Court's adjudication of Attorney Montroy's motion to withdraw as counsel, it respectfully requests that it consider and make factual findings consistent with the factors identified above and implement a transitional phase to facilitate Attorney Montroy's departure from this case.

## II. Government's Response in Opposition to Mr. Knight's Motion to Modify Conditions of Pre-Trial Release.

Mr. Knight seeks to lift four conditions of pre-trial release: (1) the travel restriction limiting his travel to the Western District of New York; (2) the firearms restriction prohibiting him from owning or possessing firearms during the pendency of this case; (3) the social media restriction prohibiting him from accessing or using social media; and (4) the $15,000 bond this Court imposed prior to releasing him from custody. *See* Mot. to Modify, at 1–2, ECF No. 361, (dated Mar. 4, 2025).  For the reasons stated below, the Court should grant in part and deny in part Mr. Knight's motion.

First, consistent with the government's prior correspondence with Attorney Montroy, the government consents to relaxing Mr. Knight's travel restriction insofar as it impedes him from discharging employment obligations.  This aspect of Mr. Knight's motion should be granted.  However, the government opposes Mr. Knight's blanket request to lift the travel restriction in its entirety so that he may socialize with friends and family.  Nearly all defendants in this district are subject to the standard condition restricting travel to the Western District of New York, and offering Mr. Knight a general exemption to this rule merely because he has family outside of the Western District of New York grants him a privilege that no other similarly-situated defendants in this district enjoy.  Moreover, the travel restriction

facilitates the U.S. Probation Office's monitoring of Mr. Knight; if Mr. Knight traveled for an extended period of time outside of the district, for example, Probation would be hard pressed to effectively monitor his compliance with the other conditions of his pre-trial release. If Mr. Knight would like a specific—as opposed to general—exemption from this standard restriction, he should follow the protocol applicable to all other defendants in this district: file a motion and affidavit regarding the nature and purpose of the requested travel that the government may then respond to.

Second, the Court should deny Mr. Knight's request that it exempt him from another standard condition: the restriction against possessing a firearm. *See* 18 U.S.C. § 3142(c)(1)(B)(viii) (identifying restriction against possessing a firearm as a valid condition of pre-trial release). Once more, principles of fairness dictate that Mr. Knight not receive a privilege generally unavailable to all other defendants in this district. Moreover, the condition is appropriate because Mr. Knight's "possession of firearms endangers officers of the Pretrial Services who may make unannounced visits to ensure that [he] is complying with the conditions of his release." *United States v. Green*, No. 3:18-CR-356-S, 2019 WL 6529446, at *3 (N.D. Tex. Dec. 4, 2019).

And, apart from those general considerations, the facts of this case especially establish the condition's propriety. Specifically, during the execution of the search warrant at Mr. Knight's residence, law enforcement observed six handguns and sixteen long guns. Mr. Knight, however, maintained a pistol permit listing nine pistols/handguns registered to him. Only five of those handguns were observed at Mr. Knight's residence at the time of the FBI's October 24, 2023, search. And one handgun observed at Mr. Knight's residence during the search, a Thomas Patent Revolver 1800s, #1117, was not listed on Mr. Knight's Allegany

7

County pistol permit at all. Nor could law enforcement locate or observe during the search the remaining four handguns listed on Mr. Knight's pistol permit.

More troubling still, on October 25, 2023, the day *after* the search of Mr. Knight's residence, co-defendant Simon Gogolack can be heard on a jail call stating, "yeah Frank's got those guns, and boom Frank's house gets raided, but guess what he doesn't have them, he doesn't have them. Those guns are somewhere else, and the feds will never get them [inaudible] because they are fucking losers." Text messages seized from cellular devices, meanwhile, indicate that Mr. Knight and Mr. Gogolack, a convicted felon, drug dealer, and drug user, traded at least one firearm.

In addition to ignoring both fairness and fact, Mr. Knight rests his argument in favor of lifting the firearm restriction on a wholly undeveloped allusion to his "Second Amendment" rights. *See* Mot. to Modify, at 2. Because Mr. Knight's argument is devoid of citation to any legal authority, the Court should deem it waived. But even if it considers it on the merits, it should follow its sister courts in rejecting—on these papers and these facts—challenges to the Bail Reform Act's constitutionality. *See, e.g.*, *United States v. Perez-Garcia*, No. 22 Cr. 01581 (GPC), 628 F.Supp.3d 1046, 1053–55 (S.D. Cal. Sept. 18, 2022) (upholding pretrial release prohibition on gun possession); *United States v. Slye*, No. 22 Mj. 144 (RAL), 2022 WL 9728732, at *1 (W.D. Pa. Oct. 6, 2022) (same); *United States v. Fencl*, No. 21 Cr. 3101 (JLS), 2022 WL 17486363, at *2–4 (S.D. Cal. Dec. 7, 2022) (same), appeal docketed, No. 22-50316 (9th Cir. Dec. 21, 2022); *United States v. Wendt*, No. 22 Cr. 0199 (SHL) (HCA), 650 F.Supp.3d 672, 678–79 (S.D. Iowa Jan. 11, 2023) (same). Accordingly, Mr. Knight's motion as to the lifting of the firearms restriction should be denied.

Third, the Court should reject Mr. Knight's request that it remove the social media restriction. *See* Mot. to Modify at 2 (complaining that the social media restriction impedes his ability to watch Netflix). As part of the obstruction with which he is charged in Count 1, Mr. Knight used his social media to communicate with individuals associated with this case about law enforcement activity. Maintaining the social media restriction is a prudent pre-trial release measure.

Fourth, and finally, the Court should deny Mr. Knight's request that it lift the $15,000 bond it previously imposed. The bond is intended to secure Mr. Knight's appearance at court proceedings and at trial. Lifting the bond *after* Mr. Knight and his defense team have collectively had access to the evidence bearing on his guilt for approximately eight months would eliminate one of the strongest deterrents of his flight while his incentive to flee strengthens.

For the reasons, the government respectfully requests that the Court grant in part and deny in part Mr. Knight's motion to modify his conditions of pre-trial release.

DATED: Buffalo, New York, March 11, 2025

        Michael DiGiacomo
        United States Attorney


BY:    s/ CASEY L. CHALBECK
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        (716) 843-5881
        Casey.Chalbeck@usdoj.gov