UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | 23-CR-99-LJV-JJM |
| v. | NOTICE OF MOTION |
| SIMON GOGOLACK, | |
| Defendant. | |

_____

| | |
|---|---|
| **MOTION BY:** | Jeffrey T. Bagley, Assistant Federal Public Defender |
| **DATE, TIME & PLACE:** | Before the Honorable Jeremiah J. McCarthy, United States Magistrate Judge, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York, **on the submitted papers.** |
| **SUPPORTING PAPERS:** | Affirmation of Assistant Federal Public Defender Jeffrey T. Bagley, dated March 14, 2025 |
| **RELIEF REQUESTED:** | Order requiring Simon Gogolack be returned to the WDNY and housed at a local facility in the district to allow for effective assistance of counsel. |
| **DATED:** | Buffalo, New York, March 14, 2025 |

**/s/  Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
Jeffrey_Bagley@fd.org
*Counsel for Defendant, Simon Gogolack*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.                                                                                      23-CR-99-LJV

SIMON GOGOLACK,                                                               **AFFIRMATION**

        Defendant.
_____

        **JEFFREY T. BAGLEY,** affirms under penalty of perjury that:

1. I am an Assistant Federal Public Defender for the Western District of New York and was assigned to represent the above-named defendant, Simon Gogolack.

2. As the Court is aware Mr. Gogolack was initially charged by a complaint filed in August 2023. Dkt. No. 1. At that time, he was remanded to the custody of the U.S. Marshal Service.

3. This Court then presided over a detention hearing on September 14, 2023, and ordered Mr. Gogolack detained. Dkt. No. 16.

4. Mr. Gogolack was indicted on September 13, 2023. Dkt. 12.

5. The government filed a superseding indictment on September 20, 2023. Dkt. 18.

6. Thereafter, on January 5, 2024, the government filed the second Superseding Indictment Dkt. No. 24.

7. In relevant part, the Second Superseding Indictment charges Mr. Gogolack, **the lead Defendant,** and co-defendants Gerace, Ermin and Hinkle (collectively, "the Defendants") with witness tampering conspiracy in violation of 18 U.S.C. § 1512(k) (Count 2) and witness retaliation conspiracy (Count 3) in violation of 18 U.S.C. § 1513(f). *See* Sec. Super. Indict., at

31–34. Count 2 alleges that from in or about March 2023 through on or about August 1, 2023, the Defendants conspired to kill Crystal Quinn, a federal witness, with the intent to prevent her attendance and testimony in Case Nos. 19-CR-227 and 23-CR-37. Id. at 31.

    8.      Likewise, Count 3 alleges that the Defendants conspired to retaliate against Ms. Quinn for her participation in grand jury proceedings related to Cases Nos. 19-CR-227 and 23-CR-37. *Id*. at 33. Mr. Gerace is a named defendant in both of those cases, which are pending in the Western District of New York. The charging statute under Count 2, instructs that "[w]hoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1512(k). Elsewhere, § 1512(a) provides that "[w]hoever kills or attempts to kill another person with intent to . . . prevent the attendance or testimony of any person in an official proceeding" shall be punished, "in the case of a killing, [in accordance with] the punishment provided in sections 1111 and 1112." *Id*. §§ 1512(a)(1)(A), (a)(3)(A). The witness retaliation statute—§ 1513—echoes these provisions. *See* § 1513(f) ("Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."); *id*. §§ 1513(a)(1)(A)–(B), 1513(a)(2) (instructing that "[w]hoever kills or attempts to kill another person with intent to retaliate against any person for . . . . the attendance of a witness or party at an official proceeding . . . or . . . . providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense" shall be punished, in the case of a killing, in accordance with section 1111). In turn, § 1111 states that premeditated murder "**shall be punished by death or by imprisonment of life**." (emphasis added).

    9.      On February 5, 2025, the Attorney General of the United States issued an internal guidance memorandum that directed the Capital Review Committee to review no seek decisions

in all pending capital-eligible cases between January 20, 2021, and January 19, 2025. This effectively makes this a potential death-eligible case since the government's no-seek position is not final. Dkt Nos. 350, 351 and 365.

10. In addition, there was extensive litigation regarding the protective order and the massive volume of discovery that adds to the complexity of the defense of the second superseding indictment. There are several terabytes of discovery that need to be reviewed with Simon Gogolack. The discovery is governed by a restrictive Protective Order which controls how the defendant may access and review the voluminous discovery. Dkt. No. 293.

11. Given the current posture of this case, in conjunction with the volume of discovery and the restrictive protective order, Mr. Gogolack's defense team must conduct in-person, face-to-face, one-on-one interviews with him. It is imperative that he be housed in a facility in the Western District of New York like all the other defendants in this case.

***

12. From August 17, 2023, to approximately December 2023, the United States Marshal Service originally housed Mr. Gogolack in Western District of New York at the Niagara County Jail.

