UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

   v.                                                                                      23-CR-99-LJV

SIMON GOGOLACK,                                              REPLY TO GOVERNMENT'S
                                                                                       RESPONSE

                            Defendants.
_____


       This Court ordered the U.S. Marshals Service (USMS) to respond to Mr. Gogolack's motion to transfer him to a closer facility. The USMS did not file a response, and this Court has not heard directly from the USMS at all on this important issue. On this record, this Court should grant the requested relief.

       The government took it upon itself to speak with USMS and have filed a response on their behalf. The government has not cited authority that it can substitute its position for, or argue on behalf of, the USMS. Although the USMS is structurally governed by the Attorney General, it is particularly inappropriate for the very prosecuting attorney team in this case to respond to Mr. Gogolack's motion, which does not concern the merits of the case against him. The Court is now forced to see this issue through the prism of an advocate for a party opposed to Mr. Gogolack, instead of a neutral party that can offer facts. The government has offered exactly what this Court presumably did not want: advocacy for a position contrary to Mr. Gogolack's interest for its own sake.

Even if the response is accepted, it should be given little credence. The government makes several accusations and allegations about Mr. Gogolack in its response, but it supports none of these assertions with evidence. These accusations are in any event irrelevant to the issue at hand. The question is not whether Mr. Gogolack deserves to be nearer his attorneys; the question is whether he is entitled to it. On that, there should be no doubt that he is, especially here given the gravity the charges, the severity of the possible punishment, and the volume of discovery.

The government further asserts that the contract between the USMS and the local jails provides no choice but for Mr. Gogolack's to be housed at NEOCC. But the contract itself is not before this Court, nor is any sworn testimony from any party to that contract. This Court is asked to accept on faith that Mr. Gogolack is such a problem that no local jail will accept him and that the contract allows the local jail to make that decision. These unsupported assertions cannot be credited on the government's say so. It is why this Court ordered USMS, not the government, to respond.

The government also contends that Mr. Gogolack must remain three hours away from his attorneys because his co-defendants are housed in the other available facilities. But Mr. Gogolack was housed locally before his co-defendants were even arrested. Once they were, instead of placing the new arrests in other jails, Mr. Gogolack was moved to NEOCC and the new detainees took his place.

In any event, the government suggests other forms of communication are available to the defendant to meet with his attorneys. Those other means are flatly insufficient. Meetings over Zoom are no substitute for in person consultation. We have had several of them and meaningful discussions are not feasible. Counsel cannot offer further detail without violating client/attorney privilege. None of the few decisions cited by the government require this Court to come to a different conclusion -- none are binding precedent.

The government asserts that the USMS will bring in Mr. Gogolack for face-to-face meetings at the lockup in the Courthouse. It suggests that while Mr. Gogolack cannot have a laptop or even staples, attorneys can review gigabytes of video discovery with him through the "glass screen." But there is no glass in the lockup. It is a wire mesh screen that obscures the view from the other side. It is not possible to review video discovery this way. Furthermore, in other cases, the USMS has said it needs a court appearance to bring in a defendant from a jail.

This is the type of lack of understanding of the nuance of the attorney/client relationship that highlights why the government is ill-equipped to weigh in on this matter. This is not a matter of convenience; it goes to the heart of our relationship with and ability to meaningfully communicate with our client in this extraordinary case.

As the government acknowledges, of the hundreds of detained individuals in the Western District of New York, only a fraction are housed in NEOCC. Our request is simple and reasonable. We are not suggesting that NEOCC is off limits for the entire W.D.N.Y. It is simply that in this particular case, with this amount of discovery, with this protective order, and with the

stakes as high as they come – life imprisonment or potentially the death penalty – housing the lead defendant in a different state three hours away is not "reasonable access."

**DATED**:   Buffalo, New York, March 24, 2025

Respectfully submitted,

**/s/ Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
jeffrey_bagley@fd.org

**/s/ John Morrissey**
John Morrissey
Assistant Federal Public Defender
john_morrissey@fd.org

Counsel for Defendant Simon Gogolack
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)

**TO:**   Nicholas Cooper, Joseph Tripi, Casey Chalbeck, *et al*.
Assistant United States Attorneys