```
UNITED STATES  DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------x         23-CR-99(LJV-JJM)
UNITED STATES OF AMERICA,

vs.
                                      Buffalo, New York
SIMON GOGOLACK, et al.,               May 21, 2025
            Defendants.
----------------------------x
```

**ORAL ARGUMENT**

TRANSCRIPT OF PROCEEDINGS
BEFORE MAGISTRATE JUDGE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE

MICHAEL DIGIACOMO, ESQ.
United States Attorney
BY:  JOSEPH J. TRIPI, AUSA
BY:  CASEY L. CHALBECK, AUSA
BY:  NICHOLAS COOPER, AUSA
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202

FOR DEFENDANT:      MARIANNE MARIANO, ESQ.
(Gogolack)          Federal Public Defender
                    BY:  JEFFREY T. BAGLEY, AFPD
                    BY:  JOHN JOSEPH MORRISSEY, AFPD
                    300 Pearl Street
                    Suite 200
                    Buffalo, New York 14202

FOR DEFENDANT:      MARK A. FOTI, ESQ.
(Gerace)            16 W. Main Street
                    Suite 100
                    Rochester, New York 14614
                         -and-
                    MEYERS BUTH LAW GROUP PLLC
                    BY:  CHERYL MEYERS BUTH, ESQ.
                    21 Princeton Place
                    Orchard Park, New York 14127

TRANSCRIBER:        Diane S. Martens
                    dimartens55@gmail.com

(Proceedings recorded by electronic video recording,
 transcript produced by computer.)

APPEARANCES - CONTINUED

FOR DEFENDANT:          DONALD M. THOMPSON, ESQ.
(Ermin)                16 W. Main Street
                       Suite 243
                       Rochester, New York 14614
                             -and-
                       MUSCATO, DIMILLO & VONA LLP
                       BY:  GEORGE V.C. MUSCATO, ESQ.
                       107 East Avenue
                       Lockport, New York 14094

FOR DEFENDANT:          LAW OFFICE OF PAUL G. DELL
(Roncone)              BY:  PAUL G. DELL, ESQ.
                       70 Niagara Street
                       Buffalo, New York 14202

FOR DEFENDANT:          FRANK M. BOGULSKI, ESQ.
(Hinkle)               135 Delaware Avenue
                       Suite 2
                       Buffalo, New York 14202
                             -and-
                       VILLARINI & HENRY LLP
                       BY:  DANIEL J. HENRY, JR., ESQ.
                       16 Main Street
                       Hamburg, New York 14085

FOR DEFENDANT:          BARRY J. DONOHUE, ESQ.
(Knight)               77 Broad Street
                       Tonawanda, New York 14150

U.S. v. Gogolack, et al. - 23-CR-99

# P R O C E E D I N G S

\*          \*          \*

(**Open court,** defendants present:)

**THE CLERK:**  On the record in criminal proceeding 23-CR-99, *United States of America v. Simon Gogolack, et al.* for oral argument regarding defendants' non-dispositive pretrial motions.

Present in the courtroom are Assistant U.S. Attorneys Casey Chalbeck and Nick Cooper.

Defendant Gogolack with Assistant Federal Public Defender Jeffrey Bagley and John Morrissey.

Defendant Peter Gerace with Attorneys Mark Foti and Cheryl Meyers Buth.

Defendant John Ermin with attorneys George Muscato and Donald Thompson.

Defendant Michael Roncone with attorney Paul Dell.

Attorney Barry Donahue for defendant Frank Knight.

And defendant Howard Hinkle with Attorneys Frank Bogulski and Daniel Henry.

The Honorable Jeremiah J. McCarthy presiding.

**MAGISTRATE JUDGE MCCARTHY:**  Good morning again.

(Parties say good morning.)

**MAGISTRATE JUDGE MCCARTHY:**  Ms. Chalbeck.

**MS. CHALBECK:**  I'm ready to get to work, Judge.

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:**  Great.

All right.  Let me make a few preliminary comments and then we'll get right to it.

First of all, as you all know, I hope you saw my emails of Monday and yesterday that kind of lay the groundwork as far as I see today's proceeding.  And as I indicated, I intend only today to address what the defendants need in order to enable them to file their dispositive motions because that's what my Scheduling Order 366 dealt with.  I know that some dispositive motions have already been filed, for example, to dismiss certain counts of the indictment or for suppression, et cetera, but I'm not going to get to those today.

As I indicated yesterday -- and just by no means agreeing or disagreeing with the government's position on this -- I thought that the government's table of contents in its omnibus response, which is docket number 423, would be a useful way of going through the issues.

I had to remind myself as I went through all the papers again and again that I asked for this job.  So I'm not, I'm not complaining but it is a huge volume of issues.  I'll do my best to get through them as quickly as I can.

I intend to rule on as much as I can from the bench because I think writing on this, you would be waiting forever.  If there are particular issues that during oral

4

U.S. v. Gogolack, et al. - 23-CR-99

argument, it appears that I need to think about more or write on, we can address that as the issue arises.

I think everybody here wants to get this case to trial or to resolution as quickly as possible. But the defendants have the right to adequately prepare their defense. So, I know we have -- well, we have now of the original defendants, we have one, two, three, four, five, six are left. If anybody feels that they are being slowed down by remaining in this case, they're free to seek a severance but that motion should be brought to Judge Vilardo.

So let me, before we get going on the issues, let me just tell you what I do not intend to address today because I think it's more in line with a dispositive motion. And that's, again, not to say that I won't consider the issues, it's just a question of when I will consider them or when Judge Vilardo will consider them.

So we will talk about -- this is again referring to the government's table of contents -- we will discuss Bills of Particulars.

I will not discuss item B, the motions to strike surplusage. That can be addressed at a later date.

We will discuss item C.

We will not discuss item D, motion for a change of vicinage. That's the first time I heard that word but it can be taken up at a later date.

U.S. v. Gogolack, et al. - 23-CR-99

We will discuss item E.

I will not discuss item F:  Motions for severance either of counts or individuals.  That can be taken up later.

I will not discuss item G:  Mr. Roncone's motion to suppress.  That can be done later.

Likewise with item H, Mr. Hinkle's motion to dismiss the indictment.

And item I, the motion for conspiracy hearing.  We can address that later.

I will discuss J, K, L, M.

I will not discuss item N.

I think some of these issues have been resolved but I think for now that's -- oh, I will not discuss item V, the audibility hearing.

So with that, I guess let's start with Bills of Particulars.

As I indicated in my emails, it would be very helpful to me if everyone can be as succinct as possible in terms of what they want and why they want it.  And to the extent possible, if you can consolidate your arguments.  As I said, I will hear from everybody but if the argument is going to be repetitious, then let's move on.

Again, I have as much time today as you are all available and if we need to go to another day, we'll do that.

So, Ms. Chalbeck, we may be a while.  You may want to

6

U.S. v. Gogolack, et al. - 23-CR-99

sit down but it's up to you because I'm going to hear from defendants first.  And, Counsel, you can argue from counsel table or you can come to the podium, whatever you prefer.

Let me just say with respect to the Bills of Particulars, I agree with the government to the extent that -- and I think everybody agrees, that a Bill of Particulars is not entitled to -- not to be utilized for discovery.  The government argues that a lot of discovery has already been produced.  But also I think it's pretty well settled, the Supreme Court said in *Russell v. United States*, 369 U.S. 749 at Pages 769 through 770 (1962), that -- and I quote -- "it is a settled rule that a Bill of Particulars cannot save an invalid indictment".

I'm not saying the indictment is valid or invalid.  That's not an issue for decision today.  It will be an issue for me to make a recommendation to Judge Vilardo and ultimately for him to decide.

But I think to the extent Bills of Particulars are requested, it would tell you what the government believes.  It wouldn't necessarily tell you what the Grand Jury believed at the time they returned the second superseding indictment.

But having said all that preliminarily, let's get to it and, Counsel, tell me what you need and why you need it.

Whoever wants to go first.

**MR. BAGLEY:**  Judge, I can begin, at least with respect

U.S. v. Gogolack, et al. - 23-CR-99

to Mr. Goglack.  Let me start, I think, Judge, I want to focus this morning on the Bill of Particulars with respect to -- so as the Court is aware, there are several counts in the indictment.

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MR. BAGLEY:**  Mr. Gogolack is charged in multiple kidnapping counts.  I think the Court can look at the length of the indictment with respect to the other counts and then compare that to the indictment with respect to the kidnapping counts and see why it is that Mr. Goglack believes that a Bill of Particulars is necessary.  There is no factual detail supporting the allegations with respect to the kidnapping.

The government's going to point us to discovery to supply that factual detail but there -- as we point out in the papers, there's very little discovery with respect to the kidnapping allegation as well.  It appears to be, from what we can gather, the allegations of an individual or two individuals but there is very little detail provided that would allow Mr. Gogolack to defend against this charge.  And for that reason, a Bill of Particulars, in particular, is appropriate for the kidnapping allegations.

I know that we have moved for a Bill of Particulars with respect to the other allegations as well, the other counts and we briefed that.  I don't necessarily need to take up the Court's time with respect to those issues.  I think others

U.S. v. Gogolack, et al. - 23-CR-99

may address that but I did want to highlight this morning the importance, in our estimation, of a Bill of Particulars with respect to the kidnapping charge for those reasons.

**MAGISTRATE JUDGE MCCARTHY:** Point me to that count again, if you would.

**MS. CHALBECK:** Those are Counts 11 and 12, your Honor.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Mr. Bagley, though, if -- is your position that the counts are valid but you need more information or that they're invalid because they don't give enough information?

**MR. BAGLEY:** Well, Judge, I think we're not in a position to be able to answer that question. I mean, it may be that we're eventually arguing that they're invalid but obviously we're arguing non-dispositive motions at this point. I don't, I don't necessarily think, Judge, that we have to claim that they're invalid in order to entitle us to a Bill of Particulars, right. The Federal Rules of Criminal Procedure allow for a Bill of Particulars.

For whatever reason in this court, Judge -- and maybe it's correct, maybe it's not -- but they're typically not granted. I've sat in this chair and moved for Bill of Particulars I don't know how many times and there is infrequency of those being granted. But, Judge, in this particular case I think we ought to take a hard look at that practice and especially in a case as complicated, as serious

U.S. v. Gogolack, et al. - 23-CR-99

as this one and look at the rule, look at the -- compare that with the indictment and I think that warrants in this case a Bill of Particulars being provided.

**MAGISTRATE JUDGE MCCARTHY:**  Okay, but again tell me, then, specifically what you want because I'm dealing here with --

**MR. BAGLEY:**  Sure.

**MAGISTRATE JUDGE MCCARTHY:**  -- 600, give or take, pages of submissions.  And I, you know, maybe another judge could master everything.  I can't.  I've done my best but that's why I'm relying heavily today on oral argument.

You tell me what you need with respect to the kidnapping counts.

**MR. BAGLEY:**  So what we would need, Judge, is -- you know, again, it's a little bit difficult for us being in the defensive position obviously not knowing what evidence or what government -- or what the government intends to use to prove the counts.  However, you know, based on experience, Judge, I think we can make some estimations in that regard. That would be who it is that was kidnapped, when the kidnapping occurred, how the kidnapping occurred, who was involved in the kidnapping and to what extent, Judge, things that develop the factual basis as to the allegation.

**MAGISTRATE JUDGE MCCARTHY:**  Well, Count 11 and Count 12 both indicate that the kidnapping occurred between on or

U.S. v. Gogolack, et al. - 23-CR-99

about March 14th and March 15th, 2023.

**MR. BAGLEY:** I understand that, Judge. You know, is that -- did it occur on both of those days? Is it over the course of 48 hours? Is it over the course of 12 hours? It's a general phrase. And that's just one piece of it, right, it doesn't explain to us who it is that was allegedly kidnapped and how that occurred. The statute, I think -- the kidnapping statute that's charged provides different manners and means by which one can accomplish that crime. And so we're asking that the government specifically identify the manner and means in which the crime was accomplished.

**MAGISTRATE JUDGE MCCARTHY:** All right. Ms. Chalbeck.

**MS. CHALBECK:** Yes, judge. I would first respond by saying that in his initial brief, Mr. Gogolack said that the charges were too general to advise him of the nature of the count, which does sound to be like a defect with the indictment argument as opposed to a Bill of Particulars argument.

With respect to what Mr. Bagley just said now, I would note that -- and we laid this out in our response papers -- that the discovery does provide most of the answers to his questions. And to the extent that it does not, the detention hearing fills in those gaps.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. CHALBECK:** And --

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:**  Okay.  I don't mean to cut you off but I'm going to be cutting everybody off here and there as I have questions.

So if the discovery has provided that information, can you say today, for example, who is Victim 1?

**MS. CHALBECK:**  Mr. Bagley knows who Victim 1 is.

**MAGISTRATE JUDGE MCCARTHY:**  But --

**MS. CHALBECK:**  I --

**MAGISTRATE JUDGE MCCARTHY:**  Okay but --

**MS. CHALBECK:**  And the Bill of Particulars, your Honor, is not meant to be a device to unmask witnesses.  And I would direct the Court to the District Court's decision in *Helbrans* and *Kee* and in those two cases, the courts explain that where the government has made itself available to answer a defendant's discovery questions -- which we have -- and where it has proffered details in detention hearings -- which we've also had, I quote that extensively in our brief, then the Bill of Particulars argument is essentially moot.  Defendant has enough notice as to the when, the where.  The discovery, for instance, includes a text message that Mr. Gogolack sent to a codefendant after the kidnapping occurs explaining in sum and substance -- this is just from my memory, your Honor -- that those people won't be coming around here again.  Mr. Goglack certainly knows who the victims are.  Mr. Bagley knows who the victims are.

U.S. v. Gogolack, et al. - 23-CR-99

And then, finally, your Honor, I would note that the case law says that where certain questions can be answered by forthcoming productions of 3500 material, that also moots the need for a Bill of Particulars. Otherwise, you would have -- think of all the cases where we have protected witnesses, your Honor. We just went through this in *Bongiovanni* and *Gerace* in the trials in 19-CR-227 and 23-CR-37. If you have a Bill of Particulars for every case where there's a protected witness, then it essentially, like, moots the ability to have a protected witness in the first instance. You would have no need to mask a witness's identity in *Jencks* material, et cetera if the government was in a position where it had to identify as witnesses at the outset.

Now the reason why it makes sense not to do that process here in particular is because as the defendants have made well known, they're going to file motions to dismiss the indictment. They're essentially asking for premature *Jencks*, premature 3500 material before we even get to a position where we know that this case is going to go to trial.

**MAGISTRATE JUDGE MCCARTHY:** All right. Well, the Counts 11 and 12 related to Mr. Goglack and Cortnie Barber who is now no longer a party to the case. Her matter has been resolved. So the only person who is subject to the kidnapping counts is Mr. Goglack. Ms. Chalbeck says, Mr. Bagley, that you know based on the discovery that's been

U.S. v. Gogolack, et al. - 23-CR-99

provided, who Victim 1 and Victim 2 is and you're telling me, no, you don't.

MR. BAGLEY:  Well, Judge, we have to make -- this also ties into the broader Rule 12 and Rule 16 issues, I think, Judge, in a case like this.  You know, we are struggling on a daily basis to get through the discovery that's been provided and to make heads or tails of what's been provided and to separate the wheat from the chaff, to use Mr. Foti's expression if I'm not mixing it up.

And so, Judge, to answer your question, I mean, we can make deductions about who it is that is alleged to be the victim here but, again, those deductions are the process of going through discovery, of trying to figure it out when the government could easily just tell us.  And the Court asked the question directly to Ms. Chalbeck now and the government doesn't want to just tell us for some reason, Judge, and that frustrates the purpose in defending Mr. Goglack.

The government has also said that Mr. Goglack knows who the victims are.  Well, Judge, Mr. Goglack is presumed innocent of the crime and it's going to be our position that there was no kidnapping that ever occurred.  So it's disingenuous, I think, to say that we don't get discovery because of Mr. Goglack, you know, happens to -- the government's claiming that Mr. Goglack knows what occurred here.  He's presumed innocent of the crime, Judge.  So,

14

U.S. v. Gogolack, et al. - 23-CR-99

that's not a basis to deny the Bill of Particulars.

**MR. COOPER:** Judge, Mr. Bagley just said it's unfair that we don't get discovery. We're not talking about discovery. This is a discussion about a Bill of Particulars. When Ms. Chalbeck said that Mr. Goglack knows, the reason is there's jail calls that counsel has that Mr. Goglack made where he discusses the kidnapping counts that are charged against him with another person and talks about how he knows the inc -- knows what incident it's about, he knows the people that are involved. I'm sure Mr. Bagley has had discussions with his client. And so when they come to the Court and say we have no idea who this is or what it's about --

**MAGISTRATE JUDGE MCCARTHY:** No, no.

**MS. CHALBECK:** I --

**MAGISTRATE JUDGE MCCARTHY:** Just a second. He's not saying we have no idea. He's saying we can make deductions but we don't know for certain who you're talking about. I think that's what I heard him say.

**MR. COOPER:** So the indictment is required to provide notice. The indictment has provided sufficient notice by giving the date and time and it tracks the statutory language. That's all that's required. The discovery produces -- the discovery that has been produced adds more clarity, and ultimately before trial there will be a vast

U.S. v. Gogolack, et al. - 23-CR-99

amount of *Jencks* Act material that will provide more clarity. That's the track that every case that comes through this courthouse follows and there's nothing unique about this situation.

There's nothing overly complex about a kidnapping count that requires a Bill of Particulars.  It's a kidnapping that occurred in a discrete period of time involving discrete individuals.  Counsel has discovery.  Government gave extensive factual proffers to this Court with Mr. Bagley present, with the defendant present.  And so there's no mystery is what I'm trying to say about what the government alleges happened here that a Bill of Particulars would cure.

What Ms. Chalbeck said -- and what I think is accurate -- is that what counsel's trying to do is cage the government's proof by forcing us to give a Bill of Particulars because that's a strategic advantage for them and force us to produce early *Jencks* Act material which we're not required to produce at this stage of the case.

**MAGISTRATE JUDGE MCCARTHY:**  When do you -- I know *Jencks* Act material is a subject down the road on the table of contents but when would you -- when would the government intend on producing that material?

**MR. COOPER:**  So, Judge --

**MS. CHALBECK:**  Typically that's --

**MR. COOPER:**  -- in larger cases we've generally

U.S. v. Gogolack, et al. - 23-CR-99

discussed that with counsel and with the District Court.  I can look back to examples.  For example, in *Bongiovanni* and *Gerace*, there was a schedule set up with the District Court back when it was in front of Judge Sinatra and then Judge Vilardo kept that schedule as the trial got adjourned a couple of times.  There was a schedule set in place when *Jencks* would be produced, and the majority of it was produced, you know, months out in advance.  And then certain protected witnesses were produced closer to trial and then unredacted versions even closer to trial.  And so that's a common practice of the trial court to set a schedule for that as we approach trial.

But we're not even at the dispositive motion stage yet and so I can't give your Honor -- I don't think it would be the time for me to give your Honor a deadline of when we would produce *Jencks*.  We don't even have a trial date.

**MS. CHALBECK:**  And I think what Mr. Cooper is saying, your Honor, is that that's typically a discussion that the parties have with the District Court and it's my understanding that in the vast majority of the cases, the District Court, in concert with the parties, is the one to set the deadlines for *Jencks* disclosures, especially where, as here, we are going to have a number of protected witnesses.

And that goes back to my earlier point, your Honor, that

U.S. v. Gogolack, et al. - 23-CR-99

to prematurely disclose *Jencks*, which I think is what this Bill of Particulars essentially is trying to do, puts those witnesses in particular danger where we don't even know if the case is going to go to trial because dispositive motions haven't been filed and that will determine to what extent, if at all, the case proceeds. And so it's really a classic case of putting the cart before the horse here. And that's, I think, going back to first principles why the Bill of Particulars should fail.

In addition to that, I think the case law which we've mapped out in our response papers really clearly states that a Bill of Particulars is not meant to be a device to understand the who, what, whens and wheres of a charge. And that's essentially what Mr. Bagley is asking, he's asking for something that the case law says, hey, this is not what a Bill of Particulars is intended for.

**MAGISTRATE JUDGE MCCARTHY:** No, I understand that in general terms. I guess what I'm wrestling with right now these are, these are discrete charges against now a single individual and you say -- unless I'm mischaracterizing what you say -- what I hear you to say is that Mr. Goglack knows who we're talking about and Mr. Bagley knows who we're talking about. So I don't see the harm in just -- if you need it disclosed subject to a protective order so it's not publicly disclosed, it seems to me that you should be

U.S. v. Gogolack, et al. - 23-CR-99

required to identify who you believe Victim 1 in Count 11 and Victim 2 in Count 12 is.  I don't see the problem with that.

**MS. CHALBECK:**  I think the problem with that, your Honor, is that, again, it's contrary to what the law dictates here.  And, again, I would, I would direct the Court back to *Helbrans* and to *Kee*.  Those are two SDNY decisions.  They're very thoroughly analyzed.  I think the District Court judges did a excellent job at discussing why the motions for Bills of Particulars in those cases fail.  And they fail because of two reasons:  One, because as here, the discovery already identifies who those people are.  Mr. Goglack --

**MAGISTRATE JUDGE MCCARTHY:**  But see --

**MS. CHALBECK:**  -- says on --

**MAGISTRATE JUDGE MCCARTHY:**  See, see -- okay.

**MS. CHALBECK:**  -- on a phone call.

**MAGISTRATE JUDGE MCCARTHY:**  Now, Ms. Chalbeck, that's where I get confused -- not confused but that's what strikes me as curious.  When you say the discovery already identifies who these people are, then why can't you just say it?

**MS. CHALBECK:**  Because it's their burden, Judge, and we shouldn't be in a situation where the government ultimately bears the burden when it's their burden.  That's burden shifting.  We ought not to do that.  They should be in the position to say, Judge, specifically none of the discovery does identify these people, we're at a total loss.  Mr.

U.S. v. Gogolack, et al. - 23-CR-99

Bagley, you asked him that question and Mr. Bagley did not give you a direct answer.  Instead he said, well, Judge, we've made some deductions.  I'm not sure if Mr. Bagley can represent to the Court that he's even reviewed all the pertinent discovery.  If he can't, then that, that should indicate to your Honor that the Bill of Particulars request is premature.

**MAGISTRATE JUDGE MCCARTHY:**  All right.  Mr. Bagley, back to you.

**MR. BAGLEY:**  Judge, I'm not sure what burden Ms. Chalbeck is talking about.  We had, you know, obviously the government bears the burden to prove its case and the Bill of Particulars is meant to provide, as the name suggests, particulars to us, Judge.  And, again, it ties into the Rule 12 and Rule 16 motions which we're going to get to later on this morning.  It's not sufficient for the government to simply dump hundreds of -- I mean, Mr. Cooper identifies jail calls as part of the discovery that ought to inform us as to the particulars of the kidnapping Counts in 11 and 12.

