UNITED STATES DISTRICT COURT for the
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES,

                Plaintiff,

v.

FRANK KNIGHT,

                Defendant.

**NOTICE OF MOTION FOR
NON-DISPOSITIVE RELIEF**

Case no.: 23-cr-099

---

| | |
|---|---|
| \MOTION BY: | Barry J. Donohue, Esq., attorney for defendant FRANK KNIGHT. |
| DATE, TIME & PLACE: | Before the Honorable Jeremiah J. McCarthy, United States Magistrate Court Judge, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York at a date, time and place to be set by the Court. |
| SUPPORTING PAPERS: | Affirmation of Barry J. Donohue, Esq., dated June 13, 2025. |
| RELIEF REQUESTED AND GROUNDS FOR RELIEF: | I.) An order to produce grand jury minutes to counsel for defendant Knight pursuant to FRCrP 6(e)(3)(E); II.) an order directing disclosure of examinations and tests and expert information pursuant to FRCrP 16(a)(1)(F), (G); III.) An order to produce the search warrant affidavits for Knight's home and cell phones seized from his person pursuant to FRCrP 41 (h); IV.) joinder of other motions; V.) reservation of other motions. |
| NATURE OF ACTION: | 18 U.S.C. §371 (conspiracy to obstruct justice); 18 U.S.C. §1001(a)(2) ((2) false statements to FBI). |

1

Dated: June 13, 2025                              BARRY J. DONOHUE, ESQ.
Erie County, New York                            Attorney for plaintiff

                                                 By:  /s/ Barry J. Donohue
                                                       Barry J. Donohue, Esq.
                                                       77 Broad Street
                                                       Tonawanda, New York 14150
                                                       (716) 693-0359
                                                       e-mail: barry@donohuelaw.com

To: Joseph Tripi, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5839
e-mail: joseph.tripi@usdoj.gov

Nicholas Cooper, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5712
e-mail: nicholas.cooper@usdoj.gov

Casey Chalbeck, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
e-mail: casey.chalbeck@usdoj.gov

UNITED STATES DISTRICT COURT for the
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES,

                Plaintiff,

v.

FRANK KNIGHT,

                Defendant.

<u>SUPPORTING
AFFIRMATION</u>

Case no.: 23-cr-099

---

STATE OF NEW YORK :
COUNTY OF ERIE        :  ss:

    BARRY J. DONOHUE, an attorney authorized to practice before this Court and licensed to practice law in the Courts of this State, affirms under penalty of perjury as follows:

    1.  I am attorney for defendant FRANK KNIGHT in the above-captioned action and make this affidavit for the purpose of requesting pretrial relief on behalf of FRANK KNIGHT as delineated in the Notice of Motion of even date.  Docket entries will be cited herein in brackets e.g. [24].

<u>PROCEDURAL POSTURE.</u>

    2.  January 9, 2024 FRANK KNIGHT was arraigned on an Indictment charging him with one count of conspiring to obstruct justice in connection with the government's investigation into the death of Crystal Quinn, and two counts of making false statement to the F.B.I. in connection with that investigation. [24].

    3.  Other defendants motions for nondispositive relief have been addressed by the Court. [434].

4.   Significant discovery has been provided by the government per the Court's scheduling order.  The *Brady* order was entered initially October 4, 2023, more than 18 months ago. [5, 30]. It was recently learned the government possesses *Brady* discovery that it has not turned over. See [445] pp.24, 25.

5.   This motion is due June 16, 2025. [424].

<u>FACTUAL BACKGROUND</u>.

6.   This factual background comes from the Indictment and the discovery to date.  There are essentially three substantive allegations against KNIGHT in the Indictment.

7.   On or about August 1, 2023 Crystal Quinn died of an apparent drug overdose at SIMON GOGOLACK's home.  SIMON GOGOLACK's home was diagonally across the street from FRANK KNIGHT's home. [24] p. 7 ¶ 29.  The Indictment alleges that the lethal dose of fentanyl was administered by SIMON GOGOLACK. [24] p. 20 ¶ 47.

