IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────

UNITED STATES OF AMERICA,

      v.                                                                                                                23-CR-99-LJV

SIMON GOGOLACK, et al.,

            Defendants.

───────────────────────────────────────────

**GOVERNMENT'S REPLY TO THE DEFENDANT'S RESPONSE TO THE
GOVERNMENT'S MOTION TO RESCIND THE REFERRAL ORDER**

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Joseph M. Tripi, Assistant United States Attorney, of counsel, hereby submits the following reply to the defendants' response in opposition, *see* ECF No. 446, to the government's motion to rescind the referral order and to schedule a trial date, *see* ECF No. 435.

**ARGUMENT**

The government is neither interested, nor will it engage, in advancing *ad hominem* attacks. The defendant's response does not meaningfully engage with the merits of the government's motion—*i.e.,* that this case is ripe for District Court supervision. Indeed, the record conclusively establishes that the interests the public, defendants, victims, witnesses, government, and judicial economy would best be served by this Court deciding pre-trial issues moving forward.

The government's motion to rescind the referral order, *see* ECF No. 435, simply provides the necessary background and procedural context for this Court to evaluate the government's request. *See also* ECF Nos. 355, 363, 396. Simply put, it is undisputable that dispositive motions were due on January 21, 2025, and roughly six months later they have not been filed and are not due to be filed until August 8, 2025 (or 581 days after the defendants were charged via Second Superseding Indictment). In the interim, there have been several extensions of time to file motions granted over the government's objection; a *sua sponte* court proceeding prompted by an *ex parte* communication; a bifurcated motion schedule implemented for the first time over one year into the case; and delays inherent in the Magistrate Court's decision to add additional defense attorneys to certain defendants almost one-year after declining to do so (while stating on the record that one attorney was adequate). *See* Tr. Proceedings [Mar. 8, 2024] at 3-5.; *see also* ECF No. 435 at 4.

Generally, through any objective lens, the case has gone off track since January 2025. There have been a series of delays of the schedule previously imposed by the Magistrate Court and, as such, the flexibility necessary to do everything twice—once with the Magistrate Court and once with this Court—is gone. Given the foregoing, and as set forth in greater detail in ECF No. 435, this Court holds primary jurisdiction and has both the ability and responsibility to ensure that the litigation proceeds appropriately and fairly for all interested parties.[1] In that

---

[1] While irrelevant to the analysis of whether this Court should rescind the referral order, either in whole or in part, to the extent the defendants' response endeavors to take the government to task for not objecting to the assignment of second counsel for Hinkle, the comparison between the Hinkle CJA assignment and the Gerace and Ermin CJA assignments is akin to comparing apples to oranges. First, when the Magistrate Court assigned Hinkle learned counsel, Hinkle did not have privately retained counsel. In contrast, the attorneys for Gerace and Ermin were initially privately retained and later assigned. Second, unlike the process

vein, the government struggles to comprehend the defendants' objections to doing everything necessary to ensure the litigation is streamlined to protect the speedy trial rights they claim to covet.[2,3]

---

related to Ermin and Gerace in February 2025, the entire process that resulted in assignment of learned counsel to Hinkle on January 31, 2024, was on notice to the government. *See* ECF No. 47. Third, unlike Gerace and Ermin, Hinkle was assigned learned counsel on January 31, 2024, which was *before the government provided notice that it would not seek the death penalty*, whereas Ermin and Gerace were ultimately assigned learned counsel almost a year after the government provided notice it would not seek the death penalty. Fourth, unlike Gerace and Ermin, the Magistrate Court's decision to assign learned counsel to Hinkle on January 31, 2024, was not predicated upon internal DOJ guidance that does not confer substantive rights to defendants. Fifth, there was no indication that the CJA procedures that resulted in Mr. Henry's assignment as learned counsel to Hinkle occurred outside the ordinary CJA rotation, whereas an *ex parte* email with respect to the Gerace and Ermin CJA assignments raised the government's concerns, *see also* ECF Nos. 355, 363, 396. Sixth, by the time Mr. Henry filed his motion, *see* ECF No. 125, seeking to remain on Hinkle's case as assigned second counsel, Mr. Henry had been involved in the case for almost five months and, as a result, removing him at that juncture would have disrupted proceedings whereas, in contrast, adding multiple additional attorneys to the case for defendants Ermin and Gerace in February 2025, shortly before defense motions were due, caused significant disruption of the proceedings and delayed the filing of defense motions. *See also* ECF No. 355 at 27 ("Simply, the Court's decision to inject two new attorneys into the case right before motions are due has disrupted the case and stalled its progress. Promptly removing the recently assigned attorneys will serve to get this case back on track expeditiously and will help ensure there is no additional delay. Accordingly, this factor weighs heavily against the defendants and against a finding of extenuating circumstances such that recently assigned learned or second counsel should be removed.").

