IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  23-CR-99-LJV-JJM

SIMON GOGOLACK, et al.,
              Defendants.

## GOVERNMENT'S MEMORANDUM OF LAW REGARDING THE DETERMINATION OF A CONFLICT OF INTEREST

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Nicholas T. Cooper, Assistant United States Attorney, of counsel, hereby files a memorandum of law regarding the determination of a conflict of interest raised by counsel for defendant Gogolack (*see* Doc. No. 462).

## PROCEDURAL HISTORY

Gogolack is charged in a Second Superseding Indictment with seventeen counts including, *inter alia*: Obstruction of Justice Conspiracy (18 U.S.C. § 371); Witness Tampering Conspiracy (18 U.S.C. § 1512(k)); Witness Retaliation Conspiracy (18 U.S.C. § 1513(f)); and other related offenses. *See* Doc. No. 24.

Gogolack was initially charged via criminal complaint on August 17, 2023, with violations of 21 U.S.C. §§ 846 and 856(a)(1), 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(c)(1)(A)(i) – offenses that at the time were not known to be related to the death of Crystal

Quinn. Gogolack initially retained Robert Bolm, Esq., to represent him in that matter. *See* Case No. 23-mj-1115, Doc. No. 4. At the initial appearance, Attorney Bolm was unavailable, and AFPD Jeff Bagley, Esq., stood in to represent Gogolack until Attorney Bolm became available. *Id.* On August 30, 2023, Attorney Bolm appeared with defendant Gogolack for a detention hearing before Judge McCarthy and represented to the Court that he had been "fully retained." *See* Case No. 23-mj-1115, Doc. No. 9. About a week later, on September 6, 2023, Attorney Bolm appeared telephonically before Judge McCarthy and informed the court that he intended to withdraw due to health concerns. *See* Case No. 23-mj-1115, Doc. No. 10. At that appearance, Gogolack requested that the court appoint counsel for him, the court qualified him under oath, and the court appointed AFPD Jeff Bagley to represent Gogolack. *Id.* From September 6, 2023, until the present date, the defendant has been represented by AFPD Bagley. On February 20, 2024, AFPD John Morrissey entered a notice of appearance on behalf of Gogolack. *See* Case No. 23-cr-99, Doc. No. 70. On April 16, 2025, AFPD Fonda Kubiak entered a notice of appearance on behalf of Gogolack. *See* Doc. No. 400. Presently, the three above-named AFPDs represent Gogolack.

On June 24, 2025, AFPD Bagley filed a Motion to Withdraw as Attorney and Appoint New Counsel due to a conflict of interest. *See* Doc. No. 462. In the motion, AFPD Bagley provided notice that he was submitting an additional filing, *ex parte* and under seal, to explain to this Court the "full nature of the conflict." *Id.* In his motion, defense counsel stated that he became aware of this individual's testimony on June 13, 2025, when the government provided excerpts of the individual's testimony. *Id.* ▮

██████████████████████████████  AFPD Bagley asserted that the Federal Public Defender's Office previously represented the government witness.  *Id.*  The undersigned AUSA became aware of the witness in the spring of 2023, when he was represented by a CJA attorney.  The undersigned does not recall knowing[1] that the government witness had been previously represented by the Federal Public Defender's office until being advised of that fact last week by AFPD Bagley.

The memorandum of law which follows is intended to advise the Court as to applicable legal framework.  The government is not aware of the information contained in the defendant's *ex parte*, under seal filing, and as such, the government believes the Court is in the best position to determine the appropriate pathway forward.

### LEGAL FRAMEWORK REGARDING CONFLICTS OF INTEREST

Generally, conflicts of one attorney at the Federal Public Defender's office are imputed to the other attorneys there.  *See*, *e.g.*, *United States v. Pappa*, 37 F. App'x 551 (2d Cir. 2002); *United States v. Mendez*, 750 F. Supp. 3d 327 (S.D.N.Y. Sept.26, 2024).  Because a member of the Federal Public Defender's office previously represented a person expected to be a government witness in this case, the FPD's representation of Gogolack would implicate

---

[1] ██████████████████████████████████████████████████████████████████████

several provisions of the New York Rules of Professional Conduct. First, Rule 1.9(a) states that a lawyer "who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

Second, Rule 1.9(c) provides:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client or when the information has become generally known; or
>
> (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client.

And third, Rule 1.7(a) mandates that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." N.Y. Rule Prof. Conduct 1.7(a). Even if the government witness were to waive this conflict in writing, *see, e.g.*, N.Y. Rule Prof. Conduct 1.6(a)(1), 1.9(a), the FPD's continuing duties to that government witness may potentially limit their representation of the defendant.

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." For a criminal defendant who can pay for representation, this encompasses the right to choose his or her own legal counsel. *See Wheat v. United States*, 486 U.S. 153, 158–59, 108 S. Ct. 1692 (1988) (recognizing Sixth Amendment right to choose own counsel, but noting that this right is "circumscribed in several respects").

Furthermore, the Sixth Amendment's right to counsel includes "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). Thus, "'when a district court is sufficiently apprised of even the possibility of a conflict of interest' . . . it has a threshold obligation to 'investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.'" *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019) (quoting *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994)) (editorial marks omitted). An actual conflict exists "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2001) (quotation marks omitted). By contrast, a potential conflict exists when "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003).

