IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

   -v-

PETER GERACE, JR.

                        Defendants.
_____

## DEFENDANT'S RESPONSE TO THE GOVERNMENT'S APPEAL OF THE MAGISTRATE COURT'S ORDER DIRECTING *IN CAMERA* INSPECTION OF GRAND JURY MINUTES

Case No.: 23-CR-99

Dated: July 8, 2025

## TABLE OF CONTENTS

I. BACKGROUND --------------------------------------------------------------------------- 3

II. LEGAL ANALYSIS---------------------------------------------------------------------- 9

   A. MAGISTRATE JUDGE MCCARTHY'S ORDER IS ENTITLED TO DEFERENTIAL REVIEW -------- 9

   B. RULE 6(E)(3)(E)(II) AUTHORIZES DISCLOSURE WHERE A GROUND *MAY* EXIST TO DISMISS
THE INDICTMENT ------------------------------------------------------------------------10

   C. GRAND JURY SECRECY IS NOT ABSOLUTE AND YIELDS WHERE JUSTICE REQUIRES--------11

   D. *IN CAMERA* REVIEW DOES NOT REQUIRE A FINDING OF A PARTICULARIZED NEED -------12

III. DISCUSSION -------------------------------------------------------------------------15

   A. THE LEGAL STANDARD WEIGHS HEAVILY AGAINST THE GOVERNMENT'S APPEAL,
PARTICULARLY GIVEN MAGISTRATE JUDGE MCCARTHY'S EXERCISE OF DISCRETION --------15

   B. MAGISTRATE JUDGE MCCARTHY'S ORDER WAS NARROW AND CAUTIOUS, NOT
OVERREACHING -------------------------------------------------------------------------17

   C. THE GOVERNMENT'S ARGUMENTS – RAISED FOR THE FIRST TIME AT ORAL ARGUMENT –
ARE CONTRADICTED BY ITS PRIOR SUBMISSIONS--------------------------------------------19

      1. *The Government Did Not Dispute the Factual Falsity of ¶25 in Its Written Opposition* 19

      2. *The Government Did Not Address the Prosecutorial Steering Argument in Its Written
Response*-------------------------------------------------------------------------23

   D. EVEN IF A PARTICULARIZED NEED IS REQUIRED FOR *IN CAMERA* REVIEW, THE
GOVERNMENT'S APPEAL STILL FAILS------------------------------------------------------24

      1. *Even If the "Particularized Need" Standard Was Required, It Was Satisfied* --------------25

      2. *The False Allegation in ¶25 Was Not a Mere "Disagreement," but a Demonstrably False
Factual Representation*---------------------------------------------------------------26

      3. *The Prosecutorial Steering Allegations Directly Implicate the Grand Jury's Integrity*---27

      4. *In Camera Review Is A Properv Initial Step to Address These Concerns*-------------------28

      5. *The Court's Order Does Not Establish a Broad Precedent* -----------------------------29

IV. CONCLUSION-------------------------------------------------------------------------30

# I. BACKGROUND

On March 29, 2025, defendants filed non-dispositive pre-trial motions which sought disclosure of grand jury transcripts and minutes pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). Throughout the defendants' non-dispositive submissions, multiple potential grounds for dismissal of the indictment[1] were raised.

In a joint filing by defendants Ermin, Gerace, and Hinkle, the defendants specified that among the motions to dismiss there are at least two distinct "particularized needs" that justified disclosure of grand jury minutes: (1) the government's presentation of demonstrably false factual allegations in the indictment, including ¶25[2]; and (2) evidence of "prosecutorial steering," i.e., that the government had selectively withheld related-case designations to influence judicial assignment. Docket Item 410-1 at 67–68.[3] Defendant Gogolack joined in the motion for disclosure of grand jury minutes. Docket Item 404 at 37.

The government filed its response on April 30, 2025. Docket Item 423.

---

[1] All references to the indictment in this submission are references to the Second Superseding Indictment. *See* Docket Item 24.

[2] The relevant portion of ¶25 of the indictment alleges that "[t]he listing of Crystal Quinn as a witness for Gerace *circumvented the provisions of a Protective Order* which prohibited attorneys for Gerace *from revealing to Gerace the government's witnesses' names and from providing Gerace with the government's witness list*." Docket Item 24 at ¶25 (emphasis added).

[3] Aside from false testimony in the grand jury the defendants raised other issues and made discovery requests so that the defendants could challenge whether the proceedings were defective.

In its Response, the government did not argue that the defendant misinterpreted ¶25. In fact, the government attempted to characterize the defendants' arguments as a "general disagreement with findings." Docket Item 423 at 54–55.[4] The government rested its argument on the premise that "the defendants are not entitled to challenge a grand jury proceeding—or the contents of an indictment—because they *disagree with the facts asserted*." Docket Item 423 at 54. Indeed, the facts asserted were that Attorney 1 "circumvented" specific provisions of the protective order which include "revealing to Gerace the government's witnesses' names" and "providing Gerace with the government's witness list."[5]

The government offered no correction to the defendants' interpretation of the plain language of the allegation in ¶25—i.e., that Mr. Gerace's attorney revealed Ms. Quinn's status as a government witness in violation of a protective order, which was clearly false and contradicted by public filings and court transcripts.

