UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA     )      23CR99
                             )
vs.
                                    Rochester, New York
SIMON GOGOLACK, PETER
GERACE, JR.,JOHN THOMAS ERMIN,
MICHAEL RONCONE, FRANK KNIGHT,
HOWARD HINKLE, JR.,          )   July 31, 2025
                Defendant.       10:00 a.m.
- - - - - - - - - - - - - - - X
**STATUS CONFERENCE**


              TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE ELIZABETH A. WOLFORD
              UNITED STATES DISTRICT JUDGE

**FOR PLAINTIFF:  NICHOLAS COOPER, ESQ.**
                 **CASEY L. CHALBECK, ESQ.**
                 **JOSEPH M. TRIPI, ESQ.**
                 Assistant United States Attorneys
                 138 Delaware Avenue
                 Buffalo, New York 14202


**FOR DEFENDANT:  NICHOLAS TIMOTHY TEXIDO, ESQ.**
                 69 Delaware Avenue, Suite 1100
                 Buffalo, New York 14202
                 (**For Defendant S. Gogolack**)

                 **MARK A. FOTI, ESQ.**
                 16 W. Main Street, Suite 100
                 Rochester, New York 14614
                     -and-
                 **CHERYL MEYERS BUTH, ESQ.**
                 21 Princeton Place
                 Orchard Park, NY 14127
                 (**For Defendant P. Gerace, Jr.**)


**COURT REPORTER: Karen J. Clark, Official Court Reporter**
                 **Karenclark1013@AOL.com**

                        USA V. S. GOGOLACK, ET AL

**FOR DEFENDANT:  GEORGE V.C. MUSCATO, ESQ.**
                 Muscato, DiMillo & Vona, LLP
                 107 East Avenue
                 Lockport, New York 14094
                     -and-
                 **DONALD M. THOMPSON, ESQ.**
                 16 West Main Street, Suite 243
                 Rochester, New York 14614
                 (**For Defendant J. Ermin**)

                 **PAUL G. DELL, ESQ.**
                 Law Office of Paul G. Dell
                 70 Niagara Street
                 Buffalo, New York 14202
                 (**For M. Roncone**)

                 **BARRY J. DONOHUE, ESQ.**
                 77 Broad Street
                 Tonawanda, New York 14150
                 (**For F. Knight**)

                 **FRANK M. BOGULSKI, ESQ.**
                 135 Delaware Avenue, Suite 2
                 Buffalo, New York 14202
                     -and-
                 **DANIEL J. HENRY, JR., ESQ.**
                 Villarini & Henry, LLP
                 16 Main Street
                 Hamburg, New York 14075
                 (**For H. Hinkle, Jr.**)

                    P R O C E E D I N G
              *              *              *

             THE CLERK:  We're on the record in the

matter of the United States versus Simon Gogolack, et.

Al, 20CR99

USA V. S. GOGOLACK, ET AL

THE COURT:  Good morning, everyone.  Why don't we first have appearances for the record.

On behalf of the government?

MS. CHALBECK:  Good morning.  Casey Chalbeck, Nicholas Cooper and Joe Tripi for the United States.

THE COURT:  Good morning.  And on behalf of Peter Gerace?

MR. FOTI:  Good morning, your Honor.  Mark Foti, Cheryl Meyers Buth on behalf of Mr. Gerace.  We asked to waive his appearance.  He is not in the courtroom.

THE COURT:  All right.  Mr. Gerace's appearance will be waived.

On behalf of Mr. Ermin.

MR. MUSCATO:  Good morning, your Honor.  George Muscato and Don Thompson, and our client is with us.

THE COURT:  Good morning.  Mr. Dell, are you on the telephone?

MR. DELL:  Good morning, I am.  And I'm waiving Mr. Roncone's appearance.

THE COURT:  Yes.  And you will be allowed to appear remotely because of other matters that you have

USA V. S. GOGOLACK, ET AL in Buffalo today.

On behalf of Mr. Knight, is Mr. Donohue here?

MS. MEYERS BUTH:  I know he was on his way. I was speaking to him when I was on my way in the car.

THE COURT:  On behalf of Mr. Hinkle?

MR. HENRY:  Daniel Henry and Mr. Bogulski on behalf of Mr. Hinkle, and he is present.

THE COURT:  On behalf of Mr. Gogolack?

MR. TEXIDO:  Good morning, your Honor. Nicholas Texidor on behalf of Mr. Gogolack.

THE COURT:  And Mr. Gogolack, I understand, refused transport today from the Marshal service.  Are you asking to waive his appearance?

MR. TEXIDO:  Yes.  It's my understanding that he was not feeling well at the time of transport.

THE COURT:  All right.  And I understand Mr. Kooshoian, who is your cocounsel is out of the country and he communicated with my Chambers about that.

MR. TEXIDO:  That is correct, your Honor. And we are both newly assigned as of a week or so ago.

THE COURT:  Very good.  So welcome to Rochester, everybody.

We have a number of matters I want to

USA V. S. GOGOLACK, ET AL

discuss. I've tried my best to get up to speed on the case over the past, I guess, few days. I have a list of items that I want to discuss and I'm sure all of you have items that you wanted to discuss, but unless there is something urgent that we need to discuss right now, and I appreciate Mr. Donohue is still not here, but why don't we go through my list first and then we can turn to your list, if that works for everybody.

So why don't we first address the deadline for dispositive motions, because I think in the communications from the government to me and in the communication that Mr. Foti sent by e-mail, that was kind of the first issue that you were all discussing. So Judge McCarthy, on May 21st, set the most recent deadline for dispositive motion of August 8th. I appreciate that Mr. Foti mentioned that there is an issue with respect to the grand jury minutes. I intend to address that today.

Come on in, Mr. Donohue. Welcome.

MR. DONOHUE: Good morning, your Honor.

THE COURT: Good morning. You can have a seat. We just went through appearances. Don't sit on that side, that is the wrong side.

MR. TRIPI: We'll take the help.

USA V. S. GOGOLACK, ET AL

THE COURT:  So, Mr. Donohue, we just went through appearances.  I take it you're asking to waive Mr. Knight's appearance?

