UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

SIMON GOGOLACK, *et al.*,

                 Defendants.

**ORDER**

Case No. 1:23-cr-0099-LJV-JJM

---

        Familiarity with the relevant procedural history is presumed. By letter dated July 31, 2025 [526][1], the government has requested clarification of the requirement for production of grand jury materials which I announced from the bench on May 21, 2025. This Order responds to that request.

        The Second Superseding Indictment [24] alleges that, as an overt act in support of a conspiracy to obstruct justice, defendant Peter Gerace's attorney listed Crystal Quinn as a defense witness when she had previously been listed under seal as a government witness, and thereby "circumvented the provisions of a Protective Order which prohibited attorneys for GERACE from revealing to GERACE the government's witnesses' names and from providing GERACE with the government's witness list". Id. at 16, ¶25.[2]

        At the May 21 conference I stated that in my opinion "the *only* reasonable reading of ¶25 is that use of the word 'circumvent' means to at least indirectly violate a protective order".

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

[2]     The January 9, 2023 Protective Order, signed by District Judge John L. Sinatra, Jr., is located at 19-cr-227 [347].

[438] at 92 (emphasis added). AUSA Chalbeck agreed with me, stating "Yes, Judge", and neither AUSA Tripi nor AUSA Cooper suggested that my interpretation was incorrect. However, in its appeal to District Judge Elizabeth Wolford, the government did an about-face, arguing that ¶25 "does *not* . . . allege that an attorney violated the Protective Order". Government's Appeal [443] at 4 (emphasis added).

The government's change of position raises more questions than it answers, since an "indirect violation" (as we discussed on May 21) would still be a violation of the Protective Order[3]. Gerace points out that the government had previously admitted that "the protective order . . . did not prevent defense counsel from listing the government's witnesses on the defendant's own list and then reviewing the defense witness list with the defendant" (Response [479] at 22) - which may explain why the government did not challenge or even mention the listing of Quinn as a defense witness in a meeting with Judge Sinatra on June 21, 2023 (19-cr-227 [660]), one day after Gerace's witness list was filed (19-cr-227 [529]). The government's failure to do so strongly suggests that at that time it did not believe that Gerace's listing of Quinn as his witness was in any way improper.

And that begs the question: what led the grand jury to find probable cause to believe that Gerace or his attorney had violated or "circumvented" a prohibition which did not exist in the first place? Although the government has "no obligation to present exculpatory material to a grand jury", United States v. Regan, 103 F.3d 1072, 1081 (2d Cir. 1997), "the prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a

---

[3] *See* United States v. Terry, 815 F. Supp. 728, 732, n. 5 (S.D.N.Y. 1993), aff'd, 17 F.3d 575 (2d Cir. 1994) ("Terry may be found guilty of contempt for . . . 'indirectly' violating the terms of Clause (7)").

grand jury does not entitle him to mislead it". United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979).

For example, were the grand jurors told that the government's proffers during Gerace's detention hearing in March, 2023 (over a month before the government filed its witness list) "likely made it clear that Miss Quinn was a cooperating witness", and that "responses to District Court questions and the context of the answers made Quinn's cooperation obvious"?[4] Or were they instead led to believe that Gerace first learned of Quinn's role as a government witness through her listing as a defense witness? To be clear, I am *not* now suggesting that the government engaged in misconduct before the grand jury - I conclude only that a sufficient showing has been made to justify further inquiry.

At the May 21 proceeding, I stated that "I'm not addressing this in terms of whether there's evidence to support it, I'm addressing it in terms of how was the jury instructed so that they could make this finding. So I am going to direct that the Grand Jury minutes be given to me for my in-camera review". [438] at 104. At that point, AUSA Tripi stated: "we intend to give you all the Grand Jury transcripts and all the exhibits underlying the transcripts . . . . If there needs to be more ordered, I assume you'll let us know". Id. at 104-05. However, the government later told Judge Wolford that "[h]ad the Magistrate Court inquired, the government would have explained that it . . . does not instruct the grand jury to make particular factual findings". Government's Appeal [443] at 18.

Therefore, in order to determine whether any impropriety may have occurred relative to ¶25, I will need to review *in camera* the entire grand jury proceedings, including any

---

[4]   See [438] at 75-76, *quoting* government's Supplemental Memorandum [274] at 15 and n. 5.

-3-

statements made to the grand jurors by the government attorneys. While much of this material may not directly relate to the allegations contained in ¶25, "[c]ontext matters, as some actions may take on more or less significance depending on the context". Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011).

The government shall advise me by August 15, 2015 as to the earliest date by which these materials can be provided. I assure the government that no disclosure of these materials will be made to defendants or their attorneys without further order, after first giving the government an opportunity to be heard.

**SO ORDERED.**

Dated: August 8, 2025

/s/_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge