UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                            Plaintiff

v.                                                  NOTICE OF MOTION

HOWARD HINKLE,                        FILE NO.: 23-CR-99

                                    Defendant
_____

SIRS:

PLEASE TAKE NOTICE that upon the annexed Affirmation of Daniel J. Henry, Jr., Esq. and Frank M. Bogulski, Esq., and upon all the proceedings heretofore had, the undersigned will move this Court, on behalf of HOWARD HINKLE, for orders granting the relief requested in counsel's Affirmation, and for such other and further relief as is just and proper under all circumstances.

Dated:  August 8, 2025
          Hamburg, New York

                                    Respectfully submitted,

                                    *s/ Daniel J. Henry, Jr.*
                                    Daniel J. Henry, Jr., Esq.
                                    Attorney for *Howard Hinkle*
                                    16 Main Street
                                    Hamburg, New York 14075
                                    (716) 648-0510
                                    dhenry@villariniandhenry.com

                                    *s/Frank M. Bogulski*
                                    Frank M. Bogulski, Esq.
                                    135 Delaware Avenue, Suite2
                                    Attorney for *Howard Hinkle*
                                    Buffalo, New York 14202
                                    (716)649-0090
                                    fbogulski@yahoo.com

To:    Hon. Elizabeth A. Wolford
United States District Court
Western District of New York
U.S. Courthouse
100 State Street
Rochester, New York 14614

Joseph M. Tripi, Esq.
Nicholas T. Cooper, Esq.
Casey L. Chalbeck, Esq.
United States Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202

United States Clerk of Court
United States District Court
Western District of New York
2 Niagara Square
Buffalo, New York 14202-3350

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                        Plaintiff

v.                                                              AFFIRMATION

HOWARD HINKLE,                                          FILE NO.:  23-CR-99
                                        Defendant
_____

DANIEL J. HENRY, JR., ESQ., under penalty of perjury says that:

1.    I, along with co-counsel, Frank M. Bogulski, Esq., are attorneys admitted to
      practice before the United States District Court of the Western District of New
      York.

2.    We are the attorneys representing the Defendant, HOWARD HINKLE, in the
      above-captioned action.

3.    The Defendant, HOWARD HINKLE, has been indicted by a Federal Grand Jury.
      The Grand Jury Indictment consists of twenty-eight (28) counts, plus forfeiture
      allegations. HOWARD HINKLE is charged in Count 1 for allegedly violating
      Title 18 U.S.C. §371 (Obstruction of Justice Conspiracy) ( Title 18 U.S.C.
      §1503); Count 2 for allegedly violating Title 18 U.S.C. §1512(k) (Title 18 U.S.C.
      §1512(b)(3) (Witness Tampering Conspiracy); Count 3 for allegedly violating
      Title 18 U.S.C. §1513(f)(Title 18 U.S.C. §1513(b) (Witness Retaliation
      Conspiracy); Count 19 for allegedly violating Title 21 U.S.C. §§841(a)(1) and
      841(b)(1)(B)(vii) and Title 18 U.S.C. §2 (Manufacture and Possession with Intent
      to Distribute 100 or More Marijuana Plants); Count 20 for allegedly violating

3

Title 21 U.S.C. §856(a)(1) and Title 18 U.S.C. §2 (Maintaining a Drug Involved Premises); Count 21 for allegedly violating Title 18 U.S.C. §§924(c)(1)(A) and 2 (Possession of Firearms in Furtherance of Drug Trafficking); and Count 22 for allegedly violating Title 18 U.S.C. §922)(g) (Felon in Possession of Firearms).

4.    I submit this Affirmation in support of Defendant, HOWARD HINKLE'S Motion, requesting the following relief in this case:

|      |                                          | Page |
|------|------------------------------------------|------|
| I.   | Suppression of Evidence/Franks Hearing   | 5    |
| II.  | Suppression of Statements                | 21   |
| III. | Joinder in Motions of Co-Defendants      | 26   |
| IV.  | Other Motions                            | 26   |

████ **MOTION TO SUPPRESS EVIDENCE OBTAINED BY SEARCH WARRANT
ISSUED FOR** ███████████████████████████████████████████
██████████████████

5.    Defendant, HOWARD HINKLE, resides ███████████████████████
███████████████████████████████████████████████████████████
██████████████████

6.    Mr. Hinkle resides at ████████████████████████████████████
██████████████████████████████████

7.    That on October 24, 2023, law enforcement executed a search warrant both at his
███████████████████████████████████████████████████████████
██████

8.    Neither Mr. Hinkle nor Dillon Anderson gave authorization or permission to law
enforcement to enter either premise.  Nor did Mr. Hinkle or Ms. Anderson voluntarily or freely
give law enforcement authorization or permission to search either premise.

