

**U.S. Department of Justice**

United States Attorney
Western District of New York

---

Federal Center                                 716/843-5700
138 Delaware Avenue                        fax 716/551-3052
Buffalo, New York  14202    Writer's Telephone:  716/843-5881
                                        Writer's fax:   716/551-3052
                                    Casey.Chalbeck@usdoj.gov

August 11, 2025

**VIA HAND DELIVERY**
Hon. Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

      Re:    *United States of America v. Gogolack, et al.,*
              Case Numbers: **23-CR-99-EAW**

Dear Judge McCarthy:

    On August 8, 2025, the Court ordered the government to produce records relating to "the entire grand jury proceedings, including any statements made to the grand jurors by the government attorneys." Order, ECF No. 544, (dated Aug. 8, 2025).

    Enclosed are the transcripts of the testifying witnesses as well as the government's charge to the grand jury. Regarding the Court's question as to whether "the grand jurors were told that the government's proffers during Gerace's detention hearing[s] in March, 2023 . . . made [Ms.] Quinn's cooperation obvious," *see id.* at 3, please be advised that



▪ ▪

████████████████████████████████

Also enclosed are electronic copies of the ▪ exhibits introduced into the grand jury investigation, as well as a list of the exhibits.¹ As for the Court's request to review "any statements made to the grand jurors by the government attorneys," Order, at 3–4, the government is not in possession of the any transcripts of such statements. Once the government is in possession of any applicable transcripts, it will provide them to the Court.

Lastly, the government offers the following responses to two comments contained in the Court's clarification order. First, the Court alleged that the government "change[d]" its position as to whether a circumvention, or indirect violation, of a protective order amounts to a violation for the purposes of sustaining a contempt allegation. *See* Order, at 2 & n. 3 (citing *United States v. Terry*, 815 F. Supp. 728, 732 n. 5 (S.D.N.Y. 1993) for the proposition that an "indirect" violation can satisfy the contempt standard). This is incorrect.

When alleging that a party has committed contempt, the government is mindful that it must show that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see id.* ("'A clear and unambiguous order is one that leaves "no uncertainty in the minds of those to whom it is addressed,'" who "must be able to ascertain from the four corners of the order precisely what acts are forbidden," (first quoting *Hess v. N.J. Transit R. Ops., Inc.*, 846 F.2d 114, 116 (2d Cir. 1988); and then quoting *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989)). This demanding standard, which *Terry* fails to acknowledge, means that a party's exploitation of a "loophole"—a kind of indirect violation, if you will—does not necessarily rise to the level of contempt. *Chevron Corp. v. Donziger*, 990 F.3d 191, 213 (2d Cir. 2021). Thus, there is nothing inconsistent between the government's position before this Court that a circumvention may amount to an indirect violation and its representations to the District Court that an indirect violation may not sustain a contempt charge—i.e., an allegation that a party's conduct violated, legally speaking, an order.²

---

¹ 

² The government notes that courts in this district have been reticent to issue contempt findings against defendants even when arguably clear orders have been violated. For example, on March 31, 2025, Judge Vilardo entered an order requiring Mr. Gerace "to abide by the [USMS] Policy with respect to media interview so Gerace." Text Order, ECF No. 1454, (dated Mar. 13, 2025). That policy prohibited Mr. Gerace

Second, the Court commented that the government's failure to challenge Ms. Quinn's inclusion on the defense's witness list during the June 21, 2023, status conference before Judge Sinatra "strongly suggests that at that time it did not believe that Gerace's list of [Ms.] Quinn as his witness was in any way improper." Order, at 2. This, too, is incorrect.

From the outset, the government believed that Mr. Gerace's inclusion of certain witnesses on his witness list, including those on the government's witness list that he had already reserved to call, was suspect. The government's on-the-record silence to Mr. Gerace's witness list is thus no proxy for discerning what the government "believe[d]" about the list's propriety. *Id.* Not that any objection would have been appropriate: the June 21st status conference concerned Judge Sinatra's recusal after Mr. Gerace's inclusion of two witnesses on his list triggered the mandatory recusal provisions set forth in 28 U.S.C. § 455(b).[3] *See* Status Conf. Tran., at 2–4, (dated June 21, 2023). Plainly, the June 21st status conference was not an appropriate forum for the government to raise its concerns about Ms. Quinn's inclusion on Mr. Gerace's witness list, as the new presiding judge had not even been assigned.

Please do not hesitate to contact me with any questions, comments, or concerns.

Very truly yours,

BY:    CASEY L. CHALBECK
       NICHOLAS T. COOPER
       JOSEPH M. TRIPI
       Assistant United States Attorney

Encl.

CC (w/o encl.):

Chief Judge Elizabeth A. Wolford (unredacted letter)
Counsel of Record (redacted letter)

---

from participating in interviews, but did not delineate between in-person interviews and telephonic interviews. Mr. Gerace exploited that loophole and gave a telephonic interview. The District Court agreed that Mr. Gerace could not be held in contempt given the small degree of ambiguity in its own order and the USMS policy.

[3]    Mr. Gerace called neither of these witnesses during his trial in cases 1:19-CR-227 and 1:23-CR-37.