**MEYERS BUTH**
LAW GROUP PLLC

Cheryl Meyers Buth
Attorney/Member
cmbuth@mblg.us

Laurie A. Baker
Attorney/Member
labaker@mblg.us

August 19, 2025

Hon. Elizabeth A. Wolford
Chief United States District Judge
100 State Street
Rochester, New York 14614

RE: United States v. Gogolack, et al
    23-cr-99

Dear Judge Wolford:

     This letter is submitted in reply to the government's letter/memorandum dated August 15, 2025 at docket item 559 (unredacted version), 560 (redacted). The Court invited the government to respond to motions by defendants Gerace and Knight seeking *in camera* review of (1) the United States Probation file for Crystal Quinn and (2) presentence reports of ▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇▇▇▇▇ (*see* Dkt. 507, 517); specifically, whether there are any restrictions on releasing the contents to the defense.

     The government cannot and does not take the position that *Brady* material should be withheld from the defense[1]. Rather, it attempts to first delay disclosure then draw a distinction between exculpatory and impeachment material that does not work in this case. The government has already conceded it has no direct evidence against Gerace and will rely on "inferences" which the defense contends are entirely speculative. In the context of the defense's limited request, there is no clear demarcation between "impeachment" and "exculpatory" material. To date, the only evidence against Gerace that the government has disclosed are statements made by Quinn during interviews by agents and her grand jury testimony, as well as ▇▇▇▇▇▇▇▇▇ grand jury testimony about an alleged conversation between Gerace and ▇▇▇▇▇▇▇▇▇▇ in the Niagara County Jail. Information about Quinn and ▇▇▇ is critical to Gerace's defense; "impeaching" information may also be "exculpatory" to the extent the government knew or should have known of infirmities in its witnesses' backgrounds that may have affected their credibility and failed to investigate them.

---

[1] *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). There is no express timetable for disclosure of *Brady* material, however it must be disclose in time for defendants to make effective use of it at trial. *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001). The defense recognizes that *Brady* material refers to evidence in the possession of the government and that the probation files are court documents. However, cases in our district permit the release of exculpatory or impeachment material contained in court documents. *See United States v. Moore*, 949 F.2d 68 (2d Cir. 1991)

1

U.S. Probation file

With regard to Quinn's probation file, the government says it does not oppose release of *Brady* information to the defense; but it opposes as "premature" the disclosure of any impeachment material. The distinction does not exist. *Brady* encompasses both exculpatory and impeachment material.

At oral argument on May 21, 2025 before the Magistrate Judge, the government conceded it had not interviewed the probation officer prior to seeking an indictment against Gerace or at any time thereafter. Only after being prodded by the defense did it turn over 8 emails between an AUSA and the probation officer the week before Quinn died [see summary chart at pp. 3-6 of defendant's motion]While not knowing exactly what information is contained in the probation file about Quinn's mental health and substance abuse records, the government suspects those records may contain references damaging to its case. Quinn's cell phone records demonstrate she lied to the government about her drug use. Even after she told investigators she had mental health issues she was dragged into court anyway to secure her "voluntary cooperation". For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ [Govt. Bates No. 10717-10720]. The defense does not know if this is true; however, it goes to the nature and (in)completeness of the government's investigation in this case.

The government claims it did not explore what Quinn's mental health issues were; whether her condition would make her susceptible to government pressure under threat of criminal charges for an incident which occurred over three years prior; whether her mental health may affect the credibility of the information she provided; whether the stress could lead to a relapse of her drug use; etc. Apparently, the government opted against asking questions that could be detrimental to its case and avoided creating a paper trail about it.

Reflective of the government's preference not to do a deep dive on Quinn's mental health and substance abuse issues, the defense has not received a single note from prosecutors who interacted with Quinn, no doctor's letter(s), and no emails with probation except the week before Quinn died. All of that is relevant to challenging the nature of the investigation wherein Gerace was charged without any direct evidence of his involvement in Quinn's death and the government theorized it was a murder before ruling out alternatives, such as accidental overdose or suicide.

