UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA     )       23CR99
                             )
vs.
                                     Rochester, New York
SIMON GOGOLACK,              )       September 9, 2025
              Defendant.             3:00 p.m.
- - - - - - - - - - - - - - - X
**ORAL ARGUMENT/DECISION**


                  TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE ELIZABETH A. WOLFORD
                  UNITED STATES DISTRICT JUDGE

**FOR PLAINTIFF:   NICHOLAS COOPER, ESQ.**
                 **CASEY L. CHALBECK, ESQ.**
                  Assistant United States Attorneys
                  138 Delaware Avenue
                  Buffalo, New York 14202


**FOR DEFENDANT:   PETER MATTHEW KOOSHOIAN, ESQ.**
                  ROSENTHAL, KOOSHOIAN & LENNON, LLP
                  80 W. Huron Street
                  Buffalo, New York 14202

**COURT REPORTER: KAREN J. CLARK, OFFICIAL COURT REPORTER**
                 **KARENCLARK1013@AOL.COM**

USA V. SIMON GOGOLACK

**P R O C E E D I N G**
*          *          *

THE CLERK:  We're on the record in the matter of the United States versus Simon Gogolack 23CR99.

THE COURT:  Good afternoon, everybody.  We have Ms. Chalbeck and Mr. Cooper here from the U.S. Attorney's Office; and Mr. Kooshoian is here with the defendant.

And for the record, are you Simon Gogolack.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And is that how you pronounce the last name?

THE DEFENDANT:  Yes, it is.

THE COURT:  Gogolack.

THE DEFENDANT:  Yes.

THE COURT:  My name is Judge Wolford, Mr. Gogolack.  I'm the district judge now assigned to handle your case.  So I'm glad you're here because I think we've had two appearances at this point and you -- I know you refused transport.  Now, I do want to state --

THE DEFENDANT:  I actually didn't refuse.  I think it was a medical issue; it wasn't refusing.

USA V. SIMON GOGOLACK

THE COURT:  I'm sorry.  Fair enough.  I wasn't accusing you of anything.  You weren't transported there.  I have had the Marshal Service come to me prior to today's appearance to ask that Mr. Gogolack be kept in restraints, which I do not -- I know there are different practices among different judges, but the reasoning that was advanced in support of the request was several reasons.  Number one, the Marshal Service indicated that in November of 2024, Mr. Gogolack allegedly slipped out of his belly chain and then tried to hang himself in the cell block in Buffalo.  Number two, the allegations are that there have been multiple times at the Ohio facility where Mr. Gogolack was found in possession of contraband, homemade weapons, including, on one occasion, where he allegedly tried to harm himself with it.  I'm not making any conclusions as to whether or not this is accurate or not, but when I have the Marshal Service come to me and make that request, then I keep a defendant in restraints for security purposes for today.  Now, whether or not, you know, this is something we do going forward, I'm open to hearing each side advance their arguments about that.  But that is why Mr. Gogolack is in restraints right now.  Any questions about that, Mr. Kooshoian?

USA V. SIMON GOGOLACK

MR. KOOSHOIAN:  No, your Honor.

THE COURT:  Okay.  The other -- before we get to the argument that we're here on today, the other point was that you were going to indicate what the defense position is, Mr. Kooshoian, on the trial location.

MR. KOOSHOIAN:  Yes, your Honor.  We prefer Buffalo, your Honor.

THE COURT:  Okay.  AND are you arguing -- do you want to argue to me why you prefer Buffalo other than the fact you live there?

MR. KOOSHOIAN:  No, there are other strategic reasons that I discussed with my client and that would be our preference.

THE COURT:  Is your argument going to be that under Rule 18 the trial should be held in Buffalo, and, therefore, it would be error to hold it in Rochester?

MR. KOOSHOIAN:  It should be held in Buffalo, yes, I believe under Rule 18 as well.

THE COURT:  Then --

MR. KOOSHOIAN:  I wasn't going to move to change vicinities.  I know a motion was made by the prior attorney, I think, in the non-dispositive motions,

USA V. SIMON GOGOLACK

but me and my co-counsel and the client discussed it and we withdraw that part of the motion.

THE COURT: To change, in other words.

MR. KOOSHOIAN: Correct.

THE COURT: You want to keep it in Buffalo?

MR. KOOSHOIAN: Correct.

THE COURT: And I understand that Mr. Dell had contacted my Chambers earlier today to ask, I don't know if he filed it at this point, but he asked Ms. Loughran how he should be communicating his position on this and we told him to file it on the docket, which maybe he has done. But I think we're going to have to sort through those issues further, and I'm not suggesting that we do it today. We can talk about that issue in terms of timing, including when the attorneys believe I need to make a decision about that, at our status conference later this month. Okay? Any questions or concerns about that?

