IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                                    23-cr-99

GOGOLACK et al,

       Defendants.

_____

# SUPPLEMENTAL MEMORANDUM REGARDING DISCLOSURE OF CRYSTAL QUINN'S PROBATION FILE

## Introduction

On July 24, 2025, defendant Gerace's counsel filed a motion for an Order compelling the United States Probation Office to produce its file regarding Crystal Quinn; and further seeking to have the Court conduct an *in camera* review for exculpatory or impeachment material. [see defense motion & memorandum dkt 507, 507-1]. The government filed a response on August 15, 2025 [dkt 560] to which the defense replied on August 19, 2025 [dkt 570].

On August 22, 2025, the Court sent counsel an email indicating it had reviewed Quinn's probation file and asking for additional information before making a decision concerning whether the records should be turned over to the parties. Specifically, the Court wanted to know 1) whether any records from the probation file had been disclosed by the government as part of the discovery in this case and 2) if there was case law directly on point on the issue of whether the records of a victim should be produced under the circumstances of this case. These inquiries are separately addressed below.

1

**The government has disclosed 1)Ms. Quinn's cell phone records and 2) emails between the prosecutor and probation officer the week before Ms. Quinn's death**

The Court inquired whether any records which would be part of the probation file had been disclosed by the government to the defense. The only items of discovery which may also be found in the probation file are 1) Ms. Quinn's text messages with the probation officer (from Quinn's cellebrite report) and 2) emails between the prosecutor and the probation officer from the week before Ms. Quinn's death (July 25, 2023 through July 30, 2023) [See summary of Quinn's texts and emails between the prosecutor and probation officer in the defense memorandum at dkt 507-1, pp. 2-6]. These emails were turned over by the government pursuant to the defense *Brady* request made during the oral argument of non-dispositive motions [see tr. May 21, 2025 at pp. 146-148]

No emails between the prosecutor and the probation officer prior to July 25, 2023 have been turned over. There are no text messages on Ms. Quinn's phone from March 1, 2023-June 5, 2023. The defense does not have Ms. Quinn's Facebook or Facebook Messenger records. There were 7 calls that Quinn made using Facebook Messenger between July 29, 2023 – July 31, 2023. There were 41 Facetime calls (both incoming and outgoing) between March 1, 2023 and July 15, 2023. It is our understanding the government is not in possession of Quinn's Facebook records. There are also 1,132 instances of Snapchat activity between March 1, 2023 and August 1, 2023 but no content has been provided. Quinn also had an Apple iCloud account and a Blink camera app both of which may have GPS location information but no records have been provided. [see def memorandum dkt 507-1, pp.6-7, n.5]

As the Court will recall, Ms. Quinn was charged via Criminal Complaint on February 3, 2023. [see Complaint, 23-mj-00011, dkt 1]. An arrest warrant was issued and Quinn made an initial appearance on February 8, 2023. The government did not oppose her release and asked

2

the Court to impose certain conditions of release and moved on March 3, 2023 in a sealed affidavit for a Rule 48(b) deadline of April 9, 2023 to which Quinn's lawyer consented. An order of dismissal was entered on April 6, 2023 after she entered into a cooperation agreement and diversion agreement on April 3, 2023, copies of which have been provided to the defense along with her grand jury testimony and reports of interviews.

Nothing else that is contained in Ms. Quinn's probation file has been disclosed in this case including her

- pretrial services report,
- the probation officer's chrono/narrative/notes,
- communications between the prosecutor and probation prior to July 25, 2023,
- communications between the probation officer and Ms. Quinn (and/or Ms. Quinn's counsel),
- the results of drug tests, medical/mental health/pharmacy records,
- or any other material that would be expected to be contained in the probation file.

