UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

vs.

JOHN THOMAS ERMIN                              Docket No 1:23-CR-99

                              Defendants.

### REPLY TO GOVERNMENTS RESPONSE (DK 611)

GEORGE V.C. MUSCATO, ESQ., being duly sworn, deposes and says:

1.    GEORGE V.C. MUSCATO, ESQ., together with DONALD M. THOMPSON,

ESQ. are the attorneys licensed to practice in the State of New York and the United States District

Court for the Western District of New York, and we are co-counsel representing Defendant JOHN

THOMAS ERMIN.

2.    We submit this Affidavit in Reply to the Government's Response to the Defendants

Dispositive Motions.

### COUNT 24 CHARGING A VIOLATION OF USC §922(g)(3) AND 81 USC §924(A)(8) AS UNCONSTITUTIONAL IN ITS APPLICATION TO DEFENDANT ERMIN SHOULD BE GRANTED

3.    The Defendant John Ermin challenges the constitutionality of 18 USC(g)(3), Count

24, as applied to him violates the Second Amendment of the United States Constitution.

4.    The government responds in two ways:  First, this is a decision that can only be

made after trial; and second, consistent with Bruen and Rahimi, Section 922(g)(3) resembles those

historical laws in both "why and how" it burdens defendant's conduct.

1

5.      Defendant Ermin was arrested following an execution of a search warrant at his residence.  During the search several hunting rifles and a recreational amount of marijuana was discovered.  Defendant Ermin simply identified the marijuana as a recreational amount.  The Government does not dispute these facts, which are consistent with the indictment.

6.      A challenge to the "as applied constitutionality of this section is permitted if this is the only set of circumstances that exist." United States v. Salerno, 107 S.Ct. 2095(1987)

7.      With respect to the second response of the Government, it is the Government's burden to demonstrate that the challenged regulation [USC §922(g)(3)] is relevantly similar to laws our historical tradition is understood to permit (New York State Pistol and Rifle Association, Inc., vs. Bruen, 597 U.S.1 at 29).

8.      The caselaw since Bruen prescribes a two-step process for Second Amendment challenges. First, we ask whether the second amendment's plain text covers the individual's conduct, the constitution presumptively protects that conduct. (Bruen 597 U.S. at 17).  Second, we ask whether the challenged regulation is consistent with the principles that underpin our regulatory tradition (United States v. Rahimi, 602 U.S. 680(2024) (Bruen 597 U.S. at 26-31).

9.      The Government, in an attempt to support this regulation as applied to Defendant Ermin cites the following as historical analogs: "922(g)(3) targets persons who pose a clear danger of misusing firearms: habitual use of unlawful drugs, . . . vagrancy laws, civil commitment laws

and surety laws (page 95, paragraph 2). Vagrants are defined as "Common Drunkards and alcohol abuser, The Government even equates surety laws as including "Common Drunkards" requiring the posting of a bond.

10.    The circumstances in the Ermin case are strikingly similar to the facts in <u>United States vs. Connelly</u>, 117 F.4th 269 decided on August 28, 2024, following the decision on <u>Rahimi</u> June 2024. In the Connelly case, the defendant was a "marijuana smoking gun owner." He was charged with, in addition to other violations, §922(g)(3). The Government proffered historical evidence very similar to what the Government has set forth in its Response i.e. laws disarming the mentally ill, laws disarming dangerous individuals, and intoxication laws. The court considered each of these and rejected all of them.

11.    The Connelly Court, after reviewing all of the historical references, stated as follows:  Boiled down §922(g)(3) is much broader than historical (intoxication) laws. These laws may address a comparable problem preventing intoxicated individuals from carrying weapons but they do not impose a comparable burden on the right holder.  In other words, they pass the "why" but not the "how" test. See <u>Rahimi</u> 144 S.Ct. at 1898, <u>Connelly</u> 269 (218-282).

12.    As the Court further opined, there is a substantial difference between an actively intoxicated person and an unlawful user under §922(g)(3). The statutory term "unlawful user" captures regular marijuana users, but the temporal nexus is most generally described as vague. It does not specify how recently an individual must use drugs to qualify for the prohibition. <u>Connelly</u> 17 Fd.Ct. 269, 282.

13.    In summary, the court further stated that the analogical reasoning required in <u>Bruen</u> and <u>Rahimi</u> (2024) cannot stretch that far. The history and tradition supports at most a ban on carrying firearms while an individual is presently under the influence. There is no support that Defendant Ermin was under the influence regardless of what facts the prosecution may offer to a jury.

14.    This Count should be dismissed.

**MOTION TO SUPPRESS FRUITS OF THE SEARCH WARRANT OF JOHN ERMIN'S RESIDENCE, OR IN THE ALTERNATIVE, A HEARING PURSUANT TO FRANK VS. DELAWARE**

15.    The Government in their Response, acknowledge the inaccuracies in their search warrant application including the all important and substantive timeline but claims its excusable error. (See page 101 of the Government's Response (Docket No. 611)) ". . . moreover, prior to Special Agent Weis providing an inaccurate timeline of Mr. Gerace's comments in his search warrant Affidavit, one of the Government's prosecutors had proffered an inaccurate timeline in its response to Mr. Gerace's new motion for pretrial release. (20, 1:19-cr-227, EFC 605, dated August 11, 2023)

16.    In fact, in the Government's search warrant application Agent Weis on numerous occasions misdirected and misstated the timeline together with other inaccuracies.

