UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

SIMON GOGOLACK, a/k/a Greek,
PETER GERACE, JR.,
JOHN THOMAS ERMIN, a/k/a Tommy O,
MICHAEL RONCONE, a/k/a Cone,
FRANK KNIGHT, and
HOWARD HINKLE, JR., a/k/a Hard How,

            Defendants.

**DECISION AND ORDER**

1:23-CR-00099 EAW

---

A 28-count second superseding indictment ("SSI") charges the defendants with various crimes, including a conspiracy to obstruct justice by causing and concealing evidence of the death of Crystal Quinn ("Quinn") to prevent her from testifying against defendant Peter Gerace, Jr. ("Gerace") in another criminal trial in this District. (Dkt. 24). The SSI alleges that as part of the conspiracy, defendant Simon Gogolack intentionally provided Quinn with a lethal dose of fentanyl on or about July 31, 2023. (*Id*. at ¶ 47). Pending before the undersigned is a motion filed by Gerace[1] to produce exculpatory and

---

[1] Defendant Frank Knight ("Knight") also moved for the same relief (Dkt. 517), but his motion is boilerplate and relies entirely on the motion filed by Gerace. Other defendants have also moved to join in the motions filed by other defendants, although not expressly seeking to join Gerace's pending motion. (*See*, *e.g.*, Dkt. 536 at 10-11). Without ruling that the other defendants' attempts to seek relief in this way was proper, *see*, *e.g.*, *United States v. Cobb*, 544 F. Supp. 3d 310, 344 (W.D.N.Y. 2021) (denying boilerplate motions to join without prejudice), the Court nonetheless in the exercise of its discretion affords the same relief to all parties (including the government). To the extent that Knight or any other defendant seeks probation and pretrial services records outside the scope of the information contained in the Quinn USPO file discussed here, the requests are denied without prejudice.

- 1 -

impeachment information from the files maintained by this District's United States Probation Office ("USPO") pertaining to Quinn.[2] (Dkt. 507). Familiarity with the underlying facts and procedural history, including the criminal case involving Quinn, is assumed for purposes of this Decision and Order.

Gerace contends that the file may contain information relevant to "questions about whether [Quinn] was having difficulty managing her drug and/or mental health issues, was feeling pressure from the government related to her compliance with the terms of her cooperation agreement (including being required to testify at an upcoming trial), was lying or attempting to manipulate people, . . . and other interpersonal issues unrelated to this case." (Dkt. 507-1 at 7). Gerace further submits that the USPO file may contain evidence contradicting the government's theory that Quinn was murdered. (*Id*. at 12-13).

The government acknowledges that the USPO file may contain relevant information, but urges the Court to consider Quinn's privacy rights under the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(8) (requiring victims to be "treated with fairness and with respect for [their] dignity and privacy"), as well as Second Circuit precedent governing the disclosure of probation files to third parties. (Dkt. 560). That precedent stands for the principle that a district court should not authorize disclosure of a presentence investigation report or pretrial services materials to a third party "in the absence of a

---

[2]   Gerace technically only seeks an order for the USPO to produce its file pertaining to Quinn for the Court's *in camera* review. (Dkt. 507 at 1). As an "arm of the Court," *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1170 (2d Cir. 1983), it is unnecessary for an order to be issued to the USPO requiring it to provide its file to the Court. But having accomplished the requested *in camera* review, the Court in its discretion has concluded that certain material should be produced to all parties.

compelling demonstration that disclosure of the report[s] is required to meet the ends of justice." *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983); *see United States v. Moore*, 949 F.2d 68, 72 (2d Cir. 1991) ("*Charmer* requires that when a co-defendant requests the presentence report of an accomplice witness, the district court should examine the report in camera to determine if there are any statements made by the witness that contain exculpatory or impeachment material. If there is any such material, the judge should not release it unless there is 'a compelling need for disclosure to meet the ends of justice.'"); *see also United States v. Pena*, 227 F.3d 23, 27 (2d Cir. 2000) (applying standard set forth in *Moore* to pretrial services reports or other pretrial services materials).

But the question here does not involve the production of a presentence investigation report (none exists for Quinn) or a pretrial services report (it has been produced). Rather, the question is, should the Court allow for the production of other types of probation and pretrial services records of the alleged victim that could be relevant to her state of mind and conduct before her death, when the records are in the Court's possession and neither party has access to the records nor is able to otherwise readily obtain the records? Because the documents at issue are not possessed by the government, the *Brady* considerations underlying Second Circuit precedent on probation and pretrial services records are not at play. *See Pena*, 227 F.3d at 27 n.3 (explaining that disclosure obligations flow from government's possession of documents and requirement that it disclose exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963)). And despite fairly extensive briefing and discussion of the issue (*see* Dkt. 507; Dkt. 560; Dkt. 570; Dkt. 607; Dkt. 621),

no party has cited, nor has the Court found, any case addressing this exact issue. That is likely because of the uniqueness of the situation.

After carefully considering the matter and balancing the competing interests, including the general confidentiality concerns relating to probation and pretrial services records, *see*, *e.g.*, 18 U.S.C. § 3153(c)(1), the Court concludes that potentially exculpatory material contained in the USPO file pertaining to Quinn, which the parties may not be able to obtain from another source, should be produced. The Court concludes that it is in the interest of justice to produce the material, particularly where the records pertain to an individual who is deceased, thus making their access through alternative sources exceedingly difficult. Of course *Brady* obligations do not extend to the Court, but it seems unjust to all parties to keep secret records that may be critical to a central issue in this case—the cause of Quinn's death. But the Court also heeds Quinn's status as an alleged victim and her privacy interests—interests that remain relevant even though she is deceased and signed releases authorizing the USPO to obtain records. Thus, the Court further concludes that the materials should be produced for review by only attorneys of record. After such review if any party seeks to further disclose the information, they must obtain the Court's permission.[3]

To be clear, the Court is not concluding that the material is definitely exculpatory. Each side may take opposing views on that point. Nor is the Court suggesting that the

---

[3]  Consistent with this Decision and Order, the Court emailed all counsel on October 20, 2025, asking that they propose a mutually acceptable attorneys'-eyes only protective order.

information would be admissible at trial. Instead, given the unique circumstances presented by this case, the Court is erring on the side of disclosure and permitting the production of relevant material from Quinn's USPO file.[4]

Accordingly, for all these reasons and consistent with the restrictions set forth in this Decision and Order, the pending motions (Dkt. 507; Dkt. 517) are granted in part.[5]

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   October 28, 2025
         Rochester, New York

---

[4] The Court explained in its email to counsel on October 20, 2025, that it would allow for the production of pharmacy records, treatment referrals, medical records, drug test results, chronological file and communications involving Quinn, along with a page of a worksheet related to the pretrial services report and a signed notice regarding marijuana.

[5] Gerace also sought disclosure of the pretrial services and presentence investigation reports pertaining to two other individuals—one of whom testified before the grand jury. Because it is unclear whether either witness will testify at trial, the Court denies this request without prejudice. If, in fact, either individual is identified as a trial witness, the request may be renewed and the Court will conduct an *in camera* review consistent with the requirements of *Moore* and *Pena*. Of course, regardless of this conclusion, the government has a continuing obligation to comply with its *Brady* obligations.