UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                           **DECISION AND ORDER**

v.                              Case No. 1:23-cr-99-EAW-JJM

SIMON GOGOLACK, *et al.*

                      Defendants.

---

       Familiarity with my September 15, 2025 Order to Show Cause and the government's September 29, 2025 Response (both filed under seal) is presumed. For the following reasons, absent further Order of the court, both documents, together with the grand jury instructions discussed therein and this Decision and Order, shall be made public on October 24, 2025 at 12:00 p.m.

## DISCUSSION

**A.      The Government Misconstrues the Basis for the Order to Show Cause.**

      The government argues that "there is no basis to disclose the instructions provided to the Grand Jury under [Fed. R. Crim. P.] Rule 6(e)(3)(E)(ii)", which authorizes disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury". Response at 3. However, "Rule 6 permits this court to direct the disclosure of grand jury minutes *sua sponte*". United States v. Urso, 2006 WL 681204, *4 (E.D.N.Y. 2006). *See* Rule 6(e)(3)(E)(i), authorizing release of grand jury materials "preliminary to or in connection with a judicial proceeding".

"[I]n determining whether disclosure of Rule 6(e) material is proper, the Court must balance the goal of [a] just result in a judicial proceeding against the countervailing policy of grand jury secrecy." Chief District Judge Elizabeth A. Wolford's September 12, 2025 Text Order [602].[1] In striking that balance, "wide discretion must be afforded to district court judges". United States v. John Doe, Inc. I, 481 U.S. 102, 116 (1987). Because this issue is nondispositive (Order to Show Cause at 1, n. 2), that discretion is mine to exercise, subject to reversal only if "clearly erroneous or contrary to law". July 31, 2025 Decision and Order [522] at 3.

**B.      The Need for a Just Result Outweighs the Policy of Grand Jury Secrecy**

Although "[i]t is clear . . . that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy", Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 223 (1979), "[i]t is equally clear that as the considerations justifying secrecy become less relevant . . . [there is] a lesser burden in showing justification" for the release of grand jury materials. Id. As noted in the Order to Show Cause, "[n]one of the traditional reasons for grand jury secrecy will be adversely affected by disclosing the materials". Id. at 6 and n. 4. The government's Response does not dispute that assertion.[2] Therefore, the remaining question is whether release of the materials is needed for "a just result" in this case. "Ensuring the regularity of the grand jury process is especially important because of the risks for abuse that inhere in proceedings over which trial and appellate courts rarely have insight". United States v. Calk, 87 F.4th 164, 186 (2d Cir. 2023).

---

[1]      Bracketed references are to CM/ECF docket entries, and unless otherwise indicated, page references are to CM/ECF pagination.

[2]      In fact, most of the materials consist merely of ███████████████████████████████ ███████████████. January 5, 2024 Grand Jury Transcript at 1-51.

A "just result" is one which ensures that the grand jury has fulfilled its constitutional obligation to determine the question of probable cause independently of the government. *See* United States v. Williams, 504 U.S. 36, 49 (1992) ("the Fifth Amendment's constitutional guarantee *presupposes* an investigative body acting independently of either prosecuting attorney *or judge*") (emphasis in original). "[P]rosecutors have an ethical obligation strictly to observe the status of the grand jury as an independent legal body." United States v. Hogan, 712 F.2d 757, 759 (2d Cir. 1983); Department of Justice Manual §9-11.010 (https://www.justice.gov/jm/jm-9-11000-grand-jury) ("[t]he prosecutor must recognize that the grand jury is an independent body").

The grand jury must "make the charge on its own judgment". Stirone v. United States, 361 U.S. 212, 219 (1960). It must "assess whether there is adequate basis for bringing a criminal charge", by "examin[ing] upon what foundation the charge is made". Williams, 504 U.S. at 51, 52. In order to do so, the grand jury must be "informed", since it "cannot effectively operate in a vacuum". Wood v. Georgia, 370 U.S. 375, 390 (1962).

Therefore, the government must "furnish it with controlling legal principles" to guide its deliberations. United States v. Ciambrone, 601 F.2d 616, 622 (2d Cir. 1979). This means that "the prosecutor must give the grand jury sufficient information concerning the relevant law to enable it intelligently to decide whether a crime has been committed". United States v. Twersky, 1994 WL 319367, *4 (S.D.N.Y. 1994); 4 LaFave, Criminal Procedure §15.7(g) (4th ed.); United States v. Fisher, 225 F. Supp. 3d 151, 169 (W.D.N.Y. 2016) ("[t]he

grand jury . . . necessarily relies on the U.S. Attorney to provide it with evidence and legal instructions").[3]

Notwithstanding this authority, the government claims that "it should come as no surprise that neither the government nor anyone else is required to provide the Grand Jury [with] legal instructions". Response at 26. That claim might come as a surprise not only to the Second Circuit, but to the Department of Justice itself. *See* Ciambrone, 601 F.2d at 622; Hogan, 712 F.2d at 759 ("it is the prosecutor who . . . advises the grand jury as to the law"); Department of Justice Manual §9-11.010 ("[t]he prosecutor's responsibility is to advise the grand jury on the law").



