IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

         v.                                  23-CR-99-EAW

FRANK KNIGHT,

               Defendant.
_____

## GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS FOR SUPPRESSION OF EVIDENCE AND SEVERANCE

**THE UNITED STATES OF AMERICA**, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and Joshua A. Violanti, Assistant United States Attorney, respectfully respond to defendant Frank Knight's pretrial motions for severance and suppression, Docket 652.

## PROCEDURAL HISTORY

On January 5, 2024, a federal grand jury issued a second superseding indictment charging nine defendants, including Mr. Knight, with various violations of federal criminal law. Dkt. 24. Specifically, Mr. Knight was charged with violations of Title 18, United States Code, Sections 371 (obstruction of justice conspiracy) and 1001(a)(2) (false statements). *Id.* at Counts 1, 5, and 23.

On October 24, 2025, Mr. Knight filed dispositive pretrial motions relating to suppression of physical evidence and severance. Dkt. 652. In his motion, Mr. Knight argues under Fed. R. Crim. P. 14(a), severance is appropriate because the prejudice of a joint trial would be "severe and unfairly prejudicial" to Mr. Knight. *Id.* at 16. As to prejudice, Mr.

Knight points to co-defendant's Gogolack's "drug use, drug dealing, weapons possession, and violent conduct"; the government's "speculative claims" about co-defendant-Ermin and the Outlaws Motorcycle Club; and co-defendant-Gerace's "operation of the Pharaoh's Gentlemen's Club and the purported nefarious goings on in relation to that business, including alleged drug distribution, and sex trafficking" as potential prejudice. *Id.* at 17. Mr. Knight also requested to reserve argument under *United States v. Bruton*, 391 U.S. 123 (1968) to show further prejudice at a joint trial, if applicable. Dkt. 652 at 18.

In addition, in his motion, Mr. Knight moved for a hearing under *Franks v. Delaware*, 438 U.S. 154, 155 (1978), because he believes that certain statements of Federal Bureau of Investigation (FBI) Special Agent (SA) Adam Penna in the search warrant applications for Mr. Knight's premises and cellphones were false and/or made in reckless disregard of the truth and without any one of them, there was not sufficient probable cause to issue the warrants. *Id.* at 18-19. Specifically, Mr. Knight identifies:



as false and made in regardless disregard for the truth. *Id.* Mr. Knight also highlights SA Penna's articulation of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 11. However, Mr. Knight offered no analysis of this purported falsehood in the analysis section of his motion. *See id.* at 18–19.

Mr. Knight's pretrial motions should be denied in their entirety for the reasons set forth below.

## ARGUMENT

### I.  THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED.

#### Relevant Background

On October 22, 2023, SA Penna obtained federal search and seizure warrants for, among other things, the person of Mr. Knight (Subject Person 2) and his residence at 287 Scott Avenue, Wellsville, NY 14895 (Subject Premises 1), which was authorized by the Honorable Michael J. Roemer, U.S. Magistrate.  *See* Case No. 23-mj-5213; Defense Exhibit C.  The target offenses listed on the warrant were violations of "Title 18, United States Code, Sections 1513(a)(1) and (f) (retaliation against a witness, victim, or informant and conspiracy to do the same); Title 18, United States Code, Sections 1512(b) and 1512(k) (witness tampering and conspiracy to do the same); Title 18, United States Code, Section 1001(a) (false statements); Title 18, United States Code, Section 2 (aiding and abetting); and, Title 18, United States Code, Section 4 (misprision of a felony)."  *Id.*

On October 24, 2023, the FBI and members of law enforcement executed federal search and seizure warrants for the person of Mr. Knight (Subject Person 2) and his residence at 287 Scott Avenue, Wellsville, NY 14895 (Subject Premises 1).  Several of Mr. Knight's devices were seized from his residence:  The devices included:

      15.    Black Apple iPhone, FCC ID: BCG-E3085A;
      16.    Pink Apple iPhone, FCC ID: BCG-E3087A;
      17.    Cell Phone in black OUKITEL Case;
      18.    Acer Laptop Computer, S/N NXHE4AA00192604, F964800;
      19.    Green Apple iPhone, FCC ID: BCG-E2644A; and
      20.    Black Amazon tablet, IC: 25219-6898.

In addition, Mr. Knight had an electronic device seized from his person:

21.     Black Apple iPhone in gold case, seized from the person of FRANK
        KNIGHT at the Wellsville Fire Department parking lot on October 24,
        2023.

