UNITED STATES OF AMERICA

WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      v.           AFFIDAVIT OF ERIC M GRABSKI

                  RE: GOOGLE GEOFENCE & LOCATION HISTORY

SIMON GOGOLACK

      I am currently employed as a Senior Digital Forensic Examiner at Envista Forensics in Columbia, South Carolina. In this capacity, I provide consulting and analytical services to defense attorneys, prosecutors, and plaintiff attorneys in the areas of historical cell site location analysis, mobile device forensics, and call detail record analysis.

      I graduated from the University of South Carolina in 2013 with a bachelor's degree in criminal justice. I then joined the police department at the University of South Carolina, where I worked as a police officer for approximately two and a half years.

      Next, I became a Special Agent with the South Carolina Law Enforcement Division ("SLED"). I was employed with SLED for over three years. At SLED, I was assigned to the State Surveillance and Intelligence Unit ("SSI"). I specialized in cellular location analysis primarily in fugitive apprehension investigations and emergency/exigent circumstance cases such as missing children investigations, and immediate threat to loss of life investigations. My primary job function on SLED SSI was to perform live and historical cell site location analysis using Pen Register Trap and Trace devices and wireless carrier call detail records including "Timing Advance" call detail records. I

assisted local and federal authorities in both real time fugitive apprehension cases and in major crimes investigations involving the analysis of wireless carrier call detail records, GPS records, and mobile device forensics. I also wrote and applied for legal process for historical wireless carrier records. While at SLED I qualified and testified as an expert witness in cell site location analysis.

At SLED, I received over 160 hours of training in cellular location analysis. My training included cellular location analysis, wireless communications theory, and pen register trap and trace device collection and analysis. My training includes the Basic Historical Cell Site Analysis class taught by the FBI Cellular Analysis Survey Team (CAST).

In 2019, I left work at SLED and began working at Envista Forensics as a Digital Forensic Analyst. I specialize in call detail records analysis, cell site location analysis, historical location records analysis, social media records analysis, and mobile device forensics such as performing forensic extractions and analyzing forensic images of mobile devices. I provide these services in a consultant capacity for attorneys across the nation in both civil and criminal cases for plaintiff attorneys, prosecutors, defense attorneys, and insurance professionals.

I have over nine years of experience in the analysis of cell site location information, call detail records, historical location records, mobile device forensics, and other types of records from wireless communication systems including social media.

I am a Certified Telecommunications Network Specialist (CTNS), Certified Wireless Analyst (CWA), Cellebrite Certified Operator (CCO), and Cellebrite Certified Physical Analyzer (CCPA).

I have qualified and testified as an expert in the areas of cell site location analysis, call detail records analysis, historical location records analysis, and mobile device forensics 26 times including both state and federal courts.

In this case I was provided with discovery that included a Google Geofence search warrant, Google records for "watersoapandhope3@gmail.com", a report created by Special Agent John Orlando of the FBI Cellular Analysis Survey Team, and a document labeled "CAST Summary".

After analyzing the legal process, forensic data, reports, and opinions of the government, I have found that the techniques and opinions provided by the government, in this case, are overly broad, incorrect, and do not provide the court with a full understanding of the limitations of the location data being used as evidence. Further, Google geofence warrants are vastly broad in scope and extend far beyond the search boundaries authorized by the court.

### I.      Geofence Warrant Process Overview

Google Geofence Warrants provide locations associated with devices belonging to Google account users with Location History enabled. Location History is a service of Google, which has been described as a personal and private journal or log of the user's locations. This is not to be confused with location services on mobile devices, which refers to the device-based settings such as those you see when choosing whether to use airplane mode or not. Location History is an account level setting allowing data to be collected across any devices with the account logged in. Google states this service allows the user to better tailor searches and enhance their user experience. It should be noted that Google Location History is different from Google Location Services. Google Location

Services support the use of Google maps for navigation and are not recorded or stored by Google. Google Location History refers to location records that are stored by Google when a user "opts in" to this feature by allowing this data to be collected and stored by Google.

Google Geofence warrants are often used by law enforcement during investigations when the location and time of a crime are known but there are no known suspects of the crime. Google Geofence warrants demand Google to search their location databases so law enforcement can identify and locate previously unknown suspects. Google states this search requires them to search their entire database containing Location History to locate any users within a geographic area prescribed by law enforcement, typically this is the geographic area surrounding the location of the crime or locations of multiple crimes. The size and limits of the geofence are set by law enforcement, not by Google. Further, law enforcement can request multiple Geofence locations in a single warrant.

Google has contended that this search is performed only when demanded by law enforcement and is not a normal business function. All Google user accounts with Location History are queried for Google to respond to a geofence warrant. This large-scale search occurs because all Google Location History records are stored in a database and identified with individual device IDs that correspond to the Google account holder. These details are described by Google employee Marlo McGriff in a declaration filed in other geofence cases, March 11, 2020 (Marlo McGriff declaration in U.S. vs. Okello T. Chatrie, Attachment I). Google has quantified the number of accounts searched as, *"In October 2018, there were approximately 592 million daily active users of Location*

*History worldwide. Roughly one-third of all active Google users had Location History enabled on their accounts",* Declaration of Emily Mosley, Google - *US vs. Laquan Dawes* (Emily Mosley declaration, March 4, 2022, Attachment II). This means that as of 2018, for every geofence location contained in a single warrant, approximately 592 million accounts are searched to determine if any contain responsive data to the warrant.

