UNITED STATES DISTRICT COURT for the
WESTERN DISTRICT OF NEW YORK

UNITED STATES,

    Plaintiff,

v.

FRANK KNIGHT,          Case no.: 23-cr-099

    Defendant.

# Memorandum of Law
Responsive to Government's Objections to Orders to Disclose
Grand Jury Minutes  [606, 643, 647, 663, 664, 665]

Dated: December 15, 2025
Erie County, New York

         BARRY J. DONOHUE, ESQ.
         Attorney for FRANK KNIGHT

         By:   /s/ Barry J. Donohue
           Barry J. Donohue, Esq.
           77 Broad Street
           Tonawanda, New York 14150
           (716) 693-0359
           e-mail: barry@donohuelaw.com

         Matthew R. Lembke
         CERULLI MASSARE & LEMBKE
         45 Exchange Blvd., Suite 925
         Rochester NY 14614
         Phone:  585-454-3323
         e-mail: www.mattlembke.com

To: Joseph Tripi, AUSA
138 Delaware Avenue
Buffalo, New York 14202

(716) 843-5839
e-mail: joseph.tripi@usdoj.gov

Nicholas Cooper, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5712
e-mail: nicholas.cooper@usdoj.gov

Casey Chalbeck, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
e-mail: casey.chalbeck@usdoj.gov

Joshua Violanti, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5864
e-mail: joshua.violanti@usdoj.gov

I.  PROCEDURAL POSTURE.

June 13, 2025 FRANK KNIGHT moved for the release of grand jury minutes pursuant to Rule 6(e)(3)(E). [455].  In his motion FRANK KNIGHT alleged that the grand jury had been presented with intentionally misleading information about what FRANK KNIGHT said to an FBI agent on August 3, 2023. [455] § 20.  FRANK KNIGHT also alleged that the grand jury had been presented with intentionally false or misleading information that GOGOLACK was in FRANK KNIGHT's home in the early morning hours of July 28, 2024 and that FRANK KNIGHT knew it. [455] ¶ 21.

August 21, 2025 the Magistrate Court said it would review the grand jury minutes *in camera* in connection with the first of FRANK KNIGHT's requests for grand jury minutes. [566] 3.

The Magistrate Court denied the request with respect to the second of FRANK KNIGHT's request for grand jury minutes because it believed the intentional misleading of the grand jury that FRANK KNIGHT claimed was speculative without expert testimony. [566] 3 ("'The allegation in the Indictment purports to locate GOGOLACK's phone, not on or near FRANK KNIGHT's home but, inside 'KNIGHT'S residence' in the early morning hours (between 5:30 a.m. and 6:30 a.m.). It is highly unlikely that historical cell site records or Google geofence data would place GOGOLACK's cell phone with that level of specificity". Donohue Affirmation [455], ¶15. However, absent expert analysis, that contention is mere speculation.")

August 27, 2025 the Magistrate Court concluded as follows, "(b)ased on the evidence submitted to it, I conclude that the grand jury was not misled by the government, and could

3

reasonably have found probable cause to believe that Knight's initial statement to Special Agent Penna that he did not believe that Hinkle was at the July 27 poker game was intentionally false and "material" to the investigation, notwithstanding the fact that he corrected that statement several minutes later." [585] 4.  The Magistrate Court cited to a Second Circuit case for the definition of materiality, "a statement is material if it has a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed . . . or if it is capable of distracting government investigators' attention away from a critical matter." [585] 3.

October 27, 2025 the Magistrate Court reversed itself, "I am reconsidering my earlier view that the grand jury had not been misled, and conclude that the grand jury materials relevant to the §100l(a)(2) charge (including instructions or lack thereof) should be released to defendant Knight." [647, 665].

The Court ordered the government to appeal, if any, the order to produce the grand jury minutes by November 26, 2025.  November 26, 2025 the government emailed objections to the orders that the grand jury material should be released. [697].

This response is timely. [702].

II.  FACTUAL BACKGROUND.

FRANK KNIGHT has repeatedly advanced the position that the grand jury was intentionally misled concerning his statements to the FBI on August 3, 2025. [455, 652].  The following language quoted right from Count 1 paragraph 60 of the Second Supreseding

Indictment is false regardless of how the testimony was presented to the grand jury, "KNIGHT made false and misleading statements to the FBI, including that HINKLE had not been at the July 27, 2023 poker game." The following language quoted right from Count 5 of the Second Superseding Indictment is false regardless of how the testimony was presented to the grand jury, "defendant stated that HOWARD HINKLE, JR. was not at a poker game in Wellsville attended by Crystal Quinn on July 27, 2023." [24].

