UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

UNITED STATES OF AMERICA,

           v.

FRANK KNIGHT,

           Defendant.

**DECISION AND ORDER**

1:23-CR-00099 EAW

─────────────────────────────

I.    **INTRODUCTION**

Defendant Frank Knight ("Knight") is charged by way of a Second Superseding Indictment ("SSI") with the following crimes: (1) obstruction of justice conspiracy (along with five other defendants) in violation of 18 U.S.C. § 371 (count 1); and (2) two counts of making false statements in violation of 18 U.S.C. § 1001(a)(2) (count 5 and count 23). (Dkt. 24). The two false statements charges also constitute overt acts alleged as part of the count 1 conspiracy. (*Id.* at Overt Act ¶¶ 60 & 95). The case relates to the death of Crystal Quinn ("Quinn"), an individual scheduled to testify in another criminal trial involving defendant Peter Gerace, Jr. ("Gerace"), who was found dead on August 1, 2023, in the home of defendant Simon Gogolack ("Gogolack"). Further familiarity with the underlying facts and procedural history of this case is assumed.

On October 27, 2025, Knight filed a motion seeking the following relief: (1) severance pursuant to Federal Rule of Criminal Procedure 14(a); (2) a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) with a related request to suppress evidence; and

(3) leave to make other motions. (Dkt. 652).[1] The government filed a response in opposition to the pending motion (Dkt. 692 (redacted response); Dkt. 693 (sealed response)), and Knight filed reply papers in further support of his motion (Dkt. 710 (redacted reply); Dkt. 711 (sealed reply)). Oral argument was held before the undersigned on December 10, 2025, at which time the Court reserved decision. (Dkt. 708). For the reasons set forth below, Knight's motion for severance pursuant to Rule 14(a) is denied without prejudice, his motion for a *Franks* hearing and to suppress is denied, and his motion for leave to file additional motions is denied without prejudice.

## II. MOTION FOR SEVERANCE PURSUANT TO RULE 14(a)

Knight seeks severance under Rule 14(a), arguing that he is charged in only three of the 28 counts in the SSI, and that his "connection to the principal aspect of this case—Crystal Quinn's death—is thin, at best." (Dkt. 652 at ¶ 43). In support of his request for severance, Knight takes issue with the veracity of many of the allegations in the SSI. (*See, e.g., id.* at ¶ 46 (arguing that Knight could not have lied to the FBI about Gogolack being present in his house during the early morning hours of July 28, 2023, because if Gogolack was there, Knight did not know about it because he never saw him); ¶ 48 (arguing that it is absurd to allege that Gogolack was offering his services as a hit man because there is no need for "professional assassins in the Greater Wellsville NY area—or in all of Western New York")).

---

[1] The sealed portion of Knight's motion is filed at Docket 655.

The government opposes Knight's severance request, arguing that he is properly joined with his co-defendants. (Dkt. 692 at 20-25). The government argues that it anticipates proof being presented at trial that Knight is an associate of defendants Michael Roncone, Howard Hinkle ("Hinkle"), and Gogolack, along with the Rare Breed Motorcycle Club ("RBMC"); that as part of that association, Knight made false statements to the FBI to advance a false suicide narrative concerning Quinn, shield Hinkle, and obstruct the investigation into Quinn's death; and that Knight was in close contact with Gogolack after Quinn's death. (*Id.* at 23).

Pursuant to Rule 14, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The decision to sever a trial pursuant to Rule 14 is "confided to the sound discretion of the trial court." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). A trial court's decision concerning severance is considered "virtually unreviewable," and the denial of such a motion "will not be reversed unless appellants establish that the trial court abused its discretion." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991) (citations omitted). In order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial." *Id.* "It is well established that a defendant cannot avoid the risks of a joint trial simply because he might have a better chance of acquittal in a separate trial." *United States v. Figueroa*, 618 F.2d 934, 944 (2d Cir. 1980).

The party requesting severance must demonstrate substantial prejudice: "When defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Astra Motor Cars*, 352 F. Supp. 2d 367, 369-70 (E.D.N.Y. 2005) (alteration omitted and quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)); *see also Cardascia*, 951 F.2d at 482 (in order to successfully challenge the denial of a request for severance, a defendant "must establish prejudice so great as to deny him a fair trial"); *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) ("[T]he defendant must show that he or she suffered prejudice so substantial as to amount to a 'miscarriage of justice.'"). "[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (citations omitted). "That the defendant would have had a better chance of acquittal at a separate trial does not constitute substantial prejudice." *United States v. Carson*, 702 F.2d 351, 366 (2d Cir. 1983).

