IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

-v-

SIMON GOGOLACK, et al.

Defendants.

_____

**PETER GERACE, JR.'S MEMORANDUM IN RESPONSE
TO THE GOVERNMENT'S SUPPLEMENTAL MEMORANDUM REGARDING THE
DEFENDANTS' MOTIONS TO SEVER PURSUANT TO RULE 8(b)**

Case No.: 23-CR-99-2

Dated: February 17, 2026

1

**TABLE OF CONTENTS**

**RELEVANT BACKGROUND**..................................................................................................2

**DISCUSSION** ............................................................................................................................6

    RULE 8(B) ...............................................................................................................................7

    THE FOUR CORNERS OF THE INDICTMENT ............................................................................ 10

    JUDICIAL ECONOMY............................................................................................................ 12

**CONCLUSION** ....................................................................................................................... 13

**RELEVANT BACKGROUND**

On April 16, 2025, defendants filed joint non-dispositive pretrial motions that included a Rule 8/Rule 14 severance request. In the severance section, the moving defendants (including Peter Gerace, Jr., John Ermin, and Howard Hinkle) sought severance both of offenses and defendants, framing the request as (1) severing "Counts 1-3 from Counts 4-28" and (2) severing defendants based on individualized prejudice. (Dkt. 410-1 at 112–113.)

Within the Rule 8 severance argument, the defense observed the indictment as grouping into "four categories," including: "(a) the murder of a federal witness; (b) narcotic trafficking/use of firearms in furtherance of narcotic trafficking; (c) false statements made to law enforcement; and (d) kidnapping of two victims wholly unrelated to the charged murder." (Dkt. 410-1 at 117).

2

The defense then asked the Court to sever Counts 1–3 from "the remaining 25 counts." (Dkt. 410-1 at 118). The defense listed all counts, 4 – 28, identifying the charges and the defendant(s) charged in each count. (Dkt. 410-1 at 118-120). Mr. Gerace was not charged in any of the remaining 25 counts.

Although the defense conceded that under a Rule 8 analysis, some of the remaining 25 counts may be tied to the conspiracy in counts 1-3,[1] the defense explicitly argued that "[t]here is no conceivable overlap between the conspiracies and the personal drug trafficking activity of Mr. Gogolack or any witness intimidation he allegedly engaged in as part of that drug trafficking activity." (Dkt. 410-1 at 121). The defense noted that "even if the joinder appropriately stretched beyond counts 1-3 to include counts that … relate to the death of Ms. Quinn, then it would still be limited to counts 1-5, 25 [sic][2], and 26. All other counts should be severed based on the legal analysis under Rule 8." (*id*.)

On April 30, 2025, the government filed its response containing its opposition to severance. (Dkt. 423 at 81-87[3]). In the legal framework for its opposition, the government cited this Court's previous observation that in some circumstances, joint trials can

---

[1] The defense noted overlap between Counts 1-3 and Count 4 "which charges Mr. Gogolack with distribution of a controlled substance causing Ms. Quinn's death, independent of whether it was done as part of the conspiracy charged in Counts 1-3." (Dkt. 410-1 at 120). The defense further acknowledged that counts 5, 23, and 26, alleging false statements to law enforcement could be "related to Counts 1-3," even though "[t]hose counts do not involve any acts by Mr. Ermin, Mr. Gerace, and Mr. Hinkle." (*id.*).

[2] The defense mistakenly referenced Count 25 instead of Count 23. Count 25 is a charge against Michael Roncone for being an unlawful use of a controlled substance in possession of firearms. Count 23 is a false statement charge which the defense acknowledged may be related. *See* (Dkt. 24 at 45-47).

[3] Page numbers cited from the government's response refer to ECF page numbering.

"provid[e] a 'more accurate assessment of relative culpability,' avoid[] victims and witnesses having to testify repeatedly, and avoid[] the random favoring of 'the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand.'" (Dkt. 423 at 81-82); *citing United States v. Coley*, 498 F. Supp. 3d 415, 418 (W.D.N.Y. 2020).

The government also cited to the need for efficiency and judicial economy, noting those two considerations normally outweigh the risk of prejudice to defendants associated with joint trials. (Dkt. 423 at 82); *citing United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994); *United States v. Cardascia*, 951 F.2d 474, 482–83 (2d Cir. 1991).

The government went on to argue that Count 6, involving Mr. Gogolack's separate drug conspiracy was properly joined because "Count 6 is an inextricable part of the proof as it relates to Mr. Gogolack's participation in the conspiracies as alleged in Counts 1 through 3." (Dkt. 423 at 90). The government went on to proffer - without citation to the indictment - proof it intended to offer at trial. (Dkt. 423 at 90).

