IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

SIMON GOGOLACK, et al.

Defendants.

---

## PETER GERACE, JR.'S SUPPLEMENTAL MEMORANDUM
## IN SUPPORT OF MOTION TO SEVER PURSUANT TO RULE 14

Case No.: 23-CR-99-2

Dated: April 6, 2026

1

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................2

LEGAL ANALYSIS ...........................................................................................................3

    RULE 14 SEVERANCE.....................................................................................................3

DISCUSSION .....................................................................................................................5

    PREJUDICE TO MR. GERACE REGARDING TRIAL LOCATION OF A JOINT TRIAL ........................5

    PREJUDICE TO MR. GERACE OF GOVERNMENT'S PROPOSED MOTORCYCLE CLUB EVIDENCE . 9

CONCLUSION.................................................................................................................. 12

## INTRODUCTION

A joint trial is scheduled to commence on June 8, 2026, in Buffalo, NY. The trial location was determined following a motion by Mr. Gerace for change of vicinage to Rochester, NY. The motion that was ultimately unopposed by the government, but it was met with opposition by the attorneys for the majority of co-defendants.

As a result of the joint trial location in Buffalo, NY, Mr. Gerace is scheduled to defend these charges in the same news / media market that has saturated the public with prejudicial and extraneous details of his 2024 sex trafficking trial.

This is particularly problematic because the most prejudicial news coverage is likely forthcoming, as Mr. Gerace is scheduled to be sentenced in case no. 19-cr-227 on April 24, 2026, only six weeks before the joint trial is scheduled to commence.

As a result, in the weeks leading up to trial, the location where the joint trial will be held will be saturated with news coverage of a proceeding where Mr. Gerace's history and character will be directly assaulted by the government.

Thus, the inclusion of Mr. Gerace in the June joint trial scheduled to commence in Buffalo will create a serious risk to his right to fair trial, and accordingly, severance under Federal Rule of Criminal Procedure 14(a), is appropriate.

Furthermore, the government intends to present evidence in a joint trial which would be inadmissible in a trial against Mr. Gerace, including evidence associated with the inner workings of the Outlaws Motorcycle Club, an organization in which Mr. Gerace did not have any form of membership.

Thus, circumstances exist in which a serious risk of spillover prejudice to Mr. Gerace would impact a verdict, providing further support for severance under Rule 14(a).

## LEGAL ANALYSIS

### RULE 14 SEVERANCE

Even in circumstances where joinder of defendants in a consolidated indictment is permissible, it "in no way detracts from the rights of individuals to avoid prejudicial joinder. The trial court can always entertain a motion to sever under Rule 14 to determine prejudice to individual defendants." *Haggard v. United States*, 369 F.2d 968, 973 (8th Cir. 1966).

Rule 14 provides grounds for severance based on any apparent prejudice to the defendant:

> Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.
>
> Fed. R. Crim. P. 14(a)

The statute is not specific as to the circumstances under which prejudice may warrant severance.

Rather, a trial should be severed under Rule 14 if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

The Court's severance analysis is therefore a two-step inquiry: identify whether the joint trial creates a serious risk of compromising a concrete right or reliable verdict; if so, determine whether any "less drastic measures" (redaction, limiting instructions) can cure it. *Zafiro*, 506 U.S. at 539–41.

The Court "has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960).

While the "court has the authority to tightly control its docket," it "also has an obligation under Rule 14 to insure against undue prejudice from the trial of two or more offenses in a single proceeding." *United States v. Wirsing*, 719 F.2d 859, 866 (6th Cir. 1983).

## DISCUSSION

### PREJUDICE TO MR. GERACE REGARDING TRIAL LOCATION OF A JOINT TRIAL

One basis for severance under Rule 14(a) is the apparent impairment of a specific trial right. In this case, Mr. Gerace has a right to fair trial. *Skilling v. United States*, 561 U.S. 358, 377 (2010); U.S. Const. Amend. VI.

