UNITED STATES DISTRICT COURT for the
WESTERN DISTRICT OF NEW YORK

UNITED STATES,

                Plaintiff,

v.

FRANK KNIGHT,

                Defendant.

DEFENDANTS' TRIAL MEMO
AND MOTIONS *IN LIMINÉ*

Case no.: 23-cr-099

TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF STIPULATED/CONTROVERTED FACTS. . . . . . . . . . . . . . . . . . . . . . . . . 3

PROPOSED VOIR DIRE QUESTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

DEFENSE WITNESS LIST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

DEFENSE MOTIONS *IN LIMINÉ*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Motion for sequestration of witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Transactions not involving FRANK KNIGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Hearsay Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Preclusion of evidence re: 404(b) testimony after the conspiracy time frame . . . . . . . . . 8

    Cross on identity of non-testifying informants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Motion to Preclude Expert Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

DEFENSE MOTION TO STRIKE SURPLUSAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

MOTION FOR ADDITIONAL JENCKS ACT AND BRADY/GIGLIO MATERIAL. . . . . . . . 17

FRE 404(b), 608 & 609 IMPEACHMENT OF GOVERNMENT WITNESSES . . . . . . . . . . . . 19

    Rule 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    Rules 608 and 609. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

MOTION FOR THE APPOINTMENT OF COUNSEL FOR WITNESSES. . . . . . . . . . . . . . . . 20

MOTION FOR DISCLOSURE OF JURY VENIRE INFORMATION AND FOR EARLY
       RELEASE OF JURY VENIRE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

MOTION FOR JURORS TO WATCH UNCONSCIOUS BIAS VIDEO . . . . . . . . . . . . . . . . . 23

MOTION TO PRESERVE *CHATRIE* ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

MOTION TO JOIN OTHER MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

INTRODUCTION

The undersigned submits the following memorandum and motions in liminé for the Court's convenience pursuant to the Court's Pretrial Order filed on January 27, 2026 [749]. References in brackets are to docket numbers followed by pages where appropriate.

STATEMENT OF STIPULATED/CONTROVERTED FACTS

Defendant reserves the right to controvert the facts asserted by the Government in its trial brief.  This memorandum addresses additional legal or evidentiary issues expected to arise at trial in response to the government's trial memo.  Defendant reserves the right to address issues raised in the government's trial memo.

PROPOSED VOIR DIRE QUESTIONS

On behalf of Defendant FRANK KNIGHT the undersigned counsel respectfully request that the Court include the following when it makes inquiries of potential jurors during jury selection.

1.  Everyone brings their own life experiences and perspectives to the table – that's natural. We just want to understand what yours are.  Some people start out with the belief that the government would not have brought charges unless the person is guilty.  Others are more suspicious of prosecutors and could more easily come back with a not guilty verdict.  Which are

you closer to?

2.  Some people might say that a lie to a police officer is wrong no matter what it is about and a person who lies to the police is probably guilty of whatever the government claims.  Others might say a lie to a police officer doesn't matter unless it is about something important or something that matters to the investigation the police are pursuing.  Which way do you lean?

3.  In this case you will not decide guilt by association.[1]  You must evaluate each defendant's criminal responsibility separately.  You will hear evidence that applies to one or more defendants but does not apply to all defendants.  Do you think you will have difficulty in deciding not guilty or guilty for each defendant separately?

4.  Do you believe that someone in law enforcement is more likely to tell the truth than someone who is not in law enforcement?

5.  You will likely hear evidence in this case that some of the defendant's gambled or played poker for money.  Does anyone among you have any preconceived ideas about gambling or people who gamble that may impact your ability to be a fair and impartial juror in this case?


DEFENSE WITNESS LIST


FRANK KNIGHT is a defendant and, as such, reserves his right to testify at his jury trial scheduled to begin on June 8, 2026.

Chad Geer (Wellsville, New York)

---

[1]  See e.g. *United States v. Zhong*, 26 F.4th 536, 557-58 (2d Cir. 2022) (collecting cases) ("Expert testimony 'may not invite the jury to find guilt based on a defendant's associations.'")

If called to testify, he would testify to observations he made at the July 27, 2023 card game, to the card games in general, to his knowledge of FRANK KNIGHT and his reputation for truthfulness.

Leslie Jackson (Wellsville, New York)

If called as a witness, he is expected to testify that he is a member of Rare Breed Motor Cycle Club ("RBMC"), that he is familiar with motor cycle clubs in general and RBMC in particular, that RBMC is not a support club for the Outlaws Motor Cycle Club ("OMC"), and that OMC would not seek the assistance of RBMC in intimidating or harming witnesses.

