# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

JOHN T. ERMIN, et al.,

Defendants.

**MOTION TO ADJOURN THE TRIAL DATE, FOR EXTENSION OF TIME, AND FOR CHANGE OF VICINAGE**

23-cr-99

_____

PLEASE TAKE NOTICE, that defendant Ermin moves for adjournment of the presently-scheduled trial date and for change of vicinage for the reasons set forth in the attached affirmation.

Dated: April 23, 2026

Yours,

s/Donald M. Thompson
**EASTON THOMPSON KASPEREK SHIFFRIN LLP**
16 West Main Street, Suite 243
Rochester, New York 14614
(585) 423-8290

1

# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

      -vs-

JOHN T. ERMIN, et al.,

                Defendants.

**ATTORNEY'S AFFIRMATION**

23-cr-99

Defendant Ermin joins in the arguments and authorities and representations included in defendant Gerace's motion seeking an adjournment of the trial date based on the volume and timing of discovery (Dkt. 873). Pursuant to the Court's text order (Dkt. 874) counsel for Mr. Ermin is available for the proposed adjourned trial date proposed by Mr. Gerace.

Defendant Ermin also joins in defendant Gerace's Supplemental Pretrial Memorandum and the relief requested by that Memorandum (Dkt. 868).

Defendant Ermin further moves for an extension of time to respond to the government's 121 page pretrial memorandum and motions in limine, for the reasons set forth below.

Local Rule 12(c) provides that the length of motions "shall not exceed twenty-five (25) pages in length . . .". This is the second time the government has submitted a filing 5 times the length provided for by the local rule without any prior notification to the parties and without first making an application to exceed the page limit with no prior notification and no application for permission to exceed the page limit.

2

It is unclear whether Local Rule 12(c)'s page limit strictly applies to this filing – but it at least reflects a preference by the judges in the district for the expected or usual length of motions and responses.  Even if it does not strictly apply the government's position – opposing defendant's request for extension of time to respond, speaks of gamesmanship and sharp practice.  When the Court sent the abbreviated schedule for the filing of responses, the government did not advise the Court or the parties of the expected length of its submission and the consequent possibility that additional time might be required to respond.

As indicated in defendant Gerace's motion, the government recently provided some 12,000 pages of Jencks material, significant portions of which are referred to in the government's pretrial memorandum and motions in limine which the defendants are seeing for the first time and which need to be reviewed to respond appropriately.  According to the government, there is an unspecified allegedly lesser additional amount that has not yet been provided.[1]  The government's standard platitude that it should be lauded for providing Jencks Act materials "early" is facially disingenuous.

The government (with presently four attorneys assigned to this case and few other cases), presumably aware of the volume of materials that is has possessed much of for years and has been able to review and consider at its leisure during that time, cannot now, when the defendants are directed to respond to and presumably aware of the expected extent of its

---

[1] Along these lines, the government represented that it would provide a separate production of those materials already produced and not subject to the most restrictive terms of the most recent protective order (requiring defendants to review such materials only in the presence of counsel or in the custody of the marshal) to facilitate the defendants' review of the other, less-sensitive materials. It hasn't done so.

pretrial memorandum has, in a manner insuring a tactical advantage made its filings and disclosures at a time when the defense is incapable of effectively responding.

The government is entitled to no credit for provided materials "early" at the time when the defense cannot review the volume of materials provided (hence, Gerace's motion for adjournment of the trial date). Nor is it any answer that under the rule, the government could hold back the materials until after the witnesses direct testimony. First, that was tried in this district – once – with unfavorable consequences for the government, so the threat is an empty one. Second, given the volume of materials and the time in which to review them while simultaneously completing all of the other necessary pretrial preparation, the effect is not significantly different: physical possession of material that defendants and defense counsel have not had and will not have a reasonable opportunity to review.

