IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

          **23-CR-99-EAW**

 v.

SIMON GOGOLACK

## POST-HEARING MEMORANDUM OF LAW IN SUPPORT OF SUPPRESSION OF DEFENDANT SIMON GOGOLACK'S STATEMENTS TO POLICE

_____

        Dated:  April 24, 2026

  By: NICHOLAS T. TEXIDO, ESQ.
   69 Delaware Avenue, Suite 1100
   Buffalo, New York 14202
   (716) 306-5251
   nick@texidolawwny.com

  PETER M. KOOSHOIAN, ESQ.
  80 W. Huron Street
  Buffalo, New York 14202
  (716) 854-1300
  pk@bufflaw.com

Attorneys for Defendant Simon Gogolack

## INTRODUCTION

Defendant Simon Gogolack moved to suppress his statements to police on several grounds, including that the police impermissibly applied a "two-step" interrogation process in questioning him.  On March 27, 2026 and March 30, 2026, a fact-finding hearing was conducted.

This memorandum is submitted in support of the defendant Simon Gogolack's motion to suppress his statements to the police.  The defense maintains all arguments made in that motion, and would also respectfully ask the Court to consider the following when rendering its decision.

## STATEMENT OF FACTS

On August 2, 2023, after learning of Quinn;s death, FBI Agents Adam Penna and Jason Kammeraad learned that Simon Gogolack would be driving to Depew, New York to return Quinn's vehicle to her mother.  H 95.[1]  The agents contacted the Depew Police Department, and Lieutenant Aleksander Wojciechowicz was the

---

[1] Numbers in parentheses preceded by the letter "H" refer to pages in the transcript of the hearing held on March 27 and 30, 2026.

responding officer.  H 21; Government Exhibit 3.  Wojciechowicz conversed with the agents both in-person and by telephone, and could not recall the content of their conversations.  H 55.  He ultimately acknowledged that they had discussed the case with him to some extent, as he knew who the victim's mother was when he first called the agents immediately after the traffic stop.  H 56.  He later admitted that he knew that Crystal Quinn had died prior to the stop.  H 63.

At around 7:05 P.M., the Lieutenant stopped the vehicle, ordered Gogolack out of the vehicle, and arrested him, activating his body camera footage at 7:05 P.M. H 30.  The Lieutenant manually deactivated his body worn camera at 7:12 P.M., and did not turn it back on for 65 minutes, until 8:17 P.M.  H 37.  Wojciechowicz could not recall whether the body worn camera policy of his department allowed him to deactivate his camera, nor why he turned it off in the first place, nor why he turned it back on at 8:17 P.M..  H 59; H 63.

During this 65-minute gap, the Lieutenant spoke to Simon Gogolack; however, he could not recall what about.  Wojciechowicz testified that he could not definitively say that he did not speak with Gogolack during the unrecorded period. H 34.  Similarly, Wojciechowski could not recall one way or another whether other officers spoke to Gogolack during that period.  H 62.  Special Agent Kammeraad did

speak with Gogolack at the scene.  H 104.  He admitted to asking Gogolack questions, and could not remember for how long nor specifically what he asked him. H. 233; H 190.

During this gap, Gogolack remained at the scene, in the rear of a police vehicle, handcuffed.  Ultimately, Wojciechowicz activated his body worn camera for the transport of Gogolack to the station.  During transport, Wojciechowicz requested that Gogolack move over in the rear seat so he could hear him better, and then immediately started interrogating him about the facts and circumstances of the arrest. Government Exhibit 1;  H 64.

At around 9:30 P.M., the Special Agents read *Miranda* warnings to Gogolack at the Depew Police Department, and Gogolack made further statements thereafter.

## THE POLICE ENGAGED IN A DELIBERATE TWO-STEP INTERROGATION PROCESS

Where a police officer intentionally withholds Miranda warnings and questions a suspect, a later post-warning admission may be inadmissible.  Missouri v. Seibert, 542 U.S. 600 [2004].  The burden is on the prosecution to disprove that no such procedure was employed.  United States v. Capers, 627 F.3d 470 [2d. Cir. 2010].  Here, the Government failed to carry that burden in large part due to their witness' inability to recall the content of several important conversations.

