IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

      v.                                      23-CR-99-EAW

SIMON GOGOLACK, et al.,

           Defendants.

_____

### RESPONSE IN OPPOSITION TO DEFENDANTS GERACE AND ERMIN'S MOTION TO ADJOURN THE TRIAL AND DEFENDANT ERMIN'S MOTION FOR A CHANGE OF VICINAGE

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Casey L. Chalbeck, Assistant United States Attorney, of counsel, hereby offers the following response in opposition to defendants Gerace and Ermin's motions to adjourn the trial and defendant Ermin's motion for a change of vicinage.  Dkts. 873, 876.

    I.      **Factual Background**
    A.      **The Trial Date**

On May 28, 2025, the government moved, in relevant part, to schedule a trial date in this matter.  *See* Mot. Rescind Referral Order & Schedule Tr. Date, Dkt. 435, (dated May 28, 2025).  On July 25, 2025, the District Court addressed whether and when the parties would be available for trial in this case, and expressed its belief that the case was likely to

1

head to trial "toward the middle of next year."  *See* Status Conf. Tran., at 4, (dated July 25, 2025).  In response, Mr. Gerace stated:

> **MS. MEYERS-BUTH:**  Judge, I think it depends on your ruling on our severance motion, because if you grant Mr. Gerace's severance motion we can be ready as early as February.  We don't have the same kinds of hearings and everything else that all the other defendants have.

*Id.*

Notwithstanding Mr. Gerace's representation, the District Court transferred the case to this Court due to scheduling conflicts.  *Id.* at 5–6.  On August 20, 2025, this Court scheduled trial to begin on June 8, 2025.  *See* Dkt. Minute Entry, Dkt. 567, (dated Aug. 20, 2025); Order Setting Tr. Date, Dkt. 575, (dated Aug. 22, 2025).

**B.    The Government's Production of 3500 Material**

On March 16, 2026, the government produced its first batch of 3500 material for approximately 200 individuals connected with the case.  That day, the government advised defense counsel that the material was available for pickup at the U.S. Attorney's Office any time after 3:30 p.m.  The production contained 3500 material for sensitive witnesses, or persons the government believes are especially vulnerable to acts of obstruction, tampering, and retaliation.  The following chart identifies the dates on which defense counsel picked up the 3500 material:

| 3500 Material Pickup Chart | | | |
|---|---|---|---|
| No. | Name | Defendant | Date Material Picked Up |
| 1. | Mark Foti | Gerace | April 10, 2026 |
| 2. | Cheryl Meyers Buth | Gerace | March 17, 2026 |
| 3. | George Muscato | Ermin | March 20, 2026 |
| 4. | Don Thompson | Ermin | March 17, 2026 |
| 5. | Dan Henry | Hinkle | March 18, 2026 |
| 6. | Frank Bogulski | Hinkle | March 25, 2026 |

| | | | |
|---|---|---|---|
| 7. | Paul Dell | Roncone | March 18, 2026 |
| 8. | Jenna Wojdan-Price | Roncone | March 17, 2026 |
| 9. | Peter Kooshoian | Gogolack | March 19, 2026 |
| 10. | Nicholas Texido | Gogolack | March 30, 2026 |
| 11. | Matt Lembke | Knight | March 25, 2026 |
| 12. | Barry Donohue | Knight | March 23, 2026 |

After spot checking, government counsel believes that much of the 3500 material was previously produced in discovery. For example, 74 out of the 85 items provided in FBI Special Agent Brian Burns' 3500 folder were produced in discovery. Likewise, regarding the 3500 material produced for HSI Special Agent Duane Green, 19 items constituting 161 pages of material were produced in discovery, as depicted below:

| 3500 and Discovery Material Reconciliation Table: HSI SA Duane Green | | |
|---|---|---|
| Exhibit No. | Page Length | Bates Stamp |
| 3571L | 28 | GOV-00028694 |
| 3571E | 2 | GOV-00027112 |
| 3571P | 19 | GOV-00028894 |
| 3571T | 2 | GOV-00027140 |
| 3571Q | 2 | GOV-00027136 |
| 3571B | 2 | GOV-00027099 |
| 3571G | 2 | GOV-00028442 |
| 3571C | 2 | GOV-00027101 |
| 3571K | 2 | GOV-00028472 |
| 3571M | 32 | GOV-00028722 |
| 3571P | 2 | GOV-00027134 |
| 3571I | 22 | GOV-00028651 |
| 3571H | 2 | GOV-00028640 |
| 3571D | 2 | GOV-00027103 |
| 3571F | 2 | GOV-00027116 |
| 3571J | 2 | GOV-00028684 |
| 3571R | 2 | GOV-000027138 |
| 3571U | 34 | GOV-00028798 |
| 3571N | 30 | GOV-00028754 |

