UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                    Plaintiff          **NOTICE OF MOTION**
vs.                                                    **IN LIMINE**
                                                       123-CR-99 (EAW)

HOWARD HINKLE,

                                    Defendant


PLEASE TAKE NOTICE that upon the annexed Affirmation of DANIEL J.

HENRY, JR., ESQ., and upon all the proceeding theretofore had, the undersigned,

together with co-counsel, Frank M. Bogulski, Esq., will move this Court for an Order

granting the relief requested in counsel's Affirmation and for such other and further relief

as is just and proper under all circumstances.


Dated: April 17, 2026                  Respectfully submitted,

                                       s/ Daniel J. Henry, Jr.
                                       DANIEL J. HENRY, JR., ESQ.
                                       FRANK M. BOGULSKI, ESQ.
                                       Attorney for *Howard Hinkle*
                                       16 Main Street
                                       Hamburg, New York 14075
                                       (716) 648-0510
                                       dhenry@villariniandhenry.com

To:    Hon. Elizabeth A. Wolford
Chief Judge
United States District Court
U.S. Courthouse
100 State Street
Rochester, New York 14614

Nicholas T. Cooper, Esq.
Casey L. Chalbeck, Esq.
United States Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202

United States Clerk of the Court
United States District Court
Western District of New York
2 Niagara Square
Buffalo, New York 14202-3350

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                    Plaintiff

vs.

HOWARD HINKLE,

                                    Defendant

**AFFIRMATION**
23-CR-99 (EAW)

---

Daniel J. Henry, Jr. Esq. under penalty of perjury states that:

1.) I am an attorney at law duly licensed to practice before the United States District Court for the Western District of New York.

2.) I, along with co-counsel Frank M. Bogulski, Esq., represent Defendant Howard Hinkle in the above captioned action.

3.) I submit this affirmation in support of the defendant, Howard Hinkle's, Motion in Limine requesting the following relief in this case:

a.) Preclude the Government from stating and/or referencing Mr. Hinkle as a member or associate of the Rare Breed Motorcycle Club (RBMC) or any other motorcycle club.

b.) Allow Mr. Hinkle to introduce exculpatory/favorable statements from Simon Gogolack's August 2, 2023, interview with law enforcement. (Exhibit A).

c.) Preclude the Government from introducing testimony/evidence about drug and firearm allegations against Mr. Hinkle.

3

## I. BACKGROUND

4.) The Second Superseding Indictment was filed on January 5, 2024, which included Count 1 Obstruction of Justice Conspiracy. Included in Count 1 is the section entitled *Manner and Means*. In paragraph 30 at page 7, the Indictment claims Mr. Hinkle is an Associate of the RBMC. In addition, throughout the litigation of this case, including search warrant applications and pleadings, Mr. Hinkle is referenced as a member and/or Associate of the RBMC.

5.) Codefendant Simon Gogolack, on August 2, 2023, was interviewed by law enforcement. The interview was video/audio recorded and was reduced to a transcript. Portions of the interview contain exculpatory and favorable information to Mr. Hinkle and his defense.

6.) The Second Superseding Indictment also charges Mr. Hinkle in Counts 19-22 with drug and firearms offenses. This Court severed those charges from Counts 1-5, 23 and 26 for trial purposes.

## II. ANALYSIS

### A. Preclude reference of Howard Hinkle as a Member/Associate of the RBMC or any other motorcycle club

7.) The government should be precluded from referencing Mr. Hinkle as a member and/or Associate of the RBMC or any other motorcycle club.

4

8.) There is no evidence in the record such as club colors, membership lists, club records or witness testimony linking Mr. Hinkle as a member and/or Associate of the RBMC or any other club. In fact, there is witness evidence that Mr. Hinkle is not a member of RBMC including the Interview Statement of Simon Gogolack ███████.

