

Cheryl Meyers Buth
Attorney/Member
cmbuth@mblg.us

Laurie A. Baker
Attorney/Member
labaker@mblg.us

Hon. Elizabeth Wolford
United States District Court
Western District of New York
100 State Street
Rochester, New York 14614

                Re:  United States v. Gogolack, et al
                    23-CR-99

Dear Judge Wolford:

     Pursuant to the Court's text order on May 4, 2026 [dkt #930] that "any defendant wishing to object to Sharon Quinn being exempted from the Court's sequestration order under Federal Rule of Evidence 615(d), must file a memorandum on or before May 8, 2026, setting forth grounds in accordance with the standard set forth at 18 U.S.C. § 3771(a)(3) and Fed. R. Crim. P. 60(a)(2)", counsel for Mr. Gerace now memorializes his objection for the reasons which follow.

     The government has included Ms. Quinn on its witness list and she, under Fed.R.Evid. 615, would normally be excluded from the courtroom so she could not hear other witnesses' testimony. However, Ms. Quinn is the mother of the decedent, Crystal Quinn who the government maintains is a "crime victim" and has requested an exception to sequestration.

     Mr. Gerace asserts the circumstances of this case call for a three-step analysis: whether Sharon Quinn is a "crime victim" under §3771(e)(2)(A); if so, whether her testimony would be "materially altered" if she was not excluded from the courtroom; and whether, if allowed to be present, the Court should consider a

1

limiting instruction and order her not to discuss the trial testimony with potential witnesses.

## Sharon Quinn should not be deemed a "crime victim"

There is no controlling authority from the Second Circuit dictating whether Sharon Quinn meets the definition of "crime victim". Under 18 U.S.C. §3771(e)(2)(A): "The term 'crime victim' means a person directly and proximately harmed as a result of the commission of a Federal offense . . ."

A plain reading of the statute implies that a federal offense has to be committed before there can be a victim ("as a result of the commission of a Federal offense"). In other words, the Act necessarily presumes, according to its terms, that 1) a federal offense has occurred, and 2) as a result of the commission of that federal offense, identifiable persons have been directly and proximately harmed.

However, at least one district court has expanded the apparent plain meaning of the statute so as not to require proof of a crime or a defendant's guilt before identifying a victim:

> "At this stage of the case, however, the defendant continues to enjoy a presumption that he is innocent of the charge that he committed a Federal offense. Strictly speaking, then, I might be constrained to presume that there is no person who meets the definition of "crime victim" in this case. That syllogism -- which renders the CVRA inapplicable to this or any other criminal case unless and until the defendant is proved guilty beyond a reasonable doubt -- produces an absurd result that I must presume Congress did not intend. Nevertheless, I cannot ignore the possibility that by requiring me to afford rights to "crime victims" in this case, the CVRA may impermissibly infringe upon the presumption of Turner's innocence. Unlike the Bail Reform Act, the CVRA does not include a provision expressly preserving the presumption of the accused defendant's innocence. *Cf.* 18 U.S.C. § 3142(j) [**19] . I conclude, however, that such a reasonable limitation must be inferred as a matter of due process and to avoid an interpretation that would render the statute unconstitutional. *See, e.g., I.N.S. v. St. Cyr,* 533 U.S. 289, 299-300, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) ("if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation

2

of the statute is 'fairly possible,' [citation omitted] we are obligated to construe the statute to avoid such problems"). Accordingly, I interpret the definition in § 3771(e) to include any person who would be considered a "crime victim" if the government were to establish the truth of the factual allegations in its charging instrument".
 *United States v. Turner*, 367 F. Supp. 2d 319, 325-26 (E.D.N.Y. 2005)

The *Turner* court's interpretation that the CVRA is rendered inapplicable unless a defendant is found guilty of an offense is unsupported and constitutes an unwarranted expansion of the plain meaning of the statutory language. That the court's conclusion is a bridge too far is reflected in the decision of at least one other court. See *United States v. W. R. Grace*, 597 F. Supp. 2d 1157 (D. Mont. 2009). The *Grace* court disagreed with the suggestion in *Turner* that a court must assume the accused guilty in order to identify a crime victim:

> "To illustrate the foregoing point, where the government indicts an accused for allegedly robbing a bank, the court need not assume the accused is guilty in order to conclude the bank was robbed. The bank's depositors have been victimized whether by the accused or someone else. Likewise, if a jury determines the government fails to meet its burden of proof and acquits the accused, [**13] it does not follow that the bank was not robbed. As a starker example, when the Innocence Project exonerates through DNA evidence one mistakenly convicted of homicide, thereby proving actual innocence, no one concludes that the victim of the crime for which the innocent was mistakenly convicted was not in fact killed. Neither acquittal nor proof of actual innocence requires the conclusion, as the Turner opinion implies, that no offense has occurred and therefore there are no victims. Nor does the presumption of innocence".

