IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.

SIMON GOGOLACK, a/k/a Greek,
PETER GERACE, JR.,
JOHN THOMAS ERMIN, a/k/a Tommy O,
MICHAEL RONCONE, a/k/a Cone,
FRANK KNIGHT, and
HOWARD HINKLE, JR., a/k/a Hard How

          Defendants.

23-CR-99-EAW

---

## GOVERNMENT'S REQUESTS TO CHARGE

**THE UNITED STATES OF AMERICA**, by and through its attorney, Michael

DiGiacomo, United States Attorney for the Western District of New York, Nicholas T.

Cooper, Casey L. Chalbeck, and Katerina F. Powers, Assistant United States Attorneys, of

counsel, hereby files its requests to charge.

DATED: Buffalo, New York, May 11, 2026.

              MICHAEL DIGIACOMO
              United States Attorney

      BY:   s/NICHOLAS T. COOPER
            s/CASEY L. CHALBECK
            s/KATERINA F. POWERS
            Assistant United States Attorneys
            United States Attorney's Office
            Western District of New York
            138 Delaware Avenue
            Buffalo, New York 14202

## INDEX

**REQUEST**                                                           **PAGE NO.**

1     General Requests ................................................................................................ 1

2     The Indictment and the Statute: Count 1 ........................................................ 2

3     Conspiracy Defined (Purpose of the Statute) .................................................. 20

4     Count 1 - Different Illegal Objectives or Goals .............................................. 22

5     Elements of the Conspiracy ............................................................................ 23

6     Element 1: Existence of Agreement ................................................................ 24

7     Element 2: Membership in the Conspiracy ..................................................... 26

8     Element 3: Commission of an Overt Act ........................................................ 29

9     Element 4: Commission of an Overt Act in Furtherance of the Conspiracy ............. 31

10     The Indictment and the Statute: Count 2; Witness Tampering Conspiracy (18 U.S.C. § 1512(k)) ................................................................................................... 32

11     Count 2; Witness Tampering Conspiracy (18 U.S.C. § 1512(k)) ............................ 34

12     Objects of the Conspiracy – Sections 1512(a)(1), 1512(a)(2), 1512(b)(1), and 1512(b)(2)(A) ................................................................................................ 35

13     Objects of the Conspiracy – Government Not Required to Prove Substantive Crime of Tampering with a Witness ............................................................................ 37

14     First Object of the Conspiracy – Tampering with a Witness Pursuant to Section 1512(a)(1) ..................................................................................................... 38

15     First Object of the Conspiracy – First Element of Section 1512(a)(1) ...................... 39

16     First Object of the Conspiracy – Second Element of Section 1512(a)(1) .................. 40

17     Second Object of the Conspiracy – Tampering with a Witness Pursuant to Section 1512(a)(2) ..................................................................................................... 42

18     Second Object of the Conspiracy – First Element of Section 1512(a)(2) .................. 43

**INDEX**

| REQUEST | | PAGE NO. |
|---|---|---|

19    Second Object of the Conspiracy – Second Element of Section 1512(a)(2) ..............44

20    Third and Fourth Objects of the Conspiracy – Tampering with a Witness Pursuant to Section 1512(b)(1) and (b)(2)(A)................................................................................46

21    Third and Fourth Objects of the Conspiracy – First Element of Sections 1512(b)(1) and 1512(b)(2)(A) .......................................................................................................47

22    Third and Fourth Objects of the Conspiracy – Second Element of Sections 1512(b)(1) and 1512(b)(2)(A) .......................................................................................................48

23    The Indictment and the Statute: Count 3; Witness Retaliation Conspiracy (18 U.S.C. § 1513(f))....................................................................................................................50

24    Count 3; Witness Retaliation Conspiracy (18 U.S.C. § 1513(f)) ..............................52

25    Objects of The Conspiracy – Sections 1513(a)(1)(A), 1513(a)(1)(B), and 1513(b).....53

26    Objects of The Conspiracy – Government Not Required to Prove Substantive Crime of Retaliating Against a Witness...............................................................................55

27    First and Second Objects of The Conspiracy – Retaliating Against a Witness Pursuant to Sections 1513(a)(1)(A) And 1513(a)(1)(B) .........................................................56

28    First and Second Objects of The Conspiracy – First Element of Sections 1513(a)(1)(A) And 1513(a)(1)(B)....................................................................................................57

29    First and Second Objects of The Conspiracy – Second Element of Sections 1513(a)(1)(A) and 1513(a)(1)(B) ..............................................................................58

30    Third Object of the Conspiracy – Retaliating Against a Witness Pursuant to Section 1513(b)......................................................................................................................59

31    Third Object of the Conspiracy – First Element of Section 1513(b).........................60

32    Third Object of the Conspiracy – Second Element of Section 1513(b).....................61

33    Third Object of the Conspiracy – Third Element of Section 1513(b) ........................62

34    The Indictment and the Statute: Count 4; Distribution of Fentanyl Resulting in Death (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)) ...............................................................63

# INDEX

| REQUEST | | PAGE NO. |
|---|---|---|
| 35 | Count 4; Distribution of Fentanyl Resulting in Death – Elements of The Offense | 64 |
| 36 | Count 4; Distribution of Fentanyl Resulting in Death – First Element | 65 |
| 37 | Definition of Possession | 66 |
| 38 | Inference from Control Over Place Where Found | 68 |
| 39 | Count 4; Distribution of Fentanyl Resulting in Death – Second Element | 69 |
| 40 | Method of Proving Knowledge | 70 |
| 41 | Conscious Avoidance of Knowledge | 71 |
| 42 | Count 4; Distribution of Fentanyl Resulting in Death – Third Element | 73 |
| 43 | Intent to Distribute | 74 |
| 44 | Definition of Distribution | 76 |
| 45 | Count 4; Distribution of Fentanyl Resulting in Death – Fourth Element | 77 |
| 46 | The Indictment and the Statute: Counts 5, 23, and 26 | 78 |
| 47 | Purpose of the Statute | 80 |
| 48 | Elements of the Offense | 81 |
| 49 | Element 1: Statement or Representation | 82 |
| 50 | Element 2: Materiality | 83 |
| 51 | Element 3: False, Fictitious, or Fraudulent Statement | 84 |
| 52 | Element 4: Knowing and Willful Conduct | 85 |
| 53 | Element 5: Matter Within the Jurisdiction of the United States Government | 86 |
| 54 | Unanimity Explained | 87 |
| 55 | Acts and Declarations of Co-Conspirators | 88 |

# INDEX

| REQUEST | | PAGE NO. |
|---|---|---|
| 56 | Impossibility of Success | 89 |
| 57 | Success of Conspiracy Immaterial | 90 |
| 58 | Failure to Name a Defendant | 91 |
| 59 | Specific Investigation Techniques Not Required | 92 |
| 60 | Accomplices Called by the Government | 93 |
| 61 | Witness Using or Addicted to Drugs | 95 |
| 62 | Admission of Defendant | 96 |
| 63 | Consciousness of Guilt from False Exculpatory Statement | 97 |
| 64 | Chart and Summaries | 98 |
| 65 | Similar Acts – Intent, Knowledge, Absence of Mistake | 99 |
| 66 | Mixed Motive Not a Defense | 100 |

**REQUEST NO. 1**        **GENERAL REQUESTS**

The government respectfully requests that the Court give the following General Instructions[1] to the jury:

a.  Function of Court and Jury

b.  Statements of Court and Counsel Not Evidence

c.  Burden of Proof and Presumption of Innocence

d.  Reasonable Doubt

e.  Indictment Is Not Evidence

f.  Consider Each Defendant Separately

g.  Multiple Counts – Multiple Defendants

h.  Variance – Dates

i.  Government Treated Like Any Other Party

j.  Improper Considerations: Race, Religion, National Origin, Sex, or Age

k.  Witness Credibility – General Instruction

l.  Judicial Notice and Stipulations (If Applicable)

m. Jury to Draw No Adverse Inference from Defendant's Failure to Testify (If Applicable and Requested by Defense)

n.  Jury Notes

o.  Right to See Exhibits and Hear Testimony; Communications with Court

p.  Submitting the Indictment

q.  Sympathy

r.  Punishment is Not To Be Considered by the Jury

s.  Verdict of Guilt or Innocence Must Be Unanimous

---

[1] *See* Modern Federal Jury Instructions-Criminal ¶¶ 1.02, 2.01, 3.01, 4.01, 5.02, 5.05, 5.10, 9.01, 9.03, 9.04, 9.07.

1

**REQUEST NO. 2**          **THE INDICTMENT AND THE STATUTE: COUNT 1**

The defendants are each charged in Count 1 with violating Title 18, United States Code, Section 371, which provides that if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency of the United States, in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each is guilty of an offense against the United States.

Count 1 includes the following introductory allegations:

As relevant to this Indictment:

1.   The defendant, **PETER GERACE JR. ("GERACE")** was the owner and operator of Pharaoh's Gentleman's Club ("PGC"), located at 999 Aero Drive, Cheektowaga, New York, an establishment that sells alcohol, food, and offers live strip tease performances by female dancers.

2.   The defendant, **JOHN ERMIN a/k/a Tommy O** ("**ERMIN**") was the manager of PGC and the National President of the Outlaws Motorcycle Club ("Outlaws MC"), an International 1%er motorcycle club with chapters located in Buffalo, New York, additional locations in the United States, Canada, South America, Europe, Russia, Asia, and Australia. Other members of the Outlaws MC were also employed at PGC and attended PGC socially.

3.   The Outlaws MC have a motto that, "God Forgives, Outlaws Don't," which refers to the Outlaws MC's organizational commitment to intimidating, harming, or potentially killing individuals who pose a threat to their organization. Another phrase used by the Outlaws MC is "Snitches are a Dying Breed," which expresses the Outlaws MC's view about what should happen to individuals who cooperate and provide information to law enforcement, testify in court proceedings, or otherwise act adversely to the interests of the Outlaws MC, its leaders, members, and associates.

4.   **GERACE** was indicted and charged in United States District Court for the Western District of New York in Case Nos. 19-CR-227 and 23-CR-37.

2

5.      The Second Superseding Indictment in Case No. 19-CR-227 charged **GERACE** with Conspiracy to Defraud the United States; Paying a Bribe to a Public Official; Maintaining a Drug-Involved Premises, to wit: PGC; Conspiracy to Distribute Controlled Substances; and Conspiracy to Commit Sex Trafficking.

6.      The Introduction of the Second Superseding Indictment in Case No. 19-CR- 227, specifically alleged, in part: "Several of **GERACE'S** male employees at Pharaoh's are members of a motorcycle club called the Outlaws Motorcycle Club ("Outlaws MC")."

7.      The Indictment in Case No. 23-CR-37 charged **GERACE** with three counts of Witness Tampering and one count of Distribution of Cocaine.

8.      The Second Superseding Indictment in Case No. 19-CR-227 and the Indictment in 23-CR-37 were ordered joined for trial, and the scheduled trial was adjourned from several scheduled dates in 2023, which included June 16, 2023, August 14, 2023, and October 23, 2023.

9.      Crystal Quinn was a former PGC employee, a longtime friend, associate, and cleaning lady for **GERACE**, and was associated with several members of the Outlaws MC.

10.     On February 3, 2023, Crystal Quinn was charged by Criminal Complaint, 23- MJ-11, related to Facebook messages she sent to threaten a witness against **GERACE**. A copy of the Second Superseding Indictment in Case No. 19-CR-227 charging **GERACE** was attached to Crystal Quinn's Criminal Complaint.

11.     On February 16, 2023, Crystal Quinn met with FBI agents for a proffer interview during which she provided information about **GERACE**.

12.     On February 27, 2023, Crystal Quinn met with FBI agents for a proffer interview during which she provided information about **GERACE** and members of the Outlaws MC, including information that she had previously had a seizure from using cocaine at the Outlaws MC Chapter clubhouse in Buffalo, New York.

13.     On March 7, 2023, Crystal Quinn met with FBI agents for a proffer interview during which she provided information about **GERACE** and members of the Outlaws MC.

14.     On March 9, 2023, Crystal Quinn testified before the March 2022 Grand Jury in the United States District Court for the Western District of New York.

3

15. On March 23, 2023, the March 2022 Grand Jury returned an Indictment, Case No. 23-CR-37, charging **GERACE** with three counts of Witness Tampering and one count of Distribution of Cocaine.

16. On March 24, 2023, **GERACE** appeared before a United States District Judge for an arraignment on Indictment 23-CR-37. Following detention hearing proceedings on March 24 and March 27, 2023, **GERACE** was ordered detained pending trial.

17. On April 3, 2023, Crystal Quinn entered a Pre-Trial Diversion agreement with the United States Attorney's Office and the United States Probation Office, and also entered a formal Cooperation Agreement with the United States Attorney's Office.

18. Crystal Quinn's Cooperation Agreement required her to, in part: "[P]rovid[e] complete and truthful information regarding the witness's knowledge of any and all criminal activity, whether undertaken by [Crystal Quinn] or others, in any way involving or related to activities involving unlawful possession, manufacture, distribution, or use of controlled substances by others; activities involving maintaining a drug-involved premises; activities involving witness tampering, intimidation, or retaliation; and, activities involving bribery and/or public corruption. [Crystal Quinn's] cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such other proceedings as the government shall deem necessary, including, but not limited to pre-trial hearings, trials, sentencing hearings and forfeiture proceedings."

