UNITED STATES DISTRICT COURT for the
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES,

                Plaintiff,

v.

FRANK KNIGHT,

                Defendant.

DEFENDANTS' RESPONSE MEMO
GOVERNMENT'S MOTION
IN LIMINE [925]

Case no.: 23-cr-099

---

Defendant Frank Knight submits this memorandum in response to the Government's

Motion in Limine [925] and in supplement to that memo expected to be filed today by co-counsel

Matthew Lembke, Esq.  In particular, Frank Knight addresses here the government's application

to admit Crystal Quinn text messages from the morning of July 28, 2023 and to exclude evidence

of Crystal Quinn's mental health problems and suicidal ideation.

**Factual Background**

At pages 71 to 83 the government offers a series of incoherent text messages from Crystal

Quinn's phone to Simon Gogolack's phone between 5:32 and 6:05 a.m. on July 28, 2023 to

demonstrate that there was a "confrontation" between Crystal Quinn and "bikers" in the early

morning hours of July 28, 2023.   There is no independent evidence of a confrontation or bikers.

We know that the night before this incident she showed up to a card game "fucked up", "stoned",

or "high".  It also appears they were up all night and Crystal Quinn was "eating a bunch of

xanax."

The government referenced a video in court that corroborates the supposed biker

confrontation.  The video disputes any biker confrontation.  There is a two second video on

Crystal Quinn's phone taken July 28, 2023 at 4:53 a.m.  The video is long enough for Crystal Quinn to say "scumbag mother fuckers".  The video was shot at 18 frames per second and so contains about 36 frames.  The video shows no people, no cars, no motorcycles, no red lights or beams, and no houses.  One of the frames of the video appears to reflect off of the window the video is shot through and into the room from which the video is taken showing mundane items like a plastic beverage bottle.  In short, to the extent the video proves anything it proves there was no biker confrontation.

There is another two second video on Crystal Quinn's phone taken about 8:27 a.m.  The video depicts trees.  The content of the video suggests whoever took it was hallucinating about things moving in the forest.

At 5:57 a.m. a text from Crystal Quinn's phone to██████'s phone says "I think they allow 5 girls to come in and whip my ass I can here then" and "jumping me now".  At 5:59 a.m. there is a video taken with Crystal Quinn's phone that appears to show Crystal Quinn's foot with her left leg crossed over her right knee and left foot nonchalantly wagging betraying any claim of harm.  There are also multiple texts from Crystal Quinn's phone after 5:57 that demonstrate she was unharmed and the claim of "jumping me now" was a hallucination or confabulation.

The government's geofence data proves that no bikers were located in the subject area during the supposed confrontation.

The government claims that ████████████████confirms that account of red beams being shot through Simon Gogolack's window because Simon saw them.  But Simon did not see them during the early morning hours when the government claims the biker confrontation happened.  He saw them, if at all, after she had a conversation with her lawyer about not wanting to testify in

the pending Gerace trial, which could not have happened before 8:32 a.m. on the 28th.

Simon Gogolack and Crystal Quinn were up partying literally all night long on the night of the 27th to the 28th. Drugs were no doubt involved. There is no good reason to believe that Simon's account of red beams is reliable. The text messages on Crystal Quinn's and Simon Gogolack's phones are more consistent with hallucination or confabulation after being up all night doing drugs than they are with a "biker confrontation", especially in the absence of any evidence of a biker confrontation independent of the subject text messages.

In the month before her death Crystal Quinn's phone contained videos of alcohol, alcohol consumption, marijuana, drug tests, impaired behavior such as her inability to speak clearly or even say her own dog's name clearly. Her phone text messages contain multiple references to declining mental health and needing to get away from it all. Her probation file██████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████. All of this evidence is consistent with reckless or intentional substance use that defendant's claim led to her overdose death.

