

**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

| | |
|---|---|
| *Federal Center* | *Phone: (716) 843-5700* |
| *138 Delaware Avenue* | *Fax: (716) 551-3052* |
| *Buffalo, New York 14202* | *Writer's Phone: (716) 843-5807* |
| | *Katerina.Powers@usdoj.gov* |

May 20, 2026

Honorable Judge Elizabeth Wolford
Chief Judge, United States District Court
Western District of New York
100 State Street
Rochester, New York 14614

> **RE:   United States v. Gogolack, et al.**
> **Case no. 23-CR-99**
> **Opposition to Defendant Gerace's Motion to Exclude Sharon Quinn**

Dear Chief Judge Wolford:

In a letter filed with the Court on May 8, 2026, defendant Gerace moved to exclude Sharon Quinn—the mother of Crystal Quinn—from trial pursuant to Federal Rule of Evidence 615, or in the alternative, that the Court issue instructions to both Sharon Quinn personally and the jury.   The motion should be denied.

First, Sharon Quinn is a crime victim within the meaning of the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3371, and therefore has a statutory right to attend the proceedings absent clear and convincing evidence that it is "highly likely" her testimony would be materially altered by hearing other testimony. *See United States v. Pirk,* 284 F. Supp. 3d 445, 449 (W.D.N.Y. 2018) (quotations and citation omitted).   The defendant does not meet that demanding burden. The defendant's motion further improperly collapses the CVRA "crime victim" inquiry into a merits determination about guilt.   But at this stage, the Court need not determine whether the government will ultimately prevail at trial for CVRA protections to apply.

Second, the defendant failed to establish by clear and convincing evidence that excluding Sharon Quinn is warranted under this standard.   The defendant speculates that

1

Sharon Quinn might tailor her testimony after hearing witnesses testify. But speculation is insufficient. Indeed, the record demonstrates the opposite. In the grand jury—when Sharon Quinn was presumably "antagonistic" to the defendants—she maintained the same position that, but for the government charging Crystal Quinn, she would be alive. *See* Grand Jury Tr. of Sharon Quin at 38 (Oct. 18, 2023) ("Q. Now is it fair to say that you probably feel like if [Crystal Quinn] had never been charged and put in a position to testify that she would still be alive? A. Yes."). The defendant accordingly cannot establish by clear and convincing evidence that it is highly likely her testimony will be materially altered at trial.

Third, the defendant's requested prophylactic instructions are unsupported by authority, unnecessary to protect defendants' rights, and would improperly single out and stigmatize Crystal Quinn's mother before the jury.

Accordingly, the motion should be denied.

## LEGAL STANDARD

The CVRA provides crime victims with "[t]he right not to be excluded from any such public court proceeding" unless the Court "after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." 18 U.S.C. § 3771(a)(3).

The statute further directs that "[b]efore making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding." 18 U.S.C. § 3771(b)(1).

Federal Rule of Evidence 615 similarly recognizes an exception to witness sequestration for "a person authorized by statute to be present." Fed. R. Evid. 615(a)(4). The CVRA creates precisely such an exception. *See In re Mikhel*, 453 F.3d 1137, 1139 (9th Cir. 2006); *United States v. Turner*, 367 F. Supp. 2d 319, 332 (E.D.N.Y. 2005) (the right of crime victims not to be excluded "effectively trumps Federal Rule of Evidence 615").

The burden imposed upon a defendant seeking exclusion is substantial. A court may exclude a victim-witness only upon a finding, supported by clear and convincing evidence, that it is "*highly likely*, not merely possible, that the victim-witness will alter his or her testimony." *Pirk*, 284 F. Supp. 3d at 449 (emphasis in original) (quoting *In re Mikhel*, 453 F.3d at 1139). "A mere possibility that a victim-witness may alter his or her testimony is insufficient." *Id.*

2

## ARGUMENT

**1.  Sharon Quinn is a "crime victim" within the meaning of the CVRA.**

Sharon Quinn qualifies as a crime victim because the indictment alleges that the defendants caused the death of her daughter, Crystal Quinn, through the charged federal offenses, thereby "directly and proximately" harming Sharon Quinn within the meaning of 18 U.S.C. § 3771(e)(2)(A). The defendant argues that Sharon Quinn is not a "crime victim" because the government has not yet proven that a federal offense occurred. *See* Dkt. 949 at 4 ("there is a serious question as to whether any crime took place"). But that argument improperly transforms the CVRA inquiry into a premature adjudication of guilt.

