IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

         v.                                                                23-CR-99-EAW

SIMON GOGOLACK, et al.,

         Defendants.

_____

**THE GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT HINKLE'S MOTION TO STRIKE SURPLUSAGE
FROM COUNT ONE OF THE SECOND SUPERSEDING INDICMENT**

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael

DiGiacomo, United States Attorney for the Western District of New York, and Katerina F.

Powers, Assistant United States Attorney, of counsel, hereby offers the following response in

opposition to Defendant Howard Hinkle's motion to strike surplusage from Count One of the

Second Superseding Indictment pursuant to Rule 7(d) of the Federal Rules of Criminal

Procedure. *See* Dkt. 952.

## I.      GOVERNING LEGAL PRINCIPLES

**1. Rule 7(d) motions are granted only where allegations are irrelevant, prejudicial, and inflammatory.**

A motion to strike surplusage should be granted only where the challenged allegations

are "not relevant to the crime charged and are inflammatory and prejudicial." *United States v.*

*Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) (citation omitted). This standard is "exacting" and

"only rarely" satisfied. *United States v. DePalma*, 461 F. Supp. 778, 797 (S.D.N.Y. 1978).

"If evidence of the allegation is admissible and relevant to the charge, then regardless

of how prejudicial the language is, it may not be stricken." *Id*. (citation omitted); *see also United*

1

*States v. Langella,* 776 F.2d 1078, 1081 (2d Cir.1985). As long as the overt acts alleged are relevant to the conspiracy charge, the trial judge's refusal to strike is not error. *United States v. Montour*, 944 F.2d 1019, 1026–27 (2d Cir. 1991).

An overt act need not itself be criminal to support a conspiracy conviction. *United States v. Slocum,* 695 F.2d 650, 654 (2d Cir.1982) ("[T]he function of the overt act is simply to demonstrate the conspiracy's existence, *i.e.*, to prove that it is at work." (internal citation omitted)).

The proper inquiry is not whether the act appears innocent in isolation, but whether it is relevant to the alleged conspiracy when viewed in the context of the evidence as a whole. *See United States v. Diaz,* 878 F.2d 608, 614–15 (2d Cir. 1989). Evidence of subsequent events may show relevance of prior conduct to conspiracy. *Id.* "If an act is relevant to the alleged conspiracy when viewed in light of all the evidence, it should not be stricken." *Montour*, 944 F.2d at 1026.

### 2. Courts routinely decline to strike allegations from the indictment.

Courts have refused to strike allegations of connections that explain the "means by which its members and associates conduct various criminal activities." *Scarpa*, 913 F.2d at 1013 (quoting *United States v. Napolitano*, 552 F. Supp. 465, 480 (S.D.N.Y. 1982)); *see also United States v. Rastelli*, 653 F. Supp. 1034, 1055 (E.D.N.Y. 1986) (finding "allegedly inflammatory material cited by defendants . . . should not be stricken because it concerns relevant and admissible evidence").

Allegations describing the "tactics and purposes" of a conspiracy, as well as admissible and relevant background evidence, are properly included in an indictment and should not be

stricken as surplusage. *United States v. Mulder*, 273 F.3d 91, 100 (2d Cir. 2001) (affirming denial of motion to strike allegations describing the "tactics and purposes" of labor coalitions in extortion prosecution because the allegations constituted admissible and relevant background).

Courts likewise decline to strike allegations concerning the structure, operations, methods, and internal functioning of a conspiracy or enterprise where those allegations form part of the government's proof at trial. *See United States v. Persico*, 621 F. Supp. 842, 860 (S.D.N.Y. 1985) (declining to strike allegations concerning enterprise structure, terminology, and use of "anti-bugging" devices because such allegations were relevant to proving the enterprise's operations, intent, and consciousness of guilt). An indictment may properly include allegations that are "relevant to the case and will constitute part of the government's proof at trial." *United States v. Esposito*, 423 F. Supp. 908, 911 (S.D.N.Y. 1976) (finding aliases were relevant to government's proof and therefore their inclusion in the indictment proper).

## II.    ARGUMENT

The governing rule is straightforward: an allegation may be stricken only where it is irrelevant to the charged offense, inflammatory, and prejudicial. *See Scarpa*, 913 F.2d at 1013–14; *see also Mulder*, 273 F.3d at 99. The defendant largely omits the first half of the test. Indeed, the very case the defendant cites as "guard[ing] against the use of indictment language as a vehicle for pretrial prejudice," *see* Dkt. 952 at 4, states that motions to strike "will be granted only where the challenged allegations are *not relevant* to the crime charged *and* are inflammatory and prejudicial." *Mulder*, 273 F.3d at 99 (emphasis added) (citation and quotation marks omitted).

