# WOJDAN-PRICE
## ——Law——

Hon. Elizabeth A. Wolford
Chief United States District Judge
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

May 28, 2026

Dear Hon. Wolford:

Please allow this letter to serve as a joint sur reply on behalf of Defendants Roncone, Knight, and Gogolack, in opposition to the Government's Omnibus Reply in Support of its Pre-Trial Statement of Facts and Motions in Limine (the "Reply"), Dkt. No. 975, which was filed on the public docket with no redactions on May 26, 2026. On the heels of this Court already acknowledging that the Government has changed their position regarding the amount of fentanyl present at the time Ms. Quinn passed away, this letter is being filed to address concerns several of the defendants have related to factual assertions made in Dkt. 975, though is not intended to be an exhaustive or exclusive argument.

This letter will address the concerns each defendant wishes to raise related to factual misrepresentations in turn.

### Michael Roncone

The Government stated that "following Ms. Quinn's death, Mr. Roncone entered the Outlaw's clubhouse seeking an in-person meeting with Mr. Ermin, appeared nervous, and made comments intimating that he had an adult relationship with Ms. Quinn." Reply at 22.

**This is not true** as written, and it is not supported by any of the discovery the Government has produced thus far. To be clear, this allegation is fabricated. The Defense suspects that an AI program was used in drafting Dkt. 975, and that it conflated statements contained within protected 3500 material to concoct this untruth, which also concerns the Defense.

In an interview with agents, a witness allegedly stated that he (*the witness*) "believed Roncone and Quinn had a relationship of an 'adult nature.'" Importantly, the Government has provided no evidence to show that that speculation is true. Because it is not. Regardless, the fabricated allegation in Dkt. 975 is essentially that Mr. Roncone admits to having a relationship with the alleged victim in this case, despite there being no evidence whatsoever that Mr. Roncone "made comments intimating that he had an adult relationship with Ms. Quinn," as the Government incorrectly alleged.

It is entirely unacceptable for the Government to file this kind of false allegation in a public filing.

Additionally, it is also false that Mr. Roncone entered the Outlaw clubhouse seeking an in-person meeting with Mr. Ermin. Similarly, this allegation is not found anywhere in the discovery provide by the Government and is not true.

Filing misrepresentations regarding material facts, especially on the public docket, is inexcusable. Mr. Roncone is seeking sanctions that the Court deem equitable, and is requesting that the Government publicly file a letter retracting their false allegations against Mr. Roncone together with an apology to him.

### Frank Knight

The government asserts that "Google location data indicates that Mr. Gogolack traveled from his residence at 296 Scott Avenue to the interior of Mr. Knight's home." Reply at 7. This is false. The only possible source of this assertion is the government's expert, Agent Orlando. But, Agent Orlando does not say that Mr. Gogolack went to the interior of Frank Knight's home, and cannot say that. He does not even say that Mr. Gogolack's phone was there.

The Court will recall that Mr. Donohue asked the Court to preclude Agent Orlando's testimony unless his expert opinion was that the Google location data rendered it more likely than not that Mr. Gogolack's phone was inside Knight's home that morning. Tellingly, the government would not even proffer that Agent Orlando would opine that the Google location data makes it more likely than not that Mr. Gogolack's phone was inside Knight's home.

Instead, the government stated that they expect Agent Orlando will testify consistent with his grand jury testimony. The questions there were intentionally asked to avoid what would surely be a negative response. Google's own experts would not even opine if presented with the data in this case that it is more likely than not that Mr. Gogolack's phone was in Knight's home. "In other words, if a user opens Google Maps and looks at the blue dot indicating Google's estimate of his

or her location, Google's goal is that there will be an estimated 68% chance that the user is actually within the shaded circle surrounding that blue dot." *U.S. v. Chaatrie*, 19-cr-130 (Marlo McGriff affidavit March 11, 2020).

Any claim by Agent Orlando that the device's likely location increases as you approach the center of the shaded circle would simply be made up science. Simply put, the Government is doing what it accuses the defendants of doing – advancing a false narrative.

### Simon Gogolack

The Government alleged that Ms. Quinn wanted to go to Wellsville because she was scared. Reply at 2. This is not supported by facts, and inconsistent with the Government's allegation that Ms. Quinn went to Wellsville because Mr. Gogolack "lured" her there.

The Government also argued that Mr. Gogolack used a shotgun to threaten Ms. Quinn in the present case. But, there is no evidence that Mr. Gogolack threatened Ms. Quinn with a shotgun[1].

Next, the Government argues that a "biker confrontation" occurred, but Mr. Gogolack did not say anything about bikers in relation to this alleged event.  In fact, P.G testified that Simon did not know who shined the laser, and that Simon said the incident occurred after Crystal spoke with her lawyer on July 31, days later. To be clear, Ms. Quinn's phone video does not show any bikers, and neither did the government geofence warrant; only a single uncorroborated text from crystal to Deb Wilczak's old phone number mentioned the word "biker," now it's the "biker confrontation;

The Government then argues that Mr. Gogolack offered "hitman services" to Bernard Byrd, but the government's interpretation of the text message is wrong. This is evidenced by their interview with Byrd, where he denied those texts had anything to do with hitman services and is not a basis to admit evidence of Mr. Gogolack's alleged prior narcotics activity. Further, there is no evidence identifying the drugs that killed Ms. Quinn, or that they were the same drugs previously possessed by Mr, Gogolack

---

[1] Unfired shotgun shells that are chambered and then ejected from a shotgun often pick up identifiable toolmarks, although the type and amount of marking varies by firearm and shell. Common marks can include: Extractor marks , from the extractor claw gripping the rim to pull the shell out; Ejector marks — from the ejector striking the shell during ejection; Chamber marks/scratches , from contact with the chamber walls during loading and cycling; Bolt face impressions , sometimes light marks from the bolt closing against the shell base; and Ffeed ramp or magazine tube marks , especially in semi-auto or pump shotguns.

\* \* \*

The above is not intended to address all of the arguments the Defense intends to make related to the Government's Omnibus Reply, but felt compelled to address these issues separately. We appreciate the Court's time in reviewing this matter, and look forward to discussing this in more detail at the next scheduled appearance on May 29, 2026.

Respectfully submitted,

*/s/ Jenna M. Wojdan-Price*

135 Delaware Ave., Suite 406
Buffalo, New York 14202
jenna@wojdanpricelaw.com
(716) 218-0895