

**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

| | |
|---|---|
| *Federal Center* | *716.843.5700* |
| *138 Delaware Avenue* | *Fax:  716.551.3052* |
| *Buffalo, New York   14202* | *Writer's Telephone:  716.843.5881* |
| | *Writer's fax:  716.551.3052* |
| | *Casey.Chalbeck@usdoj.gov* |

May 29, 2026

**VIA PACER**
Hon. Elizabeth A. Wolford
Chief United States District Judge
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

> Re:   ***United States of America v. Gogolack*, et al.,**
> **Case Number: 23-CR-99-EAW**

Dear Chief Judge Wolford:

On May 26, 2026, the government filed its Omnibus Reply in Support of Its Motions in *Limine* (Dkt. 975).   In that brief, the government responded to Mr. Roncone's argument that his affiliation with the Rare Breed, and the Rare Breed's affiliation with the Outlaws, is "irrelevant to the case at hand."   *Id.* at 22 (quoting Dkt. 959 at 6).   Specifically, and in relevant part, the government argued as follows: "Second, following Ms. Quinn's death, Mr. Roncone entered the Outlaws clubhouse seeking an in-person meeting with Mr. Ermin, appeared nervous, and made comments intimating that he had an adult relationship with Ms. Quinn."   *Id.*

On May 28, 2026, counsel for Mr. Roncone filed a sur-reply in response to the above-quoted sentence.   *See* Sur-Reply Ltr., at 1, Dkt. 976.   Mr. Roncone argues that this statement is "[n]ot true as written, and . . . not supported by any of the discovery the [g]overnment has produced thus far."   *Id.*   Mr. Roncone's counsel then states that she "suspects that an AI program was used in drafting Dkt. 975, and that it conflated statements contained within the protected 3500 material to concoct this untruth . . . ."   *Id.*   Mr. Roncone further claims that the government's allegation that Mr. Roncone was seeking an in-person meeting with Mr. Ermin is "false."   *Id.* at 2.   For these reasons, Mr. Roncone seeks sanctions against the government.[1]

---

[1]   Counsel for Mr. Roncone appears to only informally seek sanctions from this Court.   Indeed, Mr. Roncone's passing request for sanctions is devoid of any legal analysis or discussion.   For that reason alone, it should be denied without prejudice.   *See Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority . . . forfeits the point.").

Government counsel has never uploaded 3500 exhibits—protected or otherwise—to an AI program.   Government counsel—and only government counsel—wrote the sentence that Mr. Roncone objects to.   That writing was based on GX-3525A (FBI-302, dated Mar. 26, 2025) (enclosed under seal), as well as other 3500 material and discovery as discussed *infra*.   GX-3525A documents an interview with P.C., who the government believes was or is the President of the Outlaws' Southern Tier chapter.

P.C. described a conversation he had with Mr. Roncone during the second week of August 2023, shortly after Ms. Quinn died.   P.C. "stated that Roncone appeared nervous and told [P.C] that the feds are all around Wellsville, NY. . . . Roncone told [P.C.] that I [Roncone] think I should tell Tommy O [aka Ermin].   Roncone asked [P.C.] if [P.C.] would reach out to Ermin regarding [the] same."   *Id.* at 2.   While reporting Mr. Roncone's statements and demeanor during the August 2023 meeting, P.C. stated that "Roncone knew Quinn and [P.C.] believed Roncone and Quinn had a relationship of an 'adult nature.'"   *Id.* at 1.

The government appreciates that Mr. Roncone disputes what P.C. said and draws different inferences from the FBI-302 documenting his interview.[2]   But that does not mean that the government lacked a fair, good-faith basis for arguing that Mr. Roncone intimated that he had an "adult" relationship with Ms. Quinn: P.C. recounted that he and Mr. Roncone had a conversation and, while describing that conversation, P.C. stated Mr. Roncone knew Ms. Quinn and, in his view, had an "adult relationship" with her.   *Id.* at 1–2.   This context supports the inference that P.C.'s beliefs were based on the dialogue he had with Mr. Roncone about the federal investigation into Ms. Quinn's death.

Similarly, the government had a fair, good-faith basis for arguing that Mr. Roncone sought an in-person meeting with Mr. Ermin.   P.C. stated that Mr. Roncone personally wanted to talk with Mr. Ermin.   *Id.* at 2 ("I [Roncone] think I should tell Tommy O.").   P.C. further stated that Mr. Roncone asked if he "would reach out to [Mr.] Ermin regarding [the] same"—i.e., whether P.C. would reach out to Mr. Ermin regarding Mr. Roncone's desire to personally discuss the federal law enforcement investigation unfolding in Wellsville, New York.   Based on (1) P.C.'s statements; (2) the anticipated testimony of D.D., who will discuss specific instances where members of the Rare Breed met face-to-face with Outlaws leadership; (3) the proposed testimony of ATF IOS Scheetz, who would opine about the use of face-to-face meetings to evade law enforcement detection; and (4) cell phone evidence showing that Mr. Roncone was capable of calling Mr. Ermin, such that he would not need to use P.C. to "reach out to" Mr. Ermin to meet telephonically, it is reasonable for the government to argue that Mr. Roncone sought an in-person meeting with Mr. Ermin and was enlisting P.C., an Outlaws leader, to facilitate that meeting.

---

[2]   The government frequently disagrees with the defense's interpretation of the evidence.   The government also endeavors to correct assertions that it thinks are not, or are not fairly, supported by the evidence. These disagreements are a standard part of the adversarial process—and not once has the government moved to sanction an attorney on this case for drawing their own inferences about, or readings of, the discoverable evidence.   If good-faith disagreements about the inferences supported by the evidence are grounds for sanctions, both sides—and the adversarial process, itself—will suffer.

Lastly, while the government welcomes vigorous debate about a witness's statements, the inferences they support, and their legal import, it believes that zealous advocacy can—and should—operate within respectful boundaries. Requesting sanctions based on unsupported suspicions that government counsel violated a protective order and used AI to interpret restricted 3500 material and fabricate sentences stands apart from the generally respectful tenor of this litigation.

Respectfully,

Casey L. Chalbeck
Assistant United States Attorney

CC: Counsel of Record (via PACER)
Encl. (Via USAFx)