UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

SIMON GOGOLACK, a/k/a Greek,
PETER GERACE, JR.,
JOHN THOMAS ERMIN, a/k/a Tommy O,
MICHAEL RONCONE, a/k/a Cone,
FRANK KNIGHT, and
HOWARD HINKLE, JR., a/k/a Hard How,

Defendants.

**DECISION AND ORDER**

1:23-CR-00099 EAW

The above-captioned defendants Simon Gogolack ("Gogolack"), Peter Gerace, Jr. ("Gerace"), John Thomas Ermin ("Ermin"), Michael Roncone ("Roncone"), Frank Knight ("Knight"), and Howard Hinkle, Jr. ("Hinkle") (collectively, "Defendants"), stand accused of various crimes by way of a second superseding indictment returned on January 5, 2024, related to the death of Crystal Quinn ("Quinn"), a witness who was scheduled to testify as a government witness in a federal criminal trial against Gerace. (Dkt. 24). A jury trial is scheduled to commence on or about June 8, 2026. (Dkt. 749).[1]

In connection with pretrial motions *in limine*, the government sought a ruling from this Court concerning the admissibility of two sets of text messages "related to the July 28, 2023 biker confrontation" outside Gogolack's residence in Wellsville, New York. (Dkt.

---

[1]    The Court advised the parties on May 29, 2026, that June 8, 2026 will be set aside to address outstanding legal issues, with jury selection commencing the following day.

894 (sealed motion *in limine*) at 74-94; Dkt. 925 (publicly-filed redacted motion *in limine*) at 74-94).  One set of text messages purportedly reflects communications between Quinn and Gogolack on July 28, 2023, from about 5:32 a.m. until 6:14 a.m., as contained in a document designated GX-423-H.  (Dkt. 894-2 at 37-47).  The other set of text messages purportedly reflects communications sent by Quinn on July 28, 2023, to an expired contact of her friend, D.W., from about 5:31 a.m. until 5:57 a.m., as contained in a document designated GX-437-D.  (Dkt. 894-3).  The government seeks admission of these out-of-court statements on various grounds.  (Dkt. 894 at 74-94 (sealed motion *in limine*); Dkt. 925 at 74-94 (publicly-filed redacted motion *in limine*); *see also* Dkt. 847 at 110-132 (redacted motion seeking admission under Fed. R. Evid. 804(b)(6)); Dkt. 848 at 110-132 (sealed motion seeking admission under Fed. R. Evid. 804(b)(6))).  The text messages are related to the following overt acts as alleged in paragraphs 45 and 46 of the second superseding indictment:

> On July 28, 2023, during the early morning hours, GOGOLACK and Crystal Quinn returned to GOGLACK'S residence, located at 296 Scott Avenue in Wellsville.  GOGOLACK then left Crystal Quinn in the residence while he walked over to KNIGHT'S residence, which was nearby.  While GOGOLACK was out of the residence, Crystal Quinn was confronted by "bikers", whose actions placed Crystal Quinn in fear for her life.

> On July 28, 2023, after Crystal Quinn was confronted by bikers and placed in fear for her life, GOGOLACK returned to the residence and reassured Crystal Quinn that he was on her side and would protect her from the bikers.

(Dkt. 24 at 20).

This Decision and Order addresses only the issue of whether the government has established by a preponderance of the evidence that Quinn witnessed an event around 5:30

a.m. on July 28, 2023, necessary to satisfy the prerequisites of admissibility for her statements under Federal Rules of Evidence 803(1) and 803(2).  For the reasons set forth below, the Court concludes that the government has not satisfied its burden to show that a biker confrontation occurred on the date in question, but it continues to reserve decision on whether Quinn observed what she perceived to be red beams (and if so, the extent any statements are admissible under Rules 803(1) and (2) on that basis).

PROCEDURAL HISTORY

As noted above, the second superseding indictment was returned on January 5, 2024 (Dkt. 24); a jury trial is scheduled to commence on or about June 8, 2026 (Dkt. 749); and the government submitted the relevant motion *in limine* on the admissibility of the subject out-of-court communications under Rules 803(1) and 803(2) on or about April 17, 2026 (Dkt. 894 (sealed motion); Dkt. 925 (publicly-filed redacted motion)).  An appearance was held before the undersigned on May 1, 2026, at which time a deadline of May 8, 2026, was set for a supplemental submission regarding Quinn's out-of-court statements, and Defendants' deadline to respond to the government's pending motions *in limine* was extended to May 15, 2026.  (Dkt. 934).

