IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

     v.                                   23-CR-99-EAW

SIMON GOGOLACK, et al.,

           Defendants

---

**GOVERNMENT'S MOTION TO DISMISS CERTAIN COUNTS AS TO DEFENDANTS GOGOLACK AND GERACE, FOR SEVERANCE OF DEFENDANTS, AND FOR REJOINDER OF COUNTS AS TO DEFENDANT GOGOLACK**

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, of counsel, hereby moves (1) to dismiss certain counts of the Second Superseding Indictment as to defendants Gogolack and Gerace; (2) for individual severance of defendants Gogolack and Gerace; (3) for rejoinder of all counts in which defendant Gogolack is charged; and (4) the denial of certain motions as moot.

## DISCUSSION

1.     **Dismissal of Certain Counts of the Second Superseding Indictment.**

On June 5, 2026, Messrs. Roncone, Hinkle, Ermin, and Knight pleaded guilty to various federal offenses. In addition, the government has, as in all cases, continued to reevaluate its proof in accordance with the interests of justice. Accordingly, pursuant to Federal Rule of Criminal Procedure 48(a), the United States hereby moves to dismiss with prejudice the following counts of the Second Superseding Indictment:

1.      Count 1, as to defendant Simon Gogolack;

2.      Count 2, as to defendants Simon Gogolack and Peter Gerace, Jr.; and

3.      Count 3, as to defendants Simon Gogolack and Peter Gerace, Jr.

**2.      The Severance of Messrs. Gogolack and Gerace.**

If the Court grants the government's motion to dismiss as set forth above, the dismissal of those counts eliminates the basis upon which the defendants are joined under Federal Rule of Criminal Procedure 8(b).   Accordingly, pursuant to Rule 8(b), the government moves to sever the defendants.[1]

**3.      The Rejoinder of Mr. Gogolack's Pending Charges.**

If the government's severance motion is granted, the government requests that all charges against Mr. Gogolack be rejoined under Federal Rule of Criminal Procedure 8(a).[2] These counts include: Count 4 (Distribution Resulting in Death); Count 6 (Narcotics Conspiracy); Count 7 (Maintaining a Drug-Involved Premises); Count 8 (Possession of Firearms in Furtherance of Drug Trafficking); Count 9 (Felon in Possession of a Firearm and Ammunition); Count 10 (Unlawful User of Controlled Substances in Possession of a Firearm and Ammunition); Count 11 (Kidnapping); Count 12 (Kidnapping); Count 13 (Witness Tampering); Count 14 (Witness Tampering); Count 15 (Witness Tampering); Count 16 (Witness Tampering); Count 17 (Witness Tampering); and Count 18 (Witness Tampering).

Rule 8(a) provides that an "indictment . . . may charge a defendant in separate counts

---

[1]      The government conferred with defense counsel for both Mr. Gogolack and Mr. Gerace. Counsel for Mr. Gogolack does not oppose the government's motion to sever.   Counsel for Mr. Gerace requested additional time to consider Mr. Gerace's position on the government's motion to sever.

[2]      Counsel for Mr. Gogolack opposes the motion to rejoin Count 4 with Counts 6 through 18. However, Mr. Gogolack advised that if the Court were to rejoin the previously severed counts, he would request an adjournment of the trial so that the defense could adequately prepare.   Should the Court grant the government's motion to rejoin the counts, the government would not oppose a modest adjournment of the trial for Mr. Gogolack.

with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). Offenses are of the "same" or "similar" character if they are "[n]early corresponding; resembling in many respects; somewhat alike; [or] hav[e] a general likeness." *United States v. Little*, No. 19-CR-276-02 (NSR), 2020 WL 3869126, at *1 (S.D.N.Y. July 9, 2020) (quoting *United States v. Werner*, 620 F.2d 922, 926–27 (2d Cir. 1980) (internal citations omitted)). Offenses are "connected with" one another "where the same evidence may be used to prove each count," *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991), or if the counts have a "sufficient logical connection" to one another, *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990). Rule 8(a) is "a liberal standard" for the government to meet. *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977).

Mr. Gogolack's narcotics offenses—Counts 4, 6 and 7—should be rejoined because they are facially "of the same or similar character." FED. R. CRIM. P. 8(a). Counts 4 and 6 both allege that Mr. Gogolack intentionally and knowingly distributed—or conspired to distribute—controlled substances, including fentanyl. *See* Dkt. 24 at 34, 35–36. Likewise, Count 7 charges Mr. Gogolack with maintaining a drug-involved premises "for the purpose of manufacturing, distributing, and using . . . fentanyl," among other drugs. *Id.* at 36. Ms. Quinn also died from a fentanyl/opioid overdose inside of Mr. Gogolack's residence. In that way, Mr. Gogolack's use and maintenance of his residence as a drug-involved premises, as charged in Count 7, bears directly on his distribution of fentanyl to Ms. Quinn, as charged in Count 4. These offenses are each facially alike.

