**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

*Federal Center*
*138 Delaware Avenue*
*Buffalo, New York 14202*

*716.843.5700*
*Fax: 716.551.3052*
*Writer's Telephone: 716.843.5881*
*Writer's fax: 716.551.3052*
*Casey.Chalbeck@usdoj.gov*

August 15, 2026

**VIA PACER**
Hon. Elizabeth A. Wolford
Chief United States District Judge
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

Re: ***United States of America v. Gogolack*, Case Number: 23-CR-99-EAW**

Dear Chief Judge Wolford:

On August 12, 2026, Mr. Gogolack filed his Third Supplemental Pre-Trial Submission. Dkt. 1088. In it, Mr. Gogolack provided notice of the following: (1) his intent to introduce reverse Rule 404(b) evidence as to witness Charles Buchholz; (2) his intent to impeach Mr. Buchholz with several misdemeanor and outdated felony convictions; and (3) his intent to impeach witness Jeffrey Crowner with various arrests. The Court should generally preclude Mr. Gogolack from introducing such material at trial. Mr. Gogolack offers Mr. Buchholz's alleged prior bad acts not because they are probative of a fact in issue, but to suggest that Mr. Buchholz has a propensity for criminal behavior, and thus must have been involved in Crystal Quinn's fatal overdose. Likewise, with one exception, none of Mr. Buchholz's criminal convictions are eligible to serve as impeachment under Rule 609. The same is true for Mr. Crowner's arrests, which neither resulted in convictions nor bear any relevance to this case. Accordingly, the Court should issue a pre-trial ruling precluding Mr. Gogolack from introducing reverse Rule 404(b) and improper impeachment material.

1. **The Court should preclude Mr. Gogolack from introducing reverse Rule 404(b) material as to Mr. Buchholz.**

For the first time, and without offering any further detail, Mr. Gogolack seeks to introduce the following "bad acts" concerning Mr. Buchholz:

1. A March 30, 2019, overdose of Chris White for which Mr. Buchholz was allegedly "present."

2. A February 9, 2024, overdose of David Wallace for which Mr. Buchholz was allegedly "present."

3. An August 28, 2025, overdose of Mr. Buchholz allegedly involving a white powdery substance.

4. A September 4, 2023, arrest for misdemeanor Criminal Possession of Stolen Property in the 5th degree and Obstructing Governmental Administration in violation of N.Y. Penal Law §§ 165.40 and 195.05, respectively, for which there is no reported disposition.

5. A September 4, 2023, arrest for misdemeanor Criminal Facilitation in violation of N.Y. Penal Law § 220.03, for which there is no reported disposition.

6. A February 26, 2026, arrest for misdemeanor Criminal Possession of a Controlled Substance in the 7th Degree in violation of N.Y. Penal Law § 220.03, for which there is no disposition reported.

*See id.* at 3.

The Court should preclude Mr. Gogolack from introducing other bad acts, or reverse Rule 404(b), evidence as to Mr. Buchholz for two reasons. First, regarding the overdoses, Mr. Gogolack fails to explain why Mr. Buchholz's mere presence at the scene of an overdose is probative of a non-propensity fact in issue, such as identity. Mr. Gogolack's notice does not indicate that those overdoses bear a unique signature or thumbprint that might help identify the individual who distributed a fatal dose of fentanyl to Ms. Quinn. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts" "may ... be admissible for other purposes, such as proof of . . . identity. . . ."); *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) ("Rule 404(b) permits evidence of similar acts to prove a 'signature crime,' *i.e.*, a modus operandi where the crimes are 'so nearly identical in method as to ear-mark them as the handiwork of the accused.'" (quoting 2 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 404 [16], at 404–127 (1985))).

Indeed, Mr. Gogolack's threadbare notice raises more questions than it answers. It does not elucidate whether Mr. Buchholz was present before the overdoses, while they were occurring, or arrived on scene after they occurred but while emergency personnel (if any) were on site. Nor does it establish that heroin and/or fentanyl actually caused the overdoses Mr. Gogolack seeks to explore. Rather, the notice states that heroin and fentanyl, as well as a white powdery substance, were *suspected* of causing the overdoses. Mere suspicion, however, is not the stuff of fact from which juries are to draw reasonable inferences about an identity, opportunity, or plan relevant to the trial. *See* Fed. R. Evid. 404(b)(2). Were it otherwise, the foundation from which such inferences could be drawn would be speculative—and thus more unfairly prejudicial than probative. *See* Fed. R. Evid. 403.

