IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v. 23-CR-99-EAW

PETER GERACE,

Defendant.

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS COUNT 1 OF THE SECOND SUPERSEDING INDICTMENT**

**THE UNITED STATES OF AMERICA**, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorneys, respectfully files this motion in response to the defendant's motion to dismiss Count 1 of the Second Superseding Indictment (Dkt. 1080) based on an alleged constructive amendment. Because the government's proposed trial theory does not alter the charged agreement, broaden the bases for conviction, or otherwise change the offense returned by the grand jury, the defendant's motion should be denied.

# TABLE OF CONTENTS


PROCEDURAL HISTORY ..... 3

THE CONSTRUCTIVE AMENDMENT ANALYSIS BEGINS WITH THE CHARGED AGREEMENT. ..... 4

A. The Court's question presupposes that the government has changed the charged conspiracy. ..... 4

B. Count 1 charges one agreement and two unchanged statutory objects ..... 4

C. The government is proving the same conspiracy, just with streamlined proof. ..... 6

NARROWING PROOF DOES NOT ALTER THE CHARGED CONSPIRACY. ..... 10

A. The government may narrow its proof without altering the indictment. ..... 10

B. Constructive amendment is the exception and occurs only when the government alters the offense returned by the grand jury. ..... 10

C. The Second Circuit consistently distinguishes between changes in proof and changes in the charged offense. ..... 11

D. The defendant misconstrues *Miller* by treating every omitted allegation as a constitutional amendment. ..... 12

E. The defendant relies on cases involving proof of an uncharged offense. ..... 12

THE DEFENDANT'S MOTION REPEATEDLY CONFLATES PLEADING SUFFICIENCY, PROOF, AND CONSTRUCTIVE AMENDMENT ..... 14

THE DEFENDANT'S SPECIFIC ARGUMENTS DO NOT ESTABLISH A CONSTRUCTIVE AMENDMENT ..... 15

A. The retained allegations remain allegations in furtherance of the charged agreement. 16

B. The omission of certain overt acts does not alter the charged conspiracy. ..... 17

C. The Orchestrated Recusal allegations remain part of the same charged conspiracy. 18

D. Attorney 2's communication remains evidence of the same charged conspiracy. .... 19

E. The identity of the other conspirators is not what defines the charged conspiracy where the indictment charges conspiracy with "others known and unknown." ..... 20

CONCLUSION ..... 22

## I. PROCEDURAL HISTORY

Count 1 of the Second Superseding Indictment charges the defendant with Conspiracy to Obstruct Justice, in violation of 18 U.S.C. Section 371. The conspiracy names two objects:

a. To defraud the United States regarding its governmental functions, that is, the transaction of official business of the District Court and Grand Jury; and

b. To violate 18 U.S.C. Section 1503 (Obstruction of Justice) by corruptly endeavoring to influence, obstruct, and impede the due administration of justice, that is, the proceedings of the grand jury and the trials of District Court.

*See* Dkt. 24 at 8-9 ¶ 2. The overt acts lay out the conspiracy to obstruct Case No. 1:19-CR-227 by first, tampering with and killing Crystal Quinn and, second, fraudulently inducing U.S. District Judge Sinatra's recusal from the case. *See id*. at 16 ¶¶ 24-25.

On June 5, 2026, the government moved to dismiss Counts 2 and 3 as to the defendant and subsequently advised the Court that it would be seeking to proceed on a narrower version of Count 1, in that it would seek to prove Count 1 through just two events alleged in the indictment: (1) the first being the defendant's efforts to tamper with Crystal Quinn by way of fraudulently inducing another attorney to try to represent her (hereinafter referenced as the "Attorney 2 Obstruction"), and (2) the second being orchestrating Judge Sinatra's recusal (hereinafter referenced as the "Orchestrated Recusal"). *See* Dkt. 1000.

On June 11, 2026, the Court expressed its belief that the government's decision to put forth a narrower body of proof was a constructive amendment of the Second Superseding Indictment.[1] The Court then invited the defendant to file the instant motion to dismiss.

