IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v. 23-CR-99-EAW

SIMON GOGOLACK,

Defendant.

**RESPONSE TO GOVERNMENT'S MOTION TO MODIFY JURY INSTRUCTIONS AND VERDICT SHEET**

NICHOLAS T. TEXIDO, ESQ., affirms the following to be true under penalty of perjury:

1. I am an attorney duly licensed to practice in this Court, and am appointed co-counsel to the defendant, along with Peter M. Kooshoian, Esq.

2. This affirmation is submitted in opposition to the Government's request to modify the jury instructions that both parties have previously agreed upon.

3. The defendant was indicted by a grand jury for distributing fentanyl to Crystal Quinn, and it is alleged in count one of the amended indictment that fentanyl distributed by Simon Gogolack caused her death.

4. The proposed instructions, consistent with the indictment, would instruct the jury that the Government must prove that "but for the use of the fentanyl that the

defendant distributed, or possessed with the intent to distribute, Crystal Quinn would not have died."

5. Prior to the testimonies of Government expert Dr. Stacey Hail and defense expert Dr. Michael Rosenbaum, this Court circulated proposed jury instructions and a verdict sheet containing the aforementioned language.

6. The Government specifically voiced that it did not object to the proposed language in the jury instructions nor to the proposed verdict sheet. Thus, the defense tailored its examination of the Government and defense experts to the jury instruction, which all parties considered to be final at the time.

7. The Government's expert testified that Crystal Quinn could have died from the other drugs in her system even if she had never ingested fentanyl. Furthermore, inasmuch as postmortem cardiac blood cannot reliably state how much of a substance was in a person's system, the Government's expert could not testify that the fentanyl in Crystal Quinn's system was a sufficient independent cause of death separate from the other drugs in her system.[1]

8. The Government rested its case, and the defense made a motion for a judgment of acquittal, a portion of which was specifically aimed at but-for causation. In

[1] The defense is awaiting a transcript of the testimony of both experts; this affirmation is being made based upon my recollection of the testimony.

response, the Government did not argue that the jury instruction was flawed, instead it argued that its proof met the elements of the crime as would be charged to the jury.

9. The defense then put on its case, calling Dr. Rosenbaum. The defense conducted its examination of Dr. Rosenbaum in accordance with the jury instructions that both parties had agreed to.

10. Count One of the Trial Redacted Indictment alleges that Simon Gogolack did "knowingly, intentionally, and unlawfully possess with intent to distribute, and distribute, fentanyl, a Schedule II controlled substance; and the death of Crystal Quinn resulted from the use of such substances." The Government's theory as presented to the grand jury was that the defendant intentionally provided fentanyl to Crystal Quinn for the purpose of murdering her.

11. Throughout the trial, the Government's theory has been that Simon Gogolack distributed fentanyl to Ms. Quinn that caused her death. Now after the experts and all other witnesses have testified, the Government seeks to amend its theory to Simon Gogolack distributed an unknown drug in an unknown manner to Crystal Quinn which caused her death.

12. The timing of the Government's motion, after having agreed to a proposed jury charge, examined both expert witnesses, and responded to a Rule 29 motion, creates several problems that are prejudicial to the defense. Moreover, the

Government's proposed instruction would constitute a constructive amendment of the indictment under the circumstances presented.

*The Government's Motion Must Be Denied as Untimely*

13. On August 30, 2026, the Court circulated a proposed jury charge. On either Monday, August 31, 2026 or Tuesday, August 1, 2026, the Court held a charge conference. During the charge conference, the Government indicated that it did not have any objections to the Court's proposed charge. On September 2, 2026, the Court circulated an edited version of the proposed jury charge based upon an unrelated defense request at the charge conference, and correcting one typographical error.

14. On September 2, 2026, the Government called its final witness, Dr. Hail. Given the timing of the testimony and the Government's agreement to the proposed charge, the defense tailored its cross-examination of Dr. Hail to the instructions that would be given to the jury. The defense also tailored its Rule 29 motion and its examination of defense witness Dr. Rosenbaum to the agreed-upon jury instruction, which was the law of the case. The parties adjourned that day with the proof being closed and summations scheduled for Tuesday September 8, 2026.

15. Now, on September 4, 2026, the Government moves to amend the proposed jury instruction to allow a conviction of count one upon a finding that the defendant distributed *any* drug to Crystal Quinn that caused her death.

16. Under Fed R. Crim P. 30(a), the court may accept requests to charge "at the close of evidence or at any earlier time that the court reasonably sets." Here, the Court circulated a proposed charge and set a reasonable time for objections thereto. The Government voiced no objections and proceeded with the examination of the final two witnesses.

17. The Court may, in its discretion, set a time for a charge conference and for written requests to charge. United States v. Upton, 559 F.3d 3 [5th Cir. 2009]. In Upton, the defendant failed to request an instruction on the statute of limitations defense at the charge conference, which was held the day before the Government rested its case. Once the Government rested, the defendant requested the statute of limitations instruction. The Court ruled that he waived the request by failing to raise it at the time set by the Court for the charge conference, and the Fifth Circuit upheld the ruling. See also, Grajales-Romero v. American Airlines, Inc., 194 F.3d 288 [1st Cir. 1999].