13. In and around December 2023, the United States Marshal Service moved Simon Gogolack to the Northeast Ohio Correction Center (NEOCC), where he is currently housed. NEOCC is 189 miles from counsel's office, 378 miles roundtrip, a total of (6) six hours driving (assuming perfect conditions). The six hours of driving does not allot for the time required to meet in person, face to face with Mr. Gogolack or the time necessary to review the voluminous discovery.

14. Additionally, video conference at the facility is not secure and is not an effective nor adequate substitute for in person face to face meeting to which Mr. Gogolack is entitled.

3

Neither is a brief visit in the United States Marshal Service lockup at the United States Courthouse. Such a locations is not a secure or appropriate location for defense counsel to have extensive confidential attorney-client meetings. Indeed, counsel cannot review discovery with Mr. Gogolack through a screen and on the many occasions when we have met with him before court, he is often brought in just before a court appearance taken back soon after. While the Marshals have accommodated brief visits, they are unable to accommodate the types of visits necessary in any criminal case, much less one of this magnitude.

15. Mr. Gogolack hereby requests that he be immediately returned to a facility within the Western District of New York to allow him adequate opportunity to prepare his defense and exercise his right to counsel. Defense counsel has separately attempted through the United States Marshals Service to have Mr. Gogolack relocated to a facility in the Western District of New York. The Marshals denied that request.

16. Such an order from this Court is necessary to protect Mr. Gogolack's constitutional rights under the Fifth, Sixth and Fourteenth Amendments to a speedy trial, the effective assistance of counsel and due process.

17. This is no run-of-the-mill case. This a multi-defendant, multi-count, complex mega case with death eligible charges. Mr. Gogolack faces the most severe penalties (**death or life imprisonment**) and any obstruction of his right to confer with counsel poses serious complications.

18. Mr. Gogolack's placement in NEOCC – a day's trip from his attorneys, his family, and his discovery – infringes on his right to a speedy trial and it interferes with his access to counsel.

19. Pretrial detainees are restrained only to "ensure their eventual presence at trial and sentencing." *Cobb v. Aytch*, 643 F.2d 946, 957 (1981) (citing, inter alia, A. Highmore, Jr., A Digest of the Doctrine of Bail in Civil and Criminal Cases 192 (1783)). Thus, they retain several

4

constitutionally protected liberty interests relevant to the conditions of their confinement that are not fully available to sentenced inmates. First, pretrial detainees have a constitutionally protected right to the effective assistance of counsel. This sixth amendment right attaches at the initiation of criminal proceedings. *Id.* (internal citation omitted).

20. In *Cobb*, the Third Circuit agreed with the district court's finding that transfers of pretrial detainees, "at a minimum, significantly interfered with their access to counsel," and further held that "pretrial detainees enjoy the benefits of other constitutionally protected liberty interests which were infringed upon by the transfers of those inmates to distant state facilities. These interests include the right to a speedy trial guaranteed by the Sixth Amendment."

21. The Court in *Cobb* further agreed with the trial court that "in most instances a transfer would violate the pretrial detainee's due process rights and subject him or her to serious harm such as not being able to prepare a criminal defense" (*Id*. at 957). The court supported this by finding that the practice of transferring unsentenced inmates seriously impinged upon their personal liberty as protected by the speedy trial clause because it removed them from potential witnesses, reduced visitations by family and friends who often assist in finding witnesses, deprived them of pretrial interviews, and prolonged detention (*Id*.).

22. In *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), the Supreme Court recognized that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts . . . [and] a reasonable opportunity to seek and receive the assistance of attorneys," which encompasses the right to communicate with counsel and the right of access to them. Even more, in *Kirby v. Illinois*, 406 US 682, 689 (1972), the Court held that pretrial detainees have a constitutionally protected right to the effective assistance of counsel.

23. Additionally, ABA Standards for Criminal Justice § 4-3.1(f) directs that "Defense counsel should actively work to maintain an effective and regular relationship with all clients.

5

The obligation to maintain an effective client relationship is not diminished by the fact that the client is in custody," § 4-3.3(b) provides that "Counsel should interview the client as many times as necessary for effective representation, which in all but the most simple and routine cases will mean more than once. Defense counsel should make every reasonable effort to meet in person with the client. Consultation with the client regarding available options, immediately necessary decisions, and next steps, should be a part of every meeting," and finally, § 4-3.9(a) directs that "Defense counsel should keep the client reasonably and currently informed about developments in and the progress of the lawyer's services, including developments in pretrial investigation, discovery, disposition negotiations, and preparing a defense. Information should be sufficiently detailed so that the client can meaningfully participate in the representation."

24. Defense counsel cannot do that with Mr. Gogolack in NEOCC. Defense counsel is unable to travel to NEOCC regularly to meet with Mr. Gogolack given the distance and time requirements.