Well, Judge, as we note in our papers, there's thousands of hours of jail calls.  It's physically -- Ms. Chalbeck calls me out for potentially not reviewing all the discovery. There's thousands and thousands and thousands of hours of jail calls to listen to.  It would be physically impossible for me -- if I dedicated nothing else, if I neglected all my

U.S. v. Gogolack, et al. - 23-CR-99

other clients and sat down and listened to jail calls, I don't know that I would have gotten through them. So she's correct. I haven't listened to all the jail calls. It would be impossible to.

That's why, Judge, we're asking for Rule 12 notice in conjunction with a Bill of Particulars because it's the only way -- the government's in possession of this information, we're not. And all we're asking for them to do is say here's some basic facts that are going to allow the defense to do its job. And they've resisted that. And the Court should order it.

**MS. CHALBECK:** Judge, I just conferred with my colleague.

If all they want in their Bill of Particulars as to Counts 11 and 12 is the identity of the victims, then the government will consent under an attorneys' eyes only protective order to tell them the names of the victims. But we would object to anything further than that.

Listening to the oral argument, which is different than what was represented in the papers as to Counts 11 and 12, it sounds like what they need -- the only thing that they need is the identity of the victims. If that's the case -- and that's all I've heard from Mr. Bagley here because as your Honor addressed, the indictment itself provides the date -- then the government can consent to that.

U.S. v. Gogolack, et al. - 23-CR-99

**MR. BAGLEY:** Judge, that's what, that's what the Court is focused on so that's what I've focused on.  It's not the extent of the request.  The extent is broader than that. It's part of the request.

It's also, as I've said this morning the manner and means in which this kidnapping was allegedly take -- occurred, Judge.  So if you look at the statute -- and I don't have it in front of me I apologize -- but there's different ways in which this crime can be accomplished and so what we're asking for them in addition to the identity of the alleged victims is also the allegation with respect to how this crime was accomplished.

**MS. CHALBECK:** Judge, in response to that, I would direct counsel's attention to Pages 33 and 34 of the government's response brief and in particular to the transcript of the detention hearing held on September 14th, 2023, specifically at Pages 34 through 36.  In that portion of the detention hearing, Mr. Cooper before your Honor laid out the kidnapping including the manner and means in which it occurred.  So, again, going back to *Helbrans*, looking at what the case law says where detention proffers or discovery has already answered the questions that the defendant is asking to be addressed through the Bill of Particulars, that motion ought to be denied.

**MR. BAGLEY:** Judge, the final thing I'll say to that,

U.S. v. Gogolack, et al. - 23-CR-99

judge, is there has been several detention hearings. There have been several allegations lodged at detention hearings. Detention hearings are obviously what this court does on an almost daily basis. What is said at a detention hearing is not necessarily the proof that comes out at a trial. And if the government is saying today that exactly what was said at a detention hearing is the way that they intend to prove the crime at trial, then I suppose it does answer some of our questions. If they want to make, if they want to make that concession today, Judge. But --

**MAGISTRATE JUDGE MCCARTHY:** Well, they just did.

**MR. BAGLEY:** -- we haven't been able to -- I'm sorry, Judge, go ahead.

**MAGISTRATE JUDGE MCCARTHY:** I said they just did.

**MR. BAGLEY:** Fair.

**MS. CHALBECK:** Judge, I don't think that we, we said that's exactly how it occurs. I don't want to --

**MAGISTRATE JUDGE MCCARTHY:** Well --

**MS. CHALBECK:** -- to --

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. CHALBECK:** -- impose a Bill of Particulars on a detention proffer.

**MAGISTRATE JUDGE MCCARTHY:** I understand. You're not required to lay out your full case, I understand that by way of a Bill of Particulars. But I think the defendants in

U.S. v. Gogolack, et al. - 23-CR-99

general, and specifically here Mr. Goglack, is entitled to some measure of detail as to how you contend this kidnapping occurred.  You pointed them and me now to particular statements in your brief and in the detention hearing.  I think for now we'll leave it at that.  I'm kind of bleeding into the issue of Rule 12 which we'll get to down the road but I think that the defendants cannot generally say under rule 12 give me everything that you're going to rely on at trial.  That's way too general.  I think they have to be more specific in terms of what type of discovery they're looking for.

So, I think with respect to this issue, we're going to leave it that the government will advise you, Mr. Bagley, attorneys' eyes only of the identity of who they claim the witnesses.  Again, whether that's who the -- or the victims, excuse me.  Whether that's who the Grand Jury thought they were is a different question.  And coupled with what Ms. Chalbeck has just referenced, that will be sufficient.

And, again, folks, I'm not saying that my resolution of everything is going to be perfect but we need to move through this in a reasonably quick way and if I have to write on everything, you're not going to get a decision from me much less Judge Vilardo for a long time and I don't think that serves anybody's interests.  So I'm doing the best I can but that's going to be my resolution with respect to Mr. Goglack.

U.S. v. Gogolack, et al. - 23-CR-99

Who wants to be heard next?

**MR. MUSCATO:**  Judge, good morning.

**MAGISTRATE JUDGE MCCARTHY:**  Morning.

**MR. MUSCATO:**  On behalf of Mr. Ermin and a little bit more fundamentally, he is indicted under Counts 1 through 3 and Count 24.  Count 24 aside, 1 through 3 obviously alleges a conspiracy.

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MR. MUSCATO:**  I think the problem here is, if I understand the indictment which I'm not quite sure that that is true but I think the problem here is that the government alleges that this conspiracy that ultimately resulted in Miss Quinn's death was hatched by a jail visit between Mr. Ermin and Mr. Gerace in 2023.

The problem is that during the detention hearing that I had, they alleged that the conspiracy apparently occurred on April 4th, 2023.  Subsequently to the hearing, detention hearing, a letter was filed with Judge Wolford that kind of implied that that timeline was pushed back from the April 4th visit to the July 6th visit.  There's two visits by Mr. Ermin to the jail to see his boss at the time, Mr. Gerace.  So we have no way of really knowing when this conspiracy actually began.

And so we've asked for this Bill of Particulars because from what I see, this is truly a circumstantial case.

U.S. v. Gogolack, et al. - 23-CR-99

There's no direct evidence of any conversations between Mr. Ermin and Mr. Gerace. I've listened to the phone calls that were provided by the government that run through April 21st of '23. And Mr. Cooper and I have had several conversations about this. There are no phone calls that the government has that have been provided to us after April 21st going forward between my client and Mr. Gerace. So we have nothing to base what this conversation may have been during July 6th. We have no idea who or how this so-called alleged conspiracy was hatched, whether it was really on the first visit, the second visit. And I think that a Bill of Particulars specifically telling us this is when the conspiracy began, here's what we believe was involved in that would be helpful to us and also obtaining these additional phone calls so we could at least see what was being discussed between my client and Mr. Gerace.

So, you know, this is the mystery that Mr. Cooper had raised and there's certainly several cases that we cited in our brief that support the fact that a Bill of Particulars when it's circumstantial, which this truly is, we've referenced that it may be sort of like the *Klein* conspiracy type of environment that we have. And so this is a perfect time for the government to provide us with a Bill of Particulars that provides us with some information as to what are you talking about, how did this conspiracy arise, how did

U.S. v. Gogolack, et al. - 23-CR-99

it develop, what was -- who was involved and what was said.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. CHALBECK:**  Judge --

**MAGISTRATE JUDGE MCCARTHY:**  Ms. Chalbeck.

**MS. CHALBECK:**  So I would direct counsel and the Court's attention to the second superseding indictment beginning on Page 8 which is where Count 1 begins.  I say that because --

**MAGISTRATE JUDGE MCCARTHY:**  I'm sorry.  You --

**MS. CHALBECK:**  Page 8.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. CHALBECK:**  Where Count 1, the allegations as to Count 1 --

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MS. CHALBECK:**  -- begin.  And the reason why is because based on Mr. Muscato's representation, it sounds like he's really seeking a Bill of Particulars as to Count 1.  So Mr. Muscato's asked when did this conspiracy begin?  Well, on Page 8, Count 1, Paragraph 2, the allegation is that from in or about February 2023 and continuing thereafter until the return date of this second superseding indictment -- which I think was January 5th, 2024 -- the defendants, this goes to the who, who are the participants of the conspiracy?  That would be Mr. Gerace, Mr. Ermin, Mr. Roncone, Mr. Knight, Mr. Hinkle and Mr. Goglack participated in this conspiracy. And then over the course of I think approximately the next 30

U.S. v. Gogolack, et al. - 23-CR-99

pages, Count 1 lays out how the conspiracy developed.

It kind of defies logic, Judge, or just is almost incredible to think that a count that is so detailed in its allegations would require a Bill of Particulars.  Count 1 lays out the conspiracy in greater detail and more exacting detail than most counts that come through this courthouse.

And I understand Mr. Muscato's concern with respect to the dates but that evidence has already been disclosed to Mr. Muscato.  And I don't think that a Bill of Particulars here is really going to cure the concern that he's addressing which is, you know, what was said in this conversation.  I think the government may argue at trial that you could infer, a jury can infer based off all of the subsequent actions that the actors in the conspiracy took, including his own client, which is also laid out in Count 1, specifically phone calls that were shared.  And so I don't think that a Bill of Particulars is really meeting the need that Mr. Muscato is claiming to have.

And otherwise, Count 1 addresses all of the questions that he just raised before your Honor:  The who in Count 1, the where.  Well we know it's in the Western District of New York.  The discovery makes clear that it's in Buffalo, it's in Wellsville, some places in between.  And then the timeframe:  February 2023 through the return date of the indictment, January 2024.

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:**  Mr. Muscato.

**MR. MUSCATO:**  So the word "infer" kind of equals speculation and speculative.  And that's really what they want us to accept is this speculation that somehow during this period of time this conspiracy was developed.  And I suppose that would lead into some of the arguments dealing with the Rule 6 issues and things of that nature because when she's, when --

**MAGISTRATE JUDGE MCCARTHY:**  You mean --

**MR. MUSCATO:**  Ms. Chalbeck.

**MAGISTRATE JUDGE MCCARTHY:**  -- Rule 16 you mean?

**MR. MUSCATO:**  Yes, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. MUSCATO:**  I'm referring -- sorry.

**MAGISTRATE JUDGE MCCARTHY:**  That's okay.

**MS. CHALBECK:**  Not the Grand Jury.  Rule 6 issue.

**MR. MUSCATO:**  Yeah.

**MS. CHALBECK:**  Okay.

**MR. MUSCATO:**  The Grand Jury.

**MAGISTRATE JUDGE MCCARTHY:**  Oh, oh.

**MS. CHALBECK:**  No.

**MR. MUSCATO:**  Referring to the Grand Jury.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. MUSCATO:**  Sorry.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. MUSCATO:**  I did say Rule 6, didn't I?

**MAGISTRATE JUDGE MCCARTHY:**  You did say, yeah.

**MS. CHALBECK:**  You did.

**MR. MUSCATO:**  Grand Jury.  Because there's an issue with respect to when the defendants even knew that the decedent was cooperating with the government.  So by saying February 23rd, '23, they want us to believe that somehow that's when they started this machination of conspiracy to obstruct justice, et cetera, et cetera.

But the fact of the matter is, is that that's exactly what that letter of document 34 has, had addressed because during my detention hearing, they're talking about this learning of her cooperation in April and then they say, well, you know what, really, Judge Wolford, it wasn't in April that they learned about the cooperation, it was maybe later in May, and who shows up at the jail in July 6th is Mr. Ermin to talk to Mr. Gerace.

So the fact of the matter is, is telling us that it occurred between July -- or February 23rd, '23 and whatever other date they want to use helps us not at all.  And there is nothing more than pure speculation in this indictment.  They would like us to believe because they put a hundred and some counts, overt acts in there that somehow they've told us this is how this happened.  Actually it tells us nothing.  And we still don't know when this conspiracy began.  And I

think a Bill of Particulars would specifically address that.

**MS. CHALBECK:** Judge --

**MAGISTRATE JUDGE MCCARTHY:** Well --

**MS. CHALBECK:** -- the reason why the Bill of Particulars would not address that is because the indictment already does. The indictment already states when the conspiracy began and where it ended.

With respect to Mr. Muscato's arguments regarding speculation, he's more than welcome to argue that in front of a jury. Or he's more than welcome to argue it in a motion in limine before the District Court judge on like a Rule 29.

**MAGISTRATE JUDGE MCCARTHY:** All right.

**MS. CHALBECK:** But, but, but -- it doesn't make any sense, Judge -- and I'm trying to go back to first principles here. It doesn't make any sense to use what is essentially a motion in limine argument or a argument that's supposed to be properly before the jury or a District Court judge on a post-conviction motion to draft that argument on to a Bill of Particulars and use it as a basis to grant a Bill of Particulars. That's not what the case law says with respect to a Bill of Particulars. And your Honor has even issued decisions where -- denying motions for Bill of Particulars where, as here, counts address in detail the nature and scope of the conspiracy, the manner and means. It's difficult to get more detailed than Count 1 does in terms of how the

U.S. v. Gogolack, et al. - 23-CR-99

government believes the conspiracy developed.  It's about 30 pages long.

**MAGISTRATE JUDGE MCCARTHY:**  Yeah, I think with respect to this count, it is sufficiently detailed to make a Bill of Particulars unnecessary, bearing in mind the general principles that a Bill of Particulars is not used as a discovery device.  We can talk about discovery down the road but as for this, that would be my ruling.

Who else wants to be heard?

**MR. MUSCATO:**  Thank you, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Thank you.

And, again, I remind everybody my focus today is what do you need to make your dispositive motions.  Defendant may argue anything and everything in regard to a dispositive motion.  They may argue that the indictment, the second superseding indictment as it stands is insufficient.  I'm not prejudging any of that right now.  I'm just saying as to what Mr. Muscato has requested, I don't think you get that by way of a Bill of Particulars.

**MR. HENRY:**  Good morning, Judge, Daniel Henry on behalf of Mr. Hinkle.

**MAGISTRATE JUDGE MCCARTHY:**  Good morning, Mr. Henry.

**MR. HENRY:**  Judge, similar to what Mr. Muscato and Mr. Bagley mentioned in regard to a Bill of Particulars, we're asking to particularize what did Mr. Hinkle do?  And

U.S. v. Gogolack, et al. - 23-CR-99

the government, if you take a look at on your docket 423 at Page 18, they sort of outline what they claim provides us with sufficient information to prepare for trial and to defend our client.

But in breaking down those things and in looking at that material and going through discovery and that, none of it tells us what Mr. Hinkle did other than conclusory remarks by the government in attempt to have their theory and their view of the evidence fit into that theory without saying specifically what he did.  For example, one of the things they mention:  Well, they provided us with Mr. Goglack's interview.

Well, I've reviewed the interview and none of it tells us what Mr. Hinkle did that is illegal and, in fact, it's exculpatory.  Basically he tells the government and the agents that he interviewed with, Mr. Hinkle had nothing to do with this, didn't have any knowledge of this what they're alleging, didn't have any association, he's not a biker type person.  So that doesn't help us in telling us what Mr. Hinkle did.

**MAGISTRATE JUDGE MCCARTHY:**  Well, it helps you if it's a --

**MR. HENRY:**  Well, no.

**MAGISTRATE JUDGE MCCARTHY:**  -- if it's exculpatory.

**MR. HENRY:**  Yeah, it helps from the exculpatory portion,

absolutely. And we raise that in our various motions that we brought concerning detention. But it doesn't help us in telling us what he did and what the government's alleging in these counts. The counts that I'm looking at -- he's named in a number of them -- but really what I'm focusing on would be Counts 1, the obstruction of justice conspiracy, Count 2 witness tampering conspiracy; count 3, witness retaliation. And if you go to Count 22, that talks about possession of a firearm in furtherance of a drug conspiracy.

One of the other things they said is, well, you have Mr. Knight's interview. Well, I reviewed that. None of that tells us what he did. There's allegations or claims that Mr. Knight said that Mr. Hinkle wasn't at this poker game which is relevant in the case. Well, whether he's mistaken or inaccurate or forgotten, that doesn't tell us whether or not Mr. Hinkle did anything in regard to any of these alleged conspiracies that they claim.

They also indicate that after this interview with the government, Mr. Knight went to Mr. Hinkle and told him that he was interviewed by the government. Well that doesn't tell us what Mr. Hinkle did or how he's involved in any of this.

There's this text exchange and we reviewed those text exchange and a lot of them, a number of them were some communications between maybe two different codefendants in this case. But they're all innocuous, they're talking about

U.S. v. Gogolack, et al. - 23-CR-99

things that none of it tell us what he did, whether he got involved in this conspiracy, whether he had anything to do with the death of Crystal Quinn, whether he had anything to do to prevent her testimony or retaliate her testimony. None of it tells us -- two of the charges, Counts 2 and 3 require that there's some federal proceeding going on, that our client knew about that and was attempting to prevent Miss Quinn from testifying or retaliating against her for testifying against. None of the information they provide us tell us how Mr. Hinkle knew that there was some type of federal proceeding going on that would have made her a witness in this case.

**MAGISTRATE JUDGE MCCARTHY:** But if the information that has been provided to you in discovery is generally favorable to your client, isn't that something that you can raise at trial?

**MR. HENRY:** Correct, yeah. But how do I prepare for trial or defend my client when I don't know what he is supposed to have done in these allegations, this agreement that they're claiming in the conspiracy. When did this agreement take place? The fact that he may have had some phone calls with people and none of them talk about whether he's involved in a conspiracy to defraud the government or trying to prevent a witness from testifying or retaliating against a witness from testifying. None of it tells any of

U.S. v. Gogolack, et al. - 23-CR-99

that stuff.  There's video evidence that they provide us. There's no audio on it so you don't know what anybody's saying.  And it's a video of my client at a fire hall.  And the fire hall is supposed to be of relevance here because a poker game was there.  And it's supposed to be relevant because this victim, Miss Quinn, was brought to this game and five days rater she turns up dead.

But none of that shows us that our client did anything to tamper with her, to retaliate against her or a conspiracy to do any of that.  The mere association with people that maybe have committed some type of crime or were involved in a crime, that doesn't mean our client had anything to do with it.  A mere association in and of itself isn't of any criminal element.

So what we're asking the government to do is if they can particularize, for example, in Count 1, how is it alleged that Mr. Hinkle entered into an agreement to commit these crimes?  What he did to defraud the U.S.?  When he has to have allegedly joined this conspiracy?  When did he allege to agree -- when did it take place?

There's claims that when you look at some of the materials that they provide, for example, the detention hearing, the search warrant applications, some of them claim that he's a member of a motorcycle gang.  Some say throughout the contents of the affirmations that he maybe was associated

U.S. v. Gogolack, et al. - 23-CR-99

with them.  Well can they particularize?  Is he a member of a motorcycle gang?  Is he an associate?  And mere association again is not enough to show what he did to allege in any of these crimes.

We're also asking that if they can just identify specifically what it is or when did he first learn of any credible proceeding that would then trigger him to know that this witness was testifying or may have testified to allow for him to be involved in Counts 2 and 3.  Other than conclusory remarks, Judge, there's nothing that allows us to specifically look at and say what did he do in this case other than a claim:  Well, he conspired with Mr. Knight, with Mr. Goglack, with Mr. Gerace or Mr. Roncone but it doesn't say what he did or when this supposed agreement that he got involved in took place.  And that's what we're asking the government to at least particularize.

I know they don't have to show their theory of the case or expose what their -- all the evidence of the case but at least particularize so we can prepare for a trial, we can defend our client on what's being alleged.  And if some of the stuff that, as you mentioned, is exculpatory can be used against what they're claiming Mr. Hinkle did.

**MAGISTRATE JUDGE MCCARTHY:**  All right.

**MS. CHALBECK:**  Judge, I want to respond to that in a few parts and I want to start my response with the detention

brief that was shared with counsel for Mr. Hinkle that was submitted before Judge Vilardo. And in that detention brief, just by way of background, Judge, Judge Vilardo had specifically requested evidence that bears on Counts 2 and 3 of the indictment.

And so the judge, I think you could fairly infer, was particularly interested in the government's proof as to Mr. Hinkle with respect to those counts as he was weighing whether to keep Mr. Hinkle detained pretrial. And the government submitted a very lengthy brief. It was shared with counsel and it was on the basis of the government's lengthy detention brief which outlines the evidence, which essentially provides in a more detailed manner than the indictment even, the government's theory of the case as --

**MAGISTRATE JUDGE MCCARTHY:** Is that --

**MS. CHALBECK:** -- to Mr. Hinkle.

**MAGISTRATE JUDGE MCCARTHY:** Excuse me. Is that the 115 page -- there was a 115-page outline -- I think, Mr. Cooper, you had referred to it at one point -- that was provided to all defendants. I'm wondering --

**MS. CHALBECK:** That's.

**MAGISTRATE JUDGE MCCARTHY:** -- if --

**MS. CHALBECK:** That's correct, Judge. We think of it as a Joe Tripi special, that brief. But that's -- I think Mr. Tripi referred to it last time he was before your Honor.

U.S. v. Gogolack, et al. - 23-CR-99

And counsel provided a very thorough roadmap of the case referencing discovery or material that was produced in discovery. Mr. Henry knows about that brief. He's read it. He has the discovery that's referenced in it. And so I just want to start there, that this argument was unavailing in the detention hearing context and it should also be equally unavailing here in the Bill of Particular context.

Second, insofar as Mr. Henry argues: Well, the indictment doesn't allege any overt act that's, like, inherently criminal.

That's not true. I would direct the Court's attention to Pages 17 and 18 of the government's response brief which references Pages 13 and Paragraph 14 of the second superseding indictment. The allegation in Count 1 is that Mr. Hinkle made false statements to law enforcement. We provided the -- I believe it was a report of investigation regarding those statements. The specific false statement that was made. We even included the Bates stamp number in our response brief directing counsel's attention to that report of investigation, again which was produced in discovery.

But not that it matters, Judge, because overt acts are not required to be inherently criminal. The case law on that is very clear. We address it. And so to the extent that Mr. Henry is arguing, well, I need a Bill of Particulars

because, well, one, the indictment doesn't allege that he's done anything criminal, that's false for the reasons I just stated. There's an overt act that he made a false statement. That is criminal.

But, two, even if there were no criminal like overt acts, that's not necessary to form an overt act which the case law addresses.

Third, going back to *Helbrans* and *Kee* -- and I'm going to sound like a broken record on this point. Where material has been proffered in a detention hearing or in this case substantiated with an extensive detention brief or where it's already shared in discovery, there are so many instances that Mr. Henry said we don't have any of this information. I'm standing here thinking, well, I can think of a few things in discovery that address many of your questions.

And consistent with the case law, the government has made itself available to address those questions with Mr. Henry. We'll continue to do so.

But I think the discovery addresses all of the issues that he may have. For example, let's take this video and the -- Mr. Henry's argument that the video doesn't show you anything about how the conspiracy develops. And I'm referencing the video of the poker hall from, I think it was July 26th or July 27th, 2023 involving Mr. Goglack, Miss Quinn, I think Mr. Knight's there and Mr. Hinkle is

there.  We produced the video.  We also produced a phone call from Mr. Goglack.  This was a recorded jail call where Mr. Goglack can be heard -- and I'm summarizing here, I don't have a transcript in front of me or committed to memory.