8.   FRANK KNIGHT and his wife own and live at 287 Scott Street, Wellsville, New York as is confirmed by the public record excerpted at the top of the following page.

| Municipality of V. of Wellsville | | | | |
|---|---|---|---|---|
| SWIS: | 027001 | Tax ID: | | 238.8-3-38 |

| Ownership Information | | | | |
|---|---|---|---|---|
| Name | | Secondary Name | | Address |
| Frank & Brigette Knight | | | | 287 Scott Ave<br>Wellsville NY 14895 |

| Sale Information | | | | |
|---|---|---|---|---|
| Sale Date | Price | Property Class | Sale Type | Prior Owner |
| 3/14/2012 | $15,000 | 210 - 1 Family Res | Land & Building | Brown, Randall G |
| | Value Usable | Arms Length | Deed Book | Deed Page |
| | No | No | 2012 | 53493 |
| | | | | |
| Sale Date | Price | Property Class | Sale Type | Prior Owner |
| 9/6/1995 | $20,000 | 210 - 1 Family Res | Land & Building | Ceisner, Douglas |
| | Value Usable | Arms Length | Deed Book | Deed Page |
| | Yes | Yes | 1098 | 149 |

8.    The Indictment contains only three substantive allegations against FRANK KNIGHT. First it is alleged, "On August 3, 2023, KNIGHT made false and misleading statements to the FBI, including that HINKLE had not been present at the July 27, 2023 poker game." [24] p. 22 ¶60; see also [24] p. 35, COUNT 5 ("defendant stated that HOWARD HINKLE, JR. was not at a poker game in Wellsville attended by Crystal Quinn on July 27, 2023").

9.    Second it is alleged, "Prior to August 8, 2023, GOGOLACK anticipated that law enforcement would search his house, and arranged with KNIGHT for KNIGHT to conceal a number of GOGOLACK's firearms in KNIGHT'S residence." [24] p. 24 ¶71.

10.    Third it is alleged, "On October 24, 2023, the FBI interviewed KNIGHT. During the interview, KNIGHT made false and misleading statements to the FBI, including denying that GOGOLACK had visited KNIGHT's residence during the early morning hours on July 28, 2023." [24] p. 29 ¶95; see also [24] p. 45, COUNT 23 ("fraudulent statements and representations to special agents of the Federal Bureau of Investigation, in that the defendant

stated that SIMON GOGOLACK a/k/a Greek, did not visit FRANK KNIGHT'S residence during the early morning hours on July 28, 2023")

11.  FRANK KNIGHT denies each of these.  More particularly, he did not state that HOWARD HINKLE was not at the July 27, 2023 card game.  Rather he initially said he could not recall before promptly within the same conversation recalling that in fact HOWARD HINKLE was at the subject card game.  FRANK KNIGHT did not take possession of GOGOLACK's guns as alleged.  And GOGOLACK was not in FRANK KNIGHT's residence in the early morning hours of July 28, 2023.

12.  There are several allegations in the Indictment that FRANK KNIGHT spoke with HOWARD HINKLE or MICHAEL RONCONE without any content included for the conversations.

13.  There are also several other allegations of fact that are not facially inculpatory.

14.  The August 3, 2023 F.B.I. interview during which it is alleged that FRANK KNIGHT "made false and misleading statements to the FBI, including that HINKLE had not been present at the July 27, 2023 poker game" was recorded.  The pertinent portions of that interview are excerpted here.

Agent Chad Archer (03:41):
Who would be some regulars? If you even had regulars? They're kind of almost get their mail there type of people? You know they're going to show up?

Frank Knight (03:52):
You see, it's not... We haven't been doing it that long. I mean we've only been getting back together for the past couple of months on Thursday nights and I get it, as long as I get eight to 10 people, we'll play.  But there are some weeks we don't play, so I can't say there's anybody... Chad Gear is a regular, he was there. He lives over on...