[2] To the extent the defendant's motion attempts to revisit unrelated issues pertaining to the case-related form, *see* ECF No. 446 at 28, this Court is aware that the government addressed the Court's questions on March 15, 2024. *See* Case No. 19-cr-227, ECF No. 825 at 10-13. Moreover, upon information and belief, since that time the Clerk's office has issued additional guidance, previously lacking, with respect to case-related forms.

[3] To the extent the defendants' endeavor to advance unrelated *Brady* claims in their response to the government's motion to rescind the referral order, *see e.g.,* ECF No. 446 at 23, the defendant's citation to transcript leaves out context. *See e.g.,* Tr. Oral Argument [May 21, 2025] at 149 (Mr. Cooper: "I will look for it. And I heard what she just said now. I don't recall that coming up in detail in the meeting that we had. But I heard what Ms. Meyers Buth says now and we'll take a look and if there's something that we believe needs to be turned over pursuant to Brady or its progeny, we'll turn it over." . . . Mr. Tripi: "On that score, Judge, with probation, typically the defense makes a request to the Court because probation's an arm

The defendants' response also fails to mention, much less grapple, with examples of other strongly contested murder cases in this district wherein judicial economy was served by District Court decisions to rescind Magistrate Court referral orders, either in whole or in part, to ensure that the rights and interests of all parties were protected. *See* ECF No. 435 at 17-19 (referencing *Gendron, Pirk,* and *Olbert*). Unquestionably, "[t]he district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

The defendant's response also fails to analyze or address 18 U.S.C. § 3161(a), which directs that "[i]n any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list it for trial on a weekly or other short-term trial calendar at a place within the judicial district, so as to assure a speedy trial." Practically, the Court cannot comply with its obligations pursuant to § 3161(a) without exercising supervision and control over scheduling of pre-trial matters in this case.

---

of the Court. So if they have confidential files that we don't have where they interviewed Miss Quinn, those are trial motions, Ms. Meyers Buth knows this, we've done this before, she directs that request to Judge Vilardo, probation produces their file to him, and he makes the call. We have no objection to that procedure being followed in this case. And so, I hope that answers your question on Crystal Quinn.").

Finally, the defendants' response fails to contend with the requirements of the Crime Victim's Rights Act (CVRA), or to controvert how streamlining the litigation—so that legal issues are decided once—will vindicate the interests set forth in the CVRA, which entitles victims to proceedings that are "free from unreasonable delay," *see* 18 U.S.C. § 3771(a)(7). These concerns are heightened where, as here, the Magistrate Court publicly stated, "And if anybody wants to suggest to Judge Vilardo that he take the entire case back for supervision of pretrial proceedings, whether or not that would make him happy, it would not make me unhappy but we'll leave it at that." Tr. of Proceedings [Apr. 24, 2025] at 77.

## CONCLUSION

For the reasons stated herein and in ECF No. 455, the United States respectfully asks that the Court grant the government's motion to rescind the referral order and to schedule a trial date.

DATED: Buffalo, New York, June 18, 2025.

                                          MICHAEL DIGIACOMO
                                          United States Attorney

BY:   s/ JOSEPH M. TRIPI
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        (716) 843-5839
        Joseph.Tripi@usdoj.gov