If the Court concludes that an attorney has an actual or potential conflict, the Court must "determine whether the conflict is so severe as to require the attorney's disqualification or whether it is a lesser conflict that can be waived in a *Curcio* hearing." *Arrington*, 941 F.3d

at 40. After a *Curcio* hearing, "[i]n most cases," a defendant may make a knowing and voluntary waiver of his or her right to conflict-free counsel. *Id.* (quoting *United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012). "In rare cases," however, "an attorney's conflict is unwaivable because it is so serious that no rational defendant would have knowingly and intelligently desired the conflicted attorney's representation, or because . . . the conflict is so severe as to indicate *per se* that the rendering of effective assistance will be impeded." *Id.* (quotation marks and editorial marks omitted).

If an attorney has a "waivable actual or potential conflict, the district court must conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation." *Id; see also United States v. Curcio*, 680 F.2d 881, 888-90 (2d Cir. 1982). At a *Curcio* hearing, the court must:

(1) advise[] the defendant of his right to representation by an attorney who has no conflict of interest,

(2) instruct[] the defendant as to the dangers arising from particular conflicts,

(3) permit[] the defendant to confer with his chosen counsel,

(4) encourage[] the defendant to seek advice from independent counsel,

(5) allow[] a reasonable time for the defendant to make a decision, and

(6) determine[], preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*United States v. Perez*, 325 F.3d 115, 119 (2d Cir. 2003). The purpose of a *Curcio* hearing is not for the court to "recit[e] any particular litany of questions," but to ensure that "the defendant appreciate[s] his [or her] predicament." *United States v. Jenkins*, 943 F.2d 167, 176 (2d Cir. 1991).

Here, the government does not know what confidential information the government witness provided to the FPD's office, nor does it know the defendant's trial strategy. The government therefore cannot assess whether the conflict here is actual or potential, or whether it is waivable under the Rules of Professional Conduct. In the government's view, however, there are several possible conflicts in which the government witness' interest would potentially diverge from the Gogolack's.

First, to the extent Gogolacks's defense would be advanced by confidential information provided to the Assistant Federal Public Defender who previously represented the government witness, other members of the Federal Public Defender's office would be ethically prohibited from using that information to benefit Gogolack. *See* N.Y. Rule of Prof. Conduct 1.9.

Second, the Federal Public Defender's office may be ethically prohibited from advising Gogolack about, pursuing, or participating in a defense that would be contrary to the government witness's interests. *See id.*

Moreover, in the event the government calls the government witness to testify at trial, the Federal Public Defender's office's continuing duties to the government witness would render them unable to both effectively and ethically cross-examine him. *See, e.g.*, *Arrington*, 941 F.3d at 41 (identifying conflict where attorney had previously represented codefendant with respect to overt act charged in indictment, and noting that "[t]he effects of this conflict would have been magnified had [former client] testified in his own defense at a joint trial"); *United States v. Mazzariello*, 13-CR-211-A, 2015 WL 11108936, at *9 (W.D.N.Y. Dec. 18,

2015) (finding unwaivable conflict because, among other reasons, conflicted counsel "will be precluded, because of his duty of confidentiality and loyalty to a former client, from asking questions about an affidavit wherein the key Government witness [whom conflicted counsel previously represented] made statements directly contradictory to the statements he is anticipated to make at trial which go to the heart of the alleged criminal activity. It is difficult to imagine a scenario where an attorney's interest with respect to a course of action in a case could be more divergent from the interests of his clients").

Thus, there is at least a potential conflict in the Federal Public Defender's office's continued representation of Gogolack, and the government therefore requests that, if the Court deems it appropriate, the Court hold a hearing (1) to determine whether the conflict is waivable, (2) in the event the conflict is waivable, whether the defendant wishes to waive the conflict, and (3) to conduct a *Curcio* colloquoy to ensure that the Gogolack's waiver is knowing and voluntary. Additionally, if the Court determines the conflict is waivable, ethical considerations may require that the government witness should also be required to waive any conflict of interest.

The Supreme Court has held that, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the [legal] profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. 160, and that the Court, "must balance the defendant's constitutional right [to counsel of his choosing] against the need to preserve the highest ethical standards of professional responsibility." *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir. 1982); *see also United*

States v. Williams, 372 F.3d 96, 108 (2d Cir. 2004) (holding that a court "is obligated to conduct an inquiry into a potential conflict of interest when 'sufficiently apprised of even the possibility' that a conflict of interest may exist") (citations omitted).

**WHEREFORE,** the government respectfully requests that the Court conduct an inquiry into the conflict of interest in the Federal Public Defender's office's representation of Gogolack in this action. The government also requests that, should the Court request additional information regarding the government witness, that the government be permitted to file any such information under seal with access given only to counsel of record in this case.

DATED:   Buffalo, New York, June 25, 2025

                                          MICHAEL DIGIACOMO
                                          United States Attorney

BY:   s/NICHOLAS T. COOPER
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       585-935-7512
       Nicholas.Cooper@usdoj.gov