Nor did the government offer any substantive facts to dispute evidence that established prosecutorial steering, including (1) the timeline of related-case filings; (2)

---

[4] Page citations reflect ECF pagination.

[5] The defendants' non-dispositive motions included a motion for a bill of particulars to determine whether Attorney 1 is alleged by the government to be a co-conspirator. In regard to Count 1, the defense is unable to determine what the grand jurors were told about Attorney 1. For example, it is unclear if the government alleges Attorney 1 is a co-conspirator who by definition acts with criminal intent such that his actions can/should be imputed to his client (Gerace). This is particularly relevant, because there is no allegation whatsoever that Attorney 1 communicated with Gerace in taking the cited actions or, if he did, how those legal acts support the indictment.

inconsistent public statements by the government; and (3) the internal FBI documents that explicitly linked the Gogolack investigation to FBI Case ID 58A-BF-3179872 which included the investigation underlying Case No, 19-cr-227, *USA v. Bongiovanni et al.* Docket Item 410-1 at 74–85.[6] The government declined to offer a substantive rebuttal and instead resorted to calling the theory a "baseless fishing expedition." Docket Item 423 at 55.

Defendants filed individual replies. *See e.g.* Docket Item 431 (Gerace Reply). Gerace acknowledged that "[i]t is true, general disagreement may exist in most criminal cases." However, "[t]he issue here is far more concerning. There are overt acts among the grand jury's findings, that are demonstratively false, so much so that it is clear the government knew they were false but nonetheless allowed for an indictment to be returned on this false information." Docket Item 431 at 22.

The defense emphasized that the government had "no response" to specific points made regarding the falsity of ¶25 despite having several months to workshop a response[7]:

> The government has an inherent responsibility for candor, and yet, if this Court were to accept the government's position in its response, the Court would endorse the position that the government can knowingly act on and present evidence, without judicial oversight, so long as the defendant gets a

---

[6] An FD-1057 dated August 11, 2023 (Bates No. 00010744) identified the Quinn death investigation under the same case number associated with USA v. Bongiovanni et al and labeling it as "PUBLIC CORRUPTION AND LCN RELATED." This record pre-dates the filing of the indictment against Gogolack.

[7] Gerace had raised these issues in multiple submissions in 2024. *See. e.g.* Docket Item 164 at 11. The government never once responded suggesting that the defense misinterpreted ¶25.

trial. That is a frightening concept—one that should be rejected by this Court.[8]

*Id.*

On May 21, 2025, the Court held oral argument on the pending non-dispositive motions. The defense reiterated its arguments regarding the grand jury, focused primarily on ¶ 25. It was clear Magistrate Judge McCarthy understood the argument:

> MAGISTRATE JUDGE MCCARTHY: Your argument is that Paragraph 25, which is one of the overt acts, is on its face false. It's because everybody knew that she had already been disclosed by listing her as a defense witness. That wasn't a violation of the protective order because the protective order related to revealing the government's witnesses. So the Grand Jury could only have gotten that information from, from the prosecutor, isn't that right?
>
> MR. FOTI: Yes.

Docket Item 438 at 79.

The government, however, had developed a new argument that the defendants had misinterpreted ¶25. Even though the paragraph clearly alleges listing Quinn on the defense witness list circumvented the protective order and identified the provisions which were being circumvented as "revealing to Gerace the government's witnesses' names" and "providing Gerace with the government's witness list", the government now argued that circumvention was not related to Gerace learning that Quinn was a

---

[8] The Court obviously has judicial oversight over the presentation of evidence, and when the evidence presented is clearly false, the Court is necessarily empowered to act in its supervisory function to ensure constitutional protections are afforded to the accused.

government witness. *Id*. at 89-90. Instead, the government argued, for the first time, that by listing Quinn on the defense witness list, "Gerace had her name, her 3500 materials and through having his own witness list when in fact she's a government witness, an ability to discuss her in meetings with people or in the jail." *Id*. at 94.[9]

Later the government argued "[s]o they [Gerace Attorney 1] have the government's witness list, a summary of her testimony, they presumably reserved their right to call any witness that's on the government's witness list but by giving Gerace his own witness list and having her name on it, there, there's, the Grand Jury could find there was circumvention at play because Paragraph 29 [of the second superseding indictment] on July 6, Ermin visited Gerace in person at the Niagara County jail." *Id*. at 99.[10]

Under questioning, government conceded that "circumvent" means, at a minimum, "indirectly violate a protective order." *Id*. at 91. The government also conceded

---

[9] To be clear, ¶25 does not say that Attorney 1 violated the protective order by listing Quinn as a witness so that Gerace had a pretext to discuss her at the jail. It does not say Gerace Attorney 1 listed Quinn as a witness and violated the protective order by revealing the substance of Jencks material. It states the provisions violated were "revealing to Gerace the government's witnesses' names" and "providing Gerace with the government's witness list."