MR. DONOHUE:  Yes, please.

THE COURT:  And I'm now turning to the first issue that I wanted to talk about, which is the dispositive motion deadline.  I appreciate that there is this issue about the grand jury minutes, and I intend to address that today.  But that being said, that seems to me as though that is one discrete issue that may be the subject, ultimately, of a motion to dismiss, depending on how that all transpires, but there doesn't seem to -- it doesn't seem to make sense to me, especially given the age of this case, to be holding up dispositive motion deadlines until that issue is resolved.  What I would like to do is keep this August 8th date with the understanding that, number one, if anything is discovered or produced after August 8th that then would serve as the purpose for a dispositive motion, that the defense could make an application at that point, including the grand jury minutes; and then two, I appreciate that Mr. Gogolack is in a different situation, and I think Judge Vilardo's intention had been to discuss with you and Mr. Kooshoian, Mr. Texido,

USA V. S. GOGOLACK, ET AL

about a schedule that will work for the two of you.  But other than that, I don't see why the rest of the defendants wouldn't be able to file dispositive motions on August 8th.

MR. DONOHUE:  If I could just jump in.

THE COURT:  Make sure you speak into the microphone, Mr. Donohue.

MR. DONOHUE:  Barry Donohue for Frank Knight.  Judge, I'm also on slightly different track because I came into the case, I think, like April 4th or something of this year.  So my non-dispositive motions are still pending and a dispositive motion date hadn't been set for me.

THE COURT:  So because the May 21st date in front of Judge McCarthy where he set the dispositive motion, you don't view that as applying to Mr. Knight?

MR. DONOHUE:  Correct.  And I don't think he does, either.  They set a non dispositive date for me that was different from everybody else.

THE COURT:  Does the government agree with that?

MR. COOPER:  Judge, we do agree with that. I think the intention at the time from Judge McCarthy was to give Mr. Donohue additional time to get up to

USA V. S. GOGOLACK, ET AL

speed.  So it was our understanding that Mr. Donohue was on a separate track.

THE COURT:  And I appreciate you just filed a motion for the appointment of second counsel in the case.  So with that being understood, with respect to, though, Mr. Gerace, Mr. Ermin, Mr. Roncone and Mr. Hinkle, would everyone agree the dispositive motion deadline is August 8th?

MR. MUSCATO:  Yes, your Honor.

MR. HENRY:  Yes.

MR. DELL:  Yes.

THE COURT:  Now, Judge McCarthy had suggested that he was going to meet with everybody then after those motions were filed to set a response deadline for the government.  But I don't see -- I do intend to address the motion to reverse the referral order.  I do intend to, at a minimum, take back some of the dispositive motions in this case.  That being said, I don't see why we can't set a deadline right now for the government to respond to the motions that are going to be filed August 8th.  And my plan is, though, we'll have a status conference after the motions are filed to discuss, among other things, which motions I'll resolve, and also whether or not the deadline I set for the

USA V. S. GOGOLACK, ET AL

government is workable.

MS. CHALBECK:  We agree with that, your Honor.

THE COURT:  Does that make sense?  So in terms of a deadline for the government to respond after August 8th, what are you -- would you be proposing?

MS. CHALBECK:  If your Honor would be willing to provide the government three weeks.

THE COURT:  Three weeks?  I was going to give you 30 days.

MS. CHALBECK:  We'll take 30 days.

THE COURT:  Okay.  So 30 days would take us to September 5th.  And does the defense anticipate that you would want to file reply papers?  Yes.  I see heads shaking yes.  Two weeks, is that doable?

MR. FOTI:  Yes.

THE COURT:  So why don't we say September 19th then for any reply papers.

And I'll jump right to this.  I'm in Buffalo on August 20th, I think it's August 20th.

THE CLERK:  That is correct, Judge.

THE COURT:  So what I would like to do is if works for at least most of us, set a status conference on that date to talk about what dispositive motions have

USA V. S. GOGOLACK, ET AL

been filed and which ones I intend to resolve and which ones I intend to have the magistrate judge resolve.

MR. THOMPSON:  August or September?

THE COURT:  It's August.  Did I say September?

MR. THOMPSON:  August.

MR. MUSCATO:  August 20th.

THE COURT:  August 20th, it's a Wednesday. I'm pretty wide open.  I have something at the lunch hour.  Other than that, I'm available.

MR. COOPER:  That works for the government.

MR. THOMPSON:  I'm on trial before Judge Vilardo and maybe you can get me excused.

THE COURT:  I think you may have a plea hearing in that case.

MR. THOMPSON:  Not that case, another one.

THE COURT:  Do you have a preference, Mr. Thompson, about the time?

MR. THOMPSON:  It's up to you.  Whenever you can get me excused, I'll be there.

MR. DELL:  This is Paul Dell.  I have a 9:30 that hopefully won't take very long.

THE COURT:  Okay.  Why don't we say 1:30 on August 20th for a further status conference in Buffalo?

USA V. S. GOGOLACK, ET AL

MR. BOGULSKI:  Judge, I'm not available that day, but Mr. Henry, because we have two lawyers.

THE COURT:  Sure.  Thank you.

MR. BOGULSKI:  Thank you.

THE COURT:  Thank you.  What I'd like to do then as well on August 20th then, if it makes sense to everyone, is talk with both Mr. Donohue and Mr. Texido and Mr. Kooshoian, hopefully Mr. Kooshoian is available, about a schedule that works for you with respect to dispositive motions.  Does that make sense?

MR. TEXIDO:  Yes, your Honor.  Thank you.

MR. DONOHUE:  Yes, your Honor.

THE COURT:  So anything else on the dispositive motion deadline at this point?

MS. CHALBECK:  Nothing from us.

THE COURT:  Okay.  I note, Ms. Chalbeck, you indicated that the government is no longer objecting to the motion for a change of vicinage, I have to admit I've never dealt with that word before.  And I understand, if I'm following this correctly, that Mr. Gerace, Mr. Ermin and Mr. Hinkle are in favor of this trial taking place in Rochester, but it's not clear to me whether or not Mr. Roncone, Mr. Knight and Mr. Gogolack have formed an opinion on this.  So I guess

USA V. S. GOGOLACK, ET AL

I'll start maybe, Mr. Dell, with you.  Does Mr. Roncone have a position on that?