9.    The Search Warrant and Application for ████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████ specifically listed items to be searched
and seized as set forth in ████████████████████████████████  In general,
the items listed ██████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

### A. Defendant requests a Franks Hearing

10.    It is requested that this court conduct a hearing pursuant to *Franks v. Delaware,* 438 US 154, because of what appears to be the misrepresentation of facts and reckless use of false statements in the applications.  Indeed, many courts have held that the same condemnations apply to the omission of significant factual matters.  *United States v. Bonds,* 12 F3d 540 (6th Cir., 1993); *United States v. Carneiro,* 861 F2d 1171 (9th Cir., 1988); *United States v. Ferguson,* 758 F2d 843 (2d Cir., 1985); *United States v. Hadfield,* 918 F2d987 (1st Cir., 1990); *United States v. Kolkley,* 899 F2d 297 (4th Cir., 1990); *United States v. Reivich,* 793 F2d 957 (8th Cir., 1986).

11.    In *United States v. Ippolito,* 774 F2d 1482 (9th Cir.) a hearing was necessitated regarding the affirmative misrepresentations and material omissions regarding the productivity of an undercover informant in investigating an organized crime family.  The court recognized that a resolution of the issue must involve such a hearing where both material misrepresentations and material omissions are considered by the Court.

12.    The United States Supreme Court has condemned the deliberate and reckless use of false statements in warrant applications.  *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674.

13.    ███████ contains the application for the two properties' search warrants, including Special Agent Adam Penna's affidavit setting forth his statements and representations.

14.    The defendant, Howard Hinkle, contends as discussed *Infra.,* that there is a reckless misrepresentation of facts and/or false statements in the applications by the affiant, S.A. Penna.

### (1) Qualifications

15.    S.A. Penna's "qualifications" for this particular/specific case is evidence of being

unqualified to present an opinion to the Magistrate Judge needed to establish probable cause.

16.     When writing this application, S.A. Penna was assigned to the FBI white collar crime squad with a total of only eight (8) years' experience in law enforcement.  Prior to his two (2) years of investigating white collar crime in Buffalo, he spent six (6) years assigned to squads dedicated to investigating corruption cases.  Prior to becoming an FBI agent, S.A. Penna was employed as a civil litigation attorney for two (2) years.  He has no training or experience in investigating homicides, death cases, overdose/suicide/homicide drug death cases.  ███████

███████████  His limited qualifications do not allow him to opine of factors surrounding the overdose drug death of Crystal Quinn or the nature of this specific case.

     **(2)** ████████████████████████████████████████████

17.     S.A. Agents misrepresents to the Magistrate Judge that ████████████████████
███████████████████████████████████████████████████████
██

18.     This representation misleads the Magistrate Judge in considering whether to authorize the requested search warrant.

19.     Law enforcement and the FBI interviewed others involved in the poker game attended by Crystal Quinn, ███████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████
████████████████████
████████████████████████████████
████████████

████████████

20.    S.A. Penna never advises or puts forth in his application the full content of

███████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

21.    S.A. Penna does not present any evidence in his application that ████

██████████████████████████████████████████████

█████████████████████████████████████████████████

**(3)** ████████████████████

22.    S.A. Penna misrepresents to the Magistrate Judge that █████████████████

██████████████████████████████████████████

23.    This assertion relates to a statement that ████████████████████████

██████████████████████

24.    Mr. Hinkle never ████████████████████████████████

25.    S.A. Penna misrepresented to the Magistrate Judge ████████████████████

████████████████████

26.    ██████████████████████████

███████████████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

27.    S.A. Penna not only misrepresents to the Magistrate Judge that ██████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████