The government acknowledges "that evidence of Ms. Quinn's narcotics use and mental health may, in the defendants' view, be relevant to two defense theories in this case," but it argues that it is unclear how "specific instances when the probation officer believed [Ms. Quinn] was being untruthful," Gerace Mot., at 12, is "required to meet the ends of justice," citing Charmer Indus., 711 F.2d at 1175. The short answer: if it was in the government's file rather than probation's, it would unquestioningly be *Brady* information. Even if the government claims it was unaware of instances when the witness was untruthful, the defense can argue it should have been aware.

2

The government then gets cheeky, asking the Court to deny access to Quinn's probation file (even after initially saying it had no objection to the release of *Brady* material) because "Messrs. Gerace and Knight have failed to articulate a legal basis to impeach Ms. Quinn" even if "assuming arguendo that a legal mechanism exists for the defendants to impeach Ms. Quinn from the grave."

This ignores the fact the indictment in this case contains a list of overt acts which overlap with 19-cr-227. The government's theory is that once Gerace learned Quinn would testify, he had a motive to kill her. Nothing in the indictment or in the discovery indicates what Quinn, who was one of many women who had worked for Gerace and who the government planned to call to testify at his trial, would say that was so damaging she had to be killed. The strength or weakness of her claims is directly relevant in this case to Gerace's motive. The impeachment value of such material is in terms of its use with other government witnesses during cross-examination and in argument to the jury.

Without laying bare the defense strategy, a few examples come to mind:

- If Quinn was abusing drugs while she was on supervision, the nature and extent of such abuse is relevant to a cause of death determination;
- Investigators who had contact with Quinn in 19-cr-227 will testify in this case and whether she would have been a credible witness in that case goes to the likelihood (or not) that Gerace had a motive to prevent her from cooperating or testifying;
- If Quinn lied to the probation officer about being "clean", or if the officer knew about her drug use or her behavior while using drugs, that "impeachment" material is relevant to whether she was murdered or whether she overdosed, intentionally or inadvertently;
- The defense's decision about whether to call the probation officer to testify may depend to some extent on what information is in the probation file regarding their conversations and Quinn's compliance (or to the cross-examination of the probation officer if called by the government);
- Quinn's willingness to lie to the probation officer may also be reflective of her willingness to lie to other government officials, including prosecutors or other witnesses who will testify about Quinn's activities prior to her death.

It is unclear whether the government is more concerned with Quinn's privacy or with the viability of its case against Gerace when it argues the Court should delay giving the defense information which could further its investigation; especially since the defense did not ask for the entire file to be handed over. The CVRA does not itself prohibit the release of *Brady* materials that Quinn signed a waiver for the probation office to access. Additionally, with the CVRA in mind, the defense did not request the wholesale release of the file; rather, it limited its request to relevant material favorable to the defense.

The government says the defense request is premature until the Court rules on defendants' motions to dismiss the Second Superseding Indictment and the government determines whether it will try to admit Quinn's grand jury testimony into evidence. First, whether the government intends to use the material is not a prerequisite to the release of her probation records under *Brady*. Second, the passage of time obviously makes it more difficult for the defense to locate and interview

witnesses or leads to other evidence. The government never gives a reason why, armed with the two types of protective orders it insisted on, Quinn's privacy cannot be adequately protected—because there is none.

Presentence Reports

The government opposes the defense's request that the Court disclose impeachment material from presentence reports of ▮▮▮ and ▮▮▮▮▮ because it claims the defense has failed to demonstrate a sufficiently compelling need for them. This Court is aware that even rote defense motions *in limine* result in the Court's review of presentence reports for impeachment material for testifying witnesses. Most often, in our district, the government does not object. See e.g. *United States v. Wilson*, No. 15-CR-00142-EAW-MJR,, at *40 (W.D.N.Y. Apr. 24, 2017) ("Defendants also request that the Court conduct an *in camera* review of witnesses' presentence reports or pretrial service reports for exculpatory or impeachment material. The Government does not object to an *in camera* review, by the trial court, of cooperating witnesses' presentence and pretrial services reports").