MS. CHALBECK: No, Judge.

THE COURT: Okay. So we're here for argument on the defendant's appeal from the decision by Judge McCarthy denying in, at least part, his application for disclosure of the search warrant applications without an affidavit of standing. Judge

USA V. SIMON GOGOLACK

McCarthy did order the application with respect to the buccal swab to be produced, but otherwise denied it.  So it's the defense appeal.  I've read the papers.

MR. KOOSHOIAN:  Yes, Judge.  And I did, there are a couple of things I did just want to highlight.  Specifically with respect to the *Tigano* case and the *Hamilton* case.  The *Tigano* case, I believe, was referenced in the *Crosby* decision that your Honor decided in which this issue was addressed.

THE COURT:  I think *Cobb* and *Pirk* are the two.

MR. KOOSHOIAN:  *Pirk* you discussed *Hamilton*. And in those two cases, you said, well, you know, those -- the defense relied on those cases in *Cobb* and *Pirk* and you indicated, well, those are really, you know, inapposite to this case because in those cases there is no question, it was the defendant's home.  You know, that is not the case here.  With *Cobb*, they just made a blanket request for all these warrant applications which they had no expectation of privacy.  In Pirk, it was for a motorcycle clubhouse in which there was a real substantive issue in which the defendant had an expectation of privacy.  There is no excuse here.  There is no substantive argument on whether or not Mr.

USA V. SIMON GOGOLACK

Gogolack has a reasonable expectation of privacy recognized by society in his home, in his property, in his phone, and in his e-mail.  The government hasn't disputed it.  It seems to me just, well, we want you to follow this procedure, but there is no substantive issue here.  And I believe, much like in the *Hamilton* case, you know, it's a preponderance standard.  And I think there is enough before the Court in the non-dispositive motion and including the allegations made on behalf of Mr. Gogolack that, yeah, this is his house.  We're not disputing this is his house.  It's his phone.  It's his e-mail.  I mean, that is his stuff.  He has a reasonable expectation of privacy there and like --

THE COURT:  But, I mean, under Rule 16, doesn't he have to establish that it's material to his defense.  And, therefore, doesn't he have to establish that he has a reasonable expectation of privacy in these items or that were searched.

MR. KOOSHOIAN:  Well, he has to establish that he has a reasonable expectation of privacy.  I think he has done that.  I think it's more probable than not that he has a reasonable expectation of privacy. It's your decision, obviously.  I'm saying, in our opinion, we feel that it's more probable than not that

USA V. SIMON GOGOLACK

he has established that to the Court.  But if you feel, hey, I'm not convinced that it's by a preponderance of the evidence that he has a reasonable expectation of privacy and in the home and, you know, based on what's in front of you, at that point, I would expect, yeah, sign an affidavit.

THE COURT:  But I think it's even there is another layer here because this is an appeal from a non-dispositive decision from a magistrate judge.  So even if I were to, if presented this at fist blush to have said, you know what, I agree with you on the home. You got some records here that Mr. Gogolack is listed as the owner of the home, I agree the home there is a reasonable expectation of privacy, maybe not the e-mail, maybe not some of the other items, I'm -- that is not -- I'm not reviewing this *de novo*.  I have to say that Judge McCarthy was clearly erroneous in his conclusion, and just taking a step back, Judge McCarthy did not say you need an affidavit for everything because he did order the buccal swab application produced.  But Judge McCarthy said, otherwise, I don't think he has established that there is a reasonable expectation of privacy in the other items.  So I have to say that he was clearly erroneous, and I don't know how I get there

USA V. SIMON GOGOLACK

based on this record.

MR. KOOSHOIAN: The only thing I would point to is it doesn't appear that he considered the facts that are specific to this case. I'm sure he looked at the case law with respect to *Cobb* and *Pirk*, but those are factually different. And the more analogous case would be *Tigano*. And I think there is case law and there is a case, I think it is *Wiley* out of the Connecticut District Court in which the Court decided, hey, if you take the phone off the guy's person, he has a reasonable expectation of privacy there in that phone and that is what occurred here. You know, he handed them over the phone. So, I think there was a disregard of the specific facts that are relevant to this case because we're making or the previous attorney made specific factual requests with respect to the underlying applications specific only to the items in which there is no dispute that Mr. Gogolack has an expectation of privacy. The government doesn't dispute that he has an expectation of privacy in any of the items.