### Case law regarding the release of a deceased victim's probation records

The defense requested that the Court examine Ms. Quinn's probation file for any exculpatory material that may exist. The defense and the government both cited *United States v. Charmer Indus.,Inc.*, 711 F.2d 1164 (2d Cir. 1983) for the proposition that whether the records should be released to the parties depends on the balancing of the victim's privacy interests against the defendant's "compelling need for disclosure to meet the ends of justice". Id. at 1176. The defense asserted "Although the USPO file likely contains information that would otherwise be confidential, the Court can properly balance the defense need for the material against any harm to Quinn" [see def memo at dkt 507-1, p.14].

3

The Court asked the parties to submit additional case law specifically regarding the release of probation files to third parties (not just impeachment material contained in presentence reports). While the defense could not find anything directly on point, *United States v. Walker*, 491 F.2d 236 (9th Cir. 1974) is generally instructive. Walker's counsel subpoenaed a co-defendant's probation file which was submitted for *in camera* review to identify potentially exculpatory or impeachment material. The co-defendant had pled guilty and agreed to testify for the government. Though not directly accessible by defense counsel, this mechanism acknowledges that such files may contain material that must be disclosed once identified as relevant.

Similarly, the United States Supreme Court in *Pennsylvania v. Ritchie*, 480 U.S. 38 (1987), while involving child welfare records, held that a defendant has a right based on due process to *in camera* review of third-party confidential records that may contain evidence favorable to the defense upon a plausible showing of relevance. In 1979, respondent George Ritchie was charged with raping his 13-year old daughter. The matter was reported to the police who referred it to the appropriate child protective agency. The Court held that Ritchie's interest in ensuring a fair trial could be protected by requiring that the child protective agency files be submitted to the trial court for *in camera* review. Although this ruling denied Ritchie the benefits of an "advocate's eye," the court held that if the defendant was aware of specific information contained in the file (*e.g.,* the medical report), he could request it directly from the court and argue in favor of its materiality.

In the context of presentence reports ("PSR"), *United States v. Smith,* 992 F.Supp. 743 (D.N.J. 1998) emphasized that courts retain judicial discretion even under the confidentiality framework of Fed.R.Crim.P. 32. The *Smith* court held PSR confidentiality is not absolute and *in*

4

*camera* review is appropriate when information is material and the party making the request has a particularized and compelling need for it.

There are a number of cases in which state prosecutors or parties in civil actions have subpoenaed federal probation records (not limited to PSR's) with varying success. *In re Horsford*, 699 F. Supp. 463, 465 (S.D.N.Y. 1988), was a criminal case in which a certified social worker sought disclosure of a presentence investigation report to facilitate a mental health evaluation of Horsford in state court. Horsford had been convicted of embezzlement in federal court in 1983. The social worker was acting in his capacity as the state court's expert in conducting a pre-plea mental health evaluation in connection with a 1988 state court indictment. Horsford consented to the application.

The district court denied the social worker's application despite finding it established the requisite need for disclosure. The court's holding primarily discussed the confidentiality of presentence reports and, citing *Charmer*, the Court concluded that the demonstrated need for disclosure was not sufficiently compelling to offset the presumed confidentiality of the reports. However, it denied the application without prejudice and allowed the social worker to first discuss Horsford's probation supervision, including his mental health treatment, with the Chief Probation Officer.

*In re Sem*, 2:96-MC-3, at *1 (D. Vt. Jan. 12, 1996) dealt with a petition filed by the defendant's former husband. The defendant had been convicted of a federal cocaine offense and while she was on supervised release she sought to modify the family court custody order governing their two minor children. The husband wanted to prove that his former wife had resumed her illegal drug use and sought to depose a United States Probation Officer to ascertain whether she had violated the terms of her supervised release. The court held that the husband had

failed to state a compelling reason to support his request for the officer's deposition testimony. The court found that the need for continued confidentiality between the wife and probation officer outweighed the husband's need for the testimony.

*In re Subpoena of George*, No. 5:17MC00002,, at *1 (W.D. Va. Apr. 10, 2017) involved a state murder investigation. At the time of the murder, defendant Curtis was on federal supervised release for a federal firearm offense. The court was advised that the Commonwealth intended to elicit certain information that the probation officer received from Curtis while he was under her supervision.