a) Page 5, paragraph 13 a-f, following court and during his transport on March 27 2023, Gerace was very upset while seated in the transport van stating several times "fuck the rats," "all snitches should die" and "I have serious people to tie up loose ends."

b) Page 7, paragraph 16, "There is probable cause to believe that the sequence of event culminating in Quinn's orchestrated murder involved Gerace and Ermin meeting face to face." (referring to the April 4, 2023, jail visit)

c) Page 17, paragraph 39, Agent Weis avers "I further know that Gerace met with Ermin in person at the jail after Quinn was charged by Federal Complaint." (February 3, 2023, 23-mj-11)

d) Page 30, paragraph 59, "We know that Ermin personally met face to face with Gerace at Niagara County Jail on April 4, 2023, just days after Gerace was detained and after Gerace learned that Quinn had become a Government witness."

e) Page 48, paragraph 99(d), ". . . information that a bounty was on her head (Quinn) . . . consistent with the meeting between Gerace and Ermin on April 4, 2023."

f) Page 51, paragraph 99(m), "The sequence of events – including the order to detain GERACE wherein GERACE learned that QUINN was a witness against him; GERACE's subsequent statement indicating that witnesses should die and that he has people with long reach to "tie up loose ends"; GERACE's face-to face meeting with ERMIN at the Niagara County Jail; . . ."

17.     Furthermore, in Exhibit 1 attached to the Government Search Warrant Application the same inaccurate narrative continues:

a) Page 3, paragraphs b-d – Agent Weis swears the conspiracy began with an April 4, 2023, meeting.

b) Page 8, paragraph p – "Additionally, on August 4, 2023, just days after Quinns death, and just one day after KNGHT and RONCONE communicated several times via cell phone, a License Plate Reader ("LPR") identified RONCONE'S vehicle, a white Ford pickup truck bearing the license plate NY 72301NB, travelling on Bowen Road, Lancaster, New York. Significantly, ERMIN'S residence at 41 Richmond Avenue, Lancaster, New York is just 2.7 miles away from RONCONE'S location at the time of the LPR reading."

c) Page 22, paragraph 3 – "GERACE MEETS WITH OUTLAWS MOTORCYCLE CLUB PRESIDENT JOHN ERMIN AFTER BEING DETAINED"

18.     This was not just an oversight or an innocent misstatement.  The Government repeated it numerous times throughout the search warrant application possessing information that it knew the above to be false.

19.     Here is why we believe that the Government knew the timeline is inaccurate and, for whatever reason, used it in seeking a search warrant.

a)  We believe the source of the information to be ▮▮▮▮▮▮▮▮ who testified at Gerace's trial. Of course, I would not have known this until he participated in the trial. A review of ▮▮▮▮ Docket 19-cr-184, attached shows on July 17, 2023, he entered into a plea agreement. On May 16, the Federal Public Defender's office filed a motion to withdraw. It is highly likely that between May 16, 2023, and July 17, 2023, the Defendant ▮▮▮▮▮▮▮▮ proffered to the United States Government and disclosed, as part of his cooperation in May 2023, the conversation that occurred in the transport van and statements made by Peter Gerace. Clearly, if in fact this is true, the Government knew that at the time of the search warrant application on December 5, 2023, and subsequent detention hearings involving Defendant Ermin that their timeline was inaccurate. The fact that they provided a letter (attached to Dk. No540) within days after the completion of Defendant Ermin's detention hearing acknowledging their inaccuracy only serves to reinforce the fact that they misused the timeline.

b)  In Exhibit 1, attached to Search Warrant application page 20 in the footnote they reference the C.I that's identified above.

20.     Additionally, we have filed a motion joining in Attorney Mark Foti's motion before Judge Vilardo seeking permission to review the trial transcripts including discovery and witness statements in United States v. Gerace, 23-cr-227, in an effort to assist us in this issue.

21.     In the Government's application, they claim that on August 4, 2023, Agent Weis said that Mr. Roncone was in close proximity to the home of Defendant Ermin, when in fact Defendant Roncone lives only a short distance from Mr. Ermin's house. They should have certainly known that in light of the fact that they were seeking a search warrant application for Mr.

Roncone's house at 4998 Williams Street, Lancaster, New York, a short distance from the Ermin residence at 41 Richmond Avenue. Agent Wies is speculating that Roncone on his way to see Ermin instead of going home.

23.    The government had to know that the timeline was inaccurate but repeatedly peddled the inaccuracies in seeking further court relief in terms of a search warrant of Defendant Ermin's residence and to Defendant Ermin's detention hearing. Counts 1 through 3 of the superseding indictment alleges a conspiracy. The timeline is everything; not an innocent mistake.

24.    We believe that we have satisfied the requirements that this is not insignificant and that we are entitled to a Franks Hearing. In <u>Franks v. Delaware</u>, 98 S.C. 2674(1978) the defendant challenged the truthfulness of statements made by police in a search warrant application. Defendant Ermin has pointed out those portions of the affidavit that he believes is intentionally inaccurate and supported it with documentation that shows that there is a high probability of intentional false statements.

**WHEREFORE,** your deponent requests that the relief requested in this Affidavit be granted together with such other and further relief the Court deems just and proper.

Dated: September 19, 2025

/s/ George V.C. Muscato
GEORGE V.C. MUSCATO, ESQ.
Attorney for Defendant JOHN ERMIN

/s/ Donald M. Thompson
DONALD M. THOMPSON, ESQ.
Attorney for Defendant JOHN ERMIN