It might also come as a surprise to ███████████████████████████ ████████████████████████ (August 2, 2023 Grand Jury Transcript at 3), and ████████████████████████████████████████ ████████████████████████████ Id. at 16. He cautioned them ████████ ████████████████████████████████████ Id. at 27. Contrary to those assurances, ██████████████████████████████ ██████████████████████████████████ ████████

The government argues that that "[t]he impanelment AUSA's comments ██████ ████████████████████████████████████ ██████████████████████████████████ especially where

---

[3]    *Cf.* United States v. Smith, 105 F. Supp. 3d 255, 261 (W.D.N.Y. 2015) ("the Government need not instruct the Grand Jury on the pertinent law").

they did not know of them before the instant litigation". Response at 46. However, the

government offers no affidavit stating that ████████████████████████████████

████████████████████████████████ Moreover, ████████████████████████

████████ the government misled the grand jury, intentionally or otherwise. *See* <u>Hogan</u>, 712 F.2d

at 759 (the "prosecutor may not mislead grand jury or engage in fundamentally unfair tactics

before it"); <u>Smith</u>, 105 F. Supp. 3d at 261 ("error may arise if the Government endeavors to

instruct but does so incompletely or erroneously").

      The government argues that no instructions were necessary because "the [Second

Superseding] Indictment here adequately traces the statutory text and includes all the requisite

elements for the offenses", and that it "communicated the essential elements of the crimes

charged when it read the [Second Superseding] Indictment to the Grand Jury". Response at 31,

37. In fact, however, the Second Superseding Indictment [24] is replete with misstatements or

incomplete descriptions of the statutes upon which its charges are based. To cite just a few

examples:

      - Count 4 charges defendant Gogolack with acting "in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(C)". The Second Superseding Indictment

does not cite the text of §841(b)(1)(C) or otherwise describe its provisions. Had it done so, it

would have been obvious to the grand jury that §841(b)(1)(C) cannot have been violated,

because it is not a crime. "A 'violation' . . . is an act or conduct that is contrary to law",

<u>Richardson v. United States</u>, 526 U.S. 813, 818 (1999), and "[a] crime . . . is an act committed,

or omitted, in violation of a public law either forbidding or commanding it". <u>Schick v. United</u>

<u>States</u>, 195 U.S. 65, 69 (1904). Whereas §841(a)(1) forbids certain conduct (making it "unlawful

for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess

with intent to manufacture, distribute, or dispense, a controlled substance"), §841(b)(1)(C) does not itself forbid anything - instead, it merely provides the sentence for a violation of §841(a)(1).

 - Counts 19-21 charge defendant Hinkle, acting alone, with violating 18 U.S.C. §2 as well as other federal statutes. The Second Superseding Indictment does not cite the text of §2 or otherwise describe its provisions. Had it done so, it would have been obvious to the grand jury that §2 cannot itself have been violated, because it "does not define a crime; rather it makes punishable as a principal one who aids or abets the commission of a substantive crime". United States v. Campbell, 426 F.2d 547, 553 (2d Cir. 1970); Desius v. BWW Resources LLC, 2023 WL 3746336, at *4 (W.D.N.Y. 2023) ("the law is clear that an individual cannot aid and abet his own conduct").

 - Counts 9 and 10 charge defendants Gogolack with violating 18 U.S.C. §924(a)(8) as well as other federal statutes. The Second Superseding Indictment does not cite the text of §924(a)(8) or otherwise describe its provisions. Had it done so, it would have been obvious to the grand jury that §924(a)(8) cannot have been violated, because it is a sentencing provision rather than a crime.

 - Count 10 also charges defendant Gogolack with violating 18 U.S.C. §922(g)(3), alleging that "[b]etween on or about July 21, 2023, and on or about August 8, 2023, the exact dates being unknown to the Grand Jury, in the Western District of New York, the defendant . . . knowing that he *was* an unlawful user of controlled substances as defined in Title 21, United States Code, Section 802, did knowingly possess in and affecting commerce, a firearm . . . and ammunition" (emphasis added). Counts 24 and 25 allege the same violation against defendants Ermin and Roncone respectively, using identical language.