Finally, during a search of Mr. Knight's residence, FBI Agents located, but did not seize, drug paraphernalia, including CBD and other cannabis products, as well as several firearms.

On or about October 26, 2023, SA Penna obtained federal search and seizure warrant for several electronic devices including Subject Devices 15-21 which were related to Mr. Knight, authorized by the Honorable Michael J. Roemer, U.S. Magistrate Judge. *See* Case No. 23-mj-5227; Defense Exhibit D.

**Legal Framework**

When considering whether to grant an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 236, 238 (1983). Probable cause "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found." *United States v. Gaskin*, 364 F.3d 438, 457 (2d. Cir. 2004) (citing *Gates*, 462 U.S. at 238). "Further, courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." *Id.*; *see also United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985). "A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991). The issuing magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (citation omitted). "[C]ourts should not invalidate

. . . warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner." *Id.*

The Fourth Amendment entitles a defendant to a hearing under *Franks*, 438 U.S. at 154, if a defendant makes "a substantial preliminary showing that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (internal quotation marks omitted); *see also Franks v. Delaware*, 438 U.S. 154 (1978). "A misrepresentation or omission is intentional when 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth.'" *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003) (quoting *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000)). "'The meaning of an intentional falsehood is self-evident,' but the definition of 'reckless disregard' in the *Franks* context is less clear." *United States v. Vilar*, 2007 WL 1075041, at *26 (S.D.N.Y. Apr. 4, 2007) (internal citation omitted)). "'To prove reckless disregard for the truth,'" a defendant must "'prove that the affiant in fact entertained serious doubts as to the truth of his allegations.'" *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (quoting *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001)). "Of course, the 'reckless disregard' aspect of a *Franks* inquiry can sometimes be inferred from the omission of critical information . . . ." *Id.* "[S]uch an inference is not to be automatically drawn simply because a reasonable person would have included the omitted information," *id.* (citation omitted), and the inference "is particularly inappropriate where the government comes forward with evidence indicating that the omission resulted from nothing more than

negligence, or that the omission was the result of a considered and reasonable judgment that the information was not necessary" to the warrant application, *id.*

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. "The burden to obtain [a *Franks*] hearing is a heavy one, and such hearings are exceedingly rare." *United States v. Melendez*, 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016); *see also United States v. Mandell*, 710 F.Supp.2d 368, 372 (S.D.N.Y.2010) ("Hearings under *Franks* are not freely granted."). To make the necessary showing for a *Franks* hearing, a defendant must specify the errors in the affidavit in a manner that is "more than conclusory" and must provide "a statement of supporting reasons." *Franks*, 438 U.S. at 171. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* A defendant must "accompany his allegations with an offer of proof." *United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) (unpublished) (quoting *United States v. Cummins*, 912 F.2d 98, 101, 103 (6th Cir. 1990)). "[T]he defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Rather, there must be evidence showing that the statements at issue are objectively false." *United States v. Moody*, 931 F.3d 366, 370–71 (4th Cir. 2019). "[T]he reviewing court must be presented with credible and probative evidence that the omission of information . . . was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'" *Rajaratnam*, 719 F.3d at 154 (quoting *Awadallah*, 349 F.3d at 68). "Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171.

### Search Warrants were Validly Issued and Supported by Probable Cause

The search warrants were supported by substantial, detailed, and current information contained in the application and affidavit of FBI SA Adam Penna, which included a

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████.[1]  For instance, the affidavit established that ███████████████

██████████████████████████████████████  *See* Defense Exhibit

C Affidavit at ¶ 5(a). The affidavit explained how ████████████████████

███████████████████████████████████████████

████████████████████████████████████████.  *Id.* ¶¶ at 5(a),

69, 164. Moreover, SA Penna explained that ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████  *Id.*

The affidavit provided a detailed narrative of ████████████████████

███████████████████████████████████████████

███████████████████  *Id.* at ¶ 5(b).  The affidavit further provided a detailed description

of ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████  *Id.* at ¶¶ 52–62.  The affidavit detailed how, ████████████

███████████████████████████████████████████

██████████████████  *Id.* at ¶ 62.  The affidavit detailed the evidence surrounding ████████████

███████████████████████████████████████████

---

[1] Mr. Knight's motion focuses on "the factual assertions in the search warrant affidavits of October 22, 2023, which was used to search KNIGHT'S home", Dkt. 652 at 6, so does the government's response.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████  *Id.* at ¶¶ 75–78.