## II.     Case Specific Analysis

The geofence warrant in this case is broken down into 2 stages. The first stage requires Google to search approximately 592 million Google accounts with Location History to determine what devices were within the boundaries during time frame of the "initial search parameters" prescribed by the affiant. In this case a search warrant was issued for a Google Geofence encompassing the relevant locations of 296 Scott Avenue Wellsville, NY and 287 Scott Avenue Wellsville, NY. The one and a half hour time period requested was for 5:00 AM through 6:30 AM on July 28, 2023.

After searching 592 million accounts, Google device IDs and their estimated location within the geofence were returned as spreadsheets in a folder labeled "44160769.Location_001". This spreadsheet lists the locations and corresponding Device IDs of all Google accounts found to have possibly been within each geofence during the time frame requested by law enforcement. Each row indicates the device ID, date/time, latitude and longitude, the source used for the estimate, and the display radius or confidence of the estimated location of the device (Figure 1 is an example). The maps display radius is indicated in meters and the radius is drawn around the center point of the estimated latitude and longitude of each device. Google estimates a device should be located within the estimated radius and states their goal is for that to be true 68% of the

time (Declaration, Marlo McGriff, February 7, 2020) (Figure 2 is an example). This means that at least 32% of the time the device could be located outside of the estimated radius.

| Reverse Location Obfuscated ID | Date | Time (America/New_York) | Latitude | Longitude | Source | Maps display radius(m) |
|---|---|---|---|---|---|---|
| 010101BD56354DA80950E7B634721D1B394066BA587D8B910C5C20EB9F1C28691E03BBB1E73EF6 | 7/28/2023 | 05:52:27 (-04:00) | 42.126744 | -77.9472254 | WIFI | 77 |
| 010101BD56354DA80950E7B634721D1B394066BA587D8B910C5C20EB9F1C28691E03BBB1E73EF6 | 7/28/2023 | 05:30:29 (-04:00) | 42.1267226 | -77.9471317 | WIFI | 49 |
| 010101BD56354DA80950E7B634721D1B394066BA587D8B910C5C20EB9F1C28691E03BBB1E73EF6 | 7/28/2023 | 05:50:26 (-04:00) | 42.1267449 | -77.9471035 | WIFI | 43 |
| 010101BD56354DA80950E7B634721D1B394066BA587D8B910C5C20EB9F1C28691E03BBB1E73EF6 | 7/28/2023 | 06:24:57 (-04:00) | 42.1267345 | -77.9470647 | WIFI | 64 |
| 010101BD56354DA80950E7B634721D1B394066BA587D8B910C5C20EB9F1C28691E03BBB1E73EF6 | 7/28/2023 | 05:28:07 (-04:00) | 42.1270833 | -77.94694 | GPS | 59 |

*Figure 1*



*Figure 2*

The affiant states, "For each location point recorded within the Initial Search Parameters, and for each location point recorded outside the Initial Search Parameters where the margin of error (i.e., "maps display radius") would permit the device to be located within the Initial Search Parameters, Google shall produce to the government information specifying the corresponding unique device ID, timestamp, location

coordinates, display radius, and data source, if available (the "Device List"). This is the first stage of the geofence warrant in this case.

The affiant continues to state, "The government shall review the Device List and identify to Google the devices about which it seeks to obtain Google account identifier and basic subscriber information. The government may, at its discretion, identify a subset of the devices." This is the second stage of the warrant in this case, request for subscriber information or "de-anonymizing" Google account IDs that the government deems pertinent to their investigation. In response, Google provides account subscriber information that includes the email address associated with the account as well as the name and phone number entered by the user of that particular account.

In the initial search parameters (stage 1), the affiant provided coordinates for one geofence (polygons) that correspond to the relevant locations in this case. The geofence for the following time period encompasses the following area (Figure 3):

1. Location 1:
    a. July 28, 2023 5:00 AM through 6:30 AM (EST)
    b. Approximately 240,465 square feet or 5.5 acres



*Figure 3*

The geofence encompasses a far greater area than the relevant locations in this case. The limits of the geofence in this case are set at arbitrary points that not only encompass the relevant locations but also several other residential homes.