    FRANK KNIGHT also maintains that the grand jury was intentionally misled about GOGOLACK being inside FRANK KNIGHT's home in the early morning hours of July 28, 2023. [455]. Request to review the grand jury minutes in connection with Count 23 is here renewed because there is now an affidavit of an expert confirming what KNIGHT originally claimed with respect to Count 23, namely, that there is reason to believe that the grand jury was intentionally misled about the claim that GOGOLACK was in KNIGHT's home in the early morning hours of July 28, 2023. The subject affidavit of Eric Grabski now appearing in the Docket at 710-1 is incorporated herein in its entirety by reference. In pertinent part it says, "The conclusion made that the device associated with Google Account ID: 390552410782 was located inside of a particular location is incorrect and impossible to determine based upon these records alone." [710-1].

III. ARGUMENT.

    a.    <u>Magistrate Court's order not clearly erroneous or contrary to law</u>.

A Magistrate Judge's order on a non-dispositive matter may be set aside only if it is "clearly erroneous or contrary to law". 28 U.S.C. § 636(b)(1)(A); *Alvarado v. City of New York*, No. 04- cv-02558, 2009 U.S. Dist. LEXIS 15591 , 2009 WL 510813 , at * 1 (E.D.N.Y. Feb. 27, 2009) ("[A] magistrate judge's decision is contrary to law only where it runs counter to controlling authority.").

    b.    <u>The Magistrate Court correctly found that disclosure of selected portions of the grand jury minutes outweighs the government's claim of generalized need for grand jury secrecy</u>.

Like a new car that loses much of its value when it is purchased and driven off the car lot, grand jury secrecy loses much of what underpins it when an indictment is made public. See *Dennis v. U.S.*, 384 U.S. 855, 870 (1966) ("after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it...These developments are entirely consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice"); *U.S. v. Moten*, 582 F.2d 654, 664 (2nd Cir. 1977) ("if the grand jury investigation is no longer active, we think Moten's showing of need is sufficient at least to override the generalized need for grand jury secrecy"). The Supreme Court has clearly identified the reasons why we have grand jury secrecy. "(1) To

prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 231 note 10 (1979). Some of these lose all of their value when an indictment is made public. All of them lose at least some of their value when and indictment is made public.

Integrity and institutional independence is not the talisman the government claims it is. This is especially so where the government already has an outsized influence on the grand jury's institutional independence. See *U.S. v Hogan*, 712 F.2d 757, 759 (2nd Cir. 1983) ("It is true of course that prosecutors, by virtue of their position, have gained such influence over grand juries that these bodies' historic independence has been eroded.") And the government regularly discloses large swaths of grand jury material as part of its 3500 obligations prior to trial.

Whether to disclose grand jury materials and whether indictments are subject to dismissal in connection with conduct before the grand jury are separate questions. The government repeatedly and incorrectly accused the Magistrate Court of putting the cart before the horse, namely, deciding there was dismissable conduct and thus the grand jury minutes should be disclosed. Govt's Response, 9/29/25 31 ("for a court to assert the power to release secret Grand

Jury material, it must conclude a basis exists to dismiss the indictment"), 42 ("dismissal of the Indictment–that the Magistrate Court believes the defendants are entitled to"); Govt's Objections 11/26/25 12 ("The Magistrate Court proceeded to prospectively justify the dismissal of the indictment, and, by extension, the disclosure of grand jury minutes.") While the questions of whether to disclose the grand jury materials and whether an indictment is subject to dismissal are related, they are separate questions with separate standards.  And the Magistrate Court only decided the first question of whether to release the grand jury materials.  The Magistrate Court understood that the second question, if defendants deemed it meritorious, would be presented to the District Judge. [643, 664] 9 ("It is not for me to decide wether the Second Superseding Indictment should be dismissed.")