There is a powerful presumption in favor of joint trials of defendants indicted together based upon the underlying policies of efficiency, avoiding inconsistent verdicts, providing a "more accurate assessment of relative culpability," avoiding victims and witnesses having to testify repeatedly, and avoiding the random favoring of "the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand." *Richardson v. Marsh*, 481 U.S. 200, 210, 219 n.7 (1987) (citation omitted); *see also*

*Cardascia*, 951 F.2d at 482 ("The deference given by an appellate court to a trial court's severance decision reflects the policy favoring joinder of trials, especially when the underlying crime involves a common plan or scheme and defendants have been jointly indicted."). The Second Circuit has instructed that "[c]onsiderations of efficiency and consistency militate in favor of trying jointly defendants who were indicted together. . . ." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (citations omitted); *see also United States v. Van Sichem*, No. SS 89 CR. 813 (KMW), 1990 WL 41746, at *1 (S.D.N.Y. Apr. 2, 1990) ("There is a strong presumption in favor of joint trials for jointly indicted defendants, particularly where, as here, the 'crimes charged involve a common scheme or plan.'") (alteration omitted and quoting *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979)). Indeed, "[j]oint trials serve the interests of the government, the accused, and the public by eliminating the additional expense and repetition associated with successive prosecutions." *Van Sichem*, 1990 WL 41746, at *1 (citing *United States v. McGrath,* 558 F.2d 1102, 1106 (2d Cir. 1977)) (further citation omitted).

This is particularly true in the case of a charged conspiracy—like the one here—where evidence is admissible to prove the conspiracy even with respect to a defendant who purportedly played a minimal role in that conspiracy. In other words, "not only are joint trials 'constitutionally permissible' when they place 'defendants who are . . . marginally involved alongside those heavily involved'; they are 'often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy.'" *United States v. Delgado*, 972 F.3d 63, 81 (2d Cir. 2020), *as amended* (Sept. 1, 2020) (quoting *Spinelli*, 352 F.3d at 55); *see United States v. Casamento,* 887 F.2d 1141,

1153 (2d Cir. 1989) ("[E]ven if each defendant had been tried separately, much of the evidence the government presented at the joint trial regarding the activities of alleged co-conspirators would have been admissible in the single-defendant trials."); *United States v. Taylor*, 720 F. Supp. 3d 131, 139 (D. Conn. 2024) ("In a conspiracy case involving multiple defendants, it is 'almost inevitable' that defendants will bear different degrees of culpability." (citations omitted)); *United States v. Reid*, 650 F. Supp. 3d 182, 198 (S.D.N.Y. 2023) ("Where, as here, each defendant is alleged to be a member of a single conspiracy, 'virtually all of the evidence admitted at a joint trial would be admissible against each separate defendant in a separate trial as acts of his co-conspirators in furtherance of the charged conspiracy.'" (citation omitted)); *United States v. Proctor*, No. 10-CR-239S (3)(4), 2015 WL 798956, at *3 (W.D.N.Y. Feb. 26, 2015) ("[B]ecause all defendants are charged in the conspiracy counts, what Defendants identify as spillover evidence may actually be properly admissible against them." (citation omitted)); *United States v. Friedman,* 635 F. Supp. 782, 784 (S.D.N.Y. 1986) ("[N]o defendant has been able to demonstrate that any evidence would be admissible at a joint trial which the government could not, if it wished, offer in a separate trial against him.").

Knight has not established entitlement to relief under Rule 14(a). His argument essentially boils down to a claim that, at most, his role with respect to the alleged conspiracy was minimal, and that the charges against him will not hold up at trial. But that does not justify severance. Knight is charged with conspiring with the remaining five co-defendants to obstruct justice, and the alleged false statements charges that he faces on his own serve as alleged overt acts in furtherance of the charged conspiracy. That Knight may

face a better chance of acquittal if tried alone does not justify severance. Accordingly, his request for severance under Rule 14(a) is denied.[2]

### III. MOTION FOR A *FRANKS* HEARING AND TO SUPPRESS

#### A. Legal Standard

"Ordinarily, a search carried out pursuant to a warrant is presumed valid. However, in certain circumstances, *Franks* permits a defendant to challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search and seizure." *United States v. Mandell*, 752 F.3d 544, 551-52 (2d Cir. 2014) (quotations and citation omitted). As explained by the Second Circuit:

> [T]o suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause [or necessity] finding.