On May 9, 2025, Gerace submitted a reply memorandum addressing the government's response and further arguing issues of prejudice supporting severance under Rule 14.[4]

On August 20, 2025, the Court held oral argument on severance motions. The Court denied Rule 14 severance without prejudice as "premature" and it "indicated it

---

[4] The original motion for severance was filed jointly between Mr. Gerace, Mr. Ermin and Mr. Hinkle. The Reply, filed solely by Mr. Gerace, noted issues of prejudice that would result from a joint trial, including concerns specific to Mr. Gerace.

4

intended to deny the [Rule 8 severance] motions and would issue a decision explaining its reasoning." (Dkt. 728 at 2).

On January 6, 2026, the Court issued an order explaining that while it had been preparing a Rule 8 decision, it identified an inadequately briefed issue regarding Rule 8(b): whether it is appropriate to rely on government "pre-trial representations" (anticipated trial evidence) rather than confining analysis strictly to the indictment's allegations. (Dkt. 728 at 2-3). The Court explained that its initial conclusion that counts were properly joined had been based in part on the government representations of its anticipated proof, and that "at least with respect to Rule 8(b), this does not appear appropriate." (Dkt. 728 at 2-3).

After an appearance on January 21, 2026, this Court issued a Text Order setting a schedule for "supplemental briefing on the Rule 8(b) severance issue." (Dkt. 742).

On February 4, 2026, the government filed its supplemental memorandum addressing its position regarding severance, which more accurately accounted for the limitations of Rule 8(b).

The government stated it would not oppose severance of several sets of counts, including counts 11-18 (charging only Gogolack), but it maintained that counts 4, 5, 6–10 (also charging only Gogolack), 23 and 26 should remain joined with counts 1–3 under Rule 8(b). (Dkt. 753 at 1, 8-13).

5

The discussion below focuses on the defense's disagreement regarding the government's analysis of Rule 8(b) and its position regarding Counts 6-10.

## **DISCUSSION**

The defense initially moved for severance of counts 1-3 from counts 4-28, but as discussed above, the defense acknowledged under Rule 8, it may be determined that joinder under Rule 8 would include other all count related to the death of Ms. Quinn, which would result in joinder of counts 1-5, 23, and 26.

For the majority of the remaining counts, the government now concedes severance is appropriate. (Dkt. 753 at 1). However, the government continues its efforts to pursue a joint trial involving two separate conspiracies, one involving the death of Ms. Quinn and one involving a completely separate narcotics conspiracy between Mr. Gogolack and other individuals not involved to counts 1-3.

Specifically, the government concedes that Mr. Gogolack's kidnapping charges, contained in counts 11-18, must be severed, but it attempts to argue that Mr. Gogolack's drug trafficking conspiracy and related firearm possession, charged in counts 6-10, should remain joined.

For the following reasons, the Court should grant severance and specifically include severance of counts 6-10 along with the counts that the government has indicated it consents to severance.

6

<u>Rule 8(b)</u>

Seemingly recognizing that its attempts to tie Mr. Gogolack's separate narcotics conspiracy to the witness death conspiracy, the government spends much of its submission exploring the "history" of the Second Circuit's determination that Rule 8(b) should be applied in circumstances where defendants in multiple-defendant cases seek severance of counts.

The government indicates its intention in doing so is to "illustrate the Circuit's broad construction of Rule 8(b)'s 'act or transaction or . . . series of acts or transactions' standard." (Dkt. 753 at 2-3).

But a selective review cases that pre-date *United States v. Rittweger*, 524 F. 3d 171 (2d Cir 2008), does not change the directive of that decision.

After observing that in *United States v. Rittweger*, 524 F. 3d 171 (2d Cir 2008), the Second Circuit "effectively announced" that Rule 8(b) restricts the analysis to "'common factual elements' between counts… ascertained from the face of an indictment" (Dkt. 753 at 6), the government goes on to criticize the Circuit's decision.

The government argues *Rittweger* offers "no authority for this specific proposition." (Dkt. 753 at 7). The government also argues that *Rittweger* would somehow

alter the requirements of Rule 7, because Rule 7 indicates that indictments do not need a formal introduction.[5]

But no matter how much criticism the government attempts to lodge on the Circuit's decision in *Rittweger*, the Circuit has provided clear direction on Rule 8, which is routinely and appropriately adopted throughout our Circuit.