Mr. Gerace will be forced to trial in Buffalo, New York, in the same news/media market as the previous trial and, more importantly, the upcoming sentencing, scheduled for April 24, 2026, only six weeks before the joint trial is scheduled to commence.

Mr. Gerace moved for change of vicinage, which only required an administrative change from Buffalo, NY, to Rochester, NY.[1] The relocation of Mr. Gerace's trial to the

---

[1] Under a vicinage analysis, which is a far less drastic remedy than a change of venue, the district court is not bound by Rule 21 analysis regarding pre-trial publicity. For example, in *United States v. Wittig*, 2005 U.S. Dist. LEXIS 5736 (Dist. Kansas 2005), the district court denied defendant's motion for change of venue under Rule 21(a) on pre-trial publicity grounds.  The district court, however, granted a change of vicinage. The district court concluded that "the transferee division offered a potential venire less tainted by adverse publicity and community prejudice than the transferor division."

Further, the *Wittig* court determined that there was a sufficient population in the transferee division that had little or no recognition of the defendants and the allegations such that an intra-district transfer to the transferee division (only 60 miles from transferor division) remained a viable and effective way of complying with the "Constitutional mandate for a fair and impartial jury." *Id* at 31.

Rochester courthouse would only move the trial approximately 1 – 1 ½ hours away, but it would move the trial to a different news / media market which was not subject to extraneous, prejudicial information from the first trial or the forthcoming sentencing hearing, which will undoubtedly contain coverage of prosecutorial commentary attacking Mr. Gerace's character only weeks before this joint trial is scheduled to begin.

Although, the government initially opposed change of vicinage, it subsequently withdrew its opposition. Thus, Mr. Gerace, with good cause to do so, moved to relocate the trial to Rochester, NY, without opposition from opposing counsel.

However, the majority of attorneys for the co-defendants, not concerned by the same quantity of direct pretrial publicity, sought a trial in Buffalo, NY, based on nothing more than convenience to their respective practices and a shorter length of commute for Buffalo-based family members wishing to attend the trial.[2]

Multiple defendants initially recognized the prejudice concerns: Gerace, Ermin, and Hinkle filed a joint motion to transfer venue from Buffalo, which the government

---

*United States v. Addonizzio*, 451 F.2d. 49, 62 (3rd Cir. 1971), similarly recognized the difference in the vicinage standards regarding pre-trial publicity and venue changes.  In *Addonizio* the Third Circuit upheld the trial court's transfer from Newark to Trenton within the District of New Jersey as "the proper exercise of the trial courts discretion conferred by Rule 18," despite the opposition of all of the defense counsel, who were located in Newark.  *Id*. ("the concentrated public interest and pretrial publicity in the case in the Newark area and the facilitation of the jury selection process in Trenton outweighed the consideration of convenience for defendants").

[2] This second point was primarily limited to Buffalo-based defendant Johnathan Ermin. Any individuals from Wellsville, NY, face virtually the same length of commute to Buffalo or Rochester. Notably, there are many areas in the Western District of New York located more than one hour from either courthouse; travel is sometimes a necessity for family members interested in attending trial.

eventually did not oppose. Defense counsel for Roncone opposed change of vicinage, arguing it would create an undue hardship based largely on his status as retained counsel at that time.[3] Counsel for Mr. Gogolack ultimately opposed relocation.[4] Mr. Ermin's and Hinkle's counsel withdrew from seeking the change. While Mr. Knight's counsel remained neutral regarding trial location, the majority of defense counsel supported a trial in Buffalo, which appeared to weigh heavily in this Court's decision to deny Mr. Gerace's motion for change of vicinage which was unopposed by the government.

Mr. Gerace's right to a fair trial is compromised by forcing his case to remain in the Buffalo division, which is the direct result of joinder with the co-defendants, who are represented by counsel seeking a trial in Buffalo.

This Court deferred to that majority view, weighing the individual preferences of each defendant over the unique prejudice to Mr. Gerace.