Shawn McCumsky (Wellsville, New York)

If called to testify, he would testify to observations he made at the July 27, 2023 card game, to the card games in general, to his knowledge of FRANK KNIGHT and his reputation for truthfulness.

James Helms (Wellsville, New York)

If called to testify he is expected to testify to his knowledge of FRANK KNIGHT and his reputation for truthfulness.

Brad Speta (Wellsville, New York)

If called to testify he is expected to testify to his knowledge of FRANK KNIGHT and his reputation for truthfulness.

Eric Grabski (Columbia, South Carolina)

If called to testify he is expected to testify the conclusion that Simon Gogolack was in FRANK KNIGHT's home in the early morning hours of July 28, 2023 is unsupported by data or science, is unreliable and would be prejudicial and inaccurately portray the limitations of the data

to a jury of laymen.  He would opine that the government's conclusion is incorrect and impossible to determine based on the data relied upon by the government. [710-1].

Bridgette Knight (Wellsville, New York)

If called to testify she is expected to testify to her observations of Simon Gogolack on August 1, 2023.

DEFENSE MOTIONS <em>IN LIMINÉ</em>

FRE 615 Sequestration

The Federal Rules of Evidence provide, "(a)t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony." The government may exclude a single case agent from the operation of this rule.  See e.g., *United States v. Rivera*, 971 F.2d 876, 889 (2nd Cir. 1992).  Request is made to exclude all witness who will or may be called to testify by the government from the courtroom.  Request is further made that the Court direct that no witnesses who will or may be called by the government be furnished with copies of transcripts of trial testimony.

Transactions Not Involving Frank Knight

A conspiracy does not necessarily arise when one person has criminal interactions with two or more people who have no connection with each other, despite their connection to the original person. *Kotteakos v. U.S.*, 328 U.S. 750 (1946).  The government should not subject, under the guise of a single conspiracy theory, a defendant to voluminous testimony relating to unconnected crimes in which he took no part. *U.S. v. Bertolotti*, 529 F.2d 149, 157 (2nd Cir.

6

1975).  "(T)he only real prejudice is that resulting from the admission of evidence not chargeable to the particular appellant." *U.S. v. Cambindo Valencia*, 609 F.2d 603, 623 (2nd Cir. 1979). Defendant objects to any testimony of criminal activity that does not involve FRANK KNIGHT.

<u>Hearsay Objections</u>

Without limiting the Defendant's ability to raise other objections, for purposes of this trial memorandum we draw the Court's attention to the following potential hearsay objections.

(1)  It appears the government intends to call none of the persons who, defense asserts, would be essential to establish the "agreement" necessary to prove a conspiracy.  See *U.S. v. Cambindo Valencia*, 609 F.2d 603, 623 (2nd Cir. 1979) ("Although it is usual and often necessary in conspiracy cases for the agreement to be proved by inference from acts, the gist of the offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant", quoting Judge Friendly).  To the extent the government attempts to demonstrate the agreement from law enforcement sources a hearsay objection is likely.

(2) To the extent the Government intends to rely on the co-conspirator exception to the hearsay rule (FRE 801(d)(2)(E)).  The Defense may object to it not being "during the course of and in furtherance of the conspiracy" alleged in Count 1 and therefore the hearsay exception would not apply. The Defense would ask the Court to order the Government to provide notice of which alleged co-conspirator statements it intends to rely on in advance of calling the witness so that this issue could be vetted outside the presence of the jury.

(3)  The Government will also attempt to introduce other co-conspirator documents, notes text messages, Facebook messages, names in a contacts list, communications of another co-

7

conspirator's phone. The Defense would ask the Court to order the Government to provide notice of which alleged co-conspirator statements it intends to rely on so that this issue can be vetted before the witness testifies.

Preclusion of evidence re: 404(b) testimony

*U.S. v. Garcia*, 291 F.3d 127, 136 (2nd Cir. 2002) ("To determine if the court properly admitted prior act evidence pursuant to Rule 404(b), we consider whether: (1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction.")  Whatever "agreement" existed to form the conspiracy alleged in the indictment undoubtedly had GERACE as an essential cog.  There will be no evidence that FRANK KNIGHT ever met GERACE or ERMIN or even knows who either of them are except for news reports. *See* e.g. *U.S. v. Bertolotti*, 529 F.2d 149, 155 (2nd Cir. 1975) ("The 'single conspiracy' charged therein was, in substance, a product of the Government's imagination.  Since the indictment charges one overall conspiracy and the proof shows a series of smaller ones.")