Nor is it any answer that the defendants each have two counsel. Two attorneys, even dividing responsibilities, can only review so much, so quickly. Beyond simply reviewing the information, the materials require careful thought and additional investigation in response. The Court is familiar with most of the defense counsel involved in this case. None are shirkers, all have a prodigious capacity for work and work product output. But there's a limit.

Something has to give – the opportunity to effectively respond to the government's pretrial memorandum, the opportunity to review and react to government's pretrial disclosures – all of which have not yet been provided, or the defendants' constitutional rights to the effective assistance of counsel, due process, and a fair trial.

Defendant Gerace's motion (Dkt. 873) has addressed the need for adjournment of the trial date, which we have joined and have further argued above.

More immediately, there no possibility that counsel can file a constitutionally effective response to the government's pretrial memorandum and motions in limine by tomorrow, the date set by the Court's scheduling order for such response.

In addition, and in light of defendant Gerace's motion for adjournment of the trial date, defendant Ermin reasserts his previous motion (that was later withdrawn by him but not by defendant Gerace) for a change of vicinage, for the reasons set forth below.

On  May 7, 2025, Mr. Ermin joined in defendant Gerace's motion for, among other relief, change of vicinage (Dkt.s 410, 416, 428).  The government did not object to such motion (Dkt.s 410, 518, 527).

On December 27, 2024, Mr. Gerace was convicted following a jury trial in this court (Vilardo, J.) of the charges contained in indictment 19-cr-227 (Dkt. 1426).  August 11, 2025, Mr. Gerace's sentencing date in that case was scheduled for October 31, 2025 (19-cr-227, Dkt. 1609).

On August 22, 2025, the trial date in this case was scheduled for June 8, 2026 (23-cr-99, Dkt. 575).

On October 21, 2025, Mr. Gerace's sentencing in the 19-cr-227 case was adjourned to February 12, 2026 (19-cr-227, Dkt. 1638).

On January 12, 2026, Mr. Ermin filed a motion withdrawing his previous motion for change of vicinage, on the grounds that at that point, the volume of media coverage had decreased exponentially, the defendant's interest in friends and family members being able to conveniently attend and observe his trial, the ease of accessibility during trial to relevant locations and potential witnesses by the defense team, and the makeup of the other defense teams (being comprised primarily of attorneys from the Buffalo area).  Based on these considerations, Mr. Ermin withdrew his previous motion for change of vicinage (Dkt. 732).

At a court appearance on January 21, 2026, the Court polled all counsel regarding the change of vicinage issue.  Only Mr. Gerace persisted in his motion for change of vicinage – all other defendants either took no position or requested that this case be tried in Buffalo. The Court, relying in part on the positions of the defendants, denied the motion for change of vicinage and ordered that the trial be held in Buffalo (Dkt.s 739, 740).

On January 23, 2026, two days after change of vicinage was denied, Mr. Gerace's sentencing in 19-cr-229 was adjourned to April 9, 2026 (19-cr-227, Dkt. 1663) then, on March 31, 2026, was adjourned again to April 24, 2026 (19-cr-227, Dkt. 1710).  On April 20, 2026, the Court adjourned that date with the advisement that the "Court will schedule a new date for sentencing in the immediate future" which would only be closer in time to the start of the trial in this case.

Given this schedule, the prospective jurors in this case may receive their jury summons and supplemental juror questionnaires at or close in time to Mr. Gerace's

sentencing on 19-cr-227, in the middle of the unavoidable local saturation of prejudicial media that is sure to be generated relating to that sentencing proceeding.

If this case remains in Buffalo, based on the expected length of this trial, the requested adjournment would result in this case interfering with the trial in *United States v. Gendron*, 22-cr-109, scheduled to begin on August 17, 2026 (22-cr-109, Dkt. 407), potentially overburdening the capacity of the court and court personnel.