Lieutenant Wojciechowski turned off his body camera for 65 minutes, and the testifying officers did not remember who had talked to Gogolack nor what they talked about during that time period.  Agent Kammeraad also asked Gogolack questions during this time period and could not remember the specifics.  H 190; H 233.  This is critical information, and was necessary in order for the Government to carry its burden of proof.  Without this information, the Court cannot make the requisite independent assessment of whether the circumstances indicate an intentional two-step interrogation on the part of either law enforcement agent.

Moreover, the Second Circuit has recognized that the inquiry will often rely heavily on objective evidence because the intent of the officer will rarely be candidly admitted. Id. This Court must, therefore, scrutinize the actions of law enforcement and make an independent determination of whether the *de facto* two-step method used was intentional or accidental.

The actions of the agents and Lieutenant Wojciechowicz speak for themselves; the Government has not disproven the inference, at the very least, that Lieutenant Wojciechowicz was attempting to assist the Government in its investigation while re-positioning him for better audibility and questioning him regarding the circumstances of the case. Given the Second Circuit's acknowledgement that the intent of the officer will rarely be candidly admitted, the inference exists that Wojciechowicz, taking his task from the FBI very seriously, was attempting to assist when he was questioning Gogolack in the rear of the police vehicle.

Thus, even if the Court credits the Agents' testimonies that they did not instruct Lieutenant Wojciechowicz to question Gogolack, that does not end the inquiry. Wojciechowski's questioning and actions speak for themselves and are all depicted on his body worn camera. Government Exhibit 1.

The Government is likely to argue that the fact that different officers questioned Gogolack during the pre-Miranda and post-Miranda questioning.  See United States v. Carter, 489 F.3d 528 [2d Cir. 2007].  However, here, the agents who conducted the ultimate interview were present at the scene, and made themselves known to Mr. Gogolack at the time of the prior questioning.  Moreover, one of them participated in questioning of Gogolack in the rear of the police vehicle, pre-Miranda, during the nonrecorded timeframe.  It logically follows that, in Gogolack's mind, the agents would know all of the beans he had already spilled to the Depew Lieutenant and to one of the agents themselves.  This was not a situation where a change in circumstances or officers created a 'new and distinct experience' for Gogolack at the Depew Police Station.  See, Bobby v. Dixon, 565 U.S. 23 [2011].

Moreover, in Carter, the second interrogating officer was unaware of what Gogolack had said during the first interview.  The Government has not proven here that Agents Kammeraad and Penna were unaware of what Gogolack said to the Depew Officers.  Here, logic dictates that the diligent Agents would go into their interrogation with as much knowledge as possible.  Moreover, and more importantly, Agent Kammeraad asked Gogolack questions pre-Miranda and was in attendance at the post-Miranda interview.  The Government did not prove that those questions were not substantive.

It bears noting that there was no additional warning explaining the likely inadmissibility of the prewarning statements.  Missouri v. Siebert, 542 U.S. 600 [2004].    The continuity of the Agents both at the scene of the pre-Miranda statements, the relatively short timeframe between the statements, and the overlapping content of the two statements warrant the conclusion that the Miranda warnings were insufficient to purge the taint of the previous unwarned statements. Id.; plurality opinion.

United States v Pritchette, (219 F.Supp3d 379 [2016]), is instructive.  There, by subsequent interrogation conducted *one month later* by different interrogators in a different location was tainted where the later agents informed the defendant that they knew of his prior statements.  Here, the same agents were present at the scene and one participated in the questioning, making an even stronger case for suppression.  While the agents did not explicitly state to Gogolack that they knew of the prior statements, it was obvious to anyone in Gogolack's position given their presence at the scene and that he remained in continuous custody.

## CONCLUSION

For all of these reasons, and for the reasons set forth in the Defendant's motions to suppress, Simon Gogolack's statements to police should be suppressed.

Dated:      April 24, 2026

By:      _____
         NICHOLAS T. TEXIDO
         Attorney for Simon Gogolack