Furthermore, at least 114 of the items produced for FBI Special Agent Penna were exact duplicates of items previously provided in discovery.  Of those items, some of the duplicate documents included:

- GOV-00037733 (phone records) = 377 pages
- GOV-00026205 (License Plate Reader records) = 33 pages
- GOV-00026322 (License Plate Reader records) = 42 pages
- GOV-00026238 (License Plate Reader records) = 42 pages
- GOV-00034242 (lab report [not being used at this trial]) = 160 pages
- GOV-00038110 (phone records) = 173 pages

By itself, that sampling of SA Penna's duplicate 3500 content consists of 827 pages of material previously produced in discovery and accounts for nearly 7% of the 12,000 documents that the defense claims they must review. [1]  It is also far from all the (at least) 114 duplicate items contained within SA Penna's 3500 material.

## C.    The Motions to Adjourn the Trial Date and for Change of Vicinage

On April 22, 2026, Mr. Gerace moved to adjourn the trial scheduled to begin on June 8, 2026.  Mot. Adj. Tr. Date, Dkt. 873, (dated Apr. 22, 2026).  Mr. Gerace cited four reasons why adjourning the trial is necessary:

1.    "[T]he volume of 3500 material and the need for sufficient time to review the material";

2.    "the volume of briefing necessary to appropriately address pending evidentiary issues (including motions to admit various statements of a deceased government witness and Mr. Gerace's prior attorney) and additional motions in limine . . . .";

---

[1]      Some of the 3500 material consists of email or law enforcement documents which included attachments, such as phone records, license plate reader results, pictures, or lab reports.  In an effort not to strip those documents of their context, the government did not remove those attachments (which were previously produced in Rule 16 discovery).  Many of those documents, as referenced *supra* significantly increase the page-count of the 3500 material.

3.    "the need for pretrial briefing and a ruling from the Court on whether Mr. Gerace's prior attorney is an unindicted co-conspirator in this case"; and

4.    "the wide-ranging government investigating involving approximately two hundred government witnesses."

Dkt. 873 at 4.

For these reasons, Mr. Gerace requests that "the trial in this case be put off for at least two months or more depending on the Court's docket." *Id.* at 11.  Mr. Ermin joined Mr. Gerace's motion and further moved for a change of vicinage.[2]  Mot. Adj. Tr. Date, For Ext. Time, & Change of Vicinage, Dkt. 876, (dated Apr. 23, 2026).  Messrs. Roncone, Hinkle, and Gogolack objected to the motion and seek to retain the current trial date.  Roncone Resp. Mot. Adj. Tr., Dkt. 878, (dated Apr. 24, 2026); Hinkle Mem. Resp. Mot. Adj. Tr., at 3, Dkt. 888, (dated Apr. 24, 2026); Mot. Joinder Co-Defs.' Mots. Re. Exts., at 3 ¶ 2, Dkt. 890 (dated Apr. 24, 2026) ("Mr. Gogolack is not seeking an adjournment of the trial as a remedy.").  Mr. Knight appears not to have responded to the Court's Text Order that he state his position on the pending motion to adjourn.  *See* Text Order, Dkt. 874, (Apr. 22, 2026).  *See* Knight Mot. Ext., Dkt. 880, (dated Apr. 24, 2026); Knight Mot. Joinder re Brady Sanctions, Dkt. 872, (dated Apr. 21, 2026) (not requesting an adjournment of the trial due to an alleged *Brady* violation).

## II.    Legal Frameworks
### A.    Adjournments

District courts enjoy a wide berth "of latitude in scheduling trials because trials are difficult to administer from a logistical and organizational standpoint." *Morris v. Slappy*, 461

---

[2]    Mr. Ermin previously moved for a change of vicinage in his non-dispositive pre-trial motions. *See* Dkt. 410 at 103.  Mr. Ermin subsequently withdrew his motion for a change in vicinage on January 12, 2026, and asked for the trial to be held in Buffalo, New York.  Dkt. 732.

5

U.S. 1, 11 (1983) (internal quotations omitted).  That is because trials present logistical "complexities"—including the "assembling [of] witnesses, lawyers, and jurors at the same place at the same time"—that "counsel[] against continuances except for compelling reasons."  *Payne v. Jones*, 711 F.3d 85, 92–93 (2d Cir. 2013) (internal quotations omitted).  "In determining whether a continuance is warranted, courts also have taken into account whether there is a 'reasonable concern that the request [for an adjournment] [is] a delay tactic.'"  *Carroll v. Trump*, 669 F. Supp. 3d 249, 253 (S.D.N.Y. 2023) (quoting *United States v. Liounis*, 639 F. App'x 731, 733 (2d Cir. 2016) (unpublished)).