9.) Identifying Mr. Hinkle as a member and/or Associate of the RBMC is done solely to taint him in the governments theory that motorcycle clubs are dangerous, violent organizations involved in homicides and therefore caused the death of Crystal Quinn. Such analogy and falsely associating Mr. Hinkle with such organizations is highly prejudicial. Under FRE 403 the probative value, if any, is substantially outweighed by the danger of unfair prejudice and misleading the jury. The fact that Mr. Hinkle may know some members of the RBMC, attended a bike ride or picnic, or did contracting/construction work as a hired vendor on RBMC property does not make him a member and or Associate of the club.

10.) Referencing Mr. Hinkle as a member and/or Associate of the RBMC where at trial the government will adduce evidence of a "skeleton of a dead rat hanging from a noose with the caption 'outlaws 1%ers'" and expert witness testimony on motorcycle clubs' evidence, etc., when Mr. Hinkle is not a member and/or associate of *any* motorcycle club, is dangerously prejudicial. (Emphasis Added).

11.) The government's evidence that Mr. Hinkle allegedly is affiliated with or is a member of a motorcycle club or biker organization should be precluded in its entirety regardless of its form. It is not relevant to the remaining offenses charged, and even if it

5

were relevant, the unfair prejudice it would create far outweighs any probative value. Mr. Hinkle's alleged biker affiliation has no tendency to make any fact of consequence to the charges more or less probable. The government has not identified a specific connection between Mr. Hinkle's alleged membership in a motorcycle organization and the death of Ms. Quinn. In fact, the government's theory runs only through Mr. Hinkle's alleged involvement in a poker game. Absent a specific nexus, the biker evidence fails Rule 401 at the outset. In this case, there is absolutely no evidence that Howard Hinkle was ever a member of a motorcycle club. On the contrary, a review of the evidence of this case clearly demonstrates that Mr. Hinkle was never a member of the motorcycle club and was not an associate or involved in any capacity, other than living in relative proximity to some of the members. The Rule 3500 material also demonstrates that Hinkle was not a club member. Hinkle's common law wife even confirmed this in her statement to the FBI.

12.) Regardless of the alleged relevance, the Court should exclude this evidence under Rule 403 of alleged motorcycle club membership because it carries a great capacity for unfair prejudice. Jurors may associate that affiliation with criminality and violence without regard to the facts. The Second Circuit has held that evidence of gang affiliation, because of these deeply embedded associations, poses a substantial risk of leading a jury to convict based on a defendant's perceived character rather than the evidence. *United States v. McCallum,* 584 F. 3d 471, 476 (2d Cir. 2009) (court of appeals ruled that district

6

court should have excluded evidence served primarily to portray defendant as a person of dangerous character).

13.) What is particularly dangerous about attempting to introduce evidence about Hinkle's alleged membership in a motorcycle club, is that it creates a trial within a trial. Hinkle has denied membership in the organization and there is absolutely no specific proof that Hinkle was a member of the club. Therefore, not only is the alleged involvement prejudicial, but it creates confusion for jurors because during the trial, Hinkle would be forced to refute his membership in the gang. If the government had clear or sufficient evidence that Hinkle was in fact a member, then his argument for preclusion would be less persuasive. However, in this case, because there is ample evidence to suggest that Howard Hinkle was not a member of the club, the danger is undue prejudice and creating a mini trial. There are several witnesses that were interviewed that stated that Mr. Hinkle is not a member of the club. It is also important to note that when Simon Gogolack was interviewed, he clearly and unequivocally stated that Howard Hinkle was not involved with the murder or death of Crystal Quinn at any time. Gogolack never suggests or implies that Howard Hinkle was a member of the biker club. (see Exhibit A). For these reasons, any reference or allegation that Howard Hinkle was a member of the outlaws must be precluded.

14.) Since there is no evidence of membership, any reference to RBMC or a motorcycle club has no tendency to make a fact more or less probable regarding the charges. Since there is no evidence that Mr. Hinkle is a member and/or Associate of the

RBMC, there is "zero" probative value of referencing him to the RBMC. To do otherwise would create massive unfair prejudice because it invites the jury to convict based on perceived character or lifestyle of such club rather than the facts. FRE 403. See also FRE 401 and 402.