*United States v. W. R. Grace*, 597 F. Supp. 2d 1157, 1161-62 (D. Mont. 2009)

*Grace* was an environmental crimes case where the identity of victims was not obvious. Here, the issue is not whether Ms. Quinn was "directly or proximately harmed" by the death of her daughter; rather, it is whether a federal offense was committed – i.e. whether her daughter was murdered (versus whether she intentionally or accidentally overdosed on drugs).

In that regard, this case is unlike *United States v. Pirk*, 284 F.Supp. 3d 445, 454 (W.D.N.Y. 2018). In *Pirk* there was no question the decedents were murdered;

3

rather, whether one of the decedent's sisters was a "crime victim" was not dependent on whether the defendants were guilty of committing the crime; it was, however, undisputed a crime had occurred. Here, it is not just that defendants are maintaining their innocence; there is a serious question as to whether any crime took place.

In *United States v. Nix*, 256 F. Supp. 3d 272, 276-77 (W.D.N.Y. 2017) the Court noted that "[T]he status of 'victim' may be based on allegations rather than proof." (citing *United States v. Saltsman*, No. 07-CR-641 (NGG), 2007 U.S. Dist. LEXIS 87044, 2007 WL 4232985, at *1 (E.D.N.Y. Nov. 27, 2007). *Saltsman* was a securities fraud and money laundering case. Like the bank robbery example in *Grace*, the guilt or innocence of the defendant did not change the fact that the "victims" actually lost money in the scheme and thus the Saltsman court reasoned the status of the victim did not depend on a prior finding of defendants' guilt. They investors incurred a monetary loss and who ultimately was at fault was a secondary consideration but did not change their status as victims.

Crystal Quinn either was murdered or accidentally/intentionally overdosed. The former would render her a crime victim; the latter would render her death the result of her own conduct. Following the rationale in *Turner*, the Court would designate Sharon Quinn as a crime victim by assuming the government might prove the truth of the allegations in the indictment. On the other hand, relying on the rationale in *Grace,* Sharon Quinn would not be a crime victim because the circumstances do not necessarily demonstrate an offense was committed.

If it later turns out no crime was committed and/or that defendants did not commit a crime, the government benefits by having Crystal Quinn's representative present before the jury, engendering sympathy, adding to the emotionally charged atmosphere and allowing her to hear other witness testimony before she testifies.

Absent binding precedent from the Second Circuit, this Court should not deem Sharon Quinn to be a "crime victim" who is entitled to relief from sequestration under Fed.R.Evid. 615.

4

**Ms. Quinn's testimony would be "materially altered" if she was not sequestered**

Should the Court overrule the defense objection and find Sharon Quinn qualifies as a "crime victim", it should still prohibit her from being present for the testimony of other witnesses since her testimony would likely be "materially altered". While the defense bears the burden of demonstrating this by clear and convincing evidence, Ms. Quinn has already shown she is vulnerable to suggestion.

Immediately, after her daughter's death Ms. Quinn made a public statement to the Buffalo News that the government placed her daughter in jeopardy. She gave a sworn statement to Mr. Gerace's then-lawyer for use in connection with prior legal proceedings to the effect that she believed the government was responsible for her daughter's death.

Only after the government made allegations (now proven to be incorrect) that Crystal Quinn must have been murdered because "she had enough fentanyl in her system to kill 400 people", Ms. Quinn changed her position and became antagonistic toward the defendants.

This demonstrates that Ms. Quinn is susceptible to altering her position based on what she hears from the government about the evidence in the case.
.

**Request for Order that Ms. Quinn not discuss testimony with other witnesses**

If this Court finds that the CVRA exception to Fed.R.Evid. 615 applies, the defense requests, in the alternative, that Ms. Quinn be prohibited from discussing her own testimony or the testimony of other trial witnesses with any other potential witness, including but not limited to her roommate and son. See eg *United States v. Meintzschel*, No. 2:20-CR-00023-FL-1, 2020 U.S. Dist. LEXIS 234953, at *8-9 (E.D.N.C. Dec. 14, 2020).

Additionally, because Ms. Quinn's continuous presence may affect jury perceptions, and could impact the emotional atmosphere in the courtroom. the defense requests that a limiting instruction be read to the jury explaining Ms. Quinn's presence. The defense also requests that the Court formally instruct Ms. Quinn that her right to be present is not unlimited and that should could be removed for, among other reasons, emotional displays which could potentially influence the jury.

Sincerely,

/s/ Cheryl Meyers Buth

Cheryl Meyers Buth, Esq.
Mark A. Foti, Esq.
Attorneys for Defendant Gerace

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-vs-

                                             **23-CR-00099**

PETER GERACE, JR.

                      Defendant.

_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 8, 2026, I electronically filed the foregoing Letter-Motion with the Clerk of the United States District Court for the Western District of New York via the Court's CM/ECF system, thereby serving copies on the United States Attorney's Office for the Western District of New York and all parties on the service list, in accordance with the Local Rules and Federal Rule of Criminal Procedure 49(b).

                                           <u>*s/Cheryl Meyers Buth*</u>    Cheryl Meyers Buth

7