19. On April 6, 2023, upon request of the United States, Crystal Quinn's Criminal Complaint (23-MJ-11) was dismissed, and that dismissal was noted on the public docket for 23-MJ-11.

20. On April 28, 2023, Case Nos. 19-CR-227 and 23-CR-37 were ordered joined for trial, and Crystal Quinn was scheduled to testify at trial in Case Nos. 19-CR-227 and 23- CR-37 pending against **GERACE**.

21. On May 10, 2023, the United States Attorney's Office filed its witness list, under seal and pursuant to a protective order, in Case Nos. 19-CR-227 and 23-CR-37, listing Crystal Quinn as a government witness for trial.

22. On or about May 24, 2023, defendant **GERACE** moved to reopen his detention hearing and sought pre-trial release in Case Nos. 19-CR-227 and 23-CR-37.

4

23. On May 31, 2023, **GERACE'S** previously filed motion to reopen his detention hearing in Case Nos. 19-CR-227 and 23-CR-37 was denied, and he remained detained pending trial.

24. Gerace Attorney 1, who is known to the Grand Jury, was one of **GERACE'S** attorneys of record in Case Nos. 19-CR-227 and 23-CR-37 from June 15, 2021, until September 6, 2023. Attorney 2, who is known to the Grand Jury, was an unwitting attorney that Gerace Attorney 1 used to send messages to government witness Crystal Quinn in or about February 2023.

25. The Rare Breed Motorcycle Club ("RBMC") is a motorcycle club with chapters located and operating in Buffalo, New York and Wellsville, New York, within the Western District of New York. The RBMC is aligned with and supports the Outlaws MC, and has a relationship with **GERACE** and PGC.

26. PGC is a location where the Outlaws MC and other motorcycle clubs loyal to them, including the RBMC, have congregated. PGC has also sponsored Outlaws MC and RBMC events, including the RBMC Blues Cruise.

27. **MICHAEL RONCONE a/k/a Cone** ("**RONCONE**") was the President of the RBMC Wellsville Chapter, Vice President of the RBMC Buffalo Chapter, and is associated with **ERMIN** and the Outlaws MC.

28. **FRANK KNIGHT** ("**KNIGHT**") is a resident of Wellsville, New York, and is an associate of **RONCONE**, the RBMC, **HOWARD HINKLE JR**. ("**HINKLE**"), and **SIMON GOGOLACK a/k/a Greek** ("**GOGOLACK**").

29. **KNIGHT'S** residence in Wellsville, New York is located across the street from **GOGOLACK'S** residence in Wellsville, New York.

30. **HINKLE** is a Wellsville resident and is an associate of **RONCONE**, the RBMC, **KNIGHT**, and **GOGOLACK**.

31. **GOGOLACK** is a Wellsville resident and is an associate of the RBMC, **KNIGHT**, and **HINKLE**. **GOGOLACK** also knew Crystal Quinn from growing up and spending time with her in Depew, New York, where Crystal Quinn lived.

32. **RONCONE** hosted a weekly Thursday night poker game at the RBMC Chapter clubhouse in Wellsville, New York until the clubhouse was

5

destroyed by a fire. Thereafter, **KNIGHT** hosted the weekly Thursday night RBMC poker game at the Wellsville Fire Hall.

Count 1 incorporates those introductory allegations and further charges the defendants with:

2.  From in or about February 2023, and continuing thereafter until the return date of this Second Superseding Indictment, the defendants, **PETER GERACE JR.**, **JOHN THOMAS ERMIN a/k/a Tommy O**, **MICHAEL RONCONE a/k/a Cone**, **FRANK KNIGHT**, **HOWARD HINKLE, JR.**, and **SIMON GOGOLACK a/k/a Greek**, did knowingly and intentionally conspire and agree together and with others, known and unknown:

    a.  to defraud the United States of and concerning its governmental functions and rights, that is of and concerning its right to have its business and its affairs, and particularly the transaction of the official business of the United States District Court of the Western District of New York, and the Grand Jury of the United States District Court for the Western District of New York conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction; and

    b.  to violate Title 18, United States Code, Section 1503 (Obstruction of Justice) by corruptly endeavoring to influence, obstruct, and impede the due administration of justice, that is, the proceedings of the federal grand jury and the trials of the United States District Court for the Western District of New York.

### Manner and Means

3.  The conspiracy was carried out by the Manner and Means set forth below.

4.  It was a part of the conspiracy that the defendants would, by deceit, craft, trickery, and dishonest means, defraud the United States and interfere with its right to have its business and its affairs, and particularly the transaction of the official business of the United States District Court of the Western District of New York, and the Grand Jury of the United States District Court for the Western District of New York, conducted

6

honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction.

5.    It was a part of the conspiracy that the defendants would corruptly endeavor to influence, obstruct, and impede the due administration of justice, that is, the proceedings of the United States District Court of the Western District of New York, and the Grand Jury of the United States District Court for the Western District of New York, in that the defendants would:

a.    corruptly and by threat, force, and communication, influence, obstruct, and impede, and endeavor to influence, obstruct, and impede the due administration of justice regarding the scheduled trial in United States District Court for the Western District of New York Case Nos. 19-CR-227 and 23-CR-37; the March 2022 Federal Grand Jury in the Western District of New York; and the July 2023 Federal Grand Jury in the Western District of New York, by:

   i.    causing an individual, Attorney 2, to text message Crystal Quinn, who was already represented by another attorney, to corruptly influence, obstruct, and impede, and endeavor to corruptly influence, obstruct, and impede Crystal Quinn from cooperating with members of federal law enforcement, and to prevent Crystal Quinn from testifying against **GERACE** in United States District Court for the Western District of New York in Case Nos. 19-CR-227 and 23-CR-37, and from testifying before any federal grand juries investigating **GERACE**, including the March 2022 Federal Grand Jury in the Western District of New York;

   ii.   causing dead rats to be placed at Crystal Quinn's residence to corruptly and by threat and communication, influence, obstruct, and impede, and endeavor to corruptly influence, obstruct, and impede Crystal Quinn from cooperating with members of federal law enforcement, and to prevent Crystal Quinn from testifying against **GERACE** in United States District Court for the Western District of New York in Case Nos. 19-CR-227 and 23-CR-37, and from testifying before any federal grand juries investigating **GERACE**, including the March 2022 Federal Grand Jury in the Western District of New York;

   iii.  causing members and associates of motorcycle clubs to corruptly and by threat and communication, influence, obstruct, and impede, and endeavor to corruptly influence, obstruct, and impede Crystal Quinn from cooperating with members of federal law enforcement, and to prevent Crystal Quinn from testifying

against **GERACE** in United States District Court for the Western District of New York in Case Nos. 19-CR-227 and 23-CR-37;

iv. causing the death of Crystal Quinn to corruptly obstruct and impede Crystal Quinn from cooperating with members of federal law enforcement, and to prevent Crystal Quinn from testifying against **GERACE** in United States District Court for the Western District of New York in Case Nos. 19-CR-227 and 23-CR-37;

v. concealing the manner of Crystal Quinn's death from law enforcement and misdirecting law enforcement and FBI agents to prevent information from being discovered, subpoenaed, and presented to the July 2023 Grand Jury, which was investigating federal drug and firearm offenses and the death of Crystal Quinn, a federal witness;

vi. concealing evidence related to the death of Crystal Quinn to prevent information from being discovered, subpoenaed, and presented to the July 2023 Grand Jury, which was investigating federal drug and firearm offenses and the death of Crystal Quinn, a federal witness;

vii. concealing the identities and the extent and nature of the relationships between individuals who caused Crystal Quinn's death, and the RBMC, the Outlaws MC, **ERMIN**, and **GERACE** to prevent information from being discovered, subpoenaed, and presented to the July 2023 Grand Jury, which was investigating federal drug and firearm offenses, and the death of Crystal Quinn, a federal witness;

viii. creating and advancing a false narrative that Crystal Quinn was suicidal in order to conceal her true cause and manner of death, and to prevent such information from being discovered, subpoenaed, and presented to the July 2023 Grand Jury which was investigating federal drug and firearm offenses, and the death of Crystal Quinn, a federal witness; and

ix. concealing the unlawful activities of **GOGOLACK**, **KNIGHT**, **HINKLE**, **RONCONE**, and the RBMC to prevent information from being discovered, subpoenaed, and presented to the July 2023 Grand Jury, which was investigating federal drug and firearm offenses, and the death of Crystal Quinn, a federal witness,

8

In violation of Title 18, United States Code, Section 1503.

6. It was part of the conspiracy that Gerace Attorney 1, would make efforts to prevent Crystal Quinn from becoming a government witness.

7. It was part of the conspiracy that **GERACE** would advise others about the identity of witnesses who were cooperating and believed to be cooperating with members of federal law enforcement, and witnesses who had testified and were expected to testify before federal grand juries and at federal trials.

8. It was part of the conspiracy that **GERACE**, **ERMIN**, and others would monitor developments, share information, and meet regarding the federal investigations and prosecutions related to **GERACE** and PGC.

9. It was part of the conspiracy that members of the Outlaws MC, including **ERMIN**, would coordinate with members of the RBMC, including **RONCONE**.

10. It was part of the conspiracy that unknown individuals would attempt to scare Crystal Quinn and cause her to cease cooperation with the FBI in order to prevent her from testifying at federal court proceedings, including grand jury and trial proceedings.

11. It was part of the conspiracy that **GOGOLACK**, **HINKLE**, and unknown bikers would silence Crystal Quinn by any means necessary, including causing her death and making it look like an accident or a suicide.

12. It was part of the conspiracy that **GOGOLACK**, **KNIGHT**, **GERACE**, Gerace Attorney 1, and others made efforts to create and advance a cover story and false public narrative that Crystal Quinn was suicidal.

13. It was part of the conspiracy that **ERMIN**, **RONCONE**, **KNIGHT**, **HINKLE**, **GOGOLACK**, and others obtained and shared information about the FBI investigation into criminal activities and the death of Crystal Quinn, a federal witness.

14. It was part of the conspiracy that the defendants, **RONCONE**, **KNIGHT**, **HINKLE**, and **GOGOLACK**, made false, misleading, and evasive statements to law enforcement regarding their knowledge of the facts and circumstances related to the death of Crystal Quinn, a federal witness.

15. It was part of the conspiracy that the defendants, **RONCONE**, **KNIGHT**, **HINKLE**, and **GOGOLACK**, made false and misleading

statements to law enforcement to conceal the nature and extent of their relationships with each other and with the RBMC.

16.     It was part of the conspiracy that the members of the conspiracy made efforts to conceal physical evidence from members of law enforcement investigating the death of Crystal Quinn, and the criminal activities of defendants **RONCONE**, **KNIGHT**, **HINKLE**, and **GOGOLACK**, and others known and unknown to the Grand Jury, including members and associates of the RBMC.

## Overt Acts

17.     On or about February 16, 2023, knowing and having reason to know that Crystal Quinn was represented in the matter by another attorney, Gerace Attorney 1 caused an unwitting attorney, Attorney 2, to: (i) communicate with Crystal Quinn without the consent of Crystal Quinn's attorney; (ii) offer to represent Crystal Quinn in the matter in which Crystal Quinn already had an attorney; and (iii) offer to represent Crystal Quinn because Gerace Attorney 1, was "concerned that the feds might be trying to intimidate [Crystal Quinn] or even just bring [Crystal Quinn] in for questioning." Gerace Attorney 1 caused Attorney 2 to make a communication to Crystal Quinn as follows:

> "Omg I'm sorry to hear that hunny [crying emoji] Where are you living now? Are you ok otherwise? I know Mike well, great guy and great attorney. I'm guessing he's meeting you for the same concern I had as I got a call from Peter Gerace's attorney, Steve Cohen concerned that the feds might be trying to intimidate you or even just bring you in for questioning. He saw that I was your attorney in the past and reached out to me for me to make sure you were OK and knew I'm here if you need representation. And I want you to know I'm here even if you just need a friend as well [smiley emoji]."

18.     On or about March 13, 2023, individuals unknown to the Grand Jury placed dead rats on Crystal Quinn's mother's vehicle and in the vicinity of Crystal Quinn's residence in Depew, New York.

19.     On April 4, 2023, after **GERACE** was ordered detained on March 27, 2023, **ERMIN** visited **GERACE** in person at the Niagara County Jail.

20.     On or about May 24, 2023, defendant **GERACE**, through Gerace Attorney 1, moved to reopen **GERACE'S** detention hearing and for pre-trial release.

10

21. On or about May 31, 2023, **GERACE'S** motion to reopen his detention hearing in Case Nos 19-CR-227 and 23-CR-37 was denied. Following this denial, **GERACE** made statements, in sum and substance, as follows: (i) Fuck the rats; (ii) All rats should die; (iii) No matter what, anybody can get touched because when all this is over, I have very serious people to tie up my loose ends.

22. At all times relevant to this Second Superseding Indictment, inside the Outlaws MC clubhouse in Buffalo, New York, prominently displayed behind the bar, was a skeleton of a dead rat hanging from a noose with the caption "Outlaws 1%ers".