**Quinn messages from the supposed July 28, 2026 biker confrontation.**

"For a statement to qualify as an excited utterance, the proponent of the exception must establish: '(1) the occurrence of a startling event; (2) that the declarant made the statement while under the stress of excitement caused by the event; and (3) that the declarant's statement relates to the startling event.'" *United States v. Delvi*, 275 F. Supp. 2d 412, 415 (NDNY 2003). Here, the government, instead of proving the existence of a startling event to admit statements under a hearsay exception is attempting to use the hearsay statements to prove the existence of the startling event.

The Sixth Amendment is typically implicated in connection with testimonial statements. *Hemphill v. New York*, 595 U.S. 140 (2022). But it applies in the context of non-hearsay statements too.

> "In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial. The basis for the "excited utterance" exception, for example, is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous...
>    "We think the "particularized guarantees of trustworthiness" required for admission under the Confrontation Clause must likewise be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief....Thus, unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement."

*Idaho v. Wright*, 497 U.S. 805, 820 (1990). Here, even if the Court assumes without evidence, that Crystal Quinn was the author of the outgoing text messages on her phone they are unreliable. They are not such that "cross-examination would be superfluous". Allowing the jury to arrive at wild conclusions of a biker confrontation for which there is no evidence violates the right of the defendants to confront witnesses.

"The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures." *Brown v. Keane*, 355 F.3d 82, 89 (2nd Cir. 2004). Here again the Court must be satisfied that there was an actual biker confrontation for such confrontation to leave a present sense impression. The government cannot rely on the text messages they are attempting to get in under the present sense impression exception to the hearsay rule to prove the existence of the event itself. The text

messages are unreliable not just based on their content but also on the basis of the circumstances surrounding their making, that is, and all night bender.  The government's geofence data proves there were no bikers in the area at the time.  And the video shows that there were no bikes, no bikers, no cars, no people, no red lights.

Finally, let us just run with the absurdity of the government's theory.  The government's theory is that biker's enlisted the assistance of Simon Gogolack to give Crystal Quinn a fatal drug overdose to eliminate her as a witness.  The government does not claim that Siimon Gogolack's assistance was enlisted that morning.  No, they claim he lured her to Wellsville several days earlier with the plan already hatched.  So there would be no logical reason for any such confrontation to exist.  Is their theory, "oh, we're gonna kill you in a few days but here's a few red beams to scare you first"?  If not, if they were really there to confront her, then why didn't they?  Especially if she "literally went outside and started screaming if you're going to shoot me, get it over with."

In short, the text messages from the morning of July 28, 2023 do not possess the kind of reliability contemplated for exceptions to the hearsay rule.

**Mental Health and Suicidal Ideation**

In a criminal case a defendant may put in evidence of a decedent's suicidal ideation. *Shepard v. United States*, 290 U.S. 96 (1933).  A defendant may offer evidence of an alleged victim's pertinent trait.  FRE 404(a)(2)(B).  "Evidence of a person's habit...may be admitted to prove that on a particular occasion the person...acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."  FRE 406.  Here Crystal Quinn's declining mental health, her drug

seeking behavior, her increasing substance use,███████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████are all admissible as to her state of mind and whether

given her particular circumstances she was recklessly or intentionally using substances that

caused her death.

Dated: May 15, 2026
Erie County, New York

Attorneys for KNIGHT

BARRY J. DONOHUE, ESQ.
By:   /s/ Barry J. Donohue
Barry J. Donohue, Esq.
77 Broad Street
Tonawanda, New York 14150
(716) 693-0359
e-mail: barry@donohuelaw.com

Matthew R. Lembke
CERULLI MASSARE & LEMBKE
45 Exchange Blvd., Suite 925
Rochester NY 14614
Phone:  585-454-3323
e-mail: www.mattlembke.com

To: Joseph Tripi, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5839
e-mail: joseph.tripi@usdoj.gov

Nicholas Cooper, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5712
e-mail: nicholas.cooper@usdoj.gov

Casey Chalbeck, AUSA
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5881
e-mail: casey.chalbeck@usdoj.gov