The indictment alleges, among other things, a conspiracy to obstruct justice—a federal offense—that resulted in Crystal Quinn's death and rendered her unavailable as a witness. *See* Dkt. 24 at 1-34.   A duly empaneled grand jury already determined that probable cause exists to believe the charged federal offenses occurred. *See generally id.*   That is sufficient for purposes of the CVRA. *See United States v. Nix*, 256 F. Supp. 3d 272, 277 (W.D.N.Y. 2017) ("victim" designations may be based on allegations).

The defendant's position would effectively prevent crime victims from exercising CVRA rights until the post-conviction stage of a prosecution because victim status would necessarily depend on a prior determination of guilt.   But that is not how the statute operates. The purpose of the CVRA is to afford victims participatory rights during criminal proceedings—including before the verdict.

The cases the defendant cites do not compel a different result.   Courts routinely recognize that victim status may be determined based upon the allegations and circumstances of the charged offenses without requiring a prior finding of guilt. *See id.; United States v. Saltsman*, No. 07-CR-641(NGG), 2007 WL 4232985, at *1 (E.D.N.Y. Nov. 27, 2007) ("It bears mention that victims' rights under the CVRA begin well before a conviction; thus, the status of 'victim' may be based on allegations rather than proof."); *Turner*, 367 F. Supp. 2d at 326 (concluding that the definition of crime victim includes "any person who would be considered a 'crime victim' if the government were to establish the truth of the factual allegations in its charging instrument"; rejecting the proposition that the presumption of innocence means there can be no victims of an offense until the government proves its case).

The defendant's reliance on *United States v. Grace*, 597 F. Supp. 2d 1157 (D. Mont. 2009), is particularly misplaced.   *See* Dkt. 949 at 4 ("[R]elying on the rationale in *Grace*, Sharon Quinn would not be a crime victim because the circumstances do not necessarily demonstrate an offense was committed."); *but see Grace*, 597 F. Supp. 2d at 1160 ("It is

3

important, however, that the Court make clear that it has not concluded, in this Order or any other, or on the record at any hearing in this matter, that because the crimes alleged in this case have yet to be proven, no one can be considered a victim.") (quotations and citation omitted).

*Grace* does not hold that a court must determine whether a federal offense actually occurred before recognizing a crime victim under the CVRA. To the contrary, *Grace* expressly acknowledged that a court may "assume that the federal offense alleged has occurred, and then identify, if possible, who was directly and proximately harmed as a result of the commission of the offense." *Id.* at 1162. The defendant overreads *Grace* and attempts to transform it into a merits-based gatekeeping requirement that the decision itself rejected.

Rather, the issue in *Grace* was unique to the government's theory in that case. As the court explained, "the problem" was not the application of the CVRA's victim definition, but that the government had "not alleged a federal offense *the commission of which was complete before the earliest date within the statute of limitations period.*" *Id.* (emphasis added). The concern in *Grace* was temporal: the government sought to rely upon conduct predating the applicable limitations period to identify victims of the charged offenses. *See id.* ("this temporal framework within which the government has situated its theory of criminal liability affects the analysis of who is an identifiable victim of the federal offenses alleged"). That unusual circumstance created uncertainty as to whether the individuals asserting victim status were identifiable victims of the federal offenses actually charged within the permissible time period. *See id.*

That concern is entirely absent here. The indictment specifically alleges that the defendants caused Crystal Quinn's death in furtherance of timely charged federal offenses. *See* Dkt. 24 at 1-34 (Counts 1, 2, 3). Unlike in *Grace*, the government is not relying upon stale or pre-statute of limitations conduct to define victim status. The defendant thus misses the mark in relying on *Grace* for the proposition that this Court must first determine whether a federal offense was committed before affording Sharon Quinn CVRA rights.

The defendant's interpretation would effectively nullify the CVRA any time a defendant argues that there remains a "serious question" whether any crime occurred. The Court should decline to collapse the CVRA inquiry into the ultimate question of guilt reserved for the jury.