Communications among alleged coconspirators—particularly repeated contacts occurring immediately after significant investigative events—are probative of association, coordination, and shared awareness, all of which are foundational features of a conspiracy case. The defendant attempts to atomize each allegation and view it in isolation. But that is precisely what the Second Circuit has rejected. *See Montour*, 944 F.2d at 1026 ("If an act is relevant to the alleged conspiracy when viewed in light of all the evidence, it should not be stricken."). Ultimately, the defendant's position would reduce Rule 7(d) to a mechanism for excising any allegation harmful to the defense. That is not the law. If it were, virtually every overt act in every conspiracy indictment would be subject to striking simply because it portrays the defendant unfavorably.

For ease of reference, the government addresses the challenged allegations by subject matter and explains the relevance of each to the charged conspiracy. The challenged allegations largely fall into categories relevant to demonstrating the defendants': (1) association and relationships; (2) communications surrounding significant events; (3) opportunity and coordination; and, (4) their motive.

1. **Allegations demonstrating association and relationships among coconspirators are relevant (¶¶ 28, 33–35, 38, 39, 84–92).**

The challenged allegations concerning communications, meetings, and relationships among alleged coconspirators are relevant because they demonstrate association, familiarity, trust, and coordinated activity among members of the charged conspiracy. These associations and relationships are relevant and admissible as background.

The defendants' relationships with one another are relevant because they provide necessary context and complete the narrative of the charged offenses. The "standard of

relevance established by the Federal Rules of Evidence is not high." *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985) (quotations omitted).   Relevant evidence "need only tend to prove the government's case," and that includes evidence that provides context and dimension to the charged conduct, even where it does not directly establish an element of the offense. *United States v. Gonzalez*, 110 F.3d 936, 941–42 (2d Cir. 1997).   Background evidence is admissible to explain the circumstances surrounding the charged events and to furnish the jury with an understanding of the intent and meaning of a defendant's actions. *United States v. Daly,* 842 F.2d 1380, 1388 (2d Cir.1988).   A court may properly decline to strike allegations as surplusage when they explain admissible and relevant background evidence. *See Mulder*, 273 F.3d at 100; *Esposito*, 423 F. Supp. at 911 (indictment may include allegations relevant to the case that "will constitute part of the government's proof at trial").

Here, the challenged allegations show repeated communications among the coconspirators including calls, text messages, in-person meetings, and coordinated movements.  Those allegations are probative of the existence of ongoing relationships among the defendants and support the inference that they knew and trusted one another.  Such allegations offer relevant background, as conspiracies operate through networks of association, coordination, and communication among participants.

Paragraph 28 alleges the defendant "associated in-person with various bikers in Wellsville, New York."  That allegation is relevant because Mr. Gogolack and Mr. Knight later made false and misleading statements that tended to distance the defendant from that very same biker association.  Additionally, Mr. Hinkle has repeatedly denied associating with bikers, including members of the Rare Breed, notwithstanding proof to the contrary.  Specifically, paragraph 57 alleges that Mr. Gogolack made false or misleading statements to

the FBI regarding the defendant's relationship with the bikers.  Similarly, paragraph 60 alleges that Mr. Knight made false or misleading statements regarding the defendant's attendance at a biker-hosted poker game.  Thus, paragraph 28 provides necessary background for why these two subsequent statements were false or misleading.

The defendant's reliance on the proposition that "mere association" is insufficient to establish criminal liability misses the point. *See* Dkt. 952 at 5.  Paragraph 28 is not offered as a standalone basis for guilt.  The proper inquiry is whether the allegation is relevant to the charged conspiracy "when viewed in light of all the evidence." *Montour*, 944 F.2d at 1026.  And here, when viewed in light of all the evidence, the defendant's association with bikers is probative of the defendant's connection to the charged conspiracy and the network of individuals through which it operated.

Paragraphs 33 through 35 allege repeated calls and communications between the defendant, Mr. Knight, and Mr. Gogolack.  Paragraph 35 specifically includes communication concerning plans for Mr. Gogolack to meet the defendant.  These allegations are relevant because they demonstrate ongoing contact, familiarity and coordination among individuals alleged to be involved in the conspiracy.  The allegations are also probative of the nature of the relationships between the defendant, Mr. Gogolack, and Mr. Knight— particularly in light of Mr. Gogolack and Mr. Knight's subsequent statements to investigators related to the defendant.  Far from depicting isolated or incidental contact, the indictment alleges repeated and direct communication between them.  This supports the inference that they knew one another well, so much so, that they maintained regular communication.  Accordingly, these allegations provide important context for the charged conspiracy and for evaluating the veracity of Mr. Gogolack and Mr. Knight's subsequent statements to

investigators. *See* Dkt. 24 at 22 ¶ 57 (Gogolack statement to FBI), 23 ¶ 60 (Knight statement to FBI).