After the appearance, by email dated May 4, 2026, the undersigned communicated with counsel that it proposed setting aside time to expressly address the admissibility of the out-of-court statements concerning the alleged biker confrontation.  As noted in the email, the government had argued at the appearance on May 1, 2026, that corroborating evidence supported the occurrence of the confrontation, but the corroboration was not detailed in the government's motions filed up to that point.  With no objection to this

- 3 -

proposal by the parties, by Text Order issued May 5, 2026, the Court scheduled a hearing pursuant to Fed. R. Evid. 104(a) "for purposes of addressing the government's pretrial motion in limine to admit text messages about the alleged July 28, 2023 biker confrontation (Dkt. 925 at 74-94; *see also* Dkt. 894-2, Exhibit GX-423-H and Dkt. 894-3, Exhibit GX-437-D), . . . as proposed in the email by the undersigned to all counsel on May 4, 2026." (Dkt. 937). The Text Order further indicated: "The parties may proceed by proffer at the hearing, but if any party intends to present witnesses and exhibits outside of its written submissions, witness and exhibit lists must be filed on or before May 21, 2026." (*Id.*).

The government filed a supplemental submission on May 8, 2026, addressing Quinn's out-of-court statements, including those related to the alleged biker confrontation. (Dkt. 947). Submitted with that supplemental submission for filing under seal was a table of Quinn's statements that the government seeks to admit along with evidence that the government is relying on for corroboration.[2]

Defendants have filed opposition papers to the government's motion.[3] Gogolack filed a response on May 4, 2026, addressing, in part, Quinn's out-of-court statements. (Dkt. 927 (redacted public response) at 14-17; Dkt. 941 (sealed response) at 14-17). Gogolack

---

[2]    These materials have not yet been filed under seal as the Court is waiting for the government to file a motion to seal.

[3]    The Court has only detailed in this Decision and Order the defense submissions expressly addressing the issue of whether Quinn witnessed an event on July 28, 2023, necessary to the satisfy the prerequisites of Rules 803(1) and (2).

then filed further opposition on May 21, 2026.  (Dkt. 966 (redacted version)).[4]  Knight filed

a response memo on May 18, 2026 (Dkt. 962 (redacted public response); Dkt. 963 (sealed

response)).  Hinkle filed a response on May 15, 2026.  (Dkt. 953).

The government filed an omnibus reply in support of its motions *in limine* on May

26, 2026 (Dkt. 975 at 4-7), and an amended omnibus reply on May 29, 2026 (Dkt. 981 at

4-7).

An appearance was held before the undersigned on May 29, 2026, and the parties

proceeded by proffer.  In addition, as requested at the hearing, the government has provided

the Court with five separate files of video evidence apparently captured from Quinn's

cellphone during the relevant time period on July 28, 2023.

DISCUSSION

A court "must decide any preliminary question about whether . . . evidence is

admissible.  In so deciding, the court is not bound by evidence rules, except those on

privilege."  Fed. R. Evid. 104(a).  The applicable standard of proof under Rule 104(a) is

preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  "To

establish a fact by a preponderance of the evidence means to prove that the fact is more

likely true than not true."  *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997).  "Under the

preponderance of the evidence standard, if the evidence is evenly balanced, the party with

the burden of proof loses."  *Richardson v. Merritt*, No. 12-CV-5753 (ARR), 2014 WL

2566904, at *5 (E.D.N.Y. June 6, 2014) (citing *Kosakow v. New Rochelle Radiology*

---

[4]    Gogolack's unredacted version of this filing has not yet been filed under seal because the Court is waiting for the parties to resolve the issue of the proposed redactions.

*Assocs.*, 274 F.3d 706, 731 (2d Cir. 2001)).  In other words, if the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then the party with the burden of proof has failed to meet its burden.

Federal Rule of Evidence 803(1) excludes from the rule barring the admission of hearsay "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).  To qualify as a present sense impression under Rule 803(1), the proponent must establish "three distinct requirements:  (a) the statement must describe or explain the event perceived; (b) the declarant must have in fact perceived the event described; and (c) the description must be 'substantially contemporaneous' with the event in question." *United States v. Smothers*, 652 F. Supp. 3d 271, 293 (E.D.N.Y. 2023).  Present sense impressions under Rule 803(1) "are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002).