Mr. Gogolack's firearm offenses—Counts 8 through 10—are also of a "similar character," as Mr. Gogolack's firearms were "important 'tool[s]' of [his] 'trade]—trafficking

3

in narcotics." *United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011); *see id.* (affirming joinder of narcotics and firearm offenses). Likewise, "separate trials of the narcotics counts and the gun count[s] would . . . require[] much of the same evidence," further militating in favor of rejoinder. *Id.* Specifically, "[a]t a separate gun trial, to prove [Mr. Gogolack's] knowing possession of the gun, the government w[ill] . . . [be] entitled to offer evidence of his narcotics trafficking." *Id.* And in a "separate narcotics trial, to prove the existence of a conspiracy to distribute narcotics, the government [will be] entitled to offer proof of [Mr. Gogolack's] possession of a 'tool[ ] of the trade'"—i.e., the firearm. *Id.*

Moreover, search warrants executed upon Mr. Gogolack's residence and cell phone—as well as a search of Crystal Quinn's cell phone—yielded evidence of both his participation in a narcotics conspiracy and unlawful possession of firearms. *See United States v. Thompson*, 504 F. Supp. 3d 160, 174 (W.D.N.Y. 2020) ("Just as firearms possession is admissible in a narcotics trial, the joinder of firearms and narcotics counts based upon evidence discovered during the scope of a single search is appropriate."), *aff'd sub nom. United States v. Turner*, No. 20-4054-CR, 2023 WL 5091187 (2d Cir. Aug. 9, 2023). In that regard, Ms. Quinn appears to have taken a photograph of Mr. Gogolack the weekend of her death in Wellsville depicting him holding a Kel-Tec KSG shotgun and standing near a bag of what appears to be narcotics.

Furthermore, per Count 8, Mr. Gogolack possessed firearms in furtherance of his drug trafficking activity. Dkt. 24 at 37. The government anticipates that the evidence will show that Mr. Gogolack attempted to sell or provide firearms to at least one of his narcotics co-conspirators, including deceased defendant Bernard Byrd, III, a/k/a "Deal." Accordingly, rejoining Mr. Gogolack's narcotics and firearm offenses is appropriate.

Rejoining Mr. Gogolack's kidnapping and witness tampering charges—Counts 11 and

12 (kidnapping) and Counts 13 through 18 (witness tampering)—with his narcotics and firearm offenses is also proper.   For starters, Mr. Gogolack distributed narcotics to J.C. and C.B., his victims, prior to kidnapping them.   Thus, even though the narcotics conspiracy charged in Count 6 post-dates the March 2023 kidnapping by approximately four months, the government would seek to introduce J.C. and C.B.'s testimony of Mr. Gogolack's narcotics distribution to prove Mr. Gogolack intentionally participated in the charged narcotics activity. Indeed, Mr. Gogolack used his status as a fentanyl dealer to induce J.C. and C.B. to his residence in Wellsville, New York, where he kidnapped them.   The government believes that Mr. Gogolack kidnapped J.C. and C.B. to maintain his (at least self-perceived) status as a fearsome drug dealer—in other words, to protect his narcotics business.   Mr. Gogolack's kidnapping offenses thus "are connected with or constitute parts of" his long-term "scheme" to distribute narcotics.   FED. R. CRIM. P. 8(a); *Ruiz*, 894 F.2d at 505 (commenting that joinder is proper where counts have a "sufficient logical connection" to one another).

Finally, Counts 13 through 18, which charge Mr. Gogolack with acts of witness tampering against J.C. and C.B., are logically "connected" to Mr. Gogolack's involvement in the narcotics conspiracy (Count 6), his distribution of fentanyl to Ms. Quinn (Count 4), and his kidnapping of J.C. and C.B. (Counts 11 and 12).   FED. R. CRIM. P. 8(a); *Ruiz*, 894 F.2d at 505.   Mr. Gogolack sent J.C. and C.B. messages through CashApp stating, in sum and substance, "for 6th amendment" on or about August 14, 2023.   By then, the FBI had made several developments in its investigation into Ms. Quinn's death and Mr. Gogolack's narcotics activity, including interviewing Mr. Gogolack and seizing his cell phone pursuant to a search warrant on August 2, 2023, and searching Mr. Gogolack's residence on August 8, 2023.   The warrant to search Mr. Gogolack's phone—which the FBI provided him during

his August 2nd interview—noted that the "search [was] related to a violation of Title 21, United States Code, Sections 841(a)(1)[] and 843(b)."