Yet, even if fentanyl or heroin were involved, the notice does not explain how they were ingested—*i.e.*, whether Chris White, David Wallace, and Mr. Buchholz injected a

substance, snorted a substance, consumed a laced pill, or overdosed by some other means. Without this information, these alleged overdoses bear precisely zero resemblance to Ms. Quinn's, which Mr. Gogolack, himself, attributed to her consumption of Xanax pills. Furthermore, the notice does not explain whether emergency medical personnel were called, whether there was a police investigation concerning the overdoses, or whether other people were present for the overdoses. In fact, after checking its discovery records, it does not appear that the government has any police report regarding Chris White and David Wallace's overdose, and has not been provided any discovery of the same from the defense, such that it can, on its own accord, fill in the gaps created by Mr. Gogolack's barebones notice.

While a defendant's use of "reverse 404(b)" evidence is not held to the same strict standards as a prosecutor's use of Rule 404(b) evidence against a defendant, *see United States v. Aboumoussallem*, 726 F.2d 906, 911 (2d Cir. 1984), the defendant must still explain how the material is "relevant to the existence or non-existence of some fact pertinent to the defense," *id.* at 912. The absence of any such explanation here is telling: the only reason why Mr. Gogolack seeks to ask Mr. Buchholz about the overdoses is to suggest that Mr. Buchholz's mere (alleged) presence at the overdoses equates to distribution-related involvement in them—and, in turn, that if Mr. Buchholz distributed drugs resulting in serious bodily injury before (or after), he must have been involved in distributing the drugs that caused Crystal Quinn to overdose and die. This is the very kind of illogical, propensity-driven analysis that Rule 404(b)(1) guards against. *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Mr. Buchholz's arrest for misdemeanor Criminal Possession of Stolen Property in the 5th degree and Obstructing Governmental Administration similarly have no discernible bearing on the identity of the individual who distributed a fatal dose of fentanyl to Ms. Quinn.

Second, none of the reverse 404(b) material is germane to Mr. Buchholz's *opportunity* to distribute fentanyl to Ms. Quinn. Chris White's overdose predated Ms. Quinn's by over four years. David Wallace's and Mr. Buchholz's overdoses did not occur until well after Ms. Quinn had died, in 2024 and 2025, respectively. And, though wholly irrelevant to the issue of opportunity, Mr. Buchholz was not arrested on misdemeanor charges until after Ms. Quinn's passing. "[W]ithout any information linking the similarity of [Mr. Buchholz's] actions to" Ms. Quinn's overdose, or identifying how the overdoses gave Mr. Buchholz an opportunity to kill Ms. Quinn, Mr. Gogolack's "theory of relevance" could *only* be "one of propensity"— that is, that Mr. Buchholz's presence at other overdoses at other points in time and arrest record must mean that he was involved in Ms. Quinn's overdose. *United States v. Alorwornu*, No. 3:23-CR-13 (SVN), 2025 WL 2053364, at *9 (D. Conn. July 22, 2025); *id.* ("The conduct underlying [the third party's] convictions took place well before the conduct alleged in the indictment and Defendant offered no reason to believe the conduct underlying those convictions had anything to do with the conduct alleged in the indictment.").

Accordingly, the Court should preclude Mr. Gogolack from introducing other "bad acts" evidence concerning Mr. Buchholz.

**2. The Court should preclude Mr. Gogolack from impeaching Mr. Buchholz with outdated or non-felony convictions that do not contain elements of dishonesty.**

The Court should also preclude Mr. Gogolack from impeaching Mr. Buchholz with outdated or non-felony criminal convictions that are not crimes of dishonesty. Specifically, Mr. Gogolack seeks to impeach Mr. Buchholz with the following convictions:

1. A June 5, 2012, felony conviction for Criminal Possession of a Controlled Substance in the 3rd degree in violation of N.Y. Penal Law § 220.16(1);

2. A January 5, 2017, felony conviction for Criminal Possession of a Controlled Substance in the 5th degree in violation of N.Y. Penal Law § 220.06(1);

3. A January 22, 2018, misdemeanor conviction for Operating a Motor Vehicle while under the Influence of Alcohol or Drugs in violation of N.Y. Veh. & Traffic Law § 1192(4);

4. A December 5, 2023, misdemeanor conviction for Petit Larceny in violation of N.Y. Penal Law § 155.25;

5. An October 21, 2025, misdemeanor conviction for Petit Larceny in violation of N.Y. Penal Law § 155.25; and

6. A November 18, 2025, misdemeanor conviction for Criminal Possession of a Controlled Substance in the 7th Degree in violation of N.Y. Penal Law § 220.03.