---

[1] The Court further opined that the government was collaterally estopped from arguing that Gerace entered into a criminal conspiracy with his attorneys in 1:19-CR-227 when he orchestrated Judge Sinatra's recusal because the government did not appeal Judge Vilardo's Decision and Order from that case concluding that there was no reasonable possibility that attorney Eric Soehlein committed a crime due to the "safe harbor" provision founder

## II. THE CONSTRUCTIVE AMENDMENT ANALYSIS BEGINS WITH THE CHARGED AGREEMENT.

### A. The Court's question presupposes that the government has changed the charged conspiracy.

At oral argument, the Court expressed concern that the government's election not to proceed on one alleged course of obstructive conduct may have transformed Count 1 into a "fundamentally different conspiracy" than the one returned by the grand jury. *See* Dkt. 1045, Transcript of Status Conference dated June 11, 2026 ("June 11 Tr.") at 35:2-12. But that concerns rests on a mistaken premise. The government has not altered the conspiracy charged by the grand jury. It has narrowed the evidence through which it intends to prove it.

### B. Count 1 charges one agreement and two unchanged statutory objects.

The defendant's motion assumes that Count 1 charged two conspiracies: one centered on the alleged plan to eliminate the witness, and another centered on the alleged effort to secure the district judge's recusal. The indictment says otherwise.

Count 1 first alleges that the defendant "did knowing and intentionally conspire and agree together with others, known and unknown to the Grand Jury" to (a) defraud the United States by impairing the lawful functions of the court and grand and (b) corruptly endeavor to influence, obstruct, and impede the due administration of justice in proceedings of the grand jury and trials of the United States District Court. Dkt. 24 at 8-9 ¶ 2.

Only *after* charging that agreement and its unlawful objects does the indictment set forth the "Manner and Means" by which the conspirators allegedly pursued those objectives. *See id.* at 9-13. That structure matters. The conspiracy *is* the unlawful agreement. The "Manner and

---

in 18 U.S.C. § 1515(c). The Court similarly invited Gerace to brief that the government was collaterally estopped from making certain arguments.

Means" allegations describe how the conspirators allegedly implemented that agreement. Nothing in the "Manner and Means" section redefines the agreement itself.

The allegations the government no longer intends to prove appear in that latter section. By the grand jury's own organization of Count 1, those allegations describe two alleged means of carrying out the charged conspiracy—not the conspiracy itself. And that distinction is dispositive under *United States v. Miller*, 471 U.S. 130 (1985). *Miller* recognized that the government may narrow its proof by abandoning allegations that are "unnecessary to and independent of the allegations of the offense proved[.]" *Id*. at 130. What it may not do is alter the essential elements of the offense returned by the grand jury. *See United States v. Lucas*, 395 F. Supp. 3d 241, 250 (W.D.N.Y. 2019) (Wolford, J.) ("'An indictment is not constructively amended . . . where a portion of the indictment that is unnecessary for a conviction of the crime charged is removed or altered.'"), *aff'd*, 2021 WL 3700944 (2d Cir. 2021).

Altering the proof-presentation concerning the conspiracy's "manner and means" does not modify the "essential elements of the offense charged," as is required to prevail on a constructive amendment claim, *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (emphasis original), because the "manner and means of effecting" a conspiracy's "object . . . is not essential to an indictment." *Glasser v. United States*, 315 U.S. 60, 66 (1942) *superseded by statute on other grounds*, Fed. R. Evid. 104(a), *as recognized in*, *Bourjaily v. United States*, 483 U.S. 171, 181 (1987).

For that reason, as other courts have recognized, variations to an offense's manner and means does not amount to a constructive amendment. *See United States v. Fernandez*, 559 F.3d 303, 328 (5th Cir. 2009) (rejecting the defendant's claim that the government's modification in proof "about the 'manner and means' by which [a] murder was shown to have occurred"

resulted in a constructive amendment because "the manner and means" is "not essential" to an indictment"); *United States v. King*, 239 F. App'x 852, 856 (4th Cir. 2007) (unpublished) (rejecting the defendant's claim that redactions to the "'Manner and Means of the Conspiracy' section of the indictment" resulted in a constructive amendment because they "did not affect the elements of [the] money laundering" offense with which the defendant was charged); *United States v. Lin*, No. CR-23-192-G, 2024 WL 5048806, at *3 (W.D. Okla. Dec. 9, 2024) (agreeing with the government that modifications to the "'Manner and Means' section of Count 1 of the Superseding Indictment . . . are not essential to the charges in dispute" because the "'Manner and Means' allegations . . . including multiple theories for how the § 846 drug conspiracy charged in Count 1 was committed, *and do not themselves define the charge to be tried by the jury*" (emphasis added)).