18. Factors in opposition to this Court reaching the issue despite the untimeliness of the request include the degree of prejudice that will be caused to the defendant, the length of delay in making the request, and the potential disruption of the trial

schedule that it could cause. Stoutmire v. Strickland, 599 F.Supp 314 [N.D. Ill. 1984]; see also, United States v. Crowley, 318 F.3d 401 [2d. Cir. 2003].

18. If this request were to be granted at this late juncture, the defense would be prejudiced. Having examined the expert witnesses in accordance with the agreed-upon jury instruction, the defense would be forced to request to re-open the proof to allow for further (or different) cross-examination of Dr. Hail, and additional direct examination of Dr. Rosenbaum.

19. The witnesses travelled to testify, and the jurors will be coming to court expecting summations, not a delay followed by further proof from repeat witnesses after a lengthy trial. The unusual procedure of recalling the witnesses would cause juror confusion as to why both parties rested and are now calling the same two expert witnesses and asking different questions. Even if the Court granted the request to recall the witnesses, court time and juror time will be negatively impacted. At the current procedural posture, reopening the proof does not appear to be a viable option to alleviate the prejudice caused to the defense by the untimely request.

20. Allowing the Government to proceed in this manner creates a risk of abuse. The Government allowed the defense to proceed with its examination of the expert witnesses under the impression that it was not objecting to the proposed charge, and is now moving to amend the charge on a subject to which the expert testimony was germane—whether fentanyl was the 'but-for' cause of Crystal Quinn's death.

21. For all of these reasons, the Court should treat the Government's request as untimely and issue the jury instruction the parties agreed to at the charge conference.

*The Proposed Instruction Would Be a Constructive Amendment of the Indictment*

22. If the Court reaches the issue raised by the Government, it should nonetheless deny the Government's request to amend the proposed jury charge, as doing so would result in a change in the Government's theory and a constructive amendment of the indictment.

23. The Court's proposed charge correctly conveys the 'but-for' causation standard as alleged in the indictment. The indictment alleges that the defendant distributed one drug to Crystal Quinn—fentanyl, and that she died as a result of that fentanyl.

24. For liability to attach, the death must result from the distributed drug rather than from a combination of factors to which use of the drug contributed. <u>Burrage v. United States</u>, 571 U.S. 204 [2014].

25. The United States District Court for the District of Colorado has reached this very issue, ruling that such an expansion of the jury instructions would cause an impermissible amendment of the indictment. <u>United States v. Miller</u>, 178 F.Supp3d 1114 [D. Colorado. 2016]. There, the indictment alleged [more broadly than the

indictment here], that the defendant distributed fentanyl, hydrocodone, alprazolam, and clonazepam to the decedent. However, in the "death resulted" portion of the indictment, it alleged that the death resulted from the use of hydrocodone, alprazolam, and clonazepam, omitting fentanyl.

26. The District Court declined to instruct the jury that any drug distributed by the defendant could satisfy the but-for causation, instead granting a motion for a judgment of acquittal based upon the Government's failure to prove that the other drugs than fentanyl were the cause of the death. Id..

27. Here, unlike the defendant in Miller, the defendant is not alleged to have distributed any drug other than fentanyl to Crystal Quinn.

28. The Government has alleged all along that fentanyl was the cause of the death. The exact substance was important factually throughout the trial, as each substance presents different theories as to where it may have come from, and allows for different arguments for and against guilt. For example, the jury could find that the defendant distributed fentanyl to Crystal Quinn, but that he did not distribute Xanax to Crystal Quinn.

29. The statute requires the Government to prove that the specific drug underlying a defendant's distribution to the victim was the same drug that was the but-for cause of the death. United States v. Davis, 970 F.3d 650 [6th Cir. 2020]; United States v. Sadler, 24 F.4th 515 [6th Cir. 2022].

30. The drugs supporting the 841(a) charge in count one must be the same drug that caused death. Davis, 970 F.3d 650. Here, the 841(a) charge in count one merely relates to fentanyl and not any other drug.

31. The Government's reliance on United States v. Watkins, 2026 WL 1425536 [2d. Cir. 2026] is misplaced. There, the indictment alleged distribution of heroin and 4-flouroisubutyryl fentanyl. The proof at trial showed that it was impossible to distinguish between 4-flouroisubutyl and 3-fluoroisobutyryl fentanyl. This was in relation to a single sale of heroin-laced fentanyl. The Court found no constructive amendment, as the exact fentanyl analogue that caused the death had no impact upon the analysis of the proof. Here, the drug alleged to have been distributed matters to the analysis of the facts.

32. Where the Government alleged for three years and throughout the trial that the defendant distributed fentanyl to Crystal Quinn that caused her death, it should not now, days after the charge conference, be able to broaden its theory of liability to include "any drug" distributed by Simon Gogolack. This would cause an impermissible amendment of the indictment.

WHEREFORE, the defense requests that the Court deny the Government's motion in all respects, and for such other and further relief as to the Court appears to be just and proper.

Dated: September 7, 2026

By: ____________________________

NICHOLAS T. TEXIDO, ESQ.
Texido Law
69 Delaware Avenue, Suite 1100
Buffalo, New York 14202
(716) 306-5251
nick@texidolawwny.com