25. Courts are correctly skeptical about the adequacy of telephonic and video communication. In *United States v. Davis*, the court noted that "alternatives to in-person meetings," such as FaceTime and Zoom, are "no substitute for a face-to-face, in person, contact meeting between an attorney and his client." *United States v. Davis*, 449 F. Supp. 3d 532, 541 (D. Md. 2020). That conclusion aligns with common sense and experience. After years of the pandemic, just about everyone knows the limitations of Zoom conferences. Participants get bored easier; technical issues abound; it is difficult to references documents and videos. While occasionally convenient and necessary, they are not a long-term substitute for face-to-face human contact, and the relationship that flows.

26. The report, *Preserving Incarcerated Persons' Attorney-Client Privilege in the 21st Century: Why the Federal Bureau of Prisons Must Stop Monitoring Confidential Legal Emails*, also discussed the inadequacy of communicating with incarcerated clients, noting that electronic

6

communications can easily be, and frequently are monitored in federal institutions, which are insufficient to adequately protect a defendant's right to the effective assistance of counsel (Nat'l Ass'n of Crim. Def. Law. & Samuelson Law, Tech. & Pub. Pol'y Clinic (2020)).

27.    In *United States v. Black*, 2016 U.S. Dist. LEXIS 164571, at *5 (D. Kan. 2016), the Court used its legal authority to issue orders safeguarding pretrial detainees' Sixth Amendment rights after a finding that the Corrections Corporation of America regularly recorded attorney-client phone calls and video-conferences. The Court directed the Marshal to house such detainees in facilities as would not violate those rights. The relief requested in this case aligns with *Black*.

28.    The government insisted on a protective order in this case that prohibits Mr. Gogolack from possessing vast amounts of discovery. Thus, the only way that counsel can both comply with the protective order and have Mr. Gogolack review discovery is to physically sit with him while he does. This is wholly impractical given Mr. Gogolack's location.

29.    Mr. Gogolack's confinement in NEOCC infringes his Fifth, Sixth and Fourteenth Amendment rights, and poses undue hardships to the attorney-client relationship, which is crucial to maintain in this matter. This Court, however, has the legal authority to issue an order directing Mr. Gogolack's transfer. Mr. Gogolack is not asking to be housed in a particular facility, or to *not* be housed in any particular facility, other than one that does not compromise his access to counsel and thereby, his right to a fair trial, by either geographical distance or other means, based in particular on the time-sensitive need for access to counsel.

30.    While this Court has the power to order Mr. Gogolack's transfer to a Western District of New York facility for access to counsel purposes, it is beyond question that "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' *United States v. Medina*, 628 F. Supp. 2d 52, 54 (D.D.C. 2009), *Link v. Wabash R. Co.*, 370 US 626, 630-631

(1962), *Goodyear Tire & Rubber Co. v. Haeger*, 581 US 101 (2017); *see also Vazquez-Rijos v. Anhang*, 654 F3d 122, 127 (1st Cir. 2011) ("to operate effectively and administer justice properly, courts must have the leeway 'to establish orderly processes and manage their own affairs'"). Thus, it is well-established that the absence of a rule, without more, is not a determining factor in whether the Court possesses or lacks the inherent power to take such action or issue such orders necessary to "manage its own affairs," and in this regard the Court's inherent powers necessarily include the power to issue orders controlling the orderly process of trial. S*ee Price v. Ludika*, 2016 WL 827388 (W.D.N.Y. Mar. 3, 2016). This authority encompasses orders ensuring a defendant's ability to proceed with a scheduled proceedings with the effective assistance of counsel who has had the opportunity to adequately prepare for those proceedings.

31.    For counsel to meet the ABA requirements and ethical duties, counsel must make every reasonable effort to meet in person with the defendant to maintain an effective and regular relationship, conduct interviews, and prepare for hearings and trial preparation. The reasons above indicate that counsel cannot do so, and counsel cannot provide Mr. Gogolack with constitutionally effective assistance of counsel as guaranteed by the Sixth Amendment until such time as counsel is able to have reasonable opportunities to meet with the defendant, in person, on a regular basis to discuss his case, answer his questions, and recommend to him the options available. *See e.g.*, *Strickland v. Washington*, 466 US 668 (19840; *Geders v. United States*, 425 US 80 (1976); *Avery v. Alabama*, 308 US 444 (1940)).

32.    If Mr. Gogolack remains in NEOCC for any further appreciable period, counsel, and he, will be unprepared to proceed in this complicated matter.

**WHEREFORE**, defendant requests that this Court issues an order to the Marshal that Mr. Gogolack immediately be relocated to a facility within the Western District of New York, so that we may prepare his complex case and so that his right to counsel is not infringed upon.

8

DATED: Buffalo, New York, March 14, 2025

Respectfully submitted,

**/s/Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
jeffrey_bagley@fd.org
*Counsel for Defendant – Simon Gogolack*

**/s/ John J. Morrissey**
John J. Morrissey
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
john_morrissey@fd.org
*Counsel for Defendant – Simon Gogolack*