But based off of my memory of the call, Mr. Goglack says in sum and substance, the government played this video and it, it, like, shows me talking about murdering someone. Well, Mr. Goglack didn't know at that point that the video didn't contain audio.  And so it's, I think, a fair inference based off of Mr. Goglack's statement that what he's talking about on video with Mr. Hinkle which the video shows is talking about murdering Miss Quinn.  That's in the discovery. He's got that.  That's evidence of Mr. Hinkle joining a conspiracy.  That's Mr. Hinkle participating in a conspiracy.

**MAGISTRATE JUDGE MCCARTHY:**  Does --

**MS. CHALBECK:**  He --

**MAGISTRATE JUDGE MCCARTHY:**  Excuse me.  You say the video didn't have audio.  Did it have audio or no?

**MS. CHALBECK:**  The video did not have audio but Mr. Goglack didn't know that at the time that he made the statement.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. CHALBECK:**  And so then let's go to -- I'm hearing things from the gallery, I'm going to ignore them, Judge.

But let's just go to another piece of evidence disclosed

U.S. v. Gogolack, et al. - 23-CR-99

in the discovery.  There were extensive text messages from Miss Quinn's phone that reference events, if we will, that occurred I think on the evening hours of July 27th into the morning, early morning hours of July 28th or maybe the evening hours of the 26th and the early morning hours of the 27th, I can't recall specifically.  But in those text messages it's clear, as other evidence corroborates, that there is some sort of confrontation between Mr. Goglack, Miss Quinn and bikers who are armed.  And in those text messages, Miss Quinn specifically refers to Mr. Hinkle setting them -- being her and Mr. Goglack -- up.  That's -- you didn't hear that from defense counsel, Judge, but that's been produced in discovery.  That's evidence of Mr. Hinkle joining a conspiracy, participating in a conspiracy.

And so I go back to these first principles.  You do not get a Bill of Particulars when a detention hearing brief has already covered the general contours of the conspiracy and address the issues that you've raised nor do you get it when you can review discovery that answers those questions.  And to the extent that we have any, like, outstanding questions that the discovery doesn't answer, again, look to *Kee*, look to *Helbrans*.  They stand for the proposition that where outstanding 3500 to be produced can address those questions, fill in those gaps, you still don't need a Bill of Particulars.

U.S. v. Gogolack, et al. - 23-CR-99

In this instance, the Bill of Particulars only serves as a mechanism to confine the government's proof, not to actually address the notice concerns in any meaningful way that the defendants purport to have.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Based on the general rule, again, that a Bill of Particulars is not a means of getting, obtaining discovery and based on what Ms. Chalbeck has represented as having been produced, I don't find that you're entitled to a Bill of Particulars, Mr. Henry.

We'll move on to other issues down the road but that's my ruling.

Thank you.

Next.

**MR. DELL:** Your Honor, with regard to Mr. Roncone, I don't want to unnecessarily continue the same arguments but I would just note that there are well over 20 paragraphs which merely state that Mr. Roncone had communications with somebody, with Mr. Knight, Mr. Hinkle or Mr. Ermin. But there's nothing about the substance. And I think I'm entitled to a Bill of Particulars about the substance and if there's no direct evidence, that I seem to get that impression from Ms. Chalbeck, at least what the government is going to ask a jury to infer. I hate to think that we live in a country where if a friend of ours is being investigated by the FBI, we completely disassociate ourselves from that

U.S. v. Gogolack, et al. - 23-CR-99

friend for fear that we're going to be charged with a conspiracy to obstruct. I mean, so that's what I'll say about that.

But also with regard to Count 25, Mr. Roncone is charged with possessing firearms as an unlawful user of controlled substances. He did legally possess those firearms but the government's allegation is that he was an unlawful user of controlled substances and I'm asking for all the dates, times, and locations that he was an unlawful user of controlled substances.

**MS. CHALBECK:** Judge, I'll hit the Count 1 argument first and then go to the count 25 argument.

**MAGISTRATE JUDGE MCCARTHY:** Yeah.

**MS. CHALBECK:** So, with respect to those phone calls, the indictment doesn't make any allegations as to the substance of those phone calls. The discovery does not include like wiretaps such that we would be able to, to address Mr. Dell's, I guess, question or answer what was said on these calls. The discovery does not include wiretaps of those phone calls. So I don't think that Bill of Particulars really will do anything in that regard.

There was another element, though, of Mr. Dell's argument which is that he wants to know, I think he said what the government is going to ask the jury to infer. Well, that sounds squarely like he wants to know the government's legal

U.S. v. Gogolack, et al. - 23-CR-99

theory, the government's theory of the case, what the government's going to ask the jury. Those were his words. And, again, the case law says a Bill of Particulars is not to be used as a vehicle for a preview of the government's, you know, opening statement or closing statements to a jury.

And so I think that the motion should be denied for those reasons as to Count 1.

Turning to Count 25, already produced in discovery are photographs, other material depicting the drugs found in Mr. Roncone's home in a safe as well as a trailer that he's possessed out of Wellsville. The discovery answers the question of, well, what's the basis of the charge. The government doesn't need to prove every date that Mr. Roncone, you know, smoked marijuana or snorted cocaine. The government doesn't necessarily even have that information, to the best of my knowledge. But, but even so, if we did, that's not what a Bill of Particulars is meant to provide him notice for.

Again, that's just a back door to what is the proof going to look at trial. What's the government's theory going to be before the jury? The evidence already disclosed in discovery is more than sufficient basis to inform Mr. Roncone of the basis of the charge and that's the drugs found in the home and on the Wellsville property.

To the extent that there's 3500 material that might fill

in those gaps that's going to be made clear during *Jencks* productions and so I, I don't think that a Bill of Particulars is really appropriate here.

**MR. DELL:** Your Honor, I would submit there's a difference between an allegation of indirect possession and being an unlawful user. There's a difference there. And I'm asking for the date, times and locations of allegations of being an unlawful user. I don't think possession equals use.

**MAGISTRATE JUDGE MCCARTHY:** Well, you --

**MS. CHALBECK:** I --

**MAGISTRATE JUDGE MCCARTHY:** Go ahead.

**MS. CHALBECK:** I'm sorry, Judge. Mr. Cooper advised me that he wanted to make a statement as to this Count 25 argument.

**MR. COOPER:** Just on the point that Mr. Dell just made, Judge, about possession not equaling use, I would argue to the Court first of all that a lot of what's been going on this morning are arguments that counsel can raise in front of a jury and seek an acquittal. It's not a basis for a Bill of Particulars. And so if the government wanted -- I'm not tying myself to this -- if the government wanted to say, hey, we seized drugs in a safe in your house and more drugs in a trailer that you controlled and you had guns there, I'm going to argue to a jury you used drugs because you had drugs and you possessed guns. That would be a legitimate basis to move

46

U.S. v. Gogolack, et al. - 23-CR-99

a case forward.  And if they think it's not, they can file a dispositive motion to dismiss on that basis.  But seeking a Bill of Particulars asking for every day he used drugs doesn't cure any notice about what they're being charged with.

And, secondly, as Mr. Chalbeck has said repeatedly, future disclosures of *Jencks* material at the proper time can, will shed additional light on what the contours of the case will be.  Before this case goes to trial, counsel will have a government's trial memorandum, they'll have a government's witness list, they'll have disclosures of *Jencks* Act material.  There's not going to be a trial by surprise.

But we don't even have a trial date yet.  And the argument that they're asking for a Bill of Particulars is saying, hey, I don't even have notice of the nature of this charge and that's not the case here.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.  Based on what's been said, my prior ruling is the same.  I don't think you get a Bill of Particulars on what you're looking for.  Discovery's a separate issue which we'll take up down the road.  Thank you.

Next.

**MS. BUTH:**  Morning, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Morning.

**MS. BUTH:**  Judge, when I got your email and it said

succinctly, I went back and I tried to rework our argument on behalf of Mr. Gerace on the Bill of Particulars.

So we're looking for two things.

One, we want a Bill of Particulars as to which overt acts support which counts.  So I'm going to focus on Counts 1 through 3.  Those are the only ones that Mr. Gerace is in.

The second thing we want a Bill of Particulars on is whether Attorney 1 for Mr. Gerace who's referenced in the indictment is alleged to be a coconspirator.  Those are the only two things we want a Bill of Particulars on, and it's within the four corners of the indictment so we don't have the same sort of evidentiary requests.

In terms of the first, why do we need a Bill of Particulars on which overt acts correspond to which of Counts 1, 2 and 3 is because right now as the indictment is structured, it's really confusing.

You have Count 1 which charges a *Klein* conspiracy, so attempting to defraud the government and also obstruction of justice.  You have Count 2 witness, tampering.  Count 3, retaliation basically.  Witness tampering and retaliation are in the same chapter as obstruction.  And you then have maybe 17 pages, so it's Paragraph 17 through 107, a laundry list of overt acts and then that's all in Count 1.  Then what the government does in the indictment is they say, okay, Count 2, we're incorporating Count 1 into Count 2 so it's the same

U.S. v. Gogolack, et al. - 23-CR-99

menu of overt acts that was laid out in Count 1 that they incorporate into Count 2. And then for Count 3, they say the same thing, we're incorporating Count 1 into Count 3. So that same list of overt acts.

But if you look at the overt acts, not all the overt acts seem to fit with witness tampering and retaliation and obstruction. And so what we're asking for is rather than this, you know -- and, again, we raised it in our papers in terms of multiplicity and we need to know --

**MAGISTRATE JUDGE MCCARTHY:** Yeah, but let me just interrupt.

**MS. BUTH:** Sure.

**MAGISTRATE JUDGE MCCARTHY:** Multiplicity and duplicity it seems to me is a basis for claiming that the indictment or the second superseding indictment is invalid.

**MS. BUTH:** Right.

**MAGISTRATE JUDGE MCCARTHY:** So why shouldn't that be raised down the road?

**MS. BUTH:** So, in order to raise it in an intellectually honest way and say --

**MAGISTRATE JUDGE MCCARTHY:** That's what I like.

**MS. BUTH:** -- and say in a dispositive motion these counts are multiplicitas or these counts are duplicitas which we may do. What we're trying to do in a Bill of Particulars is figure out, well, are they really multiplicitas and

duplicitas or will a Bill of Particulars from the government identify which specific acts correspond to which specific counts eliminate those arguments.  And so it's with an eye towards dispositives that we need a Bill of Particulars on the overt acts to figure out whether or not they are in fact truly multiplicitas or duplicitas.

**MAGISTRATE JUDGE MCCARTHY:**  Okay, just on that point --

**MS. CHALBECK:**  Judge --

**MAGISTRATE JUDGE MCCARTHY:**  -- Ms. Chalbeck.

**MS. CHALBECK:**  At the outset of this hearing, you brought up *Russell v. United States* which 369 U.S. 749 (1962), Supreme Court case and your Honor even noted that a Bill of Particulars cannot be used to save an invalid indictment.  It almost sounds like Mr. Gerace and his attorneys are trying to use a Bill of Particulars to save the indictment of a multiplicity and duplicity problem.

**MAGISTRATE JUDGE MCCARTHY:**  Well, let me --

**MS. CHALBECK:**  And --

**MAGISTRATE JUDGE MCCARTHY:**  So, so, let me just guess, though, that whenever we come argument of dispositive motions and if the defendants argue that the second superseding indictment is invalid because it's duplicitas or multiplicitas, you're going to be saying, no, it isn't, right?

**MS. CHALBECK:**  Judge, you don't have to guess because in

U.S. v. Gogolack, et al. - 23-CR-99

our response papers I think I --

**MAGISTRATE JUDGE MCCARTHY:** Right.

**MS. CHALBECK:** -- pretty thoroughly explained why it's neither duplicitas nor multiplicitas.

Going back to Ms. Meyers Buth's argument as to the multiplicity and duplicity issue, I would note at the outset, Judge, that there's considerable daylight between what Mr. Gerace argues in his reply brief and what he initially raises in his motion, his non-dispositive motions with respect to this issue.

And in reviewing carefully the reply brief, it dawned on me that this argument about multiplicity and duplicity is basically a way to graft on a finding bearing on a dispositive motion issue to the Bill of Particulars. And your Honor noted at the outset kind of what, what issues it would touch and which issues it would not touch.

**MAGISTRATE JUDGE MCCARTHY:** Today.

**MS. CHALBECK:** Or you would not touch --

**MAGISTRATE JUDGE MCCARTHY:** Today.

**MS. CHALBECK:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** What I said is what I'm dealing with today not that I'm not dealing with at all.

**MS. CHALBECK:** Yes, that's what I meant, your Honor.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. CHALBECK:** I did not mean to suggest --

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:**  Yeah, okay.

**MS. CHALBECK:**  -- otherwise.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. CHALBECK:**  I was just speaking --

**MAGISTRATE JUDGE MCCARTHY:**  Right, right.

**MS. CHALBECK:**  -- carelessly a little bit.  But your Honor mentioned, you know, there are some things that I'm not going to touch today.  These kind of sound more like dispositive motions.

In reviewing Mr. Gerace's reply brief I think that this multiplicity and duplicity issue really is a dispositive motions issue.  And we ought not to kind of mission creep our way into a dispositive motions argument by way of a Bill of Particulars.

Now, having said that, I would note that there's ample case law which I cite that says that a incorporation by reference of overt acts and factual allegations does not a duplicitas or a multiplicitas charge make.

And Mr. Gerace does not address any of that case law in his reply brief.  He kind of just creates a different issue with respect to the nature of the incorporation, if you will, of Count 1 into Counts 2 and 3 and.  On that score, your Honor, I would just note that the argument seems to be at odds with Rule 7(c) which specifically states that a count can, a count -- one count in an indictment can incorporate by

U.S. v. Gogolack, et al. - 23-CR-99

reference allegations of another count in an indictment.  If you go to Black's Law Dictionary and you look up the word "allegation", it refers to factual allegations.  And so, you know, insofar as we might get to the merits of, well, does the incorporation produce a multiplicity or duplicity issue, I think Rule 7(c) standard construction of language rules against that or counsels against that argument.

But my main point, your Honor, is I think that this whole argument should be tabled until we get to dispositive motions.  I don't think that this is a proper vehicle to raise the duplicity and multiplicity issue.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. BUTH:**  That's not what I'm trying to do, Judge.  We cited -- everybody in the courthouse knows the case against Dr. Eugene Gosy.  A similar issue came up in that case and Judge Geraci, you know, addressed it.

And I'm not trying to argue multiplicity or duplicity.  I'm trying to argue that we're entitled to notice of the nature of the charges.  And, for example, let me give you two concrete examples.

In Count 1 that charges both defrauding the government and obstructing the government.  Defrauding the government normally, many times, has to do with financial loss, or loss of property.  That's not the case here and we're not saying that it's invalid on its face because there are Second

U.S. v. Gogolack, et al. - 23-CR-99

Circuit cases like *Copeland* that say defraud can have a broader meaning, although that may be under attack soon in the Second Circuit.

But right now if you look at the defraud prong and the offense prong, I can't tell the difference. You look at all the overt acts and I can't tell which overt acts go with the defraud prong, which go with the obstruction prong. And so we're looking for notice when we're asking for a Bill of Particulars which I think is legitimate.

Also, if you compare Count 1, the obstruction and Count 2, the witness tampering, and if you look at specifically the manner and means that are alleged under obstruction, it's Paragraph 2(b)(iv) causing the death of Crystal Quinn to corruptly obstruct and impede Ms. Quinn --

**MAGISTRATE JUDGE MCCARTHY:** I'm sorry.

**MS. BUTH:** -- from cooperating.

**MAGISTRATE JUDGE MCCARTHY:** I'm sorry, what page are you on?

**MS. BUTH:** That's Page 9, 2(b)(iv) I was just reading from.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. BUTH:** Okay. So that's our obstruction.

Almost the exact same language is used in the witness tampering Count 2A, again, alleging to kill Crystal Quinn, a witness with the intent to prevent her attendance at a

U.S. v. Gogolack, et al. - 23-CR-99

proceeding.

So, I can't tell just from the face of the indictment and the overt acts what the nature of each charge is and how they, how they are different. And if they are different, then, again, we'll raise that in a dispositive motion alleging multiplicity or duplicity. But if they are different, this gives the government a chance to clarify with a Bill of Particulars which paragraphs of the overt acts apply to which counts. And I think that's one of the cases that we cite took that tack, we cited on the same page as Gosy. So that's the argument on that portion of our request.

On the portion where we're asking for a Bill of Particulars simply as to whether Gerace Attorney 1 is a coconspirator, we need that information in order to file, know whether we should file a motion to dismiss for legal insufficiency. The reason being in the menu of overt acts, Mr. Gerace and/or his lawyer are listed in the following: It's Paragraph 6, 7 and 8, 12, 17, 19, 20, 21, 23 through 26, 29 and 77 through 81. The majority of those overt acts have to do with conduct that Attorney 1 under took in the representation of Mr. Gerace.

And the reason we need to know if the government is alleging whether attorney number one is a coconspirator is because coconspirators share intent. And I want to know when the overt acts reference Attorney 1, is it being alleged that

U.S. v. Gogolack, et al. - 23-CR-99

Mr. Gerace shared the intent of his attorney when the attorney took certain actions in the representation?  Or if Attorney 1 is not a coconspirator, the argument for us becomes, well, then the overt acts that Mr. Gerace undertook really are innocuous and part of, you know, simply being a defendant in a criminal case.  And so that's why we're asking for a Bill of Particulars on that issue.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. CHALBECK:**  Judge, I'm going to start kind of -- I'm not going to start with that.  I'm going to go back in order to the defraud and the offense prong of Count 1 and then address the nature of the charges concern with respect to Counts 2 and 3 and then I'm going to hit the Attorney 1 issue.

So with respect to the defraud slash offense prong issue, I heard Ms. Meyers Buth say that she doesn't know which overt acts apply to the offense prong or the defraud prong and on that score, I would commend both counsel and the court, *United States v. Bilzerian*.  That's 926 F.2d 1285, (2d Cir. 1991).  And in that case, the Second Circuit states when conduct is chargeable under the specific offense clause, excuse me, the Second Circuit rejected the argument that where conduct is chargeable under the defraud prong, it's precluded from being charged under the offense prong.  In other words, *Bilzerian* stands for the proposition that the

56

U.S. v. Gogolack, et al. - 23-CR-99

same conduct can be chargeable under both the defraud prong and the offense prong.  And so I think case law since before I was born addresses that concern that Ms. Meyers Buth raised.

Turning to the distinction between Counts 2 and Counts 3, I think Ms. Meyers Buth might frame this as not being able to assess the nature of the charges and how they're different.  In the government's brief, I discuss how witness tampering is inherently prophylactic.  It's forward-looking.  You're trying to prevent someone from testifying or giving information to law enforcement, all of which is alleged in Count 2.

Witness retaliation is a different species of obstruction.  It's backwards looking.  You're retaliating against someone for what they've already done.  The same conduct can give rise to both charges.  There is no law that says, well, you have a multiplicity issue or a duplicity issue, a double jeopardy issue of any kind where you have two offenses with distinct elements -- and the elements are distinct there's no question about it.  They don't address any of the government's *Blockburger* analyzes in their reply brief and so I think your Honor can rest assured that witness tampering is elementally distinct from retaliation.

**MAGISTRATE JUDGE MCCARTHY:**  Again, these are all

U.S. v. Gogolack, et al. - 23-CR-99

validity arguments, I think.

**MS. CHALBECK:** Yes, your Honor, which was, I think, my initial point --

**MAGISTRATE JUDGE MCCARTHY:** Okay. Well --

**MS. CHALBECK:** -- is that we're --

**MAGISTRATE JUDGE MCCARTHY:** What about --

**MS. CHALBECK:** -- in territory we ought --

**MAGISTRATE JUDGE MCCARTHY:** What about --

**MS. CHALBECK:** -- not to be in.

**MAGISTRATE JUDGE MCCARTHY:** What about the --

**MS. CHALBECK:** The Attorney 1 issue.

**MAGISTRATE JUDGE MCCARTHY:** Yeah, yeah.

**MS. CHALBECK:** Okay. Going back to first principles, a Bill of Particulars is not meant to be used to identify coconspirators. It's not meant to be used to identify the government's legal theory. All of these arguments with respect to, you know, precluding statements or, you know, moving to dismiss the indictment on insufficiency grounds, knowing whether Attorney 1 is or is not in the government's view a coconspirator is not germane to their ability to make those motions.

They can make the motion and they can argue it in a motion in limine if they want. They could, they could move to dismiss after, after trial if they think that the overt acts are legally insufficient or that the proof is legally

U.S. v. Gogolack, et al. - 23-CR-99

insufficient to convict their client.

But there's no basis right now to use the Bill of Particulars as a way of, again, mission creeping our way into those dispositive issues.

And so for that reason I think that the motion should be denied with respect to Attorney 1 --

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. CHALBECK:**  -- and his status in the case.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. BUTH:**  Judge, may I be heard just briefly.

**MAGISTRATE JUDGE MCCARTHY:**  Briefly.

**MS. BUTH:**  Obviously I know the case law and obviously, you know, I understand the same conduct can be charged for both prongs under Count 1.

What I'm asking in a Bill of Particulars is what conduct are we talking about?  What overt acts pertain strictly to Count 1?  I did not make the argument that, you know, there was -- I couldn't understand the difference between witness tampering and witness retaliation.

What I was saying was witness tampering and obstruction sound to me, when you read the overt acts, like there's no distinguishing factor between them.  So the argument was give us a Bill of Particulars to help us distinguish what do you mean by obstruction versus what do you mean by witness tampering.  Both obstruction and witness tampering have

different ways that they can be pleaded.  So under obstruction, you can have obstruction by force or you can have what the case law refers to as noncoercive obstruction. Under witness tampering, there's two subdivisions, one involves force, the other one involves corruptly persuading somebody.  So, they're very, very similar.

And when you just have one menu of overt acts, I can't tell, are you saying that Count 1 and Count 2 are the same, in essence, or are there acts that apply to Count 1's obstruction that don't apply to Count 2.  I can't tell -- and that's a notice issue and that's a Bill of Particulars.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. BUTH:**  As far as the attorney, we're not asking the government to out any witnesses or out any coconspirators. And unless we know what the government, how the government considers Attorney 1, whether as a coconspirator or not, that then drives whether or not Mr. Gerace would have some liability for Attorney 1's actions.  And if he did, fine, tell us and if he didn't, then we go in a different direction.

So my argument's confined to the face of the indictment are all structural and all need to know notice issues. They're not evidentiary.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.  Ms. Meyers Buth, you said at the outset of your argument that you'd be succinct

U.S. v. Gogolack, et al. - 23-CR-99

and I applaud you for that.

**MS. BUTH:**  Thank you.

**MAGISTRATE JUDGE MCCARTHY:**  You also said you needed a Bill of Particulars so that you could in an intellectually honest fashion approach a motion, a dispositive motion with respect to the second superseding indictment.  You've asked for it.  The government has said you are not entitled to a Bill of Particulars on that.