Agent Adam Penna (04:20):

6

What about Howard? Howie?

Frank Knight (04:22):
Howie? Sometimes. He didn't make it this Thursday I don't think. I don't remember.

Agent Adam Penna (04:26):
What's his last name again?

Frank Knight (04:27):
Howie Hinkle.

Agent Adam Penna (04:28):
Hinkle. Howie Hinkle. Okay. So he was there.

Frank Knight (04:32):
No, I don't think he was.

Agent Adam Penna (04:33):
You don't think he was there?

Frank Knight (04:33):
No.

Agent Adam Penna (04:34):
Okay. We heard he might've been there.

Frank Knight (04:36):
He was one of the ones that was supposed to be there and I called him several times.

Agent Adam Penna (04:39):
I got you.

Frank Knight (04:40):
And I might have my nights screwed up.

...

Agent Adam Penna (08:17):
I don't think she was ever much of a poker player.

Frank Knight (08:19):
Yeah. I mean I don't know. She obviously didn't know what she was doing.

Agent Chad Archer (08:23):
$5 to spin the thing, right?

Frank Knight (08:28):
But I mean we try to help anybody that wants to play. But I do remember the very first day she was involved in... You familiar with Texas Hold 'Em?

Agent Adam Penna (08:35):
Yeah.

Frank Knight (08:36):
The flop came out and she flipped her cards over and we're like, "Not yet." So good luck. Again, she didn't last very long. Simon was out fairly early too and they went outside.

...

Agent Adam Penna (10:46):
Do you recall who they were playing with or anyone talking to her or her or talking to anybody?

Frank Knight (10:53):
No, nobody knew her except for Simon.

Agent Adam Penna (10:55):
Okay.

Frank Knight (10:56):
You know what? Howie was there.

Agent Adam Penna (10:58):
Okay.

Frank Knight (10:59):
Because she was sitting next to Howie.

Agent Adam Penna (11:01):
Okay.

Frank Knight (11:02):
And he was trying to help her.

...

Agent Adam Penna (11:04):
Trying to teach her like how-

Frank Knight (11:05):
Yeah. Not just flip her cards over before the river and stuff. So now that you say that, I do remember she was sitting next to him.

15.   The allegation that GOGOLACK was in FRANK KNIGHT's home in the early morning hours of July 28, 2023 is based upon a CAST report prepared by the F.B.I. apparently based on Google geofence data.  The allegation in the Indictment purports to locate GOGOLACK's phone, not on or near FRANK KNIGHT's home but,  inside "KNIGHT'S residence" in the early morning hours (between 5:30 a.m. and 6:30 a.m.).  It is highly unlikely that historical cell site records or Google geofence data would place GOGOLACK's cell phone with that level of specificity.  Indeed, all the images in the CAST report of the radii appear to encompass GOGOLACK's own home.  In other words, even the CAST report seems to allow for the possibility, if not probability, that GOGOLACK (assuming he had his phone on him) was in his own home and not FRANK KNIGHT's residence at the identified times.

16.   October 24, 2023 FRANK KNIGHT's home was searched pursuant to a warrant, 23-MJ-5213-05.  The same day an iPhone was seized from FRANK KNIGHT's person.  That iPhone was identified in a March 14, 2024 F.B.I. Form 302 as follows:

*The information pertaining to the Apple iPhone 11 extracted included the following:*

*Apple iPhone 11 [iPhone 12,1 N104AP]*
*Serial Number: VKJ9VQDKJJ*

*IMEI: 3564609043611694*
*Owner Name: Frank Knight*
*Accounts: shredmonsterst75@yahoo.com, frankadrianknight@yahoo.com*

There are other places too in the discovery where the phone is identified as FRANK KNIGHT's and is associated with the phone number the F.B.I. had for FRANK KNIGHT. The search warrant for this phone refers 287 Scott Street as FRANK KNIGHT's residence.