[10] Setting aside the fact that this argument is not consistent with the language in the overt act, the argument is also entirely illogical: The protective order prevented defense counsel from revealing to Gerace who was on the government's witness list; the protective order did not allow the government to weaponize its witness list to halt defense counsel from having discussions they were already having with Gerace about facts relevant to a potential defense, which would naturally include that Quinn was publicly charged by the government earlier that year, and then the charges were dropped once the government had utilized her to obtain a new indictment and detention of Gerace, which all happened before the government provided its witness list.

that the protective order only barred revealing government witnesses, not defense witnesses. *Id*. at 88.

Following the argument, Magistrate Judge McCarthy ordered *in camera* review of the grand jury minutes. *Id*. at 102-103. It was clear, that at a minimum, the Court was motivated by concern over how a grand jury could find that a defense attorney putting a witness on their own witness list violated a protective order:

> But focusing again only on -- and I've read the other allegations, the factual allegations but I still have trouble with how the Grand Jury was able to -- I'm not addressing this in terms of whether there's evidence to support it, I'm addressing it in terms of how was the jury instructed so that they could make this finding.

> *Id*. at 103.

In issuing his ruling from the bench, Magistrate Judge McCarthy made clear that the defense had demonstrated a sufficient particularized need under Rule 6(e), but nonetheless, he denied requests from defense counsel to have grand jury minutes disclosed to the defense under a protective order. Rather, Magistrate Judge McCarthy merely ordered *in camera* review. *Id*. at 103 ("So I am going to direct that the Grand Jury minutes be given to me for my in-camera review. Mr. Foti, I know you've asked that you have access to it, too. Not at this point because I think I have enough to make my own determination as to whether or not further disclosure is appropriate.")

The government did not request a stay and indicated it would have the materials to the Magistrate by the following week. *Id*. at 153.

On June 4, 2025, the government filed an appeal of the disclosure order. Docket Item 443. The defense provides the following Response.

## II. LEGAL ANALYSIS

### A. MAGISTRATE JUDGE MCCARTHY'S ORDER IS ENTITLED TO DEFERENTIAL REVIEW

When a party appeals a magistrate judge's ruling on a non-dispositive pretrial matter, the district court's review is subject to the "clearly erroneous" or "contrary to law" standard of review. *See* 28 U.S.C. § 636 ("A judge of the court may reconsider any pretrial matter… where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); Fed. R. Crim. Pro. 59(a)("The district judge must… modify or set aside any part of the order that is contrary to law or clearly erroneous") *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F. 2d 522, 525 (2nd Cir. 1990)( "[t]he district court reviews [non-dispositive] orders under the 'clearly erroneous or contrary to law' standard.")

The "clearly erroneous" standard is highly deferential. The standard imposes a "heavy burden" on the objecting party. *United States v. Williams*, 339 F. Supp. 3d 129, 132–33 (W.D.N.Y. 2018). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Feneziani*, 2007 WL 1613630, at *1 (W.D.N.Y. June 1, 2007) (internal quotation and citation omitted).

Legal conclusions are reviewed under the "contrary to law" standard, which likewise does not permit reversal merely because the district judge generally disagrees with the magistrate's interpretation. The standard is met only where the magistrate's ruling "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002).

Here, Magistrate Judge McCarthy did not make a Rule 6(e) decision to disclose the grand jury minutes to defense counsel. To the extent the Court determined that in camera inspection is appropriate, that decision involved both legal interpretation and factual evaluation—balancing the strength of defendants' showing against the policy of grand jury secrecy—it is squarely within the scope of matters traditionally left to the discretion of magistrate judges. As the Second Circuit has recognized, magistrate judges are entrusted with broad discretion in resolving non-dispositive pretrial matters. *See e.g. Thomas E. Hoar*, 900 F.2d at 525.

## B. Rule 6(e)(3)(E)(ii) Authorizes Disclosure Where a Ground *May* Exist to Dismiss the Indictment

Federal Rule of Criminal Procedure 6(e) provides that a court "*may* authorize disclosure of a grand-jury matter... at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii)(emphasis added).

The rule does not require a showing of dismissal-worthy error at the outset; rather, it permits disclosure when a defendant identifies a plausible basis to question the integrity of the grand jury process.

The fact that Rule 6(e) only requires the defense to establish that there "may" be grounds for dismissal were emphasized by Magistrate Judge McCarthy when he ordered disclosure for *in camera* review.

### C. Grand Jury Secrecy Is Not Absolute and Yields Where Justice Requires

While grand jury secrecy is a foundational principle, it is not absolute. *In re Biaggi*, 478 F.2d 489, 492 (2d Cir. 1973).