MR. DELL:  Your Honor, personally, I prefer Buffalo just so I don't have to make that trip, but legally I don't have a position.  It's out of convenience, I'd rather do it in Buffalo.

THE COURT:  Okay.  What about, Mr. Donohue, do you have a position on it?

MR. DONOHUE:  I don't have a position, but I haven't spoke with my client about it, partly because we weren't movant on that, so I haven't addressed that with him.  I don't think it matters to us, but I would like to confirm that with my client.

THE COURT:  And then Mr. Texido, do you know what your client's position is or your position on this?

MR. TEXIDO:  We have not yet formulated our position, your Honor.

THE COURT:  It seems to me as though this is a little premature to be decided, we don't even have a trial date.  So you're not going to get an objection from me to trying this case in Rochester, but I just, at this point, I don't know, maybe I'm missing it, why we need to resolve it right now.  Does anybody feel differently?

USA V. S. GOGOLACK, ET AL

MR. FOTI: I think, Judge, part of the reason we raised it besides just generally complying with the scheduling order that indicated we should raise all pretrial motions by a particular date, was that we knew there would be administrative accommodations that need to take place if the case is transferred. The administrative transfer to you, Judge, I think, probably resolves a lot of the expectation that there would be steps that needed to be taken to figure out the judge's travel arrangements and things like that. We were trying to raise it now to make sure behind the scenes there was enough time to accommodate the relief we were requesting. But now you're presiding over the case, I don't know that it's as pressing to work through the administrative things. That is more for you to assess than for us to comment on.

THE COURT: Okay. Does anyone, Mr. Tripi?

MR. TRIPI: Part of the motion was for administrative re-assignment of the judge. So it makes sense for, if that were to happen, the judge who is going to handle the trial handle the severance motions and things like that, I think that is why it bubbled to the surface when it did. I think transferring it to you in the way that it did moots a lot of that.

USA V. S. GOGOLACK, ET AL

THE COURT:  I'm not -- obviously, from my convenience perspective, it's more convenient to try the case in Rochester.  But obviously I've had trials in Buffalo and I know a number of the attorneys here who are from Rochester have tried cases in Buffalo and vice versa.  So I think that is something we will sort through.  Clearly it would be easier, I don't think there is any question, to pick a jury in Rochester in this case than it would be in Buffalo.  I think there has been very little or no publicity about this in Rochester.  Whereas in Buffalo, I know there has been extensive media coverage about the case.  But that in and of itself, I don't think, is going to dictate the result here.

So it's something I think we'll continue to look at as we move toward a trial date.

MR. FOTI:  Consistent with that point, Judge, there are two members of the media that we recognize in the courtroom today and they are both are from Buffalo media.

THE COURT:  There is not typically anybody unfortunately from the Rochester media at any court appearance.

MR. FOTI:  Only when I have a client getting

USA V. S. GOGOLACK, ET AL

a lot of time at a sentencing it seems they are there.

THE COURT:  Ever since Mr. Craig retired it's kind of gone up in smoke.  All right.  Look it. We'll deal with this issue and we'll deal with it sooner rather than later.  But I just think right now it's premature to definitively resolve it.

In terms of the government's motion to rescind the referral order, that is docket 435, I am going to continue to ask that Judge McCarthy resolve any non-dispositive issues.  It looks like at his May 21st appearance, he resolved a lot of those.

Mr. Donohue, you have that motion that is pending in front of him.  I will follow up with him to make sure that he is aware of the fact that I expect him to resolve Mr. Knight's non-dispositive motions.  I will definitely handle any dispositive motions that are a pure legal issue.  Any motion to dismiss, anything that is not going to require a hearing.  On terms of dispositive issues that may require a hearing, my preference, quite frankly, is to handle them myself. I'm new to this case, it will allow me to get up to speed in a more efficient manner.  It will allow the case to be handled more efficiently because we won't have two layers of judges looking at the issue.  But it

USA V. S. GOGOLACK, ET AL

will depend on the extent of the motions that are filed, how many hearings we're going to need, and scheduling purposes.  So I think we need to take a look at what motions are filed and that is one of the purposes of our August 20th date is for me to figure that out.  Okay?

There is the motion to set a trial date that the government filed at docket 435.  Again, until we see the dispositive potions, I think it's premature at this point to be selecting a trial date.  I wouldn't even know, does the government know what you would be asking for in terms of a trial date at this point?

MR. COOPER:  Your Honor, I think what motivated the government's motion to set a trial date was, as I'm sure your Honor is aware, there is a ruling that happened from Judge Vilardo last year charging some constitutional speedy trial time to the government. We're operating within the knowledge that that time is charged to us and so we're trying to move the case forward to trial as efficiently and quickly as possible, and so we requested, and I think it came up on the record with Judge Vilardo last week when we were there, that it would realistically be sometime in the summer of 2026.  And so I think that in other cases in the past, I've had district courts set a trial date that is, you

USA V. S. GOGOLACK, ET AL

know, a decent way out in the future, but it allows the case to keep on track and working towards that date.  I understand if the Court prefers to wait until after you've seen the extent of the dispositive motions, that works as well.

THE COURT:  Look it, I have no problem setting a trial date.  But if I'm going to set a trial date, it's going to stick.  And I don't want to set a trial date that I don't have any realistic appreciation at this point as to what could stick.  So until the dispositive motions are filed, I think it's premature to discuss it.  But especially given the number of parties in this case, questions about where the case is going to be tried, everybody's schedules that you have to work through, I have no problem setting a trial date, and we can do that, and if it ends up being the summer of 2026, so be it, but I just think, at this point, I don't see how we could definitively say we can set a trial date and it's going to stick because I don't know what the dispositive motions are going to look like.

MR. COOPER:  I understand the Court's point and that is a good point.  Maybe it would make more sense if we asked to revisit it at the August 20th status conference date and see then to pick a date.