It is clear from ███████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

28.    S.A. Penna purposefully withheld this critical information surrounding the

███████████████████████████████████████████████████████

███████████████████████████████████████

**(4) Attendance at Poker Game**

29.    S.A. Penna represents ████████████████████████████████████████

██████████████████████████████████████. He represents to the court

that ██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

That is not true. ████████████████████████████████████████

████████████████████████████████████████████████

30.    In addition, S.A. Penna misrepresents, in a conclusory manner, that there

would be no need ███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████.  S.A. Penna's nefarious conclusory statement was simply to mislead the Magistrate Judge concerning Mr. Hinkle.  S.A. Penna provides the Magistrate Judge no foundation for the claim ██████████████████████████

31.     S.A. Penna, ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  S.A. Penna provides no foundation to this claim other than his imagination to fit the Government's theory of their case.

32.     S.A. Penna in ████████████████████████████

████████████████████████████████████████████████

████████████████████████████  S.A. Penna attempts to discredit this exculpatory information by claiming ██████████████████████

██████████████████████  However, S.A. Penna provides no evidence to the Court substantiating any claims of ████████████████████████

33.     The Government ██████████████████████████

████████████████████████████████████████████████

██████████████████████████████.  However, ████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

10

34.    Again, S.A. Penna claims ██████████████████████████████ ███████████████████ However, as pointed out ██████████████████ ███████████████████████████ ████████████████████████████ ███████████████ S.A. Penna failed to tell the Court that ███████████████████ ██████████████████████████████████████████████

Furthermore, S.A. Penna wrongfully uses the terms ███████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████ S.A. Penna never brings that to the attention of the Magistrate Judge in his application.

35.    S.A. Penna in ████████████████ misrepresents, again to the Court, that █████████████████████ As pointed out above ████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████ to inflame the Magistrate Judge toward ██████████████ to create the appearance of probable cause to warrant authorization of a search warrant.

In addition, S.A. Penna injects his own conclusory thoughts and desire claiming ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████ There is no intent or deviant mindset to conceal ███████████████████████████████████████████ ████████████████ The false narrative spun by S.A. Penna misrepresents the facts and circumstances for the Magistrate Judge to properly determine if probable cause exists to

authorize a search warrant.

36.     S.A. Penna, in ████████████████ misrepresents that "████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████ and S.A. Penna is cutting him off and re-directing his conversation. ████████

██████████████████████████████████████████

██████████████████████████████████████████

37.     S.A. Penna again misrepresents to the Court ████████████████████

████████████████████████████████████████████████

█████████████████████████████

38.     S.A. Penna misrepresents to the Court that ██████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████ That is not true ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

residence when he misrepresents to the Court that ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

The Government may attempt to claim ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████t

███████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

## (5) Crystal Quinn's Death

39.     S.A. Penna attempts to create the appearance to the Court that ████

████████████████████████████████████████████████

███████████████████████████████ This is not true.  The text ███████████████



40.     S.A. Penna in a conclusory manner, states that ███████████

First, S.A. Penna is not qualified or experienced in homicide cases, let alone trained and experienced in investigating overdose, suicide or homicide cases to make this conclusory statement.  His eight (8) years' experience is limited to white collar and corruption cases, including two (2) years as a civil litigation attorney.

Secondly, the medical examiner himself ████████████████

Third, in all the drug cases (overdoes cases, fentanyl cases, etc.) that the Western District of New York U.S. Attorney's Office, has handled, it has not prosecuted a case in which a person was a victim of a homicide, and the manner of death was overdose.  The office has prosecuted overdose death cases, but not intentional murder due to fentanyl overdose.  It is a misrepresentation to the Court that ████████████████

████████████████████████████████████████████████

The Supreme Court in *Illinois v. Gates,* 103 S. Ct. 2317, 2332-2333 (1983) made it clear that conclusory statements are not sufficient in establishing probable cause necessary to issue a search warrant – "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his actions cannot be a mere ratification of the bare conclusion of others."  A warrant affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause, and … wholly conclusory statement[s]…Fail [ ] to meet this requirement."  *See also United States v. Genin,* 594 F. Supp. 2d 412, 418 (S.D.N.Y. 2009).