During oral argument on May 21, 2025, one of the prosecutors in this case indicated his understanding of this procedure. [see tr. at p.149]. Usually the review is conducted by the trial court when it has the benefit of a witness list and a more detailed explanation of the testimony and evidence to be offered. But there is no set timeframe for the Court's review and, to the extent the defense has any additional information about the witnesses, it is provided here.

A brief excerpt of ▮▮▮ grand jury testimony was disclosed after the oral argument on May 21, 2025, when counsel for Gerace made a request on-the-record for *Brady* information. ▮▮▮ and ▮▮▮▮▮ were assigned to the same pod as Gerace at the Niagara County Jail. ▮▮▮ testified that he was present in court when Gerace's motion for release was denied because some unknown person(s) put rats in the front yard at Quinn's mother's house. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ First, this is hearsay. Second, the defense asked the government whether it had interviewed ▮▮▮▮▮ and prosecutors said they had not interviewed him. Thirdly, when the defense asked if they had subpoenaed the commissary accounts of Gerace or ▮▮▮▮▮ the government said it had not obtained that potentially corroborating or contradicting information. Fourth, both ▮▮▮ and ▮▮▮▮▮ were prosecuted for violations of supervised release in 2023 and both were released from supervision at the time of their respective sentencings.

Other inmates that the defense is aware of who resided in that pod believed ▮▮▮ was a government cooperator. Whether ▮▮▮ was, in fact, cooperating with the government and whether ▮▮▮ took affirmative steps to act as a government proxy to obtain information about Gerace is unknown. Whether his cooperation resulted in a benefit to him is unknown. Whether the government requested to interview ▮▮▮▮▮ and/or whether ▮▮▮▮▮ refused to cooperate is also unknown. Because not much is known about either ▮▮▮ or ▮▮▮▮▮,

4

the release of impeachment material now, rather than only if the government decides to put them on its witness list for trial, will allow the defense to make investigative use of the information.

By analogy, the government notes the "importance of confidential discussions amongst defendants awaiting sentencing and the U.S. Probation Office to ensure the 'free flow of information to the court.'" In that situation, however, the government gets a copy of the presentence report and is on notice of everything the defendant says to the probation office. Here, the defense is not asking for the entirety of the reports; simply any Brady (exculpatory or impeachment) material. The government also points out the "confidentiality of statements made between supervisees and Probation promotes the supervisee's rehabilitation". But here neither ███ nor ███████ are subject to further probation supervision.

\* \* \* \* \* \* \* \* \* \*

The government does not object outright to the release of the various probation records discussed above; rather, it argues the Court should delay disclosure. Although the instant motion is not governed by the Due Process Protections Act, through that legislation Congress expressed its intention that *Brady* material be made available to defendants promptly. Absent statutory restrictions on the timing of the release of the requested materials or any other exceptional circumstances, the Court is respectfully urged to grant defendant's motion.

Sincerely,

*s/ Cheryl Meyers Buth*
Cheryl Meyers Buth, Esq.
MEYERS BUTH LAW FIRM PLLC
*Attorneys for Defendant Peter Gerace, Jr.*
21 Princeton Place – Suite 105
Orchard Park, New York 14127
(716) 508-8598
cmbuth@mblg.us

*s/ Mark A. Foti*
Mark A. Foti, Esq.
THE FOTI LAW FIRM, P.C.
*Attorneys for Defendant Peter Gerace, Jr.*
16 W. Main Street – Suite 100
Rochester, New York 14614
(585) 461-1999
mark@fotilaw.com