I think it should be turned over and it's material because we want to make a suppression motion and we need to look at that.

THE COURT: But you would need an affidavit

USA V. SIMON GOGOLACK

of standing for the suppression motion.

MR. KOOSHOIAN:  I agree with you, but I don't think we're there yet.

THE COURT:  Does the government dispute that Mr. Gogolack has established a reasonable expectation of privacy in the home and the other items that he is seeking the search warrant applications for?

MR. CHALBECK:  Absolutely, Judge.  And the reason is because, as the Supreme Court has said time and time again, Fourth Amendment rights cannot be vicariously asserted.  The way we assess whether the defendant has a reasonable expectation of privacy, which is to say, does he have a subjective expectation of privacy and is that one that is legitimate, i.e. one that society is willing to recognize as objectively reasonable is through the affidavit of standing.  And so absent him providing an affidavit of standing, the government cannot say definitively we contest or we don't contest.

THE COURT:  What about the exhibit B, I think it was to the underlying, it must have been, the underlying motion, the property description for the home that was searched.  If you don't know what I'm talking about, I'm happy to hand it down.  It lists right on

USA V. SIMON GOGOLACK

there that Mr. Gogolack is the owner.

MR. COOPER:  May I come up?

THE COURT:  Yes, and you can show it to Mr. Kooshoian.

MR. KOOSHOIAN:  I have it, your Honor. Thank you.

MS. CHALBECK:  Judge, I'm somewhat familiar with it.  I'll refresh my recollection very briefly.

THE COURT:  You don't need it?

MR. KOOSHOIAN:  No, your Honor.  I have the motion papers.

MR. COOPER:  Thank you.

MS. CHALBECK:  Judge, my assessment or our assessment of the case law is that it is the defendant's responsibility, the onus is on him to assert his subjective and reasonably objective expectations of privacy.  Now, a property ownership in a home might go to that objectively reasonable expectation of privacy. However, there are cases where a home has been condemned, a home is deemed by the state that it cannot be lived in, where courts have recognized that there is no objectively reasonable expectation.  And so I don't think that, on the face of it, having a property right in and of itself satisfies this two-part inquiry, which

USA V. SIMON GOGOLACK

goes also to subjective expectations of privacy.  Only Mr. Gogolack is in the position to assert his subjective expectations of privacy.  That's why even though maybe there is evidence of something objectively reasonable, something socially legitimate, a property interest that may be necessary to satisfy standing, it's not sufficient to satisfy standing.  That is the situation that we have here.  Maybe we have a necessary component through a property record that that in and of itself is not sufficient in order for Mr. Gogolack to assert standing precisely because the case law says you have to have a subjective expectation of privacy as well.

THE COURT:  Do you have any further response to what was given to Judge McCarthy when he seemed to be raising the question as to whether or not the U.S. Attorney's Office has a consistent practice with respect to these issues?  Because his point was, hey, I get motions to suppress that are denied because there isn't an affidavit of standing and yet the defendant in those cases is submitting the search warrant applications.

MS. CHALBECK:  So I actually spoke with management this morning, your Honor, before coming to Rochester.  My understanding is that to the extent in cases where there are criminal enterprises, organized

USA V. SIMON GOGOLACK

crime cases, where there are victims, and, you know, confidential source safety concerns, the U.S. Attorney's Office intends to put on trainings to ensure that we have a more uniformed practice amongst the two divisions of the U.S. Attorney's Office.  That is what I've been authorized to speak to today.  So my understanding is though --

THE COURT:  By the two divisions, you mean Rochester/Buffalo?

MS. CHALBECK:  Yes, your Honor.

THE COURT:  So your understanding is what based on the discussions with management?  That what has been done here is supposed to be the office's consistent practice in the case of any organized crime?

MS. CHALBECK:  The opposite, that what is done in Buffalo when it comes to cases.

THE COURT:  I meant here by this case, I didn't mean physically here, Rochester.

MS. CHALBECK:  Okay.  I understand, Judge. Then yes, what has been done in this case should be the standard for a certain subset of cases specifically those of an organized crime flavor, if you will.

THE COURT:  But if you have, for instance, a simple narcotics possession case and you have controlled

USA V. SIMON GOGOLACK

buys occurring out of a home and there is a charge of possession with intent to distribute, no allegations of organized crime, and in those instances your understanding is your office may be producing the search warrant application without an affidavit of standing?