Chief United States District Judge Glen E. Conrad analyzed whether the probation files could be released pursuant to a subpoena and subsequent letter received from the prosecutor. While the instant case is before the Court on defendant's motion, rather than a request from the prosecutor, the factors relevant to the Court's exercise of discretion and its balancing of the defendant's need for the information against the supervisee's privacy rights, is analogous:

> "While most cases involving the application of this presumption involve requests for presentence reports, courts have recognized that "the policy reasons behind protecting confidentiality apply at all stages of the proceedings between the defendant and the probation office." In re Sem, No. 2:96-MC-3, 1996 U.S. Dist. LEXIS 1640, at *5 (D. Vt. Jan. 12, 1996) (collecting cases); see also United States v. Harrison, No. 92-543-1, 2003 U.S. Dist. LEXIS 7733, *1-2 (E.D. Pa. May 7, 2003) (observing that "United States probation files are confidential court records compiled in the course of fulfilling court-ordered responsibilities," and therefore cannot be disclosed to a third party without prior authorization from the court).
>
> In order to overcome the presumption against disclosure, a third party must demonstrate that 'lifting confidentiality is required to meet the ends of justice.' United States v. Figurski, 545 F.2d 389, 391 (4th Cir. 1976) (quoting Hancock Brothers, Inc. v. Jones, 293 F. Supp. 1229, 1233 (N.D. Cal .1968)); see also United States v. Charmer Indus., Inc., 711 F.2d 1164, 1173 (2d Cir. 1983) ("We agree with the rationale of Hancock Brothers and with its conclusion that the district court should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the reports required to meet the ends of justice."). The court has a "fair measure of discretion" in determining whether this standard has been met. Charmer, 711 F.2d at 1177. In exercising its discretion, the court must consider whether the information at issue is obtainable from other sources. See id. ("a central

6

element in the showing required of a third person seeking disclosure is the degree to which the information in the [probation file] cannot be obtained from other sources."); see also Guide to Judiciary Policy, Volume 8, Chapter 6, § 630 (explaining that confidentiality may be lifted "[i]f the federal court concludes that disclosure of the subpoenaed information is necessary to 'meet the ends of justice,'" and that "disclosure should be denied when the requested information is available by another means since the 'ends of justice' do not include mere convenience").

    The same considerations have been held to apply when probation records are sought for use in state judicial proceedings, both criminal and civil. See, e.g., United States v. Dove, No. 3:08CR31, 2008 U.S. Dist. LEXIS 89965, at *5 (E.D. Va. Nov. 5, 2008) (denying the petitioner's motion to access the presentence report of a convicted federal offender identified as a witness in a pending state prosecution on the basis that the petitioner's "generalized and unsupported assertion of need fail[ed] to satisfy the heightened standard for third-party access to presentence reports"); In re Sem, 1996 U.S. Dist. LEXIS 1640, at *2 (denying a request to obtain deposition testimony from a federal probation officer for use in a family court proceeding since the petitioner failed to demonstrate a lack of alternative sources for obtaining the information at issue); In re Application of Horsford, 699 F. Supp. 463, 465 (S.D.N.Y. 1988) (concluding that the asserted need for disclosure of a federal offender's presentence and probation supervision records for use in a state criminal proceeding was "not sufficiently compelling to balance the desirability of continued confidentiality of [such records]").

    In this case, the court has received a letter from the Commonwealth's Attorney outlining the testimony that the Commonwealth intends to elicit from the probation officer and the significance of the proposed testimony. The court has also received a summary of the probation officer's communications with the federal offender, which confirms the Commonwealth's Attorney's forecast of the evidence. Based on the information provided to the court, and in light of the serious nature of the crime charged, the court concludes that the Commonwealth has met its burden of demonstrating that the proposed testimony is necessary to meet the ends of justice. The court has been advised that the testimony pertains to matters that are uniquely within the knowledge of the probation officer, that the information cannot be obtained from any other sources, and that it is critical to the prosecution of the criminal case. On balance, the court believes that the Commonwealth's interest in obtaining the probation officer's testimony outweighs the interest in maintaining the confidentiality of the information she received from her supervised release. Accordingly, the court will authorize the probation officer to comply with the subpoena and offer testimony relevant to the issues identified by the Commonwealth's Attorney. The court emphasizes, however, that its decision is limited to the particular facts of this case."