However, the word "was" is not found in §922(g)(3) - instead, it prohibits possession of a firearm or ammunition by "any person . . . who *is* an unlawful user of . . . any controlled substance (as defined in . . . 21 U.S.C. 802)" (emphasis added). "[T]he word 'is' means just that (in the most basic, present-tense sense of the word)." Guidiville Band of Pomo Indians v. NGV Gaming, Ltd., 531 F.3d 767, 770 (9th Cir. 2008). Therefore, in order to violate §922(g)(3), "defendant's unlawful use of a controlled substance must be ongoing and contemporaneous with the commission of the offense". United States v. Nevarez, 251 F.3d 28, 30 (2d Cir. 2001); United States v. Yepez, 456 F. App'x 52, 55 (2d Cir. 2012) ("there was sufficient evidence to establish that Yepez regularly used marijuana during the time period he possessed the two guns").

Counts 10, 24 and 25's use of the word "was" (meaning "what was; something past" - Oxford English Online Dictionary, www.oed.com) did not convey to the grand jury §922(g)(3)'s requirement that the use of controlled substances had to be contemporaneous with possession of the firearm and ammunition. For example, if the defendant "was" a user of controlled substances *before* he possessed the firearm or ammunition, rather than at the time of possession, then §922(g)(3) would not be violated. Moreover, not only do Counts 10, 24 and 25 misstate the requirements of §922(g)(3), but they also fail to identify the "controlled substances as defined in Title 21, United States Code, Section 802" which the defendants allegedly used - in fact, they do not even cite the text or describe the terms of §802.

- Counts 5, 23 and 26 allege false statements in violation of 18 U.S.C. §1001(a)(2). The "materiality" of those statements "is an element of the section 1001 offense". United States v. Ballistrea, 101 F.3d 827, 834 (2d Cir. 1996). To be considered "material", the statement "must have a natural tendency to influence, or be capable of influencing, the decision

of the decisionmaking body to which it was addressed". <u>United States v. Gaudin</u>, 515 U.S. 506,

509 (1995). However, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ [4]

      This grand jury took only ██ minutes, beginning at █████ on a Friday

afternoon, to deliberate and vote on all 28 Counts of the 58-page Second Superseding

Indictment.[5] "[T]he fact that the grand jury took so little time to return such a lengthy

indictment" (<u>United States v. Breslin</u>, 916 F. Supp. 438, 445 (E.D. Pa. 1996)) raises concern as

to whether it acted on its own judgment, independently of the prosecutor, as required by

<u>Williams</u> and <u>Stirone</u>, *supra*.

      That concern is heightened by the government's suggestion that "one can easily

imagine grand juries" relying on the fact that indictments "are prepared by the prosecutor, who is

presumably acquainted with the law". Response at 37, n. 6. For example, being "presumably

acquainted with the law", the government asked the grand jury to charge crimes which do not

exist (18 U.S.C. §§2, 924(a)(8) and 21 U.S.C. §841(b)(1)(C)), misstated the requirements of 18

U.S.C. §922(g)(3), and failed to define the element of "materiality" for purposes of 18 U.S.C.

§1001(a)(2).

      How, then, can defendants or this court have confidence the grand jury acted

independently of the government in returning *any* Counts of the Second Superseding Indictment?

---

[4]    *Compare* with <u>United States v. Regan</u>, 897 F. Supp. 748, 755 (S.D.N.Y. 1995), <u>aff'd</u>, 103 F.3d 1072 (2d Cir. 1997), involving an alleged violation of 18 U.S.C. §1623 ("[t]he relevant portion of the statute . . . was read to the Grand Jury, and the Grand Jury was instructed [on] the standard for materiality").

[5]    *See* Order to Show Cause at 3, n. 3, which the government's Response does not deny.

"Dismissal of an indictment is warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it", United States v. Leeper, 2006 WL 1455485, *4 (W.D.N.Y. 2006); for "[w]ithout a guarantee of independence, the indictment would not be the genuine issue of a grand jury within the meaning of the Constitution". Id., *2.

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988). "The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless." Id. at 263.

## CONCLUSION

It is not for me to decide whether the Second Superseding Indictment should be dismissed. However, for the reasons discussed herein and in my Order to Show Cause, I have "grave doubts" that this grand jury acted independently of the government in returning the Second Superseding Indictment.

Therefore, in the exercise of my discretion, I order that absent a stay by Judge Wolford, the grand jury materials referred to herein (pages 1, 3, 16-18 and 27 of the August 2, 2023 Grand Jury Transcript and pages 1-52 of the January 5, 2024 Grand Jury Transcript), along with my September 15, 2025 Order to Show Cause, the government's Response, and this

Decision and Order, shall be publicly docketed in unredacted form on October 24, 2025 at 12:00 p.m.[6]

**SO ORDERED.**

Dated: October 16, 2025

/s/  Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[6]      "[F]iling an un-redacted Decision and Order is the only way to ensure that the reasons for the Court's decision . . . are accessible to both the bar and the public." <u>Fisher</u>, 225 F. Supp. 3d at 157, n. 3.