Furthermore, the affidavit established that ████████████████

████████████████████████████████████████████.  *Id.* at ¶ 80.

The affidavit described how the investigation ██████████████████

████████████████████████████████.  *Id.* at ¶ 88.  The affidavit

described how, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  *Id.* at ¶¶ 103–13.

Moreover, the affidavit provided ██████████████████████

████████████████████████████████████████████████████████

████████████████████.  *Id.* at ¶¶ 124–34.  In particular, the affidavit highlighted ███

████████████████████████████████████████████████████████

████████████████████████████.  *Id.* at ¶¶ 124–25.  The affidavit also

described ████████████████████████████████████████████████

████████████████████████.  *Id.* at ¶ 142, 144.  SA Penna explained ██

██████████████████████████████████████████████████

Furthermore, the affidavit described ████████████████████████

████████████████████████████████████.  *Id.* at ¶ 159, 160.

The affidavit explained that ████████████████████████████████



. *Id.* at ¶ 160.   Thus, the affiant stated that

. *Id.* Thus, it was reasonable

*Id.* The affiant also provided

*Id.* at ¶
161.

The affidavit established probable cause to believe that the specific items detailed in Attachment B—which included Mr. Knight's cell phone(s) and other electronic device(s) likely to contain evidence of the "Target Offenses"—were likely to be recovered from 287 Scott Avenue, Wellsville, NY 14895. *Id.* at ¶ 159, 160, 161, 162–63. Moreover, the affidavit explained specifically how and why Mr. Knight's cell phones and electronic devices were likely to contain evidence of the Target Offenses, including containing evidence like contact lists, call logs, text messages, voicemails, and other specified data and information. *Id.* at ¶¶ 164–68. The affidavit further described how evidence of association with the Outlaws Motorcycle Club or the Rare Breed Motorcycle club would be relevant to the "Target Offenses", and how such evidence would likely be located at 287 Scott Avenue, Wellsville, NY 14895. *Id.* at ¶ 169.

### Mr. Knight has Failed to Meet His Burden Under *Franks* to Obtain a Hearing.

Mr. Knight has failed to make a substantial preliminary showing that SA Penna made

a knowingly and intentionally false statement or acted with reckless disregard for the truth in the warrant applications. Mr. Knight has not offered "credible and probative evidence" to show falsity or that a misstatement or omission in the warrant applications were "'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'" *Rajaratnam*, 719 F.3d at 154 (citation omitted). Nor has Mr. Knight presented evidence "either direct or circumstantial, of the affiant's state of mind about the allegedly omitted information." *United States v. Romero*, 2022 WL 17986198, at *4 (N.D. Ind. Dec. 29, 2022) (finding no *Franks* hearing was warranted). There is no evidence to suggest that SA Penna intended or designed his statements to mislead the magistrate judge. Nor is there any evidence to suggest that SA Penna had serious doubts about his statements. Rather, Mr. Knight offers subjective assessments of the evidence against him, his own unsworn, self-serving statements, and speculative arguments. Mr. Knight's bases do not rise to the level of necessitating a *Franks* hearing.

**The statement that** ██████████████████████████████

Mr. Knight argues that SA Penna's search warrant application falsely asserts ████ ████████████████████████████████████████ and that ████████████ ████████████████ albeit falsely is an essential allegation to support probable cause for the search warrant." Dkt. 562 at 6.

SA Penna's representations about ██████████████████████████ were neither false nor deliberately misleading. The statements were based on information that SA Penna had learned during the investigation including ██████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████    *See* Defense Exhibit C, Affidavit at ¶ 3.

SA Penna described Mr. Knight in the following ways:

- ███████████████████████████████████████████
  ███████████████████████████    *See* Defense Exhibit C at ¶ 5(b).

- ███████████████████████████████████████████
  ███████████████████████████    *See* Defense Exhibit C, Affidavit at ¶
  5(i).

- ███████████████████████████████████████████
  ███████████████████████████████████████████
  ██████████████████    *See* id. at ¶ 67.

- ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ███████████████████████████████████████████
  ██████████████████    *See id.* at ¶ 82.

- ███████████████████████████████████████████    *See id.* at ¶ 86.

- ███████████████████████████████████████████    *See id.* at ¶ 169.