The scope of the geofence does not end at the limits set by law enforcement. As previously stated, the affiant in this case requested, "For each location point recorded within the Initial Search Parameters, and for each location point recorded outside the Initial Search Parameters where the margin of error (i.e., "maps display radius") would permit the device to be located within the Initial Search Parameters, Google shall produce to the government information specifying the corresponding unique device ID, timestamp, location coordinates, display radius, and data source, if available (the "Device List"). The government requested Google to not only respond with devices found within

the geofences but also devices that are located outside of the geofences. The accuracy of Google Location History for a user can vary widely, even by thousands of meters for a single device. This means that it is possible for a device that is physically located outside of the geofence to be captured by the geofence due to the accuracy of Google's estimated location of that device. Therefore, the effective range of the geofence is much larger than the actual geofence itself not only due to Google's own margin of error but also because the affiant in this case specifically requested for Google to conduct this search outside of the Initial Search Parameters (i.e., requested geofence boundaries).

Again, it should be noted that Google estimates a device should be located within the estimated radius and states their goal is for that to be true 68% of the time. Therefore, it is possible for a device to have been captured by a geofence when the device is not only physically outside of the geofence but even outside of the estimated display radius accuracy determined by Google. Examples of this can be found in the Google Location History records for geofences in this case. Figure 4 illustrates this issue. This figure displays the largest maps radius for a device that Google included in each geofence in this case.

*Figure 4*

Since the device can be located anywhere within and possibly outside of the map display radius, it is my opinion that this makes the search area or effective range of the geofence much larger than it is described in the initial search parameters. This is based on my analysis and experience analyzing this data. I often see devices drawn into the geofence that were found to be false positives. This issue has created an overreaching dragnet that can capture hundreds of devices entirely unrelated to the investigation.

### III.    Google Location History

In this case, one responsive Google account was captured in the geofence (step 2 of the geofence warrant). All identifying information was provided for this account under the authority of a single Google geofence search warrant. The Google account responsive to the geofence search warrant is as follows:

- Google Account ID: 390552410782

- E-Mail: watersoapandhope3@gmail.com

- Subscriber Name: Simon Gogolack

A total of 29 location data points were provided for this account for the time period of 5:27:32 AM through 6:28:58 AM. These location data points were used in SA Orlando's report on pages 37, 38, 39, and 40 (Figures 5-8).



*Figure 5 – CAST report page 37*



*Figure 6- CAST report page 38*



*Figure 7 – CAST report page 39*



*Figure 8 – CAST report page 40*

The Google location data points range in estimated sizes from 5 meters to 122 meters. It is important for the court to understand the limitations of opinions derived from this type of location data. In a document labeled "CAST Summary" item 16 states "Geofence Data places Gogolack in Knight's home at or around the biker incident". Item 211 states "…Gogolack's Geofence location placed him inside of Knight's home, as pictured below. (Figure 9).



*Figure 9 – CAST Summary exhibit*

This conclusion is extremely problematic as it is impossible to conclude that a device was located within a particular location based upon Google Location History alone. Google themselves have acknowledged that estimated locations in Google Location History are not 100% accurate. Google employee Marlo McGriff provided a declaration that Google estimates a device should be located within the estimated radius and states their goal is for that to be true 68% of the time March 11, 2020 (Marlo McGriff declaration in U.S. vs. Okello T. Chatrie, Attachment I). This fact alone disproves the opinion made in this case (Figure 9). As seen in Figure 9, the estimated display radius for each of the location data points covers an area much larger than a single residence. In fact, the display radii in figure 9 covers multiple residences. Further, there are no research publications or scientific studies confirming that the latitude and longitudinal coordinate is more accurate than the display radius. This means that even if all estimated latitudinal and longitudinal coordinates were located on a single residence, the likelihood that the device was located inside of that particular residence does not increase. As seen in figures

5 through 9, the display radius in this small data set changes greatly. This location data is reliable for providing the general location of where a phone may have been located, but it is not reliable or accurate enough to historically place a phone inside of a single residence. Further, the relevant locations in this case are too close in distance to reliably determine if a device is in one location or the other (Figure 10).



*Figure 10*

The relevant addresses of 296 Scott Ave. and 287 Scott Ave. are separated by approximately 35 meters. After 5:27:32 AM (Figure 5) the smallest display radius for Google Account ID: 390552410782 is 20 meters which is a circumference of 40 meters.

The distance between each location is simply too close to opine that the device is located at one location or the other. At 5:27:32 AM the display radius is accurate enough to conclude that the device is more likely in the area of 296 Scott Ave. (Figure 5). However, no location estimate is accurate or reliable enough to conclude that the device was located inside any location at any point in time.

### IV.    Conclusion

I have analyzed the Google geofence search warrant, the responsive data to that warrant, and the analysis and conclusions of the responsive data by the government. Google admits that they search approximately 592 million accounts every time a Google geofence warrant is submitted. The analysis of the responsive data in this case reveals that the effective range of the geofence is larger than what is depicted in the search warrant. The effective range is knowingly expanded as the Google geofence search warrant specifically requests location points that fall outside of the initial search parameters. The conclusion made that the device associated with Google Account ID: 390552410782 was located inside of a particular location is incorrect and impossible to determine based upon these records alone. It is my opinion that the conclusions drawn from the Google Location History records in this case are prejudicial and would inaccurately portray the limitations of this data to a jury of laymen.

_____
Eric M. Grabski
Senior Digital Forensic Examiner
Envista Forensics