    Here the only issue is whether to release the grand jury materials.  Rule 6(e)(2)(E)(ii) provides the "court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter...at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  FRCrP 6(e)(2)(E)(ii). The key words in the rule are "may authorize" and "may exist". There is no requirement that a defendant demonstrate a successful motion to dismiss as a threshold matter before being allowed access to the material.   Once a defendant has demonstrated that a ground for dismissal *may exist* he is entitled to the records sought, especially when the government's counterweight is a *generalized* need for secrecy.  "(I)f the grand jury investigation is no longer active, we think Moten's showing of need is sufficient at least to override the *generalized* need for grand jury secrecy". U.S. v. Moten, 582 F.2d 654, 664 (2nd Cir. 1977) emphasis added.

Here we have the recording of the conversation that forms the basis of Count 5 of the Indictment. And we know based on that recording that the statement in Count 5 that "defendant stated that HOWARD HINKLE, JR. was not at a poker game in Wellsville attended by Crystal Quinn on July 27, 2023" is false. Whether this false statement in the indictment and its appearance in Count 1 as well is enough to grant dismissal of the Indictment is not currently before the Court. As the *Dennis* and *Moten* courts said, "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. U.S.*, 384 U.S. 855, 875 (1966); *U.S. v. Moten*, 582 F.2d 654, 663 (2nd Cir. 1977). Once the Magistrate Court determines that a sufficient showing has been made, it is for the defense attorney to review the disclosed material to determine what if any motions may still merit pursuing.

It is true that the Magistrate Court reversed its original decision not to permit disclosure of the grand jury minutes related to Count 5. And it is true that the Magistrate Court did so because it was troubled that the term "materiality" had not been defined for the grand jury. [647, 665]. But it is also clear that the Magistrate Court had concerns about the allegation relating to Count 5 from the very beginning. Arg. transcript 8/20/2025 ("Well, it's the same interview. It's within a matter of minutes -- or seconds and not minutes. I think he, at least he's quoted as saying 'I don't think he was there, I don't remember, maybe I got my dates mixed up'. And then a few minutes later he said 'no, no, he was there, he was sitting right next to Crystal Quinn.' So I have difficulty understanding how that allegation that he made, I guess, an intentionally false misrepresentation to the FBI can be consistent with what the interview says.") So when the Magistrate Court found a problem with the failure to define "materiality" it was part

9

of a larger problem with Count 5.

Merriam-Webster dictionary defines materiality as something that is material.  This definition is not only uniquely unhelpful on its own, but is uniquely unhelpful when contrasted with the legal definition of materiality as found by the magistrate, "a statement is material if it has a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed . . . or if it is capable of distracting government investigators' attention away from a critical matter." [585] 3.  A portion of Count 5 contains an unmistakably false statement of fact.  Even the equivocal portion of Count 5, that FRANK KNIGHT "did not think" HINKLE was present, was corrected minutes later.  These facts render Count 5 shaky at best.  Might the grand jury have concluded that the evidence failed to demonstrate probable cause to believe that any statement of FRANK KNIGHT was capable influencing a decisionmaking body or distracting the FBI agent from a critical matter?  Might the grand jury have torpedoed Count 5 if they had a genuine opportunity to do so?  The point is, the government was not going to give them that opportunity.

In other words, it was not simply the failure to instruct on materiality that formed the basis of the Magistrate Court's decision to order disclosure of the jury minutes.  It was the falsity of a factual allegation in Counts 1 and 5.  It was the prompt correction of the "did not think" statement alleged in Count 5.  It was the truncated jury deliberations.  And it was the failure to instruct on materiality.

Whether the Court dismisses Count 5 is not the point.  The government has provided no specific secrecy need in this case but rather advanced only a generalized need for grand jury secrecy.  FRANK KNIGHT, on the other hand, satisfied the Magistrate Court that there *may* be a

basis to move to dismiss the indictment.

IV.     CONCLUSION.

WHEREFORE, for the foregoing reasons FRANK KNIGHT asks the Court to find that the Magistrate Court's order to disclose the grand jury material related to Count 5 is not clearly erroneous or contrary to law and dismiss the Objections.

Dated: December 15, 2025
Erie County, New York

BARRY J. DONOHUE, ESQ.
Attorney for FRANK KNIGHT

By: /s/ Barry J. Donohue
Barry J. Donohue, Esq.
77 Broad Street
Tonawanda, New York 14150
(716) 693-0359
e-mail: barry@donohuelaw.com