*United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000)). The standard for entitlement to a *Franks* hearing is high, *see Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991), and requires a "substantial preliminary showing" that a false statement was knowingly and intentionally,

---

[2] Also pending are motions for severance under Rule 8 filed by some of Knight's co-defendants. (*See* Dkt. 728 at 1 (outlining pending severance motions)). Although Knight did not initially move based on Rule 8, the Court has granted his request to join in his co-defendants' motions. (*See* Dkt. 746). Thus, whether all counts are properly joined under Rule 8 remains an outstanding issue requiring supplemental briefing and further oral argument. (*See* Dkt. 742 (setting forth schedule for the same)). In addition, the Court anticipates that Defendants may subsequently seek to renew their Rule 14(a) severance motions closer in time to trial, as those motions were deemed premature at the time they were initially argued in August 2025. (*See* Dkt. 597 at 21; Dkt. 728 at 2). Thus, Knight's Rule 14(a) motion is denied without prejudice.

or with reckless disregard for the truth, included in the affidavit for the search warrant, *Franks*, 438 U.S. at 155-56. "An inaccuracy that is the result of negligence or innocent mistake is insufficient." *United States v. Perez*, 247 F. Supp. 2d 459, 472 (S.D.N.Y. 2003). In other words, the Court's "focus is not on whether a mistake was made, but rather on the intention behind the mistake." *United States v. Markey*, 131 F. Supp. 2d 316, 324 (D. Conn. 2001), *aff'd sub nom. United States v. Simpson*, 69 F. App'x 492 (2d Cir. 2003).

> With respect to the second step of the *Franks* test, the Second Circuit has explained:
>
> To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate. As with the inclusion of false information, "[o]missions from an affidavit that are claimed to be material are governed by the same rules." The ultimate inquiry is whether, after putting aside erroneous information and material omissions, "there remains a residue of independent and lawful information sufficient to support probable cause."

*Canfield*, 212 F.3d at 718 (alteration in original) (citations omitted) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998), and *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985)). In other words, even where a search warrant affidavit contains false or misleading information, "a *Franks* hearing is required only if, 'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.'" *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995) (footnote omitted) (quoting *Franks*, 438 U.S. at 156).

B.   **Knight's *Franks* Arguments**

On October 22, 2023, United States Magistrate Judge Michael J. Roemer signed a search warrant for, among other things, Knight's person and his residence at 287 Scott Avenue in Wellsville, New York. (Dkt. 655-1 (sealed exhibit)). The warrant was based on a 70-page affidavit signed by FBI Special Agent Adam Penna ("Agent Penna"), with attachments. (*Id.*).³ The affidavit detailed the investigation to date into Quinn's death and the recovery of her body at Gogolack's residence, communications between Knight and Gogolack, Knight's organization of the poker game that Quinn attended shortly before her death, and potentially relevant video evidence from Knight's residence located across the street from Gogolack's residence. (*Id.*).

Knight seeks a *Franks* hearing with respect to certain statements in Agent Penna's affidavit. (Dkt. 652 at ¶¶ 56-61). First, Knight challenges the statements in Agent Penna's affidavit that Knight is a member of RBMC, and contends that this information is false. (*Id.* at ¶ 57; *see also id.* at ¶¶ 22-26; Dkt. 710 at ¶¶ 2-7). But in support of this denial,

---

³   The warrant was executed two days later, at which time various electronic devices were seized. (Dkt. 692 at 3-4). Judge Roemer signed a warrant for the devices on October 26, 2023. (Dkt. 655-2 (sealed exhibit)). Then, another warrant was signed on January 12, 2024, in connection with the cell phone seized at the time of Knight's arrest. (Dkt. 655-3 (sealed exhibit)). Knight's motion focuses on "the factual assertions in the search warrant affidavit of October 22, 2023 . . . because that search warrant application was used to support the other two subject search warrants." (Dkt. 652 at ¶ 21).

Relatedly, in his reply papers, Knight challenges statements in another search warrant application sworn by a different agent on December 5, 2023, that Gogolack's geofence data placed him inside Knight's residence during the early morning hours of July 28, 2023. (Dkt. 710 at ¶ 6). But Knight's person and property were not the subject of that warrant, nor was that warrant referenced in connection with any of the search warrants challenged by Knight. Thus, Knight's arguments in this regard are irrelevant to the pending motion for a *Franks* hearing.