Indeed, "District [C]ourts in the Second Circuit have consistently applied Rittweger's 'caution' that the propriety of joinder under Rule 8(b) is determined on the basis of the indictment's factual allegations." *United States v. Weiner*, Case no. 22-cr-19, Dist. Court (S.D.N.Y. 2024); *citing United States v. Jordan*, 629 F. Supp. 3d 49, 58 (E.D.N.Y. 2022) (quoting Rittweger's admonition that the "decision to join parties turns on what is alleged in the indictment"); *United States v. Rajaratnam*, 753 F. Supp. 2d 299, 306 (S.D.N.Y. 2010).

And despite the government's criticisms of the Circuit's decision in *Rittweger*, our Circuit is not alone in its analysis supporting the requirement that Rule 8(b) is determined by the allegations contained within the actual indictment.

In a footnote, the government states "[c]ircuits are split as to whether a Rule 8(b) analysis is limited to the four corners of an indictment. *Compare, e.g., United States v.*

---

[5] This point seems like nothing more than a strained attempt to disparage the reasoning of *Rittweger*. There clearly is no conflict requiring reconciliation. Arguably, the joinder of counts should be evident without the inclusion of an introduction. And even though an introduction is not required under Rule 7, the government has the ability to include one. Indeed, they presented a lengthy speaking indictment in this case which included an Introduction.

8

*Halliman*, 923 F.2d 873, 883 (D.C. Cir. 1991) ("In this circuit, however, the government need not demonstrate the propriety of its joinder decisions on the face of the indictment."), and *United States v. Grey Bear*, 863 F.2d 572 (8th Cir. 1988) (en banc) (evenly splitting on whether a Rule 8(b) analysis is confined to the face of the indictment)." (Dkt. 753 at 7, n 6).

Not mentioned in the government's submission is that it appears most circuits have agreed with the Second Circuit's analysis in *Rittweger*. *See United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988) ("The propriety of Rule 8 joinder is determined by the initial allegations of the indictment...."); *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) ("Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment."); *United States v. Coleman*, 22 F.3d 126, 134 (7th Cir. 1994) ("Rule 8 joinder is based solely on the face of the indictment...."); *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990) ("Because Rule 8 is concerned with the propriety of joining offenses in the indictment, the validity of the joinder is determined solely by the allegations in the indictment.").

Legal precedent develops over time. Attempting to dispute the Second Circuit's analysis of Rule 8(b) by reviewing its earlier decisions has no significant bearing on the posture of the law as it exists in our Circuit now. This is demonstrated by the government's own footnote quoted above. The government cited *United States v. Grey Bear* from the 8th Circuit because the panel was evenly split on whether Rule 8(b) analysis

9

was confined to the face of the indictment. That decision was issued in 1988. The Eighth Circuit has since stated that "An indictment must reveal on its face a proper basis for joinder." *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998); *see also United States v Young*, case no. 14-30065, District Court (South Dakota 2014) ("district courts within the Eighth Circuit have viewed Eighth Circuit law as precluding consideration of facts outside of the indictment").

## THE FOUR CORNERS OF THE INDICTMENT

In regard to counts 6-10, the indictment presents a set of charges related to a narcotics conspiracy involving defendants Simon Gogolack, Cortnie Barber, and Bernard Byrd.

The indictment does nothing to connect the narcotics conspiracy to the witness death conspiracy addressed in counts 1-3. Indeed, review of the indictment clearly draws the conclusion that the narcotic conspiracy is unrelated.

The narcotic conspiracy involved an agreement between Simon Gogolack, Cortnie Barber, and Bernard Byrd. Ms. Barber and Mr. Byrd are not charged in counts 1-3 or any related counts.

In fact, even though the government criticized *Rittweger* based on their opinion that it would require indictments to include introductions, the government did include an introduction in this case. Yet, the introduction does not reference Ms. Barber and Mr. Byrd or their criminal agreement with Mr. Gogolack.

In addition to the introduction, the indictment includes a section related to the Manner and Means of the conspiracy in counts 1-3, and over 15 pages of overt acts, yet it never mentions Ms. Barber and Mr. Byrd or their agreement with Mr. Gogolack at any point until count 6.

That is because count 6 involves a different conspiracy, involving different co-conspirators, different objectives, and different evidence. Counts 7-10 are clearly derived from that narcotics conspiracy.

The government's states that "count 1 alleges a conspiracy designed to obstruct an investigation into narcotics, firearms, and death related offenses." (Dkt. 753 at 10). However, to draw that conclusion that count 1 relates, specifically to the conspiracy charged in count 6 would require this Court to rely on evidence outside the indictment.