The prejudice from this venue decision is concrete. Mr. Gerace has already received daily coverage in Buffalo's media from his prior sex-trafficking case, and more is pretrial publicity is inevitable with the sentencing scheduled for later this month.

The law is clear that when "prejudicial news prior to trial" saturates the community, a fair trial requires transfer. *See Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961)

---

[3] Counsel for Mr. Roncone has since been appointed pursuant to the Criminal Justice Act.

[4] Mr. Gogolack was previously represented by the Federal Defenders, and his counsel at that time signaled support for change of vicinage. When a conflict resulted in substitution of counsel, newly appointed counsel took a position against change of vicinage.

(mass publicity "so pervasive" that "few [jurors] could fail to be influenced"). Likewise, *Skilling v. United States* (internal quotations omitted) emphasized that "massive, pervasive, and prejudicial publicity" dominating the community raises a serious doubt about a fair trial. 561 U.S. 358, 381 (2010). In *Sheppard v. Maxwell*, the Court held that the trial judge must protect the accused from "the odious scourge of publicity" and ensure the atmosphere is changed if necessary.

Mr. Gerace's situation meets these criteria: the Buffalo press relentlessly covered his previous trial, and now they will focus on his imminent sentencing (Apr. 24, 2026) immediately before trial. The result will be a Buffalo jury saturated with information about Gerace's guilty verdict in case no. 19-cr-227, and more importantly, attacks on his history and character during the forthcoming sentencing hearing – which will inevitably create or add to the exact kind of community bias that the Sixth Amendment and Rule 21 prohibit.

This prejudice is particular to Mr. Gerace. His co-defendants have no such history of publicity. For Mr. Gerace, but for the insistence of others, this case would likely have been tried in the Rochester division, where jurors have not been inundated with stories of his alleged crimes and attacks on his history and character during sentencing proceedings. Instead, Buffalo media will run banner headlines and televised coverage on the eve of trial – for example, local news stories will highlight his new sentence with commentary from the government. *Irvin* teaches that even seemingly "impartial" jurors

8

may subconsciously succumb to such coverage. The district court's reliance on co-defendants' preferences essentially forced Mr. Gerace to stand trial in the one venue where he is most prejudiced. This is fundamentally unfair.

Here, Mr. Gerace's fair-trial right is gravely at risk. The Second Circuit has repeatedly recognized that when extrajudicial information "saturates the community's mind," due process can demand a change of venue (or other remedial action). *Skilling*, 561 U.S. at 381; *Sheppard*, 384 U.S. at 363–64.

Where defendants have been improperly tied to a prejudicial venue by procedural maneuvers of co-defendants, this Court can use its discretion "to provide any other relief that justice requires" (Fed. R. Crim. P. 14(a)) – in this context, sever Mr. Gerace from his codefendants and permit his trial to be relocated to Rochester.

PREJUDICE TO MR. GERACE OF GOVERNMENT'S PROPOSED MOTORCYCLE CLUB EVIDENCE

A second basis for severance under Rule 14(a) is a serious risk that a joint trial would compromise a jury's ability to appropriately render a verdict.

A defendant can be unfairly prejudiced by the admission of evidence against a co-defendant which would not be admissible against the defendant. *See United States v. Figueroa*, 618 F.2d 934, 946-47 (2d Cir. 1980); *see also Zafiro*, 506 U.S. at 539 (severance is appropriate when "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty.'); *see also United States. v. James*, 2007 WL 1579978, *2 (E.D.N.Y. May 31, 2017) ("Spillover prejudice occurs

when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper.") (internal quotations omitted).

The Second Circuit has recognized that "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all." *United States v. Halper*, 590 F.2d 422, 430-31 (2d Cir. 1978).

In *Drew v. United States*, 331 F.2d 85, 89 (D.C. Cir. 1964), the Court of Appeals for the D.C. Circuit summarized the risks to a defendant like Mr. Gerace:

- The defendant may become embarrassed or confounded in presenting separate defenses to separate sets of counts;

- The jury may use evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant which leads to finding guilt on those other unrelated charges; or

- The jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, perhaps equally persuasive element or prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct form only one.