The inclusionary rule of FRE 404(b) "is not a carte blanche to admit prejudicial extrinsic act evidence that is offered to prove propensity, or otherwise to allow propensity evidence in sheeps clothing."  *US. V. Zhong*, 26 F.4th 536, 551 (2nd Cir. 2022).  In other words "the government may introduce evidence of uncharged criminal conduct to complete the story of the crime on trial, not to tell an new one." Id. at 552.  Objection is specifically made to any testimony that FRANK KNIGHT is a member of any motorcycle club unless that witness testifies to being a member of that motorcycle club or gang or otherwise has direct, not hearsay, knowledge of

8

FRANK KNIGHT's membership in a motorcycle club or gang.  Likewise objection is made to any testimony that FRANK KNIGHT is an "associate" of a motorcycle club or gang.  Such testimony amounts to an inadmissible conclusion or opinion.

Objection is made to any testimony that a bag containing THC products was found in FRANK KNIGHT's home.  The search warrant did not authorize of the search or seizure of any such contraband.  The evidence is irrelevant to the charges against KNIGHT and prejudicial.  KNIGHT is not a user of THC products.  And the seized material was donated by a local dispensary for a fund raiser that KNIGHT was organizing.

Objection is made to any testimony regarding GOGOLACK's claimed drug dealing, drug use, and kidnapping.  No curative instruction that such testimony has nothing to do with FRANK KNIGHT can remedy the prejudice.

Objection is made to any evidence that GERACE attempted to remove Judge Sinatra from a prior case, that GERACE engaged in bribery, sex trafficking, drug distribution or witness tampering.  No curative instruction that such testimony has nothing to do with FRANK KNIGHT can remedy the prejudice.

Objection is made to any evidence that ERMIN is the international president of the Outlaws Motorcycle Club, that the OMC is a 1% club, or what the government claims it means to be a 1% club. No curative instruction that such testimony has nothing to do with FRANK KNIGHT can remedy the prejudice.

Objection is made to any evidence that RONCONE or HINKLE possessed weapons, have prior criminal histories, possessed or distributed drugs, or are members of Rare Breed Motorcycle Club.  No curative instruction that such testimony has nothing to do with FRANK

KNIGHT can remedy the prejudice.

Defendant reserves the right to object to other 404(b) evidence that the government identifies after the filing of this memorandum

Cross on identity of non-testifying informants

Where disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair trial, the Government's privilege to withhold disclosure of the informer's identity must give way. *Rovario v. U.S.*, 353 U.S. 53 (1957). The Defense reserves its right to argue this issue until the Government's case in chief.

Motion to Preclude Expert Testimony

The Defense objects to the admission into evidence of text or app messages that are not between or among FRANK KNIGHT and others unless one party to the conversation testifies. The Defense objects to law enforcement witness interpreting these messages since it could place the witness in a dual role of expert and lay witness.  "(T)he government may not use expert testimony to 'provide [itself] with an additional summation by having the expert interpret the evidence.'" *US. V. Zhong*, 26 F.4th 536, 556 (2nd Cir. 2022). The Second Circuit has warned trial courts to guard against prejudice to defendants when witnesses occupy such a dual role:  "We are cautious of "the risk that 'dual' police testimony may prejudice defendants at trial, both inflating an officer's expert opinions through his personal involvement in the case and bathing his lay testimony in the aura of 'expertise'." *United States v. Willis*, 14 F. 4th 170, 186 (2nd Cir. 2021) citing Anna Lvovsky, *The Judicial Presumption of Police Expertise*, 130 Harv. L. Rev. 1995, 2025 (2017); see *United States v. Dukagjini*, 326 F.3d 45, 53-54 (2d Cir. 2003) ("We agree that

10

the use of the case agent as an expert increases the likelihood that inadmissible and prejudicial testimony will be proffered.")  Unless the witnesses who authored the various texts are called to subscribe to the texts and their meaning defendant objects to their admission on the basis that a proper evidentiary foundation for the texts will not have been laid. Although lawfully obtained by the Government, the text messages should not be admitted so that the jury can speculate about their meaning.

Furthermore, it is impermissible to permit opinions about coded language without qualifying as an expert when those opinions are based "upon his specialized knowledge and experience as a DEA detective."  See *United States v. Cabrera*, 13 F.4th 140, 150 (2nd Cir. 2021).  Here the government has failed to identify what expert opinions it would ask an agent to render from the coded language, which officer would render it, and what forms the basis for the expert opinion.  It is therefore requested that law enforcement officers not be permitted to render opinions about the contents of conversations in text and app messages.  See *U.S. v. Grinage*, 380 F.3d 746, 750 (2nd Cir. 2004) ("Whether labeled as an expert or not, the risk that he was testifying based upon information not before the jury, including hearsay, or at the least, that the jury would think he had knowledge beyond what was before them, is clear.")