Other than for convenience sake, no defendant would be prejudiced by the case being relocated to Rochester. The pretrial publicity focusing on Mr. Gerace's other matters and the Outlaws Motorcycle Club would prejudice only Mr. Gerace and Mr. Ermin were the case to remain in Buffalo. Mr. Ermin was previously willing to accept that other, much more limited prejudice to ease the ability of friends and family to attend his trial. But this more recent, exponentially greater prejudice is another thing altogether that requires reevaluation of that position (as well as, the defense contends, reevaluation of defendant's motion seeking a severance from Mr. Gerace at trial).

Well before much of the media coverage referred to in the defendants' original motion for change of vicinage, the government argued that the extensive publicity experienced at that point warranted, and in fact compelled a change of vicinage (*see* Dkt. 243, 58-60).

Mr. Ermin zealously moves for change of vicinage to avoid the overwhelming and prejudicial publicity that has saturated the media market in the western half of the Western

District of New York, with more to come as Mr. Gerace is sentenced on 19-cr-227, but divided largely and conveniently for these purposes along media outlet coverage lines.

The government has painted, and continues to paint Mr. Ermin with a broad brush in the media as associated with Mr. Gerace in the absence of any evidence of association beyond the employer-employee relationship through Pharaoh's Gentlemen's Club. The government has repeatedly and publically stressed Mr. Ermin's status as a leader of the Outlaws Motorcycle Club asserting, essentially, that he is a leader of a criminal band who, through him, are available to do Mr. Gerace's bidding and who have a propensity to engage in criminal conduct, separate and apart from any actual evidence of criminal conduct in this case. The government sounds these themes again in its pretrial memorandum, again attempting publically to create a nexus where none exists between the conduct charged and actions consistent with or in furtherance of membership in the Outlaws Motorcycle Club.

The government has also attempted to portray Mr. Ermin, as a member of the Outlaws and consistent with that membership, as physically violent by, for example, publically misrepresenting his involvement in prior acts of violence when attempting (ultimately successfully) to secure his pretrial detention (Dkt. 2, 29-31).

But the print and broadcast media in the eastern half of the Western District of New York has not covered Mr. Gerace's proceedings at all – not his multiple indictments and court appearances, not his trial, not his personal media interviews, or the salacious details serialized in the Buffalo and surrounding area's media concerning his family relationships,

8

business, personal contacts with local high-profile individuals, and alleged association with Italian Organized Crime members.[2]

Insofar as Mr. Gerace has contributed to the media storm in this, and in his prior cases – he is responsible for at least some, but by no means all of the media attention these cases have generated, which forms an additional ground for Mr. Ermin's severance motion.  He is responsible for none of the media attention to his case.

Mr. Ermin therefore respectfully requests that the relief requested in the motions above and those in which he has joined be granted and further, based on all of the prior arguments and authorities, and those cited above in favor of such relief.

WHEREFORE, defendant Ermin respectfully requests that the Court grant an adjournment, change of vicinage, and such further relief as the Court deems just and proper.

Dated: April 23, 2026

<div style="margin-left:50%">

*/s/ Donald M. Thompson*
Donald M. Thompson, Esq.
**EASTON THOMPSON KASPEREK SHIFFRIN LLP**
Attorney for Defendant John Ermin
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
(585) 423-8290
www.etksdefense.com
dmthompson@etksdefense.com

</div>

---

[2] It is no overstatement to say that virtually no one in Rochester is even aware of Joseph Todaro, has heard of his alleged association with Italian Organized Crime, knows he is related to Mr. Gerace, or is aware that Mr. Gerace was pictured in a T-shirt bearing the name of Mr. Todaro's pizza parlor. These facts would not mean anything to the average Rochester juror. The same cannot be said of the Buffalo jury pool.

George V. C. Muscato, Esq.
MUSCATO, DIMILLO & VONA, LLP
*Attorney for Defendant John Ermin*
107 East Avenue
Lockport, New York 14094
(716) 434-9177
georgemuscato@gmail.com