### B.    Changes of Vicinage

"Unless a statute or these rules permit otherwise, the government must prosecute an offense in the district where the offense was committed.  The court must set the place *within* the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."  Fed. R. Crim. P. 18. (emphasis added).

Likewise, Local Rule 7 provides:

> Upon filing of the indictment or information, each criminal case is assigned to a Judge in either Buffalo (typically, cases arising in Allegany, Cattaraugus, Chautauqua, Erie, Genesee, Niagara, Orleans and Wyoming counties), or Rochester (typically, cases arising in Chemung, Livingston, Monroe, Ontario, Schuyler, Seneca, Steuben, Wayne and Yates counties).  The assignment within these areas shall ordinarily be by random selection.  The Court may transfer cases within the District, sua sponte. Parties requesting transfer of a case from Buffalo to Rochester, or vice versa, shall file a written motion requesting such relief, returnable before the Judge to whom the case is originally assigned.

W.D.N.Y. Local R. Crim. P. 7.

Before transferring a case, however, the Court must consider the factors identified in Rule 18—*viz.*, whether the transfer would convenience or inconvenience any defendant,

victim, and witnesses, as well as the "prompt administration of justice." Fed. R. Crim. P. 18;

*see United States v. Florence*, 456 F.2d 46, 50 (4th Cir. 1972) ("Of course, present Rule 18 permits

a transfer within the district for the convenience of the defendant and the witnesses." (internal

quotations omitted)). None of these four factors is weightier than the others, and the court

wields "substantial discretion to balance any competing interests." FED. R. CRIM. P. 18,

Advisory Committee Notes to 2008 amendment.

### III.    Application
### A.    The Court should deny the motion to adjourn the trial.

The Court should deny Mr. Gerace and Mr. Ermin's motions to adjourn the trial for

three reasons. First, adjournments necessarily enlarge the period in which cooperating

witnesses could be tampered with or retaliated against, an especially acute concern

considering the government's recent production of 3500 material. *See United States v. Smith*,

702 F. Supp. 3d 206, 208 n. 1 (S.D.N.Y. 2023) (Rakoff, J.) (characterizing the defendant's

motion to adjourn the trial as "particularly sinister given his history of witness intimidation

and the fact that it was made just after he received sensitive 3500 material regarding

cooperating witnesses"). This very case is a testament to Mr. Gerace and Mr. Ermin's ability

to weaponize adjournments to their advantage. *See generally* Dkt. 24. Were that not enough,

the government has concrete concerns that at least one witness in this case was already

tampered with. For example, on November 7, 2025, a witness reported to the FBI that they

were approached by an unidentified white male who, while displaying two firearms, stated,

"You'll have a real fucking problem if you talk . . . the girl committed suicide . . . you know

she committed suicide. If you're gonna say anything, say she killed herself. Blame the FBI."

GX-3637A. That same individual later found a bullet on their vehicle and a decapitated bird

in their yard.

Second, and irrespective of specific obstruction concerns, "[e]very day that passe[s]" between now and the commencement—and conclusion—of the trial "threaten[s] harm to the case, as memories fade and the inevitable toll of . . . mortality threaten[s] witnesses." *United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 199 (S.D.N.Y. 2015).  To those points, within the past approximately 6 weeks, the government has learned that two of its would-be witnesses passed away from natural causes.  Because justice delayed is justice denied, the trial should start when the Court said it was going to start: June 8, 2026.

Third, the government produced its first batch of 3500 material—including 3500 material of sensitive witnesses—83 days before trial (1) to facilitate defense counsel's preparation for the speedy trials Mr. Gerace and Mr. Ermin previously intimated they wanted and were prepared for and (2) in reliance on this Court's cautionary advisement that the trial would not be adjourned absent exceptional circumstance.  *See* Gerace Mot. Hr'g & for Sanctions, at 32, Dkt. 132, (dated June 10, 2024); Ermin Aff., Dkt. 126, (dated June 10, 2024); Status Conf. Tran., at 4, (dated July 25, 2025) (Counsel for Mr. Gerace representing that they would be prepared for trial in February 2026).  Had the government known that Mr. Gerace and Mr. Ermin were going to abandon their speedy trial interests, disregard this Court's admonishments, and weaponize the 3500 production to adjourn the trial, the government would have zealously advocated for additional protections, such as an Attorney's Eyes Only designation, for sensitive 3500 material.  For over one month, the defendants have had access to sensitive 3500 material, rendering additional protections a moot point.