## B. Admissibility of recorded Simon Gogolack Interview Statements

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) quoting *California v. Trombetta,* 467 U.S. 479, 485 (1984).

8

Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." Federal Rules of Evidence 801. A statement is not hearsay where offered for any purpose other than proving the truth of the matter asserted. The Second Circuit construes Federal Rules of Evidence 801 to avoid technical exclusion of probative evidence, particularly in criminal defense contexts.

Mr. Gogolack's statements are not hearsay because they are not offered for the truth of the matter asserted within the meaning of Federal Rules of Evidence 801(c).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ The

statements go to what the officer knew. The Second Circuit holds that statements offered to show effect on the listener, rather than to prove the underlying assertion, are non-hearsay. Thus, a statement offered to show its effect on the listener is not hearsay. *United States v. Dupree,* 706 F. 3d 131 (2d Cir. 2013); see also *George v. Celotex Corp.,* 914 F. 2d 26, 30 (2d Cir. 1990) ("[t]o be sure, an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay"). ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████

Second, ██████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ As verbal acts, they are admissible without

implicating the hearsay rules. *United States v. Cardascia*, 951 F. 2d 474 (2d Cir. 1991):

> Under the Federal Rules of Evidence, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, [then] the statement is not hearsay." Advisory Committee Note to Fed. R. Evid. 801(c). Statements not considered hearsay are typically verbal acts that give rise to legal consequences. See *United States v. Kohan*, 806 F. 2d 18, 21-22 (2d Cir. 1986) (statements of third party to defendant about source of checks was not hearsay because they were offered not to prove the truth of the statements but rather that defendant believed them and was not aware checks were stolen); *United States v. DiMaria*, 727 F. 2d 265, 270 n. 4 (2d Cir. 1984); *United States v. Press*, 336 F. 2d 1003, 1011 (2d Cir. 1965) ("statements inadmissible to prove the truth of the matter they assert may be admitted if the fact of the assertion is in itself relevant.").

Third, the statements are offered to show Mr. Gogolack's then-existing belief and personal knowledge regarding Mr. Hinkle's lifestyle and associations without being offered to prove that Mr. Gogolack's beliefs are true. Offered in this manner, the statements are evidence of Mr. Gogolack's knowledge and are not hearsay assertions of fact, *United States v. Cardascia*, 951 F. 2d 474 (2d Cir. 1991).

Further, ████████████████████████████████████████

███████████████████████████████████████████████

█████████████ They are not offered for their truth but as substantive evidence that no

"meeting of the minds" existed. The Second Circuit has made clear that the essence of a conspiracy is an agreement, *United States v. Desimone,* 119 F. 3d 217 (2d Cir. 1997) ("[i]n order to prove a conspiracy, the government must show that two or more persons agreed to participate in a joint venture intended to commit an unlawful act"); *United States v. Nusraty,* 867 F. 2d 759 (2d Cir. 1989) ("[t]he agreement between the party charged and his co-conspirators is the gist of the crime of conspiracy"); *United States v. Bayer,* 331 U.S. 532, 542, 67 S. Ct. 1394, 1399, 91 L. Ed. 1965 (1947) (the essence of conspiracy "is in the agreement or confederation to commit a crime"); *United States v. Borelli,* 336 F. 2d 276, 384 (2d Cir. 1964). ███████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

Should the Court deem the statements hearsay, they nonetheless fall within recognized exceptions. Under Federl Rules of Evidence 803(3), ████████████

██████████████████████████████████████████

████████████████████ These are not recollections of past events, but present-tense impressions articulated in the moment. The Federal Rules of Evidence 803(3) exception is satisfied where the declarant's then-existing belief is itself the relevant fact.