23. On June 6, 2023, the District Judge assigned to Case Nos. 19-CR-227 and 23- CR-37 issued a written decision denying **GERACE'S** motion to re-open the detention hearing and denying his motion for pre-trial release.

24. On or about June 20, 2023, Gerace Attorney 1 filed and caused the filing of a trial witness list that named two relatives of the assigned District Judge as **GERACE'S** defense witnesses. The listing of the District Judge's relatives as **GERACE** trial witnesses resulted in the District Judge recusing himself pursuant to 28 U.S.C. 455(b)(5)(iv), and the trial of Case Nos. 19-CR-227 and 23-CR-37, which was then scheduled for August 14, 2023, being adjourned.

25. The trial witness list filed or caused to be filed by Gerace Attorney 1 also listed Crystal Quinn as a defense witness. The listing of Crystal Quinn as a witness for Gerace circumvented the provisions of a Protective Order which prohibited attorneys for **GERACE** from revealing to **GERACE** the government's witnesses' names and from providing **GERACE** with the government's witness list.

26. On June 30, 2023, the trial in Case Nos. 19-CR-227 and 23-CR-37, previously scheduled to commence on August 14, 2023, was adjourned. When the newly assigned District Judge suggested a new trial date of September 25, 2023, Gerace Attorney 1 made representations to the District Judge that he was not available due to a previously scheduled vacation. Based, in part, on the representations of Gerace Attorney 1, the trial was rescheduled to commence on October 23, 2023.

27. On or about June 30, 2023, **RONCONE** and **KNIGHT** met in-person.

28. On or about July 4, 2023, **HINKLE** associated in-person with various bikers in Wellsville, New York.

29. On July 6, 2023, **ERMIN** visited **GERACE** in person at the Niagara County Jail.

30. On July 22, 2023, at approximately 5:51 p.m. EST, **GOGLACK** made an outgoing call to **HINKLE** and then called and texted Crystal Quinn.

31. On July 22, 2023, at approximately 6:57 p.m. EST, **GOGOLACK** asked Crystal Quinn to drive him from Buffalo, New York to Wellsville, New York by texting, in part: "let's take ur whip [car] to the country [Wellsville]."

32. On July 22, 2023, at approximately 9:31 p.m. EST, **GOGOLACK** received an incoming call from **HINKLE**, which lasted 16 minutes and 17 seconds.

33. On the morning of July 24, 2023, **KNIGHT** and **HINKLE** exchanged a cellular telephone call, which lasted approximately 1 minute.

34. Later that day, **KNIGHT** and **HINKLE** attempted to communicate by cellular telephone two additional times.

35. On July 25, 2023, at approximately 11:59 p.m. EST, **GOGOLACK,** who was still in the Buffalo-area, texted IIlNKLE that he "should be in town [Wellsville, New York] tomorrow give me a call then."

36. On July 26, 2023, at approximately 4:15 p.m. EST, **GOGOLACK** texted Crystal Quinn and told her that he was stranded in Buffalo with no transportation and that he needed help getting back to Wellsville, as follows: "If I don't get outta the city I'm gonna shoot myself".

37. On July 27, 2023, **GOGOLACK** and Crystal Quinn took Crystal Quinn's mother's car and drove from Depew, New York to Wellsville, New York.

38. On July 27, 2023, at approximately 7:39 p.m. EST, while with Crystal Quinn, **GOGOLACK** made an outgoing call to IIlNKLE. **GOGOLACK** then texted **HINKLE** and stated that he was "in town [and] have that," as follows: "How I'm in town n have that. Lmk if ur in cuz I don't have cash on mE . N I wanna gamble"

39. On July 27, 2023, at approximately 7:40 p.m. EST, **GOGOLACK** sent a follow-up text advising **HINKLE** to "[let me know] asap, as follows: "Lmk asap".

40. On July 27, 2023, at approximately 8:01 p.m. EST, **HINKLE** called **GOGOLACK,** and thereafter **GOGOLACK** brought Crystal Quinn to

the poker game hosted by **KNIGHT,** and attended by **HINKLE,** at the Wellsville Fire Hall.

41. On July 27, 2023, at approximately 8:26 p.m. EST, **HINKLE** and **GOGOLACK** walked off and engaged in private conversation away from Crystal Quinn.

42. On July 27, 2023, at approximately 9:51 p.m. EST, **HINKLE** and **GOGOLACK** walked off and engaged in private conversation away from Crystal Quinn.

43. On July 27, 2023, at approximately 9:59 p.m. EST, after the poker game had ended, **HINKLE** and **KNIGHT** engaged in conversation.

44. On July 27, 2023, after the poker game, **HINKLE, GOGOLACK,** and Crystal Quinn went to **HINKLE'S** nearby cabin.

45. On July 28, 2023, during the early morning hours, **GOGOLACK** and Crystal Quinn returned to **GOGOLACK'S** residence, located at 296 Scott Avenue in Wellsville. **GOGOLACK** then left Crystal Quinn in the residence while he walked over to **KNIGHT'S** residence, which was nearby. While **GOGOLACK** was out of the residence, Crystal Quinn was confronted by "bikers", whose actions placed Crystal Quinn in fear for her life.

46. On July 28, 2023, after Crystal Quinn was confronted by bikers and placed in fear for her life, **GOGOLACK** returned to the residence and reassured Crystal Quinn that he was on her side and would protect her from the bikers.

47. On or about July 31, 2023, **GOGOLACK** intentionally provided Crystal Quinn with a lethal dose of fentanyl.

48. On or about August 1, 2023, Crystal Quinn's mother texted **GOGOLACK** and threatened to call law enforcement if **GOGOLACK** did not get back to her immediately regarding her daughter, Crystal Quinn. Thereafter, **GOGOLACK** called Crystal Quinn's mother and falsely suggested that Crystal Quinn was suicidal and falsely stated that Crystal Quinn had taken half a Xanax and never woke up.

49. On August 1, 2023, after Crystal Quinn was deceased and prior to calling 911 **GOGOLACK** manipulated and staged the crime scene to make it look like Crystal Quinn's death was an accidental overdose or a suicide. This included **GOGOLACK** removing and attempting to conceal physical evidence, including some of Crystal Quinn's

13

personal belongings, in an abandoned vehicle located on his property some distance from the house.

50.    On August 1, 2023, at approximately 6:23 p.m. EST, **GOGOLACK** called 911 and reported that Crystal Quinn was not responsive, that he "tried Narcan," and that it was a "possible overdose."

51.    On August 1, 2023, after Crystal Quinn was deceased and after **GOGOLACK** called 911, **GOGOLACK** called then texted **KNIGHT** that he could "use a local friend." **GOGOLACK** then called **HINKLE**.

52.    On August 1, 2023, after members of the Wellsville Police Department and the Allegany County Coroner responded to **GOGOLACK'S** residence, as a result of his 911 call, **GOGOLACK** made false and misleading statements about the occupancy and layout of the residence in order to dissuade members of the Wellsville Police Department from searching areas of **GOGOLACK'S** residence in addition to the room in which Crystal Quinn's body was found. **GOGOLACK** also made false and misleading statements about Crystal Quinn's cause of death to create and advance a false narrative that Crystal Quinn had committed suicide. Specifically, **GOGOLACK** told law enforcement that Crystal Quinn was going to court against some "big wigs" and she was under a lot of stress and was talking about "ending it all."

53.    On August 1, 2023, after **GOGOLACK** called them, **KNIGHT** and **HINKLE** spoke with each other via cell phone.

54.    On or about August 1, 2023, after members of the Wellsville Police Department and the Allegany County Coroner left **GOGOLACK'S** residence, **GOGOLACK** faked his own overdose and went to a local hospital.

55.    On or about the evening of August 1, 2023, **KNIGHT** and **HINKLE** communicated with each other via cell phone for approximately three-and-a-half minutes.

56.    On August 2, 2023, at approximately 8:15 a.m., **HINKLE** and **KNIGHT** communicated with each other by cell phone.

57.    On the evening of August 2, 2023, **GOGOLACK** made false and misleading statements to the FBI regarding the manner and cause of Crystal Quinn's death and regarding **HINKLE'S** relationship with bikers.

14

58. On the evening of August 2, 2023, **KNIGHT** and **RONCONE** communicated with each other by cell phone and exchanged several text messages relating to the death of Crystal Quinn.

59. On August 3, 2023, **RONCONE** communicated via cell phone with several other members of the RBMC.

60. On August 3, 2023, **KNIGHT** made false and misleading statements to the FBI, including that **HINKLE** had not been present at the July 27, 2023 poker game that **KNIGHT** had organized and that **GOGOLACK** and Crystal Quinn had attended.

61. On August 3, 2023, **KNIGHT** told the FBI that he "assumed" Crystal Quinn died of a fentanyl overdose. **KNIGHT** further stated that **GOGOLACK** had told him that Crystal Quinn killed herself with Xanax and alcohol, thus advancing the false narrative that Crystal Quinn had committed suicide.

62. On August 3, 2023, following **KNIGHT'S** interview by the FBI, **KNIGHT** exchanged phone calls and text messages with **RONCONE**.

63. On August 3, 2023, at approximately 4:45 p.m., **KNIGHT** had a phone call with **RONCONE** that lasted for approximately 14 minutes.

64. At approximately 5:00 p.m., **KNIGHT** called **HINKLE** and engaged in a brief phone call. **KNIGHT** then visited **HINKLE** in person and reported to **HINKLE** regarding **KNIGHT'S** interview with the FBI.

65. On August 3, 2023, at approximately 6:03 p.m., **RONCONE** texted **KNIGHT** a screenshot of Crystal Quinn's Facebook profile and asked, "Is this the girl?"

66. At approximately 6:11 p.m., **RONCONE** called **KNIGHT** and they spoke for approximately two minutes.

67. Following **RONCONE'S** communications with **KNIGHT** on August 3, 2023, **RONCONE** communicated with other RBMC associates.

68. On August 4, 2023, Gerace Attorney 1 stated in United States District Court for the Western District of New York that Crystal Quinn had killed herself as a result of pressure placed on her by the government to testify against **GERACE**. This statement by Gerace Attorney 1 was intended to advance the false narrative that Crystal Quinn's death was a suicide.

15

69. On August 5, 2023, **KNIGHT** and **RONCONE** spoke on the phone for approximately 12 minutes.

70. On August 8, 2023, the FBI executed a search warrant at **GOGOLACK'S** Wellsville, New York residence.

71. Prior to August 8, 2023, **GOGOLACK** anticipated that law enforcement would search his house, and arranged with **KNIGHT** for **KNIGHT** to conceal a number of **GOGOLACK'S** firearms in **KNIGHT'S** residence, which was across the street from **GOGOLACK'S** house.

72. On August 8, 2023, the day of the search of **GOGOLACK'S** residence, **KNIGHT** sent a text message to another individual regarding Quinn's connection as witness to "[P]haroah[']s night club in Buffalo" and the "news articles" recounting the prosecution of **GERACE** in Case No. 19-CR-227.

73. On August 8, 2023, minutes after the FBI began executing the search of **GOGOLACK'S** residence, **KNIGHT** texted **RONCONE** and referenced the law enforcement activity unfolding across the street. Soon thereafter, **RONCONE** called **KNIGHT** and the two spoke for approximately one-and-a-half minutes.

74. On August 8, 2023, Gerace Attorney 1 filed a Motion, Declaration, and Memorandum of Law with exhibits in support of another motion seeking **GERACE'S** pre- trial release.

75. On August 11, 2023, **KNIGHT** and **GOGOLACK** communicated via CashApp. **KNIGHT**, in an effort to surreptitiously gauge the status of the federal investigation of **GOGOLACK,** asked **GOGOLACK** "they gonna hang you?" **GOGOLACK** responded with an update about the federal investigation.

76. On or about August 11, 2023, an investigator working with Gerace Attorney 1, a person known to the Grand Jury and referred to herein as "Investigator 1," was instructed by Gerace Attorney 1 to interview Crystal Quinn's mother and a friend of Crystal Quinn's mother in order to generate and obtain statements which would advance a narrative that Crystal Quinn had been suicidal prior to her death.

77. On or about August 11, 2023, Investigator 1 simultaneously interviewed Crystal Quinn's mother and her mother's friend. During the interview, Crystal Quinn's mother and her mother's friend both specifically denied that Crystal Quinn was suicidal prior to her death.

78.     On or before August 14, 2023, Investigator 1 drafted affidavits for Crystal Quinn's mother and her mother's friend which purported to accurately reflect the statements they had made to him during the interview. Investigator 1 then gave the draft affidavits to Gerace Attorney 1.

79.     On or about August 14, 2023, Gerace Attorney 1 made changes or caused changes to be made to the draft affidavits provided by Investigator 1. The changes made or caused to be made by Gerace Attorney 1 supported the narrative that Crystal Quinn had been suicidal prior to her death. Thereafter, Gerace Attorney 1 caused Crystal Quinn's mother and her mother's friend to sign affidavits containing things they never said.

80.     On or about August 14, 2023, Gerace Attorney 1 prepared an affidavit for himself which contained false and misleading statements about his relationship with Investigator 1 and the manner in which the statements from Crystal Quinn's mother and her mother's friend were obtained.

81.     On or about August 15, 2023, Gerace Attorney 1 caused the filing of his affidavit and the affidavits of Crystal Quinn's mother and her mother's friend as part of a Reply in support of **GERACE'S** motion for release.