**2. The defendant has not established by clear and convincing evidence that it is highly likely Sharon Quinn's presence at trial would materially alter her testimony.**

Defendant likewise fails to satisfy the statute's demanding standard for exclusion. The governing standard is not whether altered testimony is conceivable or theoretically possible. Rather, the defendant must establish through clear and convincing evidence that it is "highly likely" that Sharon Quinn will materially alter her testimony after hearing other witnesses testify. *Pirk*, 284 F. Supp. 3d at 449. The defendant offers no such evidence here.

Instead, the defendant's motion relies upon the assertion that Sharon Quinn changed her view "that the government placed her daughter in jeopardy" after receiving additional information from the government. Dkt. 949 at 5.

First and foremost, changing one's understanding of events after learning additional facts is not evidence of suggestibility, much less evidence that a witness is likely to tailor sworn testimony after observing trial proceedings. The defendant conflates a witness reassessing events after receiving additional information with her improperly tailoring testimony where, in fact, the two concepts are distinct.

Second, and more importantly, the defendant's own account undermines his argument. The defendant claims that Sharon Quinn "changed her position and became antagonistic toward defendants" after learning additional information concerning Crystal Quinn's death. Dkt. 949 at 5. Yet during her grand jury testimony on October 18, 2023—presumably at the very point the defendant claims she had become antagonistic—Sharon Quinn maintained the spirit of her position that the "government placed her daughter in jeopardy." Dkt. 949 at 5. Sharon Quinn testified that, but for the government charging Crystal Quinn, she would be alive. *See* Grand Jury Tr. of Sharon Quinn at 38 (Oct. 18, 2023).

Far from demonstrating volatility or suggestibility, the grand jury testimony reflects that even after receiving information that "Crystal Quinn must have been murdered," Dkt. 949 at 5, Sharon Quinn *still* reiterated her position that the government charging Crystal Quinn was the catalyst for her untimely death. Sharon Quinn's grand jury transcript, in pertinent part, reads as follows:

> Q. Now, is it fair to say that you probably feel like if she had never been charged and put in a position to testify that she would still be alive?
>
> A. Yes.
>
> Q. Okay.

A. She would be.

Grand Jury Tr. of Sharon Quinn at 38 (Oct. 18, 2023).

Thus, the defendant's motion is devoid of any example in which Sharon Quinn altered sworn testimony after learning about evidence from other witnesses. Nor does the motion explain what testimony she is supposedly likely to alter, how it would be altered, or why such alteration is "highly likely" rather than merely possible.

Moreover, Sharon Quinn has already testified under oath. The defendant possesses the grand jury transcript and will be able to cross-examine her regarding any purported inconsistencies.   If her testimony at trial deviates from sworn testimony, the defendant has ample impeachment tools available.   That procedural safeguard substantially undermines any claim that exclusion is necessary.

Because the defendant has failed to establish that it is highly likely Sharon Quinn would materially alter her testimony, exclusion is unwarranted.

### 3.  The Court should deny the defendant's request for prophylactic instructions.

Defendant alternatively requests a series of prophylactic instructions relating specifically to Sharon Quinn.   Those requests should be denied.

The government does not object to the Court instructing witnesses generally not to discuss testimony with other witnesses during the trial. However, the defendant cites no authority requiring a special limiting instruction to the jury concerning Sharon Quinn's presence in the courtroom. Such a restriction would unnecessarily draw attention to Sharon Quinn and risk suggesting to the jury that her presence is improper or extraordinary when it is expressly authorized by federal statute.

Similarly, the defendant's request that the Court formally warn Sharon Quinn that she may be removed for emotional displays is unsupported and unnecessary. There is no basis to presume that Sharon Quinn will behave improperly during the proceedings.   Trial courts retain inherent authority to maintain courtroom decorum and may address any issues if and when they arise.   A prophylactic instruction directed specifically at the mother of Crystal Quinn would be unwarranted and risks unfairly stigmatizing her before the jury.

## CONCLUSION

The defendant's motion fails at every step.   It improperly collapses the CVRA inquiry into a pretrial adjudication of guilt, offers only speculative assertions in support of exclusion, and seeks unsupported prophylactic measures that are neither required by law nor justified by the facts of this case.   For the foregoing reasons, defendant's motion to exclude Sharon Quinn from the trial proceedings should be denied in its entirety.

Respectfully,

MICHAEL DIGIACOMO
United States Attorney

BY:    s/KATERINA F. POWERS
Assistant United States Attorney
Narcotics & Organized Crime Section