Paragraphs 38 and 39 allege communications from Mr. Gogolack to the defendant that are probative of the nature and closeness of their relationship. In those messages, Mr. Gogolack addresses the defendant as "How" rather than by his full name, Howard, reflecting a degree a familiarity between them. Mr. Gogolack further intimates that he has something— or someone—of value to the defendant, and may need to borrow money from the defendant. Mr. Gogolack also urges the defendant to "[let me know] asap", conveying a sense of urgency and reliance. Taken together, these messages are probative not only of the familiarity between Mr. Gogolack and the defendant, but also of the trust between them. That relationship is relevant to the government's theory of the case because it provides context for the frequency and nature of the communications alleged throughout the indictment. It also helps explain why Mr. Gogolack later made misleading statements to the FBI concerning the defendant, as alleged in paragraph 57. Additionally, a jury can reasonably infer that Mr. Gogolack was alerting the defendant that he was with Ms. Quinn, thereby directly implicating the defendant in the obstruction conspiracy charged in Count 1. The allegations are therefore properly included as contextual and relevant evidence of the relationship among the coconspirators rather than surplusage.

Paragraphs 84 through 92 allege communication between Mr. Knight and Mr. Roncone. While these are communications independent of the defendant, they demonstrate that these two conspirators were interconnected and in regular contact with one another. This is probative of their familiarity with each other as members of the conspiracy.

The defendant isolates each communication for the Court to evaluate in a vacuum. But the Second Circuit has expressly rejected that mode of analysis. The proper inquiry is whether the allegations are relevant to the alleged conspiracy "when viewed in light of all the evidence." *Montour*, 944 F.2d at 1026. And these allegations plainly satisfy that standard.

**2. Allegations concerning communications surrounding significant events are probative of coordination and shared awareness (¶¶ 30–32, 51, 53, 56, 96, 97, 99-103).**

The allegations concerning communications occurring immediately after significant events are likewise relevant: they support the inference that the conspirators were coordinating activity and acting with shared awareness of developments material to the charged conspiracy. *See Diaz*, 878 F.2d at 614–15 (finding "later events provided a basis to infer a connection" between prior conduct and the conspiracy); *see also Gonzalez*, 110 F.3d at 941-42 (upholding admissibility of burglary evidence from earlier that night as relevant to motive and for context for the charged firearm offense under Rules 401 and 403).

Paragraphs 30 through 32 allege a sequence of communications occurring in close temporal proximity to interactions involving Crystal Quinn. Paragraph 30 alleges that Mr. Gogolack called the defendant immediately before texting Crstal Quinn. Paragraph 31 continues the timeline, alleging that Mr. Gogolack texts Crystal Quinn requesting a ride to Wellsville. Paragraph 32 further alleges that, within approximately 2.5 hours of that exchange, Mr. Gogolack received a 16-minute telephone call from the defendant. These allegations are relevant because, together, they place the defendant and Mr. Gogolack in repeated contact immediately before and after communications with Crystal Quinn. These contacts provide context for the charged conduct, help explain the sequence of events, and are relevant to the government's theory regarding the relationship and coordination between Mr. Gogolack and the defendant.

Paragraph 53 alleges communication between the defendant and Mr. Gogolack, and the defendant and Mr. Knight, on the same day Crystal Quinn was found dead. When viewed together with paragraphs 51, 55, and 56—which allege multiple contacts between the defendant, Mr. Gogolack, and Mr. Knight that same day—these allegations place the defendant in contact with the very individuals who later provided misleading information about him to the FBI. *See* Dkt. 24 at 22 ¶ (Gogolack statement to FBI), 23 ¶ 60 (Knight statement to FBI). These allegations are therefore probative of the nature of their relationships, the degree of coordination between them. They are also probative of Mr. Gogolack and Mr. Knight's potential motive or bias in making misleading statements to investigators about the defendant.

Paragraphs 96 and 97 describe the conspirators' communication on the day investigators executed a search warrant at the defendant's residence. Paragraphs 99 through 103 allege repeated communications among conspirators in the immediate wake of that search. Viewed collectively and in context, these allegations are probative of the conspirators' coordination and shared awareness. The timing and frequency of these contacts are relevant because they support the inference that the defendants were communicating in response to investigative actions. Although the defendant may propose innocent explanations for particular contacts, that does not render the allegations irrelevant or improper for inclusion in the indictment

Nor is the absence of call or text content dispositive. The allegations are relevant because the timing, frequency, sequence, and participants involved support the inference of coordinated activity.