Federal Rule of Evidence 803(2) excludes from the hearsay bar a statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).  To qualify as an excited utterance, the proponent of the evidence must establish:  "(1) the occurrence of a startling event; (2) that the declarant made the statement while under the stress of excitement caused by the event; and (3) that the declarant's statement relates to the startling event." *United States v. Wilson*, 642 F. Supp. 3d 380, 389 (W.D.N.Y. 2022) (citation modified).  Similar to the underlying

rationale for the present sense impression exception, the basis for the excited utterance exception to the hearsay rule "is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998); *see also Jones*, 299 F.3d at 112 ("The hearsay exception for excited utterances is premised on a similar, though distinct, assumption [underlying the present sense impression exception] that the reliability of a statement increases as opportunity for reflection by the declarant decreases.").

Although distinctions exist between a present sense impression and an excited utterance, *see*, *e.g.*, *United States v. Johnson*, 117 F.4th 28, 46 (2d Cir. 2024) ("An excited utterance is not synonymous with a present sense impression, however.  While the hearsay exception for present sense impressions focuses on *contemporaneity* as the guarantor of reliability, and requires that the hearsay statement describe or explain the contemporaneous event or condition, the excited utterance exception is based on the *psychological impact* of the event itself, and permits admission of a broader range of hearsay statements—*i.e.* those that relate to the event." (citation modified)), each requires the declarant to have personally observed the relevant event, *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  In other words, "[t]he present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures." *Brown v. Keane*, 355 F.3d 82, 89 (2d Cir. 2004); *cf. Miller v. Keating*, 754 F.2d 507, 511 (3d Cir. 1985) ("Direct proof of perception, or proof that forecloses all speculation is not required.  On the other hand, circumstantial

evidence of the declarant's personal perception must not be so scanty as to forfeit the 'guarantees or trustworthiness' which form the hallmark of all exceptions to the hearsay rule."). Likewise, excited utterances "must rest on personal knowledge" because "[m]ere excitement . . . not coupled with knowledge of the event described, adds nothing to reliability." *Brown*, 355 F.3d at 90. As explained by the Second Circuit in *Brown*: "When a declarant, alarmed by the *sound* of gunshots, speculates in a state of excitement as to the identity of a shooter she does not see, that speculation is not reliable." *Id.*[5] *Cf. United States v. Gonzalez*, 764 F.3d 159, 168-69 (2d Cir. 2014) (affirming exclusion of statements under Rules 803(1) and (2) because of lack of evidence that declarant observed events); *see also United States v. Chen Kuo*, No. 10-CR-671 (S-1)(KAM), 2011 WL 145471, at *3 (E.D.N.Y. Jan. 18, 2011) (addressing admissibility of 911 calls by unavailable declarants and assessing whether personal knowledge of events was evident from substance of calls); *United States v. Padilla*, No. S1 94 CR. 313 (CSH), 1995 WL 261513, at *4-5 (S.D.N.Y. May 3, 1995), *aff'd*, 205 F.3d 1326 (2d Cir. 2000) (out-of-court statements by unavailable declarants not admissible as either present sense impressions or excited utterances because proponent failed to meet burden to show declarants personally observed events in question).

Thus, admissibility of the full extent of Quinn's text messages under Rules 803(1) and (2) turns, in part, on whether the government is able to demonstrate that it is more

---

[5] Although *Brown* was decided prior to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), its reasoning "remains pertinent to hearsay law. . . ." *Phillips v. Lee*, No. 10-CV-4685 ARR, 2012 WL 847432, at *9 (E.D.N.Y. Mar. 13, 2012).

likely than not that Quinn observed an event—namely, the "July 28, 2023 biker confrontation" where "multiple people confronted" Gogolack and Quinn at about 5:32 a.m. on July 27, 2023, outside Gogolack's residence. (Dkt. 925 at 74-75). To support the position that she did, the government leans heavily on the text messages themselves. And no question, some of the statements support the conclusion that there was a biker confrontation. (*See*, *e.g.*, Dkt. 894-3 at 1 (stating at 5:31:57 a.m. "I got 10 red beams looking at me"), 2 (stating from 5:41:32-5:42:53 a.m. that "I just heard Simon speaking to one of the bikers" and "all these red lights started flashing on me"), 4 (stating from 5:56:23-5:57:57 a.m. that she could hear "5 girls" who were going to "come in and whip my ass" and they were "jumping me now")). Yet some of the statements make no sense (*see*, *e.g.*, Dkt. 894-2 at 41 (stating at 5:57:45 a.m. "So mint Ernst all dbstrf")); others appear to contradict each other (*see* Dkt. 894-3 at 1 and Dkt. 894-2 at 37 (stating to expired D.W. contact at 5:31:34 a.m. "There is a room behind me and they are going to rape me I think"; while stating almost immediately thereafter to Gogolack at 5:32:52 a.m. "We are fine there not hurting me.")); and at least one of the statements appears to suggest Gogolack's view that Quinn is under the influence of drugs and delusional (Dkt. 894-2 at 40 (stating at 5:36:50 a.m. "Ur trippin n we'll go out to get her then")).[6]