Thus, Mr. Gogolack was likely aware that, at a minimum, law enforcement was investigating him for possessing controlled substances with an intent to distribute them and using a cellular telephone to facilitate a narcotics offense—conduct encompassed within the distribution of fentanyl charged in Count 4 and the narcotics conspiracy charged in Count 6. *See* 21 U.S.C. § 841(a)(1) (prohibiting the knowing distribution of controlled substances); *id.* § 843(b) (prohibiting the use of a communication facility to facilitate narcotics offenses); Dkt. 24 at 34–35 (charging, in Count 4, Mr. Gogolack with distributing fentanyl in violation of "Title 21 United States Code, Sections 841(a)(1)"), 35–36 (charging, in Count 6, Mr. Gogolack with distributing various narcotics "in violation of Title 21, United States Code, Sections 841(a)(1)"). C.B. and Mr. Gogolack exchanged drug-related text messages in July of 2023, which is directly within the time period charged in Counts 6. With that knowledge, Mr. Gogolack sought to tamper with J.C. and C.B, two of his narcotics customers and kidnapping victims. Thus, Counts 13 through 18 should be joined with Mr. Gogolack's narcotics, firearms, and kidnapping offenses pursuant to Rule 8(a).

### 4.    Proposed Resolution to Outstanding Motions.

The Court previously ordered the parties to file submissions on four outstanding issues by June 5, 2026. First, the Court ordered the parties to file post-hearing briefing regarding the admissibility of ATF IOS Jeremy Scheetz's proposed testimony. *See* Minute Entry, Dkt. 986, (dated May 29, 2026). Should the Court grant the government's motion to dismiss, the government's motion to admit IOS Scheetz's testimony should be denied as moot. Second, the Court ordered the government to respond to Mr. Hinkle's Motion to Preclude the Mention

of Howard Hinkle Being a "Member" or "Associate" of the Rare Breed or Outlaw Motorcycle Club (Dkt. 987).   Considering Mr. Hinkle's plea of guilty to Counts 20 and 21 of the Second Superseding Indictment on June 5, 2026, this motion should also be denied as moot.   Third, Mr. Knight filed a motion to preclude opinion testimony from law enforcement witnesses. *See* Dkt. 984.   The government filed its response at Dkt. 985.   In light of Mr. Knight's plea of guilty on June 5, 2026, as well as for the reasons stated in the government's response, the motion should be denied as moot.   Fourth, the Court ordered the government to file its amended proposed jury instructions by June 5, 2026.   Dkt. 995.   Because the additional jury instruction the government proposed related exclusively to Mr. Knight, who pleaded guilty on June 5, 2026, the government is withdrawing its motion.   *See* Dkt. 993.

Additionally, the government proposes that the Court deny as moot the following government motions in *limine*:

1.   Motion to Admit Evidence Showing the Defendants' Affiliation with the Outlaws and Rare Breed, and the Outlaws' Association with the Rare Breed. Dkt. 894 at 14–19.

2.   Motion to Admit Evidence Showing the Outlaws' Prior Acts with Mr. Gerace. *Id.* at 19–23.

3.   Motion to Admit Evidence Showing the Outlaws' Institutional Commitment to Harming Witnesses and Monitoring Law Enforcement Investigations into the Club.   *Id.* at 23–30.

4.   Motion to Admit Evidence Showing the Rare Breed's Efforts to Monitor Law Enforcement Investigations and its Institutional Commitment to Harming Witnesses.   *Id.* at 30–34.

5.  Motion to Admit Evidence of Prior Act Committed by the Rare Breed at the Behest of the Outlaws.  *Id.* at 34–37.

6.  Motion to Admit Evidence of Howard Hinkle's Marijuana and Firearm Possession.  *Id.* at 53.

7.  Motion to Admit Evidence of Mr. Gerace's Admissions by Silence.  *Id.* at 64.

8.  Motion to Admit Evidence of Crystal Quinn's Fear of the Outlaws and Mr. Gerace.  *Id.* at 67.

9.  Motion to Admit RBMC and Outlaws Phone Lists, Meetings Minutes, and Ledgers.  *Id.* at 90.

10. Motion to Admit a Limited Number of Mr. Hinkle's Proffer-Protected Statements at Trial.  *Id.* at 92–93.

11. Motion to Limit Evidence and Argument Concerning Crystal Quinn's History of Mental Illness and Suicidal Ideation.  *Id.* at 95.

DATED:   Buffalo, New York, June 5, 2026.

<div style="margin-left: 40%;">

MICHAEL DIGIACOMO
United States Attorney

BY:   s/CASEY L. CHALBECK
s/NICHOLAS T. COOPER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716.843.5881
Casey.Chalbeck@usdoj.gov

</div>