Dkt. 1088 at 3.

Only Mr. Buchholz's 2017 felony conviction is eligible to serve as impeachment material under Rule 609. The others are either time-barred under Rule 609(b) or ineligible under Rule 609(a). More specifically, Mr. Buchholz's 2012 felony conviction is more than ten years old under Rule 609(b). Mr. Buchholz was sentenced in 2012 to five years' probation but was discharged on May 13, 2013, following a revocation on a technical violation and a sentence of time served and a six-month suspension of his license. Thus, Mr. Buchholz's 2012 conviction exceeds Rule 609(b)'s ten-year time bar, and requires Mr. Gogolack to explain, with "specific facts and circumstances," why the conviction's probative value "substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). Mr. Gogolack's failure to offer facts describing the circumstances of the conviction, let alone done so in a way that gives the government "reasonable written notice," forecloses him from using the conviction as grist for impeachment. *See* Fed. R. Evid. 609(b)(2).

Moreover, Mr. Buchholz's four misdemeanor convictions are plainly ineligible to serve as grounds for impeachment under Rule 609(a). Rule 609(a)(1) provides that a witness

may be impeached by the fact of his criminal conviction if the conviction was "for a crime that . . . was punishable by . . . imprisonment for more than one year." Fed. R. Evid. 609(a)(1). Mr. Buchholz's 2018 conviction for driving under the influence in violation of N.Y. Veh. & Traffic Law § 1192(4) is an unclassified misdemeanor that cannot exceed a 364-day term of incarceration. *See* N.Y. Penal Law § 70.15(3). Mr. Buchholz's two misdemeanor petit larceny convictions, as well as his November 2025 conviction for possession of a controlled substance, are each Class A misdemeanors carrying a maximum sentence of 364 days. Thus, because none of the convictions relate to crimes punishable "by imprisonment for more than one year," Mr. Gogolack cannot use them to impeach Mr. Buchholz. Fed. R. Evid. 609(a)(1).

Lastly, because none of the offenses involve elements of dishonesty, they cannot be used as impeachment fodder under Rule 609(a)(2). Accordingly, the Court should preclude Mr. Gogolack from using any conviction other than Mr. Buchholz's 2017 felony conviction for Criminal Possession of a Controlled Substance in the 5th degree to impeach Mr. Buchholz.

**3. The Court should preclude Mr. Gogolack from impeaching Mr. Crowner with his non-felony arrests.**

Finally, the Court should preclude Mr. Gogolack from impeaching Mr. Crowner with two non-felony arrests. Specifically, Mr. Gogolack seeks to impeach Mr. Crowner with the following charges:

(1) A September 13, 2024, charge for misdemeanor Criminal Possession of a Controlled Substance in violation of N.Y. Penal Law § 220.03 and a violation of N.Y. Veh. & Traff. Law § 1192, for which there are no dispositions listed; and

(2) A September 2, 2024, misdemeanor violation of N.Y. Veh. & Traff. Law § 1192, for which there is no disposition listed.

Dkt. 1088 at 3–4.

Neither of these offenses can be used to impeach Mr. Crowner under Rule 609. First, Mr. Crowner was not convicted of either offense. *See* Fed. R. Evid. 609 Notes of Advisory Committee on Proposed Rules (noting that "[a]s a means of impeachment, evidence of conviction of crime is significant *only* because it stands as *proof* of the commission of the underlying criminal act" (emphases added)). Second, even if Mr. Crowner had been convicted of the charges, neither charge carries a term of imprisonment exceeding one year or contains an element of dishonesty. Thus, both charges fall squarely outside the parameters of permissible impeachment established by Rule 609.

For the reasons stated above, the government respectfully asks the Court to preclude Mr. Gogolack from (1) introducing reverse Rule 404(b) evidence as to Mr. Buchholz; (2) impeaching Mr. Buchholz with any conviction other than his 2017 felony conviction; and (3) impeaching Mr. Crowner with his two misdemeanor arrests.

Respectfully,

Casey L. Chalbeck
Assistant United States Attorney

CC (via PACER):
Counsel of record.