### C. The government is proving the same charged offense, just with streamlined proof.

The government's proposed trial theory does not alter the conspiracy charged by the grand jury. Count 1 charges that the defendant knowingly and intentionally conspired and agreed "together with others, known and unknown to the Grand Jury" to defraud the United States and corruptly obstruct the due administration of justice. *See* Dkt 24 at 8-9 ¶ 2.

At trial, the government intends to prove that the defendant entered that unlawful agreement with others, including Gerace Attorney 1 and Rodderick Arington, and that the defendant knowingly and willfully became a member of the conspiracy charged. The government does not contend that the indictment specially identified Gerace Attorney 1 and Rodderick Arington as the defendant's co-conspirators. It did not need to: the indictment charged the defendant with conspiring with "other known and unknown." *See United States v.*

*Pena*, 846 F. App'x 49, 53 (2d Cir. 2021) (unpublished) (recognizing that "the names of co-conspirators do not even form 'an essential element' of a conspiracy offense"); *United States v. Lucas*, No. 19-3937-CR, 2021 WL 3700944, at *3 (2d Cir. Aug. 20, 2021) (affirming this Court's determination that the indictment was not constructively amended when a co-defendant's name has been struck from the indictment because "[t]he identity of Defendant's alleged co-conspirator is not an element of the conspiracy with which Defendant was charged. The removal of the alleged co-conspirator's name did not prejudice Defendant's interests."). The government's proof will identify Gerace Attorney 1 and Rodderick Arington to be among those others.

The government will further prove that at least one member of the charged conspiracy knowingly committed an overt act alleged in the indictment in furtherance of the charged agreement. That proof will include, among other things, the placement of Judge Sinatra's relatives on the defense witness list, an act the grand jury expressly alleged as an overt act. *See* Dkt. 24 at 16 ¶ 24 (overt acts section); *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018) (recognizing that a constructive amendment occurs where the proof provided "an additional basis, one not considered by the grand jury, upon which the petit jury may have convicted the defendant").

That proof will also include, among other things, Gerace Attorney 1's inducement of Attorney 2 to reach out to Crystal Quinn—notwithstanding that she was already represented—while making veiled references to her cooperation in Case No. 19-cr-227. *See* Dkt. 24 at 16 ¶ 17 (overt acts section). The government will prove that the conspiracy committed that act to further the same unlawful objective alleged in Count 1: to corruptly obstruct and impede the

due administration of justice in the identified federal proceedings. That is the conspiracy the grand jury charged, and it is the conspiracy the government intends to prove.

The government has not substituted a different agreement, a different statutory object, or a different basis for criminal liability. Nor does it seek to convict the defendant based on an agreement that appears nowhere in the indictment. The government has simply narrowed the evidence through which it intends to prove the agreement that Count 1 already charges—and "[w]here charges are constructively narrowed . . . no constructive amendment occurs." *United States v. Delgardo*, 124 F. App'x 694, 696 (2d Cir. 2005) (unpublished) (quoting *United States v. Wallace*, 59 F.3d 333, 337 (2d Cir. 1995)).

That distinction answers the constructive amendment question. The relevant inquiry is whether the government has altered the essential elements of the offense returned by the grand jury—not whether the factual allegations the government intends to prove could support a hypothetical new indictment if considered in isolation. The defense repeatedly substitutes the latter inquiry for the former. It asks whether the remaining allegations "stand alone," whether Attorney 2 Obstruction and Orchestrated Recusal episodes independently constitute a conspiracy, and where the indictment alleges a "standalone agreement" connecting those episodes. But the government does not propose to try a new, standalone conspiracy composed of two isolated episodes. It proposes to prove the conspiracy already alleged in Count 1—the agreement to (a) defraud the United States of and concerning its governmental functions and rights and (b) to violate 18 USC 1503 (obstruction of justice). *See* Dkt. 24 at 8-9 ¶ 2.