I agree with the government but what that means as far as I'm concerned is -- and not prejudging anything about the validity of the superseding indictment -- but you can, I think, with a clear conscience argue that the indictment on its face doesn't -- is insufficient in terms of notice, duplicity, multiplicity, or whatever.  You can remind me that you asked for a Bill of Particulars and that I denied that request.  So we're going to leave it at that.

**MS. BUTH:**  No, understood, and I appreciate it, Judge. Thank you.

**MAGISTRATE JUDGE MCCARTHY:**  Thank you.

Anything else on Bill of Particulars?

(No audible response.)

**MAGISTRATE JUDGE MCCARTHY:**  All right.  By the way, folks, as you always do, and I appreciate somebody ask for a transcript of this argument.  So I mean, my view is that whatever is said today is going to be a ruling and it's going

U.S. v. Gogolack, et al. - 23-CR-99

to be in the transcript, okay.

If there's something I have to write on, I will but I just in the expectation and hope and prayer that we're going to get through these preliminary issues and then set a date for dispositive motions, my rulings will be what they are.

So we're through Bill of Particulars.

I'm not addressing surplusage.

We'll turn to Grand Jury minutes and recordings in a minute.

Let me ask, we've been at this an hour and a half, as I said, I've got all day.  I don't know what all of your schedules are but does anybody need to -- we'll take a break obviously but does anybody need, any counsel need to be out of here by a certain point.

(No audible response.)

**MAGISTRATE JUDGE MCCARTHY:**  Okay, all right.  So we'll plan to go till about noon and then break for about 45 minutes or so, or an hour and -- you tell me what you need -- and then we'll resume.

**MR. COOPER:**  Thank you, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Grand Jury minutes and recordings.  Who wants to be heard from the defense? Mr. Foti.

And bearing in mind that request for review of Grand Jury transcripts, even on an ex parte basis is an

U.S. v. Gogolack, et al. - 23-CR-99

extraordinary remedy.  Tell me why you need it here.

**MR. FOTI:**  Judge, I am mindful of the directives we were given yesterday which included that you would rely heavily on oral argument.  So I think this may be the only time I'm going to talk today and I'm going to be a little bit more thorough trying to lay this out.

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MR. FOTI:**  In part because in my view of the non-dispositive motions before this Court, I think this might be perhaps the most challenging.  And I don't think that's because it's the most complicated, I don't think it is.  But I do think that there's natural challenges that go along with any type of issue that deals with false information being presented by prosecutors as well as evidence that relates to any type of misconduct.  And so mindful in part of the history of this case, and any time that these type of issues are raised, I know that there's challenges that exist but I also think the issue is clear.

And so in order to try to do my best to give the Court an understanding of our viewpoint on the issue, I just want to, first, read a quote from the ABA Standards for Criminal Justice Section 3-1.4(b).  Because I think it informs on everything we're going to talk about.

"The prosecutor should not make a statement of fact or law or offer evidence the prosecutor does not reasonably

U.S. v. Gogolack, et al. - 23-CR-99

believe to be true to a court, lawyer, witness, or third-party" -- which I'm not reading from the quote at this point but obviously a third-party would include a Grand Jury, particularly given what preceded that.

"And should -- a prosecutor should correct a prosecutor's representation of material fact or law that the prosecutor reasonably believes is, or later learns was, false and should disclose a material fact or facts when necessary to avoid misleading a judge or fact-finder.

And again a Grand Jury would be included in fact-finding.

Now that's the ABA standards and I don't think that what I just read is controversial.  I think --

**MAGISTRATE JUDGE MCCARTHY:**  No.

**MR. FOTI:**  -- hopefully everybody in this room agrees with what was said there.  There's an abundance of case law that talks about the obligations of prosecutors to provide the utmost candor in every aspect of their presentation.  And I've been told there is a quote on the wall in the U.S. Attorney's Office from a Supreme Court case referred to as the *Berger* quote that indicates "a prosecutor's job is to do justice and not simply to seek convictions".

And consistent with that quote and that objective, obviously truth is at the center of anything that is presented to a Grand Jury, to this court, to the lawyers, and

U.S. v. Gogolack, et al. - 23-CR-99

ultimately to a petit jury.

So, what we have before this court is an issue where we're asking for disclosure of Grand Jury minutes because an issue may exist to dismiss, to dismiss based on what occurred at the Grand Jury. And specifically I'm citing Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) which says the Court may authorize disclosure at a time and a manner and subject to any other condition that it directs of a Grand Jury matter at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury."

Doesn't mean that we had to prove that the matter will be dismissed, simply establish that the ground may exist. And based on what I've already referenced, obviously candor within the indictment should be of the utmost concern to this court. And so what we noted in our motions is that this indictment contains materially false information. Indisputably false information.

And in the non-dispositive motions at Page 72 we go through and we identify the specific overt act -- and I'm not talking about one of the sort of inconsequential overt acts that have been discussed during the Bill of Particulars. I'm not talking about --

**MAGISTRATE JUDGE MCCARTHY:** Just a second, Mr. Foti. You just referred to Page 71. I'm looking at your -- the

U.S. v. Gogolack, et al. - 23-CR-99

notice of motion which is at docket 410 and it seems you begin at Page 68 to discuss -- the heading says demonstrably false allegations in the indictment.  So am I looking at the wrong thing or?

MR. FOTI:  No, no, I'm sorry, Judge.  I actually was reading off of a PDF numbering that combines the 410 submission.  So you're right.  410-1 which is the memorandum in support of the joint filing, the subsection that deals with demonstrably false allegations in the indictment starts on Page 68 --

MAGISTRATE JUDGE MCCARTHY:  Okay.

MR. FOTI:  -- of that submission.

MAGISTRATE JUDGE MCCARTHY:  Okay.  Okay.

MR. FOTI:  The Court is actually more in tune to where the issue is than I was --

MAGISTRATE JUDGE MCCARTHY:  I try.

MR. FOTI:  -- a moment ago.

Now in that section, Judge, over the course of about seven pages, the attorneys who submitted the joint submission identify a specific overt act and it is not insignificant. It's not an overt act that simply says a phone call was made, which there is an abundance of as we talked about during the Bill of Particulars, it is a very serious allegation that's made implicating not just Mr. Gerace but Attorney 1 who the government has just moments ago indicated that they refuse to

U.S. v. Gogolack, et al. - 23-CR-99

identify whether he's a coconspirator or not.

And it doesn't just involve Attorney 1 because we know from the history of case number 19-CR-227 that it involves a second attorney who's not referenced in the indictment but the overt act says a trial witness, a trial witness list filed or caused to be filed by Gerace Attorney 1 also listed Crystal Quinn as a defense witness.

**MAGISTRATE JUDGE MCCARTHY:** You're talking about Paragraph 25?

**MR. FOTI:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. FOTI:** The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of the protective order which prohibited attorneys for Gerace from revealing to Gerace the government witnesses's names and from providing Gerace with the government witness list.

Now, we go through and explain why this doesn't make any sense. First from a logical standpoint that the idea that defense attorneys put a name on the witness list somehow reveals them to be a cooperating witness just is illogical as a general premise. Doesn't make any sense at all when you read it. To a Grand Jury whatever evidence that was presented that produced this particular indictment or to the public that now has a speaking indictment with these allegations, maybe if they can take this at face value. To

U.S. v. Gogolack, et al. - 23-CR-99

the Court, to the attorneys, to anybody who understands the process knows that this is an illogical allegation on its face.  But we go further --

**MAGISTRATE JUDGE MCCARTHY:**  Because the protective order referenced in Paragraph 25 says the protective order prohibited attorneys for Gerace from revealing to Gerace the government's witnesses's names.

**MR. FOTI:**  Right which was, which is --

**MAGISTRATE JUDGE MCCARTHY:**  But --

**MR. FOTI:**  -- true.  The --

**MAGISTRATE JUDGE MCCARTHY:**  But the witness was listed as a defense witness.

**MR. FOTI:**  Well, yeah, the idea --

**MAGISTRATE JUDGE MCCARTHY:**  Is that why you're claiming it's illogical?

**MR. FOTI:**  Yeah.  The idea that the defense creates a witness list with 200 plus names --

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MR. FOTI:**  -- that they believe are witnesses they may want to call, that in no way communicates to a defendant some of these names or in any way identifies which of those names would potentially also be government witnesses.  That doesn't make any sense.  If the defendant can take a defense witness list and say, well, of these 200 names I now know who the government's witnesses are.  There's a disconnect there.

U.S. v. Gogolack, et al. - 23-CR-99

That doesn't make sense to anybody unless they just take the allegation at face value.

But more importantly, Judge, that was factually false based on the history of the case.  Miss Quinn was revealed as a cooperating witness at detention hearings that preceded the defense witness list.  That is completely omitted from indictment.  So the indictment has presented a false theory of how Mr. Gerace learns of Miss Quinn's potential cooperation by saying it was through a defense witness list when that's not what happened.  And we lay that out in the joint motion exactly how and where and why Mr. Gerace would have learned, as well as the general public and everybody else, that Miss Quinn is a cooperating witness during the course of the detention hearing.

Now, what is particularly significant here is the government --

**MAGISTRATE JUDGE MCCARTHY:**  Let me just ask, though.  If Miss Quinn was already identified as a cooperating witness for the government, then -- and that was public knowledge, then why would she be listed as a defense witness?

**MR. FOTI:**  Well, I'll divert from the argument a little bit to explain that, Judge.  But Miss Quinn first becomes involved in this case, gets pulled into this case in early of -- in early 2023.  So she receives a target letter, I believe, at the end of January 2023.  What happened about a

U.S. v. Gogolack, et al. - 23-CR-99

week earlier, a week or two, I think it was just a week earlier, Judge Sinatra over the government's objection had relaxed Mr. Gerace's release conditions and converted him to curfew.

So about a week later, the government has Miss Quinn served with a target letter and when she's served with agents with a target letter, they go in and they conduct an interview of her. During the course of the interview, she gives information that is inconsistent with the government's narrative of what occurred during an incident in November of 2019. Miss Quinn provides the government with information that is not consistent with what they're ultimately going to try to prove.

The government then charges her in a complaint that lays all of this out. So now it's public knowledge that she has given statements to the government that are inconsistent with what they're ultimately trying to prove in terms of what occurred back in November of 2019.

Now at some point she becomes a cooperating witness and presumably disavows the earlier, or at least parts of what she had earlier told the government. But from the defense perspective, even if she was a cooperating witness, of course they would have an interest in calling her as a witness. Miss Quinn had given a narrative that's inconsistent with what the government stated. She gave it to federal agents

just earlier that year.  So separate from any information Mr. Gerace had on why he thinks Miss Quinn would be helpful as a witness -- and she was a friend of his and she knew a lot of the other witnesses in the case and there's a lot of reasons he would have thought her testimony be helpful.  We also have public filings demonstrating that she was telling the government that they're wrong about some of the allegations they have.  Just earlier that year.

So of course the defense would want to reserve her right as a witness.  Like that is absolutely -- that's so basic the defense would make sure her name was on that witness list to preserve that right.  And, furthermore, if she did become a cooperating witness, the defense might want the ability to call her just because there's a stark contrast between talking to federal agents, telling them that they got their story wrong and then once charged, suddenly changing her story.

If the defense had wanted to pursue -- and I wasn't on the defense team at that time -- but if the defense had wanted to pursue a theory related to witnesses cooperating because they were coerced by charges or other information that the government leveraged against them, then that would be completely in line with that.  That's, that's the reality. None of that's in the indictment.  The indictment leaves all of that out.  The government completely strayed away from

U.S. v. Gogolack, et al. - 23-CR-99

that at all of the detention hearings.  The government's presented a narrative in this indictment that says Miss Quinn was revealed through the defense witness list as a witness to Mr. Gerace when everybody in this room that was involved in 19-CR-227 knows that was false.

**MR. CHALBECK:**  Judge --

**MR. FOTI:**  And, Judge --

**MR. CHALBECK:**  Sorry, Mark.

**MAGISTRATE JUDGE MCCARTHY:**  Well --

**MR. CHALBECK:**  I'm sorry.  I thought --

**MAGISTRATE JUDGE MCCARTHY:**  He's not done.

**MR. CHALBECK:**  I heard a pause.

**MAGISTRATE JUDGE MCCARTHY:**  I'll get to you.  Okay, go ahead.

**MR. FOTI:**  So the government responds to this motion and they don't deny that they know it's false.  They have a one paragraph response to the seven pages which simply asks the Court to try to move on.  That's it.  They don't deny it was false.  They instead say:  Defendants may challenge the government's evidence at trial and if they choose to present competent evidence and appropriate argument to contest the government's case --

**MAGISTRATE JUDGE MCCARTHY:**  Let me just get to the page of their response.

**MR. FOTI:**  This is 423 at Page -- make sure I got the

U.S. v. Gogolack, et al. - 23-CR-99

right one -- 54.  Last paragraph of the page is where it starts.

**MAGISTRATE JUDGE MCCARTHY:**  54?  No, no.  That's --

**MR. COOPER:**  50 at the bottom of the page.  It's 54 in the top right corner.

**MR. FOTI:**  Yeah, I'm using the ECF pagination.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. FOTI:**  So the --

**MAGISTRATE JUDGE MCCARTHY:**  Okay, okay.

**MR. FOTI:**  The government acknowledges defendants contend that because in their estimation the indictment includes blatantly false information, it suggests the Grand Jury was misled during the government's presentation of the evidence.  They go on to say, well, the defendants may challenge the government's evidence at trial if they choose and if they choose, may present competent evidence and appropriate argument to contest the government's case but the defendants are not entitled to challenge a Grand Jury proceeding or the contents of an indictment because they disagree with the facts asserted.  To hold otherwise would invite every defendant in every case to access Grand Jury materials on the basis the defendant disagrees with the Grand Jury findings.  A general disagreement with findings, however, is not a particularized need.  And at the bottom that is the challenge they bring.  And it's inappropriate

U.S. v. Gogolack, et al. - 23-CR-99

motion generally and insufficient for one requesting Grand Jury minutes.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. FOTI:**  That is the entirety of their response to this.  They have false information in the indictment and they simply say, well, the defense should deal with that at trial. That is totally false.  That is totally off base.  If they included overt acts in this indictment based on evidence they presented to the Grand Jury that they know is false, the response isn't:  It's on the defendant to deal with that at trial.

And, Judge, I -- what's not in the papers but is in other submissions is even though this issue has been raised at different junctures and even though the government has every single time simply said, well, the defense disagrees with, with the indictment, that's just something for trial and they've tried to avoid actually responding to the evidence that establishes it's false.

I would simply also direct the Court to -- and it's not again in the papers -- but within the submission that's been discussed a few times, the submission related to Mr. Hinkle's detention.

**MAGISTRATE JUDGE MCCARTHY:**  Yeah, that's, yeah, that's the -- that's under seal, isn't it?

**MR. FOTI:**  It is.

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:** Just give me -- do you have the docket number of that?

**MR. FOTI:** I think I do, Judge. There's a redacted version.

**UNIDENTIFIED SPEAKER:** 274.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Let me just go ahead. I'm -- go ahead.

**MR. FOTI:** Well, I'll --

**MAGISTRATE JUDGE MCCARTHY:** If you're going to be referring to something that's under seal.

**MR. FOTI:** I believe this is in the unredacted version.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. FOTI:** In any event, there's no basis to seal this statement.

**MAGISTRATE JUDGE MCCARTHY:** Okay, okay.

**MR. FOTI:** If the government feels otherwise, they can object to it but I don't believe so.

**MAGISTRATE JUDGE MCCARTHY:** Well, whoa, whoa, whoa. I mean, let's just be careful. If you're referring to something that's a publicly filed document, that's okay. If you're referring to a sealed document, I want to make sure we proceed cautiously.

**MR. FOTI:** All right. I will be careful, Judge.

I can also try to identify the unredacted filing number but I don't, I don't have it in front of me. I know this

U.S. v. Gogolack, et al. - 23-CR-99

part was not something that --

**MAGISTRATE JUDGE MCCARTHY:** Just talk to Ms. Chalbeck --

**MR. CHALBECK:** Can I just see it, Mark?

**MAGISTRATE JUDGE MCCARTHY:** -- for a minute about this so we can make sure we're all...

**MR. FOTI:** It's highlighted.

(WHEREUPON, pause in proceedings.)

**MR. FOTI:** Judge, I don't think it's redacted. The government's viewed it and they agree, in any event, this statement is not one that's --

**MAGISTRATE JUDGE MCCARTHY:** Okay, but this is docket number what?

**MR. FOTI:** I believe --

**MR. CHALBECK:** 274.

**MAGISTRATE JUDGE MCCARTHY:** 274.

**MR. FOTI:** 274. I don't know if 274 is the redacted or unredacted.

**MAGISTRATE JUDGE MCCARTHY:** All right, whatever.

**MR. FOTI:** But this is in both.

**MAGISTRATE JUDGE MCCARTHY:** Whatever you're going to read, the government has seen, okay.

**MR. FOTI:** Yes. And it's Page 15, Judge.

Gerace and Ermin had a face-to-face meetings after Gerace was detained by Judge Sinatra and after government detention proffers unfortunately likely made it clear that

U.S. v. Gogolack, et al. - 23-CR-99

Miss Quinn was a cooperating witness.  And in the footnote, to be clear, Miss Quinn was never named during the proffers but responses to District Court questions and the context of the answers made Quinn's cooperation obvious.

So there's actually an acknowledgment in a separate submission they didn't put it in the response.  In a separate submission they acknowledge her cooperation was obvious after those detention proffers.  And it was -- it was obvious, Judge.  We going through it in our submissions laying out exactly what was said during the detention proffers and how that compares up to the public filings and Miss Quinn's arrest in February of 2023.  The government indicates it got a third witness in February 2023, and everything matches up to what was within the public record at that point.

So, you have an acknowledgment by the government separately saying Miss Quinn would have been identified as a cooperating witness from those detention hearings and that's not in the indictment.  Instead they actually charge an overt act saying that -- which is an overt act of no fault of Mr. Gerace's -- that his attorneys had put Miss Quinn on their witness list and that that revealed, that helped circumvent the protective order, revealed her as a cooperating witness.  And it's just, just not true and it doesn't make sense.

And to the extent the government has tried to circumvent

U.S. v. Gogolack, et al. - 23-CR-99

this issue by saying, well, that's on the defense to provide proof at trial, that's not --

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. FOTI:**  -- the framing of the issue.

**MAGISTRATE JUDGE MCCARTHY:**  All right.  So you want, I guess preliminarily me to look in-camera and then decide from that point whether it goats disclosed but you want me to look at the Grand Jury transcript to see what the government, if anything, said to the Grand Jury about the substance of what led to Paragraph 25, correct?

**MR. FOTI:**  Judge, we have, we have a better -- the problem with, the problem with this case is that these type of issues in a vacuum, what's in the Grand Jury minutes may appear to be fine.  It's when you know the factual information that exists outside of what was probably presented to the Grand Jury that you can identify whether the information was false or misleading to the Grand Jury.

So, what I'm asking for is disclosure of the Grand Jury minutes.  And the Rule 6 indicates the Court can do it in a manner that it finds appropriate.  It can do it in a very restrictive attorney eyes only manner -- which is not something I ever advocate for under most circumstances because I have a particular concern that it creates conflict at times between a client and his attorney.  But under these circumstances, given that it would have otherwise just be

U.S. v. Gogolack, et al. - 23-CR-99

*Jencks* material that we wouldn't get until closer to trial, I would support that. But I think the only way to be able to move on dispositive motions, which is one of the main reasons we're having these arguments today, the only way to move forward on dispositive motions related to dismissal on what was presented to the Grand Jury is to be able to review those minutes and be able to show this Court how that information was materially false or admitted information that rendered it materially false. And, again, Rule 6 says if the issue may exist, that is enough to give the Court discretion to release the Grand Jury minutes. I think there's more than enough here to see that an issue may exist.

**MAGISTRATE JUDGE MCCARTHY:** So would your argument -- and this is down the road obviously, but that would cause just Counts 1 through 3, or Count 1 in particular, or the entire second superseding indictment to be dismissed, or you don't know?

**MR. FOTI:** Well, candidly, Judge, my only interest are the counts that Mr. Gerace is charged in. So I am, I am only taking a position in regards to Counts 1 through 3. And I think that this only has bearing on that.

You know, I truthfully do believe Mr. Goglack has charges that are totally unrelated that are probably subject to proper severance. But that aside, I wouldn't take an issue -- I wouldn't move to dismiss the indictment as to

U.S. v. Gogolack, et al. - 23-CR-99

counts that don't relate to Mr. Gerace because it's just not my obligation to do so.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.  Before we get to whether the minutes and transcript should be examined by me or you or by anybody --

**MR. FOTI:**  Sure.

**MAGISTRATE JUDGE MCCARTHY:**  Your argument is that Paragraph 25, which is one of the overt acts, is on its face false.  It's because everybody knew that she had already been disclosed by listing her as a defense witness.  That wasn't a violation of the protective order because the protective order related to revealing the government's witnesses.  So the Grand Jury could only have gotten that information from, from the prosecutor, isn't that right?

**MR. FOTI:**  Yes.

**MAGISTRATE JUDGE MCCARTHY:**  Why do you need the minutes then?

**MR. FOTI:**  Because some of what I've been proffering to the Court is based on information that is from case number 19-CR-227, from the separate case number that I don't know -- have memorized like all of Mr. Gerace's indictments.

But the separate charges against Miss Quinn is extremely essential to this and what's contained in the complaint against her.  The determination of whether information was being omitted to create a material falsehood is based on

80

U.S. v. Gogolack, et al. - 23-CR-99

things outside the record of what was presented to the Grand Jury.  And I expect the Court knows some of that just by the history of this case, and, frankly, from being a prominent, having a prominent role in this courthouse.  But that aside, there is absolutely --

**MAGISTRATE JUDGE MCCARTHY:**  Who me, a prominent role?

**MR. FOTI:**  Yes, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Would you tell them upstairs.

**MR. FOTI:**  That's my position.  I don't think the government's going to object to that statement.

I think the reality here is the only way to identify those submissions and to properly put the government's presentation in context of what actually occurred is for us to be able to provide comment to this Court and to -- and proffer evidence to this Court, that's the only way I think it could properly do this.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.  All right.

Ms. Chalbeck, I know you want to get to this.  It's noon.  How long do you think you're going to be on this issue?  Because we can break now --

**MR. CHALBECK:**  At most, ten minutes.

**MR. COOPER:**  We should take our, let's take our break, Judge.  Let's take the break and come back and argue.

**MAGISTRATE JUDGE MCCARTHY:**  Can we break till 1?

U.S. v. Gogolack, et al. - 23-CR-99

**MR. FOTI:**  Oh, yeah, Judge, whatever you want.  And I also think there were other attorneys who had arguments related to this issue but --

**MAGISTRATE JUDGE MCCARTHY:**  Well --

**MR. FOTI:**  -- I don't know if you want to wait till after.

**MAGISTRATE JUDGE MCCARTHY:**  I mean, does anybody need to be -- well, we'll break till 1, in any event.

**MR. COOPER:**  Thank you.

**MAGISTRATE JUDGE MCCARTHY:**  And then we'll reconvene.  All right.  Thank you.

(WHEREUPON, recess taken.)