The below listed SUBJECT DEVICES were seized from the residence of FRANK KNIGHT, located at 287 Scott Avenue, Wellsville, New York, pursuant to search warrant 23-MJ-5213-01. The SUBJECT DEVICES are in the possession of the FBI located in the

Finally the F.B.I. seized a phone from FRANK KNIGHT's person on January 9, 2023. The actual search warrant for that phone says:

Cellular Telephone Belonging to Frank Knight, an iPhone model 12 seized on Frank Knight's person incident to arrest bearing model number MJNE3LL/A and serial number CLWQCQFXKG and associated with telephone number 585-808-7270

Again, there is simply no question that the residence and phones in question were FRANK

10

KNIGHT's ("Belonging to Frank Knight").  The search warrant applications sought herein are believe to be as follows, 23-MJ-5213-01, 23-MJ-5213-05, 24-mj-1026, for the home and two cell phones taken from his person respectively.


I.        MOTION FOR PRODUCTION OF THE GRAND JURY MINUTES TO COUNSEL

17.  The trope "a prosecutor could indict a ham sandwich if he wanted to" has its genesis in reality.  The ability of grand juries to do their job independent of influence by the prosecutor has been eroded.  See *U.S. v Hogan*, 712 F.2d 757, 759 (2nd Cir. 1983) ("It is true of course that prosecutors, by virtue of their position, have gained such influence over grand juries that these bodies' historic independence has been eroded.") But there are guardrails.  The Constitution, the courts, and the Federal Rules of Criminal Procedure circumscribe what indictments will be tolerated.

18.  The Constitution provides "No person shall be held to answer for a capital, or otherwise infamous crime, unless on...indictment of a Grand Jury."  United States Constitution, V Amendment.  In spite of what local prosecutors may think, the grand jury is not an arm of the prosecution or a part of the Executive branch of government.  *U.S. v. Williams*, 504 U.S. 36, 47 (1992) (the grand jury "has not been textually assigned...to any of the branches described in the first three Articles.  It 'is a constitutional fixture in its own right'").  On the contrary, the grand jury is intended to stand between the government and its potential abuses, not be an arm of the government.  *Id.* at 47 ("the whole theory of its function is that it belongs to no branch of the institutional government, serving as a kind of buffer or referee between the Government and the

11

people.").

19.   The Supreme Court has recognized the power of the courts to dismiss indictments procured through false or intentionally misleading testimony that prejudices a target of the investigation. *Bank Nova Scotia v. U.S.*, 487 U.S. 250, 256 (1988) ("dismissal of the indictment is appropriate only 'if it is established that the violation substantially influence the grand jury's decision fo indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violation.")  Here the statement in the Indictment that "KNIGHT made false and misleading statements to the F.B.I., including that HINKLE had not been present at the July 27, 2023 poker game" is itself false.  The subject "statements" to the F.B.I. were recorded.  That recording makes clear that the averment in the Indictment is false.  The only unequivocal statement that KNIGHT made to the F.B.I. was that HINKLE <u>was</u> at the card game.  Since one would not expect a grand jury indictment to make demonstrably false assertions it is reasonable to infer that the grand jury received intentionally misleading information enabling them to make a demonstrably false assertion.

20.   "The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter...at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  FRCrP 6(e)(3)(E)(ii).  The allegation in the indictment that KNIGHT said that HINKLE was not at the July 27, 2023 card game is false for two reasons.  First, when the subject of HINKLE'S presence at the poker game came up with the FBI during the August 3, 2023 interview KNIGHT said he did not recall HINKLE being there ("I don't think. I don't remember."), said he was not sure, and said he may have his nights mixed up.  Second, when his

recollection was refreshed by inquiries about who was speaking with who at the card game he said unequivocally "You know what? Howie was there."  Even if the government witnesses testifying before the grand jury chose to ascribe nefarious, rather than innocent, motives to KNIGHT's poor recall they cannot intentionally mislead the grand jury about what KNIGHT actually said.  KNIGHT clearly said during his August 3, 2023 interview with the F.B.I. that HINKLE was at the subject card game.  It appears the grand jury was never told this.  For this reason it is important that KNIGHT have access to the grand jury minutes to ascertain whether a motion to dismiss is appropriate.