In *Dennis v. United States,* the Supreme Court made the following observations regarding the need for some degree of government oversight:

> A conspiracy case carries with it the inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants. *See, e. g., United States v. Bufalino*, 285 F. 2d 408, 417-418 (C. A. 2d Cir. 1960). Under these circumstances, it is especially important that the defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked. In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact… we cannot accept the view of the Court of Appeals that it is "safe to assume" no inconsistencies would have come to light if the grand jury testimony had been examined. There is no justification for relying upon "assumption."
>
> *Dennis v. United States*, 384 U.S. 855, 873–74 (1966)

The Court went on to emphasize, in certain circumstances, it is not "realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however [] conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Id.* at 874–75.

The Supreme Court has emphasized that under Rule 6(e), secrecy must give way when "the material they [sought] is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979).

However, the balancing test promulgated in *Douglas* is considered in the context of disclosure to the defendant(s) or the public. Disclosure for *in camera* review cannot be said to implicate the same privacy concerns regarding grand jury proceedings, and thus, the analysis is necessarily different from when a private party seeks access to the records.

D. I*N* C*AMERA* R*EVIEW* D*OES* N*OT* R*EQUIRE A* F*INDING OF A* P*ARTICULARIZED* N*EED*

In *Douglas*, when reviewing the need for secrecy of grand jury proceedings, the Supreme Court identified "several distinct interests":

> First, if preindictment proceedings *were made public*, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify

would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co.*, 441 U.S. 211 at 219.

The privacy interests associated with grand jury proceedings, as discussed, relate to *public* disclosure or disclosure to private parties which may encroach on those same policy concerns. They are not implicated by *in camera* inspection.

Numerous courts, including the Second Circuit, have logically distinguished the review of grand jury materials by the Court from the privacy interests associated with public disclosure. *See e.g. United States v. Alexander*, 860 F.2d 508, 513 (2d Cir. 1988)("we see no reason why the government cannot state its sentencing position in open court in terms that do not reveal matters that occurred before the grand jury, furnishing the supporting grand jury material to the court in a sealed filing").

Nonetheless, some courts have required demonstration of a particularized need, even for purposes of *in camera* review, including at least one case in this district repeatedly cited by the government in its appeal. Docket Item 443; *citing United States v. Smith*, 105 F. Supp. 3d 255 (W.D.N.Y. 2015).

However, other judges in this district have not applied the particularized need standard for *in camera* inspection. For instance, in *United States v Eldridge*, defendants moved for grand jury minutes, alleging that a grand jury witness had offered perjured testimony, and to remedy that, the government superseded the indictment and called a law enforcement officer to testify about the falsity of the witness's prior testimony. 2014 WL 257224, at *4 (W.D.N.Y. Jan. 23, 2014). Although "[a]t this juncture, defendants [had] not demonstrated a particularized need for disclosure," the court conducted an *in camera* instruction of the grand jury testimony. *Id*; *see also United States v. Allen*, 2014 WL 1745933, at *2 (W.D.N.Y. Apr. 30, 2014) (conducting an *in camera* review before determining that no particularized need existed for further disclosure).

Similarly, in *United States v Twersky*, the defendants had alleged that the grand jury was improperly instructed. 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994). There, the court ordered an *in camera* review of the grand jury minutes to determine if the defense had demonstrated particularized need. *Id*. at *5.

In support of the conclusion that a particularized need is not required for *in camera* inspection, in *Dennis*, the Supreme Court specifically addressed whether *in camera* review was "an appropriate or satisfactory measure *when there is a showing* of a 'particularized need' for disclosure." *Dennis*, 384 U.S. at 874 (emphasis added). The Court went on to say that "[w]hile this practice *may be useful in enabling the trial court to rule on a defense motion*

*for production* to it of grand jury testimony — and *we do not disapprove it for that purpose*—

it by no means disposes of the matter." *Id*. (emphasis added).

*Dennis* clearly supports the conclusion that if there is a particularized need for

disclosure, the disclosure should be made directly to the party seeking it, but when

considering a motion for disclosure, *in camera* review is an appropriate step the Court

may take towards ruling on the defense motion for production.

## III. DISCUSSION

### A. THE LEGAL STANDARD WEIGHS HEAVILY AGAINST THE GOVERNMENT'S APPEAL, PARTICULARLY GIVEN MAGISTRATE JUDGE MCCARTHY'S EXERCISE OF DISCRETION

As a threshold issue, the government's appeal fails because even if the

government's factual arguments had merit – which they do not for reasons discussed

below –the narrow scope of Magistrate Judge McCarthy's ruling considered under the

deferential standard of review applicable under Rule 59(a) and the rule of lenity all

reinforce the conclusion that the order should stand.

Magistrate Judge McCarthy's decision was made pursuant to his authority to

resolve non-dispositive pretrial matters under Rule 59(a) and 28 U.S.C. § 636(b)(1)(A). As

such, the district court shall not reverse unless the Magistrate's ruling was "clearly

erroneous or contrary to law."