USA V. S. GOGOLACK, ET AL

THE COURT:  That is fine.  I ask everyone to be aware of your calendars on August 20th and what your availability is.  Because you're predicting this trial is, and I'm directing this to the government, your prediction is the trial is going to be about three months, right?

MR. COOPER:  Yes.  And that prediction weighs in, this would be my first trial involving this many defendants and defense attorneys, and so we had an experience with a few trials last year with one defendant at a time and they lasted about eight weeks each.  And keeping that in mind as a reference point, I think 12 weeks, including possible defense cases and what not, is reasonable.

THE COURT:  There is motions for severance pending, though, too, so I think we have to address those before we can also definitively pick any kind of trial date.  So maybe we could have -- well, the problem with that having the oral argument on motion for severance is that Mr. Gogolack also had a motion for severance, but that got kind of put on ice when his prior counsel withdrew.

Would you be in a position to argue those severance motions on August 20th, Mr. Texido?

USA V. S. GOGOLACK, ET AL

MR. TEXIDO: I would love to say yes, your Honor. I don't believe we would be in a position to argue those yet because those are very fact dependent severance determinations. We could make every attempt to be up to speed. I don't know how much there is and what's out there. This is all brand new.

THE COURT: Well, what if we argued all the pending severance motions on August 20th with the goal, if we can, to argue Mr. Gogolack's motion, but if we have to pick another date to do that, we can select that on August 20th. Anybody think that is impractical?

MR. BOGULSKI: Judge, there is one issue that, relative to severance, that is independent of the motions that we made, but is related, meaning my concern is that the lawyers are going to have to -- this is a very complicated case, and I'm sure you know that, and obviously you do, but I'm anticipating that the attorneys are going to need more time to come up to speed. And since our client is in custody, Mr. Hinkle, separate from any other strategic reasons legally why we might want to sever it, I would be worried, on behalf of Mr. Hinkle, potential delays that would result. And I feel, you know, and I'm still trying to figure this case out, that the new lawyers are going to need a lot of

USA V. S. GOGOLACK, ET AL

time to come up to speed.

Now, since Mr. Hinkle is in custody, if he wasn't in custody, candidly, I would say take whatever time you need, but that is a concern I have on behalf of Mr. Hinkle regarding severance that Gogolack may have to be tried separately to give the lawyers a chance to get up to review whatever terabyte amount of discovery there is.

THE COURT:  I mean, the Federal Public Defender's Office has been spending, presumably, a lot of work on this case.  I would hope that is not all for naught.  I mean, they should, even though there is a conflict, they should be facilitating the transfer of the file to new counsel, and, hopefully, identifying for issues for you that they thought, presumably, would be the subject of dispositive motions.  Have they done that, Mr. Texido?

MR. TEXIDO:  Your Honor, I was assigned in the middle of a jury trial that ended two days ago, so I haven't spoken to the public defender yet and that is just where I am on it.  On the 25th I had a down day from a trial, that was the day I was appointed, and that trial ended Tuesday.

THE COURT:  On August 20th, I am asking that

USA V. S. GOGOLACK, ET AL

you and Mr. Kooshoian reach out to the FPD's office and have a more definitive answer for me on what their position is in terms of transitioning the file.  And, I mean, I would hope that just because there is a conflict that they don't view that as preventing them from facilitating the transfer of the file, including sharing any work product that they did on behalf of Mr. Gogolack, they should do that.

MR. TEXIDO:  I don't foresee that being a problem at all, it's just we haven't reached out.  Mr. Kooshoian may have, but I personally have not.

THE COURT:  Okay.  Does anybody see a problem with arguing the severance motions, at least as they exist right now, on August 20th?

MR. THOMPSON:  Judge, I think all of the other defendants are going to have a similar arguments as though that Mr. Bogulski indicated based on Mr. Gogolack's situation relating to the potential delay because of the change in counsel, but other than that, I think we're probably good to go.

THE COURT:  Go ahead, Mr. Cooper.

MR. COOPER:  Judge, I just think the arguments that are being raised to the Court right now are speculative.  I don't see a reason that we couldn't

USA V. S. GOGOLACK, ET AL

argue the severance motions that have been written and fully briefed and are ripe for the Court to adjudicate. And if the Mr. Gogolack intended to file a severance motion shortly thereafter when his attorneys are up to speed, the Court could address that.

THE COURT:  I think he has a motion filed.

MR. COOPER:  And he does.  And I'm not entirely sure because I never practiced on the other side of the aisle, if those attorneys would have an opportunity to supplement that or a chance to adopt that.  But certainly in terms of helping them get up to speed, Mr. Texido and Mr. Kooshoian can read the extensive briefing as to why they think Gogolack should be severed, and that could be a road map for them to arguing it on the 20th, so I think we should try and keep it on schedule.

THE COURT:  I'm looking at Ms. Chalbeck's letter, it looks like Mr. Gogolack never filed a reply to the severance motion.  And I'm not sure if that was because of new counsel getting involved.

MS. CHALBECK:  Judge, I think I can comment intelligently on that.  My understanding is that the Federal Public Defender's Office decided to narrow their reply brief to just a few of the issues that they raised

USA V. S. GOGOLACK, ET AL

in their initial motion, non-dispositive motions, and they did not raise severance in their reply is my understanding and recollection of the briefing history in this case.

THE COURT:  Okay.  All right.  Here is what we're going to do.  Let's plan to argue all pending severance motions on August 20th.  If Mr. Gogolack's attorneys are not in a position to do that with respect to the pending motion that was filed by the FPD's office, then you can just rely and rest on those papers. That doesn't mean that I'm not going to allow you, though, an opportunity to file additional motions on behalf of Mr. Gogolack, including any additional severance motion that is based on the timing of this. And it doesn't mean that I won't hear from the defendants at some point as to whether or not Mr. Gogolack should be severed because of the timing of his attorneys.  But my hope is that we can get Mr. Gogolack on track and go forward with everybody.  But we'll have to see how it plays out.  Okay.

Yes.

MS. MEYERS BUTH:  Judge, I would add, just so we're all on the same page, I know Mr. Texido doesn't have the file yet, but the discovery was over 40,000

USA V. S. GOGOLACK, ET AL

pages, and it took me five months, almost five months to outline it.