41.    Your deponent's investigation reviewed, between 2015-2025, press releases put out by the U.S. Attorney's Office – W.D.N.Y. related to the prosecution of 126 drug overdoes cases.  Of those cases, 103 were fatal and 23 were non-fatal.  There was no murder, intentional, murder homicide prosecutions - only accidental overdoses. *See*  https://www.justice.gov/USAO-wdny. Type in: "*Drug Overdose*".

S.A. Penna's conclusory assertion ████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████

The web link S.A. Penna ████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████ Bottomline, no one was killed.  The

15



**(6) Close Relationship**

42.    S.A. Penna in a conclusory fashion misrepresents to the Court that ▮

▮▮▮ S.A. Penna presents no evidence of a ▮

▮▮▮ In addition, ▮

▮▮▮ There was no "close relationship"

between the two. ▮

▮▮▮

▮    S.A. Penna presents no other evidence of any relationship, visits,

communications, gatherings of Mr. Hinkle and Mr. Gogolack that would support a "close

██████████  However, he makes a conclusory statement that misrepresents to the Court

that the relationship ████████████████████████████████████

### (7) Geofence Data

43.    S.A. Penna makes the unsupported and misrepresented *statement* that

"████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████

44.    For the reasons set forth about, it is submitted that it has been conclusively

established that falsity/misrepresentations of the affiant's claims do not establish probable

cause for the search warrant to have been authorized.

### (8) Particularity

45.    The Search Warrant application and the Search Warrants themselves do not seek,

request, set forth, list or address ████████████████████████████████████████

████████████████████████████  Nor does the Search Warrant application state

that the ████████████████████████████████████████████████████

████████████████████    The charges under investigation and listed in the search warrant and

search warrant application did not ████████████████████████████████████

46.    The Fourth Amendment provides that "a warrant may not be issued unless

probable cause is properly established, and the scope of the authorized search is set out with

particularity". *Kentucky v. King,* 563 U.S. 452, 459 (2011). Particularity mandates that a

warrant does three things: (1) identify the specific offense for which probable cause has been

established; (2) describe the place to be searched; and (3) specify the items to be seized by their

relation to designated crimes. *United States v. Galpin,* 720 F. 3d 436, 445-46 (2d Cir. 2013).

47.    When a search exceeds the scope of the warrant's authorization, it becomes a

warrantless search and violates the Fourth Amendment. *United States v. Voustianiouk,* 685 F. 3d

206, 212 (2d Cir. 2012). In *Groh v. Ramirez,* 540 U.S. 551, 558-559 (2004) the court found that

the warrant did not simply omit a few items from the list of many to be seized, or misdescribed a

few of several items. Nor did it make what fairly could be characterized as a mere technical

mistake or typographical error. Rather, in the space set aside for a description of the items to be

seized, the warrant stated that the items consisted of a "single dwelling residence … blue in

color". In other words, the warrant did not describe the items to be seized at all. In this respect

the warrant was so obviously deficient that we must regard the search as "warrantless" within the

meaning of our case law. *See United States v. Leon,* 468 U.S. 897, 923 (1984); cf. *Maryland v.

Garrison,* 480 U.S. 79, 85 (1987).

48.    The same can be said for the search warrant before this court. There is no

identification in the search warrant application of the specific ███████████████████████

███████████████████████████████████████████ Nor is there

specification in the search warrant application of ████████████████████████████

████    Hence, two of the three particularities of a warrant are missing.  *See Kentucky v. King,*

*supra* at 459.  The application and warrant itself █████████████████████████

████████████████████████████████████████████████████████████

There is no mention, listing, enumeration or identity of ███████████████████████

The search warrant goes into great detail about ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

49.    The search and seizure of the ████████████████████████

████████████████████████████████████████████████████████████

████    The warrant was a disguise to get into the premises in an effort to search ████████

████████    absent probable cause for those offenses.

50.    The Supreme Court has explained that:

> "The requirement that [search] warrants shall
> particularly describe the things to be seized makes
> general searches under them impossible and
> prevents the seizure of one thing under a warrant
> describing another.  As to what is to be taken,
> nothing is [to be] left to the discretion of the officer
> executing the warrant."  *Marrow v. U.S.,* 275 U.S.
> 192, 196 (1927); *see Groh v. Ramirez,* 540 U.S. 551
> (2004).