MS. CHALBECK:  So I can't make -- actually make any affirmative representations of what my understanding is because that is not something that was covered.  However, in Buffalo, we regularly argue that even in those circumstances there may be a compelling government interest to not disclose the search warrant applications at least fully or in an unredacted format. And in particular the office cites with some regularity, *United States v. Napier*, N-a-p-i-e-r, which is also a case I cite in our appellate brief.  That case is a published Ninth Circuit decision, very similar to the facts that the one that your Honor just hypothesized. There were controlled purchases made inside of a residence.  The defendant wanted the search warrant application to be unsealed.  And there was only one confidential source used in that investigation, and the Ninth Circuit ended up affirming that the defendant did not have a Fourth Amendment right of access due to witness safety concerns or CF safety concerns, so that

USA V. SIMON GOGOLACK

was *Napier*.

THE COURT:  I don't think Judge Mccarthy would have been referring to a Rochester practice when he said that he gets applications of and he is dealing with Buffalo cases.  So I guess I'm not convinced that his comments about the inconsistent practices in the office had anything to do with what is happening here in Rochester.

MS. CHALBECK:  I think my counsel --

THE COURT:  Go ahead, Mr. Cooper.

MR. COOPER:  Judge, I wasn't a participant this morning to Ms. Chalbeck's conversations with management in the office, but based on my own experience in both Buffalo and in Rochester, it's been my experience that different line assistants have handled this exact situation differently, and I think have taken it on a case-by-case approach.  I think what Ms. Chalbeck was indicating, was that in some instances, perhaps in a white-collar case, which I have don't have any personal experience working on, there are not the same concerns that exist for my side of the office in narcotics cases with confidential sources or other information that we intend be to protective of that are in search warrant application materials.  I do believe,

USA V. SIMON GOGOLACK

based on conversations that we've had recently, that our office is going to be attempting to develop a more uniform position across the board. But it's been my consistent practice since I started in the U.S. Attorney's Office five years ago, the way that I was taught was that an affidavit of standing was required and at that point we assessed it and then turned over either an unredacted or minimally redacted version of the search warrant affidavit. But I've always done the narcotics side of the office, so I can't speak to what happens on the other side.

THE COURT: Okay. Anything else from the government?

MS. CHALBECK: Judge, I think the core of the government's response is that this can be resolved through reference to first principles and Fourth Amendment practice, starting with the Fourth Amendment rights can not be vicariously asserted as I mentioned previously. Additionally, in the pre-Jones line of Supreme Court cases, it was taken as a given that the defendant would be filing an affidavit of standing in order to contest the search warrant. I know that the issue here is slightly distinct. As your Honor noted, he would have to file that affidavit of standing if he

USA V. SIMON GOGOLACK

were to seek to file a suppression motion, but I think you can extend that logic to the defendant should not even have access to.  There is no Fourth Amendment right of access, in other words, to the search warrant application short of the defendant showing that he has a Fourth Amendment interest to begin with.  So I think what the defense is essentially arguing is a circular proposition.  Looking at Supreme Court case law, Second Circuit case law, and then the persuasive authority of other courts, it makes more sense to require the defendant to show his standing at the first instance.  That is how the defendant shows that he has a Fourth Amendment expectation of privacy that then flows through the rest of the case.  He is able to get the application through Rule 16, through a Fourth Amendment suppression motion.

To retailer that sequence doesn't seem to sound to me like it coheres with Fourth Amendment precedent.  And it certainly doesn't seem to accord with the practice pre-Jones and post-Jones after *Jones* was overturned.

THE COURT:  Okay.  Thank you, Ms. Chalbeck.

Mr. Kooshoian, anything else?

MR. KOOSHOIAN:  No, Judge.  I think we've

USA V. SIMON GOGOLACK

covered everything.

THE COURT:  All right.  I'm going to read a decision into the record.  Pending before me is the appeal of defendant Simon Gogolack from the decision by United States Magistrate Judge Jeremy J. McCarthy denying his application for disclosure of search warrant applications without an affidavit of standing.  This is filed at docket 442, the appeal.

An appeal from a non-dispositive decision by a magistrate judge is reviewed under a "clearly erroneous or contrary to law," standard.  28 U.S.C. Section 636(b)91)(A).  See also *United States v. Williams*, 339 F. Supp 3d 129, 132 WDNY 2018.

"A finding is clearly erroneous when even though there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Feneziani,* that is 2007 Westlaw 1613630 at page one, WDNY June 1, 2007, quoting *Garcia v. Tetitler,* 443 F. 3d 202, page 211, Second Circuit case from 2006.

"The standard is highly deferential and poses a heavy burden on the objecting party and only permits reversal where the magistrate judge abused his

USA V. SIMON GOGOLACK

discretion." *Centro de la Comunidad v. Town of Oyster Bay*, 954 F. Supp 2d 127, page 138, EDNY 2013.