*In re Subpoena of George*, No. 5:17MC00002,, at *1-5 (W.D. Va. Apr. 10, 2017)

Similar to the result in *George*, the court in *United States v. Ayala*, 2011 U.S.Dist.LEXIS 39950 (E.D.Pa. Apr 12, 2011) released federal probation records pursuant to a state subpoena.

Defendant Ayala was serving a term of supervised release as result of 1997 sentence.  The

7

District Attorney's office issued a subpoena for the testimony of Ayala's federal probation officer and the production of Ayala's federal probation file, including drug testing and mental health records, in his state capital murder trial. The Court analyzed the issue under the subpoena regulations of the Judicial Conference of the United States.

Like the request in the instant case, the subpoena regulations required the Court to make an independent determination whether to allow the testimony of Court personnel and/or the release of Court documents. The Court recognized it must weigh and balance, among other factors, the need to conserve the time of federal judicial personnel; the need to minimize the judiciary's involvement in issues unrelated to its mission; and whether the testimony or production of records would disclose confidential information. The Court concluded that, upon consideration of all these factors, the government and the defense had satisfied the burden of establishing that portions of the information sought were relevant and unavailable from other sources.

The Court allowed the probation officer to testify but limited the scope of his testimony and the production of records. It allowed the probation officer to disclose the results of drug testing and mental health evaluations obtained as part of her supervision, as well as to testify about her observations of Ayala's demeanor and sobriety. The court also allowed counsel for Ayala to speak with the officer regarding the subject matter of the testimony prior to trial. While the court made some records available to both defense and prosecution, defense counsel alone was given access to a 1983 discharge summary from the Eastern Pennsylvania Psychiatric Institute. Further the defense was allowed to review Ayala's probation file and could make additional requests for material thereafter. *United States v. Ayala*, No. 94-cr-0296-LR,, at *2-3 (E.D. Pa. Apr. 12, 2011); See *Guide to Judiciary Policy,* Ch.8 Testimony and Production of

8

Records, §850 Procedure When Request is Made[1]

(https://www.uscourts.gov/sites/default/files/vol20-ch08.pdf).

In contrast to the decision in *George*, the West Virginia District Court in *In re Varney*, No. 722mc00011,, at *7-8 (W.D. Va. July 7, 2022) held that the Commonwealth had not met its burden of showing that the proposed testimony was necessary to meet the ends of justice. There, the defendant was charged in state court with possession of methamphetamine. He raised as a defense that he possessed the drugs for personal use, not distribution. The state prosecutor did