Despite Mr. Knight's assertion otherwise, *see* Dkt. 562 at 8, he was furnished with an

FBI 302 report which indicated that in August 2023, SA Penna met with members of the

Wellsville Police Department where the circumstances surrounding the death of Ms. Quinn's

death were discussed. *See* GOV-00026991. At this meeting, local law enforcement provided

the following on Mr. Knight:

> Frank KNIGHT, phone: ▉▉▉▉▉ was a known member of the Rare Breed
> Motorcycle Club (RBMC) and a fireman in the town of Wellsville.  KNIGHT's
> wife was ▉▉▉▉ who later reported that GOGOLACK had a suspected
> overdose himself when she found him in the yard of 296 Scott Ave. later on
> Tuesday, 8/1/23.  WPD considered KNIGHT to be friendly with law enforcement
> and indicated KNIGHT would voluntarily come to WPD to speak with law
> enforcement if needed.

*See id.*

Mr. Knight further speculates about how the statement about



implies the FBI intentionally failed to share

information that ▉▉▉▉▉▉▉▉▉ This is pure speculation and falls well

short of the credible proof the law requires to justify a *Franks* hearing.

Mr. Knight has not put forth credible proof to show this statement's falsity **<u>and</u>** the

affiant's intentional or reckless disregard of the truth.  Instead, the defendant primarily relies

on his own self-serving unsworn statements denying membership within the RBMC.  Dkt.

652 at 6–7.  But unsworn self-serving statements are not sufficient to make a substantial

preliminary showing required for a *Franks* hearing.  *See United States v. Johnson*, 580 F.3d 666,

671 (7th Cir. 2009) ("Conclusory, self-serving statements are not enough to obtain a *Franks*

hearing." (citing *Franks*, 438 U.S. at 171)); *United States v. Perry*, 714 F.3d 570, 575 (8th Cir.

2013) ("Merely averring that a warrant affidavit contained false information is not

sufficient."); *Cf. United States v. Salas-Nieves*, 2023 WL 4540435, at *2 (D.P.R. July 14, 2023)

("Defendant's conclusory denial of having possessed a firearm and marijuana outside his

house on the day of the surveillance is insufficiently substantial to merit a *Franks* hearing.").

Notwithstanding, the very evidence that Mr. Knight utilizes, his own interview with

law enforcement, shows a clear association between ▉▉▉▉▉▉▉.  For

example, he knew members of the RBMC, had knowledge of its workings, was proximate to

the club and its members, described himself as a "hang around" etc. *See* Defense Exhibit

B, Transcript at 50:

> **FRANK KNIGHT (00:45:25):**
> And Damon and I were friends long before he joined the club, long before I hung out at the club. He joined the club. So, he was their treasurer. He had, I can't remember, like $5,000 of club money in a safe at his house. So at poker night, somebody breaks into Damon's house and steals the five grand in club money. It must've been more than that because they took his bike for collateral until he paid back half of it. So, he pays back half of it. They give him his bike back and part ways.
>
> **ADAM PENNA (00:46:02):**
> It was kind of a generous way to handle it. It doesn't sound too bad to me.
>
> **FRANK KNIGHT (00:46:07):**
> Again, this club is almost non-existent.
>
> **ADAM PENNA (00:46:12):**
> Is Howie a Rare Breed guy?
>
> **FRANK KNIGHT (00:46:13):**
> Mm-mm.
>
> **ADAM PENNA (00:46:13):**
> He's not?
>
> **FRANK KNIGHT (00:46:14):**
> No, but same as me. He's got the same status.
>
> **ADAM PENNA (00:46:18):**
> Oh, okay.
>
> **FRANK KNIGHT (00:46:18):**
> I guess in the biker world, technically, I'd be considered a hang around.

**<u>The statements relating to</u>** ███████████████████████████
███████████████

To the extent that Mr. Knight asserts that SA Penna misrepresented that █████████
███████████████████████████████████████████████████████████████

███████████████████ a review of the affidavit makes clear that SA Penna did not misrepresent

or mislead in any way.  To the contrary, in his affidavit, SA Penna advised that:



Defense Exhibit C, Affidavit at ¶ 68 (emphasis added).

SA Penna informed the Court that █████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████  *Id.*  SA Penna laid out the facts of the

investigation and his belief without misleading or misrepresenting in any way.