Knight relies on his own unsworn statements in an interview he gave to the FBI *after* the affidavit was signed. (Dkt. 652 at ¶ 24). And the government cites information documented from local law enforcement suggesting just the opposite—*i.e.*, stating that Knight was a member of the RBMC. (Dkt. 692 at 11-12; *see* FBI 302 GOV-00026991). Knight's argument fails to establish deliberate falsehood or reckless disregard for the truth through a credible offer of proof. Moreover, at a minimum, Knight was plainly associated with the RBMC. In fact, as the government points out in its opposition (Dkt. 692 at 12-13), Knight described himself in the FBI interview as a "hang around" (Dkt. 652-2 at 50 ("I guess in the biker world, technically, I'd be considered a hang around.")). Thus, Agent Penna's affidavit more than adequately established probable cause for the search of Knight's residence, and whether Knight was a member or associated with the RBMC was immaterial to that probable cause determination.

Second, Knight relies on statements in Agent Penna's affidavit concerning Quinn's aversion to heroin and fentanyl, the suggestion that Gogolack concocted a suicide narrative to conceal Quinn's killing, and the opinion concerning the level of fentanyl in Quinn's body equating to an intentional killing. But Knight's arguments in this regard are wholly inadequate to meet the *Franks* standard. Knight fails to provide any offer of proof or witness statements to support his argument, and he comes nowhere close to establishing that the statements in Agent Penna's affidavit were false. To the extent Knight is claiming that the failure to provide additional information concerning Quinn's background somehow constituted an intentional and material omission, he has failed to make such a showing. *United States v. Awadallah*, 349 F.3d 42, 67-68 (2d Cir. 2003) ("An affiant cannot be

expected to include in an affidavit every piece of information gathered in the course of an investigation." (citation omitted)).  And even if he had made such a showing, the search warrant application here was supported by more than adequate probable cause—and would have been so supported even with the alleged omissions concerning Quinn's background. *Rajaratnam*, 719 F.3d at 146 ("better approach" with omissions for purposes of *Franks* standard is to "insert the omitted truths" and determine whether "there remains a residue of independent and lawful information sufficient to support [a finding of] probable cause" (citations omitted)).

In sum, Knight has failed to satisfy either one of the *Franks* prongs, and his request for a *Franks* hearing is denied.

### IV.   LEAVE TO FILE FURTHER MOTIONS

Knight also seeks an order allowing him to make further motions that may become necessary in the future.  (Dkt. 652 at ¶ 62).  Knight then lists a litany of potential motions that could be filed in the future, ranging from motions *in limine* to Rule 17 subpoena requests to Rule 29 motions.  (*Id.* at ¶ 63).  Relatedly, Knight argues that although he is not aware of any issues pursuant to *United States v. Bruton*, 391 U.S. 123 (1968), he requests permission to move for severance on that basis in the event it becomes necessary.  (*Id.* at ¶¶ 54-55).  With respect to any *Bruton* issues, the government contends that any statements by co-defendants to law enforcement can be redacted or altered in accordance with *Richardson v. Marsh*, 481 U.S. 200 (1987).  (Dkt. 692 at 25).  The government does not appear to otherwise address Knight's motion for leave to file additional motions.

With respect to any *Bruton* concerns, it is not possible for the Court to meaningfully address that issue at this stage because Knight has failed to offer any specifics. When and if he is in a position to do so, he may seek leave to raise the issues with the Court. But generally speaking, the Court agrees that there are a myriad of ways to address these concerns absent a severance. *See generally United States v. Pirk*, 284 F. Supp. 3d 398, 412 (W.D.N.Y. 2018) (rejecting requests for severance on *Bruton* grounds because statements were not facially incriminating or testimonial, were offered for non-hearsay purposes, and could be redacted to eliminate any *Bruton* concerns).

In addition, to the extent that Knight requests leave to make further motions, the request is denied. For many of the identified motions, Knight would not need leave to file the motion because the deadline has not yet expired (*e.g.*, motions *in limine*) or the triggering event for filing the motion has not occurred (*e.g.*, Rule 29 motion). But to the extent Knight seeks some global permission to file an unspecified subsequent pretrial motion that is untimely, the request is denied. In the event it becomes necessary to file an untimely motion in the future, Knight may seek leave to do so and explain why the motion was not filed in a timely fashion (*e.g.*, based on newly discovered information, a good cause basis for not initially filing, etc.). *See United States v. Cobb*, 544 F. Supp. 3d 310, 345 (W.D.N.Y. 2021). The Court is not inclined to grant some blanket request for leave based on hypothetical future events that may never occur.

## V. CONCLUSION

For the reasons set forth below, Knight's motion for severance pursuant to Rule 14(a) is denied without prejudice, his motion for a *Franks* hearing and to suppress is denied, and his motion for leave to file additional motions is denied without prejudice.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      February 9, 2026
            Rochester, New York