Within its submission, the government makes the conclusory argument that "the conspiracy in ount 1… 'stemmed from' the narcotics conspiracy alleged against Mr. Gogolack in Count 6," but it is not supported by the language of the indictment. The indictment never states anything in count 1-3 stems from the conspiracy alleged against Mr. Gogolack, Ms. Barber and Mr. Byrd in count 6. The government is, again, attempting to secure joinder on a proffer of what the facts might be at trial.[6]

---

[6] Setting aside the lack of support within the indictment for the position that the conspiracy in count 1 "stemmed from" the narcotics conspiracy alleged against Mr. Gogolack in count 6, it is not clear when that even became the government's position. As far as the defense knows, the government has always alleged the conspiracy in counts 1 stemmed from Case No. 19-cr-227, *United States v Bongiovanni*, not an unrelated drug conspiracy involving Mr. Gogolack, Ms. Barber and Mr. Byrd

Ultimately, counts 6-10 should not be joined with the conspiracy in counts 1-3. If anything, as discussed briefly below, counts 6-10 should be anchored to counts 11-18.

### JUDICIAL ECONOMY

Now that the government concedes, as it must, that counts 11-18 are improperly joined with counts 1-3, this Court should also consider two points the government raised in its initial response to the motion to sever: efficiency and judicial economy.

There will presumably be a separate trial regarding counts 11-18, the charges against Mr. Gogolack related to kidnapping and tampering with two individuals identified as Victim 1 and Victim 2.

From the face of the indictment, it is clear that Mr. Gogolack's narcotic conspiracy and the charges in counts 6-10 are more closely related to the charges in counts 11-18. This is demonstrated in part by the fact that one of Mr. Gogolack's co-defendants in the narcotics conspiracy, Courtnie Barner, was also charged in counts 11 and 12.

At this point, Ms. Barber's case is resolved, so counts 6-18 are all exclusive to Mr. Gogolack, and it is far more efficient to include counts 6-10 with counts 11-18 and have the narcotics conspiracy included in a single-defendant trial, instead of requiring the evidence to be presented in a 6-defendant trial, involving 11 defense attorneys, three of which have offices in Rochester.

As noted above, this Court has observed benefits to joint trials including a more accurate assessment of relative culpability, avoiding victims and witnesses having to

12

testify repeatedly, and avoiding the random favoring of "the last-tried defendants who have the advantage of knowing the prosecutor's case beforehand." None of those benefits appear to exist by having Gogolack narcotic conspiracy and related charges joined with the conspiracy in counts 1-3.

Rather, having those conspiracies severed will ensure that both trials remain focused on the appropriate conspiracy, and it will avoid unnecessary legal issues arising over different co-conspirators including hearsay issues. It will also spare a substantial amount of funds that would be expended by expanding the length of the six-defendant trial pertaining to the conspiracy in counts 1-3 to include a completely separate narcotics conspiracy.

## **CONCLUSION**

For all of the reasons set forth above, pursuant to Rule 8(b), Mr. Gerace respectfully request this Court grant the motion for severance of counts 1-3 (the only charges in which he is named) in this indictment, or alternatively, severance of all counts other than counts 1-5, 23, and 26.

DATED:   Rochester, New York
         February 17, 2026

                                        s/ Mark A. Foti_____
                                        Mark A. Foti, Esq.
                                        THE FOTI LAW FIRM, P.C.
                                        *Attorneys for Defendant Peter Gerace, Jr.*
                                        16 W. Main Street – Suite 100
                                        Rochester, New York 14614
                                        (585) 461-1999
                                        mark@fotilaw.com

DATED:   Orchard Park, New York
         February 17, 2026

                                        s/ Cheryl Meyers Buth___
                                        Cheryl Meyers Buth, Esq.
                                        MEYERS BUTH LAW GROUP, PLLC
                                        *Attorneys for Defendant Peter Gerace, Jr.*
                                        21 Princeton Place, Suite 105
                                        Orchard Park, New York 14127
                                        (716) 508-8598
                                        cmbuth@mblg.us

---

### CERTIFICATE OF SERVICE

I hereby certify that, on February 17, 2026, the foregoing memorandum is served on all counsel of record by electronically filing the submission with the Clerk of the United States District Court for the Western District of New York using the Court's Case Management/Electronic Case Filing system.

DATED:   February 17, 2026
         Rochester, New York

                                        s/ Mark A. Foti___
                                        Mark A. Foti, Esq.