Mr. Gerace is not alleged to be an officer or member of either the Outlaws Motorcycle Club or its support club, the Rare Breed Motorcycle Club. The only allegations in the second superseding indictment that allege any association between Mr. Gerace and the clubs are limited to his legal employment of co-defendant Ermin at

10

Pharoah's Gentleman's Club ("PGC") and conclusory allegations of acquaintance with un-named motorcycle club members who frequented his business[5].

The government does not have evidence supporting the conclusion that Mr. Gerace was a member of a motorcycle club, knew the inner workings of any motorcycle clubs, or subscribed to the same beliefs or participated in any acts of violence associated with the club.

Nonetheless, it has always been a concern that much of the government's proof at trial will revolve around the violent nature of so-called "1%" motorcycle gangs. The defense for Mr. Gerace had previously expressed concern that the government intends to present substantial evidence on the purported operation of motorcycle clubs to try and prove the theory that Crystal Quinn was murdered.

These concerns were magnified within the last week, when the defense learned that the government has utilized "expert" testimony regarding the inner workings of the Outlaws Motorcycle Club.

At this point, the admissibility of this evidence against any defendant is questionable at best, but if the evidence is ultimately permitted due to the motorcycle club membership of Mr. Gerace's co-defendants, he will be subject to a substantial danger

---

[5] The second superseding indictment alleges that the Rare Breed Motorcycle Club "has a relationship with Gerace and PGC" [24] at 6-7, ¶25.

of spillover prejudice which will have direct bearing on a jury's determinations of guilt or innocence.[6]

In a joint trial there would also be other spillover prejudice to Mr. Gerace because co-defendants are alleged to have misled law enforcement about facts concerning Crystal Quinn's murder. Evidence related to whether those co-defendants were candid and truthful will require the introduction and consideration of evidence that is wholly unrelated to Mr. Gerace.

For all of these reasons, Mr. Gerace should have his trial severed from his co-defendants to avoid the serious risk of inadmissible evidence and spillover prejudice against Mr. Gerace.

## CONCLUSION

For all of the reasons set forth above, Mr. Gerace respectfully request this Court order severance pursuant to Federal Rules of Criminal Procedure, Rule 14(a) and direct that Mr. Gerace be tried separately with leave to renew his application for change of vicinage.

---

[6] Furthermore, circumstances may arise in a joint trial where Mr. Gerace would adopt some of the government's proof about motorcycle clubs to show it was unlikely that Mr. Gerace, who had no standing within the motorcycle club, could have the authority to order a hit on Ms. Quinn. This would place Mr. Gerace in an antagonistic position with co-defendants.

12

DATED:      Rochester, New York
            April 6, 2026

                              s/ Mark A. Foti_____
                              Mark A. Foti, Esq.
                              THE FOTI LAW FIRM, P.C.
                              *Attorneys for Defendant Peter Gerace, Jr.*
                              16 W. Main Street – Suite 100
                              Rochester, New York 14614
                              (585) 461-1999
                              mark@fotilaw.com


DATED:      Orchard Park, New York
            April 6, 2026

                              s/ Cheryl Meyers Buth___
                              Cheryl Meyers Buth, Esq.
                              MEYERS BUTH LAW GROUP, PLLC
                              *Attorneys for Defendant Peter Gerace, Jr.*
                              21 Princeton Place, Suite 105
                              Orchard Park, New York 14127
                              (716) 508-8598
                              cmbuth@mblg.us

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 6, 2026, this reply brief is served on all counsel of record by electronically filing the submission with the Clerk of the United States District Court for the Western District of New York using the Court's Case Management/Electronic Case Filing system.

DATED:      April 6, 2026
            Rochester, New York

                                            s/ Mark A. Foti
                                            Mark A. Foti, Esq.