Objection is made to any testimony that FRANK KNIGHT is a member of any motorcycle gang unless that witness testifies to being a member of that motorcycle gang or otherwise has direct, not hearsay, knowledge of FRANK KNIGHT's membership in a motorcycle gang.  Likewise objection is made to any testimony that FRANK KNIGHT is an "associate" of a motorcycle gang.  Such testimony amounts to an inadmissible conclusion or opinion.

Defendant objects to the testimony of John Orlando.  John Orlando has been identified by

the government as a Cellular Analysis Survey Team (CAST) expert.  Based upon the expert

disclosure to date it is believed that the government will claim through John Orlando that Google

provided data that identifies a longitude/latitude point that is coterminous with KNIGHT's home.

That this longitude/latitude point is where GOGOLACK's phone was found in the early morning

hours with July 28, 2023 with an error radius that could put GOGOLACK's phone outside

KNIGHT's home but not in GOGOLACK's own home across the street.  The inference that the

jury will be asked to make is that GOGOLACK's phone was in KNIGHT's residence in the early

morning hours of July 28, 2023.

The case law as well as our own expert's report confirms that the assertions about

location and radius are false and the inference to be drawn is misleading.[2]  "The conclusion made

that the device associated with Google Account ID: 390552410782 was located inside of a

particular location is incorrect and impossible to determine based upon these records alone. It is

my opinion that the conclusions drawn from the Google Location History records in this case are

---

[2] *U.S. v. Smith*, 110 F.4th 817, 823, 824 (5th Cir. 2024) ("Location History data allows Google to 'potentially locate an individual within about sixty feet or less,' and in certain circumstances, down to three meters...However, Location History cannot estimate a device's location with absolute precision.  Instead, when Google reports a device's location, it includes both the source from which the specific data point was derived, and a 'confidence interval' indicating Google's confidence in that estimated location.  The smaller the radius, the more confident Google is in that phone's exact location.  According to Google, it 'aims to accurately capture roughly 68 percent of user within its confidence intervals...In other words, there is a 68 percent likelihood that a user is somewhere inside the confidence interval.'"); *United States v. Chatrie*, 107 F.4th 319, 323 (4th Cir. 2024) (Location History can be more precise than other location-tracking mechanisms, including cell-site location information. But whether Google Location Accuracy is activated or not, Location History's power should not be exaggerated. In the end, it is only an estimate of a device's location. So when Google records a set of location coordinates, it includes a value (measured in meters) called a "confidence interval," which represents Google's confidence in the accuracy of the estimate.7 Google represents that for any given location point, there is a 68% chance that a user is somewhere within the confidence interval.)

prejudicial and would inaccurately portray the limitations of this data to a jury of laymen." [710-1].  The government may attempt to sanitize Agent Orlando's conclusions by saying we will not ask the jury to conclude that GOGOLACK's device was in KNIGHT's home solely on the basis of Agent Orlando's testimony.  But there is no other evidence that permits that conclusion.  For example, in the early morning hours of July 28, 2023 GOGOLACK's phone texts CQ's phone that he is "Top of the rood".  The top of the road would place GOGOLACK further from KNIGHT's home, not closer to it.  Thus the only way to get to the conclusion the government would have the jury reach, that the longitude/latitude coordinates are more reliable than they are, is by providing this misleading expert testimony.  This "expert" testimony cloaks the conclusion that the government wishes the jury to make, that the device is in KNIGHT's home, with an air of reliability that is unjustified and unreliable.  Telling the jury that the gps coordinates land the device in KNIGHT's home is not saved by qualifying the opinion that the error radius is outside KNIGHT's home.  It misleads the jury.

Alternatively, KNIGHT asks for a *Daubert* hearing on the proposed expert testimony.

DEFENSE MOTION TO STRIKE SURPLUSAGE

Federal Rule of Criminal Procedure 7(d) provides that "(u)pon the defendant's motion, the court may strike surplusage from the indictment."  Motions to strike surplusage from an indictment are to be granted only where the challenged allegations are not relevant to the crime charged <u>and</u> are inflammatory and prejudicial.  *United States v. Ferguson*,  478 F. Supp. 2d 220, 235 (Dist. Conn. 2007).  The following statements in the second superseding indictment [24]

satisfy both the irrelevant and inflammatory category.

On or about June 30, 2023, RONCONE and KNIGHT met in-person.

P. 16, ¶27.

On the morning of July 24, 2023, KNIGHT and HINKLE exchanged a cellular telephone call, which lasted approximately 1 minute.