In any event, no such exceptional circumstances exist to merit an adjournment.  The government's early productions provided defense counsel with a far greater amount of time to prepare for trial than defense attorneys receive in other districts within this circuit.  *See, e.g.*,

*United States v. Carneglia*, 403 F. App'x 581, 587 (2d Cir. 2010) (unpublished) (noting that the government provided the defendant "with § 3500 material at least 36 days before the cross-examination of each of the seven cooperating witnesses who were the heart of the government's case"); *United States v. Espinal*, 96 F. Supp. 3d 53, 66 (S.D.N.Y. 2015) ("[T]he practice in the Southern District of New York is for the government to produce 3500 (and *Giglio*) material a week or two before the start of trial, depending on the complexity of the case."); *United States v. Gambino*, No. 94 CR. 687 (HB), 1995 WL 453318, at *5 (S.D.N.Y. Aug. 1, 1995) (noting that "the Government has consented, in an effort to avoid adjournments or delays at trial, to produce all Giglio and Section 3500 materials a full day before the corresponding witness testifies"). There is nothing "facially disingenuous" about the fact that the government exceeds its legal obligations to give the Western District of New York's defense bar a courtesy that their counterparts elsewhere do not regularly enjoy. Dkt. 876 at 3. So, to the extent the defendants cite the *timing* of the government's production, their motion to adjourn the trial should be denied.

The defendants' protests regarding the size of the government's 3500 production also fall flat. For starters, one counsel for Mr. Gerace did not pick up his 3500 material **until April 10, 2026**. It is not the government's fault that Mr. Gerace's counsel feels overwhelmed by the size of a production that he waited nearly four full weeks to obtain. Not that the size of the production is truly representative of the quantity of new, previously-unproduced material. If the government's spot-checking process is representative of the amount of duplicate material within the larger production, the defendants have possessed a significant portion of the 3500

9

material for years.[3]  As the parties bearing the burden of production and persuasion, the defendants should identify for the Court—with precision—the new material they claim merits an adjournment.  Until then, the Court should decline to treat Mr. Gerace and Mr. Ermin's misleading characterization of the size of the production as a basis to adjourn the trial.

This same conclusion extends to the volume and complexity of the briefing at issue in this case.  The pre-trial briefing regarding private investigator Paul Lawrence and attorney Steven Cohen is ripe for adjudication.  *See* Dkts. 848, 853; *see also* Sealed Reply Supp. Gov. Pre-Tr. Mem. Re. Gerace Attorney-Client Privilege Issues & Forfeiture by Wrongdoing, (transmitted under seal Apr. 24, 2026).  The defendants' claim that "additional motions in *limine*, filed on April 17, 2026," might require an adjournment due to speculative "pretrial hearings" is similarly misconceived.  Dkt. 873 at 5.  It is the defendants' failure to respond to the government's motions in *limine* by their Court-ordered deadline that postpones the resolution of those issues.  In that regard, the pendency of those motions is the predictable consequence of the defendants' own actions.  The Court should not reward this "heads I win, tails you lose" tactic that prolongs the litigation timeline the defendants claim requires an adjournment.   And to the extent the defendants cite "the wide-ranging government investigation involving approximately two hundred government witnesses," they overlook both their longstanding knowledge of the scope of the investigation and that the government's witness list identifies only 99 witnesses.  Dkt. 873 at 4.  As such, the degree of briefing required in this case does not merit any adjournment of the trial.

In sum, the integrity of this case, the interests of justice, and the government's reliance interests demand that the trial not be adjourned.  On top of that, Messrs. Roncone, Hinkle,

---

[3]     This even earlier production means that the defendants will have had far longer than 83 days to prepare for cross-examination.

and Gogolack do not seek an adjournment. Because Mr. Gerace and Mr. Ermin fail to state compelling reasons to override these interests, the Court should deny their motions.

**B. The Court should deny Mr. Ermin's motion for a change in vicinage.**

Mr. Ermin also moves for a change in vicinage, citing the pre-trial publicity that Mr. Gerace's upcoming sentencing might generate. Dkt. 876 at 6. The Court should deny this motion without prejudice. The Court resolved the question of vicinage on January 22, 2026, when it denied Mr. Gerace's motion for a change of vicinage. *See* Text Order, Dkt. 739, (dated Jan. 22, 2026). Since then, the government has issued trial subpoenas and communicated with prospective witnesses that the trial will be in Buffalo. As the Court previously recognized, *voir dire* is the appropriate mechanism to filter out media-tainted jurors. If picking a fair jury proves impossible, Mr. Gerace and Mr. Ermin should be permitted to renew their motions.

**CONCLUSION**

For the reasons stated herein, the government respectfully asks that the Court deny Mr. Gerace and Mr. Ermin's motions to adjourn the trial and Mr. Ermin's motion for a change in vicinage.

DATED: Buffalo, New York, April 27, 2026.

MICHAEL DIGIACOMO
United States Attorney

BY:    s/CASEY L. CHALBECK
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       716.843.5881
       Casey.Chalbeck@usdoj.gov