To the extent Mr. Gogolack is unavailable within the meaning of Federal Rules of Evidence 804(a) (for example, by invoking the Fifth Amendment ) the statements also qualify as statements against penal interest under Federal Rules of Evidence 804(b)(3), which renders admissible "statement[s] which … so far ten[d] to subject the declarant to … criminal liability … that a reasonable person … would not have made [them] unless believing [them] to be true."  Rule 804(b)(3) provides an exception to the general rule against admission of a hearsay statement when a declarant is unavailable as a witness and his out-of-court statement tends to subject him to criminal liability.  *United States v. Jackson,* 335 F. 3d 170, 177 (2d Cir. 2003) (noting that a witness who invokes the privilege against self-incrimination is "unavailable" within the meaning of Rule 804(b)). By speaking freely to police, discussing the alleged conspiracy and describing Ms. Quinn, Mr. Gogolack exposed himself to potential criminal liability.  Under *Williamson v. United States,* 512 U.S. 594 (1994), each remark must be against interest within the full context of the statement ("[a} statement obviously can be self-inculpatory (in the sense of having so much of a tendency to subject one to criminal liability that a reasonable person would not make it without believing it to be true) without consisting of the confession 'I committed X element of crime Y.'").  *Williamson v. United States,* 512 U.S. 594 (1994). Here, Mr. Gogolack's discussion of an alleged criminal association directly implicated himself.  The exculpatory statements related to Mr. Hinkle are intertwined with self-inculpatory context, satisfying *Williamson.*

Even if no enumerated exception applies, Federal Rules of Evidence 807 admits

hearsay that bears guarantees of trustworthiness where the statement is offered as evidence of a material fact, is more probative than any other available evidence on the fact, and admission serves the interests of justice. All three elements are satisfied here.

As the Supreme Court held in *Chambers v. Mississippi,* 410 U.S. 284 (1973), hearsay bearing substantial assurances of trustworthiness must be admitted, particularly when it is critical to the defense ("[t]he testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest… [t]hat testimony also was critical to Chambers' defense… [i]n these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice").

The Constitution independently compels admission under *Chambers v. Mississippi,* 410 U.S. 284 (1973) ("The trial court erred in excluding McDonald's hearsay statements, which were critical to petitioner's defense and which bore substantial

assurances of trustworthiness, including that each was made spontaneously to a close

acquaintance, that each was corroborated by other evidence in the case, that each was in a

real sense against McDonald's interest, and that McDonald was present and available for

cross-examination by the State"). The Supreme Court held that mechanical application

of hearsay rules to exclude critical exculpatory evidence violates the defendant's due

process right to a fair trial and Sixth Amendment right to present a complete defense.

The Court identified four indicia of trustworthiness that compel admission: that each

statement was made spontaneously to a close acquaintance; that each statement was

corroborated by other evidence; that each statement was against the declarant's interest;

and that the declarant was present and available for cross-examination. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

The Second Circuit has reaffirmed that *Chambers* requires admission of

trustworthy exculpatory statements critical to the defense, even where evidentiary rules

might otherwise bar them. *Washington v. Schriver,* 255 F 3d 45 (2d Cir. 2001)

("evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental

fairness"). The Supreme Court extended this principle in *Holmes v. South Carolina,* 547 U.S. 319 (2006), holding that rules excluding third-party culpability evidence are unconstitutional where they are arbitrary or disproportionate in their exclusionary effect (the right to present a defense is "abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are 'arbitrary' or 'disproportionate to the purposes they are designed to serve'"). *Holmes v. South Carolina,* 547 U.S. 319 (2006) quoting *United States v. Scheffer,* 523 U.S. 303, 308 (1998); *Rock v. Arkansas,* 483 U.S. 44, 58, 56 (1987). Exclusion of Mr. Gogolack's statements here would be an arbitrary exclusion of probative exculpatory evidence available to Mr. Hinkle. The Sixth Amendment guarantees the right to present a complete defense, *Washington v. Schriver,* 255 F. 3d 45 (2d Cir. 2001), and the Fifth Amendment due process guarantee independently bars exclusion of evidence so critical that its absence renders the trial unfair. No interest in applying hearsay rules outweighs Mr. Hinkle's constitutional right to have a jury hear Mr. Gogolack's spontaneous, corroborated, against-interest exculpation.