82.     On August 27, 2023, members of the RBMC attended an Outlaws MC party in Lancaster, New York.

83.     On or about August 29, 2023, **KNIGHT** and **RONCONE** spoke via cell phone.

84.     On or about September 1, 2023, two days after **GOGOLACK'S** scheduled detention hearing on criminal complaint 23-MJ-1115 in the United States District Court for the Western District of New York was adjourned, **KNIGHT** and **RONCONE** spoke via cell phone.

85.     On or about September 4, 2023, **KNIGHT** and **RONCONE** spoke via cell phone.

86.     On or about September 8, 2023, **KNIGHT** and **RONCONE** spoke via cell phone.

87.     On or about September 9, 2023, **KNIGHT** and **RONCONE** spoke via cell phone.

88.     On or about September 15, 2023 **KNIGHT** and **RONCONE** spoke via cell phone twice.

17

89. On or about October 7, 2023, **KNIGHT** and **RONCONE** spoke via cell phone.

90. On or about October 15, 2023, **KNIGHT** and **RONCONE** spoke via cell phone.

91. On or about October 16, 2023, **KNIGHT** and **RONCONE** spoke via cell phone.

92. On October 21, 2023, **ERMIN** was in telephonic contact with **RONCONE'S** relative, a member of the RBMC.

93. On October 24, 2023, the FBI executed federal search warrants at **HINKLE** and **KNIGHT'S** residences. Prior to the execution of the search warrant at **KNIGHT'S** residence and prior to **KNIGHT'S** cell phone being seized by the FBI, **KNIGHT** communicated with **RONCONE** several times by call and text message.

94. On October 24, 2023, following communications with **KNIGHT**, **RONCONE** called his father, a member of the RBMC.

95. On October 24, 2023, the FBI interviewed **KNIGHT**. During the interview, **KNIGHT** made false and misleading statements to the FBI, including denying that **GOGOLACK** had visited **KNIGHT'S** residence during the early morning hours on July 28, 2023, which was the same approximate timeframe when Crystal Quinn was texting her friend, among other things, "911" and that she believed **GOGOLACK** and "the bikers" were setting her up.

96. On October 24, 2023, following **KNIGHT'S** interview with the FBI, **KNIGHT** acquired a new cellular phone. **RONCONE** called **KNIGHT'S** new phone number at approximately 5:26 p.m. EST, and they spoke for approximately 27 minutes.

97. On October 24, 2023, **ERMIN** communicated via cell phone with **RONCONE** from two separate phones.

98. On October 25, 2023, **RONCONE** and other members of the RBMC held a meeting at their Buffalo Chapter Clubhouse, located at 934 East Delevan Avenue, Buffalo, New York. During the meeting, members were directed to "keep their shit tight," to avoid criminal exposure.

99. On October 26, 2023, **KNIGHT** used a temporary phone to communicate with **RONCONE** via phone call approximately 12 times.

100.    On October 28, 2023, **KNIGHT** and **RONCONE** communicated telephonically.

101.    On October 29, 2023, **KNIGHT** and **RONCONE** communicated telephonically.

102.    On October 30, 2023, **KNIGHT** and **RONCONE** communicated telephonically for approximately 51 minutes.

103.    On October 31, 2023, **KNIGHT** and **RONCONE** communicated telephonically.

104.    On November 3, 2023, **HINKLE** appeared in federal court following his arrest on a Criminal Complaint (23-MJ-5219) the government proffered **HINKLE'S** connection to dangerous motorcycle clubs.

105.    Thereafter, on or about November 8, 2023, the RBMC suspended their Wellsville Chapter and switched **RONCONE'S** title from RBMC Wellsville Chapter President to RBMC Buffalo Chapter Vice President.

106.    On or about December 7, 2023, **RONCONE** made false, misleading, and evasive statements to the FBI including that he did not know Crystal Quinn "at all;" that "Simon [**GOGOLACK**] is crazy on drugs and out of his mind;" that **RONCONE** does not "know anything about the [Crystal Quinn] death;" and that there were "no drugs in his residence."

107.    On a date unknown, and continuing until on or about December 7, 2023, **ERMIN** monitored court proceedings and acquired court documents filed in Case No. 19- CR-227.

19

**REQUEST NO. 3**          **CONSPIRACY DEFINED (PURPOSE OF THE STATUTE)**

In Count 1, the defendants are accused of having been members of a conspiracy to violate certain federal laws, to defraud the United States, and to obstruct justice. A conspiracy is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense. It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes." Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime that was the object of the conspiracy was not actually committed.

The charge of conspiracy to defraud the government does not mean that one of the illegal objects must be to cause the government to suffer a loss of money or property as a consequence of the conspiracy. It would also be a conspiracy to defraud if one of the objects was to obstruct, interfere, impair, impede or defeat the legitimate functioning of the government through fraudulent or dishonest means, as I will define these terms.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful. This is because collective criminal activity poses

20

a greater threat to the public's safety and welfare than individual conduct and increases the

likelihood of success of a particular criminal venture.[2]

_____

[2] Adapted from Modern Federal Jury Instructions-Criminal ¶¶ 19.01, 19.02, Instruction 19-2, 19-12.

21

**REQUEST NO. 4**          **COUNT 1 - DIFFERENT ILLEGAL OBJECTIVES OR GOALS**

In Count 1 the defendants are charged with conspiring to accomplish two different illegal objectives or goals.  The first object the defendants are alleged to have agreed to accomplish is to defraud the United States, specifically the United States District Court of the Western District of New York, and the Grand Jury of the United States District Court for the Western District of New York.  The second object charges that the defendants agreed to obstruct justice.  It is not necessary for you to find that the conspiracy charged in Count 1 embodied both of these unlawful objectives.  It is sufficient if you find beyond a reasonable doubt that the defendants agreed, expressly or impliedly, with another on either of the two objectives — to defraud the United States or to obstruct justice. An agreement to accomplish either of these objectives is sufficient.  If the Government fails to prove that at least one of the two objectives was an object of the conspiracy in which the defendants participated, then you must find the defendants not guilty on the relevant count.  However, if you find that the defendants agreed with another to accomplish either of the two objectives charged, then you may find the defendants guilty of conspiracy if you find the other elements of the crime satisfied. However, you must all agree on the specific object the defendants agreed to try to accomplish.  Likewise, it is not necessary for you to find that any alleged objective was to be accomplished by all of the means described in the Indictment.  Here again, it is sufficient if you find beyond a reasonable doubt that an objective of the conspiracy — defrauding the United States or obstructing justice — was to be accomplished by any of the means alleged. [3]

---

[3] Adapted from *United States v. Helmsley*, 941 F.2d 71, 91 (2d Cir. 1992) (noting district court's charge ensured juror unanimity on conspiracy charge).

**REQUEST NO. 5**             **ELEMENTS OF CONSPIRACY**

In order to satisfy its burden of proof, the government must establish each of the following four essential elements beyond a reasonable doubt separately for Count 1:

First, that two or more persons entered the unlawful agreement charged in the indictment;

Second, that the defendants knowingly and willfully became a member of the conspiracy;

Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and

Fourth, that the overt act that you find to have been committed was committed to further some objective of the conspiracy.[4]

---

[4] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-3.

23

**REQUEST NO. 6**         **ELEMENT 1: EXISTENCE OF AGREEMENT**

The first element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the indictment.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a

24

common design existed on the part of the persons charged to act together to accomplish an

unlawful purpose.[5]

---

[5] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-4.

**REQUEST NO. 7**          **ELEMENT 2: MEMBERSHIP IN THE CONSPIRACY**

The second element that the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that the defendant knowingly, willfully and voluntarily became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether the defendant whom you are considering was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor that you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences that may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor parts in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that the defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a

27

criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. He thereby becomes a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.[6]

---

[6] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-6.

**REQUEST NO. 8**          **ELEMENT 3: COMMISSION OF AN OVERT ACT**

The third element that the government must prove beyond a reasonable doubt, to establish the offense of conspiracy, is that at least one of the overt acts charged in the indictment was knowingly committed by at least one of the conspirators, at or about the time and place alleged.

[I have already read the overt acts the government alleges were committed in furtherance of the conspiracy charged in Count 1. You will have a copy of the indictment with you in the deliberation room and may reference it to refresh your memory of the alleged overt acts.]

In order for the government to satisfy this element, it is not required that all of the overt acts alleged in the indictment be proven.

Similarly, you need not find that the defendant committed the overt act. It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the indictment. It is sufficient if you are convinced beyond a reasonable doubt, that it occurred at or about the time and place stated.

29

There is a limit on how much time the government has to obtain an indictment. For you to find the defendant guilty of conspiracy, the government must prove beyond a reasonable doubt that at least one overt act in furtherance of the conspiracy charged in Count 1 was committed after January 4, 2018.

Finally, you must find that either the agreement was formed or that an overt act was committed in the Western District of New York.[7]

---

[7] Adapted from Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-7.

**REQUEST NO. 9**        **ELEMENT 4: COMMISSION OF AN OVERT ACT IN FURTHERANCE OF THE CONSPIRACY**

The fourth, and final, element that the government must prove beyond a reasonable doubt is that the overt act was committed for the purpose of carrying out the unlawful agreement.

In order for the government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy, as charged in the indictment. In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act that, in and of itself is criminal or constitutes an objective of the conspiracy.[8]

---

[8] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-8.

**REQUEST NO. 10**        **THE INDICTMENT AND THE STATUTE: COUNT 2; WITNESS TAMPERING CONSPIRACY (18 U.S.C. § 1512(k))**

Defendants Gogolack, Gerace, Ermin, and Hinkle are charged in Count 2 with conspiracy to commit witness tampering, in violation of Title 18, United States Code, Section 1512(k).

Count 2 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

2.   From in or about March 2023, through on or about August 1, 2023, in the Western District of New York, and elsewhere, the defendants **PETER GERACE JR.**, **JOHN THOMAS ERMIN a/k/a Tommy O**, **HOWARD HINKLE, JR. a/k/a Hard How**, and **SIMON GOGOLACK a/k/a Greek**, did knowingly and willfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to commit the following offenses:

   a.   to kill Crystal Quinn, a witness, with the intent to prevent the attendance and testimony of Crystal Quinn in Case Nos. 19-CR-227 and 23-CR-37, Federal proceedings held in the United States District Court for the Western District of New York, and with the intent to prevent communication by Crystal Quinn to a law enforcement officer of the United States relating to the commission and possible commission of a Federal offense, in violation of Title 18, United States Code, Sections 1512(a)(1) and 1512(j);

   b.   to use physical force against Crystal Quinn, a witness, with the intent to influence, delay, and prevent the testimony of Crystal Quinn in Case Nos. 19-CR-227 and 23-CR-37, Federal proceedings held in the United States District Court for the Western District of New York, and with the intent to hinder, delay, and prevent communication by Crystal Quinn to a law enforcement officer and judge of the United States relating to the commission and possible commission of a Federal offense, in violation of Title 18, United States Code, Sections 1512(a)(2) and 1512(j);

32

c.      to use intimidation, threats, and corruptly persuade, Crystal Quinn, a witness, and to attempt to do so, with intent to influence, delay, and prevent the testimony of Crystal Quinn in Case Nos. 19-CR-227 and 23-CR-37, Federal proceedings held in the United States District Court for the Western District of New York, in violation of Title 18, United States Code, Section 1512(b)(1) and 1512(j);

d.      to use intimidation, threats, and corruptly persuade, Crystal Quinn, a witness, and to attempt to do so, with intent to cause and induce Crystal Quinn to withhold testimony from an official proceeding in Case Nos. 19-CR-227 and 23-CR-37, Federal proceedings held in the United States District Court for the Western District of New York, in violation of Title 18, United States Code, Sections 1512(b)(2)(A) and 1512(j); and

to use intimidation, threats, and corruptly persuade, Crystal Quinn, a witness, and to attempt to do so, with intent to prevent communication by Crystal Quinn to a law enforcement officer of the United States relating to the commission and possible commission of a Federal offense, in violation of Title 18, United States Code, Section 1512(b)(3).

In a few moments, I will read the relevant statutes for 1512(a)(1), 1512(a)(2), 1512(b)(1), and 1512(b)(2)(A), and 1512(j). Title 18, United States Code, Section 1512(k) provides, in pertinent part, that:

Whoever conspires to commit any offense under [Section 1512] [commits a crime]. [9]

---

[9] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.10, Instruction 46-63.

**REQUEST NO. 11**     **COUNT 2; WITNESS TAMPERING CONSPIRACY (18 U.S.C. § 1512(k))**

Count 2 of the Indictment alleges that defendants Gogolack, Gerace, Ermin, and Hinkle conspired to commit witness tampering. I will now instruct you what the government must prove to establish that the defendant conspired to commit a violation of Title 18, United States Code, Section 1512(k).

For Count 2, to satisfy its burden of proof, the government must prove the following elements beyond a reasonable doubt:

First, that two or more persons entered into the unlawful agreement to commit a substantive violation of Title 18, United States Code, Section 1512; and

Second, that the defendant knowingly and willfully became a member of the conspiracy.