The defendant also attempts to characterize the allegations as simultaneously "innocuous" and unfairly prejudicial. *See* Dkt. 942 at 6.  But if, as the defendant contends, the communication merely reflects harmless or routine contact, then their inclusion cannot plausibly create the sort of inflammatory prejudice required for striking surplusage under Rule 7(d).  What the defendant actually challenges are the inferences the government contends may reasonably be drawn from the pattern and timing of the communications.  But that is not a basis to excise allegations from the indictment.

3. **Allegations concerning opportunity and coordination are properly included in the indictment (¶¶ 41–43).**

Paragraphs 41 through 43 should not be stricken. Those allegations concern the defendant and Mr. Gogolack separating from Crystal Quinn for private discussions shortly before events central to the charged conspiracy.  The defendant argues that private conversations standing alone do not establish criminal conduct. *See id.*  That is true but beside the point.

These allegations are particularly relevant when viewed together with paragraph 44, which alleges that, after seemingly needing to exclude Crystal Quinn from a conversation, they then took her to the defendant's residence.  Considered collectively, the allegations support the inference that the conspirators were coordinating activity all while maintaining a familiar and trusting relationship with Crystal Quinn.  These allegations are probative of opportunity, coordination, and concerted activity between the defendant and Mr. Gogolack and therefore are properly included in the indictment.

Once more, the defendant again attempts to characterize these allegations as both innocuous and unfairly prejudicial. *See* Dkt. 952 at 6.  But those arguments are fundamentally

incompatible. If the alleged conduct merely reflects ordinary or innocent behavior, then it cannot simultaneously constitute the sort of inflammatory allegation warranting the extraordinary remedy of striking it from the indictment.

**4. Paragraph 22 is relevant to the defendants' motive.**

Paragraph 22 alleges that "prominently displayed behind the bar, was a skeleton of a dead rat hanging from a noose with the caption 'Outlaw 1%ers." The display is representative of the biker gang's institutional commitment toward tampering with cooperators—people like Crystal Quinn. That connection is precisely what renders the allegation relevant.

The defendant's argument improperly assumes that the allegation must establish an express conspiratorial agreement to be relevant. That is not the law. Allegations need not independently prove the conspiracy to be properly included in the indictment; they need only be relevant to the charged scheme when viewed in context. *See Slocum,* 695 F.2d at 654 ("[T]he function of the overt act is simply to demonstrate the conspiracy's existence, i.e., to prove that it is at work." (internal citation omitted)); *Persico*, 621 F. Supp. at 860 (declining to strike allegations concerning enterprise structure, terminology, and use of "anti-bugging" devices because such allegations were relevant to proving the enterprise's operations, intent, and consciousness of guilt).

The allegation is relevant because it provides context concerning the culture, norms, and mores of the charged defendants toward individuals perceived as cooperating with or providing information to law enforcement. Allegations concerning the practices, symbols and methods of a criminal enterprise are permitted where they provide relevant background concerning the operation and objectives of the conspiracy. *See Mulder*, 273 F.3d at 100

11

(affirming denial of motion to strike allegations describing the "tactics and purposes" of labor coalitions in extortion prosecution because the allegations constituted admissible and relevant background).

Nor does fact that the allegation may be damaging to the defendants warrant striking it from the indictment. Rule 7(d) requires more than ordinary prejudice; the challenged allegation must be both irrelevant and unfairly inflammatory. *See Scarpa*, 913 F.2d 993, 1013–14. Paragraph 22 plainly satisfies the relevance requirement: Crystal Quinn was cooperating with law enforcement and one of the last places she was seen alive was with associates of a biker gang who supported the Outlaws—the very organization whose clubhouse prominently displayed imagery reflecting hostility toward cooperators.

Ultimately, the defendant's objection is better made in a Rule 403 or 404(b) motion. A motion to strike surplusage is not a vehicle for premature evidentiary balancing, particularly where the challenged allegation provides relevant context concerning the operation, culture, and objectives of the charged conspiracy.

## III.    CONCLUSION

For all the foregoing reasons, the challenged allegations are relevant to the charged conspiracy and are not the sort of irrelevant and prejudicially inflammatory surplusage contemplated by Rule 7(d). The defendant's motion improperly seeks to excise allegations central to the government's theory of the case merely because the defendant disputes the inferences that may be drawn from them.

The Court should deny the defendant's motion to strike surplusage from Count One of the Second Superseding Indictment pursuant to Rule 7(d) in its entirety because the challenged allegations provide relevant evidence demonstrating the defendants': (1)

association and relationships; (2) communications surrounding significant events; (3) opportunity and coordination; and (4) motive.

DATED:  Buffalo, New York, May 26, 2026.

MICHAEL DIGIACOMO
United States Attorney

BY:    s/ KATERINA F. POWERS
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       (716) 843-5702
       Katerina.Powers@usdoj.gov