---

[6]    The government takes issue with that suggestion, arguing that "read in context" the statement was "intended to calm" Quinn and is not evidence that she was under the influence of hallucinogens. (Dkt. 981 at 5). The Court is not convinced. That said, if the requisite elements of the applicable hearsay exception are satisfied, then the statements are admissible even if the accuracy of the declarant's statement could be challenged. *See*, *e.g.*, *United States v. Shipp*, No. 19-CR-029 (NGG), 2020 WL 1140474, at *3 (E.D.N.Y. Mar. 9, 2020) (where declarant was intoxicated at time he was shot, statements that fit within definitions of Rules 803(1) and (2) were admissible, and declarant's intoxication went to

Importantly, the messages themselves are not the only evidence from Quinn's cellphone. There is video evidence on that cellphone from the same time period—and in the undersigned's view, it contradicts the suggestion that a biker confrontation occurred. At 4:52 a.m., there is a recording of trees and a street with what is apparently Quinn's voice stating "scumbag motherfuckers." But no bikers, red beams, or anything relevant is depicted in the video. And video evidence from 5:58 a.m. until 6:01 a.m.—at around the same time Quinn was texting D.W.'s expired contact claiming that five girls were jumping her—shows absolutely nothing occurring (other than images of what was apparently Quinn's foot).

That said, the government does not just rely on the evidence captured from Quinn's cellphone to support its position. It also cites to grand jury testimony dated November 8, 2023, from Gogolack's father Paul Gogolack, designated as Government Exhibit 3566, wherein he testified that at some point after Quinn's death and after Gogolack was hospitalized, Gogolack told him about "the lasers." Specifically, Paul Gogokack testified before the grand jury as follows:

> A      He did also mention the issue of—I'm not sure because I talked to him twice that day. I'm not sure if it was that day or the next day that he mentioned about the lasers. That there was red dots coming in the window and this was before the overdose, excuse me, okay.
>
> Q      The conversation or what he's describing?
>
> A      What happened.

---

the weight to be afforded to the statements, not admissibility). On the other hand, "concern about the statement's reliability . . . may lead a court to reject a statement on the ground of lack of perception." 5 Weinstein's Federal Evidence § 803.04 (2026).

Q      Okay.

A      When he's describing it because I didn't know nothing about the lasers until after she died.

Q      Sure.

A      But he mentioned about the lasers coming in through the windows, okay, and that she was so terrified that she literally went outside and started screaming if you're going to shoot me, get it over with. Simon was really scared then also because he knows what lasers are. I mean, even I know what a laser is. You know, on a gun, you know what I mean. He was pretty shook up over that also.

(Govt. Ex. 3566 at 15-16). Paul Gogolack continued that Quinn had told Gogolack that the "mob was after her" and that Gogolack did not know who had shined the lasers but "the mind starts rolling," and that all Gogolack had "seen is the lasers going . . . going through a window and hitting the walls and going around. . . ." (*Id.* at 16-17).

A fair reading of this testimony is that Gogolack told his father that at some point during the time Quinn was staying at his residence, they both observed lasers shining through the windows of Gogolack's residence and this caused them to be scared. Whether the laser observations occurred during the early morning hours of July 28, 2023, is not established by Paul Gogolack's testimony, but it is a fair inference that it occurred on that date when considered with the other evidence. On the other hand, there is no support from Paul Gogolack's testimony that Gogolack or Quinn witnessed the individuals who shined the lasers—indeed, Paul Gogolack suggests the exact opposite. And the video evidence captured from Quinn's cellphone supports the conclusion that they never witnessed the individuals who purportedly shined lasers.