The very structure of the indictment reinforces that point. Count 1 first alleges that the unlawful agreement identifies its objects. *See id*. at 8-9 ¶ 2a, 2b. Only after charging that agreement does the indictment separately describe the "Manner and Means" through which

members allegedly pursued those objects and enumerate the overt acts committed in further of the conspiracy. *See id*. at 9-13. Those factual allegations describe how the charged conspiracy operated; they do not separately define the agreement itself. The government's decision not to prove every alleged manner and means, every overt act, every factual episode, or the participation of every person referenced in the indictment therefore does not necessarily alter the conspiracy the grand jury charged.

That is the distinction recognized in *United States v. Miller*, 471 U.S. 130 (1985). The government may narrow its proof by abandoning allegations unnecessary to the offense ultimately proved; what it may not do is alter the essential elements of the offense returned by the grand jury. *See id*. Here, the government remains on the permissible side of that line. The agreement the petit jury will be asked to fine is the agreement alleged in Count 1: the agreement to (a) defraud the United States of and concerning its governmental functions and rights and (b) to violate 18 U.S.C. § 1503 (obstruction of justice). *See* Dkt. 24 at 8-9 ¶ 2. The objects and the elements are the same today as they were on January 5, 2024, when the Grand Jury returned the Second Superseding Indictment.

The government has removed factual avenues through which it might have proved the conspiracy—not supplied new ones. The government does not seek to prove a different agreement, proceed under a different statutory theory, or broaden the bases upon which the jury may convict. It seeks only to prove the same conspiracy charged by the grand jury through a narrower evidentiary presentation. Because the agreement charged remains unchanged, Count 1 has not been constructively amended.

## III. NARROWING PROOF DOES NOT ALTER THE CHARGED CONSPIRACY.

### A. The government may narrow its proof without altering the indictment.

The Supreme Court has long distinguished between narrowing the proof necessary to establish the charged offense and altering the offense itself. The former is constitutionally permissible; the latter is not. *See Miller*, 471 U.S. at 145 (holding that the government did not constructively amend the indictment by abandoning one of two alleged factual theories of mail fraud because the narrower theory was fully contained in the indictment, "added nothing new to the grand jury's indictment, and constituted no broadening"). *Miller* stands for as much. Rejecting the proposition that every factual allegation contained in an indictment becomes constitutionally indispensable, the Court held that allegations "independent of and unnecessary to the offense on which a conviction ultimately rests" may be disregarded without violating the Fifth Amendment. *Miller*, 471 U.S. at 136-45 (holding that the government may abandon unnecessary allegations where "the offense that was proved was clearly set out tin the indictment"). The Constitution requires fidelity to the offense charged. Not proof of every factual allegation included in the indictment.

### B. Constructive amendment is the exception and occurs only when the government alters the offense returned by the grand jury.

*Miller's* permission to narrow the government's proof is bound by the rule announced in *Stirone v. United States*, 361 U.S. 212 (1960). While the government may omit unnecessary factual allegations, it may not broaden an indictment by asking the petit jury to convict on a different offense than the grand jury charged. *Id.* at 217-19 (reversing where the jury was permitted to convict on an interstate-commerce theory *never presented* to the grand jury).

The Second Circuit has articulated the same distinction. An essential element is "so altered" when proof at trial makes it uncertain whether convicted of conduct that was the subject of grand jury's indictment. A constructive amendment occurs only where "the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998)); *accord Dove*, 884 F.3d at 146 (explaining that constructive amendment occurs when an essential element is altered or an additional basis for conviction is presented).

**C. The Second Circuit consistently distinguishes between changes in proof and changes in the charged offense.**

The Second Circuit has rejected attempts to equate differences in proof with constructive amendment. Being tried for essentially—and elementally—different conduct is a constructive amendment; but proving the same offense with different factual means is not a constructive amendment. In *United States v. D'Amelio*, the indictment alleged that the defendant used the internet to entice a minor, while the government's proof included both internet and telephone communications. 683 F.3d 412, 417-22 (2d Cir. 2012). The Second Circuit rejected the constructive amendment claim because the government proved the same statutory offense and merely established the charged element through different factual means. *Id*. (holding that the government's proof remained within the indictment's "core of criminality").