(Open court, defendants present:)

**MAGISTRATE JUDGE MCCARTHY:**  Good afternoon.

**THE CLERK:**  Back on the record in criminal proceeding 23-CR-99, United States of America v. Gogolack, et al.

The appearances are the same as this morning except that I would note the appearance of Assistant U.S. Attorney Joseph Tripi and the absence of defendant Michael Roncone and temporary absence of attorney Frank Bogulski.

The Honorable Jeremiah J. McCarthy presiding.

**MAGISTRATE JUDGE MCCARTHY:**  Mr. Tripi was also here for part of this morning.

**MR. TRIPI:**  Thank you, Judge.

**MR. BAGLEY:**  Judge, can I just real quick scheduling

U.S. v. Gogolack, et al. - 23-CR-99

wise.  You asked before if anybody had to leave.

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MR. BAGLEY:**  I didn't speak up at that time but I realized I should probably leave at about 3:30.  My son has an appointment.  So I don't know if we're going to go that long but I did want to bring that to the Court's attention.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. BAGLEY:**  I know Mr. Morrissey's here.  I do plan to argue one particular issue that's still outstanding.

**MAGISTRATE JUDGE MCCARTHY:**  Okay, yeah, let me know as we get closer --

**MR. BAGLEY:**  Thank you.

**MAGISTRATE JUDGE MCCARTHY:**  -- and I'll try to move you up if necessary.

**UNIDENTIFIED SPEAKER:**  Your Honor, along those lines I made a note I'm going to slip out of here a little bit before 2:00 and Mr. Henry will keep me informed.

**MAGISTRATE JUDGE MCCARTHY:**  Okay, thank you.

**MR. COOPER:**  Judge, I'm sorry.  I spoke with Mr. Dell before your Honor came out on that note of him leaving.  There's some unresolved motions with respect to Mr. Roncone but based on the conversation I had with Mr. Dell, I expect that all of those are going to be resolved.  And so I would just note he told me before -- I can tell the Court, you know, we spoke and those are going to be either mooted or not

U.S. v. Gogolack, et al. - 23-CR-99

an issue any more.

MR. DELL:  That's correct, your Honor.  In the table of contents, I think they're like letters M, N, O and P or.

MAGISTRATE JUDGE MCCARTHY:  Right.  I think it's.  Let's see, those were --

MR. COOPER:  O, P, Q, R in the table of contents.

MR. DELL:  That's correct, your Honor.

MAGISTRATE JUDGE MCCARTHY:  Okay.

MR. DELL:  Based on the government's written responses I agree that those are moot.

MAGISTRATE JUDGE MCCARTHY:  That's great.  That's great.  Okay, thank you.

Ms. Chalbeck, before I get to you, Mr. Foti, over the noon hour I took another look at your brief and also that Page 15 from docket number 274.

MR. FOTI:  Yes.

MAGISTRATE JUDGE MCCARTHY:  Now if I understand correctly, you're not claiming that Miss Quinn was named by name at the detention hearings but that it was obvious that it was her who was going to be the cooperating witness, correct?

MR. FOTI:  Yes, that's correct.

MAGISTRATE JUDGE MCCARTHY:  And then at Page 15 in footnote 5, the government, as I read it, confirms that it was obvious that she was the cooperating witness.

U.S. v. Gogolack, et al. - 23-CR-99

**MR. FOTI:** Yes.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

Ms. Chalbeck.

**MR. CHALBECK:** Okay, Judge, kind of as before, I'm going to organize my comments into like different buckets. So I want to start with what I think is the fundamentally like inaccurate premise to this motion to release the Grand Jury minutes.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. CHALBECK:** If we go to the indictment on Page 16, Paragraph 25, that's the overt act that Mr. Foti's focus is on.

**MAGISTRATE JUDGE MCCARTHY:** Right. Right.

**MR. CHALBECK:** I'm going to read sentence two of that overt act.

The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a protective order which prohibited attorneys for Gerace from revealing to Gerace the government's witnesses' names and from providing Gerace with the government's witness list.

**MAGISTRATE JUDGE MCCARTHY:** Right.

**MR. CHALBECK:** The operative verbs in -- verb I should say -- in that sentence is that the listing of Miss Quinn circumvented the protective order. It is not alleging that the listing of Miss Quinn on the defense's witness list is

U.S. v. Gogolack, et al. - 23-CR-99

how the defense initially identified Miss Quinn as a cooperating witness with the government.  So, in that respect I want to kind of go back through the indictment and just list some allegations.

**MAGISTRATE JUDGE MCCARTHY:**  Well, well --

**MR. CHALBECK:**  And --

**MAGISTRATE JUDGE MCCARTHY:**  Before we get there, where is, the protective order's somewhere on the docket.  This is in the other case, right?

**MR. CHALBECK:**  Yes.  This is, this is -- the protective order that's being referenced --

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MR. CHALBECK:**  -- is the protective order in 19-CR-227.

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MR. CHALBECK:**  And 23-CR-37.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. TRIPI:**  It's document 47 in that case, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Okay, let me just pull that up.  In 19-227.

**MR. TRIPI:**  Yes.

**MAGISTRATE JUDGE MCCARTHY:**  Okay, just let me get to that.

**MR. CHALBECK:**  And so --

**MAGISTRATE JUDGE MCCARTHY:**  Let --

**MR. CHALBECK:**  I'm sorry, Judge.

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:** Let me just get to it first.

Okay, Mr. Tripi, what's document number again.

**MR. TRIPI:** Docket 347. It's protective order entered by Judge Sinatra on January 9th, 2023.

**MAGISTRATE JUDGE MCCARTHY:** Let me get to that. 347, you said?

**MR. TRIPI:** 347, yes, sir.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Let me... For some reason I have it there, I can't pull it up. But can you just read -- anybody can read to me the language.

**MR. CHALBECK:** I don't have that language, Judge.

**MAGISTRATE JUDGE MCCARTHY:** Joe, do you have it?

**UNIDENTIFIED SPEAKER:** I'll just hand it up to you, Judge.

**MAGISTRATE JUDGE MCCARTHY:** Thank you.

Casey, do you want to just point to me the language that's at issue.

All right, I have it up now.

**MR. CHALBECK:** Mr. Tripi is looking for the specific provision or provisions that I think bear on your Honor's question.

But if I may, Judge --

**MAGISTRATE JUDGE MCCARTHY:** I'd just like to get to that before, then I'll hear from you again. Just read it to me. I lost it again.

U.S. v. Gogolack, et al. - 23-CR-99

(WHEREUPON, a pause in proceedings.)

**MAGISTRATE JUDGE MCCARTHY:** Okay, I have it back up, Joe, if you can just point me to the page.

(WHEREUPON, a pause in proceedings.)

**MR. TRIPI:** Judge, it might be just more, there are several provisions of the protective order that, first of all, the protective order as a whole but if you look at the paragraphs on Page 2, delineates a number of categories of information 1 through 5.  On Page 3 there's a, there's a paragraph at the bottom, Page 3 order that disclosure of 3500 materials by the government is encouraged.  And it's for attorney preparation and investigation therefore counsel for the defendants shall not disclose verbally or otherwise the substance of any 3500 materials.

**MAGISTRATE JUDGE MCCARTHY:** So that would include the names of witnesses, right?

**MR. TRIPI:** Yes.  In the beginning it permitted the government to file its witness list under seal.  That's Paragraph 1.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. TRIPI:** I don't have it in front of me, but due to adjournments in that trial, I think there were adjustments of that date but it always remained 42 days before trial.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. TRIPI:** Which was the date for disclosure to the

U.S. v. Gogolack, et al. - 23-CR-99

defendants, not to any third-parties.  So there's a later paragraph that I'll get to --

**MAGISTRATE JUDGE MCCARTHY:**  Okay, okay.

**MR. TRIPI:**  -- that prohibits disclosure to third-parties.

**MAGISTRATE JUDGE MCCARTHY:**  But Paragraph 24 of the second superseding indictment says that Gerace Attorney 1 filed and caused a filing of a trial witness list.  So that's when the defense witness list was filed, right?

**MR. TRIPI:**  Yes.

**MAGISTRATE JUDGE MCCARTHY:**  So the I presume the government witness list was filed prior to that --

**MR. TRIPI:**  It was --

**MR. CHALBECK:**  -- and --

**MR. TRIPI:**  Ms. Chalbeck will speak to that.

There's also a paragraph, just to my part, a Paragraph on Page 4 there was a provision ordering the defense team shall not reveal identities of any witnesses to anyone including other witnesses or third-parties.

And then it's further ordered, this is moving on to Page 5.

**MAGISTRATE JUDGE MCCARTHY:**  Well that can't mean their own witnesses, can it?  The defense can't identify their own witnesses?

**MR. TRIPI:**  Government witnesses.

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:** Oh, yeah, okay that's what I thought.

**MR. TRIPI:** Government witnesses, yes.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. TRIPI:** And then there's, I think, at least two paragraphs on Page 5 that would apply, the first paragraph and the fourth paragraph there.

**MAGISTRATE JUDGE MCCARTHY:** All right. Well, yeah, I'll take a look at this whole thing later.

**MR. TRIPI:** Okay.

**MAGISTRATE JUDGE MCCARTHY:** Ms. Chalbeck.

**MR. CHALBECK:** So I want to, I just one premise that I think is foundational to Mr. Foti's argument which is that in his view what paragraph 25 is alleging is that it is through the listing of Crystal Quinn as a defense witness that Mr. Gerace is able to learn of her status as a government witness. And that is not what paragraph 25 alleges. It alleges that the listing circumvented the protective order. But that does not equate to this is how Gerace learns that she's a witness.

**MAGISTRATE JUDGE MCCARTHY:** No, but it, it alleges that as a one of the acts in support of a conspiracy that they circumvented the protective order which prohibited attorneys for Gerace from revealing to Gerace the government's witnesses's names, that they circumvented that by listing

U.S. v. Gogolack, et al. - 23-CR-99

Crystal Quinn as their own witness.

**MR. CHALBECK:** Judge, yes, that's what the paragraph alleges.

**MAGISTRATE JUDGE MCCARTHY:** Yeah.

**MR. CHALBECK:** What Mr. Foti -- 90 percent of the argument that your Honor just heard over the course of 30 minutes, or however long Mr. Foti's proffer was, about how that's factually incorrect because there was this detention hearing in March of 2023 wherein it was obvious that Crystal Quinn was a cooperating witness. Why is that relevant unless what Mr. Foti's gloss on Paragraph 25 is, is purporting to make out which is that the identification of Crystal Quinn as a defense witness is how the defendant learns that she's a government witness.

**MAGISTRATE JUDGE MCCARTHY:** No, no.

**MR. CHALBECK:** That's, that's --

**MAGISTRATE JUDGE MCCARTHY:** I don't, I don't read it as saying that that's how Mr. Gerace learned that she was a government witness.

**MR. CHALBECK:** Judge, I agree --

**MAGISTRATE JUDGE MCCARTHY:** Yeah.

**MR. CHALBECK:** -- but that's what he's saying. That's his argument. His argument is that, well, that's blatantly false because we had this detention hearing before the government listed her, or excuse me, before the defense ever

U.S. v. Gogolack, et al. - 23-CR-99

filed this witness list which made it plain to anyone, according to him, that she was a cooperating witness. That's what all of that proffer was about. And, and, and my point is, Judge, is that that -- that line of argumentation is premised on an inaccurate reading of Paragraph 25. Paragraph 25 simply does not allege what Mr. Foti and the defendant claims that it alleges. And so I want to walk through the indictment.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Well, before you do that, I mean, the way I read it, I read the word circumvent to mean -- and I think any reasonable, I consider myself a reasonable person, I hope, but I think a reasonable reading and the only reasonable reading of that paragraph is that use of the word "circumvent" means to at least indirectly violate a protective order.

**MR. CHALBECK:** Yes, Judge.

**MAGISTRATE JUDGE MCCARTHY:** Right. So, I guess what I'm wrestling with is how could the Grand Jury find probable cause to believe that the defendant or his attorney violated the protective order by listing Crystal Quinn as a defense witness when the protective order only prohibited him from disclosing government witnesses.

**MR. CHALBECK:** Judge, I -- and I apologize. Their argument --

**MAGISTRATE JUDGE MCCARTHY:** No need to apologize. I'm

U.S. v. Gogolack, et al. - 23-CR-99

just --

**MR. CHALBECK:**  Their argument --

**MAGISTRATE JUDGE MCCARTHY:**  -- trying --

**MR. CHALBECK:**  -- is that this allegation is blatantly false because in their reading, the gloss that they are imputing on to this paragraph is that it alleges that that's how Gerace initially learns that she's a cooperating witness. And their briefing establishes, in their view, that that's false because of the detention hearing proffers that occurred in March of 2023.  That's the only reason why they're discussing the detention proffers in March of 2023 is because they're claiming that it supports their gloss of Paragraph 25.

**MAGISTRATE JUDGE MCCARTHY:**  Okay, Mr. --

**MR. CHALBECK:**  And that's not what Paragraph 25 alleges.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.  Mr. Foti, once again, could you tell me what you're claiming.  I didn't think that's what you're claiming but maybe that is what you're claiming.

**MR. FOTI:**  Judge, I think, I think -- what the paragraph says is the listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a protective order which prohibited -- and the circumvention is the provision which prohibited attorneys for Gerace from revealing to Gerace the government witnesses' names.

U.S. v. Gogolack, et al. - 23-CR-99

So, it's an allegation there's probable cause based on evidence presented to the Grand Jury that Attorney 1, I guess presumably on behalf of Mr. Gerace, revealed to Mr. Gerace, government witness names by circumventing the protective order.  The provision that says you can't reveal government witnesses' names, how can this allegation, this paragraph allege that that was circumvented if there wasn't some revelation.  It is absolutely tied to the protective order.  The allegation is there's a circumvention of the protective order and the government's referring to the protective order indicating that 3500 material can't be shared and that you can't identify government witnesses which is not at all what happened.  All that happened is the defense put a witness on their witness list.  The government went as far as to allege based on evidence to the Grand Jury, that that was -- somehow circumvented a protective order, which it didn't, there's no evidence of that at all.  The government hasn't answered how. And they're saying that the violation --

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. FOTI:**  -- is a provision --

**MAGISTRATE JUDGE MCCARTHY:**  All right.

**MR. FOTI:**  -- revealing a government witness.

**MAGISTRATE JUDGE MCCARTHY:**  I've got -- okay I've got your position.

**MR. CHALBECK:**  Judge --

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:** Now back to you.

**MR. TRIPI:** Casey, could I just jump in for one point. Hold your thought.

Judge, just on this one point I'm going to defer back to Ms. Chalbeck, just to answer the question. By listing Quinn as theirs and permitting Gerace to have their witness list, Gerace had her name, her 3500 materials and through having his own witness list when in fact she's a government witness, an ability to discuss her in meetings with people or in the jail. They're -- government's witness list was filed a month before the defendant's.

And the first -- one of the first paragraphs on their witness list filed a month later says we reserve the right to call any witness on the government's witness list. Ergo, you didn't need to list her name on your witness list but by listing her name on the witness list, based on all the evidence and the totality of the evidence that Ms. Chalbeck's going to explain, Gerace now has a proxy to discuss her and her *Jencks* materials with people who go to visit him in jail such as John Ermin.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Okay.

**MR. CHALBECK:** Judge, I think that we're -- with respect to the defense's arguments just now, I think we're in the territory of moving the goalposts. So I'm going to direct counsel and the Court back to Mr. Gerace's initial filing.

U.S. v. Gogolack, et al. - 23-CR-99

This is on Page 69.  Their argument is that the government is alleging --

**MAGISTRATE JUDGE MCCARTHY:**  Let me get it.  Just a second.

**MR. CHALBECK:**  And it's 69 of the ECF.

**MAGISTRATE JUDGE MCCARTHY:**  410?  410.

**MR. CHALBECK:**  410, yes, your Honor.

**MAGISTRATE JUDGE MCCARTHY:**  Yeah.  Okay.

**MR. CHALBECK:**  Quote, the allegation that Mr. Gerace's defense team listed Miss Quinn as a witness for the government -- or excuse me, as a witness for the defense to circumvent the protective order and reveal Miss Quinn as a government witness is clearly false and utterly absurd.

Their whole argument, their reason why we're marching through the detention history, the detention hearing history is because their central claim is this is false because anyone could have already known that she was cooperating with the government and that she was a government witness. Indeed, the indictment alleges in the introduction on Page 6, continuing might be -- let me get you the exact paragraph.

Page 6, Paragraph 21 --

**MAGISTRATE JUDGE MCCARTHY:**  Mm-mm.

**MR. CHALBECK:**  -- of the indictment alleges on May 10th, 2023, the United States Attorney's Office filed its witness list under seal and pursuant to a protective order in case

U.S. v. Gogolack, et al. - 23-CR-99

numbers 19-CR-227 and 23-CR-37 listing Crystal Quinn as a government witness for trial.

**MAGISTRATE JUDGE MCCARTHY:** Right.

**MR. CHALBECK:** Now, when we proceed to act -- or to Count 1 and we get to the overt acts -- so I'm going to jump there and this is on Page 14 of the indictment -- and I'm going to read Paragraph 17. Paragraph 17, and then the next paragraph, Paragraph 18, makes it clear that prior to the defense listing Miss Quinn as its own witness, despite reserving right to call any government witness making it, therefore, unnecessary to list her as their own witness, they already knew or at least the defendant already knew or had reason to know that she was a cooperating witness which undermines the core thesis of their argument before your Honor.

So, turning to Paragraph 17, quote, on or about February 16th, 2023, knowing and having reason to know that Crystal Quinn was represented in the matter by another attorney, Gerace Attorney 1, caused an unwitting attorney, attorney two, to communicate with Crystal Quinn without the consent of crystal Quinn's attorney, offered to represent Crystal Quinn in the matter in which Crystal Quinn had already had an attorney and, three, offered to represent Crystal Quinn because Gerace Attorney 1 was, quote, concerned that the feds might be trying to intimidate Crystal Quinn or

U.S. v. Gogolack, et al. - 23-CR-99

even just bring Crystal Quinn in for questioning.

That was in February of 2023.  Now let's go to the next page.  This is Page 15 of the second superseding indictment, Paragraph 18.  Quote:  "On or about March 13th, 2023, individuals unknown to the Grand Jury placed dead rats on crystal Quinn's mother's vehicle and in the vicinity of crystal Quinn's residence in Depew, New York."

That's March.  Like I said earlier in the introduction, we list, the government lists Crystal Quinn in May of 2023 -- so just a couple of months later -- that she's a government witness.  In the interim we have detention hearings -- oh, those detention issues, Judge, Mr. Foti didn't tell you this but the fact of the detention, you know, motions to reopen detention hearings and judgments related to the detention issue, those are all alleged in the indictment.

And so when the defense is telling you, Judge, there's all of this information that the Grand Jury, like, obviously didn't hear if they found Paragraph 25, they're allegations in the indictment that directly undermine that speculation.

On that note, Judge, speculation does not equate to a particularized need to overcome the presumption of regularity that prosecutors aren't committing misconduct in front of the Grand Jury.  If it was, as here, there would be no presumption of regularity.  That would be a dead letter, it wouldn't mean anything.  If all a defense attorney had to say

U.S. v. Gogolack, et al. - 23-CR-99

is, oh, we think that the government didn't put in particular information that we think is exculpatory or undermines their theory of how something was circumvented or obstructed.

First of all, we don't have an obligation to put *Brady* in but my point is that that speculation, which is inconsistent with the allegations in the indictment, does not a particularized need make. There were other things that Mr. Foti said with respect to Miss Quinn and I just kind of, I want to address them in brief fashion, your Honor, because I think the core reason why the motion should be denied I've already addressed.

But Mr. Foti represented to your Honor that basically all of Miss Quinn's initial statements to the FBI were exculpatory. I just wanted to note for the record, your Honor, that in her initial conversation with the FBI, Crystal Quinn, said she was afraid of the outlaws, that's inculpatory. That is not an exculpatory statement. And so to come before your Honor and suggest that, oh, you know, Crystal Quinn was given nothing but good evidence for the defense, it's just not consistent with the facts of this case.

**MAGISTRATE JUDGE MCCARTHY:** Okay, anything else on that issue?

**MR. CHALBECK:** May I just have a moment to review my --

**MAGISTRATE JUDGE MCCARTHY:** Sure. Sure.

U.S. v. Gogolack, et al. - 23-CR-99

**MR. CHALBECK:** -- notes, your Honor?

**MAGISTRATE JUDGE MCCARTHY:** Sure.

**MR. CHALBECK:** And confer with counsel.

(WHEREUPON, there was a pause in proceedings.)

**MR. CHALBECK:** Judge, I have a few points but I think AUSA Tripi has something that is more germane to the prior conversation and so I'm going to cede the floor for now to him.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. TRIPI:** Just to kind of jump off and sort of bolster the point I made to you the moment I chimed in.

If you look at the indictment, Judge, paragraphs -- so Pages 16 and 17, if you go from Paragraphs 24, 25, 26, 27, so answering your question, by that point, by the time they're filing the witness list, their own witness list with the government's witness, Miss Quinn named on theirs, that's a couple of weeks before Mr. Ermin goes and visits Gerace. So they have the government's witness list, a summary of her testimony, they presumably reserved their right to call any witness that's on the government witness list but by giving Gerace his own witness list and having her name on it, there's, there's, the Grand Jury could find there was circumvention at play because now Paragraph 29 on July 6th, Ermin visited Gerace in person at the Niagara County jail.

So right in the indictment there are Grand Jury

U.S. v. Gogolack, et al. - 23-CR-99

findings. This isn't just a prosecutor making an argument to a court. These are findings of the Grand Jury.

**MR. CHALBECK:** Judge, on that note, I just want to I want to make a few more comments.

One, you know, to the extent that the defense claims that there must be like prosecutorial misconduct because the government's theory is illogical, I think there clearly is logic to the government's theory and to the Grand Jury's findings. And the Grand Jury's findings in particular owe deference, especially whereas, here, the defense's argument is, is just premised on inaccuracies that are rebutted by allegations within the indictment. And so I think, you know, just on that basis alone, the motion could be denied.

I also, though, want to comment on, you know, on Mr. Foti's representations to the Court that, you know, the government didn't deny outright that it lied to the Grand Jury, that must be indicative of the government covering something up. We all know that there's been mudslinging in this case and related cases and when the government wrote a brief and -- filed a brief had it published, it was trying to stay out of the mudslinging by emphasizing the legal standards and not necessarily delving into these factual arguments that in our view are appropriate for a jury which is what we, what we heard.

To the extent that the Court needs to hear the

government's representation in response to Mr. Foti as to these -- this next chapter of prosecutorial misconduct allegations, we unequivocally, like, deny those allegations should it be made --

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. CHALBECK:** -- or should it need to be made.