21.  "Location History data allows Google to 'potentially locate an individual within about sixty feet or less.'" *U.S. v. Smith*, 110 F.4th 817, 823 (5th Cir. 2024).  Here the CAST report images for the radii of hits on GOGOLACK's cell phone all seem to encompass GOGOLACK's own residence.  Thus, it appears that even per the CAST report GOGOLACK's cell phone could have been located in his own residence at the identified times in the early morning hours of July 28, 2023.  Nonetheless, the Indictment alleges as fact that GOGOLACK was in FRANK KNIGHT's residence and that FRANK KNIGHT lied about it.  The government need not give the jury the exculpatory evidence that GOGOLACK's phone may have been in GOGOLACK's own residence at the times identified.  *U.S. v. Williams*, 504 U.S. 36 (1992).  But its witnesses cannot intentionally mislead the grand jury by stating as fact, what is an expert opinion.  In other words, while "I am an expert with the F.B.I.'s Cellular Analysis Survey Team and after reviewing the data it is my opinion that GOGOLACK's cell phone was very likely in FRANK KNIGHT's residence" probably survives scrutiny.  Simply telling the grand jury that "GOGOLACK's phone was located at FRANK KNIGHT's residence" is intentionally

misleading because it presents an expert opinion as a fact.  A review of the grand jury minutes is necessary to ascertain whether a challenge to the Indictment is warranted.

## II.    MOTION TO COMPEL DISCOVERY RELATING TO GEOFENCE.

22.   Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(F), (G) demand is made for disclosure of information all reports of examination and tests and all expert disclosure.  This information must be furnished timely to permit the defendant to "meet the government's evidence."  FRCrP 16(a)(1)(G).  In particular, but without limitation, all information relating to the CAST report that purports to geolocate GOGOLACK's phone in FRANK KNIGHT's residence in the early morning hours of July 28, 2023 is demanded.

23.   There is a three-step process whereby the government procures from Google the data it ultimately relies upon in rendering the opinions summarized in the CAST report.

24.   At Step 1 "law enforcement provides Google with the geographical and temporal parameters around the time and place where the alleged crime occurred...for every single geofence warrant Google responds to, it must search each account in its entire Sensorvault– all 592 million...After Google searches its Sensorvault...within the geographic parameters of the warrant and lists each of those accounts with an anonymized device ID.  Google also includes the date and time, the latitude and longitude, the geolocation source used, and the map display radius (i.e., the confidence interval)."  *U.S. v. Smith*, 110 F.4th 817, 824 (5th Cir. 2024).  A Google Legal Investigation Specialist reviews the warrant, consults with legal counsel, then *works with law enforcement* to assuage any of Google's concerns before turning the data over and moving on

14

to Step 2.  *Id.* at 825.

25.  At Step 2, "law enforcement contextualizes and narrows the data...'if law enforcement needs additional de-identified location information for a certain device to determine whether that device is actually relevant to the investigation, law enforcement can compel Google to provide additional location coordinates *beyond* the time and geographic scope of the original request.'...The purpose of this additional data is to assist law enforcement in eliminating devices that are, for example, 'not the target location for enough time to be of interest, or were moving through the target location in a manner inconsistent with other evidence."  *Id*. at 825 emphasis in original.

26.  At Step 3, "law enforcement compels Google to provide account-identifying information for the users that they determine are 'relevant to the investigation.'"  *Id*. at 825.

27.  As is clear from this summary of the steps, the process is collaborative between Google and the government and the government engages in an evaluative process throughout. There are many places where the conclusions that ultimately get summarized in the CAST report can go wrong.[1]  In order for the defendant to "meet the government's evidence" the defendant must have everything related to the process.