This standard is "highly deferential." It permits reversal only if the district court

is "left with the definite and firm conviction that a mistake has been committed." *Easley*

*v. Cromartie*, 532 U.S. 234, 242 (2001); *see also Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (standard met only where magistrate "misapplies relevant statutes, case law, or rules of procedure").

In this case, Magistrate Judge McCarthy reviewed extensive documentary submissions, conducted oral argument, and made specific findings sufficient to warrant disclosure, or at minimum *in camera* review. His decision to order only *in camera* review—without making any prejudgment about whether further disclosure would follow—was a measured exercise of discretion and does not warrant second-guessing. Nothing in the government's appeal demonstrates that the ruling was either clearly erroneous or contrary to law.

The government asks this Court to invalidate a cautious, legally grounded judicial determination without identifying any misapplication of law or clear error of fact. In doing so, it proposes an extreme view of Rule 6(e) that would insulate the grand jury process from even the most limited form of judicial oversight—*in camera* review— regardless of the strength of the showing. That view is not supported by the text of Rule 6(e), the case law interpreting it, or the equitable traditions of criminal practice.

Where, as here, the Magistrate Judge exercised appropriate judicial discretion, supported by unrebutted factual submissions, the law requires that his decision be respected, particularly in this case, where Magistrate Judge McCarthy merely ordered *in camera* review.

### B. MAGISTRATE JUDGE MCCARTHY'S ORDER WAS NARROW AND CAUTIOUS, NOT OVERREACHING

Magistrate Judge McCarthy did not grant wholesale disclosure of grand jury materials. Rather, he carefully limited the relief to *in camera* inspection of grand jury transcripts, primarily to determine whether the proceedings were tainted by the presentation of false or misleading information. As he explained on the record:

> I'm not saying I'll order full disclosure, but I will review the materials in camera to determine if the presentation to the grand jury was materially misleading.

> [Tr. 5/21/25 at 43].

As discussed above, The Supreme Court has recognized *in camera* review as a proper method of deciding a defense motion for disclosure under Rule 6(e). *Dennis*, 384 U.S. at 874 (*in camera* inspection "may be useful in enabling the trial court to rule on a defense motion for production to it of grand jury testimony — and we do not disapprove it for that purpose").

By choosing this limited relief, it is clear that Magistrate Judge McCarthy has recognized particularized concerns regarding the grand jury presentation, but rather than immediately ordering full disclosure, he ordered *in camera* inspection so he could appropriately balance the policy of grand jury secrecy and the need for fairness in criminal proceedings.

The government's motivation to thwart *in camera* inspection is obvious: it is concerned that Magistrate Judge McCarthy will ultimately find evidence that the grand

jury was misled by the government or confirmation that the government presented evidence against Mr. Gogolack that established a connection to Peter Gerace and Case No. 19-cr-227 before the first indictment was filed when the government chose not to file a related case form or both.[11]

Even if there was ambiguity in the scope of Rule 6(e)—which there is not—the rule of lenity favors resolving such ambiguity in favor of the defendant. As the Supreme Court has held, "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *United States v. Bass*, 404 U.S. 336, 348 (1971). While Rule 6(e) is a procedural rule, it governs access to potentially exculpatory or materially relevant information in a criminal proceeding. To the extent the government contends that Rule 6(e) precludes even *in camera* judicial review of the grand jury record—even where the defense alleges that the grand jury was affirmatively misled—that restrictive reading must be rejected. It would elevate secrecy over fairness, even where specific facts suggest government misrepresentation or manipulation.

---

[11] Or alternatively, the government is concerned that Magistrate Judge McCarthy will come across some other issue that the defense was previously unaware of. It was only after Magistrate Judge McCarthy indicated that he would conduct *in camera* inspection, nearly 18 months into the case, that the government started to turn over transcripts containing *Brady* information. These recent disclosures also revealed a conflict for the Federal Defender's Office which should have been identified at the outset of the case and will now cause substantial delay if the defendants are not severed. Furthermore, there are other potential grand jury issues such as potential violations of attorney-client priviledged, including Gerace and Attorney 1 and his investigator and communications between Quinn and her counsel.

Applying lenity in the procedural context of Rule 6(e) is consistent with the principle that criminal rules must be construed to safeguard defendants' rights—especially where liberty is at stake. *See United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 n.10 (1992) (rule of lenity applies broadly to statutes other than those found in the criminal code).

### C. THE GOVERNMENT'S ARGUMENTS – RAISED FOR THE FIRST TIME AT ORAL ARGUMENT – ARE CONTRADICTED BY ITS PRIOR SUBMISSIONS

The government's appeal presses arguments that are inconsistent with its prior submissions. The record reflects that the government did not address—much less refute—the core factual and legal assertions set forth in the defendants' Rule 6(e) motions until oral argument. Even then, its responses were inconsistent with its earlier written submissions. These tactical omissions and evolving arguments weigh heavily against reversal and reinforce the propriety of the Magistrate Judge McCarthy's decision to conduct *in camera* review.