THE COURT:  Which is fine, but the FPD's office should have outlined it.

MS. MEYERS BUTH:  I don't think they did.

THE COURT:  They had how many attorneys on it?  They must have been -- I guess my point is, Mr. Texido and Mr. Kooshoian should not be starting from scratch.  And I don't agree with the notion that they have to review every single piece of 40,000 pages to be able to be in a position to file dispositive motions in this case.  I will allow them time, but the time has to be reasonable, so just be aware of that.

MR. COOPER:  Your Honor, may I address one of the things that Ms. Meyers Buth just said?

THE COURT:  Yes.

MR. COOPER:  The government had meetings with the Federal Public Defender's Office about the discovery.  I don't think it's a fair statement to say they didn't outline and review the discovery in this case.  I sat down with Ms. Kubiak, and had multiple conversations with Mr. Morrissey and attorneys that were assigned and I know --

THE COURT:  And wasn't Mr. Bagley assigned?

USA V. S. GOGOLACK, ET AL

MR. COOPER:  There were three separate attorneys.  I don't know that I had conversations with Jeff, Mr. Bagley, about the discovery.  I know I had a meeting in person with Ms. Kubiak and I had multiple calls with Mr. Morrissey about the discovery.  I know they were engaging with it and I don't think that is a fair statement to make.

THE COURT:  The conflict just arose recently.  They thought they were going to trial representing Mr. Gogolack.  So I guess we'll have to sort through it.

Yes, Mr. Thompson.

MR. THOMPSON:  Judge, I don't know what you're willing to do or if it's necessary, but you and I and Ms. Meyers Buth have had another case where the Federal Public Defender's Office has not been particularly forthcoming with their work product.  If you would direct them, I don't know if it's necessary to direct them to do that, but if you want to keep things moving along, they should be willing to do that and there shouldn't be any bumps in the road.

THE COURT:  I agree with you.  And that is why on August 20th, I want to hear from Mr. Texido as to what the FPD's office response is because if it's one I

USA V. S. GOGOLACK, ET AL

don't find satisfactory, I'll do just that.

MR. THOMPSON:  Appreciate that.

THE COURT:  So August 20th, we're going to, among other things, argue the pending severance motions. Mr. Dell, you have a motion that you filed to -- this is non dispositive, but I'm going to handle it.  It's a motion to release $10,000 in funds from a joint account that your client has with his cousin.  Is the government objecting to that?  I mean, there is no papers that have been filed in response.  I haven't set a deadline for it.

MS. CHALBECK:  Judge, we would request an additional opportunity to respond to it.  We don't have a position at this moment.

THE COURT:  All right.  I'm going to also ask for is that the probation office provide an update to counsel and to me confirming that there have been no compliance issues with Mr. Roncone.  I know that at some point, I think the conditions were relaxed from what I had initially set, and so let's confirm that.  Why don't we have the government respond to that pending motion by August 11th?

MR. COOPER:  Sure, Judge.  Thank you.

THE COURT:  Mr. Dell, if you have any reply,

USA V. S. GOGOLACK, ET AL

file it by August 15th.

MR. DELL:  Okay.

THE COURT:  And then we'll address it on August 20th, okay?

MR. DELL:  Yes, your Honor.  Thank you.

THE COURT:  And then, Mr. Donohue, I'm going to handle this, too, because my review of the docket, it looked like there were even appeals to the district judge about the appointment of second CJA counsel.  Mr. Donohue filed the motion for second counsel to be appointed.  Correct?

MR. DONOHUE:  Correct, your Honor.

THE COURT:  Does the government want to file a written response to that?

MR. COOPER:  Judge, I don't think that that is necessary.  I spoke with the other members of the trial team before your Honor came on the bench about that topic today.  One of the arguments that the government had previously raised in an opposition of adding second counsel was that it would leave other similarly situated defendants in a less fair situation of having one attorney where other defendants are given two, and so we don't want to be inconsistent.

THE COURT:  I'm not laughing at the

USA V. S. GOGOLACK, ET AL

argument, I'm chuckling, but okay.

MR. COOPER:  Okay.  We want to be consistent with the argument we raised earlier.  We'll defer to the Court without opposing that.

THE COURT:  Okay.  I will appoint second counsel to assist Mr. Donohue.  I'm going to need, though, a list of attorneys who are conflicted.

MR. COOPER:  Understood, your Honor.

THE COURT:  And I'm assuming it's quite extensive?

MR. COOPER:  Yes, Judge.

THE COURT:  And Mr. Donohue, my goal would be to assign somebody who you have some kind of working relationship with as well, if possible.  So if you have any particular preferences, why don't you send an e-mail communication to my courtroom deputy, Ms. Samuel, and you can copy the government on that, and I'll at least take that into consideration.

MR. DONOHUE:  Thank you, your Honor.

THE COURT:  You're welcome.  There is also a motion for production of the probation office files that Mr. Gerace filed at docket 507.  Mr. Knight filed at docket 517.  This is non-dispositive, but I'm going to handle this as well.  And I'm a little confused about

USA V. S. GOGOLACK, ET AL

the sequence of this.  Because it looked -- I read the transcript of the appearance in front of Judge McCarthy on May 21st, and he addressed this to some extent. Because Mr. Tripi was arguing to him about the fact that this usually comes up right before trial when the defense want to get impeachment information from PSRs that have been filed.  And so, but it looks like after that, these motions were filed.

And so, Mr. Foti, do you want to address that, or Ms. Meyers Buth?

MR. FOTI:  Judge, I guess in terms of the timing, what I would say, and Ms. Meyers Buth should supplement anything I'm going to say, she probably has a better handle of this issue than I do.  I will say, in terms of timing, obviously there is some degree of distinction between impeachment material that is categorically Giglio and Brady material that is exculpatory as to a theory of the case.  And what I think we tried to layout in the papers is we expect contained within those probation files, which we didn't ask for disclosure at this point, we asked for in camera review, but what we believe is there is evidence likely within those files and within those materials that is consistent with pure Brady information.  Information

USA V. S. GOGOLACK, ET AL

that is exculpatory as to the government's theory of the case, not impeachment testimony or evidence that would be used for trial purposes and would be more narrowly defined.