The Supreme Court has added:

> "The uniformly applied rule is that a search
> conducted pursuant to a warrant that fails to
> conform to the particularity requirement of the
> Fourth Amendment is unconstitutional."

*Massachusetts v. Sheppard,* 468 U.S. 981, 988 n.5 (1984).

51.     In addition, law enforcement unlawfully entered, searched and seized items in a

██████████████████████████████████████████████████

████████████████████████████████████ *See United States v. Longie,* 370 F. Supp. 2d 941 (D.N.D. 2005) (The search warrant specifically described the house and authorized a search of only the house; therefore, under the terms of the warrant, a search of the shed exceeded the scope of the warrant.  Although one agent believed a search of the shed was authorized because it was part of the curtilage, the Court finds there was no evidence that the shed was used for activities and privacies of life which would intimately tie the shed to the house and make it part of the curtilage.  Thus, the Court finds the shed was outside of the curtilage. Finally, while the open fields doctrine allows observation of what is in plain view outside the curtilage of a house, it does not simply justify a warrantless entry of man-made enclosure found in an open field.).

Here, the same applies to Mr. Hinkle's ████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

███████████████████

██████████████████

██████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

52.     Because law enforcement exceeded the scope of the search warrant and executed an illegal search of the premises in regard to ████████████████████████████████████████ ██████████████████ must be suppressed as evidence in this case against Mr. Hinkle.

## II.    MOTION TO SUPPRESS STATEMENTS ALLEGEDLY MADE BY MR. HINKLE

53.     The Defendant, HOWARD HINKLE, ██████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████

55.     During the execution of the search warrant, law enforcement officials claimed they encountered ██████████████████████████. Law enforcement officials subsequently arrested the Defendant as ████████████████████████████

21

56.    At approximately 7:15 am ███████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████

57.    During Hinkle's transport to the Wellsville Police Department, ██████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

58.    At approximately 7:30 am, the Special Agents and the Defendant arrived at the Wellsville Police Station and escorted the Defendant into the interrogation room.

59.    Neither Special Agent provided the Defendant with his Miranda Rights prior to or during his transport to the Wellsville Police Department. Only after the Defendant was placed in the interrogation room, approximately one (1) hour after his arrest, the Special Agents read the Defendant his Miranda Rights.

60.    The Special Agents failed to fully explain to the Defendant his Miranda rights. Merely, they read the Miranda rights to the Defendant. Video from the interrogation at the Wellsville Police Departments showed the Agents reading the Miranda rights and questioning the Defendant whether he understood his rights. ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

61.    The Special Agents ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

62.    The Fifth Amendment guarantees that "[n]o person…shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating and compelled" *Hiibel v. Sixth Jud. Dist. Ct. of Nev. Humboldt Cnty.*, 542 U.S. 177, 189, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004); see *United States v. Greer*, 631 F.3d 608,612 (2nd Cir. 2011). A communication is testimonial if it requires a suspect "to disclose the contents of his own mind" *Doe v. United States*, 487 U.S 201, 211, 108 S. Ct. 2341, 101 L.Ed.3d 184 (1988) (quoting *Curcio v. United States*, 354 U.S. 118, 128, 77 S. Ct. 1145, 1 L.Ed.2d 1225 (1957)). To be incriminating, a communication need not be directly incriminating" as the right against self-incrimination also extends to communications "that, while not themselves inculpatory, 'would furnish a link in the chain of evidence needed to prosecute the claimant" *United States v. Greenfield*, 831 F.3d 106, 114 (2nd Cir. 2016) (quoting *Ohio v. Reiner*, 532 U.S. 17, 20, 121 S. Ct. 1252, 149 L.Ed.2d 158 (2001) (per curiam)). To determine if a statement was compelled, "the test is whether, considering the totality of the circumstances, the free will of the [suspect] was overborne." *Washington*, 431 U.S. 188, 97 S. Ct. 1814. The Court must examine the "totality of the circumstances – including "(1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials" – to determine whether "the defendant's will was overborne" *Kourani*, 6 F,4th at 351-52 (citations omitted); see also *United States v. Zerbo*, 1999 WL 804129, at *8 (S.D.N.Y Oct. 8, 1999).