Under that standard of review, Judge McCarthy's decision did not conclude that only with an affidavit of standing would any of the search warrant applications be produced because, as I suggested, he ordered the search warrant application for the buccal swab to be produced. What he ultimately concluded was that the defendant had not met a similar standard with respect to any of the other property. And I cannot, under this deferential standard of review, conclude that a mistake was made or that the heavy burden that a defendant has to make under these circumstances has been met. That does not mean to suggest, because I know I've, apparently, well, not apparently, I have written on this on at least two other occasions in both United States v. Pirk, in 282 F. Supp 3d 585, that was a decision from October 18, 2017, and then *United States v. Cobb*, 554 F. Supp 3d 310, a decision from June 18, 2021, that does not mean to suggest that I believe that only with an affidavit of standing would a defendant be able to get a search warrant application. I think Judge McCarthy did the absolute right thing here and ordered the search warrant application for the buccal swab to be

USA V. SIMON GOGOLACK

produced.  And it doesn't mean that if I was looking at this at first blush that I may not be have come to a different conclusion.  I'm not sure that I may not have.  Especially with respect to the residence under the circumstances of this case.  But under this deferential standard of review, I do not find that defendant has met the burden to overcome Judge McCarthy's decision, and, therefore, I'm going to deny the appeal.

I would encourage the U.S. Attorney's Office, which it sounds like you're going to try and be consistent about this because I think it's creating some questions among the judges, at least, and maybe even among the defense bar as to what the standard is.  But I personally am not sure what the practice is or is not because I don't typically deal with these issues unless it gets up to this stage.  So that is my ruling.

Any questions, Mr. Kooshoian?

MR. KOOSHOIAN:  No.  Thank you, your Honor.

THE COURT:  Okay.  Any questions from the government?

MS. CHALBECK:  No, Judge.  We'll pass the message along.

THE COURT:  Anything else from the government that we need to talk about today?

USA V. SIMON GOGOLACK

MS. CHALBECK:  Can I have one second?

MR. KOOSHOIAN:  I'll talk to you after.

MS. CHALBECK:  No, Judge.

THE COURT:  Okay.  Mr. Kooshoian, anything?

MR. KOOSHOIAN:  No, Judge.  Thank you.

THE COURT:  All right.  Mr. Gogolack, it was nice to see you in person.

THE DEFENDANT:  Ma'am, thank you.

THE COURT:  I hope you have a safe trip back and we'll see everybody, I guess, at the end of this month at a status conference.

THE DEFENDANT:  Thank you very much, your Honor.

MR. KOOSHOIAN:  That is what I was going to ask you about, the date of status conference.

THE COURT:  I can share it with you.  I know, Mr. Gogolack, he is in Ohio.  I know it's not an inconvenient trip for him.  In consultation with your attorney, Mr. Gogolack, you're certainly free to attend the appearances or if you decide you want to waive your appearance, you should talk to your attorney about that.  But I do think if Mr. Gogolack is going to persistently waive his appearance, we probably need something on the record about that, even an affidavit.

USA V. SIMON GOGOLACK

THE DEFENDANT:  It's not an issue.

THE COURT:  But it sounds as though you were ill the last time.

THE DEFENDANT:  It was circumstantial.  I don't have an issue, I don't have a further issue.

MR. KOOSHOIAN:  He says he won't have any further issues appearing.

THE DEFENDANT:  It was circumstantial with my medical condition at the time.

THE COURT:  They were medical issues.

THE DEFENDANT:  Yes.

THE COURT:  Fair enough.  The next appearance in this case is a status conference on September 25th in Buffalo.

MR. KOOSHOIAN:  Thank you, your Honor.

THE COURT:  At 11 a.m.  And I will plan to, and you can pass the word, address how we're going to resolve the issue of the trial location.  I'm not planning on resolving it on the 25th, but given the fact that there is not unanimity among the defendants, I think we need to talk about how we go about resolving that and when we need to resolve it, because, obviously, things can always change between now and the date of the trial in terms of who is actually going to trial.  So

USA V. SIMON GOGOLACK

maybe everybody should give some thought to that.  Okay?

MS. CHALBECK:  Yes, Judge.

THE COURT:  Have a good day, everybody.

MR. KOOSHOIAN:  Thank you, you too.


\*     \*     \*

CERTIFICATE OF REPORTER


   I certify that the foregoing is a correct transcript

of the record of proceedings in the above-entitled

matter.


S/ Karen J. Clark,  RPR

Official Court Reporter