---

[1] **§ 850 Procedure When Request Is Made**
In response to a request for testimony or the production of records by federal judicial personnel in legal proceedings covered by these regulations, the determining officer may determine:
Whether the federal judicial personnel may be interviewed, contacted, or used as witnesses, including as expert witnesses,and whether federal judicial records may be produced, and what, if any conditions will be imposed upon such interview, contact, testimony,or production of records.
The determining officer may deny a request if the request does not meet any requirement imposed by these regulations.In determining whether or not to authorize the disclosure of federal judicialinformation or records or the testimony of federal judicial personnel, the determining officer will consider, based on the following factors, the effect in the particular case, as well as in future cases generally, which testifying or producing records will have on the ability of the federal judiciary or federal judicial personnel to perform their official duties.
The need to avoid spending the resources of the United States for private purposes, to conserve the time of federal judicial personnel for the performance of official duties, and to minimize the federal judiciary's involvement in issues unrelated to its mission.Whether the testimony or production of records would assist the federal judiciary in the performance of official duties.Whether the testimony or production of records is necessary to prevent the perpetration of fraud or injustice in the case or matter in question.Whether the request is unduly burdensome or is inappropriate under applicable court or administrative rules. Whether the testimony or production of records is appropriate or necessary under the rules of procedure governing the case or matter in which the request arises, or under the relevant substantive law of privilege. Whether the request is within the proper authority of the party making it.Whether the request meets the requirements of these regulations.Whether the request was properly served under applicable court, administrative, or other rules.Whether the testimony or production of records would violate a statute, regulation, or ethical rule. Whether the testimony or production of records would disclose information regarding the exercise of judicial or quasi-judicial responsibilities by federal judicial personnel in the decisional or deliberative process. Whether the testimony or production of records would disclose confidential information from or pertaining to a presentence investigation report or pertaining to an individual's probation, parole, or supervised release, or would disclose any other information that is confidential under any applicable statute or
regulation. Whether the testimony or production of records reasonably could be expected to result in the appearance of the federal judiciary favoring one litigant over another, or endorsing or supporting a position advocated by a litigant. Whether the request seeks testimony, records or documents available from other sources.
Whether the request seeks testimony of federal judicial personnel as expert witnesses.Whether the request seeks personnel files, records or documents pertaining to a current or former federal judicial officer or employee, and the personnel files, records or documents sought by the request may be obtained from the current or former federal judicial officer or employee in question, or the personnel files, records or documents sought by the request would be made available to the requester with the written consent or authorization of the current or former federal judicial officer or employee in question. Any other consideration that the determining officer designated in §840(b) may consider germane to the decision.

not have access to the results of drug testing conducted by the defendant's federal probation officer. While recognizing that allegations of drug distribution are always serious, the court nevertheless held that the Commonwealth did not sufficiently explain the nature of the charges and its proposed proof in a way that would enable the court to assess the respective interests of the parties. Therefore, the court found that the prosecutor failed to demonstrate the drug testing records were necessary to impeach the defendant or that there was no other way to rebut the proffered defense.

## Conclusion

While counsel could not find any factually identical cases, the framework for analysis of requests for the disclosure of probation files to third parties is the same across a variety of contexts. This Court has discretion to release probation records after balancing the defendant's compelling and particularized need against the presumption of confidentiality and countervailing policies in favor of non-disclosure. The above-cited cases generally recognize a defendant's due process rights usually weigh in favor of disclosure once the relevance of the material is established. Here, the probation records are not available from another source, they have not already been disclosed, they are relevant to the primary issues in the case (including the manner of Ms. Quinn's death) and the charges against the defendant are undoubtedly serious.

Based on the foregoing, the defense respectfully requests that the Court exercise its discretion and release any exculpatory or impeachment materials in Ms. Quinn's probation file.

DATED:     Orchard Park, New York
           September 15, 2025

                                                        s/ Cheryl Meyers Buth
Cheryl Meyers Buth, Esq.
MEYERS BUTH LAW GROUP, PLLC
*Attorneys for Defendant Peter Gerace*
21 Princeton Place, Suite 105
Orchard Park, New York 14127
 (716) 508-8598
cmbuth@mblg.us


s/ Mark A. Foti
Mark A. Foti, Esq.
THE FOTI LAW FIRM, P.C.

*Attorneys for Defendant Peter Gerace*

16 W. Main Street – Suite 100
Rochester, New York 14614
(585) 461-1999
mark@fotilaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  23-cr-99

GOGOLACK et al,

    Defendants.

# CERTIFICATE OF SERVICE

    I hereby certify that, on September 15, 2025, this Supplemental Memorandum was served on all counsel of record by electronically filing the submission with the Clerk of the United States District Court for the Western District of New York using the Court's Case Management/Electronic Case Filing system which electronically served:

    AUSA Casey Chalbeck
    AUSA Nicholas Cooper
    AUSA Joseph Tripi
    138 Delaware Avenue
    Buffalo, New York 14202
    716-843-5700
    Casey.chalbeck@usdoj.gov
    Nicholas.cooper@usdoj.gov
    Joseph.tripi@usdoj.gov

/s/ *Cheryl Meyers Buth*