**The statement that** ██████████████████████████████████████████

Mr. Knight argues that SA Penna's statement that ████████████████████

███████████████████████████████████ suggested ████████████████████

Defense Exhibit C, Affidavit at ¶129.  Relatedly, Mr. Knight believes that the omission of

██████████████████████████████████████████████████████████

██████████████████████████████████████  *Id.* (citing FBI 302 Feb. 21,

2023).  Mr. Knight believes this omitted material undercuts the probable cause determination.

Mr. Knight has not put forth credible proof to show this statement's falsity **and** the

affiant's intentional or reckless disregard of the truth.  "An officer's affidavit in support of a

warrant must 'establish[ ] a sufficient nexus between the criminal activities alleged and [the

place to be searched].'"  *United States v. Silva*, 146 F.4th 183, 189 (2d Cir. 2025) (quoting *United

States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004)).  "Importantly, '[a] showing of nexus does

not require direct evidence and may be based on [a] reasonable inference from the facts

presented based on common sense and experience.'"  *Id.* (quoting *Singh*, 390 F.3d at 182); *see

also Fama*, 758 F.2d at 838 ("[A]n agent's expert opinion is an important factor to be

considered by the judge reviewing a warrant application."); *United States v. Ayala*, 740 F. Supp.

3d 314, 335 (S.D.N.Y. 2024) ("Courts in this Circuit routinely recognize the role of a law

enforcement officer's training expertise in evaluating probable cause." (collecting cases)).

SA Penna was clear that the ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ Defense Exhibit C, Affidavit

at ¶ 4.  SA Penna continued that ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████ *Id.* at ¶ 143; at ¶ 145 ██████████████

████████████████████████████████████████████████████████

████████████████████████████

"*Franks* does not require that all statements in an affidavit be true; it simply requires

that the statements be 'believed or appropriately accepted by the affiant as true.'" *United States*

*v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) (quoting *Franks*, 438 U.S. at 165).  The totality

of the circumstances ████████████████████████████████████████████████

████████████████████████████████████████ and how the search of Mr.

Knight's residence and the seizure of his cellphone could lead to evidence of the target

offenses.  Nothing Mr. Knight has provided undercuts SA Penna's informed conclusion.  *See*

*id.* (affirming trial court's denial of *Franks* hearing where an affidavit contained sufficient basis

to support the affiant's belief that individual used a certain location even though agents turned

out to be wrong about who lived at the location). Mr. Knight has not put forth credible proof

to show this statement's falsity **and** the affiant's intentional or reckless disregard of the truth.

Mr. Knight clings to Ms. Quinn's ████████████████████████████.  He points to

information from ██████████ statements in February 2023.  Her statements to the FBI during

███████████████████, do not establish that ███████████████████, let alone

that ███████████████████████. The actual statement ██████ made to agents on

February 7, 2023, is reported in the 302 is as follows:



*See* GOV-00000092.

SA Penna notably included ███████████████████████████

███████████, *see* Defense Exhibit C, at Affidavit ¶¶ 103-113. For example:

Moreover, SA Penna did the right thing: he used information ████████████

████████████████████████. Defense Exhibit C, Affidavit at ¶

129. Individuals with ████████████████ can be intentionally murdered. Just

as ████████████████ do not absolve the murderer of his crimes, do not undercut

probable cause under a totality of the circumstances laid out in the affidavit. SA Penna does

not say that ███████████████████████████. Nor was he required to say at some

point in her life, █████████████████████████. "[T]he fact that an innocent

explanation may be consistent with the facts alleged [ ] does not negate probable cause."

*Fama*, 758 F.2d at 838; *see also United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A

defendant may not seek to establish his innocence ... through proof of the absence of criminal

acts on [other] occasions.").

"[E]very affidavit will omit facts which, in retrospect, seem significant." *Vilar*, 2007

WL 1075041, at *27 (citations and quotation marks omitted)'; *see also United States v. Mandell*,

710 F. Supp. 2d 368, 383 (S.D.N.Y. 2010). Affidavits are "not required to include all

potentially exculpatory information." *See United States v. Maisonet*, 2013 WL 12204909, at *1

(S.D.N.Y. Mar. 22, 2013). "'A requirement that all potentially exculpatory evidence be

included in an affidavit would severely disrupt the warrant process' and 'place an

extraordinary burden on law enforcement officers,' and is not the law." *United States v.

Cromitie*, 2010 WL 3025670, at *6 (S.D.N.Y. July 28, 2010) (quoting *Colkley*, 899 F.2d at 303).