P. 17, ¶ 33.

Later that day, KNIGHT and HINKLE attempted to communicate by cellular telephone two additional times.

P. 17, ¶ 34.

On or about the evening of August 1, 2023, KNIGHT and HINKLE communicated with each other via cell phone for approximately three-and-a-half minutes.

P.22, ¶ 55.

On August 2, 2023, at approximately 8:15 a.m., HINKLE and KNIGHT communicated with each other by cell phone.

P.22, ¶ 56.

On August 3, 2023, at approximately 4:45 p.m., KNIGHT had a phone call with RONCONE that lasted for approximately 14 minutes.

P. 23, ¶ 63.

At approximately 6:11 p.m., RONCONE called KNIGHT and they spoke for approximately two minutes.

P. 24, ¶ 66.

On August 5, 2023, KNIGHT and RONCONE spoke on the phone for approximately 12

minutes.

P. 24, ¶ 69.

On or about August 29, 2023, KNIGHT and RONCONE spoke via cell phone.

P. 27, ¶ 83.

On or about September 4, 2023, KNIGHT and RONCONE spoke via cell phone.

P. 27, ¶ 85.

On or about September 8, 2023, KNIGHT and RONCONE spoke via cell phone.

P. 27, ¶ 86.

On or about September 9, 2023, KNIGHT and RONCONE spoke via cell phone.

P. 27, ¶ 87.

On or about September 15, 2023 KNIGHT and RONCONE spoke via cell phone twice.

P. 28, ¶ 88.

On or about October 7, 2023, KNIGHT and RONCONE spoke via cell phone.

P. 28, ¶ 89.

On or about October 15, 2023, KNIGHT and RONCONE spoke via cell phone.

P. 28, ¶ 90.

On or about October 16, 2023, KNIGHT and RONCONE spoke via cell phone.

P. 28, ¶ 91.

On October 26, 2023, KNIGHT used a temporary phone to communicate with RONCONE via phone call approximately 12 times.

P. 29, ¶ 99.

On October 28, 2023, KNIGHT and RONCONE communicated telephonically.

P. 30, ¶ 100.

On October 29, 2023, KNIGHT and RONCONE communicated telephonically.

P. 30, ¶ 101.

On October 30, 2023, KNIGHT and RONCONE communicated telephonically for approximately 51 minutes.

P. 30, ¶ 102.

On October 31, 2023, KNIGHT and RONCONE communicated telephonically.

P. 30, ¶ 103.

While the content of these communications may be relevant the fact of them is not.  The content of these communications will not be offered at trial.  The fact of these communications is relevant to no disputed fact in the case.  It is not disputed that KNIGHT knows RONCONE or HINKLE.  It is not disputed that KNIGHT is friends with RONCONE or HINKLE.

The inclusion of these conversations in the Indictment is inflammatory because it is intended to invite the jury to speculate that something nefarious is occurring during these conversation without any proof.

"An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *United States v. Pauling*, 924 F.3d 649, 656 (2nd Cir. 2019), (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2nd Cir. 2007)).  "Impermissible speculation, on the other hand, is 'a complete absence of probative facts to support the conclusion reached.'" *Id*., (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)).  There is endless speculation that the jury will be invited to make in this case.  For example, the jury will be asked to speculate that GERACE asked ERMIN to hire someone to kill

CQ without any proof that the contents of any conversation actually occurred.  The government will ask the jury to speculate that the unproven conversation between GERACE and ERMIN caused ERMIN to have a conversation with someone else without any evidence of that conversation.  Then the jury will be asked to speculate that the unproven conversation between ERMIN and someone else caused that someone else to have a conversation with yet someone else which conversation will likewise have to be speculated upon.  And finally the jury will be invited to speculate that someone had a conversation with GOGOLACK about CQ that ultimately led to her death.  This invitation to speculation about nefarious conversations should not be formalized as part of the Indictment presented to the jury.

## MOTION FOR ADDITIONAL JENCKS ACT AND BRADY/GIGLIO MATERIAL

The Government previously provided Jencks Act/3500 Material pursuant to the Court's trial order. The trial in this case is scheduled for June 8, 2023.   We anticipate the Government has interviewed witnesses since 3500 disclosure and will continue to do so. We request any additional witness statements not previously provided be given to the Defense on a rolling basis as the Government comes into possession of them. The Defense moves for an Order of this Court directing the government to immediately (1) disclose all Jencks material, including all agent notes, reports of investigation, FBI 302's and DEA 6's, and Grand Jury testimony; and (2) produce material favorable to the defense pursuant to *Brady v.Maryland*, 373 U.S. 83 (1963), and its progeny.