The statements at issue also survive Federal Rules of Evidence 403 exclusion, under which relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," because their probative value substantially outweighs any prejudice. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ There is no unfair prejudice from admission, as the statements do not inflame, mislead, or confuse the jury.

*United States v. Bermudez,* 529 F. 3d 158 (2d Cir. 2008) ("[d]istrict courts have broad discretion to balance probative value against possible prejudice… we will not disturb that balancing 'unless there is a clear showing of abuse of discretion or that the decision was arbitrary or irrational'") quoting *United States v. LaFlam,* 369 F. 3d 153, 155 )2d Cir. 2004); *United States v. Ansaldi,* 372 F. 3d 118, 131 (2d Cir. 2004).

The recorded statements of Mr. Gogolack are admissible on four grounds: they are non-hearsay under Federal Rules of Evidence 801(c) because they are offered for the effect on the listener, as verbal acts, and as evidence of state of mind; they fall within the Federal Rules of Evidence 803(3) then-existing state of mind exception for hearsay; they satisfy Federal Rules of Evidence 804(b)(3) or Federal Rules of Evidence 807 as statement against interest or under the residual exception; and their admission is constitutionally compelled under *Chambers v. Mississippi* and the Fifth and Sixth Amendments. Exclusion would deprive Mr. Hinkle of his constitutional right to present a complete defense. The Court should rule the evidence admissible.

## C. Preclude the Government from introducing testimony/evidence about drug and firearm allegations against Howard Hinkle

The government's allegations of the manufacture of marijuana plants; maintenance of a drug involved premises; and possession of firearms evidence fail the relevance requirement under Federal Rule of Evidence 401. It must be excluded under Federal Rule of Evidence 403 because their probative value is decisively outweighed by

16

the danger of unfair prejudice, confusion of the issues, and misleading the jury. This relief is consistent with the Court's authority and Second Circuit precedent.

This Court ordered the severance and separate trial of Counts 19, 20, 21, and 22 (respectively charging Mr. Hinkle with: Manufacture and Possession with Intent to Distribute 100 or More Marijuana Plants; Maintaining a Drug Involved Premises; Possession of Firearms in Furtherance of Drug Trafficking; and Felon in Possession of Firearms). Because severance has been ordered in the marijuana and weapons counts, the government should be precluded from introducing any of this evidence in the upcoming witness tampering and obstruction trial.

Federal Rule of Evidence 401 provides that evidence is relevant only if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that does not meet this standard is inadmissible. Fed. R. Evid. 402 ("[i]rrelevant evidence is not admissible").

Even relevant evidence must be excluded under Rule 403 if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Second Circuit has consistently recognized that Rule 403 requires courts to engage in balancing analysis, excluding evidence that risks a verdict based on bias rather than proof. *United States v. Salamehm,* 152 F. 3d 88, 110 (2d Cir. 1998) ("To avoid acting arbitrarily, the district court must make a 'conscientious assessment' of whether unfair prejudice substantially

outweighs probative value." (quoting *United States v. Birney,* 686 F. 2d 102, 106 (2d Cir. 1982))); *United States v. Awadallah,* 436 F. 3d 125, 131 (2d Cir. 2006) ("the district judge... has broad discretion under Rule 403 to balance the probative value of evidence against the risk of prejudice..." see *United States v. Perez,* 387 F. 3d 201, 209-10 (2d Cir. 2004); *United States v. Han,* 230 F. 3d 560, 564 (2d Cir. 2000)); *United States v. Bermudez,* 529 F. 3d 158 (2d Cir. 2008).

In *Old Chief v. United States,* 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997), the Supreme Court defined "unfair prejudice" as "an undue tendency to suggest decision on an improper basis," *id.* at 180, 117 S. Ct. 644 (internal quotation marks omitted), and invoked as an example a jury's "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily), *id.* at 180-81, 117 S. Ct. 644.