I have already instructed you on the law of conspiracy. I have explained to you what is meant by the charge of conspiracy. I have also explained to you the legal requirements to prove that a defendant was a member of a conspiracy. You should use my instructions on these matters again here.[10]

---

[10] Adapted from Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-3.

34

**REQUEST NO. 12**          **OBJECTS OF THE CONSPIRACY – SECTIONS 1512(a)(1), 1512(a)(2), 1512(b)(1), and 1512(b)(2)(A)**

The government must prove the two elements I have just described beyond a reasonable doubt to prove the witness tampering conspiracy alleged in Count 2. However, I will now describe the objects of the conspiracy charged in Count 2, Tampering with a Witness pursuant to Sections 1512(a)(1), 1512(a)(2), 1512(b)(1), and 1512(b)(2)(A).

Section 1512(a)(1) states, in pertinent part, "Whoever kills another person, with intent to prevent the attendance or testimony of any person in an official proceeding [or] with intent to prevent communication by any person to a law enforcement officer [ ] information relating to the commission or possible commission of a Federal offense [commits a crime]."[11]

Section 1512(a)(2) states, in pertinent part, "Whoever uses physical force or the threat of physical force against any person, with intent to influence, delay, or prevent the testimony of any person in an official proceeding [or] with intent to hinder, delay, and prevent communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense [commits a crime]."[12]

Section 1512(b)(1) states, in pertinent part, "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, with intent to

---

[11] Title 18, United States Code, Section 1512(a)(1)
[12] Title 18, United States Code, Section 1512(a)(2)

35

influence, delay, or prevent the testimony of any person in an official proceeding [commits a crime]."[13]

Section 1512(b)(2)(A) states, in pertinent part, "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, with intent to cause or induce any person to withhold testimony from an official proceeding [commits a crime]."[14]

---

[13] Title 18, United States Code, Section 1512(b)(1)
[14] Title 18, United States Code, Section 1512(b)(2)(A)

**REQUEST NO. 13**   **OBJECTS OF THE CONSPIRACY – GOVERNMENT NOT REQUIRED TO PROVE SUBSTANTIVE CRIME OF TAMPERING WITH A WITNESS**

You may find the defendant guilty of the crime of conspiracy to commit witness tampering even if you find no witness tampering was actually committed and even if no member of the conspiracy committed an act in furtherance of the conspiracy. Similarly, you may find the defendant guilty of conspiracy even if it was impossible for him to carry out the crime of witness tampering successfully.[15]

---

[15] *Cf. Whitfield v. United States*, 543 U.S. 209, 213–14 (2005) (affirming the basic principle of statutory interpretation that conspiracy offenses do not require the government to prove an overt act unless otherwise required by statute). *See United States v. Edlind*, 887 F.3d 166, 176 n.4 (4th Cir. 2018) (observing that witness tampering conspiracy does not require the government to prove an overt act)

**REQUEST NO. 14**         **FIRST OBJECT OF THE CONSPIRACY – TAMPERING WITH A WITNESS PURSUANT TO SECTION 1512(a)(1)**

One of the objects in the conspiracy alleged in Count 2, Tampering with a Witness (pursuant to Section 1512(a)(1)), consists of the following elements:

First, that the defendant unlawfully killed Crystal Quinn;

Second, that the defendant killed Crystal Quinn (a) with the intent to prevent Crystal Quinn from attending or testifying in an official proceeding or (b) with the intent to prevent the communication by any person to a federal law enforcement officer relating to the commission or possible commission of a federal crime.[16]

---

[16] Modern Federal Jury Instructions-Criminal ¶ 46.07, Instruction 46-45.

**REQUEST NO. 15**          **FIRST OBJECT OF THE CONSPIRACY – FIRST ELEMENT OF SECTION 1512(a)(1)**

The first element of the object of the conspiracy to commit witness tampering (pursuant to Section 1512(a)(1)) is that the defendant unlawfully killed Crystal Quinn.

This means simply that the defendant inflicted injury or injuries upon the deceased from which the deceased died.

An act is done unlawfully if it is done without justification or excuse.  While the taking of a human life is a most serious matter, no all killing, even when intentional, is unlawful.  (*If applicable*: The law recognizes that homicide, committed in self-defense, may, under certain circumstances, be excused or justified, and so it is not considered unlawful.  But there are definite standards that determine the application of the law of self-defense.)[17]

---

[17] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.07, Instruction 46-46.

39

**REQUEST NO. 16**  **FIRST OBJECT OF THE CONSPIRACY – SECOND ELEMENT OF SECTION 1512(a)(1)**

The second element of the object of the conspiracy to commit witness tampering (pursuant to Section 1512(a)(1)) is that the defendant killed Crystal Quinn (a) with the intent to prevent Crystal Quinn from attending or testifying in an official proceeding or (b) with the intent to prevent the communication by any person to a federal law enforcement officer relating to the commission or possible commission of a federal crime.

An official proceeding means a proceeding before a court, judge, or federal agency. The proceeding may be civil or criminal. You are instructed that a federal criminal trial and a federal grand jury proceeding are official proceedings.

The law does not require that the federal proceedings be pending at the time of the killing as long as the proceeding was foreseeable such that the defendant knew that his actions were likely to affect the proceeding. In addition, the Government does not need to prove that the defendant knew the proceeding would be in federal court or before a federal grand jury.

If you find that the defendant acted with the intent to prevent communication by Crystal Quinn to a specific law enforcement officer or group of officers, this element is satisfied if that officer or one of the group of officers was a federal law enforcement officer. A federal law enforcement officer is an officer or employee of the federal government who is authorized to act on behalf of the federal government in the prevention, detection,

40

investigation, or prosecution of federal crimes.  The government is not required to prove that the defendant knew that the officer was a federal law enforcement officer.

On the other hand, if you find that the defendant was not acting with the intent to prevent communication to a particular officer or group of officers, then this element is satisfied only if the government proves beyond a reasonable doubt that there was a reasonable likelihood that had Crystal Quinn been able to communicate with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer.[18]

---

[18] Modern Federal Jury Instructions-Criminal ¶ 46.07, Instructions 46-47 & 46-48.

41

**REQUEST NO. 17**      **SECOND OBJECT OF THE CONSPIRACY – TAMPERING WITH A WITNESS PURSUANT TO SECTION 1512(a)(2)**

The second object in the conspiracy alleged in Count 2, Tampering with a Witness (pursuant to Section 1512(a)(2)), consists of the following elements:

First, that the defendant knowingly used physical force or the threat of physical force against Crystal Quinn, or attempted to do so; and

Second, that the defendant acted knowingly and with the intent to influence or delay or prevent the testimony of Crystal Quinn in an official federal proceeding, or with the intent to hinder, delay or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense.[19]

---

[19] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.08, Instruction 46-51.

**REQUEST NO. 18**        **SECOND OBJECT OF THE CONSPIRACY – FIRST ELEMENT OF SECTION 1512(a)(2)**

The first element of the object of the conspiracy to commit witness tampering (pursuant to Section 1512(a)(2)) is that the defendant knowingly used physical force, or the threat of physical force against Crystal Quinn, or attempted to do so.

"Physical force" simply means physical action against another, and includes confinement of a person against his or her will.

A threat is simply the expression of an intention to do harm that has a reasonable tendency to intimidate.  A threat may be communicated by words as well as gestures.  In order to find that the defendant used threats of physical force, as charged in the indictment, you need not find that he intended to carry out the threat.[20]

---

[20] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.08, Instruction 46-52.

43

**REQUEST NO. 19**     **SECOND OBJECT OF THE CONSPIRACY – SECOND ELEMENT OF SECTION 1512(a)(2)**

The second element of the second object of the conspiracy to commit witness tampering (pursuant to Section 1512(a)(2)) is that the defendant acted knowingly and with the intent to influence, delay, or prevent the testimony of Crystal Quinn in an official proceeding, or that the defendant acted knowingly and with the intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense.

To act with the intent to influence the testimony of a witness means to act for the purpose of getting that witness to change or color or shade her testimony in some way. It is not necessary for the government to prove that the witness's testimony was in fact changed in any way.

An official proceeding means a proceeding before a court, judge, or federal agency. The proceeding may be civil or criminal. You are instructed that a federal criminal trial and a federal grand jury proceeding are official proceedings.

The law does not require that the federal proceedings be pending at the time of the killing as long as the proceeding was foreseeable such that the defendant knew that his actions were likely to affect the proceeding. In addition, the Government does not need to prove that the defendant knew the proceeding would be in federal court or before a federal grand jury.

44

If you find that the defendant acted with the intent to prevent communication by Crystal Quinn to a specific law enforcement officer or group of officers, this element is satisfied if that officer or one of the group of officers was a federal law enforcement officer. A federal law enforcement officer is an officer or employee of the federal government who is authorized to act on behalf of the federal government in the prevention, detection, investigation, or prosecution of federal crimes. The government is not required to prove that the defendant knew that the officer was a federal law enforcement officer.

On the other hand, if you find that the defendant was not acting with the intent to prevent communication to a particular officer or group of officers, then this element is satisfied only if the government proves beyond a reasonable doubt that there was a reasonable likelihood that had Crystal Quinn been able to communicate with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer.[21]

---

[21] Modern Federal Jury Instructions-Criminal ¶ 46.08, Instructions 46-53 & 46-54.

45

**REQUEST NO. 20**    **THIRD AND FOURTH OBJECTS OF THE CONSPIRACY – TAMPERING WITH A WITNESS PURSUANT TO SECTION 1512(b)(1) AND (b)(2)(A)**

The third and fourth objects in the conspiracy alleged in Count 2, Tampering with a Witness (pursuant to Sections 1512(b)(1) and 1512(b)(2)(A), respectively), consist of the following elements:

First, [for both sections] that the defendant knowingly used intimidation, threatened, or corruptly persuaded Crystal Quinn, or attempted to do so; and

Second, [for section 1512(b)(1)]that the defendant acted knowingly and with the intent to influence or delay or prevent the testimony of Crystal Quinn in an official federal proceeding, or [for section 1512(b)(2)(a)] with the intent to cause or induce Crystal Quinn to withhold testimony from an official proceeding.[22]

---

[22] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.09, Instruction 46-57.

**REQUEST NO. 21**  **THIRD AND FOURTH OBJECTS OF THE CONSPIRACY – FIRST ELEMENT OF SECTIONS 1512(b)(1) and 1512(b)(2)(A)**

The first element of the third and fourth objects of the conspiracy to commit witness tampering (pursuant to Sections 1512(b)(1) and 1512(b)(2)(A)) is that the defendant knowingly used intimidation, threatened, or corruptly persuaded Crystal Quinn, or attempted to do so.

Intimidation includes frightening a person, inspiring or affecting her by fear or deterring her by threats. It does not matter whether or not the person alleged to be the object of the threat is actually frightened, or thinks she is in physical danger. It is enough that the threat had a reasonable tendency to make the person fearful.

A threat is simply the expression of an intention to do harm. A threat may be communicated by words as well as gestures. In order to find that the defendant used threats, as charged in the indictment, you need not find that he intended to carry out the threat. The real issue is whether the words allegedly used were in fact uttered by him, and expressed an intention to do harm.

To corruptly persuade means to act knowingly and with a wrongful or evil purpose to convince or induce another person to engage in certain conduct.[23]

---

[23] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.09, Instruction 46-58.

47

**REQUEST NO. 22**     **THIRD AND FOURTH OBJECTS OF THE CONSPIRACY – SECOND ELEMENT OF SECTIONS 1512(b)(1) and 1512(b)(2)(A)**

The second element of the third and fourth objects of the conspiracy to commit witness tampering (pursuant to Sections 1512(b)(1) and 1512(b)(2)(A)) is [for section 1512(b)(1)]that the defendant acted knowingly and with the intent to influence or delay or prevent the testimony of Crystal Quinn in an official federal proceeding, or [for section 1512(b)(2)(a)] that the defendant acted knowingly and with the intent to cause or induce Crystal Quinn to withhold testimony from an official proceeding.

To act with the intent to influence the testimony of a witness means to act for the purpose of getting that witness to change or color or shade her testimony in some way.  It is not necessary for the government to prove that the witness's testimony was in fact changed in any way.

An official proceeding means a proceeding before a court, judge, or federal agency. The proceeding may be civil or criminal.  You are instructed that a federal criminal trial and a federal grand jury proceeding are official proceedings.

The law does not require that the federal proceedings be pending at the time of the killing as long as the proceeding was foreseeable such that the defendant knew that his actions

48

were likely to affect the proceeding.  In addition, the Government does not need to prove that

the defendant knew the proceeding would be in federal court or before a federal grand jury.[24]

---

[24] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.09, Instructions 46-59.

**REQUEST NO. 23**         **THE INDICTMENT AND THE STATUTE:**
**COUNT 3; WITNESS RETALIATION CONSPIRACY (18**
**U.S.C. § 1513(f))**

Defendants Gogolack, Gerace, Ermin, and Hinkle are charged in Count 3 with conspiracy to commit witness retaliation, in violation of Title 18, United States Code, Section 1513(f).