In addition to the above, the government relies on electronic evidence that at the time of the purported biker confrontation, Quinn sent a "pin" at 5:28 a.m. of her location to her mother's old email address (at the Depew police department) (*see* GX-437M-Report and Attachment) and shortly thereafter to D.W.'s expired contact (*see* Dkt. 894-3 at 2 (location file sent at 5:42:59 a.m.)), and that at about 5:23 a.m. on July 28, 2023, Gogolack "used a police scanning application that would have alerted him to any incoming law enforcement response." (Dkt. 947 at 6 (citing GX-423AN)). In other words, according to the government, Gogolack was monitoring for any police or other emergency response to the area.

Finally, the government relies on grand jury testimony provided by D.W. on October 4, 2023, designated as Government Exhibit 3679D,[7] wherein D.W. testified that she had an early morning phone call with Quinn on July 28, 2023,[8] where Quinn was whispering and D.W. could not understand what she was saying, appearing as though Quinn was trying to prevent Gogolack from hearing what she was saying. (Govt. Ex. 3679D at 20-21). Later that same day, D.W. was speaking again with Quinn by telephone and she heard Gogolack make the comment that "an old friend" of Quinn's had come over

---

[7]     The government has advised that D.W. has passed away. (Dkt. 948). But the Court agrees that it may consider D.W.'s grand jury testimony because under Rule 104(a), it is not bound by the Rules of Evidence. *United States v. DeJesus*, 806 F.2d 31, 34 (2d Cir. 1986) ("[T]he trial court's inquiry under Rule 104(a) is not limited to evidence admissible at a trial and may thus include hearsay evidence. . . .").

[8]     D.W. could not testify as to the exact date that this occurred. (GX 3679D at 20). The government represents that the call occurred on July 28, 2023. (Dkt. 947 at 6).

to visit.  (*Id.* at 21).[9]  It is not clear to the Court, and the government is not able to identify, who this old friend purportedly was—or for that matter, if the "old friend" was even an actual person.

The government urges the Court to consider the totality of this evidence and conclude that it has met the preponderance standard to show that Quinn personally observed a biker confrontation on the date in question sufficient to lay the foundation for the admission of the text messages under Rules 803(1) and (2).  The Court is unable to do so.  In other words, it seems clear that Quinn was excited and reacting to something that she thought she perceived on July 28, 2023.  And while there is a possibility that there was a confrontation with bikers, it is at least as likely that nobody was outside the residence during the early morning hours of July 28, and instead Quinn was reacting to what she perceived to be laser beams shining through Gogolack's windows.  Whether anyone actually shined laser beams through the windows is equally unclear, although the Court is not prepared at this stage to conclude that the credible proof does not establish that Quinn witnessed red lights that she perceived to be laser beams.

Therefore, under the circumstances, to allow the full scope of the text messages to be admitted as excited utterances or present sense impressions would run afoul of the Second Circuit's cautionary instructions not to allow out-of-court statements prompted by

---

[9]     The defense cites, in part, to the lack of any other cellphones from Geofence data from the date, time, and location in question, but the government argues that the "location data is plainly underinclusive."  (Dkt. 981 at 7).  The government has not relied on Geofence data to support its proffer, and the Court finds that the record is not sufficiently developed at this point to rely on this data to support any particular conclusion.

"conjecture" or "mere excitement" without credible proof of personal knowledge. *See Brown*, 355 F.3d at 89-90. It would be akin to allowing a declarant who heard gunshots to testify about who fired the gun even though the declarant never saw the shooter. *Id.* at 90. "It is one of the most basic requirements of the law of evidence that a witness's report may be admitted only where grounds exist for a 'finding that the witness has personal knowledge of the matter' to which the statement relates." *Id.* The undersigned is unable to conclude that it is more likely than not that Quinn's statements in the text messages were describing or explaining a confrontation that she actually perceived versus conjecture (as necessary for their admission under Rule 803(1)), or that the statements were made under the stress of excitement caused by a confrontation Quinn actually witnessed (as necessary for their admission under Rule 803(2)). That said, the Court cannot rule out at this stage that a more limited portion of the text messages could be admitted under Rules 803(1) or (2) specifically related to Quinn's alleged observation of red lights, and therefore it continues to reserve decision on that issue.

## CONCLUSION

For the foregoing reasons, the Court concludes that the government has not established by a preponderance of the evidence that Quinn witnessed a biker confrontation on July 28, 2023, so as to allow for the admissibility of the full scope of the subject text messages under Rules 803(1) or (2).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

- 14 -

- 15 -

Dated:        June 2, 2026
              Rochester, New York