"If the indictment notifies the defendant of the core of criminality, and the government's proof at trial does not modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an

offense other than the one charged by the grand jury," then indictment has not been constructively amended. *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007) (cleaned up) (internal quotations and citations omitted) (rejecting constructive amendment claim where the proof remained within the charged fraudulent scheme).

**D. The defendant misconstrues *Miller* by treating every omitted allegation as a constitutional amendment.**

The defendant's argument rests on the premise that once factual allegations appear in an indictment, the government must either prove all of them or return to the grand jury. *Miller* expressly rejects that proposition. Factual allegations often *describe the manner* in which the government expects to prove the offense. 471 U.S. at 133, 140 (indictment was not constructively amended when the government removed from the indictment the allegation of advance knowledge of the burglary charged). But, once again, the manner in which a conspiracy charge is proved is not "essential" to the indictment. *Glasser*, 315 U.S. at 66. They do not become elements merely because they appear in the indictment.

**E. The defendant relies on cases involving proof of an uncharged offense.**

The authorities the defendant cites involved a basis for conviction that the grand jury did not charge. That is not what the government proposes here. As the Second Circuit explained in *United Staes v. D'Amelio*, the relevant distinction is whether the jury may convict "based on a complex of facts *distinctly different* from that which the grand jury set forth in the indictment," or whether the government's proof remains consistent with the charged conduct. 683 F.3d 412 (2d Cir. 20212) (emphasis added and citation omitted). *D'Amelio* therefore rejected a constructive amendment claim where the indictment and the government's proof involved the same course of conduct and the defendant remained charged with the same crime.

*Strione* and *Wozniak* fell on the other side of that line. In *Stirone*, the indictment charged interference with interstate commerce based on the importation of sand; but the jury was instructed they could convict based on inference with the future exportation of steel—a different theory the grand jury never charged. 361 U.S. at 217-19. This was a constructive amendment because the objects of the conspiracy differed, and the petit jury was authorized to convict on a theory of interstate commerce interference (sand versus steel) that the grand jury never charged. *Id*. Likewise, in *United States v. Wozniak*, the indictment charged a conspiracy involving cocaine and methamphetamine, but the government's proof centered on an entirely different object: to distribute marijuana. 126 F.3d 105, 109-11 (2d Cir. 1997) (finding constructive amendment where the government's proof altered the charged conspiracy itself).

By virtue of changing the offenses' objects, those cases involved the government asking the petit jury to convict of a *different offense* than the one approved by the grand jury. In each case, the government gave the jury a basis for conviction that was not contained in the indictment.

This case does not. The central objects of the conspiracy Mr. Gerace is charged with remain untouched: Mr. Gerace conspired with others to defraud the United States and obstruct justice. Dkt. 24 at 8–9 ¶¶ 2(a)–(b). Instead, the government is merely narrowing its presentation of proof as to how Mr. Gerace accomplished those essential objects. The government will not ask the jury to convict the defendant based on a new conspiracy, a new statutory object, or conduct outside Count 1. It will prove less of the conspiracy alleged in Count 1—not a different one.

## IV. THE DEFENDANT'S MOTION REPEATEDLY CONFLATES PLEADING SUFFICIENCY, PROOF, AND CONSTRUCTIVE AMENDMENT.

The defendant's argument conflates the charged agreement with the evidence alleged to demonstrate how that agreement operated. Its repeated assertion that the Attorney 2 Obstruction and Orchestrated Recusal once other allegations are removed assumes that the factual allegations themselves must create the agreement. But the government's theory is precisely that both episodes further the same unlawful agreement charged in Count 1.

Whether the government can prove that proposition at trial is a question of evidentiary sufficiency. Not a question of a constructive amendment. It is not a constructive amendment merely because the government has elected not to prove every other factual allegation through which the indictment alleged that the conspiracy operated. *See United States v. Khan*, 53 F.3d 507, 517 (2d Cir. 1995) ("Where the evidence or jury instructions narrow an offense that is more broadly contained in the indictment, however, the indictment is not constructively amended in violation of the Fifth Amendment.").