**MAGISTRATE JUDGE MCCARTHY:** Okay. We good?

**MR. CHALBECK:** I would otherwise just rest on my brief, Judge.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Mr. Foti, just very briefly if you want to say anything else. I think I have your position, I have the government's position.

**MR. FOTI:** Judge, I think you understand my position. If they say that the way to circumvent the protective order is by revealing government witnesses that were already revealed months earlier, there is something fundamentally flawed about what was presented to the Grand Jury to come to that conclusion particularly because there is so much that is clearly presented to the Grand Jury under a lens. And I just, to reply to what was said, paragraphs 17 and 18, there's, you could pick apart each of these paragraphs, Judge, and I had zeroed in on Paragraph 25 when I made these arguments earlier and when collectively we filed as part of a joint motion, but Paragraph 17, Judge, the idea that -- they're saying, well, Gerace Attorney 1 had another attorney

U.S. v. Gogolack, et al. - 23-CR-99

reach out to Miss Quinn when she was represented by counsel, no evidence establishing Gerace Attorney 1 knew that she was represented by counsel. There's so much missing here that they, they ask for these illogical leaps, they're not premised on evidence, they're just premised on a narrative the government wants to be able to present to a jury.

And I know I'm getting away from the original point which is applying that strategy throughout this indictment and zeroing in on Paragraph 25. They led a jury to falsely conclude there was a violation of an order of protection and they presented arguments here, Judge, that I know you can analyze and say that doesn't really hold up with anybody who understands what the provisions of the protective order preclude. If the protective order precluded putting a witness on a defense witness list, they would have said so. It didn't say that. That's an imaginary theory that the government's come up with saying that, one, there was a circumvention of the protective order and, two, the provisions that were circumvented was revealing a government witness. A government witness, the government had revealed themselves only months earlier.

**MAGISTRATE JUDGE MCCARTHY:** Okay. I think I have the parties' positions. We've got other issues we've got to address today so my ruling is going to be as follows: Criminal Rule 6(e)(3)(E) states that the Court may authorize

U.S. v. Gogolack, et al. - 23-CR-99

disclosure at a time and a manner and subject to any other conditions that it directs of a Grand Jury matter, sub (2), at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the Grand Jury.

I emphasize the word "may" here. I'm not drawing any conclusions as to whether there was any impropriety. I don't know. But focusing again only on -- and I've read the other allegations, the factual allegations but I still have trouble with how the Grand Jury was able to -- I'm not addressing this in terms of whether there's evidence to support it, I'm addressing it in terms of how was the jury instructed so that they could make this finding.

So I am going to direct that the Grand Jury minutes be given to me for my in-camera review.

Mr. Foti, I know you've asked that you have access to it, too. Not at this point because I think I have enough to make my own determination as to whether or not further disclosure is appropriate. I may conclude that I don't think there was any impropriety. I would indicate that to Judge Vilardo, if I conclude that there may have been. We'll see where we go from there. But for now that's my ruling.

All right.

**MR. TRIPI:** Judge, it would be our intention, just to clarify, we intend to give you all the Grand Jury transcripts

U.S. v. Gogolack, et al. - 23-CR-99

and all the exhibits underlying the transcripts.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. TRIPI:** If there's more than just the testimony of the witnesses and the evidence, I'm sure you'll clarify for us what you want.

**MAGISTRATE JUDGE MCCARTHY:** Yeah, I may ask you to point me to.

**MR. TRIPI:** We'll give you everything that we have. If there needs to be more ordered, I assume you'll let us know.

**MAGISTRATE JUDGE MCCARTHY:** Yeah.

**MR. TRIPI:** Okay.

**MAGISTRATE JUDGE MCCARTHY:** I may ask you to point me to certain things or not. But we'll leave it at that for now, okay.

**MR. TRIPI:** Okay.

**MAGISTRATE JUDGE MCCARTHY:** All right. So --

**MR. CHALBECK:** I think we're at search warrants.

**MAGISTRATE JUDGE MCCARTHY:** Yeah, let me get my table of contents again.

Yeah, Paragraph E.

I've reviewed the parties' positions in that regard and it seems to me that the defendants are entitled to know and I think they -- correct me if I'm wrong -- they already have been advised of the warrants themselves, correct?

**MR. COOPER:** Correct.

U.S. v. Gogolack, et al. - 23-CR-99

**MR. CHALBECK:** That's correct.

**MAGISTRATE JUDGE MCCARTHY:** So then what was searched whether it be a premises search or vehicle swab or whatever. I think they're entitled to know that so that they can determine whether they have an interest that would enable them to make a motion to suppress the relevant privacy interest or standing. If they don't have such an interest, I don't see why they're entitled to it.

But assuming that they have been properly advised of all of the warrants that are at play, I'd like to hear from some defense counsel as to why they then shouldn't be required to submit an affidavit of standing. And, for example, I believe it was Mr. Hinkle's submission, he said that a certain premises and a certain phone number -- in the submission he recognizes as his. So why can't he just submit an affidavit saying I had an expectation of privacy in that premises or that phone number and we'll take it from there.

Anybody want to be heard?

Mr. Morrissey.

**MR. MORRISSEY:** Thank you, Judge.

So I agree with the government that they have discovered I think there were about 32 by my count search warrants, maybe I'm off by one or two in discovery. We have made a limited request for certain search warrant application material. I also want to be clear that we are not requesting

106

U.S. v. Gogolack, et al. - 23-CR-99

all the search warrant application material.  What we did is we went through the search warrants and only requested the search warrant application material for which we believe that Mr. Gogolack does have standing for.

I don't believe that there is a rule or a binding precedent from the Second Circuit that says at the non-dispositive stage just to get the warrant application material, that the defendant need to submit an affidavit from himself establishing standing.  Mr. Gogolack, he has a Fifth Amendment right to silence and I don't think he should be put in a position where he needs to choose at this stage between the Fourth and Fifth Amendments.

We have made a request only for the ones that we believe that there were standing.  We have provided specific facts for why we believe that standing exists, included in the motion, included in discovery, included in exhibits we've submitted.  Those facts haven't been rebutted.  They haven't been contested.  Instead I think what we've had is this artificial barrier put up of a need for a standing affidavit that exists much later, at the dispositive stage where we're at the actual motion to suppress.  We are before that.  I think that's a Kee difference that the Court needs to, to consider is --

**MAGISTRATE JUDGE MCCARTHY:**  Well, let me just ask -- and this is for government as well -- because I have a general

U.S. v. Gogolack, et al. - 23-CR-99

question.

Based on my own experience, it seems to me but having read the government's cases, I take a different or at least gave me pause -- but in many cases in front of me, in fact, my scheduling order usually says that if you make a motion to suppress, it will not be considered unless you submit with the motion an affidavit of standing which means you already have the application. So, why isn't that common practice at play here? I mean, we do that all the time. You're looking at --

**MR. CHALBECK:** Judge --

**MAGISTRATE JUDGE MCCARTHY:** -- at me crazy --

**UNIDENTIFIED SPEAKER:** Are you look at me, Judge?

**MR. CHALBECK:** Yeah --

**MAGISTRATE JUDGE MCCARTHY:** Pardon?

**UNIDENTIFIED SPEAKER:** I didn't know who you were looking at.

**MR. CHALBECK:** Judge, I think off -- at least in my experience, and this is my understanding of the federal practice in other judge's chambers or courtrooms, the affidavit of standing is provided by the defense to the government.

**MAGISTRATE JUDGE MCCARTHY:** In connection --

**MR. CHALBECK:** We then consider whether the affidavit establishes standing. If it does establish standing, then we

U.S. v. Gogolack, et al. - 23-CR-99

turn over the search warrant application materials to the defendant. If in our view it doesn't, then we litigate standing before the Court.

So this happened actually in this case with respect to defendant Scott Barnes. Scott Barnes had filed an affidavit of standing. I didn't think that the defendant established standing. He did not state a subjectively and objectively reasonable interest or expectation of privacy in the Outlaws clubhouse. It went before Judge Vilardo. Ultimately Judge Vilardo had an oral argument on the issue of standing and this is all before we turned over search warrant application materials to Scott Barnes. I don't think that we ever did. He ended up pleading guilty.

Judge Vilardo had denied his motion for the application materials at the conclusion of the oral argument precisely because on the basis of the affidavit that he submitted, it did not rise to that level of an objectively reasonable expectation of privacy. So I think what your Honor is alluding to is probably like a practice that occurs behind the scenes oftentimes between government attorneys and defense attorneys.

That happened in this case already. Mr. Dell had supplied an affidavit of standing with respect to his client, Mr. Roncone. We reviewed that affidavit. We thought that, you know, this does create standing for the premises

U.S. v. Gogolack, et al. - 23-CR-99

searched.  We supplied Mr. Dell with a redacted search warrant application.  Similarly Mr. Ermin filed an affidavit of standing with his papers.  I've been a little slow to respond to that.  Mr. Muscato graciously has given me a little bit more time to provide him with a redacted search warrant application materials but that's kind of what goes on, I think, behind the scenes.  I want to address, though --

**MAGISTRATE JUDGE MCCARTHY:**  Okay, but -- well, let me --

**MR. MORRISSEY:**  Judge, could I address that because it's my turn to make crazy eyes, I think.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. MORRISSEY:**  I get search warrant applications without providing standing affidavits from this office routinely.  It happened just last week in one of my cases. So, this idea that it's a requirement or a practice that the Court is just not seeing, I don't believe is true.  I disagree with.  It is inconsistent with my experience practicing with the same prosecuting office.  And I think the idea that it happens sometimes, and happens other times or it doesn't happen other times, it undermines this idea that it is a requirement --

**MAGISTRATE JUDGE MCCARTHY:**  Are you sure you don't want to stay now?

**MR. MORRISSEY:**  -- listing --

**UNIDENTIFIED SPEAKER:**  This is riveting but I have my

U.S. v. Gogolack, et al. - 23-CR-99

application.

**MAGISTRATE JUDGE MCCARTHY:** All right. Okay. I didn't mean to interrupt.

Let me just say, Mr. Morrissey and Ms. Chalbeck, maybe what happens is what goes on behind the scenes because I'm not aware of it. All I do know -- and you have verified this -- quite commonly, I'm confronted with a motion to suppress evidence and I say in my scheduling order before the motion's even made if you're going to make a motion for suppression, you have to submit an affidavit of standing. If you don't, the motion will likely be denied so what that means -- and I'm not privy to what goes on before all that happens.

All I do know is I'll get a motion quite often with details as to why the, let's say, search warrant is improper and there will be no affidavit of standing and I usually say, well, then for that reason, I'm going to deny the motion for suppression but what that means is defense counsel has already had the application because he or she is able to make all those arguments. So I don't know why that happens.

**MR. CHALBECK:** Yeah, I can't speak to why other AUSAs do what they do. What I can speak to, Judge, is that in the cases that we cite in our brief, the law practiced by District Courts in this circuit is very clear: A defendant is not entitled to the application materials, which doesn't

U.S. v. Gogolack, et al. - 23-CR-99

prohibit the government from just giving it to them anyway. He's not entitled to the application materials until he's able to demonstrate a reasonable expectation of privacy.

Now earlier Mr. Morrissey had kind of, had raised the issue of, well, my client's Fourth Amendment rights should not be in tension with his Fifth Amendment rights to, you know, not make an incriminating statement. The Supreme Court addressed that issue in United States v. Simmons -- or, excuse me, in *Simmons v. United States* in 1968. There, the Supreme Court held that a defendant's testimony at a suppression hearing to establish standing to object to a search could not be used against him at trial because otherwise the defendant would be required to choose between the Fourth Amendment right against unreasonable searches and seizures and a Fifth Amendment right against self-incrimination. So there's --

**MAGISTRATE JUDGE MCCARTHY:** But it still can be used for impeachment, right?

**MR. TRIPI:** Sure.

**MR. COOPER:** Yes, yes.

**MR. CHALBECK:** My understanding is yes.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. CHALBECK:** But --

**MAGISTRATE JUDGE MCCARTHY:** I have your position. I have the defendant's position.

112

U.S. v. Gogolack, et al. - 23-CR-99

I will say this is one of those issues -- and treatment of release on supervised release is another issue where there was a common practice in this court and then I looked at something, well, maybe the way we've been doing it is not necessarily the way it should be done.  I agree with the government based on the case law that I have cited, I don't find that a routine or otherwise practice in the court stands up to those cases.  I'm not saying it won't happen again if the parties agree.

But, Mr. Morrissey, you say, for example, that your client has a Fifth Amendment right but you also say you've already disclosed enough information for the government to know that he has standing informally, so that seems to me to be a little inconsistent.

I think that I'm interested in -- everybody is interested in moving things along as quickly as possible.  So I don't want any defendant addressing a motion which is not going anywhere because they don't have standing.

So I'm going to say, yeah, if they want to have the application, the search warrant application, they need to submit an affidavit.  Just saying I have a privacy interest in whatever, whether it was a premises or a phone or anything of that sort -- with one exception, there's reference to a vehicle swab.  I don't think that a defendant needs to submit an affidavit to show that he or she has a privacy interest in

U.S. v. Gogolack, et al. - 23-CR-99

their own body.

So I think that should be produced.

But otherwise if the defendants want the search warrant applications, they already have the search warrants, they may have them provided that they file an affidavit of standing.

Let's move on now to the next, okay, I think we're down now.

**MR. COOPER:**  We're at J now, I think, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Yeah.  Yeah, the Rule 12 motions.  Okay, let me just preface this by saying that -- I'm going to ask the defendants again for specifically what they want and why they want it.

Based on my review of the papers, I agree it's not sufficient for a defendant to say, well, give me everything you're going to use at trial.  At least not at this stage. So, I'll hear from defense counsel as to what they need, really need in this regard in order to make their dispositive motions and why they need it.

I'll hear from whoever wishes to be heard.

**MR. BAGLEY:**  Judge, I can lead off again on this issue. So, you know, our argument obviously to begin, is Rule 12 requires upon our request, the government to notice that which it's going to use at trial.  It's obviously separate and apart from Rule 16.  The government's response to our request is we gave you Rule 16 materials that's good enough.

U.S. v. Gogolack, et al. - 23-CR-99

So what we're asking for is for them to identify -- and especially in a case of this magnitude. Maybe in a run-of-the-mill felon in possession case it's not necessary for the government to provide detailed Rule 12 notice but when we're talking about 2, 3, 4 terabytes of discovery and, as I mentioned before, thousands of hours, if not more, of jail calls, it is necessary and that's why we made this application.

So let me be specific, I guess, and I anticipated the Court's question. I think it puts us in a little bit difficult position because the government --

**MAGISTRATE JUDGE MCCARTHY:** Let me just interrupt you for a minute.

**MR. BAGLEY:** Sure.

**MAGISTRATE JUDGE MCCARTHY:** Take me again -- and I apologize there's a lot floating around here -- specific provision of Rule 12 that we're dealing with here.

**MR. BAGLEY:** The specific provision of Rule 12, sure, Judge.

**MAGISTRATE JUDGE MCCARTHY:** Somebody's got it.

**MR. CHALBECK:** Is it (b)(4)(B), Jeff.

**MAGISTRATE JUDGE MCCARTHY:** I'm sorry?

**MR. BAGLEY:** I believe so.

**MR. CHALBECK:** I believe, I don't want to -- you know, don't quote me but I think Jeff is probably referencing rule

U.S. v. Gogolack, et al. - 23-CR-99

12(b)(4)(B).

**MR. BAGLEY:**  That sounds right, Judge.  I don't have it yet.  I can find it.  But I'm going to take Ms. Chalbeck's word for it.

**MAGISTRATE JUDGE MCCARTHY:**  Yeah, it says:  At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence, request notice of the government's intent to use in its evidence in chief at trial any evidence that the defendant may be entitled to discover under Rule 16.

So I guess I got to read the two rules in conjunction with each other.

**MR. BAGLEY:**  Right, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MR. BAGLEY:**  So thank you for that, kind of getting back to the basics there.

So -- and that gives the background to our request, Judge, and the specifics of the request.  What I was going to say, Judge, puts us in a little bit of a difficult position because we have to anticipate what we want that the government's going to give us that we're eventually going to move to suppress.

So I do think that the burden here is a little bit on the government to -- and that's why the rule is crafted in this way -- not for us to say we need this so we can move to

116

U.S. v. Gogolack, et al. - 23-CR-99

suppress it but for the government to say we're going to use this so that we can move to suppress it.

**MAGISTRATE JUDGE MCCARTHY:** Okay. I mean, you already had my prior ruling on the warrants, you will have that. You will be able to, assuming that --

**MR. BAGLEY:** That's right, Judge.

**MAGISTRATE JUDGE MCCARTHY:** -- appropriate standing affidavits are filed, you'll be able to move to suppress that evidence.

**MR. BAGLEY:** Right. So, there's 30, Mr. Morrissey said 32, I believe, search warrants in the case. You know, I don't know how many items were recovered as a result of that. But in each one of these warrants there would be an inventory of that which was searched or taken as a result of the search. So, what we're asking for is an identification --

**MAGISTRATE JUDGE MCCARTHY:** Do you have the inventories?

**MR. BAGLEY:** Do we have the inventories? It's a good question.

**MR. COOPER:** Yes.

**MR. CHALBECK:** Yes.

**MR. BAGLEY:** We do.

**MR. COOPER:** We can go back through and doublecheck.

**MAGISTRATE JUDGE MCCARTHY:** Let me say this. You should be given the inventories, if you don't already have them.

**MR. BAGLEY:** The government says we do, Judge, so let's

assume that we do at this point.

**MR. COOPER:** Judge, I'll circle up. I've done this repeatedly with Mr. Henry who's reached out a few times to ask specific questions about where something's located in discovery. And I get him the Bates number, you know, go through -- maybe it's easier for me to find -- but I go through, find the Bates number range and I send it to him. And we've done that three or four times back and forth.

And, so, if Mr. Bagley wants to reach out and ask where the inventories are, I'll, you know, help him find the Bates ranges for that. Not an issue.

**MAGISTRATE JUDGE MCCARTHY:** Okay. And then, again, if you, on reviewing the inventories you see something that you believe you may have a basis for suppression and your client has an appropriate interest to make that motion, then you can do that.

But I agree that you are entitled to that, not just the warrants but the inventories.

**MR. BAGLEY:** Right, Judge.

And I'm trying -- I'm getting to some place here, Judge, and that's why I'm sorry I'm not able to answer your question directly because it's not necessarily relevant to what I was going -- where I was going, Judge. And where I'm going is I think that the government has to identify within that inventory that which it's going to use. So the inventories

U.S. v. Gogolack, et al. - 23-CR-99

are voluminous and what we're asking is the government to say we searched this residence -- obviously we'll have the search warrant application, we'll have search warrant itself -- the search of this residence yielded X item and we intend to use this item at trial and that way we know it's worthwhile to move to suppress, and that's what Rule 12 requires the government to do.  So, identify within the inventories that which it's going to use.

**MAGISTRATE JUDGE MCCARTHY:**  Mm-mm.

**MR. BAGLEY:**  Any statements by any defendants that it's going to use at trial and any other -- Judge, and again this is where it becomes difficult to guess what the government's going to use and then ask for it -- but any other evidence essentially that the government is going to use at trial.  I realize that that is not specific but, again, that's kind of the position that we're in.

And I think it's a reasonable request because, number one, I've learned offer the course of doing litigation in this case that -- I don't want to say common but I know at least it's been done in Rochester that that Rule 12 notice is requested more often in the courthouse on the other side of the District and that it is provided, and it is -- judges do require the government to provide that specific type of notice.  Not only that, Judge, in my reply papers, I have a case that I think is very similar to this one.  And, again,

maybe this is a different case if it's a simple case that comes before the Court on a regular basis but that is not this case, as we can all agree.

And Judge Feldman in that case spelled out in detail what it is that the government was required to do in order to comply with Rule 12 and cited several cases to support that ruling, cases that are contrary to the cases that were cited by the government in its response papers.

**MAGISTRATE JUDGE MCCARTHY:** Give me your -- what's the docket number of your reply?

**MR. BAGLEY:** Docket number is 430. And it's on Page 2 and 3 of our reply.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Wait a second.

**MR. BAGLEY:** Judge, I can hand you a physical copy if you prefer.

**MAGISTRATE JUDGE MCCARTHY:** Yeah, if you would, that would be helpful. Thank you. Okay. Is that --

**MR. BAGLEY:** Judge, I would just conclude by saying in that case Judge Feldman went so far as to require the government to annotate. There was a lot of audio and video in that case, as there is in this case. He required the government to annotate who was speaking to whom at what point. Because I'm not -- I'm not asking for that.

But I do think that the government ought to be required to identify, especially, Judge -- and the easiest example,

120

U.S. v. Gogolack, et al. - 23-CR-99

the one I gravitate to because it just stands out so much are the jail calls. What jail calls are going to be used.

But that's not the extent of my request, Judge. But I think they ought to -- Rule 12 requires them to identify what evidence they're going to use at this stage of the proceeding. And they're going to argue to you, Judge, that it's too early for that. But that's not what Judge Feldman found and that's not what the cases that Judge Feldman cited found.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. CHALBECK:** Judge, I'll start by distinguishing this case from *Montague* and then I'll go back to the legal principles. So *Montague* involved wiretaps of over 20 phone lines, video footage from several pole cameras, evidence seized from search warrants executed at 20 different locations, as well as 17,000 pages of bank records and 3900 pages of real estate closing files.

Because the pole camera in that case contained hours upon hours of irrelevant footage, Judge Feldman required the government to identify the time and date that each defendant appeared on the pole cameras at issue.

And going back to the framework, Rule 12 is meant to facilitate efficient litigation. It's supposed to provide the defendants notice of what they need to suppress. That decision can make sense. That's hardly the circumstances

here.

And then similarly with respect to the wiretap recordings. You have 20 different wiretap recordings, you don't necessarily know which defendant is speaking at which time. That's not the case here.

Mr. Goglack knows his voice on the phone. There are reports of investigations that detail the phone calls that Mr. Goglack made while incarcerated in Niagara County. They have that information. They know that Mr. Goglack is speaking. To the extent that the other defendants also need to know who's -- am I on this phone call, there are reports of investigation that can guide that analysis.

It's unnecessary, you know, here to apply the logic of *Montague* when *Montague* involved, I would say, I would proffer way more evidence than this case. We don't have 20 wiretaps, for instance, we don't have 3900 pages of real estate closing files or 17,000 pages of bank records, that's not at issue here. And so I don't think that *Montague* is at all on all fours with this case.

Going back to the fundamentals, I'm going to quote from *United States v. Barret* which is an Eastern District of New York decision. It's 824 F.Supp. 2d 419. And this is at 459 through 60. Rule 12(b)(4)(B) is not designed or intended to be used to obtain more specific discovery than that provided by Rule 16, nor is it designed to aid the defendant

U.S. v. Gogolack, et al. - 23-CR-99

in ascertaining the government's trial strategy.  That legal proposition directly refutes the basis of Mr. Bagley's request here.  He said to your Honor, himself, that he thinks this does need to be more specific than the discovery provided Rule 16 and we need to know what the government intends to use at trial.