28.  In particular, it is requested the Court compel the government to turn over all

---

[1]  "Location History data allows Google to 'potentially locate an individual within about sixty feet or less,' and in certain circumstances, down to three meters...However, Location History cannot estimate a device's location with absolute precision.  Instead, when Google reports a device's location, it includes both the source from which the specific data point was derived, and a 'confidence interval' indicating Google's confidence in that estimated location.  The smaller the radius, the more confident Google is in that phone's exact location. According to Google, it 'aims to accurately capture roughly 68 percent of user within its confidence intervals...In other words, there is a 68 percent likelihood that a user is somewhere inside the confidence interval.'"  *U.S. v. Smith*, 110 F.4th 817, 823, 824 (5th Cir. 2024)

warrants, all search warrant applications, all returns on warrants such as data supplied by Google in its native format, all emails between the government and Google, and all data furnished to the government and/or considered in preparation of the CAST report and the opinions summarized therein for the CAST report that recites the following phones ending 3061 (Gogolack), 2928 (Quinn), 7155 (Hinkle), and 7270 (Frank Knight).

III.    MOTION TO COMPEL PRODUCTION OF SEARCH WARRANT APPLICATIONS FOR THE SEARCH OF FRANK KNIGHT'S HOME AND CELL PHONES SEIZED FROM HIS PERSON.

29.    Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks v. Delaware*, 438 U.S. 154 (1978). FRCrP 41 (h) provides that a "defendant may move to suppress evidence" obtained from a search warrant. The local practice which requires an affidavit of standing for disclosure, as opposed to standing to suppress, improperly impairs a defendant's ability to advance their 4th Amendment rights without waiving their 5th Amendment rights to remain silent. That a defendant may move to suppress under Rule 41(h) is hollow if a defendant does not know what the application says.

30.    The requirement of an affidavit of standing for disclosure of the search warrant application as opposed to an affidavit of standing for suppression of the fruits of the search appears to be unique to this district. By conflating standing for disclosure with standing for

16

suppression the government improperly hampers a defendant's ability to evaluate and, if necessary, move for a *Franks* hearing. There would be no way for a defendant to know if a search warrant affidavit contained knowingly and intentionally false information if the defendant does not know what the search warrant affidavit says.

31. "To contest the validity of a search, a defendant must demonstrate that he himself exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one that society is willing to accept as reasonable. A defendant lacks 'standing' in the Fourth Amendment context when his contacts with the searched premises are so attenuated that no expectation of privacy he has in those premises could ever be considered reasonable." *U.S. V. Fields*, 113 F.3d 313, (2nd Cir. 1997). The reason "standing" is in quotes is because the Supreme Court long ago did away with "standing" in the Fourth Amendment context. *Minnesota v. Carter*, 525 U.S. 83, 87 (1998) ("The Minnesota courts analyzed whether respondents had a legitimate expectation of privacy under the rubric of 'standing' doctrine, an analysis which this Court expressly rejected 20 years ago in Rakas.") Rather "standing" in this setting now simply refers to whether a defendant had a legitimate expectation of privacy in the area searched.

32. Here there is no question legally that FRANK KNIGHT had a legitimate expectation of privacy in his home. See *Katz v. United States*, 389 U.S. 347 (1967); *Kyllo v. United States*, 533 U.S. 27 (2001). Nor is there any question legally that FRANK KNIGHT had a legitimate expectation of privacy in his phones. See *Riley v. California*, 573 U.S. 373 (2014); *Carpenter v. United States* 585 U.S. 296 (2018). There is no question that the home was FRANK KNIGHT's single family home because he lived there with his wife and it is a matter of public record. More importantly, the government does not deny it is FRANK KNIGHT's home and the search warrant