### 1. The Government Did Not Dispute the Factual Falsity of ¶25 in Its Written Opposition

In their motion, defendants asserted that ¶25 of the Second Superseding Indictment falsely alleged that defense counsel "revealed" Crystal Quinn's cooperation by placing her on a witness list—when in fact her cooperation had already been made public through both court proceedings and unsealed records. Docket Item 410-1 at 68–73.

Despite the clarity and specificity of that argument, the government's written opposition failed to respond to it. Nowhere in its April 30, 2025 omnibus response did the government:

- Dispute the public availability of information about Ms. Quinn's cooperation prior to the defense filing;

- Justify the inclusion of ¶25 as an overt act in light of the known record; or

- Acknowledge the public court proceedings in which Quinn's cooperation was discussed.

Instead, the government dismissed the entire Rule 6(e) motion as a "general disagreement with the indictment," without addressing the particularized evidence of falsity. Docket Item 423 at 54–55.

As noted in the Background, *supra*, the government did not argue or even suggest that the defendants misinterpreted ¶25. The defendants were clear that they interpreted the overt act as the plain language suggested – accusing Attorney 1 of violating provisions of the protective order which were identified as "revealing to Gerace the government's witnesses' names" and "providing Gerace with the government's witness list."

Instead, mindful of the defendants' interpretation, the government characterized the defendants' arguments as a "general disagreement *with findings*." Docket Item 423 at 55 (emphasis added).

Thus, in its initial response, the government recognized that the defendants' interpretation of ¶25, was consistent with the grand jury's "findings." Docket Item 423 at 54 ("the defendants are not entitled to challenge a grand jury proceeding—or the contents of an indictment—because they disagree with the *facts asserted*" (emphasis added)).

It was not until oral argument that the government arrived with the new strategy of stringing together other tenuous allegations in the indictment to suggest that possible inferences can be drawn closer to the truth in contrast to the blatantly false allegation in ¶25.

Even though the government had previously referred to the defendants' review of ¶25 as disagreement with "the facts asserted," at oral argument, the government claimed for the first time that the defendants misinterpreted the paragraph.

> MR. CHALBECK: So I want to, I just one premise that I think is foundational to Mr. Foti's argument which is that in his view what paragraph 25 is alleging is that it is through the listing of Crystal Quinn as a defense witness that Mr. Gerace is able to learn of her status as a government witness. And that is not what paragraph 25 alleges. It alleges that the listing circumvented the protective order. But that does not equate to this is how Gerace learns that she's a witness.

> Docket Item 438 at 89.

The timeliness of this argument, first being presented at oral argument and now being advanced further in this appeal, is dubious on its face. But it is not the delay in

coming to this argument that should be of particular concern to this Court. It is the fact

that the government boldly advances this argument after having previously proffered the

following to Magistrate Judge McCarthy in an earlier sworn affidavit:

> United States v. Bongiovanni, et al., Case Nos. 19-CR-227, 23-CR-37, involved charges of witness tampering, public corruption, sex trafficking, drug trafficking, and obstruction of justice. A protective order was issued. See id. Doc. No. 347. Nevertheless, *counsel for Peter Gerace, including one of his present attorneys in that case, Eric Soehnlein, listed government witness Crystal Quinn as a defense witness*. Although the protective order prevented defense counsel from disclosing to the defendant the names of witnesses on the government's witness list until a certain number of days before trial, it did not prevent defense counsel from listing the government's witnesses on the defendant's own list and then reviewing the defense witness list with the defendant, *potentially circumventing the protective order, and identifying government witnesses to the defendant in a roundabout way.* Crystal Quinn was ultimately murdered, and defendants Gerace, Ermin, Hinkle, and Gogolack have been indicted by a grand jury for Witness Tampering Conspiracy surrounding her murder. See United States v. Gogolack et. al., 23-cr-99, Doc. No. 25, Second Superseding Indictment, Count 2.

> Docket Item 156 at 11-12 (emphasis added).

The factual arguments presented to this Court on this appeal are inconsistent with

the earlier sworn submissions of the government to Magistrate Judge McCarthy, cited

above. Specifically, the government stated that "counsel for Peter Gerace, including one

of his present attorneys in that case, Eric Soehnlein, listed government witness Crystal

Quinn as a defense witness" and then goes on to say it "potentially circumvent[ed] the protective order" by "**identifying government witnesses to the defendant**."

Even if the standard of review was not "clear error," to the extent that the government presents a factual argument in hopes of persuading this Court to overturn Magistrate Judge McCarthy, it should be rejected outright based on the plain language of the indictment and the record of submissions in this case, which Magistrate Judge McCarthy was certainly familiar with.

## 2. The Government Did Not Address the Prosecutorial Steering Argument in Its Written Response

The defendants' motion also detailed a second independent basis for disclosure: the government's manipulation of related-case filings to avoid assignment to the same judge as the Bongiovanni/Gerace matter, despite internal FBI documents showing that the Gogolack matter was part of the same case. [Dkt. 410-1 at 74–85; FD-1057, Bates No. 00010744].