THE COURT:  I'm confused because it seems as though this must have been an issue that was raised in motions that you filed before the appearance on May 21st in front of Judge McCarthy, and then there was a subsequent motion that you filed afterwards.

MR. FOTI:  I think we didn't -- I don't recall it being specifically raised in a motion.  I think we broadly made a motion for Brady material in the non-dispositive motion.  And in that motion, we referred to a number of the items that we think potentially qualify, but we never got into any specific requests for relief, as far as I recall.  And after our review of the discovery that was disclosed after the non-dispositive arguments, we raised this motion in part because we were referencing material that we obtained after non-dispositive arguments.

THE COURT:  Okay.

MR. FOTI:  So there is more there that we didn't even have at that time.

THE COURT:  Okay.  So, first of all, what is

USA V. S. GOGOLACK, ET AL

on the docket is a redacted version of your motion?

MR. FOTI:  Yes.

THE COURT:  I don't have the unredacted version.  Maybe it was sent to Judge Vilardo's Chambers.

MR. FOTI:  Yes, and I can forward that today.

THE COURT:  Why don't you do that?  So counsel has a copy, though, of the unredacted version?

MR. FOTI:  So I think I only sent it to Chambers and to the government and the government made the point to me that I had left off co-defendants' counsel.  I don't think there is any reason why co-defendants' counsel shouldn't have that, so I can include it when I forward it to the Court.

THE COURT:  Does the government agree that everyone should have it?

MR. TRIPI:  That is fine, Judge.

THE COURT:  And everyone agrees that the unredacted version should be filed under seal on the docket.  It seems as though there are two witness names in addition to Ms. Quinn?

MR. FOTI:  Yes.

THE COURT:  I'll set a briefing schedule for the government to respond to this.  I have probation's

USA V. S. GOGOLACK, ET AL

files on Ms. Quinn.  I asked for those the other day from Chief Tim Englerth.  I have a binder of documents from the probation office.  I haven't reviewed it in any detail, but I have it.

MR. TRIPI:  Judge, conceptually, obviously, we have no issue with you reviewing those files, and if you think there is something that the defense should have, we would just want a copy of it as well.  But using the term "Brady," it requires suppression from the government, obviously we don't control those files.  It's not Brady material, because we don't control the probation files; the Court does and the probation does.  That is the only issue throwing around the term "Brady."  That indicates we have possession of something we don't have.  And as an overall concept, no problem.  If there is something helpful to them, no problem.  Okay?  The rest of it, in terms of the other potential witnesses, I just sort of viewed that as sort of an early *motion in limine*.  Almost a little premature.  So whenever the timeline for disclosing that type of information is, we don't have a conceptual problem with the review of these files and turning over what the Court deems appropriate to the defense as long as both parties get a copy.  That's all.

USA V. S. GOGOLACK, ET AL

THE COURT:  Okay.  And I guess, obviously the situation with Ms. Quinn is different because she is the alleged victim in the case and there is a binder of documents the Court essentially has related to her because it's the probation office that has it.  So, from my perspective, now, I will say, in glancing at the binder quickly, most of the documents are documents that are on the docket.

MR. TRIPI:  Okay.

THE COURT:  They are copies of pleadings and so forth.  But there is the CHRON file and various medical information.  I don't know or substance abuse information, drug tests information.  I don't know if I'm required to get any kind of authorization from anybody else or give notice to anybody else about the disclosure of this.  She is deceased.  It's not as though she is -- I mean, normally, like with a subpoena under rule 17, if it's alleged victim information, you have to give notice to the victim about the seeking of those records.

MR. TRIPI:  Yeah, that is a good point, Judge.  It's something we can look into it.  I haven't thought of it.  Obviously under the CVRA, her mother sort of steps into her shoes and has some rights under

USA V. S. GOGOLACK, ET AL

the CVRA, I hadn't thought of that aspect.

THE COURT:  That is my only concern about the Quinn documents because otherwise I view it, the Court has these records.  And, obviously, nobody else has these records other than the Court.  And I have no problem doing an in camera review and deciding what should be disclosed.  But I have some concerns about whether or not I can just disclose it without some further notice.

MR. FOTI:  Judge, the only thing I would suggest, and it may be a dead end, but I believe that Ms. Quinn was engaged in diversion.  And although that is not common in this district, the few cases I have, I seem to recall there is a contract at the outset of entering into diversion and there may be something in there that identifies the sharing of information.  So I think it may just be worth looking at.  Absolutely nothing that is helpful contained in there, but I think that might be one way of determining whether there is some degree of resolution that is available to us.

THE COURT:  Okay.  And then in terms, though, of these other witnesses, I've never had a case before, usually that is done before trial.  You take a look at the witnesses who are going to testify and the

USA V. S. GOGOLACK, ET AL

defense asks that the Court review in camera any Presentence Investigation Reports.

MS. MEYERS BUTH:  Judge, we raised it now because the government has been providing early Brady or Jencks disclosures to us under the new protective order. And so since we were moving for Ms. Quinn's probation file, we just thought it's easier just to put it all in one motion.  And there was no preclusion in terms of dates by which we had to move for the presentence reports, so that is why we put it all in one motion.

MR. TRIPI:  To the extent those are witnesses we intend to call at trial, I don't think we haven't made those hard choices yet for some witnesses. We'll have no objection at this time for the Court to do that review and hand over any Giglio material to the defense.

THE COURT:  Why don't we set a deadline for the government to file a response to these motions and then we can address them further, even potentially on August 20th, if possible.  Would the government be able to file a response by -- I don't know that we need reply papers on this at this point.

MS. MEYERS BUTH:  Probably not unless something else comes up.

USA V. S. GOGOLACK, ET AL

THE COURT:  Why don't we set August 15th for the government to file both a response for the motion filed at docket 517 and the motion filed at docket 507. And let's try to address it on August 20th.  And if I decide we need supplemental papers at that point, we can deal with it.

MR. TRIPI:  Sounds good.  Thank you.