63.    The Second Circuit has further explained that "[a] suspect is entitled to Miranda warnings only if he or she is interrogated while in custody." *United States v. Thomas*, 519 F. Supp. 2d 283, 288 (D. Conn 2007) (alteration in original) (quoting *Tankleff v. Senkowski*, 135 F.3d 235, 242 (2d Cir. 1998)) *United States v. Chandler*, 164 F. Supp. 3d 368,385 (E.D.N.Y. 2016). "[T]he overarching 'custody' question is whether 'a reasonable [person] in the suspect's positions would have understood' herself to be 'subjected to restraints comparable to those associated with a formal arrest" *United States v. FNU LNU*, 653 F.3d 144, 153 (2d. Cir. 2011) (quoting *Georgison v. Donelli*, 588 F.3d 145, 155 (2nd Cir. 2009)).  To answer that question, a court must "consider the circumstances surrounding the encounter with authorities," including: the "duration" and "location" of the questioning, the use of "restraints" the presence of "weapons…especially [if] they were drawn" a statement to the suspect that he was free to leave or under suspicion" and the nature of the questions asked" *Id*.

64.    Hinkle ██████████████████████████████ The Defendants ████████████████ because it required ████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████ █████████████████████████████████ ██████████████████████████████████ ████████████████████ Therefore, Miranda rights should have been provided.

65.    The Defendant's ████████████████████████ ████████████████████████████████████████ ███████████████████████████████

███████████████████████████ Fifth Amendment and *Edwards vs. Arizona* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981).

66.     Recognizing the "'inherently compelling pressures' of custodial interrogation," the Supreme Court has prescribed a series of "prophylactic" rules designed to buttress the right against self-incrimination in custodial settings. *Maryland v. Shatzer*, 599 U.S. 98, 103, 130 S. Ct. 1213, 175 L. Ed. 2d 1045 (2010) (quoting *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). These rules create a presumption that certain custodial communications are compelled unless conditions specified in the case law are met. In *Miranda*, the Supreme Court announced that, before questioning a suspect in custody, police must warn the suspect of his right to remain silent and right to counsel. 384 U.S. at 467-73, 86 S. Ct. 1602.

67.     If the suspect invokes those rights, the interrogation must cease unless and until the suspect makes a knowing, intelligent, and voluntary waiver. *Id*. At 473 -75, 86 S. Ct. 1602. Under *Edwards*, a subject who has invoked his right to counsel cannot be "subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id*. (quoting *Edwards*, 451 U.S. at 484-85, 101 S. Ct. 1880) Incriminating statements obtained in violation of the prophylactic rules are presumed to be compelled and are therefore excluded for the purposes of the prosecution's case in chief. *Oregon v. Elstad*, 470 U.S. 298, 317, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985).

68.     Neither Special Agent ███████████████████████████

69.     This clearly shows that ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

70.     The Defendant never made a knowing, intelligent, and voluntary waiver. Therefore, all the statements made during the interrogation should be suppressed because Defendant invoked his right to counsel and all communications should have ceased.

71.     In light of the Special Agent's violation of the Defendant's Constitutional rights, the Defendant requests a hearing for the suppression of all statements.


### III.     JOINDER IN MOTIONS OF CO-DEFENDANTS


72.     Defendant Hinkle respectfully adopts and requests to join in any motions brought by his co-defendants which apply to him.


### IV.     OTHER MOTIONS


73.     The Defendant, HOWARD HINKLE, reserves the right to bring additional motions based on responses the Government provides to this motion before the Court.

WHEREFORE, your Deponent prays that an Order be granted with relief sought herein, together with such other and further relief as this Court deems just and proper.

Dated: August 8, 2025

*s/ Daniel J. Henry, Jr.*
Daniel J Henry, Jr., Esq.
Attorney for *Howard Hinkle*
16 Main Street
Hamburg, New York 14075
(716) 648-0510
dhenry@villariniandhenry.com

*s/Frank M. Bogulski*
Frank M. Bogulski, Esq.
Attorney for *Howard Hinkle*
135 Delaware Avenue, Suite 2
Buffalo, New York 14202
(716) 649-0090
fbogulski@yahoo.com