The facts on the ground at the time of the warrant application, as they do today, support that

a reasonable belief that Ms. Quinn was intentionally murdered as a result of being a federal

witness.

"Although omissions are governed by the same rules as misstatements, the literal

*Franks* approach does not seem adequate [for omissions] because, by their nature, omissions

cannot be deleted." *Rajaratnam*, 719 F.3d at 146 (cleaned up). "So for omissions, 'a better

approach [is] to insert the omitted truths" and then ask whether there is a 'residue of

independent and lawful information sufficient to support a finding of probable cause.'" *United

States v. Combs*, 2025 WL 1361728, at *1–2 (S.D.N.Y. May 9, 2025) *(*quoting *Rajaratnam*, 719

F.3d at 146).  Even if the Court added the alleged missing information, Mr. Knight has failed to demonstrate that the "residue of independent and lawful information" is insufficient to support a finding of probable cause.  Merely saying does it make it so.

**The statement that** ███████████████████████████████████

Mr. Knight takes issue with SA Penna's recitation of interviews with ███████████ █████████████████████.  Dkt. 562 at 12.  Specifically, SA Penna detailed that ███ ████████████████████████████████████████ Defense Exhibit C, Affidavit at ¶ 129.

Mr. Knight has not put forth credible proof to show this statement's falsity **and** the affiant's intentional or reckless disregard of the truth. SA Penna accurately described a ████████████████████████████████████████████████████ ████████████████ Nothing offered by Mr. Knight contradicts that this was the viewpoint of █████████████ A "*Franks* hearing is not required when it is sought merely on the basis of an allegation that the information in the search warrant affidavit subsequently proved to be inaccurate, especially when that information derives from a source independent of the affiant."  *United States v. Sykes*, 2006 WL 2265309, at *5 (W.D.N.Y. July 31, 2006), *report and recommendation adopted*, 2006 WL 2711460 (W.D.N.Y. Sept. 20, 2006).  Thus, to the extent, Mr. Knight has an issue with █████████ description of █████████████ ████████████████████ – such an issue can be addressed on cross-examination of ██████████████ at trial - but a *Franks* hearing is not the appropriate vehicle.

Mr. Knight also asserts that SA Penna's statement implies that ███████████████ ██████████████████████████████ Dkt. 562 at 19.  It does not. SA Penna's affidavit does not say or imply that.  In fact, █████████████████ is mentioned

in the affidavit.  *See* Defense Exhibit C, Affidavit at ¶ 5(f) ("█████████████████

█████████████████████████████████████████████████████████████████████████████

██████████████████████  SA Penna's affidavit is clear: ███████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████  Defense Exhibit C, Affidavit

at ¶ 4.

For the same reasons that Ms. Quinn's ████████████████████████  was not

required to be outlined in the affidavit, ██████████████████  was not required either.  *See*

*supra* (citing Vilar, 2007 WL 1075041, at *27; *Mandell*, 710 F. Supp. 2d at 383; *Maisonet*, 2013

WL 12204909, at *1.  *Cromitie*, 2010 WL 3025670, at *6 (quoting *Colkley*, 899 F.2d at 303).

Mr. Knight has not shown that SA Penna had an extensive understanding of Ms. Quinn's

████████████████████████  around the time of her death that contradicted ████████████

███████████████████  Nor has Mr. Knight shown that SA Penna deliberately or recklessly

mislead the magistrate judge about it.

Even if the Court added the alleged missing information, Mr. Knight has failed to

demonstrate that the "residue of independent and lawful information" is insufficient to

support a finding of probable cause.  Mr. Knight offers conclusory analysis on how this

statement alone undercut probable cause.  Merely saying does not it make it so.

**The statement that** ████████████████████████████████████████████████

████████████████

Mr. Knight also takes issue with SA Penna's stated opinions related to ████████████

████  Dkt. 562 at 12–13.  Mr. Knight argues that SA Penna is unqualified to offer such

opinions.  *Id.*  Mr. Knight has not put forth credible proof to show this statement's falsity **and** the affiant's intentional or reckless disregard of the truth.  SA Penna represented to the magistrate judge ████████████████████████████████████████

████████████████████████████████  SA Penna articulated the specific facts that supported his belief.  *Id.*  The defendant's disagreement with SA Penna's statement ████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████  does not amount to evidence that SA Penna made false statements or misrepresentations in the affidavit.  *See United States v. Hodge*, 2024 WL 4919681, at *21 (N.D. Ohio Nov. 29, 2024) ("The affiant's beliefs cannot serve as the subject of a *Franks* hearing if they are not otherwise based on false statements."); *cf. United States v. Ellison*, 739 F. Supp. 3d 564, 581 (E.D. Mich. 2024) ("But the Court sees nothing improper about the statement that Burley believed, based on his training, experience, and observations, that he had witnessed activity consistent with a drug sale—even if he could not confirm that belief.").