As this Court is well aware, the Defense needs these materials to meet our Frye/Lafler

obligations and so that we may effectively review and utilize these materials to file the necessary motions in limine, compile our exhibits, and determine our witnesses, among other pretrial obligations.

Defense further asserts that there is likely jail surveillance of some or all of the individuals in the claimed conspiracy that fail to include FRANK KNIGHT as a party or fail to otherwise implicate FRANK KNIGHT in the charged conspiracy. Defense asserts that such absence from their statements or other evidence (e.g. phone records) connecting FRANK KNIGHT to a conspiratorial agreement with Peter Gerace is *Brady* material and, the existence of any such evidence that has not been turned over, would constitute a *Brady* violation. Long before the Due Process Protections Act of 2020 the Second Circuit recognized the problem to defendants by the late disclosure of Brady material. "The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case." *Leka v. Portundo*, 257 F.3d 89, 102 (2nd Cir. 2000) citing *U.S. v. Polisi*, 416 F2d 573, 578 (2nd Cir. 1969) ("we must look to the prejudice to the accused of the suppression, in its effect upon his preparation for trial.")

Further, I believe the agents were preparing search warrant affidavits as soon as the day after CQ's death wherein they intimated that she was killed because she was a witness. Any such affidavits would strongly suggest a rush to judgment and therefore would constitute *Giglio* material. Any lack of standing does not save the government's failure to turn over such *Giglio* material to all defendants.

FRE 404(b), 608 & 609 IMPEACHMENT OF GOVERNMENT WITNESSES

Rule 404(b)

Rule 404(b) provides that evidence of other acts "may be admissible" to prove (among various examples) a witness's "motive" or "intent." See FRE 404(b)(2). The Second Circuit has stated that it believes that "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield" under 404(b) "need not be as restrictive as when a prosecutor uses such evidence as a sword." *United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984). The Second Circuit recognized in Aboumoussallem that when a defendant "offers similar acts evidence of a third party to prove some fact pertinent to the defense[,] . . . the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense." 726 F.2d at 911-12 (internal citations omitted).  Here, the "other acts" evidence of government cooperators may be relevant to the existence of their independent intent and motive, derived not from a desire to further any alleged conspiracy with FRANK KNIGHT, but from their own criminal objectives.  Proof of these acts may be essential to the defense, and admissible under Rules 404(b)(2) and 403.

Rules 608 and 609

Rule 608 allows for the introduction of specific instances of conduct on cross-examination if "probative of the character for truthfulness or untruthfulness" of a witness. See Rule 608(b)(1). In addition, "[e]vidence that happens to include prior misconduct may be admissible . . . when it is offered to show the witness' possible bias or self interest in testifying. In such a case, the adverse party does not have to accept the witness' testimony, but may offer

extrinsic evidence to rebut it." *United States v. Noti*, 731 F.2d 610, 612-13 (9th Cir. 1984) (internal citations omitted); see also *United States v. Schwab*, 886 F.2d 509, 511 (2d Cir. 1989). Prior conduct of a witness that resulted in a criminal conviction is addressed by Rule 609, which considers factors including the seriousness of the conviction, the time that has passed since the conviction, and whether the conviction involved a crime with elements that require "a dishonest act or false statement." See Rule 609.

The Defense may question the government's witnesses about felony convictions.  The Government is already in possession of the criminal rap sheets for their witnesses. Further, the defense intends to question witnesses about acts that reflect on their character for truthfulness.

Motion for Government Disclosure of Evidence it intends to offer under FRE 404(b).

To the extent not already provided defendant requests the government to disclose any evidence of defendant's uncharged misconduct including a description of any expected testimony that it intends to introduce at trial pursuant to Fed.R.Evid. 404(b).  FRE §403. *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997) ("'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.")

MOTION FOR THE APPOINTMENT OF COUNSEL FOR WITNESSES

The Defense moves for the appointment of counsel for witnesses who can fairly be considered unindicted co-conspirators and who may still be unrepresented by counsel. These witnesses would have a Fifth Amendment right against self-incrimination absent a formal grant

of immunity from the Government.  The parties cannot call a witness who it knows will simply invoke his/her Fifth Amendment privilege once on the stand before the jury.