███████████████████████████████████████████

██████████████████████████████ is irrelevant to the remaining, unsevered charges and must be precluded because it fails both the Rule 401 relevance test and would otherwise cause overwhelming prejudice that is barred by Rule 403. This evidence, which might have been deemed relevant, however marginally, in the context of a larger trial involving those charges, is no longer relevant now that only the conspiracy charges remain. This Court must apply both the relevance and Rule 403 standards as they will exist for the case before the jury and not for the case as it was initially charged.

18

████████████████████████████████████ under Rule 401 following severance. Rule 401 demands a relationship between the evidence and a fact of consequence in the action. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ ███████████████████████████████████████████

████████████████████████████. In the absence of any particularized connection between the severed conduct and the charged conspiracies, the evidence is not relevant. *United States v. Tarricone,* 966 F. 2d 1414 (2d Cir. 1993) (other act evidence must be connected to the actual charge at trial, not to unrelated conduct).

The government may argue that the evidence provides necessary background or establishes the defendant's state of affairs, but the Second Circuit has rejected the notion that "background" context licenses the wholesale admission of otherwise inadmissible evidence. *United States v. Paulino,* 445 F. 3d 211 (2d Cir. 2006) (identifying two scenarios in which to receive evidence as relevant background: "(1) to clarify[y] noncontroversial matters without causing unfair prejudice on significant disputed matters and (2) as appropriate rebuttal to initiatives launched by the defendant" (internal quotation omitted), neither of which is the case here). General criminal background, unconnected to the facts charged, cannot here be relevant.

████████████████████████████████████████████

19

███████████████████████, the evidence must be excluded under Rule 403. The probative value of this evidence, severed now from the counts to which it was attached, is speculative. The unfair prejudicial impact, by contrast, is severe, as Mr. Hinkle's due process rights are at great risk should the jury perceive him in a criminal character as a result of now irrelevant and inadmissible evidence.

Jurors who learn that a defendant manufactured drugs and kept weapons will form an impression of the defendant as a dangerous individual. That impression will not stay compartmentalized, and it will malign how the jury weighs every piece of evidence on the conspiracy charges. This is precisely the spillover prejudice that Rule 403 is designed to prevent. *United States v. Jones,* 16 F. 3d 487, 492 (2d Cir. 1994) (evidence of severed criminal conduct poses a serious risk of spillover prejudice that cannot but bear on the jury's consideration of the charged offense).

A limiting instruction would not adequately address this risk. The Second Circuit has recognized that certain categories of evidence are too inflammatory for an instruction to neutralize, particularly where the evidence of uncharged conduct involves a felon in possession, as is the case here. *United States v. Jones,* 16 F. 3d 487, 492 (2d Cir. 1994). The risk is heightened here because the severed conduct relates to exactly the kind of criminal character evidence that inflames juror sentiment. ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████ That information, once admitted, will define the jury's view of Mr. Hinkle

in such a manner as to rise to unfair prejudice.

### III. Fed. R. Evid. 608 and 609

Defendant Howard Hinkle reserves the right to file notice under Fed. R. Evid. 608 and 609 until all 3500 materials have been provided. To date, counsel has received 12,188 pages of 3500 material (additional materials are forthcoming) that must be reviewed before we are in a position to know, what, if any impeachment evidence exists.

### IV. CONCLUSION

Based on the aforementioned case law, Federal Rules and legal arguments, the Defendant, Howard Hinkle respectfully requests that this Court:

a.) Preclude the Government from stating and/or referencing Mr. Hinkle as a member or associate of the Rare Breed Motorcycle Club (RBMC) or any other motorcycle club.

b.) Allow Mr. Hinkle to introduce exculpatory/favorable statements from Simon Gogolack's August 2, 2023, interview with law enforcement. drug and firearm allegations against Mr. Hinkle.

d.) Allow for filing future Notice per Fed. R. Evid. 608 and 609.


Respectfully submitted,


*s/ Daniel J. Henry, Jr.*
Daniel J. Henry, Jr., Esq.
Frank M. Bogulski, Esq.
Attorneys for *Howard Hinkle*
16 Main Street
Hamburg, New York 14075
(716) 648-0510
dhenry@villariniandhenry.com

22