Count 3 of the Indictment incorporates the introductory allegations and the allegations in Count 1 that I have already read to you and further alleges the following:

3.    From in or about March 2023, through on or about August 1, 2023, in the Western District of New York, and elsewhere, the defendants **PETER GERACE JR.**, **JOHN THOMAS ERMIN a/k/a Tommy O**, **HOWARD HINKLE JR. a/k/a Hard How**, and **SIMON GOGOLACK a/k/a Greek**, did knowingly and willfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to commit the following offenses:

a.  to kill Crystal Quinn, a witness, with the intent to retaliate against Crystal Quinn for her attendance at an official proceeding, namely, a Federal grand jury proceeding in Case Number 23-CR-37 in the United States District Court for the Western District of New York, in violation of Title 18, United States Code, Section 1513(a)(1)(A);

b.  to kill Crystal Quinn, a witness, with the intent to retaliate against Crystal Quinn for providing to a law enforcement officer any information relating to the commission and possible commission of a Federal offense, in violation of Title 18, United States Code, Section 1513(a)(1)(B);

c.  to knowingly engage in conduct and thereby cause bodily injury to Crystal Quinn, with the intent to retaliate against Crystal Quinn for her attendance as a witness in a Federal proceeding, namely a Federal grand jury proceeding in Case Number 23-CR-37 in United States District Court for the Western District of New York, and for providing information relating to the commission and possible commission of a Federal offense to a law enforcement officer, in violation of Title 18, United States

50

Code, Section 1513(b).

In a few moments, I will read the relevant statutes for 1513(a)(1)(A), 1513(a)(1)(B), and 1513(b).  Title 18, United States Code, Section 1513(f) provides, in pertinent part, that:

Whoever conspires to commit any offense under [Section 1513] [commits a crime]. [25]

---

[25] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.12, Instruction 46-72.

51

**REQUEST NO. 24**         **COUNT 3; WITNESS RETALIATION CONSPIRACY (18 U.S.C. § 1513(f))**

Count 3 of the Indictment alleges that defendants Gogolack, Gerace, Ermin, and Hinkle conspired to commit witness retaliation.  I will now instruct you what the government must prove to establish that the defendant conspired to commit a violation of Title 18, United States Code, Section 1513(f).

For Count 3, to satisfy its burden of proof, the government must prove the following elements beyond a reasonable doubt:

First, that two or more persons entered into the unlawful agreement to commit a substantive violation of Title 18, United States Code, Section 1513; and

Second, that the defendant knowingly and willfully became a member of the conspiracy.

I have already instructed you on the law of conspiracy.  I have explained to you what is meant by the charge of conspiracy.  I have also explained to you the legal requirements to prove that a defendant was a member of a conspiracy.  You should use my instructions on these matters again here.[26]

---

[26] Adapted from Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-3.

**REQUEST NO. 25**     **OBJECTS OF THE CONSPIRACY – SECTIONS 1513(a)(1)(A), 1513(a)(1)(B), and 1513(b)**

The government must prove the two elements I have just described beyond a reasonable doubt to prove the witness retaliation conspiracy alleged in Count 3. However, I will now describe the objects of the conspiracy charged in Count 3, Retaliating against a Witness pursuant to Sections 1513(a)(1)(A), 1513(a)(1)(B), and 1513(b).

Section 1513(a)(1)(A) states, in pertinent part, "Whoever kills another person, with the intent to retaliate against any person for the attendance of a witness [ ] at an official proceeding or any testimony given [ ] by a witness in an official proceeding [commits a crime]."[27]

Section 1513(a)(1)(B) states, in pertinent part, "Whoever kills another person, with the intent to retaliate against any person for providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense [commits a crime]."[28]

Section 1513(b) states, in pertinent part, "Whoever knowingly engages in any conduct and thereby causes bodily injury to another person [ ] or threatens to do so, with intent to retaliate against any person for the attendance of a witness [ ] at an official proceeding, or any testimony given [ ] by a witness in an official proceeding; or with intent to retaliate against

---

[27] Title 18, United States Code, Section 1513(a)(1)(A)
[28] Title 18, United States Code, Section 1513(a)(1)(B)

any person for any information relating to the commission or possible commission of a

Federal offense [ ] given by a person to a law enforcement officer [commits a crime]."[29]

---

[29] Title 18, United States Code, Section 1513(b)

**REQUEST NO. 26**          **OBJECTS OF THE CONSPIRACY – GOVERNMENT NOT REQUIRED TO PROVE SUBSTANTIVE CRIME OF RETALIATING AGAINST A WITNESS**

You may find the defendant guilty of the crime of conspiracy to commit witness retaliation even if you find no witness retaliation was actually committed and even if no member of the conspiracy committed an act in furtherance of the conspiracy. Similarly, you may find the defendant guilty of conspiracy even if it was impossible for him to carry out the crime of witness retaliation successfully.[30]

---

[30] *Cf. Whitfield v. United States*, 543 U.S. 209, 213–14 (2005) (affirming the basic principle of statutory interpretation that conspiracy offenses do not require the government to prove an overt act unless otherwise required by statute). *See United States v. Edlind*, 887 F.3d 166, 176 n.4 (4th Cir. 2018) (observing that witness tampering conspiracy does not require the government to prove an overt act)

**REQUEST NO. 27**　　　　**FIRST AND SECOND OBJECTS OF THE CONSPIRACY –
RETALIATING AGAINST A WITNESS PURSUANT TO
SECTIONS 1513(a)(1)(A) AND 1513(a)(1)(B)**

The first and second objects in the conspiracy alleged in Count 3, Retaliating Against a Witness (pursuant to Sections 1513(a)(1)(A) and 1513(a)(1)(B)), consist of the following elements:

First, that the defendant unlawfully killed Crystal Quinn;

Second, [as to Section 1513(a)(1)(A)] that the defendant killed Crystal Quinn with the intent to retaliate against Crystal Quinn for the attendance of a witness at an official proceeding or testimony given in an official proceeding; or [as to section 1513(a)(1)(B)] that the defendant killed Crystal Quinn with the intent to retaliate against Crystal Quinn for providing to a law enforcement officer information relating to the commission or possible commission of a federal crime.[31]

---

[31] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.12, Instruction 46-74.

**REQUEST NO. 28**       **FIRST AND SECOND OBJECTS OF THE CONSPIRACY –**
                        **FIRST ELEMENT OF SECTIONS 1513(a)(1)(A) AND**
                        **1513(a)(1)(B)**

The first element of the first and second objects of the conspiracy to commit witness retaliation (pursuant to Sections 1513(a)(1)(A) and 1513(a)(1)(B)) is that the defendant unlawfully killed Crystal Quinn.

This means simply that the defendant inflicted injury or injuries upon the deceased from which the deceased died.

An act is done unlawfully if it is done without justification or excuse. While the taking of a human life is a most serious matter, no all killing, even when intentional, is unlawful. (*If applicable*: The law recognizes that homicide, committed in self-defense, may, under certain circumstances, be excused or justified, and so it is not considered unlawful. But there are definite standards that determine the application of the law of self-defense.)[32]

---

[32] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.07, Instruction 46-46.

**REQUEST NO. 29**    **FIRST AND SECOND OBJECTS OF THE CONSPIRACY –**
**SECOND ELEMENT OF SECTIONS 1513(a)(1)(A) AND**
**1513(a)(1)(B)**

The second element of the first and second objects of the conspiracy to commit witness retaliation is that the defendant killed Crystal Quinn [as to Section 1513(a)(1)(A)] with the intent to retaliate against Crystal Quinn for the attendance of a witness at an official proceeding or testimony given in an official proceeding or [as to Section 1513(a)(1)(B)] with the intent to retaliate against Crystal Quinn for providing to a law enforcement officer information relating to the commission or possible commission of a federal crime.

An official proceeding means a proceeding before a court, judge, or federal agency. The proceeding may be civil or criminal. You are instructed that a federal criminal trial and a federal grand jury proceeding are official proceedings.

A law enforcement officer means an officer or employee of the federal government authorized to prevent, investigate or prosecute offenses or serving as a probation officer. You are instructed that a Special Agent of the Federal Bureau of Investigation is a law enforcement officer. In this regard, the government must also prove that the defendant knew that Crystal Quinn was cooperating with a federal law enforcement officer.

In order to satisfy this element, it is not necessary for the government to prove that the defendant knew he was breaking any particular law.[33]

---

[33] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.12, Instruction 46-77.

58

**REQUEST NO. 30**    **THIRD    OBJECT    OF    THE    CONSPIRACY    – RETALIATING  AGAINST  A  WITNESS  PURSUANT  TO SECTION 1513(b)**

The third object in the conspiracy alleged in Count 3, Retaliating Against a Witness (pursuant to Section 1513(b)), consists of the following elements:

First, that the defendant knowingly engaged in the conduct alleged in the indictment;

Second, that the defendant's conduct caused bodily injury to Crystal Quinn or threatened to do so; and

Third, that the defendant acted with the intent to retaliate against Crystal Quinn for the attendance of a witness or party at an official proceeding, or for testimony given at an official proceeding, or for information given relating to the commission of a federal offense to a law enforcement officer.[34]

---

[34] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.12, Instruction 46-74.

**REQUEST NO. 31**         **THIRD OBJECT OF THE CONSPIRACY – FIRST ELEMENT OF SECTION 1513(b)**

The first element of the third object of the conspiracy to commit witness retaliation (pursuant to Section 1513(b)) is that the defendant knowingly engaged in the conduct alleged in the indictment.

An act is done knowingly if it is done voluntarily and purposely and not by accident or mistake.[35]

---

[35] Modern Federal Jury Instructions-Criminal ¶ 46.12, Instruction 46-75.

60

**REQUEST NO. 32**        **THIRD OBJECT OF THE CONSPIRACY – SECOND ELEMENT OF SECTION 1513(b)**

The second element of the third object of the conspiracy to commit witness retaliation (pursuant to Section 1513(b)) is that the defendant's conduct caused bodily injury to Crystal Quinn or threatened to do so.

Bodily injury means a cut, abrasion, bruise, burn or disfigurement, physical pain, illness or the impairment of the function of a bodily member, organ or mental facility.  It includes any injury to the body no matter how temporary.

In this regard it is not necessary that the defendant himself caused the bodily injury. It is sufficient if you find that the defendant knowingly participated in some activity that had the consequence or effect of injuring Crystal Quinn.

Nor is it necessary to prove that Crystal Quinn actually was injured; it is sufficient if the defendant knowingly threatened to cause bodily injury to Crystal Quinn.  A threat is simply the expression of intention to do harm.  A threat may be communicated by words as well as gestures.  In order to find that the defendant threatened to cause Crystal Quinn bodily harm, you need not find that he intended to carry out the threat.[36]

---

[36] Modern Federal Jury Instructions-Criminal ¶ 46.12, Instructions 46-76.

61

**REQUEST NO. 33**          **THIRD OBJECT OF THE CONSPIRACY – THIRD ELEMENT OF SECTION 1513(b)**

The third element of the third object of the conspiracy to commit witness retaliation (pursuant to Section 1513(b)) is that the defendant acted with the intent to retaliate against Crystal Quinn for the attendance of a witness or party at an official proceeding or for testimony given in an official proceeding or for information given relating to the commission of a federal offense to a law enforcement officer.

An official proceeding means a proceeding before a court, judge, or federal agency. The proceeding may be civil or criminal. You are instructed that a federal criminal trial and a federal grand jury proceeding are official proceedings.

A law enforcement officer means an officer or employee of the federal government authorized to prevent, investigate or prosecute offenses or serving as a probation officer. You are instructed that a Special Agent of the Federal Bureau of Investigation is a law enforcement officer. In this regard, the government must also prove that the defendant knew that Crystal Quinn was cooperating with a federal law enforcement officer.

In order to satisfy this element, it is not necessary for the government to prove that the defendant knew he was breaking any particular law.[37]

---

[37] Adapted from Modern Federal Jury Instructions-Criminal ¶ 46.12, Instruction 46-77.

**REQUEST NO. 34**          **THE INDICTMENT AND THE STATUTE:**
**COUNT 4; DISTRIBUTION OF FENTANYL RESULTING**
**IN DEATH (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C))**

Defendant Gogolack is charged in Count 4 with a violation of Title 21, United States

Code, Sections 841(a)(1) and 841(b)(1)(C). Those sections provide, in pertinent part, that:

"[Whoever] knowingly or intentionally [ ] distributes [ ] or possesses with intent to [ ]

distribute a controlled substance [shall be guilty of a crime]."

Count 4 of the Indictment reads as follows:

4.      Between on or about July 31, 2023, and August 1, 2023, in the Western
District of New York, the defendant, SIMON GOGOLACK a/k/a
Greek, did knowingly, intentionally, and unlawfully possess with intent
to distribute, and distribute, fentanyl, a Schedule II controlled
substance; and the death of Crystal Quinn resulted from the use of such
substances.  All in violation of Title 21, United States Code, Sections
841(a)(1) and 841(b)(1)(C). [38]

---

[38] Title 21, United States Code, Section 841(a)(1); Modern Federal Jury Instructions-
Criminal ¶ 56.01, Instruction 56-1.

**REQUEST NO. 35**          **COUNT 4; DISTRIBUTION OF FENTANYL RESULTING IN DEATH – ELEMENTS OF THE OFFENSE**

In order to prove this charge against the defendant, the government must establish beyond a reasonable doubt each of the following three elements of the crime:

First, that the defendant possessed a controlled substance;

Second, that the defendant knew that he possessed a controlled substance;

Third, that the defendant distributed, or intended to distribute, the controlled substance; and

Fourth, that the controlled substance distributed by defendant caused the death of another.[39]

---

[39] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-2.