Nor does the result change because the defendant aggregates the allegations the government no longer intends to prove. *See id.* The defendant argues that, even if each allegation could individually be omitted, their cumulative removal changes the "relationship among the acts" and therefore the core of criminality. But the constitutional inquiry does not turn on the number of allegations the government elects to prove. It turns on whether essential elements have been altered. And here, they do not change the agreement the jury must find, the defendant's knowing participation in it, the statutory objects of the conspiracy, or the basis upon which the jury may convict. Aggregating the omission of nonessential factual allegations does not transform those allegations into elements of the offense.

The comparison is therefore straightforward. The grand jury charges the defendant with knowingly joining an agreement with others to defraud the United States and obstruct the due administration of justice. The government will ask the petit jury to find the defendant guilty of knowingly joining that same agreement with others—including Gerace Attorney 1 and Rodderick Arington—that a member of the conspiracy committed at least one overt act alleged in the indictment, and that the act furthered the same obstructive objective charged by the grand jury. The government has narrowed how it will prove Count 1. It has not changed what Count 1 requires the jury to find.

## V. THE DEFENDANT'S SPECIFIC ARGUMENTS DO NOT ESTABLISH A CONSTRUCTIVE AMENDMENT.

None of the defendant's specific challenges changes the analysis. This section addresses the defendant's specific challenges to the government's narrowed trial theory. Specifically, the defendant argues that the government's decision not to proceed on certain allegations changes the conspiracy returned by the grand jury; that the remaining Orchestrated Recusal and Attorney 2 Contant cannot independently sustain the charged conspiracy and that the government's narrower theory depends on different participants and disconnected factual episodes.

But none of those arguments establishes a constructive amendment. As discussed below, each rests on the same mistaken premise: it treats particular factual allegations as though they define the charged agreement and then asks whether the allegations that remain could independently constitute a new conspiracy. The government, however, does not seek to prove a new conspiracy. It seeks to prove the agreement charged in Count 1 through a narrower set of facts—that is, an agreement to defraud the United States and obstruct justice.

Dkt. 24 at 8–9 ¶¶ 2(a)–(b). Considered individually or collectively, the government's evidentiary choices narrow its proof without altering the conspiracy's two objects, thus distinguishing this case from *Stirone* and *Wozniak*. The retained allegations remain in furtherance of the charged agreement; the government need not prove every overt act alleged in the indictment; and the Orchestrated Recusal and Attorney 2 Contact remain evidence through which the government may prove the same charged conspiracy. Nor must the government prove the participation of every person or every factual episode alleged in the indictment.

**A. The retained allegations remain allegations in furtherance of the charged agreement.**

The defendant repeatedly asks what connects the retained episodes once the government removes other allegations from its proof. But that question again treats the indictment's factual narrative as though it created the unlawful agreement. And it does not. Count 1 itself alleges the agreement: the knowingly and intentionally conspired and agreed with "others, known and unknown to the Grand Jury" to accomplish the unlawful objects specified in the count: to defraud the United States and to violate 18 USC 1503. *See* Dkt. 24 at 8-9 ¶ 2. The "Manner and Means" and "Overt Acts" allegations then describe the conduct undertaken in furtherance of that agreement. *See id*. at 9-13 (Manner and Means section), 13-31 (Overt Acts section).

The government will not ask the jury to infer a new agreement merely from two disconnected episodes. It will ask the jury to determine whether evidence proves that the defendant knowingly joined the agreement charged in Count 1 and whether the retained allegations furthered that agreement.

**B. The omission of certain overt acts does not alter the charged conspiracy.**

The defendant's reliance on the indictment's numerous overt acts suffers from the same problem. As the defendant recognizes, some of the allegations labeled "overt acts" describe procedural or historical events rather than acts independently attributable to a conspirator. But that observation does not establish that the grand jury charged a different agreement. At most, it confirms that the over-act section contains factual allegations describing the development and operation of the charged conspiracy. More fundamentally, the government need not prove every overt act alleged in an indictment. The government intends to prove at least one overt act charged by the grand jury and that a member of the conspiracy committed that act in furtherance of the charged agreement, as is essential to the charge. Its decision not to prove other alleged overt acts narrows the evidentiary basis for conviction; it does not substitute a different conspiracy.