But what you didn't hear is the fundamental reason why we have Rule 12 notice to begin with, which is that it has to be necessary to file the dispositive motion.  It is not necessary --

**MAGISTRATE JUDGE MCCARTHY:**  Well --

**MS. CHALBECK:**  -- to --

**MAGISTRATE JUDGE MCCARTHY:**  -- different kinds of dispositive motions but it has to be necessary in order to have an opportunity to move to suppress evidence.

**MS. CHALBECK:**  Right, that's what I -- I misspoke --

**MAGISTRATE JUDGE MCCARTHY:**  Right, yeah.

**MS. CHALBECK:**  -- Judge, but it needs to be necessary --

**MAGISTRATE JUDGE MCCARTHY:**  But I mean it's even narrower than --

**MS. CHALBECK:**  Yes, it facilitates the efficient litigation of a case.  It enables them to make an informed judgment:  Do I want to suppress jail calls.

They have jail calls, they have reports of investigations about the --

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:**  Well, well --

**MS. CHALBECK:**  -- incriminating statements.

**MAGISTRATE JUDGE MCCARTHY:**  Let me ask just a general question and, again, not to get into the merits of suppression but aren't jail calls normally not private?

**MS. CHALBECK:**  Yes, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Other than with an attorney.

**MS. CHALBECK:**  Yes, Judge.  And I don't, I don't want to get into the merits --

**MAGISTRATE JUDGE MCCARTHY:**  No, I'm --

**MS. CHALBECK:**  -- because that's not briefed, it's not before the Court.

**MAGISTRATE JUDGE MCCARTHY:**  No, I understand.  But it's just --

**MS. CHALBECK:**  They also know there were guns and drugs found in Mr. Goglack's home.  They know that there's incriminating evidence on Mr. Goglack's phone.  They know that there's DNA analysis in this case.  They have the information that they need to suppress.  That information came through the Rule 16 discovery.

And so I would direct the Court back to the legal propositions embraced in *Barret* and embraced in practically every other court in the Second Circuit.  *Cobb* is one of them.  Chief Judge Wolford issued the *Cobb* decision in that case.  She relied on the same principles that I'm discussing

124

U.S. v. Gogolack, et al. - 23-CR-99

here that are cited in our brief.  I cite *Cobb*.  Similarly in *Castricone*, I think -- no, no, no, excuse me, *Green*.  Recently in *United States v. Green*, Judge Roemer -- this was in March of this year -- relied on those same principles to deny the kind of expansive Rule 12(b)(4)(B) notice that Mr. Goglack is requesting here.

So the, the sum of case law counsels overwhelmingly in favor of denying this motion.  They can't proffer to your Honor a good faith basis as to why they need more specific notice to file a motion to suppress when they know full well that drugs were discovered in the house, drugs were discovered on the phone.  DNA analysis is relevant to this case.  There are incriminating statements that their client made in recorded jail calls.  They have all the information that they need through the Rule 16 discovery to file the motions necessary.

**MR. BAGLEY:**  Judge, to respond to that.

**MAGISTRATE JUDGE MCCARTHY:**  Yeah.

**MR. BAGLEY:**  So two things.

Number one, Ms. Chalbeck attempted to distinguish the Judge Feldman case by suggesting that our case has less evidence in it.  I've told you how many hours of jail phone calls there are, whether or not that's going to be -- whether or not we're going to have, whether or not the Court's going to grant a motion to suppress on that or not is obviously a

U.S. v. Gogolack, et al. - 23-CR-99

different matter.  But we have to listen to those calls in order to properly defend the case.

And so what we're asking simply is for the Court, or for the government to identify which of those calls it's going to use so that we can focus on those calls and make a motion to suppress.  There are -- I'm counting, Judge, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 -- 18, 21, 23, 25ish devices that were seized as a result -- obviously not all those are Mr. Goglack's.  But among all the defendants there's 25 devices that were seized.

So we're asking the Court to order the government to identify which of the evidence from those phones -- which each contain, as the Court knows how much data a phone can, or a device can contain -- to identify which of those items from the phones it's going to use.

So it's, it's not correct to claim that this is distinguishable from *Montague*.  It is, if anything, Judge, there's more evidence here than was at play in the Judge Feldman case.

And that leads to the second point.  I'm going through -- the government wants you to believe that this is settled law and that we're asking the Court to do something that no other court has done.  After I've pointed to you this Judge Feldman case and I've pointed to you the cases that he cites which stand for the proposition that we ought to get

U.S. v. Gogolack, et al. - 23-CR-99

this Rule 12 notice that we're asking for.

The government -- I'm looking through the cases it cites in its response to our Rule 12 request. It cites a case from the Eastern District of Virginia from 2011. It cites -- it cites that case again. It cites a case unpublished from the Southern District of Florida. It cites again another unpublished case from the Southern District of New York in 2023. I'm seeing a case from the Southern District of California in 2010.

So, Judge, this is by no means settled law in the Second Circuit that the government wants you to believe. And, if anything, the opposite -- in the Rochester side of this district, the opposite is true.

MS. CHALBECK: Judge, none of those cases, unless I missed them, were from the Second Circuit. Those were all out of Circuit Districts. Eastern District of Virginia, Southern District of California. We're talking Fourth Circuit, Ninth Circuit.

MR. BAGLEY: That's correct, Judge.

MS. CHALBECK: Florida, Eleventh Circuit.

MR. BAGLEY: I'm reading --

MS. CHALBECK: These are all out of Circuit cases. So to then use the fact that they're out of circuit cases from well over a decade ago, sometimes 15 years ago, that have embraced a similar proposition in equating that to meaning

it's unsettled law in the Second Circuit, Judge, I would direct your Honor's attention to the government's briefing which cites Second Circuit cases, published district court opinions in the Second Circuit. Discusses *Cobb*, a decision issued by Chief Judge Wolford. I think those cases are far more persuasive than out of Circuit District cases.

Moreover, no court to my knowledge has positively cited *Montague* for the proposition that Mr. Bagley is urging this Court to adopt today with respect to the 12(b)(4)(B) notice. One court has cited -- I believe it was Judge Roemer -- cited *Montague* favorably for a totally different proposition but no Court has favorably cited this decision. And so I don't think that it stands as, as Mr. Bagley is purporting it to stand as.

**MR. BAGLEY:** Judge --

**MS. CHALBECK:** I want to --

**MAGISTRATE JUDGE MCCARTHY:** One at a time.

**MR. BAGLEY:** Can I --

**MAGISTRATE JUDGE MCCARTHY:** One at a time.

**MR. BAGLEY:** I'm sorry, I'm sorry.

**MAGISTRATE JUDGE MCCARTHY:** Yeah, go ahead.

**MS. CHALBECK:** Additionally, Judge, what I'm hearing from the defense, I think what the gravamen of the issue is not we don't know what motions to suppress to file, the gravamen is they want to have an exhibit list. They want to

128
U.S. v. Gogolack, et al. - 23-CR-99

have an exhibit list before we have a trial date, before we've gone through dispositive motions.  They want to know what the government's proof is going to be at trial before we are even at the stage of the case to prepare the case for trial.  We're not there yet.  And that's essentially what they're asking.

What Mr. Bagley cannot proffer to your Honor is that I need to know which specific jail calls my client made in order to file a motion to suppress jail calls which, as your Honor indicated, that's a, that's a high hurdle that he's going to have to overcome.  It doesn't matter how many hours of jail calls there are with Mr. Goglack on the line to file a motion to suppress.  It doesn't matter which photos or videos or text messages from Mr. Goglack's phone that are incriminating exist.  It doesn't matter how many of those exist for him to file a motion to suppress the contents of the phone.

Some of these contents have been, have been discussed in detention hearings, evidence from the home was, was -- one of my first weeks here at the U.S. Attorney's Office I saw Mr. Cooper present a PowerPoint for your Honor that contained photos of some of the evidence seized from the home.  He knows about it.  He doesn't need an exhibit list from the government in order to file a motion to suppress.  So, he's trying to turn Rule 12 into something that it's not.  It's

U.S. v. Gogolack, et al. - 23-CR-99

not intended to give the defense a preview of the government's trial strategy. It's a notice mechanism. And he has all the notice that he needs through the Rule 16 discovery to file whatever motions to suppress he wants to.

**MAGISTRATE JUDGE MCCARTHY:** Okay. And, Mr. Bagley, I don't think you were directly involved in this but I'm looking at. Mr. Cooper yesterday or two days ago mentioned in an email that the parties -- some of the parties had had some discussions about resolving some of the issues and that I'm looking at the reply memorandum docket 431, and in particular, footnote 2 on Page 4, apparently there's some type of software that may help to, at least with respect to calls, may make this a little bit more digestible.

Can you elaborate and if that bears on this issue?

**MR. COOPER:** Will you give me one second, Judge.

**MAGISTRATE JUDGE MCCARTHY:** I'll give you two seconds.

**MR. COOPER:** Thank you.

**MR. FOTI:** Judge, while they're looking that up, what I think that's a reference to is in a meeting that Ms. Meyers Buth and I had with the government trial team, we discussed what the discovery platforms they use to review their discovery and they mentioned Everlaw and Everlaw is a, in most of our opinions, a far superior system to Casepoint, which is up to this point what has been provided for defense counsel in terms of eDiscovery. When -- part of the

U.S. v. Gogolack, et al. - 23-CR-99

discussions from that meeting was also related to jail calls even though it was focused on concerns that Mr. Gerace had primarily.

The question was posed of whether Everlaw can transcribe the jail calls and the government followed up after that meeting, although they haven't been utilizing that mechanism up to this point.  My understanding is they determined that the program and the platform can provide rough transcripts which are by no means necessarily a hundred percent accurate but at least provide some documentation of what was said during the course of the calls.  So I think that's what's in the transcript.  I just jumped in and (indiscernible) correct me if I left anything out but I was trying to find of fill in the blanks there.

**MS. CHALBECK:**  So in the -- we did have a meeting.  It was with counsel -- one of the counsels for defendant Goglack, Ms. Kubiak, who I don't think is here today, and then with Ms. Meyers Buth and Mr. Foti for Mr. Gerace.  I would say that the Everlaw portion of it, that's a document review platform that the government uses to review discovery in some cases.  It came up not so much in the context of this Rule 12 discussion, Judge, as in the context of some of the complaints that I think we'll probably get to later this afternoon about opening multiple PDFs and how time-consuming and difficult that is and expanding columns in Microsoft

U.S. v. Gogolack, et al. - 23-CR-99

Excel and how time-consuming and difficult that is.  And I suggested that one of the ways it's a little easier is to use a document review platform.  What Mr. Foti put in his footnote that they don't currently have access to it, that's not like it's top secret.  They could buy it or the Public Defender's office could provide it for them.  So it's not proprietary.  I have no control obviously over what attorneys choose to use to review their discovery.

I explained that to them in the hope that it was helpful, and it seemed during the discussion like they thought it was helpful because they told me they were going to advocate to get that program for the PD's office and for the CJA Panel attorneys in certain cases.

I don't know that it really resolves this Rule 12(b) issue because as Mr. Chalbeck just pointed out, what I think this motion really is, is trying to get us to create an exhibit list months and months and months before the trial court would otherwise require us to do so.  In order to file dispositive motions, they need to know what evidence was seized from where, what recordings we have, and they know all of that.  They have the discovery and they have an index of the discovery and they can file motions without an exhibit list.  Forcing the government to create a trial exhibit list at this stage of the case before we've even gotten to the point of dispositive motions is putting the cart before the

U.S. v. Gogolack, et al. - 23-CR-99

horse and it's, it's limiting our proof at an early stage of the case unnecessarily.  It's asking us to say, here's are the things we're going to use.

And you can imagine, Judge, a year and a half from now if the case is going to trial and we've identified another jail call that was relevant in that intervening 18 months, they're going to cry foul and say, hey, 18 months ago you told us you weren't using that call, you gave us a list.  And that's why the government doesn't want to do that.  We've provided meaningful Rule 12(b)(4) notice by saying you have Rule 16 discovery, we intend to use that at trial.  And they can move to suppress whatever they choose to move to suppress that's what we're here for.

**MAGISTRATE JUDGE MCCARTHY:**  All right.

**MR. BAGLEY:**  Judge, Judge, I'm sorry.  I just have to respond, and I tried to before and it would have maybe made more sense at that point.

But to reiterate where the law is on this, Judge, the cases that I was reading from that Ms. Chalbeck said were not good cases came from the brief that they filed.  So I was arguing that the cases that were filed by the government, cited by the government in a brief to you were not persuasive, not from this district, old, Ms. Chalbeck reiterated my point.  She thought I was reading from my brief.  I was reading from her brief.  So the cases that they

cite, they apparently agree are not persuasive.

**MS. CHALBECK:**  Judge, the cases -- we cite so many cases for the proposition that Rule 12(b)(4)(B) does not require the government to specify the pieces of discovery that it intends to use at trial from the Second Circuit, I think other circuits.  We discussed this at length in our brief so I don't think it's proper at all to suggest that the government's brief is lacking on Second Circuit or District Court authority within the Second Circuit.

I direct the Court's attention to *Cobb* which Chief Judge Wolford issued.  *Castricone* which is another WDNY decision. I would direct the Court's attention to *Vilar* which is a published -- excuse me, a published Southern District of New York decision.  I already cited *Barret* which is a published Eastern District of New York decision.

One case raised in a reply for the first time, for the first time in reply.  They had months, Judge, they had months to file their non-dispositive motions and they raised *Montague* in the reply brief and then rest entirely on that case, one case raised in reply that has no positive authoritative citations to the proposition that they stand for or that they're claiming it represents.  No other court has agreed with that case.  That's not a persuasive argument in light of the sheer volume of cases that we've cited in our brief and discussed at oral argument.

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:**  Okay.  This is one discrete issue among many and I want to move on.

So what I'm going to say with respect to this is I'm not definitively deciding it today but I'm going to make the following suggestion.  One of the -- and I alluded to it before -- it sounds like there's a huge volume of jail calls, is that right?

**MR. BAGLEY:**  Yes.

**MR. COOPER:**  There were a lot of calls that were collected and turned over, Judge.

**MAGISTRATE JUDGE MCCARTHY:**  Right.  It seems to me that -- you know, I have discretion to determine the order in which we're going to decide issues.  It seems to me that the defendants are able to move to suppress jail calls if they have a basis for doing so.  Again, I'm not prejudging but my experience is that most jails have a notice that the calls are not private, other than attorney-client calls obviously.  And I would hope that the government is not seeking to introduce evidence of any attorney-client call.

But that issue can, can be resolved in a suppression motion without having to delve into specific calls.  And then we can decide, once that issue's resolved, what's the remaining universe of things coupled with suppression on the other search warrants, et cetera, provided that the defendants submit affidavits of standing.  And then we'll see

U.S. v. Gogolack, et al. - 23-CR-99

where we go from there.

Because, again, Rule 12 is not a discovery motion. It's a motion aimed at enabling the defendants to move to suppress evidence. So, if they don't have a basis for suppressing certain types of evidence, let's get that issue resolved -- maybe they do, maybe they don't -- and then we can see what the remaining universe of things is.

I may set a deadline down the road for more detailed Rule 12 discovery, I may not but I don't think I need to do that right now. So I'm going to leave it at that. Okay.

So I'm neither granting nor denying the defendant's Rule 12 motions. I'm tabling it pending further suppression motions. Okay. So that is item J.

Item K, why do we need to decide that for purposes of dispositive motion for making -- to enable the defendants to make dispositive motions?

(No response.)

**MAGISTRATE JUDGE MCCARTHY:** Let the record reflect that there is silence all around so I'm going to defer that.

**MR. BAGLEY:** Judge, we just rest on the papers on that.

**MAGISTRATE JUDGE MCCARTHY:** Again, given the volume of papers, Jeff, I just need to have some argument and I apologize but I'm not master of every single paper that's been filed. It strikes me, though, that that's something we don't need at this point. You may be entitled to it down the

136

U.S. v. Gogolack, et al. - 23-CR-99

road.  All right.

*Jencks* Act material.  Item L.

The government admits that it's going to provide *Jencks* Act material.  This is just a question of when they're going to do it, right?

**MR. COOPER:**  Judge, that's right.  And this is a motion -- I think in every omnibus motion that I've received in every case I've worked on since I've been at the U.S. Attorney's Office, there's a motion for early disclosure of *Jencks* Act material.  It's just a part of the standard omnibus motion.  And I've never seen it granted before.  I've done four trials in federal court here and in every one of those four federal trials, the trial court set a schedule where the parties agree about when *Jencks* is going to be produced.  The reason that that's the practice is because the Court can't order the government -- because there's a statute in place -- to provide it earlier than statute requires.  So to avoid undue delay, we all get together and agree on what the timing will be of that.  It's usually several months out in larger cases like this.  That's something that happens in the leadup to trial once you have a trial date.

Early disclosure of *Jencks* Act material now before dispositive motions even have a scheduling order set is, in my experience at least, it's unheard of.  It's a motion that's filed every time but in my experience it's a motion

U.S. v. Gogolack, et al. - 23-CR-99

that's denied every time because it's handled by the trial court.

**MAGISTRATE JUDGE MCCARTHY:** Okay, defense counsel. Again, only focusing on what you need to make dispositive motions. I'm not saying any of the motions are not going to be decided. I'm just focusing today on what you need to have in order to make your dispositive motions.

By the way and this gets toward the end, but in every criminal case and in this case, I always remind the government of its *Brady* obligations and, in fact, my disclosure order, my Rule 5(f) Disclosure Order which I issued in this case back in, I think, January or February of '24 and the government agreed, says that you will promptly disclose any *Brady* material that you become aware of and I know we're dealing with a large volume of materials and you may not immediately be aware of the Brady implications of every piece of material but that's on and you have an obligation. I'm not defining what is prompt but at some point if there's Brady material that either was not disclosed at all or was not promptly disclosed, you know, you're on notice of what your obligations are. So I would think that you ought to err on the side of sooner rather than later in terms of making *Brady* disclosures that you're aware of.

**MR. COOPER:** We appreciate that, judge.

**MAGISTRATE JUDGE MCCARTHY:** I'm not saying that you are

138

U.S. v. Gogolack, et al. - 23-CR-99

aware of anything that you haven't disclosed or not but I'm just going to leave it at that.

MR. COOPER:  Understood.  Thanks, Judge.

MAGISTRATE JUDGE MCCARTHY:  All right.  Okay.

Informant identities.  Again, is this an issue that I need to decide at this point?

(No response.)

MS. CHALBECK:  We don't think so, Judge.

MR. BAGLEY:  Judge, for Mr. Goglack's purposes I know Mr. Morrissey has some Rule 16 issues that he would like to address but in terms of going through the rest of this, Mr. Goglack does not believe that any of that is necessary for rule -- for dispositive motions.

MAGISTRATE JUDGE MCCARTHY:  Okay.  Yeah, I'll talk about Rule 16 which is Item W but if we can skip down to that, I would be very pleased.  Unless there's something else that somebody needs to address before --

MR. COOPER:  Just so my notes, I just want to keep accurate notes.

MAGISTRATE JUDGE MCCARTHY:  You don't need to make notes because you're going to have a very accurate transcript that you're going to order.

MR. COOPER:  Understood, Judge, but T and U are two that you had previously identified that we would discuss today but for right now, we're going to defer on those, is that

U.S. v. Gogolack, et al. - 23-CR-99

accurate?

**MAGISTRATE JUDGE MCCARTHY:**  Yes.

**MR. COOPER:**  If we're skipping to W, okay.

**MAGISTRATE JUDGE MCCARTHY:**  I'm skipping all the way from N right down to W.

**MR. COOPER:**  Understood, thank you.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.  All right.  John, whoever wants to be heard on Rule 16.

And, again, that portion of Rule 16 that is necessary for you to make your dispositive motions.

**MR. MORRISSEY:**  So, I guess I'm going -- I'm sorry.  If the Court will just indulge me for a second.

**MAGISTRATE JUDGE MCCARTHY:**  Sure.

**MR. MORRISSEY:**  I just am kind of going through my sheet.  I think there's some small outstanding Rule 16 but I don't think it bears directly on, on suppression issues.

**MAGISTRATE JUDGE MCCARTHY:**  On dispositive issues.

**MR. MORRISSEY:**  On dispositive issues.  The one, the one thing that I did want to mention is something that we asked for which was evidence related to Mr. Gerace's prior prosecution.  I'm inferring from the government that they were, that they were objecting to producing some of it, just based on some of the Bill of Particular response, I don't know if the court wants to hear argument about that.  Again, it doesn't pertain directly to suppress -- or to dispositives

U.S. v. Gogolack, et al. - 23-CR-99

that I'm thinking of at the moment.

**MAGISTRATE JUDGE MCCARTHY:**  If it doesn't, I'd like, with respect I'd like to defer, again.

**MR. MORRISSEY:**  Then I'm happy to defer.  That's kind of, I guess, the only one that has like a little bit more teeth to it so.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. COOPER:**  So, Judge, the one thing I would add to that -- and I appreciate Mr. Morrissey agreeing to kick that can down the road so we can wrap up today.

The one thing I would note is, like I mentioned in an email to the Court and you brought up, we had a meeting where we were able to have some, I think, fruitful discussions about discovery materials and the government is certainly interested in continuing to engage in those discussions.  I found it helpful when we sat down with Mark and Cheryl and Fonda and I hope they found it helpful as well but we were able to kind of discuss what exists, what doesn't exist.

And so if there are specific things, I would just, you know, make a record that counsel has my phone number.  They know my email address.  I'm open to engaging in discussions like I have with Mr. Henry about where things are contained in the production and I'm also happy to discuss if there's specific things that they're looking for.  We can have those discussions off line.  We don't have to file everything, you

141

U.S. v. Gogolack, et al. - 23-CR-99

know, as a contested motion with the Court and if we can't come to an agreement, then we can bring it to the Court but.

**MAGISTRATE JUDGE MCCARTHY:**  I --

**MR. COOPER:**  I would just encourage that.

**MAGISTRATE JUDGE MCCARTHY:**  I, I, I heartily endorse that suggestion.  I mean, I think the more the parties can work together on resolving the issues, the better.  Whether that entails getting together on some software that might be helpful to everybody or what but I just encourage you all to, you know, communicate with each other.  It doesn't have to be formal, it can be a phone call.  And the less you put on my plate or Judge Vilardo's plate, the better for all concerned. I'm not trying to shirk anything that I need to decide.  But I just strongly encourage that because we all want to get this to a stage where it can be resolved through trial or otherwise.

What I'd like to do today -- oh.

**MS. BUTH:**  Judge, sorry, can I just address briefly the Rule 16 that I think there's agreement on so I can make a record.

**MAGISTRATE JUDGE MCCARTHY:**  Sure.  Sure, sure, sure.

**MS. BUTH:**  Thank you.

So, as several people have noted, we did take the affirmative step of meeting with the government to try to resolve some issues.

U.S. v. Gogolack, et al. - 23-CR-99

My understanding, for the record, is that the government agreed that they will provide us with crystal Quinn's proffers and Grand Jury testimony.