17

application itself must claim as much.  See *United States v. Cobb*, 544 F. Supp. 3d 310, 337 (W.D.N.Y. 2021) ("Tigano is inapposite because the location searched in that case—30 Mill Street—served not only as the defendant's marijuana processing facility but also where defendant resided, and therefore he plainly had an expectation of privacy in that location.")  Likewise, there is no question that the two phones seized from FRANK KNIGHT (one on October 24, 2023 and one on January 9, 2024) were FRANK KNIGHT's because they were seized from his person, they were associated with the phone number the F.B.I. had for FRANK KNIGHT and used to call him, and the Cellbrite reports generated refer to the phones as FRANK KNIGHT's.  And again the government does not deny the phones are FRANK KNIGHT's and the search warrant applications themselves would confirm it.

33.  To the extent this Court requires FRANK KNIGHT to "demonstrate" that he has a legitimate expectation of privacy in his home and these two cell phones it is requested that this filing suffice unless the government controverts the allegations in support of "standing". Alternatively, it is requested the Court review the search warrant applications at issue in camera to ascertain if they confirm that the home and cell phones at issue are FRANK KNIGHT's.  If they do, the applications should be disclosed.


IV.    <u>MOTION TO JOIN MOTIONS OF OTHER DEFENDANTS</u>.


34.  Co-defendants' motions for non-dispositive relief have been ruled on by the Court. [434].  Nonetheless, FRANK KNIGHT joins them as follows to preserve the issues.

35.  FRANK KNIGHT joins the motions for a Bill of Particulars as to Count 1. [404, 405,

410].

36.  FRANK KNIGHT joins the motions for an order striking surplusage from the Indictment. [404, 405, 408, 410].

37.  FRANK KNIGHT joins the motions for a conspiracy hearing. [404].

38.  FRANK KNIGHT joins the motions for an order directing the government to provide notice pursuant to Rule 12 of the Federal Rules of Criminal Procedure. [404, 405, 410].

39.  FRANK KNIGHT joins the motions for an order directing production of all materials required by Rule 16 of the Federal Rules of Criminal Procedure. [404, 408, 410].

40.  FRANK KNIGHT joins the motions for a deadline for the disclosure of *Brady/Giglio* material.  [404, 408, 410].


V.    <u>OTHER MOTIONS</u>.


41.  FRANK KNIGHT reserves the right to make any motions that arise out of the production of any documents after the filing of this non-dispositive motion.

42.  FRANK KNIGHT reserves the right to make a motion for severance at a time directed by the Court.

WHEREFORE, it is respectfully requested that the Court order the forms of pre-trial relief requested herein.


Dated:  <u>June 13, 2025</u>                    <u> /s/ Barry J. Donohue </u>
                                        Barry J. Donohue

UNITED STATES DISTRICT COURT for the
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES,

                               Plaintiff,                    SERVICE
                                                       AFFIRMATION

v.

FRANK KNIGHT,                           Case no.: 23-cr-099

                            Defendant.

---

The undersigned certifies that I am attorney for Defendant FRANK KNIGHT in the above matter and am of such age to serve papers.

On June 13, 2025  I served a copy of the following by electronic service via CM/ECF:

Notice of Motion dated June 13, 2025 , the supporting affirmation of Barry J. Donohue dated June 13, 2025 ,

ADDRESSEE:

Joseph Tripi, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5839
e-mail: joseph.tripi@usdoj.gov

Nicholas Cooper, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5712
e-mail: nicholas.cooper@usdoj.gov

Casey Chalbeck, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
e-mail: casey.chalbeck@usdoj.gov

On June 13, 2025 I served a copy of the attached by: (  ) First Class United States Mail; (  ) hand delivery; (  ) electronic mail; or, (  ) facsimile:

ADDRESSEE: none.


Dated:____June 13, 2025                                /s/Barry J. Donohue___
                                                       Barry J. Donohue
                                                       Attorney for plaintiff
                                                       77 Broad Street
                                                       Tonawanda, New York 14150
                                                       (716) 693-0359
                                                       Barry@donohuelaw.com