Again, the government's written opposition did not engage with this argument. It offered no legal response, no factual rebuttal, and no denial that the related-case forms had been withheld until after reassignment. The entirety of the government's treatment of this theory in its brief was a conclusory statement dismissing the argument as "baseless." [Dkt. 423 at 55].

That failure to engage with the defense's detailed submission should have carried weight with the Magistrate Judge McCarthy. The government avoids addressing the issue on this appeal on the argument that Magistrate Judge McCarthy did not appear to address prosecutorial steering when deciding to order disclosure for in camera inspection, but Magistrate Judge McCarthy did not deny the motion on those grounds, either.

The government should not be permitted to withhold substantive responses in opposition, decline to engage with material evidence, and then demand reversal of a discretionary order that was shaped by that silence. The government had every opportunity to rebut the defense's factual and legal showing in its briefing. It declined to do so.

### D. EVEN IF A PARTICULARIZED NEED IS REQUIRED FOR *IN CAMERA* REVIEW, THE GOVERNMENT'S APPEAL STILL FAILS

Magistrate Judge McCarthy did not abuse his discretion in ordering *in camera* review of the grand jury minutes. Rule 6(e)(3)(E)(ii) expressly authorizes disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Here, defendants identified two independent and factually substantiated grounds that meet this standard: (1) the government knowingly included a demonstrably false overt act in the indictment; and (2) the grand jury presentation was tainted by prosecutorial steering and judge-shopping.

Both grounds are supported by undisputed facts in the record and give rise to a

"particularized need" sufficient to warrant the narrow remedy of in camera inspection.

The government's arguments to the contrary misstate both the facts and the applicable

legal standard. Each is addressed in turn below.

<u>1. Even If the "Particularized Need" Standard Was Required, It Was Satisfied</u>

The government argues that the Magistrate Judge McCarthy "misapplied" Rule

6(e)(3)(E)(ii) by failing to demand a "grossly prejudicial irregularity" or "compelling

necessity" for disclosure.

In doing so, the government mischaracterizes both the procedural posture and the

limited relief granted. The Magistrate did not order wholesale dismissal of the indictment

or disclosure of minutes to defendant—only an *in camera* review of the grand jury

materials to make a further determination whether the integrity of the proceedings had

been compromised.

Nonetheless, even if the Magistrate had ordered disclosure to the parties, the

Second Circuit clearly held that the defendant can "overcome the presumption of

regularity that attaches to a grand jury proceeding" by presenting "particularized proof

of an improper purpose." *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023).

In *Calk*, the Circuit made particularly relevant observations:

> Ensuring the regularity of the grand jury process is especially
> important because of the risks for abuse that inhere in
> proceedings over which trial and appellate courts rarely have

insight. Relative to defendants, prosecutors already have significantly greater powers and leverage to gather evidence in preparation for trial. And, without effective safeguards, prosecutors could otherwise abuse the grand jury subpoena and skirt the limits imposed on discovery by the Federal Rules of Criminal Procedure.

*Id.*

Under the facts here, the defendants had presented proof of demonstratively false information in the indictment, more than sufficient to overcome the presumption of regularity and warrant disclosure to the parties, but again, the Magistrate took a measured approach of directing *in camera* inspection as a step towards appropriately deciding the issue.

## 2. The False Allegation in ¶25 Was Not a Mere "Disagreement," but a Demonstrably False Factual Representation

The government's earlier argument that the defendants merely "disagree" with the indictment fails to engage the substance of the defense's motion. As shown in briefing and at oral argument, paragraph 25 of the Second Superseding Indictment alleges that Mr. Gerace's attorney revealed Crystal Quinn's status as a government witness by including her on a defense witness list, thereby "circumvent[ing]" a protective order. Docket Item 24 at ¶25.

This claim is not merely contested—it is demonstrably false. Ms. Quinn's cooperation with the government was publicly revealed at a detention hearing held on March 24, 2023, where the government openly stated that it had "got a third witness"

regarding the November 2019 incident. Docket Item 410-1 at 6–8; Tr. 3/24/23 at 38. That hearing occurred weeks before the defense witness list was filed. Moreover, the criminal complaint against Ms. Quinn had been unsealed in early February 2023, and both the Buffalo News and public dockets made clear she was cooperating with the government. The government has never refuted this factual timeline despite multiple opportunities— including in its protective order briefing and in its Rule 6(e) opposition. Docket Item 164 at 11–17; Docket Item 423 at 50–55.

### 3. The Prosecutorial Steering Allegations Directly Implicate the Grand Jury's Integrity

The government argues that allegations of prosecutorial steering or judge-shopping are "outside" the scope of Rule 6(e) because they do not involve "a matter that occurred before the grand jury." This argument misunderstands both the nature of the defense claim and the rule itself.