THE COURT:  All right.  We have the government's appeal of Judge McCarthy's decision to inspect the grand jury minutes in camera.  I've reviewed the underlying papers.  I've reviewed the objections.  I know Mr. Gogolack had also filed a response or was going to file a response.  And then that was put on hold, I think, because of the change in counsel issue.  He just filed a notice to adjourn as opposed to a motion for response.  I looked at everything.  I'm going to reject the government's appeal, so I'm not going to take time to hear from Mr. Gogolack.  Let me be clear, I'm not suggesting I would have reached the same conclusion, I am suggesting that under the standard of review, for me to conclude that it's an abuse of discretion for Judge McCarthy to go through these grand jury minutes, I just don't see that on this record that standard has been met.

USA V. S. GOGOLACK, ET AL

Now, if upon review Judge McCarthy decides that some of these grand jury minutes should be disclosed, then the government can appeal that issue to me and we'll hear argument on it.  I'm not -- I've read everything.  I understand the defense argument here.  I just think to get from where we are right now to the conclusion that somehow this is prosecutorial misconduct that would justify dismissing the indictment, I think, is a bit of a stretch, so we'll see where it goes.  I have a decision that I'll file today that clarifies that I'm allowing the grand jury minutes to be produced to Judge McCarthy for an in camera review as he previously indicated that he intended to do.

Any questions about that?

MS. CHALBECK:  Judge, I have one question. You probably noticed in the papers, there is some gulf between the government's position and our interpretation of what Judge McCarthy specifically ordered and Mr. Gerace and the other defendants' interpretation of that order.  Our interpretation of the order is that he is requesting the in camera inspection of minutes related to instructions.  That is how we read the order.  I don't know if your Honor's Decision and Order is going to --

USA V. S. GOGOLACK, ET AL

THE COURT:  No, it doesn't address that. And I think it's a little unclear what Judge McCarthy said.  So if you produce to him what you think he ordered.  I mean, he clearly was talking about a desire to look at the instructions, but in the discussion with him, you were also indicating you were going to provide him any exhibits that went along.  To me, that means testimony.  You don't usually have exhibits for instructions.

MR. TRIPI:  Yeah, I think we were talking past each other a bit.  We were talking about transcript testimony, and he was using, and maybe me or I missed it at the time, he was talking about instructions.  You know, typically in the grand jury, what gets produced as an ordinary course of business are transcripts of testimony.  That is what we acquire and what we have. If instructions were required or whatever was said to the grand jury the day the indictment was voted, that is something we need to order separately.  That does not get produced in the ordinary course.

MS. CHALBECK:  We'll take it up with Judge McCarthy, Judge.

THE COURT:  I think you should, because, again, I think he is the one that ordered them produced.

USA V. S. GOGOLACK, ET AL

I don't find it an abuse of discretion for him to reach that conclusion, but you need to clarify with him what he wants and discuss with him the timing of that.

MR. TRIPI:  Okay.

THE COURT:  Any questions from anybody about that?

MR. DONOHUE:  Your Honor, Barry Donohue on behalf of Frank Knight.  I had made a similar motion to demand grand jury minutes.  I assume you're going to be directing the judge to rule on that?

THE COURT:  Yes.  That is part of your omnibus non-dispositive motions.  Judge McCarthy will need to resolve that.

MR. DONOHUE:  Thank you.

THE COURT:  Mr. Hinkle's motion to dismiss that was filed at docket 407.  I've reviewed everything. I'm prepared to rule on it, but if the defense has any additional arguments that you want to make, I'm open to hearing them.

MR. BOGULSKI:  Judge, I believe the papers are pretty self explanatory.  What I did was I went through the indictment and I outlined for the Court why we felt they did not amount to a crime.  I did a Rule 12 motion, but it's also a common law demurrer.  And those

USA V. S. GOGOLACK, ET AL

acts are specifically outlined that there was some text messages and things. And our argument is very simple that they do not amount to a crime even if proven to be true. And they did not specify a crime. Unlike, for example, if you look at the counts that Mr. Hinkle was charged with in counts 19 to 22, for example 924(c) and 922 charge, it says he possessed a gun. But making or sending a text message or communicating with an acquaintance does not amount to a crime, and, therefore, based on a review of the indictment, facially insufficient, and we're asking the Court to dismiss it.

THE COURT: Thank you, Mr. Bogulski. Does the government have any argument you want to make in response?

MS. CHALBECK: Judge, I think we addressed most of or all of Mr. Hinkle's arguments in our own papers. I will note that the Supreme Court's decision in *Braverman* and the Second Circuit's decision in *Montour* hold very clearly that an overt act may not be inherently criminal. And despite that, and I think it's overt act paragraph 14 of the second superseding indictment, the government alleges that Mr. Hinkle did make a false statement, him and other defendants, and the government cited a Report of Investigation in our

USA V. S. GOGOLACK, ET AL

own papers that explains the basis of that allegation, specifically Mr. Hinkle making a false statement regarding his interactions with Simon Gogolack and Ms. Quinn.  That is in our papers as well.  And so insofar as Mr. Hinkle premises his argument on there is no allegation of criminal wrongdoings, the discovery proves that false.  And insofar as he premises his argument on the overt acts are not inherently criminal, the case law says that is not necessary.

If your Honor has any other questions, I am happy to answer them, otherwise we rest on our papers.

THE COURT:  Thank you, Ms. Chalbeck, I'm going to deny the motion.  I have a written decision that I'll file today and it explains my reasoning in further detail.

Mr. Gogolack has an appeal also, Mr. Texido, of the magistrate judge order denying the disclosure of the search warrant affidavits without an affidavit of standing and we need to address further briefing on that.  But let's plan to do that on August 20th.  Okay?

MR. TEXIDO:  Thank you, Judge.

THE COURT:  My understanding, but I want the attorneys to correct me if I'm wrong, is that other than Mr. Knight's non-dispositive motions and other than the

USA V. S. GOGOLACK, ET AL

issues, I guess, that we've talked about today, all other non-dispositive issues have been resolved by Judge McCarthy, at least to the extent that he was willing to do so at this juncture of the case.  Is that a fair statement?  And was there anything else outstanding?