## II.    **THE DEFENDANT'S MOTION FOR SEVERANCE SHOULD BE DENIED.**

Mr. Knight is properly joined with his co-defendants.  In asking for severance from his co-defendants, Mr. Knight has not met his burden to show why severance is required in this case.  Rather, he has provided conclusory minimal showings of prejudice.  The defendant's request should be denied.

### Relevant Background

The Second Superseding Indictment ("the Indictment") charges Mr. Knight in 3 counts, all of which overlap:

| Frank Knight Charge Table | | | |
|---|---|---|---|
| Count No. | Offense Charged | Defendant(s) | Corresponding Over Act |
| 1 | Conspiracy to Defraud the United States and Obstruct Justice in Violation of 18 U.S.C. § 371 and §1503. *See* Sec. Super. Indict., at 2–31, ECF No. 24, (dated Jan. 5, 2024). | Hinkle | |
| | | Gogolack | |
| | | Gerace | |
| | | Ermin | |
| | | Roncone | |
| | | Knight | |
| 5 | False statements in violation of 18 U.S.C. § 1001(a)(2). | Knight | Count 1 – Overt Act ¶ 60 |
| 23 | False statements in violation of 18 U.S.C. § 1001(a)(2). | Knight | Count 1 – Overt Act ¶ 95 |

*See* Dkt. 24

The Indictment also charges several other offenses against Mr. Knight's co-defendants.

**Legal Framework**

Under Rule 14(a), a court may order separate trials on certain counts or for certain defendants, or other relief, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." Fed. R. Crim. P. 14(a). Joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Joint trials also "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused to come to trial." *Bruton v. United States*, 391 U.S. 123, 134 (1968). "[S]everance under Rule 14(a) is available in only limited circumstances." *United States v. Eady*, 2023 WL 3335279, at *3 (W.D.N.Y. May 10, 2023). "The Supreme Court has instructed that a district court should grant a Rule 14 severance motion only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003)); *see also Zafiro v. United States*, 506 U.S. 534, 540 (1993) (citing *Bruton v. United States*, 391 U.S. 123, at 131, n. 6 (1968)).

"A defendant seeking severance bears the 'heavy burden of showing that joinder will result in 'substantial prejudice.''" *United States v. Fishbein*, 2023 WL 2734428, at *3 (S.D.N.Y. Mar. 31, 2023) (quoting *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994). "That is especially true when, as here, the Government alleges that Defendants 'participated in a common plan or scheme.'" *United States, v. Alexander et al.*, 2025 WL 3154981, at *20 (S.D.N.Y. Nov. 11, 2025). "Even in the rare instance where a defendant shows a 'high' risk of prejudice, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id.* (citing *Zafiro*, 506 U.S. at 539). "Prejudice of joinder 'is largely absent in situations where evidence of separate crimes would be admissible anyway.'" *Id.* (citing *United States v. Halper*, 590 F.2d 422, 431 (2d Cir. 1978)).

The "defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). Under Rule 14(a), severance is only proper, then, if there is a "'serious risk that a joint trial would compromise a specific trial right of [the defendant's], or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. McCoy*, 235 F. Supp. 3d 427, 436 (W.D.N.Y. 2017) (quoting *United States v. Astra Motor Cars*, 352 F.Supp.2d 367, 369–70 (E.D.N.Y. 2005)); *see also Zafiro*, 506 U.S. at 539; *Eady*, 2023 WL 3335279, at *3 (W.D.N.Y. May 10, 2023) (noting "a defendant has the 'extremely difficult burden' of showing he or she would be so prejudiced by joinder that he or she would be denied a fair trial.") (citation omitted). "The decision to sever a trial pursuant to Fed. R. Crim. P. 14 is 'confided to the sound discretion of the trial court.'" *McCoy*, 235 F. Supp. 3d at 436 (citing *Feyrer*, 333 F.3d at 114).