## MOTION FOR DISCLOSURE OF JURY VENIRE INFORMATION
## AND FOR EARLY RELEASE OF JURY VENIRE


Pursuant to the Jury plan for the United States District Court for the Western District of New York dated March 28, 2025, the jury venire may be made available to the parties upon written request to the presiding Judge. Consistent with the practice in our District the name and personal information concerning prospective jurors has been made available at least a week before trial. This practice is exceptionally helpful to decipher any conflicts or issues and expedite jury selection. To that end, we respectfully request that this Court direct the Jury Administrator for this Court to produce and disclose the jury venire to all parties as soon as it is able. The Defense also moves for the following information regarding the jury venire:

Article III, § 2 of the Constitution and the Sixth Amendment to the Constitution both guarantee the right to trial by jury. See also *Ramos v Louisiana*, 140 S.Ct. 1390, 1395 (2020) (appearance of right to jury trial in two sections of the Constitutions is a mark of its importance). The Sixth Amendment further guarantees the defendants' right to "... trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."  The Supreme Court has long recognized that "... the presence of a fair cross section of the community on venires, panels, of [sic] lists from which petit juries are drawn is essential to the  fulfillment of the Sixth Amendment's guarantee of an impartial jury

trial in criminal prosecutions." *Taylor v Louisiana*, 419 U.S. 522, 526 & 526-538 (1975). Taylor's holding has been repeatedly reaffirmed, *Berghuis v Smith*, 559 U.S. 314, 319 (2010); *Holland v Illinois*, 493 U.S. 474, 477 (1990); *Duren v Missouri*, 439 U.S. 357, 363, 364 (1979), and is now codified at 28 U.S.C. §§ 1861 and 1862.

To establish a prima facie violation of the fair cross section requirement, a defendant must show that: 1) a "Distinctive" group from the community has been excluded from the venire; 2) "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community"; and, 3) that the jury selection procedure led to the systematic exclusion of members of the distinctive group. *Duren*, 439 U.S. at 364. A defendant need not belong to the excluded distinctive group in order to bring a challenge to the composition of a venire. *Holland*, 493 U.S. at 476-477; *Peters v Kiff*, 407 U.S. 493. 504 (1972). Courts have treated both gender and racial or ethnic /national origin groups as "distinctive." E.g.s, *Test v United States*, 420 U.S. 28 (1975) ("people with Spanish surnames" and "blacks"); *Taylor*, 419 U.S. 525 (woman); *Duren*, 439 U.S. at 360-371 (same); *Peters*, 407 U.S. at 497-504 (African-Americans); *United States v Miller*, 116 F. 3d 641, 656-658 (2nd Cir. 1997); *United States v Brown*, 116 F. 3d 466 at *1-2 (2d Cir. 1997) (unpublished) (African-Americans and Hispanics); United States v Jackman, 46 F. 3d 1240, 1246 (2d Cir. 1995) ("Blacks and Hispanics"); see also §1862 (prohibiting exclusion from service on grand or petit juries because of "race, color, religion, sex, national origin, or economic status."). While a defendant must establish a prima facie case of systematic underrepresentation to place the burden of rebuttal on the Government, *Berghuis*, 559 U.S. at 332, he need not establish a prima facie case or make any showing of likely success in order to obtain jury records that might substantiate

a fair cross section claim. §1867 (f) ("The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except... as may be necessary in the preparation or presentation of a motion" challenging the jury selection process). The Supreme Court has said of §1867(f) that:

> The provision makes clear that a litigant has essentially an unqualified right to inspect jury lists. It grants access in order to aid parties in the 'preparation' of motions challenging jury-selection procedures. Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge. Thus, an unqualified right is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring 'grand and petit juries selected at random from a fair cross section of the community.'

Test, 420 U.S. at 30 (emphasis supplied; citation omitted). See also *Miller*, 116 F. 3d at 658 ("... a defendant plainly has a right to discovery" of extant jury records); *Brown*, 116 F. 3d at *1(chiding defendant for not seeking to obtain "relevant grand jury lists containing information regarding the ethnicity of the members of his grand jury pool" even thought he had a "right" to do so); *United States v Royal*, 100 F. 3d 1019, 1025 (1st Cir. 1996) ("Because the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions."); *United States v Diaz*, 236 F.R.D. 470, 477 (N.D. CA June 30, 2006) (same).

Based of the foregoing the defendants ask for early release of jury venire information.