64

**REQUEST NO. 36**          **COUNT 4; DISTRIBUTION OF FENTANYL RESULTING**
                           **IN DEATH – FIRST ELEMENT**

The first element the government must prove beyond a reasonable doubt is that the defendant possessed fentanyl.

To establish this element, the government must prove that the material that the defendant is charged with possessing (or distributing) is, in fact, fentanyl.  The government may prove this through either direct evidence or through circumstantial evidence.  An example of direct evidence is the testimony of a chemist who has done a chemical analysis of the material.  Circumstantial evidence would be evidence from which you could infer that the material was fentanyl, such as testimony concerning the names used by the defendant to refer to the material or testimony about the material's appearance.  Whether the government relies on direct or circumstantial evidence to prove that the material in issue was fentanyl, it must prove so beyond a reasonable doubt.[40]

---

[40] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-3.

65

**REQUEST NO. 37**          **DEFINITION OF POSSESSION**

As I have instructed you, the government must prove beyond a reasonable doubt that the defendant "possessed" the drugs.  The legal concept of possession may differ from the everyday usage of the term, so I will explain it in some detail.

Actual possession is what most of us think of as possession; that is, having physical custody or control of an object.  For example, if you find that the defendant had the drugs on his person, you may find that he had possession of the drugs.  However, a person need not have actual physical custody of an object in order to be in legal possession of it.  If an individual has the ability to exercise substantial control over an object that he does not have in his physical custody, then he is in possession of that item.  An example of this from everyday experience would be a person's possession of items he keeps in a safe deposit box of his bank.  Although the person does not have physical custody of those items, he exercises substantial control over them and so has legal possession of them.

The law also recognizes that possession may be sole or joint.  If one person alone possesses something, that is sole possession.  However, it is possible that more than one person may have the power and intention to exercise control over the drugs.  This is called joint possession.  If you find that the defendant had such power and intention, then he possessed the drugs under this element even if he possessed the drugs jointly with another.

Here is an example. Suppose A is negotiating the price of heroin with C. Standing next to A is B, who has several envelopes of heroin in his pocket. After a period of negotiation, A

66

directs B to hand over to C a few of the envelopes. C then hands A some money. In this situation, you could find that B had possession of the narcotics because he had them in his pocket. However, you could find that A also had possession of the narcotics because of his proximity to the drugs, his association with B, the person in actual possession of them, and his negotiations over price. This example is not conclusive but is simply meant to illustrate these concepts.

Possession of drugs cannot be found solely on the ground that a defendant was near or close to the drugs.  Nor can it be found simply because a defendant was present at a scene where drugs were involved, or solely because a defendant associated with a person who does control the drugs or the property where they were found.  However, these factors may be considered by you, in connection with all other evidence, in making your decision whether the defendant possessed the drugs.[41]

---

[41] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-4.

67

**REQUEST NO. 38**   **INFERENCE FROM CONTROL OVER PLACE WHERE FOUND**

As I have instructed you, the government must prove beyond a reasonable doubt that the defendant "possessed" A defendant may own or have control over the place where the narcotics are found, such as an apartment. When the defendant is the sole person having such ownership or control, this control is significant evidence of the defendant's control over the drugs themselves, and thus of his possession of the drugs. You should note, however, that the defendant's sole ownership or control of a residence does not necessarily mean that the defendant had control and possession of the drugs found in it.

A defendant may also share ownership or control of the place where drugs are found. In this event the drugs may be possessed by only one person, or by some of the people who control the place, or by all of them. However, standing alone, the fact that a defendant had joint ownership or control over the place where the drugs were found is not sufficient evidence to find that the defendant possessed the drugs found there. In order to find that the defendant possessed the drugs because of his joint ownership or control over the place where they were found, you must find beyond a reasonable doubt that the defendant knew about the presence of the drugs and intended to exercise control over them.[42]

---

[42] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-5.

68

**REQUEST NO. 39**        **COUNT 4; DISTRIBUTION OF FENTANYL RESULTING IN DEATH – SECOND ELEMENT**

The second element the government must prove beyond a reasonable doubt is that the defendant knew that he possessed narcotics.

To establish this element, the government must prove that the defendant knew that he possessed narcotics, and that his possession was not due to carelessness, negligence, or mistake. If you find that the defendant did not know that he had narcotics in his possession, or that he did not know that what he possessed was, in fact, narcotics, then you must find the defendant not guilty.

Although the government must prove that the defendant knew that he possessed narcotics, the government does not have to prove that such defendant knew the exact nature of the drugs in his possession. It is enough that the government proves that the defendant knew that he possessed some kind of narcotic.[43]

---

[43] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-6.

69

**REQUEST NO. 40          METHOD OF PROVING KNOWLEDGE**

Your decision whether the defendant knew the materials he possessed were narcotics involves a decision about the defendant's state of mind. It is obviously impossible to prove directly the operation of the defendant's mind. But a wise and intelligent consideration of all the facts and circumstances shown by the evidence and the exhibits in the case may enable you to infer what the defendant's state of mind was.

In our everyday affairs, we are continuously called upon to decide from the actions of others what their state of mind is. Experience has taught us that, frequently, actions speak louder and more clearly than spoken or written words. Therefore, you may well rely in part on circumstantial evidence in determining the defendant's state of mind.

For example, if the defendant was the sole occupant of a residence, it is reasonable to conclude that the defendant knew about items in the residence. The defendant's behavior may also indicate knowledge. Nervousness in the presence of the drugs or flight from the site at which authorities have identified drugs may indicate that the defendant knew that the materials in question were narcotics. Also, the possession of a large quantity of drugs may indicate that the defendant knew what he had in his possession. These examples are neither exhaustive nor conclusive. It is up to you, based on all the evidence, to determine whether the defendant knew that he possessed narcotics.[44]

---

[44] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-7.

70

**REQUEST NO. 41**          **CONSCIOUS AVOIDANCE OF KNOWLEDGE**

As I have just instructed you, the government must prove, beyond a reasonable doubt, that the defendant knew that the materials he possessed were narcotics. If the defendant lacked this knowledge you must find him not guilty, even if the government proves that the only reason the defendant lacked such knowledge was because he was careless, negligent, or even foolish in failing to obtain it.

In determining whether the defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him. If you find beyond a reasonable doubt that the defendant acted with (*or* that the defendant's ignorance was solely and entirely the result of) a conscious purpose to avoid learning the truth that the materials he possessed were narcotics, then this element may be satisfied. However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken.

For example, if a known drug dealer puts a package in someone's apartment and asks that person to keep it hidden, but does not tell the person what is in the package; and the person does not inquire about the contents of the package or inspect the package, and does not draw the reasonable conclusion that the package contains drugs, then that person is consciously ignoring what he knows is very likely true; namely that the dealer has placed drugs in his apartment.)

71

If you find that the defendant was aware of a high probability that the materials he possessed were narcotics, and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly. However, if you find that the defendant actually believed that the materials were not narcotics, he may not be convicted.

It is entirely up to you whether you find that the defendant deliberately closed his eyes to the truth and any inferences to be drawn from the evidence on this issue.[45]

---

[45]  Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-8.

**REQUEST NO. 42**          **COUNT 4; DISTRIBUTION OF FENTANYL RESULTING
                            IN DEATH – THIRD ELEMENT**

The third element the government must prove beyond a reasonable doubt is that the defendant either (a) distributed the narcotics or (b) intended to distribute them. In order to prove the defendant is guilty, the government must prove one of these circumstances beyond a reasonable doubt. It need not prove both.[46]

---

[46] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-6.

73

**REQUEST NO. 43**        **INTENT TO DISTRIBUTE**

To prove that the defendant possessed narcotics with the intent to distribute them, the government must prove beyond a reasonable doubt that the defendant had control over the drugs with the state of mind or purpose to transfer them to another person.

The same considerations that apply to your determination whether the defendant knew he possessed narcotics apply to your decision concerning the defendant's intention to distribute them. Since you cannot read the defendant's mind, you must make inferences from his behavior. However, you may not convict the defendant unless these inferences convince you beyond a reasonable doubt that the defendant intended to distribute the narcotics.

When I say that you must find that the defendant intended to distribute the drugs, this does not mean that you must find that the defendant intended personally to distribute or deliver the drugs. It is sufficient if you find that the defendant intended to cause or assist the distribution of the drugs. Basically, what you are determining is whether the drugs in the defendant's possession were for his personal use or for the purpose of distribution. Often it is possible to make this determination from the quantity of drugs found in the defendant's possession. (For example, it would be highly unlikely that a person with 50,000 doses of amphetamine possessed them all for personal consumption.)

The possession of a large quantity of narcotics does not necessarily mean that the defendant intended to distribute them. On the other hand, a defendant may have intended to distribute narcotics even if he did not possess large amounts of them. Other physical evidence,

74

such as paraphernalia for the packaging or processing of drugs, can show such an intent. There might also be evidence of a plan to distribute. You should make your decision whether the defendant intended to distribute the narcotics in his possession from all of the evidence presented.[47]

---

[47] Adapted from Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-11.

**REQUEST NO. 44        DEFINITION OF DISTRIBUTION**

The word "distribute" means to deliver drugs. "Deliver" is defined as the actual, constructive, or attempted transfer of drugs. Simply stated, the words distribute and deliver mean to pass on, or to hand over to another, or to cause to be passed on or handed over to another, or to try to pass on or hand over to another, drugs.

For example, if A tells or orders B to hand over the drugs to C, then A has caused the drugs to be handed over, and therefore has distributed them.

Distribution does not require a sale. Activities in furtherance of the ultimate sale, such as vouching for the quality of the drugs, negotiating for or receiving the price, and supplying or delivering the drugs may constitute distribution. In short, distribution requires a concrete involvement in the transfer of the drugs.[48]

---

[48] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-10.

**REQUEST NO. 45**          **COUNT 4; DISTRIBUTION OF FENTANYL RESULTING
IN DEATH – FOURTH ELEMENT**

The fourth element the government must prove beyond a reasonable doubt is that the drugs distributed by the defendant resulted in the death of another.  In order to establish that the drugs distributed by the defendant resulted in the death of Crystal Quinn, the government must prove that Crystal Quinn died as a consequence of her use of the drugs that the defendant distributed on or about the dates alleged in the indictment.  This means that the government must prove beyond a reasonable doubt that but for the use of the drugs that the defendant distributed, Crystal Quinn would not have died.  The government is not required to prove that the defendant intended to cause the death of Crystal Quinn or that her death was foreseeable by the defendant or by others.[49]

---

[49] Modern Federal Jury Instructions-Criminal ¶ 56.01, Instruction 56-12.1.

77

**REQUEST NO. 46**            **THE INDICTMENT AND THE STATUTE: COUNTS 5, 23, AND 26**

Defendant KNIGHT is charged in Count 5 and Count 23 of the Indictment with knowingly and willfully making false statements to a department or agency of the United States.  Defendant RONCONE is charged in Count 26 of the Indictment with knowingly and willfully making false statements to a department or agency of the United States.

Count 5 alleges the following:

On or about August 3, 2023, in the Western District of New York, the defendant, FRANK KNIGHT, in a matter within the jurisdiction of the executive branch of the United States, did willfully, and knowingly make materially false, fictitious, and fraudulent statements and representations to special agents of the Federal Bureau of Investigation, in that the defendant stated that HOWARD HINKLE, JR. was not at a poker game in Wellsville attended by Crystal Quinn on July 27, 2023, and that he did not think HINKLE was at the poker game, when in truth and in fact, and as defendant KNIGHT then and there well knew, HOWARD HINKLE, JR. was at a poker game in Wellsville attended by Crystal Quinn on July 27, 2023.

All in violation of Title 18, United States Code, Section 1001(a)(2).

Count 23 alleges the following:

On or about October 24, 2023, in the Western District of New York, the defendant, FRANK KNIGHT, in a matter within the jurisdiction of the executive branch of the United States, did willfully, and knowingly make materially false, fictitious, and fraudulent statements and representations to special agents of the Federal Bureau of Investigation, in that the defendant stated that SIMON GOGOLACK a/k/a Greek, did not visit FRANK KNIGHT'S residence during the early morning hours on July 28, 2023, when in truth and in fact, and as defendant KNIGHT then and there well knew, SIMON GOGOLACK a/k/a Greek visited FRANK KNIGHT'S residence during the early morning hours on July 28, 2023.

All in violation of Title 18, United States Code, Section 1001(a)(2).

Count 26 alleges the following:

On or about December 7, 2023, in the Western District of New York, the defendant, MICHAEL RONCONE a/k/a Cone, in a matter within the jurisdiction of the executive branch of the United States, did willfully, and knowingly make materially false, fictitious, and fraudulent statements and representations to special agents of the Federal Bureau of Investigation, in that the defendant stated (i) that he did not know anything about Crystal Quinn's death; and (ii) that there were no drugs in his residence, when in truth and in fact, and as defendant MICHAEL RONCONE a/k/a Cone then and there well knew, (i) he did know something about Crystal Quinn's death; and (ii) there were drugs inside his residence.

All in violation of Title 18, United States Code, Section 1001(a)(2).