The defendant places substantial weight on the government's decision not to prove certain overt acts. But the particular overt acts alleged do not define the charged agreement. Although the government must prove that a conspirator committed at least one overt act in furtherance of the conspiracy, the identity of the particular overt act itself is not an element of the offense. *United States v. Kozeny*, 667 .3d 122, 131-32 (2d Cir. 2011). "Indeed, the government may plead one set of overt acts in the indictment and prove a different set of overt acts at trial without prejudice to the defendant." *United States v. Kaplan,* 490 F.3d 110, 129 (2d Cir.2007). And because the particular overt act is a "brute fact" rather than an element of the offense, "[t]he jury need not reach unanimous agreement on which particular overt act was committed in furtherance of the conspiracy." *Kozeny*, 667 F.3d at 132. Those principles directly undermine the defendant's theory that the government changed the charged conspiracy by

declining to prove certain overt acts. Indeed, the Second Circuit has repeatedly "reaffirmed 'the well-established rule of this and other circuits that the overt act element of a conspiracy charge may be satisfied by an overt act that is *not specified* in the indictment, at least so long there is no prejudice to the defendant." *United States v. Salmonese*, 352 F.3d 608, 619 (2d Cir. 2003) (citing *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998)). If that is true, then it surely follows that proving a conspiracy through some—but not all—of the overt acts actually charged in the indictment does not transform the offense.

Nor does the result change because the defendant considered the omitted allegations cumulatively. The number of over acts the government elects not to prove does not transform those acts into elements or make them indispensable component of the charged agreement. What matters is whether the government has altered the agreement the grand jury charged or broadened the bases upon which the petit jury may convict. Here it has done neither.

The government will ask the jury to find the same agreement alleged in Count 1, the same unlawful objects, and the defendant's knowing participation in the agreement. It will also prove that a member of the conspiracy committed at least one overt act in furtherance of that agreement. The government's decision not to prove every other alleged overt act therefore changes only the scope of its proof—not the conspiracy the jury must find.

### C. The Orchestrated Recusal allegations remain part of the same charged conspiracy.

The defendant next isolates the Orchestrated Recusal episode and argues that it cannot independently establish an unlawful agreement involving the defendant. But again, the government does not contend that the filing of the witness list, standing alone, constitutes the entirety of the charged conspiracy. The filing matters because the grand jury alleged it as

conduct undertaken in furtherance of the broader agreement charged in Count 1: the agreement to defraud the United States and violate 18 U.S.C. § 1503. *See* Dkt. 24 at 8-9 ¶ 2.

Nor does the government's theory depend on proving the act of placing names on a witness list was itself independently criminal. An overt act need not itself constitute a crime. *See Braverman v. United States,* 317 U.S. 49, 53 (1942) ("The overt act, without proof of which a charge of conspiracy cannot be submitted to the jury, may be that of only a single one of the conspirators and need not be itself a crime"); *accord United States v. Manton*, 107 F.2d 834, 837 (2d Cir. 1939) (though judicial actions are not criminal, affirming a conviction of a Second Circuit judge who defrauded the United States by "corruptly act[ing] in each of [certain cases] without regard to the merits").

The relevant question is whether a conspirator knowingly committed the act to advance the conspiracy's unlawful objective, that is defrauding the United States and violating 18 U.S.C. § 1503. Thus, the defendant's reliance on the court's prior determination concerning bona fide legal representation under § 1515(c) does not resolve the constructive amendment issue. The government does not seek to convict the defendant merely because his counsel filed a witness list. It seeks to prove that the charged overt conduct formed part of the execution of the unlawful agreement the grand jury charged.

### D. Attorney 2's communication remains evidence of the same charged conspiracy.

The same analysis applies to Attorney 2's communication with Crystal Quinn. The defendant emphasizes that Attorney 2 was allegedly unwitting, that the contact occurred at a different time from other alleged conduct, and that the communication standing alone would not establish the broader conspiracy described elsewhere in the indictment. But none of those propositions establishes a constructive amendment.