That they will provide us with all of the missing phone subscriber information on the chart that we included in our motion, our original motion, that they will -- and stop me if I'm, you know, got anything wrong -- but they will provide us with Bernard Byrd's cell phone extraction, FBI 302s and audio recordings, and look into whether they have cell phone information for Paul Reslowski.

They agreed to preserve agent's rough notes.

We also discussed the need -- I think Mr. Morrissey alluded to it -- for Mr. Foti and the government to seek relief from the protective order in 19-CR-227 because the rest of us do not have access or --

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MS. BUTH:**  -- about that and so we're at a disadvantage.

And then we also discussed potential *Brady* disclosures and in Mr. Gerace's reply, we attached a chart that I made of crystal Quinn's text messages.  And without getting into the details of that, certainly, I believe there's Brady material as far as her mental health, her drug use, and other things that we've not yet been provided with but I believe we are entitled to.  And if the government needs me to send them a specific list of *Brady* requests, I can do that but I just

U.S. v. Gogolack, et al. - 23-CR-99

wanted to make a record of that.

**MAGISTRATE JUDGE MCCARTHY:**  Okay, thank you.

**MR. TRIPI:**  Can I just chime in very briefly on just --

**MAGISTRATE JUDGE MCCARTHY:**  Yeah.

**MR. TRIPI:**  -- a couple minor parts of that.

On the request for crystal Quinn's proffers and Grand Jury testimony, those -- Gerace does have that material but it's under case number 19-CR-227 and 20-CR-37.  So the Gerace team has all of that.  We'll make sure that the other defense attorneys in this case get her proffer and statements.  And, of course, we have no problem reproducing it to this defense team in this case.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. TRIPI:**  I can forecast we are not going to agree to produce everything that was part of the other Gerace prosecution.  Very simply put, that conspiracy ended three years before the events of this case began and so there's a whole hill of things that don't necessarily relate -- lots of *Jencks* Act material, things like that, the things that are Rule 16 that are material to the defense in this case, we either have produced because it's stuff that we're going to put into evidence or we've agreed, pursuant to that meeting, that Mr. Cooper and Ms. Chalbeck had with Cheryl to produce.

But I don't want there to be a record that reads as though we've agreed to produce in that other Gerace case or

U.S. v. Gogolack, et al. - 23-CR-99

agreed to, you know, rescind the protective orders.  That's not the case.

So, we'll make productions but on that, on those finer points, that there may be some disagreement.

**MS. CHALBECK:**  And, Judge, just before -- I'm sorry, Ms. Meyers Buth, I don't want to interrupt you once you start -- but I just wanted the record to also reflect that in private email correspondence we had indicated that the defense, Mr. Gerace's defense team, specifically Mr. Foti, should be making an application to Judge Vilardo --

**MAGISTRATE JUDGE MCCARTHY:**  Yeah.

**MS. CHALBECK:**  -- in the 19-CR-227 case.

**MAGISTRATE JUDGE MCCARTHY:**  It's his protective order.

**MS. CHALBECK:**  Right.

**MAGISTRATE JUDGE MCCARTHY:**  Right.

**MS. CHALBECK:**  And just so -- for your Honor's edification more than anything else, I want you to know that we've been talking about this off line and that's the course of action that we proposed.  Now I understand that Mr. Foti in his reply brief takes issue with that.  It doesn't appear that your Honor intends to really weigh in on that issue but our position is that, you know, anticipating that we'll likely object and not consent to that but our position is that that application really should be made to the District Court Judge.

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. BUTH:** I don't disagree with that, Judge, but Mr. Foti can't share what he already knows about Miss Quinn's statements with me, and I'm on the team representing Mr. Gerace. And my suggestion was that Mr. Foti and the government together seek relief from the District Court, that makes sense to me.

Also, one thing that we did talk about at the meeting was the government agreed to consider whether it will provide us with acc -- me with access to Mr. Gerace's cell phone that was seized as part of 227. And even though it was seized several years prior to this case, I believe there's information on it that may be relevant at least to the defense in this case and so I just wanted to make sure we had a solid record on that.

**MAGISTRATE JUDGE MCCARTHY:** And has the government agreed to that or not?

**MR. COOPER:** So, Judge, I'm going to, I'm going to, I guess, address the different points that Ms. Meyers Buth made based on my notes and if I missed any, I think she has notes so she could let me know if I miss any.

With respect to Crystal Quinn proffers and Grand Jury testimony, that's been set aside in a folder. My IT department is working on a production to put together with a bunch of the material that I'm about to cover. It should be

U.S. v. Gogolack, et al. - 23-CR-99

going out shortly.  So that's going out.

The missing phone subscriber information that she referenced, in a moment Ms. Chalbeck's going to address that because she's been working on it with them.

The Bernard Byrd phone extraction is going to be going out in this upcoming production based on their request.

When Ms. Meyers Buth references FBI 302s and audio recordings, I wasn't entirely sure what that one was about.  So I would just ask her to clarify so I can respond.

**MS. BUTH:**  Bernard, pertaining to Bernard Byrd.

**MR. COOPER:**  Oh, pertaining to Bernard Byrd.  I believe the 302s and audio recordings have already gone out and I'll find the Bates numbers for her but if they haven't, they certainly will related to Byrd.

The next thing I have is Reslowski.  That phone is going to go out as well in this upcoming production based on their request.

The motion to preserve rough notes, we agreed in writing in our reply so I don't think that needs much more attention.

With respect to the potential *Brady* disclosures that she raises and that are addressed in their reply at 431 on Page 42, the government can't turn over that which it doesn't have.  And so when counsel says her mental health records must have *Brady* information in them.  I don't have her mental health records so I don't know how to respond to that, other

U.S. v. Gogolack, et al. - 23-CR-99

than to say, like, I don't know what her mental health records show, if she had any mental health records because I don't have them.  So we'll take a close look.

There's references to text messages in the cell phone in Page 42 and 43.  The reason that they're able to mention that material is because they've had it for over a year, so I don't understand, I guess, really what it is that they're saying exists that's in the government's possession that they don't have.

**MS. BUTH:**  Okay, I can clarify.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MS. BUTH:**  So, for example, I took the government's response that they didn't have any mental health records to mean that they hadn't interviewed the probation officer who was supervising Miss Quinn because certainly the probation officer had access to mental health records.  And if they were to interview the probation officer and reduced that to writing, I take that to mean they have no report and they've not talked to any witness at all about crystal Quinn's mental health.  Because if they do have that as part of a report, it's not *Jencks*, it's *Brady*.

**MR. TRIPI:**  How is it *Brady*?

**MS. BUTH:**  And it should be turned over.

**MR. TRIPI:**  How is it *Brady*?

**MS. BUTH:**  And so just --

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:** One at a time. Okay, finish.

**MS. BUTH:** Okay. So my point is we have *Brady*, exculpatory. We have *Giglio*, impeachment. And then we have *Jencks* reports. But if you have *Brady* or *Giglio* in a *Jencks* report, you can't hide behind *Jencks* and not turn that over.

So, what I'm asking is for the government to go through all of the interviews that they have, all of the witness statements and if there is any *Brady* or *Giglio* within those statements, to turn those over to us promptly. That's all I'm saying.

**MR. TRIPI:** I have nothing else.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. TRIPI:** I want to circle back --

**MAGISTRATE JUDGE MCCARTHY:** Wait a second. With respect to what Cheryl just said, what's your position?

**MR. COOPER:** So, I don't want to comment when I don't know off the top -- I feel like we could get ourselves in trouble in a case with this many interviews saying something definitively. I don't believe there's a 302 of crystal's probation officer. I'm not positive, though, so please don't call me a liar in two months if it turns out there was one and provide it to you.

**MAGISTRATE JUDGE MCCARTHY:** But you'll look --

**MR. COOPER:** I don't --

U.S. v. Gogolack, et al. - 23-CR-99

**MAGISTRATE JUDGE MCCARTHY:** -- for it?

**MR. COOPER:** What's that?

**MAGISTRATE JUDGE MCCARTHY:** You'll look to see --

**MR. COOPER:** I will look for it. And I heard what she just said now. I don't recall that coming up in detail in the meeting that we had. But I heard what Ms. Meyers Buth says now and we'll take a look and if there's something that we believe needs to be turned over pursuant to *Brady* or its progeny, we'll turn it over.

**MR. TRIPI:** On that score, Judge, with probation, typically the defense makes a request to the Court because probation's an arm of the Court. So if they have confidential files that we don't have where they interviewed Miss Quinn, those are trial motions, Ms. Meyers Buth knows this, we've done this before, she directs that request to Judge Vilardo, probation produces their file to him, and he makes the call. We have no objection to that procedure being followed in this case. And so, I hope that answers your question on Crystal Quinn.

**MS. BUTH:** Yeah.

**MR. TRIPI:** In terms of what probation has or what's in their files, we don't have their files.

I do want to, when it's appropriate, circle back just to the PG Reslowski phone.

I'm not cutting against anything Mr. Cooper represented

150

U.S. v. Gogolack, et al. - 23-CR-99

but that individual is someone who's charged in a separate case represented by a separate defense attorney, Mr. Greenman. So we'll have to just, in terms of their request for his phone, we'll have to do some due diligence surrounding that. We don't have a theoretical objection to it but there might be some privacy interests that Mr. Greenman wants to press on behalf of his client or whatever. We'll work through it.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. TRIPI:** But I just wanted to flag that so it wasn't unsaid moving forward.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. CHALBECK:** Well, with --

**MS. BUTH:** The only reason I brought up probation is because in crystal Quinn's text messages, it's clear that the probation officer was attempting to contact her right before her death. And so, to me -- and I don't know -- but to me, if I'm going to accuse somebody of murdering Crystal Quinn, I'm going to try to see what else was going on around that time and I just assumed they interviewed the probation officer about any mental health or drug testing or things like that.

Obviously, as Mr. Tripi said, I know, I have to, you know, make a motion to the trial court at the appropriate time to get the file. I'm saying if there's anything other

151

U.S. v. Gogolack, et al. - 23-CR-99

than the file that exists, we should have it now.

**MAGISTRATE JUDGE MCCARTHY:** Okay, I think --

**MR. TRIPI:** And on that, there are emails from Lillian Cullen to me that we're going to review we'll make an assessment. I don't think there's *Brady* material. We may have a different view of *Brady*. We might decide we just agree with their analysis and just turn it over or maybe we submit it to the Court because we think it's *Jencks* material but we know, we know now to navigate our responsibilities --

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MR. TRIPI:** -- and will do so.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. CHALBECK:** Judge, just one last comment on the spreadsheet just so that the record is clear on that.

I think Ms. Meyers Buth and Mr. Foti submitted in their initial papers a chart, if your Honor may recall, that indicated, you know, several numbers identified by the last four digits and whether subscriber information was produced in the discovery production. That chart lists several dozen numbers. I've been going through them with the FBI. Just having gone through a spot check of several of them, the discovery does produce a file for many of them labeled subscriber information. When you open that file, it then indicates that the phone is a Tracfone® and that there is no subscriber information, you know, identifying the user of the

U.S. v. Gogolack, et al. - 23-CR-99

phone, subscriber of the phone. But there is a file that includes subscriber information. It's just that the subscriber information doesn't identify the subscriber because it's a Tracfone®.

**MAGISTRATE JUDGE MCCARTHY:** Okay.

**MS. CHALBECK:** And so insofar as we just simply lack information about the identity of that subscriber, there's not really anything that we can do about that.

Having said that, I continue to work with the FBI, I have a meeting with them later this week hopefully, if not later this week, then early next week to see if there's anything outside of the discovery production that they have that might unmask the identity of that phone user but it's just taking a long time for -- I wouldn't say a long time it's just a laborious process, Judge, because we're having to go through all the discovery to identify, you know, subscriber sheets that have already been turned over and that may be, you know, Ms. Meyers Buth and Mr. Foti just overlooked initially or didn't think that that rose to the level of subscriber information but it's just taking a while and when we're complete, we'll definitely correspond with them and other defense counsel.

**MAGISTRATE JUDGE MCCARTHY:** Okay. Thank you.

What I'd like to do today is based on what I've ruled on and/or what we've agreed on is to set a date for dispositive

U.S. v. Gogolack, et al. - 23-CR-99

motions, recognizing that the defendants are going to be getting, if they submit standing affidavits, they're going to be getting some warrant applications which they have to analyze.  And I've got to get and review the Grand Jury material.  I don't know how voluminous that is.

**MR. TRIPI:**  Voluminous, Judge, we'll get right on getting it consolidated to get it to you.

**MAGISTRATE JUDGE MCCARTHY:**  So with that in mind, I mean, I'm thinking of a motion deadline of some time in mid- to late August, if that works for people, unless you all feel it can be done differently.

**MR. FOTI:**  Judge, if that gives the Court enough time to review the Grand Jury minutes, make a determination --

**MAGISTRATE JUDGE MCCARTHY:**  I don't know.

**MR. FOTI:**  -- as to --

**MAGISTRATE JUDGE MCCARTHY:**  I mean -- well, first of all, when will I get them?  Ballpark?

**MR. TRIPI:**  Judge, I don't know -- I would like to have them at least consolidated and ready by early next week to make sure we have everything to get it out the door by the end of next week.

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. TRIPI:**  But I hope there'd be some flexibility there just because it's been a while on the volume and I don't know what other matters people who have the technical expertise to

154

U.S. v. Gogolack, et al. - 23-CR-99

consolidate that stuff have on their plates right now.  So I want to get right on it, I want to get it right to you but --

**MAGISTRATE JUDGE MCCARTHY:**  But I'll be looking at transcripts, right?

**MR. TRIPI:**  You'll be looking at transcripts and then exhibits.  There's at least some -- there's at least one audio recording that you'll get.

**MAGISTRATE JUDGE MCCARTHY:**  I mean, you know --

**MR. TRIPI:**  Video recordings.

**MAGISTRATE JUDGE MCCARTHY:**  -- there may be a lot that doesn't directly relate to the reason that I want to see them.

**MR. TRIPI:**  You'll have them because if you read a transcript and you want to see the exhibit, you'll have it.

**MAGISTRATE JUDGE MCCARTHY:**  Right.  Right.  Okay.

Just so everybody knows, my next month, once again, is criminal duty month, so it's up to you folks how busy I get. You know, I'm usually criminal duty months are tough and we got the summer but I'm still thinking that I could get done with what I need to do quickly enough for us to target a deadline of, you know, mid to late August, if that works for defense counsel for dispositive motions.  If you want to move it up, we can do that but I need to get through that Grand Jury stuff.

**MR. COOPER:**  Judge, the one thing I would say is just,

155

U.S. v. Gogolack, et al. - 23-CR-99

the government's position would be that we don't need to hold up dispositive motions for your Honor to conduct a review of Grand Jury minutes.

**MAGISTRATE JUDGE MCCARTHY:**  Well, except that may relate to a motion that Mr. Foti may want to make or not.

**MR. COOPER:**  Okay.  And so, I guess, if that was one motion that you permit him to bring later.  But dispositive motions in general were supposed to be filed -- up until the back and forth of the Attorney General's comments and then obviously everything went off the rails for a bit -- dispositive motions were supposed to be filed like 14 days from when we were in court.

**MAGISTRATE JUDGE MCCARTHY:**  Yeah.

**MR. COOPER:**  So now we're kicking it four months from --

**MAGISTRATE JUDGE MCCARTHY:**  Okay.

**MR. COOPER:**  Three months.

**MAGISTRATE JUDGE MCCARTHY:**  Well, I just suggested it. I can move it up if I want.

**MR. COOPER:**  Okay.

**MAGISTRATE JUDGE MCCARTHY:**  But the defendants need time if they're going to be moving to suppress.

**UNIDENTIFIED SPEAKER:**  Well --

**MAGISTRATE JUDGE MCCARTHY:**  I guess they've already in a sense briefed the issue of dismissal of counts of the indictment based on duplicity or multiplicity.  They may want

156

U.S. v. Gogolack, et al. - 23-CR-99

to augment that.  They need get the warrant applications that they may want to move against and provided they give you the standing affidavits.

**MR. COOPER:**  Yeah.

**MAGISTRATE JUDGE MCCARTHY:**  So I just want to set a deadline that reasonably works for everybody.  I don't particularly care when it is.

**MR. COOPER:**  Yeah, I guess --

**MS. CHALBECK:**  Judge, why not -- just keeping in mind, like, I think the government had 14 days to respond at length to all of these omnibus discovery motions.

**MAGISTRATE JUDGE MCCARTHY:**  Yeah.

**MS. CHALBECK:**  And we put together I think it was a 171-page brief in 14 days -- I wouldn't --

**MAGISTRATE JUDGE MCCARTHY:**  Thank you for that.

**MS. CHALBECK:**  -- ask them to do that.  But why not June 30th or the end of June for dispositive motions as opposed to late August?

**MR. FOTI:**  Judge --

**MAGISTRATE JUDGE MCCARTHY:**  Yeah, defense --

**MR. FOTI:**  -- my only issue is just -- and this is what I had said last time -- I don't like doing it in piecemeal. I get we can do it that way and we'll defer to the Court. The crux -- the prior issues that will be raised on Mr. Gerace's behalf I'm projecting in terms of dispositive

U.S. v. Gogolack, et al. - 23-CR-99

motions are probably related to those motions to dismiss in part because we haven't received anything under Rule 12 notice that I think is suppressible, at least in terms of the discovery that was provided in this case.

So I think that's a big part of what we're doing when we get to dispositive motions and obviously I've expressed my preference that we be able to view the Grand Jury minutes ourselves and be able to raise whatever issues we want.

**MAGISTRATE JUDGE MCCARTHY:**  I'm not saying you won't.

**MR. FOTI:**  Right.

**MAGISTRATE JUDGE MCCARTHY:**  But I'm not saying you will. I just don't know yet.

**MR. FOTI:**  Right.  Which -- so based on the Court's current decision and the timeline that we'll need to review everything, I don't see a purpose in setting a date prior to completing that process for Mr. Gerace and I can't speak to anybody else but given that that's central to what we're going to be filing in the dispositive motions, all we're doing is putting a placeholder that's going to be delayed to a later date probably in August or later anyway.

**MR. COOPER:**  Judge, there's five other defendants that have other motions to file, and I understand Mr. Foti's in a different position with respect to his client.  But I would encourage the Court to keep things moving as quickly as we can because obviously that's in the public's interest, the

U.S. v. Gogolack, et al. - 23-CR-99

defendant's interest, and the government's interest.

And I would also note it's interesting to say that you don't like doing things piecemeal when the defendants are the ones who asked that we bifurcate the motions from dispositive and non-dispositive which forced this to be piecemeal, to begin with.

So, I think if we set a date for dispositive motions in late June, as Ms. Chalbeck recommended.  If there's a motion that needs to come later as a result of your Honor's review of the Grand Jury minutes, obviously your Honor would permit the filing of that motion.  But the vast majority of them can be brought before court sooner than late August.

**MAGISTRATE JUDGE MCCARTHY:**  All right.

**MR. BAGLEY:**  Judge, from Mr.-- oh, sorry.

**MAGISTRATE JUDGE MCCARTHY:**  Go ahead.

**MR. BAGLEY:**  Just from Mr. Goglack's perspective, Judge, I suppose we tend to agree with the Court's initial instinct that some time in mid-August would be appropriate.

**MAGISTRATE JUDGE MCCARTHY:**  All right.  Nothing is wisdom of Solomon here but I'm going to set a date of how about Friday, August 8th for dispositive motions.

And once those motions are filed, before I set a response date, I'm going to set another conference so that the government can tell me how much time they need to respond.

159

U.S. v. Gogolack, et al. - 23-CR-99

**MR. COOPER:** We appreciate that.

**MAGISTRATE JUDGE MCCARTHY:** We'll set it beyond that. Thinking ahead, given the number of issues here and the potential number of suppression motions or other dispositive motions, even though I did my best and I think with some success to try to consider all the necessary non-dispositive motions today, clearly we're not going to address all of the dispositive motions in a single day. We're going to have to set a schedule for argument on particular issues and I'll move it along as quickly as I can. But be thinking about that in terms of suggesting what issues should be argued when. So, if I say -- what did I say, August 8th?

**MR. COOPER:** Correct.

**MS. CHALBECK:** August 8th.

**MAGISTRATE JUDGE MCCARTHY:** Eric, let's see. How about a -- I'll give the government a little opportunity to review the motions.

If I set a date of Friday, August 15th to discuss further scheduling, does that work for everybody?

**MR. COOPER:** We appreciate that. That works for us.

**MAGISTRATE JUDGE MCCARTHY:** How about defense counsel? I know we're in the summer then, hopefully a little warmer than today, and maybe people have vacation plans or whatever which I don't want to interfere with but we're just going to have to do best we can. So, defense counsel, if somebody's

160

U.S. v. Gogolack, et al. - 23-CR-99

going to be out, maybe somebody else can cover for them.  But that's what I would be looking at.

MR. COOPER:  What time would that be on Friday, Judge, the 15th?

MAGISTRATE JUDGE MCCARTHY:  Let me see.  Right as of now I got the whole day open.

MR. COOPER:  10:00 o'clock, if that works for everybody.

MAGISTRATE JUDGE MCCARTHY:  Okay.  10:00 .

MS. BUTH:  Your Honor, can we waive Mr. Gerace's appearance on August 15th?

MAGISTRATE JUDGE MCCARTHY:  Oh, sure.  I mean the defendants certainly can be here if they wish but if they wish to waive their appearance, they can do that as well because it's just going to be a scheduling conference.  So you can just let me know in advance and whoever wants to show up, can show up.

So let's say August 15th at 10 a.m.

And just to be on the safe side, motions are pending so we'll exclude time now from today until August 15th on that basis -- is that acceptable to everybody -- from the Speedy Trial Act Calendar?

MR. COOPER:  Yes, Judge, I think that it would be excludable under (h)(1)(D) cuz these motions are still pending.

MAGISTRATE JUDGE MCCARTHY:  Right.

161

U.S. v. Gogolack, et al. - 23-CR-99

**MR. COOPER:**  In the event that it's not, we would ask that it be excluded under (h)(1)(B)(iv).

**MAGISTRATE JUDGE MCCARTHY:**  Okay, everybody else, defense counsel good with that?

**MR. BAGLEY:**  Yes, Judge.

**MR. FOTI:**  No objection.

**MAGISTRATE JUDGE MCCARTHY:**  Thank you all and thank you for your approach today enabling us to get through this.

Oh, just so you know, I will issue a text order saying for the reasons discussed today, transcript to be ordered, my rulings are set forth.

(WHEREUPON, proceedings adjourned.)

162

U.S. v. Gogolack, et al. - 23-CR-99


                    *           *           *

                **CERTIFICATE OF TRANSCRIBER**


        In accordance with 28, U.S.C., 753(b), I

certify that this is a true and correct record of proceedings

from the official audio recording of the

proceedings held in the United States District Court

for the Western District of New York before

Magistrate Judge Jeremiah J. McCarthy on May 21, 2025.



S/ Diane S. Martens

Diane S. Martens
Transcriber