Rule 6(e)(3)(E)(ii) authorizes disclosure when a "ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Here, the concern is not simply that the government manipulated the judge assignment process (though that is serious in itself), but that it presented a curated, misleading narrative to the grand jury to justify its strategy—specifically, one that was engineered to provoke detention, obscure judicial oversight, and shape public perception.

The defense submitted unrefuted evidence showing:

- The FBI labeled the Quinn death investigation as a "subfile" of the Bongiovanni/Gerace case from the outset (Case ID 58A-BF-3179872–DEATH QUINN). Docket Item 410-1 at 14; Bates No. 00010744].

- The government later denied any such relationship when pressed by Judge Vilardo at a March 2024 hearing. *Id*. at 55.

- Related-case forms were selectively filed only after a new judge had been assigned. *Id*. at 74–85.

These facts raise a legitimate issue that can be litigated further, including a motion to dismiss, which would be greatly impacted one way or another by review of the grand jury minutes, which is consistent with the need for disclosure pursuant to Rule 6(e).

### 4. *In Camera* Review Is A Proper Initial Step to Address These Concerns

The government repeatedly characterizes the motion as a "fishing expedition" but fails to identify any portion of the record that could be considered speculative. In reality, the defense provided over a dozen pages of detailed factual analysis, including docket citations, Bates-stamped discovery documents, and transcript excerpts. *See* Docket Item 410-1 at 67–85. The motion was precisely the kind of focused, fact-supported request that courts have recognized as satisfying Rule 6(e).

The defense did not seek dismissal during the non-dispositive posture. It merely proffered strong evidence to establish a potential basis for dismissal in hopes that the Court would order disclosure, and the defense could evaluate whether there was

sufficient basis for a motion to dismiss based on multiple issues, including whether the indictment was returned on a false or manipulated factual record. Magistrate Judge McCarthy chose the most conservative measure—an *in camera* inspection—to evaluate whether to order further relief, including potential disclosure of grand jury minutes.

The government's position advanced in its initial response to the non-dispositive motions—that even demonstrable falsity cannot justify disclosure—is not only legally incorrect, but also dangerous. It would leave the grand jury process immune from judicial oversight, even when there is reason to believe the government has misled the body it exclusively controls.

In this case, Magistrate Judge McCarthy has only taken a step towards resolving the motions by directing *in camera* review which does not implicate any privacy concerns associated with grand jury and only will if the Magistrate finds further confirmation of misconduct.

5. The Court's Order Does Not Establish a Broad Precedent

Finally, the government warns that upholding the Magistrate Judge's order would open the floodgates to grand jury disclosure. That concern is misplaced. This case involves a rare convergence of facts: a demonstrably false overt act, evidence of

misrepresentation to a presiding judge, and undisputed internal government records tying this case to a broader investigation.[12]

The Magistrate Court was careful to limit its ruling and to preserve the secrecy of the grand jury process: "I'm not saying I'll order full disclosure, but I will review the materials in camera to determine if the presentation to the grand jury was materially misleading." [Tr. 5/21/25 at 43].

This is not a "new rule." As the Supreme Court stated in *Dennis*, a Court has the ability to conduct *in camera* review in order to decide a defense motion for disclosure of grand jury minutes. Based on the facts of this case, there was more than sufficient justification to employ that procedure.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the government's appeal and affirm the Magistrate Court's order authorizing *in camera* review of the grand jury materials in conjunction with the defendant's motion for disclosure pursuant to Rule 6(e)(3)(E)(ii).

---

[12] The government made a similar argument that if Magistrate Judge McCarthy appointed second counsel to Gerace and Ermin, a flood of requests would come in from defendants asking for second counsel to be appointed. Given the unique facts of this case, that argument rang hallow then as it does here.

DATED:    Orchard Park, New York
          July 8, 2025

                                        s/ Cheryl Meyers Buth
                                        Cheryl Meyers Buth, Esq.
                                        MEYERS BUTH LAW GROUP, PLLC
                                        *Attorneys for Defendant Peter Gerace, Jr.*
                                        21 Princeton Place, Suite 105
                                        Orchard Park, New York 14127
                                        (716) 508-8598
                                        cmbuth@mblg.us

DATED:    Rochester, New York
          July 8, 2025

                                        s/ Mark A. Foti
                                        Mark A. Foti, Esq.
                                        THE FOTI LAW FIRM, P.C.
                                        *Attorneys for Defendant Peter Gerace, Jr.*
                                        16 W. Main Street – Suite 100
                                        Rochester, New York 14614
                                        (585) 461-1999
                                        mark@fotilaw.com

---

## CERTIFICATE OF SERVICE

I hereby certify that, on July 8, 2025, the foregoing submission is served on all counsel of record by electronically filing the submission with the Clerk of the United States District Court for the Western District of New York using the Court's Case Management/Electronic Case Filing system.

DATED:    July 8, 2025
          Rochester, New York

                                        s/Mark A. Foti
                                        Mark A. Foti, Esq.