I guess I'll ask the government at this point.

MS. CHALBECK:  Judge, that is correct. Judge McCarthy addressed everything other than severance, the motion to dismiss, and the motion for and intra district transfer.

THE COURT:  Does the defense counsel have any different perspective on that?

MR. MUSCATO:  George Muscato for Mr. Ermin. No, I think he addressed most of the, motions non-dispositive, your Honor.

THE COURT:  In other words, I'm going to be having a discussion with Judge McCarthy to make sure he and I are on the same page in terms of what he needs to be handling.  And I am going to tell him he needs to handle Mr. Knight's non-dispositive motions, he needs to deal with these grand jury minutes, but I don't think there is anything else right now.  Right?

MR. FOTI:  There are certainly issues that I

USA V. S. GOGOLACK, ET AL

think from the defense standpoint we feel are unresolved, but not because he didn't address them and take them as far as he was prepared to take them at this point.

THE COURT:  Right.  There were some issues that really typically the district judge resolves closer in time to trial.  Right?

Okay.  For all defense counsel, I want to make sure that you're talking.  I know many of you have because I've seen at least the budget, make sure you're talking to Mr. Nelson at the circuit about budgeting for CJA purposes.  Mr. Thompson, I don't think you're on the budget.

MR. THOMPSON:  I'm not, Judge.  We've been dilatory in that regard.  We'll take care of it.

MR. MUSCATO:  I've been on him, your Honor.

THE COURT:  Thank you.  Please do.  But that makes things go much smoother if there is active communication with the circuit on that.  So please follow up.

That, I think, was everything I had on my list, but let me turn first to the government.  Mr. Cooper?

MR. COOPER:  May I just have one second?

USA V. S. GOGOLACK, ET AL

THE COURT: Sure.

MR. COOPER: Your Honor, the only thing the government would add, I think we've said this in front of Judge McCarthy and Judge Vilardo, but I want to say it in front of your Honor as well, the government has been open to engaging in conversations or having meetings with defense counsel regarding the discovery to try and help them navigate or find specific items. They've discussed the volume today. We've been able to do that recently with Mr. Donohue and Mr. Henry as well, and so we would just encourage that to the extent it will help Mr. Texido and Mr. Kooshoian get up to speed as well, we're happy to have those meetings and sit down and kind of help them navigate the discovery.

THE COURT: Thank you, Mr. Cooper. I would encourage you, Mr. Texido, to take advantage of that as well. Anything else from the government?

MR. COOPER: That's all from us. Thank you for taking the case, Judge.

THE COURT: Okay. I'll start with Mr. Dell since you're on the phone. Anything else that we need to talk about today?

MR. DELL: Not at this time, your Honor.

THE COURT: Mr. Donohue.

USA V. S. GOGOLACK, ET AL

MR. DONOHUE:  No, your Honor.

THE COURT:  Mr. Texido?

MR. TEXIDO:  No, your Honor.

THE COURT:  Mr. Bogulski or Mr. Henry?

MR. HENRY:  Judge, just to clarify, in addressing the dispositive motions, do we address them to you and to Judge McCarthy?

THE COURT:  Address them to me.  Let's assume I'm going to handle them unless I am looking at them and think it's just not going to be more efficient for me to do so.

MR. HENRY:  Okay.  Thank you.

THE COURT:  Mr. Thompson or Mr. Muscato?

MR. MUSCATO:  We're all set.  Thank you very much, your Honor.

THE COURT:  Mr. Foti or Ms. Meyers Buth?

MR. FOTI:  Judge, I think there is only one other issue we would like to flag, not necessarily argue today, but it was one issue that is still remaining after the argument of non-dispositive motions and we need to raise it in the context of a Bill of Particulars, but it's going to come up, I think, in some way again as part of dispositive motions.

I want to say one thing that has been of

USA V. S. GOGOLACK, ET AL

concern to us and I think maybe of concern to the Court is that there is an ambiguity as to all of the references to "Gerace Attorney 1" and whether he is a co-conspirator within this case.  And the reason that is significant is because you can look at the overt acts and there is a number of overt acts, multiple overt acts, that really can only read as an overt act if "Gerace Attorney 1" is a co-conspirator.  We have asked the government whether they are treating him as a co-conspirator and they've declined to provide that specificity at this point, despite the way the indictment reads.  I think it's significant.  There is a number of things that of how we approach certain issues, potential issues included in dispositive motions, are affected by whether Gerace Attorney 1 is a co-conspirator or not.  At this point that is unresolved, and I don't expect we'll resolve it today, but it's an important issue to us and I think it's going to have an important impact on some of the motions that may be forthcoming.  And I want to let the Court know that continues to be on our radar as an issue that is unresolved and we hope to have it resolved at some point.

THE COURT:  And this was addressed with

USA V. S. GOGOLACK, ET AL

Judge McCarthy and he declined the request for a Bill of Particulars, correct?

MR. FOTI:  We requested specificity through a Bill of Particulars and in that context.  It was denied during non-dispositive motions.

THE COURT:  Okay.  So is there anything that is teed up for the Court to resolve in that regard or you're just flagging the issue for me?

MR. FOTI:  Not at this exact moment, but I imagine that it will be coming on and I want the Court to be aware that it continues to be something we need to resolve at some point.

THE COURT:  Does the government have any response you want to make to that at this point?  You don't have to.

MS. CHALBECK:  Judge, I would note there was an opportunity to appeal non-dispositive rulings and Mr. Gerace did not avail of himself of that opportunity with respect to this issue as it relates to the Bill of Particulars.

THE COURT:  All right.  Well, we'll see where that takes us.  Anything else from anybody?

MR. FOTI:  No, Judge.  Thank you.

THE COURT:  Thank you very much, everyone.

USA V. S. GOGOLACK, ET AL

I'll see everybody on -- most of you -- on August 20th at 1:30.   Have a good day.

MR. TRIPI:  Thank you.  Have a good day.

*     *     *

CERTIFICATE OF REPORTER

   I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.


S/ Karen J. Clark,  RPR

Official Court Reporter