**<u>Severance under Rule 14 is inappropriate because Mr. Knight has not met his burden.</u>**

A joint trial will not unduly prejudice Mr. Knight.  Count 1, charges an obstruction conspiracy between members and associates of multiple outlaw motorcycle clubs, including the Outlaws MC and one of its support clubs, the Rare Breed Motorcycle Club ("RBMC").  More specifically, Count 1 alleges that Knight is "an associate of" defendant Michael Roncone, the RBMC, defendant Howard Hinkle, and defendant Simon Gogolack.  Dkt. 24 at ¶ 28.  At trial, the government anticipates that the jury will hear evidence that, as part of his association with the RBMC, Mr. Knight made statements to the FBI continuing to advance the false suicide narrative and shield Mr. Hinkle; Mr. Knight took several actions to obstruct the investigation; that Mr. Knight, and his co-defendants Roncone and Ermin were involved in communications as the FBI investigation picked up.  The government also anticipates that the jury will hear about Mr. Gogolack's call to Mr. Knight and Mr. Hinkle before reporting Ms. Quinn's death in a 911 call.  Likewise, with respect to Counts 5 and 23, the government would offer the same material into evidence to prove those substantive charges as it would to prove the corresponding overt acts alleged in Count 1.

"With conspiracy charges, '[t]he established rule is that a non-frivolous conspiracy charge is sufficient to support joinder.'" *United States v. Lemay*, 2022 WL 17363595, at *2 (S.D.N.Y. Dec. 1, 2022) (quoting *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988)).  "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *Id.* (quoting *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998).  "[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Carson*, 702 F.2d

351, 366–67 (2d Cir. 1983). "[E]ven the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *Id.* (internal quotation marks omitted). Notably, "[t]he fact that one of several codefendants is tried for a crime not committed by another codefendant does not, without more, create the sort of miscarriage of justice that would require [severance]." *United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996).

Thus, while Mr. Knight takes issues with some of the potential evidence against his co-defendants, most of that same evidence should be admissible against him under the obstruction conspiracy in Count 1. *See United States v. Saad*, 380 F. Supp. 2d 286, 289 (S.D.N.Y. 2005) ("When evidence of the charge to be severed is admissible by other means, there can be no prejudice from joining the counts and severance under Rule 14 is unnecessary." (citing *United States v. Lane*, 474 U.S. 438, 450 (1986))). There is significant overlapping evidence in this case. Severance would produce duplicative trials, resulting in unnecessary inefficiency as well as potential fairness concerns resulting from inconsistent verdicts. *See Richardson*, 481 U.S. at 210 ("Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit.").

Mr. Knight has failed to demonstrate that the evidence introduced against co-defendants, Gogolack, Ermin, and Gerace, will in some way will affect the jury's ability fairly and rationally to evaluate the evidence of his own guilt. Even assuming that a joint trial creates a risk of prejudice, severance is not warranted because, as courts routinely hold, a limiting instruction can suffice as an alternative. *See, e.g.*, *Herring v. Meachum*, 11 F.3d 374, 378 (2d Cir. 1993) (rejecting claim of prejudice where joinder of unrelated murders where jury

was instructed "that evidence of one murder was not to be used to determine petitioner's guilt with respect to the other"); *United States v. Ramos*, 2013 WL 1932110, at *4 (S.D.N.Y. May 8, 2013) (denying severance even if the defendant might be subject to some spillover prejudice at a joint trial, because "any such prejudice could be remedied through an appropriate limiting instruction to the jury") (citation omitted).

Mr. Knight also asks to preserve his right to move for severance due to the potential admission of co-defendant statements under Bruton, 391 U.S. 123. Dkt. 652 at 18. Some co-defendants provided statements to law enforcement. Even if there are co-defendant statements that mention the defendant within the meaning of *Bruton*, such statements can be redacted or altered in accordance with *Richardson v. Marsh*, 481 U.S. 200 (1987). As such, there is no substantive actual prejudice by the joinder of Mr. Knight at trial with his codefendants, his motion should be denied.

## <u>CONCLUSION</u>

Based upon the foregoing, the government respectfully requests that Mr. Knight's motion for severance and suppression should be denied in their entirety.

DATED: Buffalo, New York, November 26, 2025.

MICHAEL DIGIACOMO
United States Attorney

BY:    s/JOSHUA A. VIOLANTI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5864
Joshua.Violanti@usdoj.gov