## MOTION FOR JURORS TO WATCH UNCONSCIOUS BIAS VIDEO

In 2017, the Western District of Washington began showing a video to all prospective

23

jurors aimed at addressing the problem of "unconscious bias." The video is approximately 11 minutes, and is available at:

https://www.wawd.uscourts.gov/jury/unconscious-bias

The jury selection process gives the Court and attorneys the opportunity to remove jurors who have explicit biases - people who hold obvious prejudices, or preconceived ideas about particular ethnicities, or criminal defendants in general.  However, implicit, or unconscious bias is something different. Unconscious biases are subtle attitudes and ideas that can permeate our impression of someone without our even knowing it.  *See* Jerry Kang, Judge Mark Bennett, Devon Carbado, Pam Casey, Nilanjana Dasgupta, et.al,. Implicit Bias in the Courtroom, 59 UCLA L. Rev. 1124, 1126 (2012). Judge Mark W. Bennett, U.S. District Judge, N.D. Iowa, "Implicit biases are the plethora of fears, feelings, perceptions, and stereotypes that lie deep within our subconscious, without our conscious permission or acknowledgment. Indeed, social scientists are convinced that we are, for the most part, unaware of them. As a result, we consciously act on such biases even though we may consciously harbor them."  Judge Mark W. Bennett, Unraveling the Gordian Knot of Implicit Bias Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions, 4 Harv.L. & Pol'y Rev. 149 (2010).

Since 2017, District Courts around the country have begun showing the Western District of Washington Unconscious Bias video, or have produced their own video to address this issue: See e.g. *United States v Huerta-Zuniga*, No. 2:20-CR-00122-DCN, 2021 WL 2109188, at *6 (D. Idaho, May 25, 2021) (granting unopposed request to show unconscious bias video and noting that video was already part of "routine jury procedures"); *United States v Dwight Frederick*

24

*Barnes*, No. 18-CR-120, Docket No. 180 (D. Minn., November 5, 2019); Northern District of California, Introductory Video for Potential Jurors, available at https://cand.uscourts.gov/attorneys/unconscious-bias-video-for-potential-jurors/ (last visited August 30, 2021); but see, *United States v Mercado-Garcia*, 989 F. 3d 829 (10th Cir. 2021) (Court did not abuse its discretion in refusing to play unconscious bias video).  In the Western District of New York, Chief Judge Wolford indicated that our District had obtained permission from the Western District of Washington to use the unconscious bias video, and that she would be showing it to prospective jurors in trials in her courtroom.  While we expect that any jurors with explicit biases will be excused from jury duty, we respectfully request that the Court show the unconscious bias video from the Western District of Washington to the prospective jurors, and that the Court include the requested instructions on unconscious bias in the jury charge.

MOTION TO PRESERVE <em>CHATRIE</em> ISSUE

Consistent with extant case law defendant did not move to suppress on Fourth Amendment grounds any evidence obtained through geolocation warrants.  *United States v. Chatrie*, 107 F.4th 319 (4th Cir. 2024).  However, it has come to the attention of the undersigned that the Supreme Court has taken up the issue and a decision is expected in June of this year.[3] While FRANK KNIGHT has moved to preclude the expert testimony of Agent Orlando which is based upon the geolocation data, a motion to suppress on Fourth Amendment grounds was not

---

[3] https://en.wikipedia.org/wiki/Chatrie_v._United_States ("Oral arguments are scheduled for April 27, with a decision expected by the end of June 2026.")

previously made because extant law did not support it.  That may change, adding an additional basis upon which to preclude Agent Orlando's testimony.


MOTION TO JOIN OTHER MOTIONS


All defendants motions are due simultaneously.  Defendant KNIGHT hereby requests an opportunity to review other defendants' motions and join in said motions to the extent they may be specifically applicable to KNIGHT.


Dated: April 17, 2026
Erie County, New York                    Attorneys for KNIGHT

BARRY J. DONOHUE, ESQ.
By:  /s/ Barry J. Donohue
Barry J. Donohue, Esq.
77 Broad Street
Tonawanda, New York 14150
(716) 693-0359
e-mail: barry@donohuelaw.com

Matthew R. Lembke
CERULLI MASSARE & LEMBKE
45 Exchange Blvd., Suite 925
Rochester NY 14614
Phone:  585-454-3323
e-mail: www.mattlembke.com

To: Joseph Tripi, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5839
e-mail: joseph.tripi@usdoj.gov

Nicholas Cooper, AUSA
138 Delaware Avenue

Buffalo, New York 14202
(716) 843-5712
e-mail: nicholas.cooper@usdoj.gov

Casey Chalbeck, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
e-mail: casey.chalbeck@usdoj.gov

NAME OF COUNSEL AND ASSISTANTS FOR KNIGHT


BARRY J. DONOHUE, ESQ.
77 Broad Street
Tonawanda, New York 14150
(716) 693-0359
e-mail: barry@donohuelaw.com

Assistant: Jessica Wood

Matthew R. Lembke
CERULLI MASSARE & LEMBKE
45 Exchange Blvd., Suite 925
Rochester NY 14614
Phone:  585-454-3323
e-mail: www.mattlembke.com

NAME AND ADDRESS OF DEFENDANT

FRANK KNIGHT
287 Scott Ave.
Wellsville, New York 14895