The relevant statute on this subject is section 1001(a) of Title 18 of the United States Code. It provides, in pertinent part:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully [ ] makes any materially false, fictitious or fraudulent statement or representation [shall be guilty of a crime].[50]

---

[50] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-1.

79

**REQUEST NO. 47**          **PURPOSE OF THE STATUTE**

The purpose of § 1001 is to protect the authorized functions of the various governmental departments from any type of misleading or deceptive practice and from the adverse consequences that might result from such deceptive practices.

To establish a violation of § 1001, it is necessary for the government to prove certain essential elements—which I will soon describe for you—beyond a reasonable doubt. However, I want to point out now that it is not necessary for the government to prove that the government agency was, in fact, misled as a result of the defendant's action. It does not matter that the agency was not misled, or even that it knew of the misleading or deceptive act, should you find that the act occurred. These circumstances would not excuse or justify a false, fictitious or fraudulent statement made willfully and knowingly about a matter within the jurisdiction of the government of the United States. [51]

---

[51] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-2.

**REQUEST NO. 48**                    **ELEMENTS OF THE OFFENSE**

In order to prove the defendant guilty of the crime charged, the government must establish beyond a reasonable doubt that:

First, on or about the date specified, the defendant made a statement or representation;

Second, that this statement or representation was material;

Third, the statement or representation was false, fictitious or fraudulent;

Fourth, the false, fictitious or fraudulent statement was made knowingly and willfully; and

Fifth, the statement or representation was made in a matter within the jurisdiction of the government of the United States.[52]

---

[52] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-9; *United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015).

81

**REQUEST NO. 49**          **ELEMENT 1: STATEMENT OR REPRESENTATION**

The first element that the government must prove beyond a reasonable doubt is that the defendant made a statement or representation. In this regard, the government need not prove that the defendant physically made or otherwise personally prepared the statement in question. It is sufficient if defendant caused the statement charged in the indictment to have been made. Under this statute, there is no distinction between written and oral statements.[53]

---

[53] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-10.

**REQUEST NO. 50**          **ELEMENT 2: MATERIALITY**

The second element the government must prove beyond a reasonable doubt is that the defendant's statement or representation was material.

A fact is material if it was capable of influencing the government's decisions or activities. However, proof of actual reliance on the statement by the government is not required.[54]

---

[54] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-11.

**REQUEST NO. 51**        **ELEMENT 3: FALSE, FICTICIOUS, OR FRAUDULENT STATEMENT**

The third element that the government must prove beyond a reasonable doubt is that the statement or representation was false, fictitious or fraudulent. A statement or representation is "false" or "fictitious" if it was untrue when made, and known at the time to be untrue by the person making it or causing it to be made. A statement or representation is "fraudulent" if it was untrue when made and was made or caused to be made with the intent to deceive the government agency to which it was submitted.

If the government's question was ambiguous, so that it reasonably could be interpreted in several ways, then the government must prove that defendant's answer was false under any reasonable interpretation of the question.[55]

---

[55] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-12.

84

**REQUEST NO. 52**          **ELEMENT 4: KNOWING AND WILLFUL CONDUCT**

The fourth element that the government must prove beyond a reasonable doubt is that the defendant acted knowingly and willfully.

An act is done knowingly if it is done purposely and voluntarily, as opposed to mistakenly or accidently.

An act is done willfully if it is done with an intention to do something the law forbids, that is, with a bad purpose to disobey the law.[56]

---

[56] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-13.

85

**REQUEST NO. 53**      **ELEMENT 5: MATTER WITHIN THE JURISDICTION OF THE UNITED STATES GOVERNMENT**

As I have told you, the fifth element with respect to each false statement count is that the statement or representation be made with regard to a matter within the jurisdiction of the government of the United States. I charge you that the Department of Justice and the Department of Homeland Security are departments of the United States government.

There is no requirement that the statement be actually directed to or given to the Department of Justice or the Department of Homeland Security. All that is necessary is that you find that it was contemplated that the statement was to be used in a matter that was within the jurisdiction of the government of the United States government. To be within the jurisdiction of a department or agency of the United States government means that the statement must concern an authorized function of that department or agency.

In this regard, it is not necessary for the government to prove that the defendant had actual knowledge that (e.g., the false statement) was to be used in a matter that was within the jurisdiction of the government of the United States. It is sufficient to satisfy this element if you find that the false statement was made with regard to a matter within the jurisdiction of the government of the United States.[57]

---

[57] Modern Federal Jury Instructions ¶ 36.01, Instruction 36-14.

**REQUEST NO. 54**          **UNANIMITY EXPLAINED**

Count 26 of the indictment allege a number of false or fraudulent statements.

The government is not required to prove that all of the statements that are alleged in Count 26 of the indictment are, in fact, false.

Each juror must agree with each of the other jurors, however, that the same statement or representation alleged in Counts 26 to be false, fictitious or fraudulent is, in fact, false, fictitious, or fraudulent. The jury need not unanimously agree on each such statement alleged, but, in order to convict, must unanimously agree upon at least one such statement as false, fictitious or fraudulent when knowingly made or used by the defendant. [58]

---

[58] Adapted from 2A O'Malley, Grenig and Lee, *Federal Jury Practice and Instructions*, § 40:15 (6th ed. updated through February 2019); *see also United States v. Crisci*, 273 F.3d 235, 239 (2d Cir. 2001) (affirming conviction and sentence and finding that the district court did not improperly charge the jury that it could convict [defendant] under Section 1001 if any one of the seven charged statements was false wherein the district court also instructed the jury that in order to convict [defendant] under Section 1001, it had to unanimously agree on "any statement that the defendant made in violation of the false statement statute.").

87

**REQUEST NO. 55**         **ACTS AND DECLARATIONS OF CO-CONSPIRATORS**

You will recall that I have admitted into evidence against the defendant the declarations and statements of others because these declarations and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendant on trial. The reasonably foreseeable declarations and statements of any member of a conspiracy made in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be those of all of the members. It is the jury's function to determine whether the evidence, including the co-conspirators' declarations and statements, is credible and convincing. The burden of proving beyond a reasonable doubt that a conspiracy existed and that the defendant was a member of that conspiracy remains with the government.[59]

---

[59] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-9.

**REQUEST NO. 56**            **IMPOSSIBILITY OF SUCCESS**

It is not a defense to a conspiracy charge that the object of the conspiracy could not be achieved because of circumstances that the conspirators did not know about. Thus, you may find the defendants guilty of conspiracy even though it was impossible for them to carry out their plan successfully.[60]

---

[60] Modern Federal Jury Instructions-Criminal ¶ 19.01, Instruction 19-10.1; *United States v. Wallace*, 85 F.3d 1063, 1068 (2d Cir. 1996).

**REQUEST NO. 57**          **SUCCESS OF CONSPIRACY IMMATERIAL**

The government is not required to prove that any of the members of the conspiracy were successful in achieving any or all of the objectives of the conspiracy. You may find the defendant guilty of conspiracy if you find that the government proved beyond a reasonable doubt the elements I have explained, even if you find that the government did not prove that any of the conspirators actually committed the substantive offense. Conspiracy is a criminal offense separate from the offense that was the objective of the conspiracy; conspiracy is complete without the commission of the object crime offense.[61]

---

[61] S1 Modern Federal Jury Instructions-Criminal 6.18.371G; *see also United States v. Watkins*, 339 F.3d 167, 178 (3d Cir. 2003); *United States v. Uzzolino*, 651 F.2d 207, 213-14 (3d Cir. 1981); *United States v. Shoup*, 608 F. 2d 950, 956-59 (3d Cir. 1979).

**REQUEST NO. 58**          **FAILURE TO NAME A DEFENDANT**

You may not draw any inference, favorable or unfavorable, towards the government or the defendant on trial, from the fact that certain persons were not named as defendants in the indictment or that certain persons were named as co-conspirators but not indicted. The fact that these persons were not indicted must play no part in your deliberations.

Whether a person should be named as a co-conspirator or indicted as a defendant is a matter within the sole discretion of the United States Attorney and the grand jury. Therefore, you may not consider it in any way in reaching your verdict as to the defendants on trial.[62]

---

[62] Modern Federal Jury Instructions-Criminal ¶ 3.01, Instruction 3-4.

**REQUEST NO. 59**     **SPECIFIC    INVESTIGATION    TECHNIQUES    NOT REQUIRED**

During the trial, you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques.

You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty.  However, you also are instructed that there is no legal requirement that the government use particular investigative techniques to prove its case. There is no requirement to test every piece of evidence.  Law enforcement techniques are not your concern.

Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.[63]

---

[63] Modern Federal Jury Instructions-Criminal ¶ 4.01, Instruction 4-4.

**REQUEST NO. 60          ACCOMPLICES CALLED BY THE GOVERNMENT**

You have heard witnesses who testified that they were actually involved in planning and carrying out the crimes charged in the Indictment.  There has been a great deal said about these so-called accomplice witnesses in the summations of counsel and whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.

For those very reasons, the law allows the use of accomplice testimony.  Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself, for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here nor will I repeat all of the arguments made on both sides.  However, let me say a few things that you may want to consider during your deliberations on the subject of accomplices.

93

You should ask yourselves whether these so-called accomplices would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie or was it one that would cause him to tell the truth? Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the accomplice witnesses.[64]

---

[64] Modern Federal Jury Instructions-Criminal ¶ 7.01, Instruction 7-5.

**REQUEST NO. 61**        **WITNESS USING OR ADDICTED TO DRUGS**

There has been evidence introduced at the trial that the government (or defendant) called as a witness a person who was using (or addicted to) drugs when the events he observed took place or who is now using drugs. I instruct you that there is nothing improper about calling such a witness to testify about events within his personal knowledge.

On the other hand, his testimony must be examined with greater scrutiny than the testimony of any other witness. The testimony of a witness who was using drugs at the time of the events he (or she) is testifying about, or who is using drugs (or an addict) at the time of his testimony may be less believable because of the effect the drugs may have on his ability to perceive or relate the events in question.

If you decide to accept his testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.[65]

---

[65] Modern Federal Jury Instructions-Criminal ¶ 7.01, Instruction 7-9-1.

**REQUEST NO. 62**          **ADMISSION OF DEFENDANT**

There has been evidence that the defendant made certain statements in which the government claims he admitted certain facts charged in the indictment.

In deciding what weight to give the defendant's statements, you should first examine with great care whether each statement was made and whether, in fact, it was voluntarily and understandingly made. I instruct you that you are to give the statements such weight as you feel they deserve in light of all the evidence.[66]

---

[66] Modern Federal Jury Instructions-Criminal ¶ 5.07, Instruction 5-19.

96

**REQUEST NO. 63**     **CONSCIOUSNESS OF GUILT FROM FALSE EXCULPATORY STATEMENT**

You have heard testimony that the defendant made certain statements outside the courtroom to law enforcement authorities in which the defendant claimed that his conduct was consistent with innocence and not with guilt. The government claims that these statements in which he exonerated or exculpated himself are false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may, but are not required to infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone, that the defendant is, in fact, guilty of the crime for which he is charged.

Whether the evidence as to a defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.[67]

---

[67] Modern Federal Jury Instructions-Criminal ¶ 6.05, Instruction 6-11.

97

**REQUEST NO. 64**          **CHARTS AND SUMMARIES**

The government has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.[68]

---

[68] Modern Federal Jury Instructions-Criminal ¶ 5.05, Instruction 5-12.

98

**REQUEST NO. 65**       **SIMILAR ACTS – INTENT, KNOWLEDGE, ABSENCE OF MISTAKE**

The government has offered evidence tending to show that on a different occasion the defendant engaged in conduct similar to the charges in the indictment.

In that connection, let me remind you that the defendant is not on trial for committing this act not alleged in the indictment. Accordingly, you may not consider this evidence of the similar act as a substitute for proof that the defendant committed the crime charged. Nor may you consider this evidence as proof that the defendant has a criminal personality or bad character. The evidence of the other, similar act was admitted for a much more limited purpose and you may consider it only for that limited purpose.

If you determine that the defendant committed the acts charged in the indictment and the similar acts as well, then you may, but you need not draw an inference that in doing the acts charged in the indictment, the defendant acted knowingly and intentionally and not because of some mistake, accident or other innocent reasons.

Evidence of similar acts may not be considered by you for any other purpose. Specifically, you may not use this evidence to conclude that because the defendant committed the other act he must also have committed the acts charged in the indictment.[69]

---

[69] Modern Federal Jury Instructions-Criminal ¶ 5.10, Instruction 5-25.

**REQUEST NO. 66**          **MIXED MOTIVE NOT A DEFENSE**

Because people rarely act for a single purpose, the government does not need to prove that defendant was solely motivated by a corrupt purpose when he engaged in the charged conduct in Count 1.  If you find beyond a reasonable doubt that the conduct charged in Count 1 was at least in part done with corrupt intent, then it makes no difference that the defendant may also have had another lawful motive, for listing Judge Sinatra's relatives on his witness list.[70]

---

[70] *See United States v. Reichberg*, 5 F.4th 233, 240 (2d Cir. 2021); *United States v. Coyne*, 4 F.3d 100, 113 (2d Cir. 1993) (noting that where a defendant argues friendship provided an innocent motivation for his actions, it is proper to instruct the jury that "a valid purpose that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability" (internal quotation marks omitted)).