The government need not prove that Attorney 2 was himself a conspirator for his communication to constitute evidence of the conspiracy. A conspirator may act through an innocent intermediary who lacks criminal intent. *See United States v. Concepcion*, 983 F.2d 369, 384 (2d Cir. 1992) (explaining that it is unnecessary that the intermediary who commits the act have a criminal intent); *United States v. Jordan,* 927 F.2d 53, 55 (2d Cir.) (defendant liable for causing other party to import heroin into United States).

Nor must that communication independently establish every element of the charged conspiracy. The question for the jury will remain whether the defendant knowingly joined the agreement charged in Count 1 and whether the evidence concerning the communication, considered with the government's other proof, demonstrates conduct undertaken to advance that same agreement and its obstructive objective.

**E. The identity of the other conspirators is not what defines the charged conspiracy where the indictment charges conspiracy with "others known and unknown."**

Finally, the defendant places substantial weight on the government's decision not to proceed against the other named defendants. But Count 1 did not limit the charged agreement to an agreement among the named defendants. It expressly alleges that the defendant conspired "together with others, known and unknown to the Grand Jury." *See* Dkt. 24 at 8. The government's proof that Gerace Attorney 1 and Roderrick Arington were among those "others" therefore does not substitute a new conspiracy for the one returned by the grand jury; it identifies through the trial evidence participants in the conspiracy that the grand jury actually charged.

*United States v. Millar*, 79 F.3d 338, 345 (2d Cir. 1996), squarely supports that conclusion. There, the indictment charged four named defendants and "other unknown" with

conspiracy. After the evidence failed to establish that any of the named defendants committed the charged overt act, the district court instructed the jury that the act could have been committed by either a named defendant or by "others unknown." *Id* at 345. The defendant argued that the instruction constructively amended the indictment by permitting the jury to convict based on a conspiracy involving persons other than the named defendants. The Second Circuit rejected that argument. Because the indictment expressly contemplated "other unknown" co-conspirators the court held that the conspiracy conviction could stand. *Id*. ("We have held that superficially inconsistent conspiracy determinations in the same proceedings are permissible where there is evidence that the defendant conspired with "others unknown," so long as the indictment actually mentions "others"); *see also United States v. Rodriguez,* 983 F.2d 455, 459 (2d Cir.1993).

The same reasoning applies here. Count 1 expressly charges the defendant with conspiring with "others, known and unknown to the Grand jury." *See* Dkt. 24 at 8. Thus, the identity of the particular individuals with whom the defendant entered the charged agreement does not define the conspiracy or constitute an essential element of the offense. *See also Dove*, 884 F.3d at 147-48 (holding the identities of the alleged coconspirators do not constitute an essential element of conspiracy). The government therefore need not prove that the defendant conspired with each—or any particular one—of the other defendants named in the indictment. Nor does proving the Gerace Attorney 1 and Rodderick Arington participated in the charged agreement create a new conspiracy simply because the government identifies them at trial as among the "others" contemplated by Count 1.

## VI. CONCLUSION

The petit jury will decide the same charge returned by the grand jury. The proposed proof does not alter the offense returned by the grand jury, broaden the bases for conviction, or permit conviction on a charge the grand jury never approved. It merely reflects the government's decision to present a narrower evidentiary case in support of the same conspiracy charged in Count 1.

The issue is whether the government's proposed proof would permit conviction for an offense materially different from the one returned by the grand jury. It would not. The defendant repeatedly argues that the government has abandoned one conspiracy and substituted another. It has not. The government intends to prove the same defendant, the same statutory objectives, and the same criminal offense. It simply intends to present a narrower body of evidence in support of that charge. That is precisely the type of narrowing long permitted under Supreme Court and Second Circuit precedent. Accordingly, the defendant's motion to dismiss based on an alleged constructive amendment should be denied.

DATED: Buffalo, New York, August 21, 2026.

MICHAEL DIGIACOMO
United States Attorney

BY: s/ KATERINA F. POWERS
s/ CASEY L. CHALBECK
s/ NICHOLAS T. COOPER
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue

Buffalo, New York 14202
(716) 843-5702
Katerina.Powers@usdoj.gov